**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL GAMING PHILIPPINES, LLC, *Plaintiff,* vs. ENRIQUE K. RAZON, JR.; BLOOMBERRY RESORTS AND HOTELS INC.; SURESTE PROPERTIES, INC.; COLLINGWOOD OIL & GAS HOLDINGS, LLC; COLLINGWOOD USA, INC.; COLLINGWOOD BROOKSHIRE USA, INC.; COLLINGWOOD APPALACHIAN MINERALS, LLC; ASIA ARROW LIMITED; RIZOLINA LLC; ENSARA LLC; NOZAR LLC; BOWERY BAY LLC; CAMPANILLA LLC; FESARA LLC; AND 11 ESSEX STREET REALTY LLC, *Defendants.* | 21 Cv. 2655 (LGS) |

**PLAINTIFF'S MOTION FOR ORDER RESTRAINING DEFENDANTS FROM**

**REMOVAL, TRANSFER OR OTHER DISSIPATION OF MOBILE ASSET**

**PENDING TURNOVER**

**MINTZ, LEVIN, COHN, FERRIS**
**GLOVSKY AND POPEO, P.C.**
The Chrysler Center
666 Third Avenue
New York, New York 10017
Tel: (212) 935-3000

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

RELEVANT PROCEDURAL HISTORY ............................................................... 2

STATEMENT OF FACTS ....................................................................................... 5

    A.  GGAM Facilitated The Successful Launch Of Solaire After Which The Award Debtors Wrongfully Terminated The Parties' Agreement and Caused Approximately $296 Million In Damages To GGAM. .................................................................................................. 5

    B.  BRHI's Wyoming Gulfstream Is The Only Asset Identified by GGAM That Is Overtly Owned By The Award Debtor BRHI Located In The United States.......................................... 7

LEGAL STANDARD............................................................................................... 9

ARGUMENT ...................................................................................................... 10

    A.   This Court Should Restrain BRHI, Sureste, Razon, and Their Agents Pursuant To CPLR § 5229....................................................................................................................... 10

        1.   Relief Under CPLR § 5229 Is Proper Pending Confirmation of the Awards and Issuance of a Turnover Order. ......................................................................................... 10

        2.   Since GGAM Is Highly Likely To Prevail In Confirming the Awards, BRHI, Sureste, Razon, and Their Agents Should Not Be Permitted To Remove Valuable Assets From the Country. ................................................................................................................. 11

        3.   Absent Emergency Relief, the Gulfstream Jet at Issue Will be Moved From the United States. ...................................................................................................................... 14

        4.   Precedent Within The District Supports the Requested Relief. ..................................... 15

        5.   Plaintiff's Motion Is Further Supported By GGAM's Right to a Turnover Order Pursuant to CPLR § 5225. .......................................................................................... 17

CONCLUSION..................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aish Hatorah New York, Inc. v. Fetman*,
No. 22057/2013, 2014 WL 4816212 (Sup. Ct. Kings Cnty. Sept. 29, 2014) .........................11

*Bangladesh Bank v. Rizal Commercial Banking Corp.*,
Case No. 652051/2020 (Sup. Ct. N.Y. May 27 2020) .............................................................3

*CBF Industria de Gusa v. AMCI Holdings, Inc.*,
850 F.3d 58 (2d Cir. 2017)...................................................................................2, 3, 14

*CIMC Raffles Offshore (Sing.) Ltd. v. Schahin Holding S.A.*,
942 F. Supp. 2d 425 (S.D.N.Y. 2013)..........................................................17, 18, 19

*Compañia De Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,
No. 1:15-CV-02120, 2019 WL 8223562 (D. Colo. Mar. 25, 2019) ..........................................4

*Connecticut Nat'l Bank v. United States*,
937 F.2d 90 (2d Cir. 1991).................................................................................20

*Daum Glob. Holdings Corp. v. Ybrant Dig. Ltd.*,
No. 13 Civ. 03135 (AJN), 2014 U.S. Dist. LEXIS 30031 (S.D.N.Y. Feb. 20, 2014) ...........................................................................................................4

*Demirovic v. Ortega*,
296 F. Supp. 3d 477 (E.D.N.Y. 2017) ..................................................................17

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
403 F.3d 85 (2d Cir. 2005)..................................................................................12

*Espiritu Santo Holdings, LP v. L1bero Partners, LP*,
No. 19 Civ. 3930 (CM), 2019 WL 2240204 (S.D.N.Y. May 14, 2019), *aff'd*,
789 F. App'x 288 (2d Cir. 2020) .....................................................................3, 11

*Gallegos v. Elite Model Mgmt. Corp.*,
768 N.Y.S.2d 134 (Sup. Ct. N.Y. Cnty. 2003) ...................................................15

*GE Transp. (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*,
No. 15 Civ. 6194 (PAE), 2016 WL 3525358 (S.D.N.Y. June 22, 2016)...............................12

*In re Gaming Lottery Sec. Litig.*,
No. 96 Civ. 5567 (RPP), 2001 U.S. Dist. LEXIS 1204 (S.D.N.Y. Feb. 8, 2001) ...........................................................................................................19

*John Wiley & Sons, Inc. v. Kirtsaeng*,
    No. 08 Civ. 7834 (DCP), 2010 WL 11597814 (S.D.N.Y. Feb. 17, 2010)...............................20

*Kaminsky v. Kahn*,
    258 N.Y.S.2d 1000 (Sup. Ct. N.Y. Cnty. 1965) .....................................................................16

*Koehler v. Bank of Bermuda Ltd.*,
    12 N.Y.3d 533 (2009) .............................................................................................................19

*Leser v. U.S. Bank Nat'l Ass'n*,
    No. CV 2009–2362(KAM)(MDG), 2013 WL 867153 (E.D.N.Y. Feb. 21,
    2013) ...............................................................................................................10, 17, 18

*Loew v. Kolb*,
    No. 03 Civ. 5064 (RCC), 2003 WL 22077454 (S.D.N.Y. Sep. 8, 2003) ..............10, 11, 16, 17

*Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran
    v. Cubic Def. Sys., Inc.*,
    665 F.3d 1091 (9th Cir. 2011) ............................................................................................4, 5

*Mishcon De Reya NY LLP v. Grail Semiconductor Inc.*,
    No. 11 Civ. 4971 (JMF), 2012 WL 5512240 (S.D.N.Y. Nov. 13, 2012) ...............................18

*Morozov v. ICOBOX Hub Inc.*,
    No. 18 Civ. 3421 (GBD)(SLC), 2020 WL 5665639 (S.D.N.Y. May 5, 2020)............11, 16, 17

*MWH Int'l, Inc. v. Inversora Murten, S.A.*,
    No. 1:11-cv-2444-GHW, 2015 WL 728097 (S.D.N.Y. Feb. 11, 2015) ...................................19

*Overseas Cosmos, Inc. v. NR Vessel Corp.*,
    No. 97 Civ. 5898 (DC), 1997 U.S. Dist. LEXIS 19390 (S.D.N.Y. Dec. 8,
    1997) ...........................................................................................................................12

*Pagaduan v. Carnival Corp.*,
    830 F. App'x 61 (2d Cir. 2020) ...............................................................................................13

*Schneider v. Kingdom of Thailand*,
    688 F.3d 68 (2d Cir. 2012).......................................................................................................13

*Sequa Capital Corp. v. Nave*,
    921 F. Supp. 1072 (S.D.N.Y. 1996).........................................................................10, 11, 15, 17

*Starbare II Partners, L.P. v. Sloan*,
    629 N.Y.S.2d 23 (1st Dep't 1995) ...........................................................................................19

