L5DGGLOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

GLOBAL GAMING PHILIPPINES,
LLC,

                    Plaintiff,

          v.                          21 Civ. 2655 (LGS)

ENRIQUE K. RAZON, JR., et al.,
                                      Conference

                    Defendants.

------------------------------x

                                      New York, N.Y.
                                      May 13, 2021
                                      10:30 a.m.

Before:

               HON. LORNA G. SCHOFIELD,

                                      District Judge

                         APPEARANCES

MINTZ LEVIN COHN FERRIS GLOVSKY & POPEO, P.C.
     Attorneys for Plaintiff
BY:  KEVIN N. AINSWORTH
     DANIEL T. PASCUCCI
     JOSEPH R. DUNN

MILBANK LLP
     Attorneys for Defendants
BY:  DANIEL M. PERRY
     BRETT P. LOWE

L5DGGLOC

                    (The Court and all parties present remotely)

          THE DEPUTY CLERK:  We're here in the matter of 21 Cv.

2655.  Before we begin, I would like to remind the parties and

anyone else listening that recording or rebroadcasting of this

proceeding is prohibited.  Violation of this prohibition

results in sanctions.  I'm also going to ask counsel to please

state your name before you speak each time you speak, as we

have a court reporter present.  We're here before the Honorable

Lorna G. Schofield.

          THE COURT:  Good morning everyone.  We're here for an

initial conference.  And I'd like to discuss the plaintiff's

proposed amended complaint, the defendants' proposed motion to

dismiss, as well as the issue of discovery.  I have reviewed

your letters.  And my first question is to the plaintiff.  I

understand that you propose to amend the complaint in response

to some or all of the arguments that were raised in the

defendants' pre-motion letter.  Did you want to tell me a

little bit about what you anticipate in the amendment?

          MR. AINSWORTH:  Good morning, your Honor.  Kevin

Ainsworth here.

          THE COURT:  Good morning.

          MR. AINSWORTH:  What we expect to do, your Honor, is

add more detail and specificity regarding contacts with New

York, contacts in the United States, and more details about the

veil piercing allegations, some of the control exercised by

L5DGGLOC

defendant Razon over the various entities that are defendants, your Honor.

THE COURT: So it sounds like you are intending to address the personal jurisdiction issue, as well as indirectly the subject matter jurisdiction issue, as well as I presume, maybe to some extent for more convenience. I also understand from your response that you have various legal arguments.

So let me just hear from the defendant. I presume that you anticipate what the amendments will be, to some extent they're described in the plaintiff's letter. Do you still intend to bring a motion?

MR. PERRY: We do, your Honor.

THE COURT: Who is this, please?

MR. PERRY: I'm sorry. Dan Perry on behalf of the defendants.

THE COURT: Thank you, Mr. Perry.

MR. PERRY: You never know exactly what will be an amendment, so with that caveat, we believe based on the facts as we know them and understand them, that there is substantial problems jurisdictionally with how plaintiffs propose to proceed, and also a significant and meaningful forum non argument that really won't be affected by the amendment. Fundamentally, the judgment debtors are adequately capitalized corporations operating in the Philippines. They have the ability to pay the judgments. The plaintiffs here just don't

L5DGGLOC

want to enforce against the actual judgment debtors.  They want to enforce against alter egos on a relatively convoluted, multi-step veil piercing theory.  And we certainly will have something to say about that in a motion to dismiss.  But even without seeing their amendment, there's certainly a significant forum non issue, where you have entities that are solvent, have not taken steps that denude themselves of assets and are operating --

THE COURT:  Could I just ask a question about that.  And of course, we don't even have the amended complaint, much less any motions.  But just casual conversation, I'm not pre-judging anything, nor are you committing yourself.  But one of my questions is, they argue that a US Court is really the only place that you can bring an action to assess the enforceability of an arbitral award, so how can you have a forum non argument in that context?

MR. PERRY:  So there are courts that have applied forum non to recognition and enforcement actions.  And the basic thesis and logic is that it's more efficient and easier to go -- at least in this case -- to go to the Philippines where the actual judgment debtors and their assets are.  Remember, the judgment debtors have no assets here or at least are not alleged to.  We went through that with the motion with respect to the plane.  And so just in terms of convenience, our argument would be, before you get into expensive, lengthy and

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

complicated issues about veil piercing and the like, you should go to the Philippines and enforce the judgment against the defendants that you chose to do business with.  The contracts here that gave rise to the award are contracts with Philippine entities arising under Philippine law.

