

**RACHEL PENSKI FISSELL**  rfissell@walfishfissell.com  +1.212.672.0523
405 Lexington Avenue, 8th Floor  New York, NY 10174  www.walfishfissell.com

July 9, 2021

<u>Via ECF</u>

Hon. Sarah Netburn
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:  *Global Gaming Philippines, LLC v. Razon, et al.*, No. 21-cv-2655 (LGS) (SN)

Dear Judge Netburn:

   We write on behalf of Defendants Enrique K. Razon, Jr. ("<u>Mr. Razon</u>"), and 11 Essex Street Realty LLC, Asia Arrow Limited, Bowery Bay LLC, Campanilla LLC, Ensara LLC, Fesara LLC, Nozar LLC, and Rizolina LLC (the "<u>Real Estate Entities</u>") to request an order compelling Plaintiff to produce documents in response to Mr. Razon's and the Real Estate Entities' document requests numbered 5, 7, 8, and 12 (the "<u>First Group</u>" of requests at issue) and 19 (the "<u>Second Group</u>").[1] The documents sought in the First Group all go to Plaintiff's *investigation and due diligence* regarding its counterparty, Plaintiff's *knowledge and understanding* regarding its counterparty and the other defendants we represent, and Plaintiff's *decision* on how to structure its contractual relationship. Under controlling case law, and given Plaintiff's own allegations, these matters are highly relevant to Plaintiff's "alter ego" theory of liability and the defenses to it. The documents sought in the Second Group concern communications with a third-party witness and informant.

**Background**

   This is an action to recognize and enforce an arbitral award rendered overseas against two Philippine companies, Defendants Bloomberry Resorts and Hotels Inc. and Sureste Properties Inc. (the "<u>Debtor Defendants</u>"). Plaintiff has also named as defendants Mr. Razon and, among other entities, the Real Estate Entities on the theory that Mr. Razon is liable on the award as the "alter ego" of the Debtor Defendants and that the Real Estate Entities are in turn liable as the alter ego of Mr. Razon or of the Debtor Defendants. First Am. Compl. (Dkt. 85) ("<u>FAC</u>") ¶¶ 202-03, 214-22.

   To hold that a majority shareholder is the "alter ego" of a corporation – to pierce the corporate veil – is an extraordinary remedy, and deployed only when necessary to achieve an equitable result. *E.g.*, *William Wrigley Jr. Co. v. Waters*, 890 F.2d 594, 600 (2d Cir. 1989);

---

[1] GGP's Responses and Objections are attached hereto as Exhibit 1 and GGP's letter amendment to its Responses is attached as Exhibit 2. The parties met and conferred by telephone on June 25, 2021, but have been unable to resolve their dispute.

*Koninklijke Philips Elecs. N.V. v. The ADS Grp.*, 694 F. Supp. 2d 246, 251-252 (S.D.N.Y. 2010).[2] A plaintiff must show not just that the defendant "completed dominated" the corporation, but that such domination was used to perpetrate a fraud or other wrong that injured the plaintiff. *E.g.*, *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997).

Given that the veil-piercing remedy is deployed specifically (and only) to remedy a fraud or other injustice, courts carefully consider, among other things, *the investigation that the Plaintiff performed* before entering into the relevant contract. Courts also take into account the *Plaintiff's knowledge and understanding* of who its contractual counterparty really was (and was not). And courts find relevant the *Plaintiff's decision-making* on how to structure its contractual relationship. *Brunswick v. Waxman*, 599 F.2d 34 (2d Cir. 1979), for example, held that it would not accomplish "justice or equity" to pierce the veil where the plaintiff had had an opportunity to conduct a financial investigation and was aware all along that its contractual counterparty was created specifically to avoid the liability that plaintiff was seeking in the case. *Id*. at 36 ("Brunswick obtained *precisely what it bargained for*, and it did not bargain for **or contemplate** the individual liability . . . which it now seeks to enforce." (emphasis added)).

