

# DANIEL M. PERRY

*Partner*
55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5083
dperry@milbank.com  |  milbank.com

July 9, 2021

**VIA ECF**

The Honorable Sarah Netburn
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Global Gaming Philippines, LLC v. Razon Jr., et al.*, No. 21-cv-2655 (LGS)-(SN)

Dear Judge Netburn:

Defendants BRHI[1] and SPI write to request an order compelling Plaintiff GGP to produce documents in response to BRHI's and SPI's document request nos. 1-22 and 29 (the "<u>Disputed Requests</u>").[2]  The documents sought in the Disputed Requests are highly relevant to BRHI's and SPI's defenses, and GGP has no legitimate basis to refuse to produce them.

By way of background, GGP and BRHI/SPI entered into an agreement (the "<u>MSA</u>") in 2011, whereby GGP would manage the BRHI/SPI-owned Solaire Resort & Casino in the Philippines. Soon thereafter, BRHI/SPI determined GGP's performance was inconsistent with what had been represented during the contract negotiations, and BRHI/SPI subsequently terminated GGP for cause.  In the ensuing Arbitration, the central issues were whether GGP breached the MSA (e.g., by violating the MSA's "Standard of Care"[3] and failing to perform) and/or fraudulently induced BRHI/SPI's entry into the MSA (e.g., by not having the valuable direct connections with VIPs and Macanese junket operators that it claimed to have).  During the Arbitration, BRHI/SPI attempted to adduce evidence concerning GGP's efforts to bring VIPs and junket operators to Solaire, and the reasons behind their failures to do so.  And the Tribunal ordered GGP—which had 4 executives, including Bill Weidner and Eric Chiu—to produce documents regarding such efforts.

The Tribunal issued the Liability Award in GGP's favor in 2016.  But the U.S. DOJ later entered into a non-prosecution agreement with Las Vegas Sands Corp. ("<u>LVS</u>") (together with a U.S. SEC

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in Exhibit A.
[2] BRHI's and SPI's document requests are attached hereto as Exhibit A, and GGP's responses and objections are attached hereto as Exhibit B.  The parties met and conferred, but have been unable to resolve their dispute.
[3] *See* MSA § 2.5 (ECF No. 85-4) (providing that GGP must "act[] in the highest standards of business ethics.").

MILBANK LLP

NEW YORK  |  LOS ANGELES  |  WASHINGTON, D.C.  |  SÃO PAULO  |  FRANKFURT
LONDON  |  MUNICH  |  BEIJING  |  HONG KONG  |  SEOUL  |  SINGAPORE  |  TOKYO

The Honorable Sarah Netburn
July 9, 2021                                                                                                           Page 2

cease and desist order with LVS, the "FCPA Orders") concerning violations of the U.S. Foreign Corrupt Practices Act ("FCPA"), including those committed by Weidner and Chiu during their tenure at LVS and before they formed GGP.[4] With the publicly available FCPA Orders as a roadmap, BRHI/SPI were finally able to determine that Weidner's and Chiu's unlawful conduct continued while at Solaire. Worse yet, BRHI/SPI learned that the documents and communications of Chiu—who was the executive directly responsible for the improper payments—had been withheld from production in violation of the Tribunal's orders. BRHI/SPI applied to the Tribunal to re-consider the Liability Award in light of the misconduct in the Arbitration, but the Tribunal held that it lacked authority to do so. This misconduct, and particularly the withholding of documents to conceal violations of the MSA and applicable laws prohibiting bribery of public officials, offers a basis to resist recognition and enforcement of the Arbitration Awards in the U.S. as a matter of U.S. public policy and in the Philippines as a matter of Philippine law.

