L6SCphiC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

Global Gaming Philippines,
LLC,

                    Plaintiff,

          v.                          21 CV 2655 (SN)
                                      Telephone Conference
RAZON, JR., et al.,

                    Defendants.

------------------------------x
                                      New York, N.Y.
                                      June 28, 2021
                                      3:00 p.m.

Before:

                    HON. SARAH NETBURN,

                                      Magistrate Judge

                         APPEARANCES

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO, P.C.
     Attorneys for Plaintiff
BY:  KEVIN N. AINSWORTH

MILBANK LLP
     Attorneys for Defendant Bloomberry Resorts & Hotels Inc.
     and Sureste, Properties, Inc.
BY:  DAN PERRY

MEHAFFY WEBER PC
     Attorneys for Defendant Collingwood USA, Inc., Collingwood
     Brookshire USA, Inc., Collingwood Appalachian
     Minerals, LLC
BY:  COREY SEEL

WALFISH & FISSELL PLLC
     Attorneys for Defendant DESC
BY:  RACHEL PENSKI FISSELL

L6SCphiC

(The Court and all parties appearing telephonically)

THE COURT:  Good afternoon, everybody.  We have a large appearance today, so I'm just going to run through everybody's names.  If I can ask the parties who intended to speak state their appearance for the record and indicate, if they would like, who else is on the phone, but we don't need to have each individual lawyer state his or her appearance if they're not going to be speaking.

This case is Global Gaming Philippines LLC v. Razon, Jr. et al.  The docket is 21 CV 2655.  Can I ask counsel for the plaintiff to state his appearance.

MR. AINSWORTH:  Good afternoon, your Honor.  Kevin Ainsworth with Mintz Levin Cohn Ferris Glovsky & Popeo.  On the line with me are two of my partners, Daniel Pascucci and Joseph Dunn.  Joe may be speaking depending on the context.  Also on the line is our associate, Iris Greenquist.

THE COURT:  Thank you.  On behalf of our defendants, I'll first turn to our defendant Bloomberry Resorts and Sureste Properties.

MR. PERRY:  Thank you.  This is Dan Perry from Milbank on behalf of Bloomberry and Sureste.  We call them BRHI and SPI, colloquially in the case.  With me is my colleague, Brett Lowe.

THE COURT:  Thank you.  On behalf of Collingwood USA and the other Collingwood entities.

L6SCphiC

MR. SEEL:  Yes, your Honor.  This is Corey Seel with the law firm of Mehaffy Weber.  I'm on the line just by myself, but for those Collingwood entities, I can name them if the Court wishes, but generally speaking, we call them the Collingwood defendant.

THE COURT:  Thank you I think our court reporter has an appearance sheet, so he should be okay.

Lastly, for defendant Razon, I'll just call them the Razon-related entities.

MS. FISSELL:  Hi, your Honor.  This is Rachel Penski Fissell on behalf of defendants Razon.  We refer to them as the real estate entities.

THE COURT:  Okay.

MS. FISSELL:  Also on the line is my partner, Daniel Walfish.  Thank you.

THE COURT:  All right.  So I've been going over the docket sheet in this case.  Judge Schofield only just recently referred the case to me for discovery.  I see that this case was only commenced a few months ago, and we are very close to the 100 docket entry, so the case has obviously been quite active.

I also saw that there was a letter that was filed on June 23rd regarding a stay of discovery and anticipated motion to dismiss.  Judge Schofield will be handling the scheduling on the motion to dismiss.  I don't believe she anticipated ruling

on the discovery stay motion.  I reviewed the docket.  It appears that a stay of discovery has been raised twice already before her and twice she has denied that request.  So I am not granting any requests to stay discovery at this stage.

I've also reviewed the parties' status report that was filed on June 17th and the joint letter that was filed on June 15th.  It appears that the parties are moving forward with discovery, maybe with some disagreements, though I think given the delay in getting you before me today, I'm not sure any of those disputes are relevant any longer.

