Kevin N. Ainsworth
212 692 6745
kainsworth@mintz.com



MINTZ

Chrysler Center
666 Third Avenue
New York, NY 10017
212 935 3000
mintz.com

July 9, 2021

**VIA EMAIL**
The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall
United States Courthouse
40 Foley Square
New York, NY 10007

Re:   *Global Gaming Philippines, LLC v. Razon, Jr., et al.*, 21 Cv. 2655 (LGS)-(SN) / **Plaintiff's Motion to Compel the Award Debtors to Produce Documents**

Dear Judge Netburn:

On behalf of Plaintiff Global Gaming Philippines, LLC ("GGAM"), we respectfully submit this motion (A) to compel Defendants Bloomberry Resorts and Hotels, Inc. ("BRHI") and Sureste Properties, Inc. ("SPI") (collectively the "Award Debtors" or "Debtor Defendants") to produce Documents in response to the Requests for Production ("RFPs") identified below.[1]

Plaintiff brought this action under the New York Convention to enforce a $296 million foreign arbitration award in favor of Plaintiff and against the Award Debtors, who are alter egos of Defendant Enrique K. Razon, Jr. ("Razon")—the puppeteer of all other Defendants in this case. Plaintiff also seeks to recover hundreds of millions in damages caused by Razon's brazen conversion of Plaintiff's equity shares in one of Razon's companies. Razon and his entities, however, are playing coy with discovery. Despite the breadth of relevant topics of discovery, the Award Debtors have consistently "self-limited" the scope of their responses to Plaintiff's RFPs, largely refused to search for and produce relevant emails and other communications, and asserted a host of baseless objections designed to obfuscate the substance (or lack thereof) in their responses.

---

[1]   This motion is based on the Award Debtors' written responses and objections. Plaintiff met and conferred by telephone with counsel for all Defendants on June 23, 2021 regarding their "general objections" to RFPs and RFAs, as well as specific issues with certain RFPs. Due to the volume of the issues, Plaintiff followed up with a detailed letter on June 30, 2021, identifying each Defendants' many defective responses to the RFPs and RFAs. *See* Exhibit A hereto. Some issues were resolved with additional correspondence, and on July 8, 2021, counsel for Plaintiff and the Award Debtors met and conferred by telephone but were unable to reach agreement on the issues identified in this letter. Since the document productions are incomplete, Plaintiff is not yet raising issues regarding the completeness of their productions.

**MINTZ**



The Honorable Sarah Netburn
July 9, 2021
Page 2

**Nature of the Action**
Plaintiff commenced this action, pursuant to Section 207 of Title 9 U.S. Code, to enforce two foreign arbitral awards (the "Awards") issued in its favor against the Award Debtors. The Awards were the result of six years of intense arbitration arising out of the Award Debtors's unlawful termination of a Management Services Agreement ("MSA") with Plaintiff. A distinguished arbitral panel seated in Singapore awarded Plaintiff damages of approximately $296 million, plus post-award interest. Plaintiff now seeks to enforce the Awards against the Award Debtors, Razon, his other alter ego entities, and their assets in the United States.

With regard to enforcement of the Awards, this Court sits in its secondary jurisdiction and has a very limited role. *See CBF Industria de Gusa v. AMCI Holdings, Inc*., 850 F.3d 58, 71 (2d Cir. 2017). As provided in the Federal Arbitration Act, this application is to be treated as a motion (9 U.S.C. §§ 6, 208), and the "court *shall confirm* the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. §207 (emphasis added).[2]

Plaintiff seeks to enforce the Awards against the following defendants as alter egos of the Award Debtors and/or Razon: (a) Razon, (b) the "Real Estate Entities" —various special purpose entities through which Plaintiff alleges Razon holds real property in New York including a penthouse in the Plaza, and (c) "Energy Entities" —various entities through which Razon holds oil, gas and mineral interests in the United States. Plaintiff has alleged detailed facts surrounding Razon's domination and control of the other Defendants, and his operation of those entities as a single, personal enterprise, including through his use of common operatives and agents across the enterprise to fulfill his goals and protect his wealth. While the fact of Razon's involvement with each of these entities is not subject to any legitimate dispute, the extent and specifics of his domination, control and use of the various entity Defendants' assets for his personal gain apparently are disputed.

Plaintiff also seeks to recover from Razon directly the damages caused by Razon's conversion of Plaintiff's valuable shares (the "Shares") of Bloomberry Resorts Corp. ("BRC")—the publicly traded holding company of the Award Debtors—by interfering with Plaintiff's rights to own, enjoy and/or dispose of those Shares. See FAC at Count VI.