*Telenor Mobile Communs. AS v. Storm LLC*,
    584 F.3d 396 (2d Cir. 2009).....................................................................................................12

*Unex, Ltd. v. Arsygrain Int'l Corp.*,
   424 N.Y.S.2d 583 (Sup. Ct. N.Y. Cnty. 1979) ...................................................................17

*United Media Holdings, NV v. Forbes Media, LLC*,
   No. 26 Civ. 5926 (PKC), 2017 U.S. Dist. LEXIS 222249 (S.D.N.Y. Aug. 9,
   2017) ..................................................................................................................................14

*Venconsul N.V. v. Tim Int'l N.V.*,
   No. 03 Civ. 5387 (LTS)(MHD), 2003 WL 21804833 (S.D.N.Y. Aug. 6, 2003) ...................11

*Wilson v. United States*,
   221 U.S. 361 (1911)............................................................................................................19

**Statutes**

9 U.S.C. §§ 201-08 .................................................................................................................12

9 U.S.C. § 207.........................................................................................................................12

CPLR § 311 ..............................................................................................................................19

CPLR § 5229..............................................................................................................10, 15, 16, 17

CPLR § 5222..............................................................................................................................10, 16

CPLR § 5225..............................................................................................................17, 18, 19, 21

CPLR § 5240..............................................................................................................................18

Federal Rule of Civil Procedure 4 .........................................................................................19

Federal Rule of Civil Procedure 64 ..................................................................................1, 9, 22

Federal Rule of Civil Procedure 69 .......................................................................................17

**Other Authorities**

11 JACK B. WEINSTEIN ET AL., NEW YORK CIVIL PRACTICE ¶ 5225.02 (2d ed.
   2021) ..................................................................................................................................18

*Aircraft Registration and Aviation Trust Services*, TVPX, https://tvpx.com/faa-
   owner-trust-services/ (last visited Mar. 31, 2021) .............................................................20

McIntire, Mike, *From Utah, Secretive Help for a Russian Oligarch and His Jet*,
   N.Y. TIMES, Nov. 7, 2017, *available at*
   https://www.nytimes.com/2017/11/06/world/bank-of-utah-leonid-
   mikhelson.html..................................................................................................................20

New York Convention on the Recognition and Enforcement of Foreign Arbitral
    Awards art. V ............................................................................................................12, 13, 14

UNCITRAL GA. Res. 65/22, U.N. Doc. A/RES/65/22 (2010)........................................................13

Plaintiff Global Gaming Philippines, LLC ("GGAM"), by and through its undersigned attorneys, hereby respectfully submits this Memorandum of Law in support of its Motion for Order Restraining Defendants From Removal, Transfer or Other Dissipation of Mobile Asset Pending Turnover pursuant to Federal Rule of Civil Procedure 64 ("Rule 64") and the New York Civil Practice Law and Rule § 5229 ("CPLR § 5229").

## PRELIMINARY STATEMENT

GGAM is the award creditor of a final arbitration award (the "Final Award") issued under UNCITRAL Rules by a Singapore arbitration tribunal against debtor defendants Bloomberry Resorts and Hotels Inc. ("BRHI") and Sureste Properties, Inc. ("Sureste"; collectively, the "Award Debtors").[1]  The parties' dispute has been fully adjudicated and decided on the merits consistent with the parties' arbitration agreement, and that decision is binding, final, and perfected for recognition and enforcement pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").

GGAM has initiated this action under the New York Convention for recognition and enforcement of the Awards, which entitles GGAM to entry of judgment enforcing the terms of the Awards, and will quickly result in GGAM becoming a judgment creditor and the Award Debtors becoming judgment debtors.  As discussed below, all requirements for recognition and enforcement under the New York Convention are satisfied, and there are no applicable grounds for objection.

GGAM's Awards against BRHI and Sureste entitle it to approximately $296 million, plus substantial post-award interest.  The Award Debtors have refused to pay this debt and have defied the arbitrators' orders, following a longstanding pattern of obstruction.  There is no doubt that BRHI and Sureste will continue to do everything in their power to prevent GGAM from recovering what it is owed, including literally flying their assets out of reach.

---

[1] *See* Compl. ¶¶ 101-09, ECF No. 1.  The arbitration resulted in two awards in GGAM's favor: an award on the merits (the "Liability Award") and the Final Award on remedies (together, the "Awards").

And that is exactly what will happen without immediate intervention from this Court to restrain the Award Debtors, their owner Enrique K. Razon, Jr. ("Razon"),[2] and their agents from using, moving, transferring, or disposing of BRHI's Gulfstream 450, tail number N818KE (the "Wyoming Gulfstream") from its current location at Newark Liberty International Airport ("EWR").  This airplane, which arrived in Newark four days ago, on Saturday, March 27, 2021, is the only known tangible legal asset of BRHI located in the United States at this time.  Once the Awards are confirmed, which can happen in short order, GGAM will be entitled to and will immediately request a turnover order to deliver the Wyoming Gulfstream within this District.

But if the plane leaves the United States and returns to the Award Debtors' home airport in the Republic of the Philippines, enforcement of the turnover order with respect to the Wyoming Gulfstream will be substantially impeded, if not impossible.  Flight logs show that the Wyoming Gulfstream infrequently flies to the United States and likely will not be here for long.  Accordingly, we respectfully request an emergency order to protect GGAM's ability to enforce the Awards and collect its judgment by restraining the Award Debtors, Razon, and their agents from moving the Wyoming Gulfstream pending confirmation of the Awards and enforcement of a turnover order.

## RELEVANT PROCEDURAL HISTORY

GGAM has two final arbitration awards in its favor, entitling it immediate payment of over $300 million from the Award Debtors, inclusive of accrued post-award interest.  To confirm the Awards in the United States and begin judgment recovery efforts, on March 29, 2021, GGAM filed a Complaint[3] against the Award Debtors for recognition and enforcement of the Awards against the Award Debtors pursuant to the New York Convention.[4]  Halperin Decl.

---

[2] Razon is also a defendant in this case.  Declaration of Jason P.W. Halperin ("Halperin Decl.") ¶ 2.

[3] GGAM has personally served Razon in New York on behalf of himself and other defendants including BRHI and Sureste.  *Id.* ¶ 3.

[4] The New York Convention, which applies to arbitral awards "made" in a foreign country that a party seeks to enforce in the United States, *CBF Industria de Gusa v. AMCI Holdings, Inc.*, 850 F.3d 58, 71 (2d Cir. 2017), is the primary mechanism by which parties seek to confirm arbitral

¶¶ 2, 6.  This action should quickly result in GGAM becoming a judgment creditor and BRHI and Sureste becoming judgment debtors, because all substantive requirements for recognition and enforcement are met.  The Award Debtors have no available grounds to argue for refusal of confirmation under the limited provisions provided by the New York Convention and U.S. law.  *Id.* ¶ 7.