THE COURT:  I'm sorry to interrupt.  Can I ask a basic question.  As I understand it, the award in this case were against Bloomberry or BRHI and SPI.  And as I understand it, they are defendants in this action.  And it sounds from plaintiff's letter as though they did make allegations that would survive at least initial personal jurisdiction attack. So given that, why wouldn't you just proceed at least against those folks here in the US?

MR. PERRY:  So as to those two, I don't believe that the allegations they've identified in their letter would suffice for either general or specific jurisdiction here in the US.  The two entities are Philippine entities.  They're organized there.  Their principal place of business is there. So they would be relying on concepts of specific personal jurisdiction.

There was a suggestion in the letter that there was some contract negotiation in New York.  I actually don't think that's true.  It wasn't alleged in the complaint.

THE COURT:  Let me just interrupt for a second.  There are two ways that we can approach the personal jurisdiction

issue or that I could approach the personal jurisdiction issue. One is to find at least preliminarily that there's personal jurisdiction, based on the allegations in the amended complaint. And at least if they include what they put in their letter, it sounds like the allegations would be sufficient. Now, that of course doesn't address whether they're true or anything else about them. They're simply allegations. But it would be enough to keep the action here at least until some further and later adjudication, when there are more facts. So anyway, I don't want to get too far ahead of ourselves. I will just tell you, it sounded to me based on the letters and an initial reading of those as though there would be at least some defendants and some claims left. And so given that, I'm not going to stay discovery.

So let's do talk about the briefing schedule. My understanding is that the parties have stipulated that an amended complaint would be filed June 15th and that a motion to dismiss would be filed July 15th, a response August 13th, with a reply on September 3rd. And that is all fine with me. So I will order that briefing schedule.

In terms of number of pages, I saw the defendant's request for more pages. And frankly, I think it's too many pages, given I understand the issues are potentially numerous and complex, so I will grant a small enlargement. So the opening brief will be 30 pages or less. And the reply will be

L5DGGLOC

13 pages or less.

In terms of discovery, let's talk about that for a little bit. I think one year, which is what plaintiff asked for, is too long for fact discovery. And the other end of the spectrum, as I mentioned, I don't think that a stay is warranted. I think things will just be delayed if I do that. But tell me a little bit more about what aspects of discovery here -- apart from just the fact that there is ESI -- what will be time consuming. And let me hear from the plaintiff first, since you asked for so much time.

MR. AINSWORTH: Good morning, again, your Honor. Before I answer that question, on the briefing, will our opposition also be 30 pages?

THE COURT: Yes.

MR. AINSWORTH: Thank you.

Your Honor, we would like to complete discovery expeditiously, that's our goal. I think the history of this case and the defendants' actions show that that's not likely going to occur. It took three years from the breach of contract to get the liability award. In the arbitration, it took three years from then to get the damages award. They have appealed, they've done everything they can to drag it out. The appellate court said that there's no merits to the appeal. So they have taken consistent actions to drag this out, your Honor. And our concern is that we're going to get squeezed by

L5DGGLOC

time.  If we set a four-month window and we don't get cooperation with discovery, we're going to run short on time.

THE COURT:  Let me just interject something here.  I understand that.  And I understand, without making any comments about the defendants here, because I don't know what their practices have been, and I have no reason to think they're anything, but what parties often typically do -- and it's no secret that defendants often view their clients' best interests as things proceeding more slowly than more quickly.  However, I also, as a judge, believe that the faster things proceed the better off everyone is because it saves the clients time and money, it saves the lawyers and, frankly, the Court time.  And so I am fairly stingy about giving extensions of time.  But by the same token, I understand that my responsibility is that if you set interim dates and defendants just aren't cooperating, then instead of sort of fretting about it or exchanging words for months, you should come to the Court.  And I know lawyers are loath to do that.  And frankly, courts don't love it.  But if we're going to keep things moving, you should always feel as though that is an option.  And you can always write a letter, and I will hear from the other side by letter and adjudicate it if I can without any formal motion and within a week, so that's my approach.