Another case noted that the fact that plaintiff had "**full knowledge of** [its counterparty's supposed "dummy"] status tend[ed] to confirm the correctness" of the district court's conclusion that the requisite fraud or wrong was absent. *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 716 Fed. App'x 23, 29 (2d Cir. Nov. 16, 2017). Yet another case agreed that "courts are especially reluctant to find sufficient evidence of wrongdoing where the party seeking to pierce the veil **had the opportunity to investigate the financial records and structure of the relevant corporation ahead of time**." *Lakah*, 996 F. Supp. 2d at 268 (citing *Brunswick*) (emphasis added). The court found it significant that "Respondents **investigated** *the Lakahs'* **businesses** *to determine whether they would be able to meet their obligations . . .*, and [disclosure documents] *made clear that the Issuer was a shell company. In essence, Respondents obtained what they bargained for*." *Id*. (emphasis added). And in yet a further case, New York's First Department found it significant that the plaintiff had *not* "alleged that it believed it was contracting with or had rights vis-à-vis [an affiliate of the contracting party] or any entity other than [the contracting party]." *Skanska USA Bldg. Inc. v. Atl. Yards B2 Owner, LLC*, 146 A.D.3d 1, 12-13 (1st Dep't 2016). "Plaintiff **could have negotiated for such rights**. Having failed to do so, **plaintiff cannot now claim that it was tricked** . . . and thus should be allowed to assert" alter ego theories of liability. *Id*. (emphasis added).

What is more, Plaintiff itself has *put in issue* these very subjects in its amended complaint. Plaintiff alleges that before entering into the contracts at issue here, Plaintiff and/or its affiliates **conducted "extensive diligence,"** FAC ¶ 52; *see also id*. ¶ 54 ("diligence process", "diligence checklists"). The FAC also alleges that despite the *formal* contractual relationship, "**it was understood** by all parties" – including Plaintiff – "that the Debtor Defendants *were simply vehicles through which Razon was pursuing his* **personal** *gaming aspirations, and that [Plaintiff]* **was in**

---

[2] The relevant law for assessing alter ego liability here is the federal common law prevailing in this Court, *see CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 75 (2d Cir. 2017), but the Second Circuit's common law standards in this area are "taken directly from New York law." *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 260 (S.D.N.Y. 2014).

Judge Netburn
July 9, 2021
Page 3

*fact providing services to*" – in other words, Plaintiff was somehow actually contracting with – "Razon." *Id*. ¶ 63. On the same subject, the FAC alleges (albeit in seeming contradiction to the prior allegation) that Plaintiff "rel[ied] on the false premise that the Debtor Defendants at all times had a separate corporate personality and would [not] be operated . . . solely for Razon's personal financial benefit." *Id*. ¶ 206(d)(i); *see also id.* ¶ 142 (Plaintiff "rel[ied] (as it is entitled to) on the premise that the Debtor Defendants would operate as legitimate corporate entities, not mere instrumentalities of Razon, acting at the direction and for the sole benefit of Razon.").

**First Group**

<u>Request 8 sub-parts (a)-(c) and Request 7</u>: Plaintiff is categorically refusing to produce documents in response to these requests. Ex. 2 at 2. Request 8(a)-(c) focuses on investigation and due diligence by Plaintiff and its affiliates[3] into "the assets" and the "financial condition" of the Debtor Defendants and their parent (Bloomberry Resorts Corporation, or "<u>BRC</u>") and into the prospect of enforcing an arbitration award locally. Request 7 asks about Plaintiff's and its affiliates' expectation that Mr. Razon would be liable for the debts of the contracting parties or their parent. Ex. 1 at 6-7.

Plaintiff has not and cannot articulate any burden from these subjects, and their relevance cannot seriously be denied. As reviewed above, prior courts have found a plaintiff's investigations into the assets and financial condition of the contracting counterparties highly relevant. On top of that, here, one of Plaintiff's theories of a "fraud or wrong" is that Mr. Razon and the Debtor Defendants are "hid[ing] behind Philippine borders *and its local courts*." FAC ¶¶ 5, 10. In other words, insisting, as the Debtor Defendants have done, that Plaintiff enforce its award in the Philippines (as if Plaintiff did not know that that could happen) is *itself* a fraud or injustice warranting veil-piercing. That theory collapses if (as we suspect and are entitled to discover) Plaintiff gave due regard to the reality that any eventual arbitral award would *have* to be enforced in the Philippines, which is the only place the Debtor Defendants have assets. And to the extent Plaintiff did consider that reality, *exactly what Plaintiff understood and contemplated* would be relevant.