### *BRHI and SPI Intend to Raise Defenses Based on GGP's Fraud in the Arbitration*

GGP seeks recognition and enforcement of the Arbitration Awards against BRHI and SPI. Such recognition and enforcement may be refused if enforcement of the awards "would be contrary to the public policy" of the United States.[5] Courts have held that enforcement of arbitral awards obtained through fraud in the arbitration is contrary to U.S. public policy.[6] Courts have also recognized that where there are disputed facts concerning a defense to recognition and enforcement—including based on fraud in the arbitration—the defendant is entitled to discovery.[7]

Here, recognition and enforcement of the Arbitration Awards would be contrary to U.S. public policy because they were procured by GGP's fraud, as briefly summarized below:[8]

- The findings of fact and agreed facts in the FCPA Orders are a damning indictment of Weidner and Chiu in connection with their dealings with certain Chinese individuals and entities, including individuals at the Chinese Liaison Office in Macau (the "CLO"), China International Travel Services ("CITS"), and Chu Kong Shipping. For example, the FCPA Orders detail how:
    - Weidner and Chiu directed/approved transfers of tens of millions of dollars that were mis-documented, misrepresented, unauthorized, and/or had no identifiable purpose;

---

[4] *See generally* Spectrum Report (ECF No. 30-1) at §§ I-II; *see also* https://www.justice.gov/opa/press-release/file/929836/download; https://www.sec.gov/litigation/admin/2016/34-77555.pdf.

[5] *See* Art. V(2)(b) of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, codified in Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.*

[6] *See, e.g.*, *Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) (noting that "a fraudulently obtained arbitration agreement or award[] . . . might violate public policy and therefore preclude enforcement" under Art. V(2)(b)).

[7] *See Thomas Kinkade Co. v. Hazlewood*, 2007 U.S. Dist. LEXIS 9136 (N.D. Cal. Jan. 25, 2007) (allowing discovery in connection with FAA § 10(a)(1) defense where party "claim[ed] that the specific instances of fraud it [sought] to uncover were not discoverable during the proceedings below because defense counsel actively concealed it during those proceedings . . . ."); *see also* RESTATEMENT (THIRD) U.S. LAW OF INT'L COMM. ARB. § 4.31(b).

[8] Evidence supporting these allegations is summarized in the Spectrum Report (ECF No. 30-1).

- o  Such transfers were made to a "Consultant" hired at the recommendation of the CLO, as well as to CITS and Chu Kong Shipping;

- o  It was believed that such transfers would help secure key Chinese government approvals in connection with a multi-billion dollar project (which ultimately, they did);

- o  An LVS employee and LVS's outside counsel discovered, and repeatedly raised red flags concerning, the corruption underlying these transfers, and Chiu sent emails stating that he had "great worries about [the LVS employee] and outside counsel 'knowing too much,'" and that the LVS finance employee "is still making trouble for us . . . We must think about what to do with her quickly";

- o  "Ultimately, [Chiu] succeeded in having [the LVS employee] and outside counsel removed," and it was "[Weidner] [who] arranged to have the [LVS employee] placed on administrative leave and eventually terminated. Meanwhile, [Weidner] approved the ongoing payments to the Consultant[,]" which were falsely recorded as being for, *inter alia*, "arts and crafts"; and

- o  Weidner made a presentation to LVS's board that concealed red flags of corruption.

- The release of the FCPA Orders revealed that Weidner lied to BRHI and SPI in August 2012 when asked if and/or to what extent GGP's (formerly LVS's) executives were involved in the LVS transactions under investigation.[9] Weidner denied having any substantive involvement in the transactions or awareness of wrongdoing, and was silent about Chiu's participation.