Why don't I turn to Mr. Ainsworth and see if there are any issues that you think need to be addressed by the Court today.

MR. AINSWORTH:  Again, good afternoon, your Honor. Kevin Ainsworth here.

Would it be helpful to provide a little background of the case or do you want to just address the discovery issues, your Honor?

THE COURT:  Always helpful to have some background, so thank you.

MR. AINSWORTH:  Okay.  A large part of this case involves what's called the Court's secondary jurisdiction.  We filed the action under the Federal Arbitration Act, 9 U.S.C. Section 207, which implements the international convention on the recognition and enforcement of foreign arbiter awards, also

L6SCphiC

known as the New York Convention.  Plaintiff and defendants BRHI arbitrated for six years a contract dispute.  It was in Singapore, which is a contracting state to the New York Convention, and distinguished arbitral panel issued two awards in favor of plaintiff against BRHI and Sureste in an amount of roughly $300 million.  So, we brought that to the United States to enforce that and to collect, to the extent we can, assets here in the United States.

In this regard, the Court, sitting in its secondary jurisdiction, has a limited role.  The Second Circuit in the CVF Indústria case in 2017, which is 850 F.3d 58, and in other decisions, and, in fact, recently, just last fall, the Second Circuit said there is a well-established federal public policy in favor of arbitration, and improper collateral litigation may itself seriously undermine that national policy.  That was in Pagadwon (ph), the carnival court, 830 F.Appx 61 from November of 2020.

So, in enforcing the award, plaintiff's burden is minimal.  Section 207 of Title 9 says, the Court shall confirm the award unless it finds one of the grounds for recusal or deferral of recognition or enforcement of the award specified in the New York Convention.  And those are limited grounds --

THE COURT:  Sorry, counsel.  If you're going to read things, you need to read them more slowly so that I can hear it and, as important, so that the court reporter can.

L6SCphiC

MR. AINSWORTH:  I'll be happy to slow down, your Honor.

THE COURT:  Thank you.

MR. AINSWORTH:  It's not an opportunity to relitigate issues.  They are resolved in the arbitration.  Principals of comedy (indiscernible) are guiding.  So the New York Convention limits the defenses that can be raised.  It's apparent that BRHI and Sureste have no defense to enforcement of the arbitral awards, but they're hoping to draw out discovery on issues that will resolve in the underlying arbitration.  It's become clear in discovery -- your Honor, we're in the midst of meet and confer to resolve these issues, so I am not asking your Honor to resolve them at the moment, but I wanted to outline that background.

There is a public policy defense in the New York Convention, but the Second Circuit says that defense only applies where enforcement of an award would violate, quote, our most basic notions of morality and justice, and that was in Pagadwon case that I cited a few minutes ago, your Honor.

So that's a huge part of the case, is enforcing the award against those two award debtors.

We're seeking to simply -- your Honor, I'm hearing beeping.  I don't know whether that's --

THE COURT:  It's not you getting dropped off nor is it me getting dropped off.  It may be that some entity has dropped

L6SCphiC

off.

MR. AINSWORTH:  Court reporter is still there?

THE COURT:  The court reporter is still here.

MR. AINSWORTH:  There are two other aspects of the case, your Honor.  One is we want to find the defendants, other than BRHI and Sureste to be alter egos.  The controlled buyer zone that he's transferred assets between them and used them as his alter ego considered their assets in the United States are subject to collection under reward.  Those issues of discovery is in the hands of the defendants.

Finally, we asserted a claim against his own, personally — this is usually in court, primary jurisdiction, for conversion — saying that the actions he took to thwart our client's sale of certain option shares has converted those shares, and the amount at issue there is hundreds of millions of dollars.

So, again, the actions that he took, the discovery there is in his hands.  There is no dispute our client owned the shares, was unable to tell them -- so the discovery is in his hands.  So, from our view, the vast majority of the corrections and the discovery to be provided should be coming from these defendants.