The Award Debtors have not yet answered the First Amended Complaint but have indicated an intent to challenge the Court's exercise of personal jurisdiction over them.

**Categories of Relevant Discovery from the Award Debtors**
Absent stipulations and admissions regarding the alter ego relationship, Plaintiff must prepare to present at trial evidence regarding, among other things, Razon's domination and control over the Award Debtors and all other Defendants, the lack of separateness between those Defendants, the

---

[2] The Second Circuit has stated that "there is "well-established federal public policy in favor of arbitration," and "improper collateral litigation" may itself "seriously . . . undermine" national policy. *Pagaduan v. Carnival Corp*., 830 Fed. Appx. 61, 63 (2d Cir. Nov. 25, 2020).

**MINTZ** 

The Honorable Sarah Netburn
July 9, 2021
Page 3

absence of proper corporate governance, and whether those entities are instrumentalities used by Razon for his personal benefit. *See Wm. Passalacqua Builders v. Resnick Developers S.*, 933 F.2d 131, 139 (2d Cir. 1991) (discussing common veil piercing factors). Thus, Plaintiff propounded initial RFPs primarily addressed to these main topics: (a) the alter ego relationship between Razon and the Award Debtors, including Razon's ownership, involvement with, financial support of, control over those entities; his use of the assets, funds, and personnel of those entities for his and his family's personal benefit; the movement of funds and assets among the various entity Defendants; his appointment of common operatives, agents and nominees at the entity Defendants; and his use of the entities as instrumentalities to otherwise conceal and protect his personal assets from his creditors; (b) Razon's actions to convert or otherwise interfere with Plaintiff ownership and rights with respect to the Shares—including use of the Award Debtors (and his control thereof) to effectuate his conversion of the Shares; and (c) issues relevant to the jurisdictional challenges that the Award Debtors and various entity Defendants under Razon's control have raised.

### The Award Debtors Should Be Compelled to Produce Amended Responses and Responsive Documents

The Award Debtors have asserted various meritless objections and refused to produce responsive documents or to identify whether they are withholding documents based on their objections.[3]

1. <u>General Objection No. 9 – Temporal Limitation</u>. In their "general objections" to Plaintiff's RFPs, the Award Debtors limited their responses to each RFP to an arbitrary, unduly narrow time frame. Specifically, the Award Debtors' general objection No. 9 reads: "Except where otherwise noted, BRHI will produce documents created on or after <u>September 12, 2013</u> to the extent any such documents exist." (Emphasis added.) This limitation makes no sense. The parties began negotiating the MSA in early 2011 and concluded in late 2011. Plaintiff dutifully performed under the MSA from 2011 until September 2013, when the MSA was unlawfully terminated. There is no justification in this case for the Award Debtor's self-imposed temporal limitation. Documents from 2011 and 2012 are undoubtedly pertinent to issues of (a) the alter ego relationship between Razon and the Award Debtors, and (b) personal jurisdiction over the Award Debtors. Indeed, <u>the Award Debtors</u>' own instructions to the RFPs they propounded on Plaintiff state: "Unless otherwise stated, these Requests seek production of documents dated, prepared, generated, transmitted, or received during the period

---

[3] Plaintiff's RFPs to BRHI are representative of the RFPs to SPI and are in Exhibits B and C to this letter. The Award Debtors' Responses and Objections to Plaintiff's First Set of RFPs ("1RFP") are in Exhibits D and E to this letter. Their Responses and Objections to Plaintiff's Second Set of RFPs ("2RFP") are in Exhibits F and G. The Award Debtors designated their responses as CONFIDENTIAL pursuant to the stipulated Confidentiality Order (ECF No. 95).
  During a meet-and-confer session on July 8, 2021, counsel for Plaintiff and Award Debtors agreed to continue discussing RFPs 19, 21, 25 and 28. Thus, while not included in this letter, Defendants' responses to those RFPs remain open, and GGAM reserves all rights to request a conference on those RFPs at a later date.

**MINTZ**



The Honorable Sarah Netburn
July 9, 2021
Page 4

from and including <u>January 1, 2011 to the present</u>." (Emphasis added.) During our meet-and-confer, counsel for the Award Debtors insisted that the time limitation in their general objection did not affect their responses to individual RFPs, but nevertheless refused to withdraw that limitation. This objection should be overruled and the Award Debtors should be compelled to serve amended responses to make clear whether any additional responsive documents are being produced.