During the arbitration, the Award Debtors were represented by a highly capable New York-based law firm, who mounted a vigorous defense at hearings in Washington, D.C. and Singapore.[5]  Declaration of Daniel H. Weiner ("Weiner Decl.") ¶ 4.  The arbitration was extensively litigated over the course of six years and culminated in two well-reasoned Awards in GGAM's favor.  *Id.* ¶¶ 2, 5-6.  First, on September 20, 2016, the arbitral tribunal issued its initial Liability Award determining the respective liability of the parties, finding that the Award Debtors materially breached their agreement with GGAM without cause, and affirmatively rejecting all of the Award Debtors' defenses and counterclaims.  *Id.* ¶ 5.  Then, on September 27, 2019, the arbitral tribunal issued its Final Award on remedies and awarded GGAM approximately $296 million in total damages, plus post-award interest.[6]  *Id.* ¶ 6.  The Award

awards made abroad.  "The goal of the [New York] Convention and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."  *See id.* at 71-72 (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974)).  In accordance with that goal, this Court has found that parties may bring claims for requests for provisional remedies and interim relief in aid of arbitration pursuant to the Convention.  *See Espiritu Santo Holdings, LP v. L1bero Partners, LP*, No. 19 Cv. 3930 (CM), 2019 WL 2240204, at *13 (S.D.N.Y. May 14, 2019), *aff'd*, 789 F. App'x 288 (2d Cir. 2020) ("[D]istrict courts generally agree that the [New York] Convention confers a standalone cause of action to issue provisional remedies in aid of arbitration, even if the petitioner does not simultaneously seek any of the remedies expressly provided for by sections 206 and 207 [confirmations].")
[5] Milbank LLP, which represented the Award Debtors during the arbitration, is currently representing BRHI in *Bangladesh Bank v. Rizal Commercial Banking Corp.*, Case No. 652051/2020 (Sup. Ct. N.Y. May 27 2020), which is pending in New York State Court.  Halperin Decl. ¶ 4.  This case was before this very Court before being dismissed and refiled in state court.  *See* 19 Cv. 983(LGS) (S.D.N.Y. Jan. 31, 2019).
[6] The Final Award awarded damages to GGAM and its affiliate, GGAM Netherlands B.V.  In addition to damages awarded for breach of the parties' Management Services Agreement ("MSA"), the arbitral tribunal also awarded damages to GGAM for the value of its stock in the Award Debtors' parent company (which GGAM obtained pursuant to the MSA and related

Debtors have refused to pay GGAM the amounts owing under the Awards, instead issuing erroneous and misleading statements in their parent company's annual and quarterly reports disputing their liability and stating the Awards are only enforceable in the Republic of the Philippines ("ROP") through an order by an ROP court.[7]   Halperin Decl. ¶ 8.

The Awards are binding and final for purposes of recognition and enforcement in this Court under the New York Convention.  *See Daum Glob. Holdings Corp. v. Ybrant Dig. Ltd.*, No. 13 Civ. 03135 (AJN), 2014 U.S. Dist. LEXIS 30031, at *5-8 (S.D.N.Y. Feb. 20, 2014) (holding award was "'final' where it "decided both liability and damages," and respondents failed to satisfy the "heavy burden" to show why award should not be considered final and subject to confirmation); *see also Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.*, 665 F.3d 1091, 1100 (9th Cir. 2011) ("Cubic's argument that the ICC award has not become binding on the parties is similarly without merit . . . .  [Article V(1)(e)] may be invoked when an action to confirm or enforce an arbitration award is filed **before the award has become final** . . . .  An arbitration award becomes binding when 'no further recourse may be had to another arbitral tribunal (that is, an appeals tribunal).'" (citations omitted) (emphasis added)); *Compañia De Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, No. 1:15-CV-02120, 2019 WL 8223562, at *12 (D. Colo. Mar. 25, 2019) (noting that an arbitration award with a pending set-aside action is "binding under the New York Convention because the arbitration has concluded, a final award has been issued, and there are no further proceedings within the arbitral process").  While the Award

---

agreements) based on the tribunal's findings that GGAM was entitled to the stock under the parties agreement (the Award Debtors, not GGAM, breached the parties' agreement), and that the Award Debtors had acted wrongfully to prevent GGAM's sale of its shares.  Halperin Decl. ¶ 6.

[7] The Award Debtors' refusal to honor the Award and misleading statements about it follow a longstanding pattern of impeding and interfering with GGAM's rights in this matter.  *Id.* ¶ 9. For example, during the arbitration, BRHI and Sureste engaged in a campaign to prevent GGAM from selling its shares in their parent company, despite the arbitrators' direct orders to work to remove these restraints.  Weiner Decl. ¶ 6; ECF No. 5-1. Ex. A ¶¶ 446-49.  BRHI and Sureste withheld their compliance in order to pressure GGAM into settlement.  *Id.*  This campaign continues to this day.  Halperin Decl. ¶ 9.

Debtors have moved to set aside the Awards in the Singapore courts, an arbitration is final for purposes of enforcement under the New York Convention once all proceedings in the arbitration tribunal are completed, and U.S. Courts do not delay recognition and enforcement pending challenges in foreign courts.  *See Ministry*, 665 F.3d at 1100.

Indeed, the Award Debtors' numerous attempts to set aside the Awards before the Singapore courts have been repeatedly rejected, without exception.  The Singapore High Court heard and rejected the Award Debtors' challenge to the Liability Award and their challenge to the Final Award on January 3, 2020 and May 29, 2020, respectively.  Weiner Decl. ¶¶ 7-8.  On February 3, 2020, the Award Debtors appealed the Singapore High Court's order rejecting their challenge to the Liability Award to the Singapore Court of Appeal, the highest court of Singapore.  *Id*. ¶ 9.  On August 7, 2020, that appeal was heard and, on February 16, 2021, the Singapore Court of Appeal summarily dismissed the Award Debtors' appeal of the Liability Award, finding "no merit in the [Award Debtors'] submissions."  *Id*.  On June 29, 2020, the Award Debtors likewise appealed the Singapore High Court's order rejecting their challenge to the Final Award.  *Id*. ¶ 10.  The hearing on the appeal relating to the Final Award is scheduled for April 6, 2021.  *Id*.

## STATEMENT OF FACTS

### A.  GGAM Facilitated The Successful Launch Of Solaire After Which The Award Debtors Wrongfully Terminated The Parties' Agreement and Caused Approximately $296 Million In Damages To GGAM.

While the merits of the underlying arbitration are not at issue before this Court, the following brief summary of the dispute is provided for context.  The underlying arbitration arose from the Award Debtors' breach of their agreement with GGAM.  In and around 2009, the Award Debtors, who are owned and controlled by Philippine billionaire Enrique K. Razon, Jr., were in the planning stages of developing the Solaire Resort and Casino ("*Solaire*"), which was to be the first integrated resort casino in the Philippines.  *See* Compl. ¶ 46.  Recognizing they lacked expertise in such projects, the Award Debtors hired an executive search firm in the United

States and ultimately sought out Global Gaming Asset Management, LLC ("Global Gaming"), a U.S.-based casino operator and gaming management company with significant experience in constructing, developing, and operating casino-resort properties in Las Vegas and around the world.  Weiner Decl. ¶ 5; ECF No. 5-1, Ex. B ¶ 108.  The Award Debtors recognized that Global Gaming's experience and industry relationships would prove invaluable to the development, operation, and management of *Solaire*.  *See id.*, ECF No. 5-1, Ex. B ¶¶ 77-78, 108.

In March 2011, the Wyoming Gulfstream, which is one of BRHI's two Gulfstream jets, flew Razon to Las Vegas, Nevada, where he met with two of Global Gaming's principals to discuss a potential business relationship.  *Id.* ¶ 5; ECF No. 5-1, Ex. B ¶ 46; Halperin Decl. ¶ 20. After their initial meeting, Global Gaming and Razon negotiated the structure of their collaboration under which GGAM, an affiliate of Global Gaming, would provide services and resources in exchange for, among other things, management fees and the right to participate in the upside equity value of *Solaire* and future Razon casino projects in the Philippines.  Weiner Decl. ¶ 5; ECF No. 5-1, Ex. B ¶¶ 46-49, 54.  The parties' relationship was memorialized in a Management Services Agreement dated September 9, 2011, and several other related documents. *Id.* ¶ 3.  The MSA's arbitration clause states the following:

> [A]ny dispute required to be settled in accordance with this Clause 19.2 shall be settled by arbitration in Singapore under the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules in force at the date of this Agreement [. . . .]  The decision of the arbitration panel shall be final and binding on the Parties, without right of appeal.  The Parties agree in advance that if one Party initiates arbitration, the other Party shall be bound to participate, and the decision of the arbitration panel shall be binding upon both Parties and enforceable in all jurisdictions.