So assuming, then, that everyone is acting in good faith and expeditiously -- which I completely expect from

L5DGGLOC

everyone, I don't have any doubt about the lawyers on both sides -- is there anything about this case in particular that will cause delays?

MR. AINSWORTH:  We expect at least some of the depositions to occur in the Philippines.  And of course if we can group them all together and take one trip, that might expedite things.  Or if we can do it by video, that might expedite things.  Another way that we might expedite things, your Honor, is if you were to appoint a special master to oversee discovery disputes.  I have seen where that is often effective.  The master can make decisions quickly, might even sit in the depositions, and have a shortened appeal time for the master's decisions, that could help expedite things.

THE COURT:  Well, it seems to me premature to do anything like that.  So here's what I am going to do.  I'll add 30 days to my normal fact discovery period, so that would mean five months for fact discovery.  And I'd like to confer and agree on interim deadlines.  And usually, I provide that the parties can change or move those deadlines internally, as long as the final deadline doesn't change, and I will continue to do that.  But I also ask for status letters just to assure myself that things are moving along and to give you a more formal occasion to communicate with me, if for some reason you are shy to just do it spontaneously.  But what I am going to do is I will ask for those every 45 days, starting now.  And my

L5DGGLOC

individual rules say what goes in the status letters.  So basically, it's a way for you to describe what's happening and to show that everybody is acting diligently.  And don't wait for the status letter date if there is some issue that needs my intervention.

And then with respect to expert discovery, I would add another 30 days for expert discovery.  It looks like the expert issues may be complicated and there will be several experts.  So usually I allow 45 days for expert discovery.  Here, I will allow 75 days.

What I would also suggest, it sounds like you all are fairly familiar with the facts because of all the proceedings before this one.  And so what I suggest you do now is to start to block out a time frame, given the discovery schedule, when and how you would be taking depositions of all the various people, but particularly the people in the Philippines so that you get their schedules lined up, as well as your own schedules lined up.

With respect to ESI, as you can see, my individual rule provides for limitations on ESI.  And the plaintiffs have asked that those restrictions be lifted.  And frankly, the restrictions are just a way for the parties to flag to me and flag to each other if a case will need more supervision of electronic discovery.  If not, there's nothing magical about those limits, and they're inappropriate for some types of

L5DGGLOC

cases, and it sounds like this may be one of them.  What I will do is I will list all of the restrictions on ESI, but I would like you to negotiate ESI protocols and negotiate those as well as any other appropriate issues, and I would like you to file it within two weeks for me to so order.  And I assume you have a template or something that will tell you all the various issues that might be considered and addressed.  But if not, the Seventh Circuit has an excellent discovery protocol.  So I'll ask for that as well.

And I'll put everything I've just ordered in a written order so that there's no confusion.  And I'll also put it in a written schedule.  If there's anything that's different between what I just said and what's in the written order, please follow the written order.

Is there anything else we should talk about?

MR. AINSWORTH:  I took a look at your Honor's rules about 502(d) order.  I think that process is good.  I will circulate to defendants' counsel a proposed Rule 502(d) order.

THE COURT:  Good.  Thank you.

Anything from defendants?

MR. PERRY:  This is Dan Perry for the defendants.  I think the only other thing that was raised in the pre-motion case management plan was the other side has suggested that more than ten depositions would be appropriate in this case.  As a first stop, I don't think it makes sense to waive that

L5DGGLOC

limitation, but I did want to flag that for your Honor while we have you here today.  We obviously haven't seen the amended complaint and don't know exactly what depositions will be needed.

THE COURT:  Once you have the amended complaint, I assume it won't be so different from the current complaint, you can even talk about it in advance, you should just talk about who realistically needs to be deposed and negotiate that.  And to the extent that you can't, then let me know and let me know what your respective differences and positions are.  And obviously you are in a better position to decide many of these things than I am because you're closer to the case, but I am happy to step in if you can't solve something.

So I'll issue an order, I will look forward to getting your ESI protocols and your first status letter in 45 days and an amended complaint.  Thank you.  And we're adjourned.

(Adjourned)