<u>Request 8 subparts (d)-(i) and Request 12</u>: These ask about investigation and understanding on subjects that the case law holds is relevant to the veil-piercing analysis. *See* Ex. 1 at 6-7, 8-9. On these, Plaintiff proposes to produce only *pre*-contractual documents and further seeks to narrow the scope substantively, including, in the case of Request 12, by producing only documents that "reflect" a version of events favorable to Plaintiff. Ex. 2 at 2, 3. But these requests are relevant in their entirety. Plaintiff has articulated no reason or basis for narrowing the scope substantively.

The time limitation to pre-contractual documents also is unfounded, because the theories of fraud and wrong here *are not limited to the pre-contractual period*. Plaintiff's theory, or one of them, is that Plaintiff was not only *lured into*, but *kept in*, a relationship with a bad actor. *E.g.*, FAC ¶ 206(d)(i) (Plaintiff "rel[ied] on the false premise that the Debtor Defendants **_at all times_**" were operated legitimately rather than for Mr. Razon's sole benefit). Additionally, Plaintiff alleges

---

[3] Our request defined "You" or "Your" as "Plaintiff Global Gaming Philippines, LLC, GGAM Netherlands B.V., Global Gaming Asset Management L.P., and their affiliates."

Judge Netburn
July 9, 2021
Page 4

that a public offering and associated restructuring conducted post-contract execution was mainly a means for Mr. Razon to enrich himself and maintain his sinister domination of the Debtor Defendants. *Id*. ¶¶ 66, 74. But *Plaintiff, by its own account, "played a critical, active role in the highly-successful road show" used to promote the public offering. Id*. ¶ 86; *see also id*. ¶¶ 84, 87 (additional allegations regarding Plaintiff's role in the roadshow and Plaintiff's "work[]" to "garner and maintain investor support").

In other words, given its extensive involvement in the public offering, we suspect that (and are entitled to discover whether) Plaintiff was aware full well of the circumstances that Plaintiff now claims amount to inequitable "domination." And if Plaintiff was aware, there can have been no fraud or cognizable wrong to Plaintiff. Additionally, to the extent Plaintiff *was* aware, *Plaintiff would be implicated in the deception* that, according to the allegations of the complaint, was perpetrated on the public shareholders of BRC. (Those investors were obviously not told that the Bloomberry entities were just alter egos of or vehicles for Mr. Razon whose corporate form should be and could be disregarded.) In other words, our clients strongly suspect they have an unclean hands defense, and they are entitled to take discovery in support of it. *E.g.*, *ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 329-30 (1994) ("The 'unclean hands' doctrine closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." (internal quotation marks omitted)).

Request 5: Plaintiff is categorically refusing to produce documents in response to this request, which focuses on discussions, if any, about making Mr. Razon a formal party to or guarantor on the contracts with the Debtor Defendants. Ex. 2 at 2. Plaintiff has articulated no basis for this position, and the case law reviewed above makes this subject squarely relevant. *E.g.*, *Brunswick*, 599 F.2d at 36 (finding relevant what a plaintiff did or did not **"*contemplate*"** by way of individual liability on a corporate contract). If, for example, Plaintiff's principals discussed, but decided against, insisting that Mr. Razon guarantee the obligations at issue, that would obviously be relevant to what Plaintiff understood and expected.

**Second Group**

Our Request No. 19 is for all communications with third-party witness and informant Ahmad Atwan. Ex. 1 at 11-12. Plaintiff has asserted unfounded common interest and work product objections in an attempt to limit (and also obscure) the scope of *both* its production *and* its log in response to this request. Ex. 2 at 4-5. *All* responsive documents should be produced. The Collingwood defendants explained why in their letter motion to compel filed today (Dkt. 102), and we adopt and join in their arguments.

Respectfully submitted,

*/s/ Rachel Penski Fissell*

Rachel Penski Fissell