- The release of the FCPA Orders separately made clear that, while performing under the MSA, GGP pursued two illegal/corrupt "strategies" for Solaire that involved (1) causing a Chinese government official with the CLO to assist GGP in building valuable relationships with and exerting influence over Macanese junket operators in exchange for remuneration, and (2) manipulating commodity trade settlements between companies in order to illegally move cash out of China for use by the Chinese individuals that own/control those companies (in other words, creating a vehicle for money laundering). Chiu—the only GGP executive who speaks Mandarin—was "instrumental" to executing these "strategies," which involved Chiu directly working with the ***exact same*** Chinese individuals/entities implicated in the FCPA Orders: the **CLO**, **CITS** and ***Chu Kong Shipping***. The existence of the ongoing FCPA investigation into Weidner, Chiu and these other Chinese individuals and entities further explains why GGP was unable to deliver VIP junkets to Solaire in the manner it represented during the MSA negotiations. GGP apparently did not have bona fide, lawful relationships with junket operators and, as a result, was unable to deliver VIP junkets when criminal and regulatory investigations in the U.S. made clear that GGP could not continue its illegal conduct in China.

- The release of the FCPA Orders also revealed that—in violation of the Tribunal's orders— GGP unilaterally decided it would not search for or produce ***any*** of Chiu's documents,

---

[9] BRHI and SPI learned of the FCPA investigation from press reports in August 2012.

The Honorable Sarah Netburn
July 9, 2021                                                                                                                   Page 4

> *including Chiu's direct communications with the Chinese individuals and entities with whom he was engaging in furtherance of GGP's two "strategies."*[10]

- It also came to light that GGP was engaged in business dealings with a notorious triad (organized crime) leader named Cheung Chi Tai (whose gang nickname is "Tai Gor").

Had the above facts not been hidden through GGP's misrepresentations to BRHI and SPI and its abuse of the Tribunal's orders—most notably, GGP's decision not to search for and produce Chiu's documents, which likely would have shown his unlawful conduct on behalf of GGP—the Tribunal would have rendered the Liability Award in favor of BRHI and SPI. For example, although the Tribunal acknowledged one instance of GGP's misconduct,[11] it found that this conduct fell short of breaching the MSA's "Standard of Care" requirement because "it seems to be an isolated event; *there is no other evidence of unethical conduct by GGAM*."[12]

### The Disputed Requests Are Highly Relevant to BRHI's and SPI's Defenses

As noted below, the Disputed Requests are tethered to facts that will advance the defenses:

- <u>Disputed Requests Nos. 1-5, 11-12</u>. GGP lied to BRHI and SPI about the extent of Weidner's and Chiu's involvement in the conduct later determined to violate the FCPA. That lie breached the MSA's "Standard of Care," enabled GGP to execute an option to purchase nearly 10% of the publicly-traded shares in BRC at a steep discount to market value, and infected the Arbitration, during which GGP's counsel touted the reputation of GGP's executives, attacked an expert witness for being on the board of a company that entered into a non-prosecution agreement with the U.S. DOJ, and dismissed allegations that GGP executives had engaged in illegal conduct as "red herrings," "defamatory," and "smears."

- <u>Disputed Requests Nos. 16-21</u>. GGP's internal correspondence—only some of which was produced in the Arbitration—indicates that at the same time that Dr. Chen Xiang, a Chinese government official with the CLO, was conferring valuable benefits on GGP, GGP made two unexplained transfers of $25,000 to an entity called "Sahara ASF Asia," which is affiliated with Chiu's office in Macau. Garry Saunders, GGP's Vice President, emailed Weidner that he did not understand the purpose of these transfers. Weidner did not respond to that email and instead forwarded it to Chiu, stating "*We need to talk. Call?*" Given that GGP has represented that it did not have any out-of-pocket expenses that were not paid by BRHI/SPI, and that entities affiliated with Weidner (*e.g.*, Weidner Resorts/Holdings) paid Chiu's salary, the available evidence suggests these funds were used by Chiu to pay Dr. Chen Xiang.

---

[10] After the release of the FCPA Orders, GGP initially denied its violation of the Tribunal's orders, but later conceded that the violation was deliberate. GGP argued the violation was justified because, *inter alia*, Chiu spoke Mandarin.