Early on, probably in April or so, the defendant said he is going to file a motion to dismiss, so we had agreed to amend the complaint.  It was agreed that we could do it by June

L6SCphiC

15th.  I think we filed that on June 13th.  We added a new Collingwood defendant, Collingwood Cayman, which is Mr. Razon is the sole director of and it's the parent of another Collingwood entity.  This is going to be one of those situations where Joe Dunn has the facts specific to that.  But we added an additional Collingwood entity as a defendant.  But it was against this backdrop of knowing we were going to amend the complaint and knowing the issues here and knowing that this might involve discovery internationally.

Judge Schofield set a five-month discovery window ending October 11, so we took aggressive steps to meet that, your Honor.  We issued documents requests and interrogatories and requests for admission in early May and finished sorting those on the defendants, our first set, by May 26th.  We served a lot of requests for admission hoping to narrow the issues, because we understood from counsel at the time, Mr. Perry was representing all defendants.  We had a meet and confer prior to the initial conference and we understood that a lot of these issues were going to drop out, not worth litigating.  So we fired off a bunch of requests for admission hoping to narrow the issues.  The responses that we got back have not narrowed the issues all that much.

So, our concern — and we put this in the letters to the judge we referenced — is that discovery should be prompt. Defendants should be true to things earlier than they are or

L6SCphiC

than they've been willing to do.  They had pushed for a July 30th response providing substantial collection of the documents by July 30th.  The judge had -- I think it was her July 9th -- or June 9th order had said July 30th was the cutoff for that, so we're working towards that.  We're certainly aggressively moving forward to produce what we've got and to respond and to have meet and confers.  We've already had two meet and confers last week, we're going to continue those.  That's why I said the discovery issue isn't really ripe because we haven't finished those meet and confers.

That's the outline of where we are, your Honor.  We feel we need communications, financial information, documents showing ownership and control of all these various entities, and that's what we're pressing for.

The concern about getting squeezed for time, if we don't get everything we need promptly, then we're going to come to end of September, beginning of October, and it pushing up against the discovery deadline, and in part because of the need for meet and confers and back and forth to the court.

THE COURT:  So, looking over the June 17th letter, it appears that certain discovery has been served and that responses were due within the last just few days.  So as of now, I know you're looking to move in a timely way, but are things roughly on track from when they've been served?

MR. AINSWORTH:  I think the short answer, your Honor,

L6SCphiC

is, as of now, yes.  We had hoped a month ago that we would be ahead of where we are.  We've gotten responses, we had meet and confers or started with meet and confers, and we'll continue those this week.  Hopefully, we'll be getting documents very promptly, substantial amounts of documents starting July and moving forward.  Until we get those, it's hard to say whether we're on track.

THE COURT:  And the primary entity for which you are serving documents looks like it's all of them or is it primarily BRHI and SPI?

MR. AINSWORTH:  All of them, your Honor.  In large part, focusing on the (indiscernible) altar ego argument, the moving of money, movement of assets, and the communications about decision making are all relevant to Mr. Razon's control, especially when it comes to their employees of BRHI and Sureste who are taking actions on behalf of or for other defendants.  There is money moving and there is communications exchanging place about control that we want to get.  I think we're going to have a battle over that, we haven't finalized the meet and confer on that, but that's where I see the battle coming.

THE COURT:  Thank you.  Who from the defendants would like to respond first?

MR. PERRY:  Your Honor, this is Dan Perry from Milbank on behalf of BRHI and Sureste.  If I might respond briefly, I don't want to do, sort of, a tit-for-tat rebuttal because it

L6SCphiC

doesn't sound like it's productive or useful.

I do think a little bit of context is helpful, because I do agree with Mr. Ainsworth that there is likely to be substantive disputes over the scope of document production. We've been working with them now for several weeks and engaged in meet and confers, and we're not done with that process, but we're far enough along to both anticipate, I think, that there is likely going to be some areas of disagreement, but we've been productively engaged thus far.