2. 1RFP Nos. 2, 3: The Award Debtors refuse to produce documents pertinent to jurisdiction on the grounds that "GGP should already have such documents in its possession." Specifically, 1RFP No. 2 seeks "All Communications between You and any Person Concerning the negotiation, execution and/or performance of the MSA." The majority of the Award Debtors' lengthy response to this request is, in essence, "we will just produce what we produced in the arbitration." However, the Award Debtors also add that "To the extent that GGP makes this request in an attempt to receive documents to support its assertion to the Court that BRHI travelled to New York to negotiate the MSA, GGP should already have any such documents in its possession given that GGP would have necessarily been a counterparty to any purported in-person negotiations of the MSA in New York." In other words, the Award Debtors are refusing to search for and produce responsive documents regarding the very defense they intend to raise—personal jurisdiction. This is improper. The Award Debtors must produce documents in their possession, custody or control, regardless of their belief that Plaintiff may also have such documents. Similarly, 1RFP No. 3 seeks: "All Communications between You and any Person Concerning the negotiation, execution and/or performance of the Equity Option Agreement." The Award Debtors' response is similar to the response to 1RFP No. 2 and is similarly improper. Finally, in the event the Court appropriately overrules the temporal limitation above, the Award Debtors' amended responses to these RFPs should make clear whether it is producing additional responsive documents.

3. 1RFP No. 4, and 2RFP Nos. 1 and 2: These requests seek documents and communications regarding the Shares converted by Razon, including through the use of the Award Debtors as his instrumentalities. While the Award Debtors objected and agreed to produce documents they had already produced in the arbitration, these Defendants did not agree to produce *all* responsive documents, or identify whether they are withholding documents based on their objections. These responses violate Rule 34(b)(2)(C). Notably, these requests are highly relevant to Plaintiff's conversion claim, and exceed the scope of the issues in the arbitration. Indeed, there is no credible dispute that Razon's undisclosed business relationship with Hans Sicat, who served as the President of the Philippine Stock Exchange when the exchange granted Razon's request to prevent Plaintiff from selling the Shares, was not known to Plaintiff or at issue in the underlying arbitration. Thus, the Award Debtors cannot reasonably rely on their prior production in the arbitration.

MINTZ



The Honorable Sarah Netburn
July 9, 2021
Page 5

    4. **1RFP No. 8**: This request seeks "All Documents and Communications, at any time, Concerning the appointment of any of Your directors, officers or managers, including, without limitation, meeting minutes of Your board of directors." The Award Debtors objected to the scope of this request, particularly based on the apparently numerous managers employed by the Award Debtors. During our meet and confer, Plaintiff agreed to limit this request by removing the term "managers" from the scope of the request. This request is clearly relevant to Razon's domination and control over the Award Debtors, including his selection and appointment of the high-level officers and directors who perform services for the Award Debtors and across his personal enterprise.

    5. **1RFP No. 16**: This request seeks "All flight manifests for any aircraft owned, leased or operated by You." The Award Debtors objected and refused to produce documents responsive to this request, which is seeks information relevant to the alter ego analysis and the Award Debtors' jurisdictional defenses. Razon's use of the Award Debtors' assets for his personal benefit is clearly relevant to the domination and control elements of the alter ego analysis, and Razon has already admitted to using BRHI plane to transport his family to and from New York for personal travel. Thus, flight manifests reflecting Razon's (and other Award Debtor personnel's) use of the BRHI plane, including travel to New York and elsewhere in the United States, is relevant and discoverable. The Court has already entered a stipulated confidentiality order (ECF No. 95), so any privacy concerns can be addressed by appropriately designating the material pursuant to that order.

    6. **1RFP No. 29**: This request seeks "Documents and Communications sufficient to reflect all signatories on any bank accounts maintained or used by You, including all signature cards for such accounts." These documents are relevant to the degree of domination and control exercised by Razon and his common operatives across his enterprise and should be easily accessible upon request. These documents should be produced.

    7. **1RFP Nos. 35 and 36**: These requests seek documents and communications relevant to Razon's alter ego relationship with the other entity Defendants (the Real Estate Entities and the Energy Entities). To the extent the Award Debtors have such documents in their possession, custody or control, there is no valid basis for withholding those documents simply because they relate to other Defendants.

Respectfully submitted,

*/s// Kevin N. Ainsworth*
Kevin N. Ainsworth

cc: All counsel of record (Via Email)