*Id.*; ECF No. 5-1, Ex. D ¶ 19.2.

GGAM's experience was critical to *Solaire's* success, and was reflected in *Solaire's* profitability shortly after it opened.  Halperin Decl. ¶ 8.  But after GGAM invested millions of dollars into *Solaire* and oversaw its development, construction, and opening, the Award Debtors sought to quickly cut out GGAM and deprive it of its contractually guaranteed management services fees.  Weiner Decl. ¶ 5; ECF No. 5-1, Ex. B ¶¶ 51, 55-58.  Just six months after

*Solaire's* successful opening in March 2013,[8] the Award Debtors terminated the MSA, falsely claiming that GGAM was in breach. *Id.*, ECF No. 5-1, Ex. B ¶¶ 55-58. GGAM promptly initiated arbitration in Singapore pursuant to the MSA, and the arbitral tribunal found entirely in GGAM's favor, awarding approximately $296 million in damages. *Id.* ¶¶ 5-6; ECF No. 5-1, Ex. B ¶ 59, Ex. A ¶ 507.

## B. BRHI's Wyoming Gulfstream Is The Only Asset Identified by GGAM That Is Overtly Owned By The Award Debtor BRHI Located In The United States.

Award Debtor BRHI owns two U.S.-registered Gulfstream jets. The instant Motion involves BRHI's 2010 Gulfstream G450 registered in Wyoming, the only known asset overtly owned by BRHI and currently located in the United States.[9] Halperin Decl. ¶ 25. The estimated value of the airplane is $10-15 million. *Id.* ¶ 19.

According to the Federal Communications Commission ("FCC"), the Wyoming Gulfstream's call sign is issued to "N818KE G450 SN 4204 C/O Bloomberry Resorts & Hotels Inc." *Id.* ¶ 10. The Federal Aviation Administration ("FAA") shows that the Wyoming Gulfstream is registered to "TVPX ARS INC TRUSTEE," which is the trustee of a trust registered in Wyoming under the name "N818KE Statutory Trust" (the "Wyoming Trust"). *Id.* ¶¶ 11, 12. However, documents filed with the FAA reflect that the Wyoming Trust is merely a holding vehicle for purposes of registering the Wyoming Gulfstream in the United States, and that BRHI is the true owner of the Wyoming Gulfstream and has been since at least 2010. *Id.* ¶ 13.

For instance, BRHI has agreed to pay debts incurred in relation to the purchase and refinancing of the Wyoming Gulfstream. *Id.* ¶ 14. The most recent security agreement filed with the FAA, a Mortgage and Security Agreement, dated October 13, 2017, lists BRHI as an

---

[8] The MSA had an initial term of five years, subject to automatic extension at GGAM's option for an additional five years. Weiner Decl. ¶ 3; ECF No. 5-1, Ex. D ¶¶ 1.2-1.3.

[9] Although BRHI's planes belong to BRHI, and as alleged in GGAM's Complaint in this action, Razon uses them and other assets of the Award Debtors for his own personal use and benefit unrelated to the Award Debtors' business interests. Halperin Decl. ¶ 13. Mortgage documents related to the Wyoming Gulfstream underscore how Razon treats corporate property as his own through a complicated web of corporations that are inextricably intertwined with each other. *Id.*

obligor on the loan underlying the mortgage securing payment, performance, and discharge of the loan to refinance the plane.  *Id.* ¶ 14.[10]

Indeed, the Aircraft Operating Lease Agreement between the Wyoming Trust and BRHI—under which BRHI owes no lease or other periodic rental payment obligation to the Wyoming Trust in exchange for its rights to the plane—reflects that BRHI holds all of the rights and obligations incident to ownership of the Wyoming Gulfstream.  *Id.* ¶ 15.  Among other things:

(i)      BRHI—not the Wyoming Trust—has exclusive control over possession and use of the plane, *id.*;[11]

(ii)      BRHI—not the Wyoming Trust—has sole control over whether the Wyoming Trust can transfer its rights under the lease (and therefore transfer the plane), *id.*;

(iii)      BRHI has the right to assign, transfer, pledge, and hypothecate the lease or the plane with the consent of the Wyoming Trust, which cannot be unreasonably withheld, *id.*;[12]

(iv)      BRHI—not the Wyoming Trust—is responsible for paying all operating costs, insurance expenses, and taxes associated with the plane, including all taxes incident to "ownership, possession or operation thereof," *id.*;

(v)      the Wyoming Trust expressly disclaims any warranties regarding the operability or airworthiness of the Wyoming Gulfstream, *id.*; and

(vi)      BRHI—not the Wyoming Trust—bears all risk of loss associated with the plane, *id.*

---

[10] Credit Suisse, the mortgage holder on the agreement, released its mortgage and lien interests in January 2019.  *Id.* ¶ 14.

[11] The FAA records reflect that BRHI has held these same exclusive rights since at least December 2013.  *Id.* ¶ 16.

[12] Before technical title was transferred to the Wyoming Trust on October 13, 2017, that title was held by a predecessor trust with Wells Fargo as trustee (the "Wells Fargo Trust").  *Id.*  BRHI had an almost identical lease agreement with the Wells Fargo Trust, dated December 30, 2013, which included substantially the same possession and assignment provisions as the Wyoming Trust lease.  *Id.*  On the same day technical title to the Wyoming Gulfstream was transferred from the Wells Fargo Trust to the Wyoming Trust, the lease with the Wells Fargo Trust was terminated and the subsequent lease entered into with the Wyoming Trust.  *Id.*

On Saturday, March 27, 2021, at approximately 5:25 a.m.—ten years after it flew to Las Vegas, where Razon negotiated the MSA with GGAM—the Wyoming Gulfstream landed in Newark, New Jersey at Newark Liberty International Airport ("EWR").  Halperin Decl. ¶ 22. Historically, when Razon, who is the owner, Chairman, and CEO of the Award Debtors, travels to the United States, he stays in New York at his penthouse apartment at The Plaza hotel in Manhattan.  *Id*. ¶ 21.  As of the filing of this Motion, Razon and his immediate family, having flown into the United States on the Wyoming Gulfstream on Saturday, March 27, 2021, have traveled to and appear to be in residence at The Plaza, and the Wyoming Gulfstream is currently parked on the tarmac at EWR awaiting departure.  *Id*. ¶ 24.

Importantly, based on available flight records, the Wyoming Gulfstream does not appear to frequently travel to the United States.  According to flight records, it has only traveled to the United States one other time in the last two years.  Halperin Decl. ¶ 23.  That trip was to Savannah, Georgia, where Gulfstream is headquartered, and the craft remained in Savannah for several months before leaving the country, presumably for maintenance.  *Id*.

## LEGAL STANDARD

Federal Rule of Civil Procedure 64(a) empowers the Court to employ all remedies available under the laws of the forum state to "seiz[e] . . . property to secure satisfaction of [a] potential judgment," including "attachment; garnishment; replevin; sequestration; and other corresponding or equivalent remedies."  Fed. R. Civ. P. 64(a).