[11] This related to GGP's appointment as COO of Solaire an individual who GGP's President (another former LVS executive) had previously fired from LVS for his role in rigging a casino game, and (ii) hiding this fact from BRHI, SPI, and the Philippine government entity that regulates casinos. *See* Liability Award (ECF 85-2) ¶ 243.

[12] *Id.* ¶ 245. Of course, there was no other evidence of GGP's unethical conduct at the time because GGP withheld it.

The Honorable Sarah Netburn
July 9, 2021                                                                                                                    Page 5

- <u>Disputed Request Nos. 6-8, 13-15, 22</u>.  GGP has never searched for or produced Chiu's documents, which would likely further reveal the improper nature of GGP's conduct.  Indeed, limited GGP productions in the Arbitration indicate that Chiu (i) communicated directly with Chinese parties regarding GGP's improper "strategies," and (ii) often used code words—e.g., "Dr. C" or "xxx"—to refer to the Chinese government officials with whom he worked.

- <u>Disputed Requests Nos. 9-10 and 29</u>.  Finally, Howard Lutnick, the Co-Chairman of GGP, presumably had knowledge of GGP's improper "strategies."  GGP also failed to search for and produce Lutnick's documents in the Arbitration.

***GGP Has No Basis to Refuse to Produce Documents Responsive to the Disputed Requests***

GGP's initial objections to the Disputed Requests were boilerplate relevance objections.  GGP subsequently argued that it need not produce the documents because the defenses are barred by issue/claim preclusion due to prior consideration by the Tribunal and the Singapore High Court.[13]

GGP's objections are meritless.  <u>First</u>, courts have consistently rejected parties' efforts to resist discovery related to claims or defenses on the grounds that such claims or defenses are legally insufficient.[14]  In short, GGP is, "in the guise of a discovery motion . . . asking for what amounts to dispositive relief from an affirmative defense."[15]  <u>Second</u>, GGP's issue and claim preclusion argument is baseless.  The Tribunal expressly *declined* to consider the evidence of fraud that was discovered and raised after the issuance of the Liability Award—both with respect to reconsidering the Liability Award and rendering the Final Award—because it determined that it did not have jurisdiction to do so.[16]  And the Singapore High Court did not consider whether the Arbitration Awards violated the public policies of the *United States*.  Without commonality of issues and claims between the current and previous proceedings, GGP's preclusion theories must fail.[17]

Ultimately, "as guardian of . . . the integrity of court's confirmation . . . of the arbitration award [the Court] must satisfy itself that the award was not infected by fraud by either the parties or counsel."[18]  As such, BRHI and SPI request an order compelling GGP to produce all non-privileged documents responsive to the Disputed Requests.

---

[13] *See* Email from J. Dunn to B. Lowe (June 30, 2021), attached hereto as Exhibit C.
[14] *See, e.g.*, *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 48 (E.D.N.Y. 2018) (rejecting defendant's argument that "[b]ecause [plaintiff] lacks a viable fraud claim . . . information relevant only to that claim is not discoverable within the scope of Fed. R. Civ. P. 26" and holding that a party's "opposition to a discovery motion is not the proper forum for raising challenges to the viability of" defenses) (citations omitted); Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2008 (3d ed.) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.").
[15] *Mon Chong Loong Trading Co. v. Travelers Excess & Surplus Lines Co.*, 2014 WL 5525237, at *3 (S.D.N.Y. Oct. 27, 2014) (rejecting plaintiff's attempt "to block discovery on defendant's affirmative defense of fraud . . . [by] contending that the principle of judicial estoppel precludes assertion of that defense.").
[16] *See* Final Award (ECF No. 85-1) ¶¶ 343, 419.
[17] *See CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) (stating the elements of issue preclusion, including that the identical issue was raised, litigated and decided in a previous proceeding).
[18] *Hazlewood*, 2007 U.S. Dist. LEXIS 9136, at *12.

The Honorable Sarah Netburn
July 9, 2021
Page 6

                Respectfully submitted,

                */s/ Daniel M. Perry*

                Daniel M. Perry