As I think your Honor appreciates, this is, first and foremost, an effort to enforce a judgment against BRHI and Sureste, just those two entities. That's effectively a resort and casino that operates in the Philippines. It's a Philippine company, all of its operations are in the Philippines. The plaintiff in this case provided services to that Philippine company pursuant to management agreements governed by Philippine law.

There will be a jurisdictional defense, and some of the discovery is targeted at jurisdictional issues, and we've been responding to document requests and producing substantial amounts of documents already. We've made a substantial production, as have the other defendants in the case. So, we're proceeding and proceeding at pace.

There is a substantive defense, a public policy defense, which Mr. Ainsworth alluded to that will be made and,

L6SCphiC

without getting too deeply into it, what Bloomberry learned after the conclusion of the arbitration was of misconduct by certain high-ranking employees of the plaintiff, including bribes paid to Chinese government officials.  There was an effort to reopen the arbitration.  There is one employee in particular that was the subject of a U.S. finding against his prior employer, Las Vegas Sands, that talked about some of the conduct which then continued as the plaintiff and their employees were working for our client.

When we became aware of that, there was an effort to in effect reopen the arbitration.  The arbitral panel didn't feel like it had jurisdiction to effectively reopen the case and reserved defenses associated with the withholding of this individual's emails during the arbitral process to the enforcement process.

So, there is a public policy defense.  It's a meaningful and significant defense.  It's a defense that's found in public findings made against the predecessor employer of the senior employees that provided services in this case and involves sort of overlapping facts.  So, we're going to try and work with the plaintiff to get the necessary discovery on those facts, but there may be a dispute there.  But, in any event, there are jurisdictional and substantive defenses with respect to my clients.

Beyond that, I would say this is not what I would call

L6SCphiC

an ordinary course enforcement effort.  There was an effort made by the plaintiffs effectively to attack the assets of the chairman and CEO of the judgment, there is familial and trust assets that are located here in the United States, primarily real estate and energy investments, and the effort here is an enforcement effort against BRHI and Sureste, but it's really an effort intended to access the assets of the CEO of the company, who are represented by the other counsel that made their appearances at the beginning of the call.

So, the matter is complex.  There are a number of different parties.  The discovery that's been sought is wide-ranging and significant from the plaintiffs, so I would expect that we would need to use the courts to settle some of those disputes.  But, at the end of the day, this is not so complex that it really needs to take more than five months, and we are committed to proceeding quickly and have been doing so thus far.

I think, as you saw, we were ready to brief motions to compel as early as this week.  I think we've made some progress on the meet and confer front, although, frankly, not a lot on the plaintiff's side, but we're going to continue that process, play it out to its conclusion.  We are committed to producing the documents that we believe are relevant and appropriate by the end of July.

Just to orient your Honor, the parties have discussed

L6SCphiC

a mid-September deposition schedule, so we actually have quite a lot of time to deal with disputes over the scope of document production and for the plaintiffs to analyze significant productions that will be made before the end of July. So I do think we're making good progress. The parties are working together and are substantively engaged on the scope of discovery on both sides. There is sufficient time in the schedule to conduct that process as we sit here today. As I said, we are committed to working quickly to live with Judge Schofield's five-month fact discovery period. I think it's perfectly doable and achievable here.

THE COURT: Thank you. Did Mr. Seel or Ms. Fissell have anything they want to add?

MR. SEEL: No, your Honor. This is Corey Seel. I think Mr. Perry fairly summarized the same from my point of view, as well.

MS. FISSELL: Yes. This is Rachel Fissell. Same here.

THE COURT: All right. I wonder if it makes sense to schedule dates to file any motions to compel. I'm happy to do that. I want to give you all an opportunity to try and reach a resolution, but maybe it makes sense to set a deadline at the end of next week for any letter briefs. I know there is a holiday coming up, so I want to keep you on a short schedule, but I also recognize that you may not be able to complete the

L6SCphiC

process.  Do we think we can file any letter motions by Friday the 9th?