Under CPLR § 5229, after a verdict or decision on the merits of a dispute, during the relatively brief period before a judgment is entered, the Court has the power to order defendants "restrained with the same effect as if a restraining notice had been served upon [it] after judgment."  N.Y. CPLR § 5229 ("In any court, before a judgment is entered, upon motion of the party in whose favor a verdict or decision has been rendered, the trial judge may order examination of the adverse party and order him restrained with the same effect as if a restraining notice had been served upon him after judgment.").  "Other than having received a favorable

9

verdict or decision, there are no prerequisites to obtaining the relief provided in CPLR 5229." *Loew v. Kolb*, No. 03 Civ. 5064 (RCC), 2003 WL 22077454, at *2 (S.D.N.Y. Sep. 8, 2003) *2 (quoting *Sequa Capital Corp. v. Nave*, 921 F. Supp. 1072, 1076 (S.D.N.Y. 1996)).  A final arbitration award that is subject to recognition and enforcement under the New York Convention satisfies this verdict or decision requirement.  *See Loew*, 2003 WL 22077454, at *5 ("given the [summary] nature of this proceeding and given the length of time between the . . . arbitration award and any judgment to be entered in this proceeding, the Court concludes that [the plaintiff] is entitled to the benefit of a CPLR 5229 restraint.").  "It is in the court's discretion whether to grant relief and the manner and limitations in which relief is granted."  *Sequa*, 921 F. Supp. at 1076; *see also Leser v. U.S. Bank Nat'l Ass'n*, No. CV 2009–2362(KAM)(MDG), 2013 WL 867153, at *1 (E.D.N.Y. Feb. 21, 2013), *report and recommendation adopted*, 2013 WL 867151 (E.D.N.Y. Mar. 7, 2013) ("[T]he only prerequisite to obtaining relief under section 5229 is the receipt of a favorable verdict.").[13]

## ARGUMENT

### A.  This Court Should Restrain BRHI, Sureste, Razon, and Their Agents Pursuant To CPLR § 5229.

#### 1.  Relief Under CPLR § 5229 Is Proper Pending Confirmation of the Awards and Issuance of a Turnover Order.

CPLR § 5229 "is properly invoked where there is some time between a decision and the judgment."  *Loew*, 2003 WL 22077454, at *2.  GGAM has arbitration awards from an UNCITRAL-governed three-member arbitral tribunal against the Award Debtors in the amount of $296,562,709.02, exclusive of post-award interest.  The Awards are final and not subject to any appeal or further proceedings on the merits.  GGAM plans to move expeditiously so that

---

[13] Although separate, courts also draw on CPLR § 5222 powers to restrain debtors in the CPLR § 5229 context.  CPLR § 5222 allows this Court to prevent judgment debtors and third parties in possession of their property from "mak[ing] or suffer[ing] any sale, assignment, transfer or interference with any property in which he or she has an interest, except as set forth in subdivisions (h) and (i) of this section [which are inapplicable here], and except upon direction of the sheriff or pursuant to an order of the court, until the judgment or order is satisfied or vacated."  CPLR § 5222(b).

confirmation will follow summarily. *Id.* ("[C]onfirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." (quoting *Ottley v. Schwartzberg*, 819 F.2d 373, 377 (2d Cir. 1987) (citations omitted))).  During this short interim period, GGAM seeks this Court's assistance to ensure that the judgment we will ask the Court to enter against BRHI is not rendered ineffective by dissipation of its sole asset in the United States.  *See Espiritu Santo*, 2019 WL 2240204, at *13 ("[D]istrict courts generally agree that the [New York] Convention confers a standalone cause of action to issue provisional remedies in aid of arbitration, even if the petitioner does not simultaneously seek any of the remedies expressly provided for by sections 206 and 207 [confirmations]."); *see also Vencosul N.V. v. Tim Int'l N.V.*, No. 03 Civ. 5387 (LTS)(MHD), 2003 WL 21804833, at *3 (S.D.N.Y. Aug. 6, 2003) (stating that federal courts have "the power to entertain requests for interim relief in aid of arbitration under the Convention—even while arbitration is pending—to support "speedy arbitral decisions and a desire to preserve the possibility of recoveries upon awards"); *Aish Hatorah New York, Inc. v. Fetman*, No. 22057/2013, 2014 WL 4816212, at *3 (Sup. Ct. Kings Cnty. Sept. 29, 2014), *adhered to on reargument,* 20 N.Y.S.3d 291 (Sup. Ct. Kings Cnty. 2015) (restraining the transfer of defendant's property in conjunction with plaintiff's motion to confirm domestic arbitration award, which the court simultaneously granted in part).

### 2.     Since GGAM Is Highly Likely To Prevail In Confirming the Awards, BRHI, Sureste, Razon, and Their Agents Should Not Be Permitted To Remove Valuable Assets From the Country.

Where judgment against defendants "is not just potential, it is certain, Plaintiff[ ] ha[s] met the only prerequisite to obtaining relief under [CPLR] § 5229."  *Morozov v. ICOBOX Hub Inc.*, No. 18 Civ. 3421 (GBD)(SLC), 2020 WL 5665639, at *11 (S.D.N.Y. May 5, 2020), *report and recommendation adopted,* 2020 WL 5665563 (S.D.N.Y. Aug. 18, 2020); *see also Sequa*, 921 F. Supp. at 1075 (same).  In this case, it is far more than a mere potentiality that a judgment will be entered.  Confirmation and entry of judgment is in essence ministerial.  The New York Convention provides very limited grounds for the Award Debtors to object to confirmation, and

denials are limited to these narrow grounds.  *See* 9 U.S.C. § 207; New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards art. V, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (U.S. acceded Sept. 30, 1970) (implemented by 9 U.S.C. §§ 201-08), *available at*

https://www.newyorkconvention.org/11165/web/files/original/1/5/15432.pdf [hereinafter New York Convention]; *see also Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 92 (2d Cir. 2005) ("[A] district court is strictly limited to the seven defenses under the New York Convention when considering whether to confirm a foreign award."); *GE Transp. (Shenyang) Co. v. A-Power Energy Generation Sys., Ltd.*, No. 15 Civ. 6194 (PAE), 2016 WL 3525358, at *3 (S.D.N.Y. June 22, 2016) (noting the seven reasons are "exclusive" and thus review of arbitral awards under the New York Convention is "very limited").  *Telenor Mobile Communs. AS v. Storm LLC*, 584 F.3d 396, 405 (2d Cir. 2009) ("The burden [to oppose enforcement] is a heavy one").

BRHI cannot succeed on <u>any</u> of the seven grounds.[14]

Having fully participated in six years of arbitration proceedings under the parties' arbitration agreement, BRHI cannot now demonstrate that it was under some "incapacity" at the time of the agreement, or that the parties' arbitration agreement is invalid under the law of Singapore.  *See* New York Convention, art. V(1)(a).  BRHI has never raised this ground and cannot raise it now.  *See Overseas Cosmos, Inc. v. NR Vessel Corp.*, No. 97 Civ. 5898 (DC), 1997 U.S. Dist. LEXIS 19390, at *7-8 (S.D.N.Y. Dec. 8, 1997).  Nor can it now demonstrate it had inadequate notice of the appointment of the arbitrator or lack of notice of the arbitral

---

[14] The narrow grounds under which a debtor may object to confirmation are limited to: (a) the parties were incapacitated when signing the arbitration agreement or the arbitration agreement was otherwise not valid; (b) the debtor was not given proper notice of the arbitration or appointment of the arbitrator; (c) the award is outside the scope of the arbitration; (d) the arbitral procedure contravened the parties' arbitration agreement or the law of the country where the arbitration occurred; (e) the award is not yet binding; (f) competent authority in the country where the enforcement is sought finds the matter was improperly before an arbitrator; or (g) competent authority in the country where the enforcement is sought finds recognition or enforcement of the award would be contrary to public policy of that country.  *See* New York Convention, art. V.

proceedings.  *See* New York Convention, art. V(1)(b).  BRHI has never argued that notice was inadequate and cannot make that claim now.  *See Pagaduan v. Carnival Corp.*, 830 F. App'x 61, 62 (2d Cir. 2020) (rejecting argument under Article V(1)(b) where party could not make showing it was "denied the opportunity to be heard in a meaningful time or in a meaningful manner").