MR. PERRY:  Your Honor, this is Dan Perry from Milbank.  That's acceptable on our end.

MS. FISSELL:  This is Rachel Fissell.  That's fine here.

THE COURT:  Mr. Ainsworth.

MR. AINSWORTH:  Thank you, your Honor.  Yes.  Kevin Ainsworth.  Yes, that's fine for the plaintiff.

THE COURT:  All right.  So why don't we set Friday, July 9th, as a deadline to file any letter motions to compel.  I'll give you five pages for those.  Either side should file if there is any outstanding issue.  Yes, who is that that wanted to speak?

MR. AINSWORTH:  Kevin Ainsworth, your Honor.

THE COURT:  Yes.

MR. AINSWORTH:  What I understand this to be is a compel based on where we are with the docket responses.  In other words, if it comes in in July and we see that there is some gap in the production that wasn't apparent from the responses, we maybe want to make an additional motion to compel.  I just want to be clear that this is not a cutoff of that opportunity.

THE COURT:  No, it is not, but I understood that there were already some outstanding issues that the parties were

L6SCphiC

working towards.  If you can resolve them, obviously, that's everybody's preference, but I wanted to set a timeline so that we can keep moving forward.  Of course, if there are other issues that come up in connection with review of the production or with respect to depositions or anything else, the parties should engage in the meet and confer process and then file any letter motions with me.

All right.  So, July 9th will be the date to file any letter motions and we'll set Wednesday, July 14th, for opposition.  Of course, if there are no disputes, I would ask that any of the parties file a one-sentence letter just letting me know there is no need for a resolution of the issues because the parties have resolved them.

All right.  Anything further from the plaintiff?

MR. AINSWORTH:  Kevin Ainsworth here.  No, I think that's it, your Honor.

THE COURT:  Thank you.  Anything further from you, Mr. Perry?

MR. PERRY:  No, your Honor.  Thank you.

THE COURT:  Thank you.  Mr. Seel?

MR. SEEL:  Not on discovery, your Honor.  But just for a clarification, the new party that was added, Collingwood Investment Company Limited or the plaintiff calls Collingwood Cayman, I think we call it CICL, but that entity, we did file the letter indicating a desire to file a motion to dismiss, and

L6SCphiC

we did ask for a briefing schedule similar to the other defendants, and I think the Court has asked us to do a reply letter or a followup letter on that.  We understand from the Court's ruling that the stay, obviously, has been denied and that will obviously keep the plaintiff from having to respond to that portion of the letter.

As it relates to the briefing schedule, now that the Court has denied them the stay request, I think that the issue with regards to the briefing issue has been resolved.  Tell me if I'm wrong, Mr. Ainsworth, but the only dispute that was outstanding was if Collingwood Investment Company was going to challenge service, the plaintiff may have wanted a different briefing schedule.  I have since told Mr. Ainsworth that we've completed our analysis, so we won't be challenging the service aspect of it.  So, I think that eliminates any dispute as to whether or not the briefing schedule for the new entity's motion to dismiss would be any different from the other defendants, which I think begins on July 15th.

THE COURT:  Mr. Ainsworth.

MR. AINSWORTH:  Your Honor, yes.  Kevin Ainsworth here.  That's fine.  That representation that they're not challenging service and process, we agree to the briefing schedule.

THE COURT:  Terrific.  I'm just looking to find the schedule on the docket for any other motions.  ECF number 49

L6SCphiC

filed on May 13th.  So I'll just let Judge Schofield know that the parties have agreed that that schedule will control and that the new Collingwood defendant will follow that schedule.

MR. AINSWORTH:  Thank you, your Honor.

MR. PERRY:  Thank you, your Honor.

THE COURT:  Ms. Fissell, anything from you?

MS. FISSELL:  I'm good.  Thank you, your Honor.

THE COURT:  Thank you.  We're adjourned.

* * *