BRHI cannot show that the arbitration ruled on matters beyond the scope of parties' submission to arbitration.  *See* New York Convention, art. V(1)(c).  The Award was for the Award Debtors' breach of the MSA, which contains a broad clause invoking arbitration for all disputes arising from or relating to the MSA or its related agreements.  Further, the 2010 UNCITRAL rules used in the arbitration give the arbitrators "the power to rule on its own jurisdiction."  UNCITRAL Arbitration Rules art. 23.1-.2, GA. Res. 65/22, U.N. Doc. A/RES/65/22 (2010), *available at* https://uncitral.un.org/sites/uncitral.un.org/files/media-documents/uncitral/en/arb-rules-revised-2010-e.pdf[15]; *see also Schneider v. Kingdom of Thailand*, 688 F.3d 68, 73 (2d Cir. 2012) ("adoption of the UNCITRAL rules providing that the tribunal has 'the power to rule on objections that it has no jurisdiction' is clear and unmistakable evidence of their intent to arbitrate issues of arbitrability.").  BRHI submitted numerous briefs, asserted many arguments, and vigorously defended its interests before the arbitral tribunal for several years, including on all issues contained within the Awards.  Thus, BRHI cannot now argue the decision on those same matters is beyond the scope of the submission.  *See id.* ("Although the [New York] Convention recognizes that an award may not be enforced where predicated on a subject matter outside the arbitrator's jurisdiction, it does not sanction second-guessing the arbitrator's construction of the parties' agreement.").  For the same reasons, BRHI has no valid ground to argue that the arbitral procedure contravened the parties' arbitration agreement or in any way violated applicable law.  *See* New York Convention, art. V(1)(d).

BRHI also cannot invoke Article V(1)(e) to argue the judgment should not be enforced because the judgment was set aside by a court of competent jurisdiction—it has not been.  *See*

---

[15] For the court's convenience, Article 23 is included as Exhibit A to the Halperin Declaration.

*id.*, art. V(1)(e).

BRHI also cannot argue that a competent authority in the United States would find the matter was improperly before arbitration.  *See id.*, art. V(2)(a).  Breach of contract disputes such as the underlying dispute here are exactly the kinds of cases that U.S. courts encourage for arbitration.  *See CBF Industria de Gusa v. AMCI Holdings*, *Inc.*, 850 F.3d 58, 64 (2d Cir. 2017) (award confirmation case pursuant to New York Convention where dispute underlying the arbitration award to be confirmed was for breach of contract).

Finally, BRHI cannot make a showing that recognition of the award is contrary to the public policy of the United States.  *See* New York Convention, art. V(2)(b).  "Article V(2)(b) must be construed very narrowly to encompass only those circumstances where enforcement would violate our most basic notions of morality and justice."  *United Media Holdings, NV v. Forbes Media, LLC*, No. 26 Civ. 5926 (PKC), 2017 U.S. Dist. LEXIS 222249, at *34 (S.D.N.Y. Aug. 9, 2017) (emphasis in original).  BRHI was given every opportunity to mount a defense, if any, but lost on the merits after protracted litigation.  It would not offend any notion of morality to recognize and enforce an arbitration award affixing liability for breach of a commercial contract.

For all these reasons, we respectfully submit that confirmation of the arbitration is essentially certain.  The extensive litigation regarding the Awards in Singapore—brought by the Award Debtors—and GGAM's repeated and resounding success there demonstrate the strength of the well-reasoned Awards.  There is no reason to believe the result would be any different during the much narrower proceedings for confirmation of the Awards.  Thus, it is highly likely that GGAM will prevail on its claim for recognition and enforcement of the Awards against BRHI and Sureste.

### 3.	Absent Emergency Relief, the Gulfstream Jet at Issue Will be Moved From the United States.

Although BRHI and Sureste could and should have long ago owned their responsibility to

pay GGAM's awarded damages without court intervention, they have not done so.  Over the year and a half since issuance of the Final Award, the Award Debtors have refused to pay GGAM, choosing instead to impede and interfere with GGAM's rights and ignoring the arbitral tribunal's orders.  Even during the arbitration, BRHI and Sureste (at Razon's instruction) took steps to wrongfully halt GGAM's ability to sell its stock in BRHI's and Sureste's parent company (which shares remain frozen), and when directed to remove these restraints by the arbitral tribunal, they withheld their compliance—defiant acts of obstruction that continue to this day.  Halperin Decl. ¶ 9.

There is little doubt that, given the opportunity, BRHI and Sureste will do everything in their power to prevent GGAM from recovering what it is owed, including diverting mobile assets out of reach.  GGAM will move quickly to complete the summary confirmation process of its already final Awards, and once the Awards are confirmed, GGAM will immediately request a turnover order for the BRHI plane.  During this short interlude, GGAM respectfully requests that the Court prevent the Award Debtors, Razon, and their agents from causing this asset to, quite literally, take flight before judgment can be entered and a turnover order can be enforced. Restraining the Award Debtors and their agents during this short period will ensure that GGAM's forthcoming judgment is not rendered ineffectual.  Plaintiff's request is narrowly tailored to preserve the status quo pending confirmation of the Awards and issuance and execution of a turnover order.

### 4.    Precedent Within The District Supports the Requested Relief.

"The remedy provided in CPLR 5229 is designed to 'secure satisfaction of the judgment ultimately to be entered in the action' as provided for in [Rule] 64." *Sequa*, 921 F. Supp. at 1076.  Although granting relief pursuant to CPLR § 5229 is wholly within the Court's discretion, *see supra*, New York courts have found such relief appropriate where there is a risk that the judgment debtor will dispose of, hide, interfere, or otherwise evade discovery of its assets. *See, e.g.*, *Gallegos v. Elite Model Mgmt. Corp.*, 768 N.Y.S.2d 134, 138 (Sup. Ct. N.Y. Cnty. 2003)

(asset restraint warranted where defendant was evasive and willing to "lead court to erroneous conclusions"); *Kaminsky v. Kahn*, 258 N.Y.S.2d 1000, 1001-02 (Sup. Ct. N.Y. Cnty. 1965) (restraints warranted where defendant was disposing of assets by gift of sale to family); *Morozov*, 2020 WL 5665639, at *11 (restraint warranted where foreign defendant was at risk of transferring assets to avoid paying judgment). *Cf.* N.Y. CPLR § 5222 (allowing post-judgment asset restraints to prevent "interference with any property"). Here, there is urgent reason to grant GGAM's requested relief. The requested relief is narrowly tailored to preserve the status quo by ensuring that BRHI's plane—which has only visited the United States once in the last two years—remains in the United States until the Court can address GGAM's motions for confirmation and for a turnover order. The nature of the asset and the past practices of the Award Debtors and their principal present a very high likelihood that the asset will be moved beyond United States enforcement jurisdiction. If the only U.S.-located legal asset owned by BRHI is allowed to take off and leave the country, the enforceability of the confirmation judgment against BRHI by this Court will surely be diminished.

    *Loew* is instructive. There, the plaintiff sought to confirm and enforce a favorable arbitration award. 2003 WL 22077454, at *2. Based on concerns that the arbitration debtor would dispose of assets prior to judgment being entered against it, the plaintiff sought court intervention. *Id.* While the *Loew* Court found that the judgment debtors' failure to respond to petitioner's motion was itself sufficient grounds to grant an order pursuant to CPLR § 5229, the court also reasoned that even had the defendants responded, it would have granted the motion. *Id*. In supporting its decision, the *Loew* Court found that evidence that the debtors would likely dispose of assets pre-judgment "satisfied the prerequisite to obtaining a CPLR 5229 restraint." *Id.* Noting the limited grounds in which such an arbitration award can be vacated, the Court further reasoned that "given the [summary] nature of this proceeding and given the length of time between the . . . arbitration award and any judgment to be entered in this proceeding, the

Court concludes that [the plaintiff] is entitled to the benefit of a CPLR 5229 restraint." *Id.*[16]

Notably, "[t]here is no requirement that the moving party make a preliminary showing that defendant is disposing of assets." *Leser*, 2013 WL 867153, at *1 (citation omitted).  Courts have applied CPLR § 5229 for a variety of reasons, such as when there are "inconsistencies or misrepresentations by the party against whom relief is sought, which may properly 'le[a]d the court to believe the danger exists that defendants may dispose or divert assets to avoid a potential judgment,'" when the adverse party is in financial distress or may not maintain funds sufficient to satisfy the judgment, or where there is a danger the adverse party *will* dispose of assets. *Demirovic v. Ortega*, 296 F. Supp. 3d 477, 482-83 (E.D.N.Y. 2017) (citations omitted); *see also Morozov*, 2020 WL 5665639, at *11 (danger of asset disposal); *Sequa*, 921 F. Supp. at 1076 (same).

## 5. Plaintiff's Motion Is Further Supported By GGAM's Right to a Turnover Order Pursuant to CPLR § 5225.

CPLR § 5225(a), incorporated through Federal Rule of Civil Procedure 69(a)(1), concerning monetary judgments, allows a "court with personal jurisdiction over a defendant [judgment debtor] . . . to turn over out-of-state property." *CIMC Raffles Offshore (Sing.) Ltd. v. Schahin Holding S.A.*, 942 F. Supp. 2d 425, 427 (S.D.N.Y. 2013).  CPLR § 5225(a) states in relevant part:  "where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to

---

[16] Although the court in *Unex, Ltd. v. Arsvgrain Int'l Corp.*, 424 N.Y.S.2d 583, 584-85 (Sup. Ct. N.Y. Cnty. 1979) held that CPLR § 5229 relief is only available from a trial judge based on decisions issued by courts, this Court's decision in *Loew* is more recent, better reasoned, and recognizes the intent of CPLR § 5229 to preserve a prevailing party's ability to collect an arbitration award in the interim between a favorable decision and a judgment—especially in light of the summary nature of a final arbitration award.  Further, both *Loew* and *Unex* note the complete discretion given to courts to grant relief under CPLR § 5229, and even the *Unex* court acknowledged the principal reason for granting relief under CPLR § 5229 "is the likelihood that without it, the subsequently entered judgment may be made uncollectible." *Id.* at 585.

deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff."

CPLR § 5229 allows the Court to utilize post-judgment remedies before the entry of judgment on the confirmation cause of action against BRHI and Sureste.  *See* N.Y. CPLR § 5229.  *Cf. Leser*, 2013 WL 867153, at *2 (finding relief under CPLR § 5229 warranted because "[w]ere it not for the delay in entering final judgment, USB could otherwise have served a [post-judgment enforcement device]," and "plaintiff would be no worse off by entry of an order than if judgment had been entered after trial").  As such, the Court can draw on the availability of turnover orders pursuant to CPLR § 5225 to ensure that GGAM's Awards are effectuated expeditiously once they are confirmed and judgment is entered.

Plaintiff respectfully requests that the Court utilize its powers to restrain the Award Debtors, Razon, and their agents from directly or indirectly causing the Wyoming Gulfstream to leave its current location, a restraint which pursuant to a turnover order, GGAM would be entitled to as soon as the arbitration award is confirmed.  To secure such restraint post-judgment, a judgment creditor must simply show that "the judgment debtor is in possession or custody of . . . personal property in which he has an interest."  *See Mishcon De Reya NY LLP v. Grail Semiconductor Inc.*, No. 11 Civ. 4971 (JMF), 2012 WL 5512240, at *1 (S.D.N.Y. Nov. 13, 2012).  Where those circumstances are met, the statute is "'unequivocal' that turnover is mandatory."  *Id.* (citation omitted); *see also* 11 JACK B. WEINSTEIN ET AL., NEW YORK CIVIL PRACTICE ¶ 5225.02 (2d ed. 2021).[17]  However, CPLR § 5225 only provides for turnover of assets of "sufficient value to satisfy the judgment."  *CIMC Raffles*, 942 F. Supp. 2d at 432. Accordingly, GGAM need only show that: (1) BRHI is in possession or control of the plane, (2) BRHI has an interest in the plane, and (3) the value of the property does not exceed the value

---

[17] As stated in *Mishcon*, CPLR § 5240 provides some discretion to limit, condition or regulate the use of any enforcement procedure under Article 52 of the CPLR, but that discretion has been generally exercised in the context of a turnover order *only* where "enforcement of the judgment would divest a judgment debtor of his or her sole source of income and means of repaying the judgment."  This is not an issue here.  *Mishcon*, 2012 WL 5512240, at *2.

of the judgment. *See CIMC Raffles*, 942 F. Supp. 2d 425 at 427-28; *see also In re Gaming Lottery Sec. Litig.*, No. 96 Civ. 5567 (RPP), 2001 U.S. Dist. LEXIS 1204, at *7-10 (S.D.N.Y. Feb. 8, 2001); *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 540-41 (2009). Although this matter will be addressed more fully in GGAM's turnover motion, each of the above is preliminarily met.

First, BRHI is in possession of the Wyoming Gulfstream. *See MWH Int'l, Inc. v. Inversora Murten, S.A.*, No. 1:11-cv-2444-GHW, 2015 WL 728097, at *9 (S.D.N.Y. Feb. 11, 2015) ("Under § 5225(a), a judgment creditor may enforce a judgment against the judgment debtor 'where it is shown that the judgment debtor is in possession or custody of money or other personal property in which [the judgment debtor] has an interest.'" (citing CPLR § 5225(a))). BRHI's ownership of the Wyoming Gulfstream is held through use of a trust in Wyoming—a common structure to allow foreign owners to register craft in the United States and secure licensure by the FAA. Halperin Decl. ¶¶ 11-12. The Trust, in turn, has granted exclusive possession, custody and use of the plane back to BRHI, along with all other incidents of ownership.

Notably, when the Wyoming Gulfstream arrived in the United States on March 27, 2021, Razon, BRHI's director and president, was on the airplane with his family.[18] Razon's current use of the Wyoming Gulfstream constitutes and reflects BRHI's possession and control over the plane. *Cf. Wilson v. United States*, 221 U.S. 361, 384-85 (1911) (books possessed by the corporation's president belonged to the corporation).

---

[18] The fact that the Wyoming Gulfstream is not currently located in New York also does not affect the Court's ability to issue relief if the court has personal jurisdiction over the judgment debtor. *See Starbare II Partners, L.P. v. Sloan*, 629 N.Y.S.2d 23, 23 (1st Dep't 1995) ("Since the IAS Court had personal jurisdiction over defendant and judgment debtor Stephen Sloan, it was entitled under CPLR 5225(a) to order him to turn over to the Sheriff of the City of New York property located outside of the State."). *Cf. Koehler*, 12 N.Y.3d at 541 (ordering bank subject to personal jurisdiction of court that was in possession of plaintiff's stock certificates located outside of the state to turn over the certificates under CPLR § 5225(b)). Here, the Court has personal jurisdiction over BRHI because GGAM has served the pleadings on Razon as BRHI's president and director in New York in conformity with CPLR § 311(a)(1) and Federal Rule of Civil Procedure 4(e)(1) and 4(h).

Second, BRHI has an interest in the Wyoming Gulfstream as an equitable owner.  *See John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834 (DCP), 2010 WL 11597814, at *1 (S.D.N.Y. Feb. 17, 2010) ("In addition to possession, the judgment debtor must have an 'interest' in the property.").  The airplane's FCC call sign is issued to "N818KE G450 SN 4204 C/O Bloomberry Resorts & Hotels Inc."  And although the Wyoming Gulfstream is registered to "TVPX ARS INC TRUSTEE," as trustee of the Wyoming Trust, this purposeful structure does not impair BRHI's interest in the property.  *See Aircraft Registration and Aviation Trust Services*, TVPX, https://tvpx.com/faa-owner-trust-services/ (last visited Mar. 31, 2021) (find FAQ, then select "What is an aircraft trust?") ("An aircraft trust is a relationship where a trustee owns an aircraft on behalf of an entity or individual, also called the trustor or trust beneficiary (the "Beneficiary").  A trustee acts in a limited capacity for the Beneficiary and the aircraft is titled and registered in the name of the trustee.  This relationship is often called an owner trust because the benefit of the trust and all assets go to the true owner of the trust.")[19]; McIntire, Mike, *From Utah, Secretive Help for a Russian Oligarch and His Jet*, N.Y. TIMES, Nov. 7, 2017, at A1, *available at* https://www.nytimes.com/2017/11/06/world/bank-of-utah-leonid-mikhelson.html (describing owner trusts as "a discreet niche business [ ] that allows wealthy foreigners to legally obtain American registrations for their aircraft while shielding their identities from public view.").[20]  Courts routinely recognize that a trust confers only legal title and look past the form of ownership to recognize the interests of the beneficial owner.  *See Connecticut Nat'l Bank v. United States*, 937 F.2d 90, 92 (2d Cir. 1991) (stating that the executor of the estate, who was the trustee of a marital trust, "does not possess any real ownership interest in the property – it possesses legal title to the trust, but nothing more").

Documents recorded with the FAA confirm that the Wyoming Trust is not the true owner of the Wyoming Gulfstream.  Instead, those documents make clear that BRHI—who is both a

---

[19] For the court's convenience, a printout of this webpage is included as Exhibit N to the Halperin Declaration.
[20] For the court's convenience, this article is included as Exhibit O to the Halperin Declaration.

party to the Trust Agreement with the Wyoming Trustee and the operator of the plane—is, at a minimum, an equitable owner of the airplane, and has been since at least December 2010.  For example, before the Wyoming Gulfstream's title was placed in the Wyoming Trust, it was held in trust by the Wells Fargo Trust.  BRHI held similar incidents of ownership, including exclusive use, possession and operation rights in the plane, under its lease with the Wells Fargo Trust.  On the same day that the Wells Fargo Trust "sold" the airplane to the Wyoming Trust, BRHI terminated its lease agreement with the Wells Fargo Trust, and executed a new, substantially similar lease agreement with the Wyoming Trust.

These lease agreements both make clear that the Trust ownership structure is mere form over substance.  As noted above, the documents recorded with the FAA reflect that (i) BRHI has agreed to pay loan indebtedness secured by the plane, *see* Halperin Decl. ¶ 14; BRHI "leases" the plane from the Wyoming Trust but owes no lease or other periodic rental payment obligation to the Wyoming Trust, *id.* ¶ 15; BRHI controls whether the Wyoming Trust (its lessor) can transfer its rights under the lease (and therefore transfer the plane), *id.*; BRHI has rights to assign, transfer, pledge, and hypothecate the lease or the plane with the consent of the Wyoming Trust, which cannot be unreasonably withheld, *id.*; BRHI is responsible for paying all operating costs, insurance expenses, and taxes associated with the plane, including all taxes incident to "ownership, possession or operation thereof," *id.*; the Wyoming Trust disclaims virtually all responsibility regarding the usefulness of the plane, *id.*; and BRHI bears all risk of loss associated with the plane, *id*.  Thus, BRHI enjoys all rights and suffers all obligations of ownership of the Wyoming Gulfstream.  Third, the value of the Wyoming Gulfstream is between $10-15 million.  At best, this is between 3-5 percent of the face value of GGAM's Awards against BRHI.  Thus, it is entirely appropriate for GGAM to recoup some of its damages by enforcement against the BRHI plane.

Accordingly, because GGAM meets the standard for which CPLR § 5225 relief is proper, GGAM respectfully requests that this Court grant its requested CPLR § 5229 relief during the pendency of the award confirmation proceedings and entry of judgment to protect GGAM's

turnover rights.

## CONCLUSION

For the reasons provided above, Plaintiff GGAM respectfully requests that this Court grant its Motion for a temporary restraining order pursuant to Rule 64 and CPLR § 5229, to restrain Bloomberry Resorts and Hotels Inc. ("BRHI") and Sureste Properties, Inc. ("Sureste"), or their attorneys, and each of their respective officers, directors, managers, employees, owners, affiliates, attorneys, agents, and servants, including but not limited to Enrique K. Razon, Jr., and all those acting in concert or participation with any of the foregoing, including but not limited to any pilots, flight crew members, aviation vendors, or service providers from:

(1) directly or indirectly, transferring, moving, using, interfering with or otherwise changing the location of BRHI's Gulfstream 450, tail number N818KE, or taking any steps to facilitate, request, direct or allow its transfer, movement, use, interference with, or change of location from Newark International Airport, unless and until otherwise ordered by this Court and

(2) directly or indirectly, selling, transferring, pledging, assigning, liquidating, setting off, hypothecating, or otherwise encumbering or disposing of the Wyoming Gulfstream or any portion thereof, or taking any steps to in any way impair, abridge, modify, relinquish, waive, or amend BRHI's rights, interests, ownership, and possession of, in and to the airplane pending the confirmation proceedings for the arbitration award against BRHI and Sureste and entry of judgment on the same.

In the event that the Wyoming Gulfstream has been moved from Newark International Airport between the time BRHI, Sureste, or Enrique K. Razon, Jr. first receive notice of this Motion and the time the Court issues its Order, GGAM requests that the Court order them to return the Wyoming Gulfstream to a location within the Southern District of New York and thereafter abide by the terms of the Order as if it had never been removed.  Entry of this order will help ensure that GGAM's efforts to confirm and enforce the Awards in its favor are not

rendered ineffectual.

Dated:  March 31, 2021          Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.
New York, New York

                                Respectfully submitted,

                                By:  */s/ Jason P.W. Halperin*

                                        Robert I. Bodian
                                        Jason P.W. Halperin
                                        Daniel T. Pascucci
                                            (*Pro Hac Vice application forthcoming*)
                                        Joseph R. Dunn
                                            (*Pro Hac Vice application forthcoming*)
                                        Danielle P. Richards
                                            (*Pro Hac Vice application forthcoming*)
                                        Michael J. Godwin
                                            (*Pro Hac Vice application forthcoming*)
                                666 Third Avenue
                                New York, NY 10017
                                T: (212) 935-3000
                                F: (212) 983-3115
                                rbodian@mintz.com
                                jhalperin@mintz.com
                                dtpascucci@mintz.com
                                jrdunn@mintz.com
                                dprichards@mintz.com
                                mjgodwin@mintz.com

                                *Attorneys for Plaintiff*
                                *Global Gaming Philippines, LLC*