# EXHIBIT A

**IN THE MATTER OF AN ARBITRATION BEFORE A TRIBUNAL CONSTITUTED IN ACCORDANCE WITH A MANAGEMENT SERVICES AGREEMENT DATED SEPTEMBER 9, 2011 AND THE UNCITRAL ARBITRATION RULES 2010**

**BETWEEN**

**GLOBAL GAMING PHILIPPINES LLC (AS ASSIGNOR)**
**GGAM NETHERLANDS B.V. (AS ASSIGNEE)**

**CLAIMANTS**

**AND**

**BLOOMBERRY RESORTS AND HOTELS INC.**
**SURESTE PROPERTIES, INC.**

**RESPONDENTS**

**DECISION ON REQUEST FOR RECONSIDERATION OF THE PARTIAL AWARD ON LIABILITY**

NOVEMBER 22, 2017

The Arbitral Tribunal:

Mr. R Doak Bishop, Esq. (Arbitrator)

Dr. Michael Hwang, S.C. (Arbitrator)

Dr. Andrés Rigo Sureda (Presiding Arbitrator)

1

## CONTENTS

I.     PARTIES.................................................................................................................. 3
       A. CLAIMANTS ...................................................................................................... 3
       B. RESPONDENTS ................................................................................................... 5

II.    PROCEDURAL HISTORY ....................................................................................... 6

III.   EVENTS LEADING TO RESPONDENTS' REQUEST........................................ 9

IV.    RELIEF SOUGHT BY THE PARTIES.................................................................. 11
       A. RESPONDENTS' RELIEF SOUGHT ....................................................................... 11
       B. CLAIMANTS' RELIEF SOUGHT .......................................................................... 12

V.     PRELIMINARY MATTERS ................................................................................... 13
       A. SEAT.................................................................................................................. 13
       B. DECISION ON RECONSIDERATION ...................................................................... 14

VI.    THE PARTIES' ARGUMENTS .............................................................................. 15
       A. RESPONDENTS' ARGUMENTS............................................................................ 15
       (i)   Reconsideration is an open question under Singapore Law .................................. 15
       (ii) The Tribunal has an inherent or implied authority to reconsider the Liability
       Award ................................................................................................................. 16
       (iii)The Liability Award being enforced as a judgment does not prevent the Tribunal's
       reconsideration of the Liability Award. ................................................................. 19
       B. CLAIMANTS' ARGUMENTS................................................................................ 20
       (i)   Reconsideration is not an open question................................................................ 20
       (ii) The Tribunal does not have inherent or implied authority to reconsider the
       Liability Award................................................................................................... 22
       (iii)The enforcing of the Liability Award by the Singapore High Court precludes its
       reconsideration.................................................................................................... 24
       C. TRIBUNAL'S ANALYSIS .................................................................................... 25
       (i)   Reconsideration is not an open question................................................................ 26
       (ii) In Singapore, the Tribunal does not have an inherent or implied authority to
       reconsider ........................................................................................................... 33
       (iii)Does the enforced Liability Award preclude its reconsideration by the Tribunal? 35
       D. CONCLUSION ................................................................................................... 37

VII.   RELIEF AND REMEDIES ...................................................................................... 37

VIII.  COSTS...................................................................................................................... 38

# I. PARTIES

## A. Claimants

1.  The Claimants are Global Gaming Philippines LLC (as assignor) and GGAM
    Netherlands B.V. (as assignee) (respectively **"GGAM"** and **"GGAM**
    **Netherlands"** and collectively the **"Claimants"**).

2.  The Claimants are represented by:

    Joseph R. Profaizer

    Charles A. Patrizia

    Adam J. Weiss

    PAUL HASTINGS LLP

    875 15th Street, N.W.

    Washington, D.C. 20005

    United States of America

    Telephone: +1 (202) 551-1700

    Facsimile: +1 (202) 551-1705

    E-mail: joeprofaizer@paulhastings.com;

          charlespatrizia@paulhastings.com; and

          adamweiss@paulhastings.com

Daniel H. Weiner

Hagit Muriel Elul

Meaghan Gragg

Ryan Kim

HUGHES HUBBARD & REED LLP

One Battery Park Plaza

New York, New York 10004

United States of America

Telephone +1 (212) 837-6000

Facsimile: +1 (212) 422-4726

E-mail: daniel.weiner@hugheshubbard.com;

   hagit.elul@hugheshubbard.com;

   meaghan.gragg@hugheshubbard.com; and

   ryan.Kim@hugheshubbard.com

**B. Respondents**

3.  The Respondents are Bloomberry Resorts and Hotels, Inc. ("**BRHI**" or "**Bloomberry**") and Sureste Properties, Inc. ("**Sureste**") (collectively the "**Respondents**"). The Respondents are owners of the Solaire Resort and Casino, an integrated casino hotel entertainment complex located in Paranque City, Metro Manila, Philippines (the "**Solaire**").

4.  The Respondents are represented by:

    Michael D. Nolan, Esq.

    Erin M. Culbertson

    Elitza Popova-Talty

    MILBANK, TWEED, HADLEY & MCCLOY LLP

    International Square Building

    1850 K Street, N.W.

    Suite 1100

    Washington, DC 20006

    United States of America

    Telephone: +1 (202) 835-7500

    Facsimile: +1 (202) 263-7586

    E-mail: MNolan@milbank.com;

        ECulbertson@milbank.com; and

ETalty@milbank.com


Purisimo S. Buyco

Robel C. Lomibao

PICAZO BUYCO TAN FIDER & SANTOS

Penthouse Liberty Center

104 H.V. dela Costa St., Salcedo Village

1227 Makati City, Metro Manila

Republic of the Philippines

Telephone: (632) 888-0999

Facsimile: (632) 888-1011

E-mail: psbuyco@picazolaw.com; and

        rclomibao@picazolaw.com


5.    The Claimants and the Respondents are collectively referred to as the "**Parties**".


## II.  PROCEDURAL HISTORY


6.    The procedural history of the present proceedings has been set out comprehensively in the Liability Award at paragraphs 6 – 45. The Liability Award also sets out relevant background details of the dispute, which will therefore not be repeated in this Decision on reconsideration of the Partial Award on Liability (the "**Decision on Reconsideration**").

7.    The Decision on Reconsideration adopts the abbreviations set out in the Liability Award and past Decisions.

8.    On 1 September 2017, the Respondents filed their "Respondents' Request for Reconsideration of the Partial Award on Liability in Light of U.S. DOJ and SEC Findings of Violations of the Foreign Corrupt Practices Act by William Weidner and GGAM's President for Asia, and False Statements and Fraudulent Concealment by GGAM in this Arbitration" (the "**Respondents' Request**").

9.    On 29 September 2017, the Claimants filed their "Claimants' Opposition to Respondents' Request for Reconsideration of the Partial Award on Liability" (the "**Claimants' Opposition**") and some other documents:

    (a) the Declaration of Charles A. Patrizia in Response to Respondents' Request for Reconsideration of the Partial Award on Liability; and

    (b) the exhibits and legal authorities referred to in Claimants' Opposition.

10.   On 6 October 2017, the Tribunal invited both Parties to submit a second round of submissions on the issue. The Tribunal specifically asked the Parties to consider the permissibility of reconsideration of the Liability Award under Singapore law.

11. On 12 October 2017, the Respondents filed their "Respondents' Reply in support of the Request for Reconsideration of the Partial Award on Liability in Light of U.S. DOJ and SEC Findings of Violations of the Foreign Corrupt Practices Act by William Weidner and GGAM's President for Asia, and False Statements and Fraudulent Concealment by GGAM in this Arbitration" (the "**Respondents' Reply**") and some other documents:

   (a) Expert Report of Alvin Yeo Khirn Hai, S.C. ("**Yeo's Expert Report**");

   (b) Statement of Independence from Fredric Gushin; and

   (c) Statement of Independence from Daniel Reeves.

12. On 19 October 2017, the Claimants filed their "Claimants' Sur-Reply in Further Opposition to Respondents' Request for Reconsideration of the Partial Award on Liability" (the "**Claimants' Sur-Reply**") and some other documents:

   (a) the Expert Report of V K Rajah S.C. and legal authorities referenced therein ("**Rajah's Expert Report**");

   (b) the Second Declaration of Charles A. Patrizia in Response to Respondents' Request for Reconsideration of the Partial Award on Liability; and

8

(c) the exhibits and legal authorities referenced in the Claimants' Sur-Reply.

13. On 2 November 2017, Respondents, by way of email wrote to clarify "*certain* errors" in Claimants' Sur-Reply. On the same day, Claimants noted that Respondents' email was in violation of "*the Tribunal's direction on October 5, 2017 that there were to be only two rounds of submissions on Respondents' Motion for Reconsideration*", and urged the Tribunal to disregard Respondents' email. On 7 November 2017, the Tribunal informed the Parties that it noted both emails and that there was no need for further submissions on the matter.

## III. EVENTS LEADING TO RESPONDENTS' REQUEST

14. The U.S. Department of Justice (the "**DOJ**"), on 17 January 2017, published the Non-Prosecution Agreement with Las Vegas Sands Corp (the "**DOJ NPA**"). Previously, on 7 April 2016, the U.S Securities and Exchange Commission (the "**SEC**") published an Order Instituting Cease-and-Desist Proceedings against Las Vegas Sands Corp (the "**SEC Order**"). Both the reports were in relation to violations of the US Foreign Corrupt Practices Act (the "**FCPA**") by the Las Vegas Sands Corp, for the failure to adequately maintain internal controls and books and records in accordance with the provisions of the FCPA between 2006 and 2009.[1]

15. Respondents allege that the DOJ NPA and the SEC Order read together with evidence on the record of this Arbitration and publicly available information, reveals that Claimants

---

[1] Claimants' Ex. 306; Claimants' Ex. 307.

9

concealed critical information from, and made misrepresentations to the Tribunal and Respondents, tantamount to procedural fraud.[2] On this basis, Respondents filed the Respondents' Request.

16. Within this same time period, on 27 September 2016, Claimants had commenced proceedings in the Singapore High Court to have the Liability Award recognised. On 10 March 2017 (after the publication of the DOJ NPA and the SEC Order), Claimants served Respondents with the Singapore High Court's pending order to confirm the Liability Award.[3] On 20 June 2017, the Court entered its judgment confirming the Liability Award.[4]

---

[2] Respondents' Request at paragraph 2.
[3] See Claimants' Ex. 310 at paragraph 7(a) – (b).
[4] See Claimants' Ex. 308.

## IV.  RELIEF SOUGHT BY THE PARTIES

### A.  Respondents' Relief Sought

17.  Respondents request that the Tribunal reconsider its Liability Award and make an award:[5]

    (a) Finding that Respondents rightfully ended the Management Services Agreement due to GGAM's material breach of its obligations thereunder;

    (b) Annulling the MSA, including the equity option granted therein, due to GGAM's causal fraud; and

    (c) Granting Bloomberry damages in the amount of all fees and expenses previously.

18.  Respondents also request that the Tribunal award the following remedies:[6]

    (a) Award Bloomberry damages for GGAM's wilful and material breaches and noncontractual wrongs in an amount that the Tribunal finds to be just and proper after the final hearing in this Arbitration;

---

[5] Respondents' Request at paragraph 168.
[6] *Ibid* at paragraph 169.

11

(b) Vacate the Partial Award and the Order in Respect of Claimants' Interim Measures Application, dated 9 December 2014;

(c) Designate Bloomberry as the Party whose position has been substantially upheld pursuant to Clause 19.2(h) of the Management Services Agreement, find that Claimants failed to conduct itself in good faith in the taking of evidence, and award Bloomberry (1) all reasonable attorneys' fees, costs and expenses, (2) its share of the fees and costs paid to the Tribunal; (3) expert witness fees; (4) compensation for in-house counsel; (5) fees and expenses paid to any vendor that provided services at arbitral hearings or otherwise; and (6) all other fees and expenses incurred in connection with this Arbitration; and

(d) Such other and further relief as may be found appropriate.

**B.  Claimants' Relief Sought**

19. Claimants request that the Tribunal deny Respondents' Request in its entirety and move forward on the agreed-on schedule for the damages phase.[7]

---

[7] Claimants' Opposition at paragraph 93; Claimants' Sur-Reply at paragraph 56.

## V. PRELIMINARY MATTERS

20. The Tribunal has carefully considered the Parties' submissions, expert reports and exhibits. If no specific reference is made to the testimony of an expert, it is not for lack of its consideration by the Tribunal.

21. When the Tribunal has not summarised an argument that either or both Parties may have made, the Tribunal has nevertheless considered the argument, but decided that it is not necessary (or helpful) to summarise it. For conciseness, the Tribunal may also summarise the Parties' arguments by reference to the paragraph or page numbers contained in the relevant document, exhibit, or submission by the Parties.

### A.   Seat

22. Clause 19.2 of the MSA provides that "*disputes required to be settled in accordance with this Clause 19.2 shall be settled by arbitration in Singapore under the United Nations Commission on International Trade Law (UNCITRAL) Arbitration Rules in force at the date of this Agreement...*". There is no doubt that the seat of the Arbitration is Singapore.

23. The Respondents' requests for the Tribunal to reconsider its Liability Award is a matter that the Tribunal finds is governed by Singapore Law (the law of the Seat). In this regard the Tribunal is of the view that, unless reconsideration of an award is permissible under Singapore Law, it may not reopen the Liability Award for consideration.

13

**B.    Decision on Reconsideration**

24. This Decision on Reconsideration deals with whether the Tribunal can reconsider the Liability Award under Singapore law. The Tribunal finds that under Singapore law it cannot reconsider the Liability Award. Because of this finding, this Decision on Reconsideration does not set out the discussion and the Tribunal's reasoning on the other points argued in the Parties' submissions.

## VI.  THE PARTIES' ARGUMENTS

### A.  Respondents' Arguments

#### (i)  *Reconsideration is an open question under Singapore Law*

25.  Respondents contend that the permissibility of reconsideration of the Liability Award in Singapore is an open question. Neither the Singapore International Arbitration Act ("**IAA**") nor the 1985 UNCITRAL Model Law on International Commercial Arbitration expressly provide for the power of a court to remit an arbitral award for reconsideration or provide that an arbitral tribunal has jurisdiction to reconsider an arbitral award it has issued. Respondents' expert ("**Mr. Yeo**") states he is not aware of any Singapore case authorities that have directly addressed the issue.[8]

26.  Mr. Yeo believes that, where there has been "*fraud or comparable abuses*",[9] a Singapore court would accept that the Tribunal has the authority to reconsider its own Liability Award and correct that award when issuing its Final Award.[10]

27.  Mr. Yeo asserts that Singapore courts have accepted that an award obtained by fraud or corruption would violate the basic notions of morality and justice and amount to a breach of the public policy of Singapore and such an award could be set aside under section 24(a)

---

[8] Respondents' Reply at paragraph 68.
[9] Yeo's Expert Report at paragraph 15.
[10] *Ibid.*

of the IAA.[11] He contends that it would be against the interests of justice if no remedy was available to a party who would have had a basis to set aside an arbitral award for fraud but for the fraud having been concealed such as to only be discoverable after the timeline for setting aside the arbitral award has expired.[12] Relying on Mr. Yeo's expert opinion, Respondents submit that, in the present situation, where Claimants were able to obtain the Liability Award "*only by violating Tribunal Orders*",[13] a Singapore court would accept that the Tribunal has the authority to reconsider the Liability Award.[14]

### (ii)  *The Tribunal has an inherent or implied authority to reconsider the Liability Award*

28.  Respondents argue that the Tribunal's authority to reconsider a decision stems *sui generis* from the parties' agreement to arbitrate and is not limited by the *lex arbitri*.[15]

29.  To this end, Respondents highlight several case authorities suggesting that where there is fraud, tribunals may reconsider their award.[16]

30.  Respondents cite *Libananco Holdings Co. Limited v. Republic of Turkey ("**Libananco**")* [17] which commented:

---

[11] Section 24(a) of the IAA reads "*Notwithstanding Article 34(1) of the Model Law, the High Court may, in addition to the grounds set out in Article 34(2) of the Model Law, set aside the award of the arbitral tribunal if —(a) the making of the award was induced or affected by fraud or corruption*".

[12] See *Ibid* at paragraphs 16 - 17.

[13] Respondents' Reply at paragraph 69.

[14] *Ibid.*

[15] Respondents' Reply at paragraph 70.

[16] See Respondents' Request at paragraphs 156 - 160.

[17] ICSID Case No. ARB/06/8, Decision on Preliminary Issues, 23 June 2008.

> "*Nor does the Tribunal doubt for a moment that, like any other international tribunal, it must be regarded as endowed with the inherent powers required to preserve the integrity of its own process – even if the remedies open to it are necessarily different from those that might be available to a domestic court of law in an ICSID Member State. The Tribunal would express the principle as being that parties have an obligation to arbitrate fairly and in good faith and that an arbitral tribunal has the inherent jurisdiction to ensure that this obligation is complied with; this principle applies in all arbitration... and to all parties*". [18]

Respondents also highlight the *Antoine Biloune v. Ghana Inv. Ctr*[19] tribunal's explanation that:

> "*a court or Tribunal, including this international arbitral Tribunal, has an inherent power to take cognizance of credible evidence, timely placed before it, that its previous determinations were the product of false testimony, forged documents or other egregious 'fraud on the Tribunal' ... Certainly if such corruption or fraud in the evidence would justify an international or a national court in voiding or refusing to enforce the award, this Tribunal also, so long as it still has jurisdiction over the dispute, can take necessary corrective action*".[20]

---

[18] *Libananco* at paragraph 78.
[19] Ad Hoc Award on Jurisdiction and Liability of 27 October 1989, XIX Y.B. Comm. Arb. 11, 21 (1994) ("*Biloune*").
[20] *Biloune* at paragraph 33.

31.  Respondents submit that national courts have also upheld arbitrators' inherent powers to revoke prior determinations where newly discovered circumstances call into question the fairness of the arbitral process. Respondents rely on a decision of the French Supreme Court on an arbitration case which held that a party that discovers that material evidence has been fraudulently concealed during an arbitration can apply to the members of the former tribunal, despite being *functus officio*, to reconsider its prior decision. The *Cour de cassation* explained that

> "*as a consequence of the general principles of law relating to fraud – notwithstanding the exclusion of review by Article 1507 of the New Code of Civil Procedure – the rescinding of an award made in France concerning international arbitration is, by way of exception, to be admitted in the case of fraud, as long as the arbitral tribunal remains constituted after the making of the award (or can be reconstituted)*".[21]

32.  Respondents argue that, if a tribunal is vested inherently with the power to reconsider prior awards even where the tribunal is *functus officio*, then such power should also be vested in a tribunal which is still empanelled.[22]

33.  Respondents point out that section 19B of the IAA (set out below at paragraph 53) expressly affirms "*the right of a person to challenge the award by any available arbitral*

---

[21] 1993 Rev. Arb. 91 (1 Chambre civile), 25 May 1992. (cited in Gary Born, *International Commercial Arbitration* (Kluwer 2014) at page 3154.)
[22] Respondents' Request at paragraph 160.

*process of appeal or review or in accordance with the provisions of this Act and the Model Law*".[23] Respondents contend that, where there is fraud, "the arbitral process of appeal or review" in section 19B(4) of the IAA, calls upon the Tribunal's inherent authority to reconsider the Liability Award.[24]

34. Respondents argue that there is "*an implied consent by the parties that if one party has acted fraudulently in respect of the arbitration proceeding, that the other party can invite the arbitral tribunal to revisit the matter even after the arbitral tribunal has issued its award.*"[25]

### *(iii) The Liability Award being enforced as a judgment does not prevent the Tribunal's reconsideration of the Liability Award.*

35. The Respondents contend that the Claimants hide behind the concept of "the finality of the award" and seek to demonstrate that the "rule of finality" "*is of little moment here*".[26]

36. The Respondents contend that the Liability Award which now carries the force of a judgment entered by a Singapore court is not of great significance.[27] This is because generally, there is no preclusive effect to be given to a national court's prior recognition

---

[23] See section 19B(4) of the IAA.
[24] Respondents' Reply at paragraph 70.
[25] See Yeo's Expert Report at paragraph 27.
[26] Respondents' Reply at paragraph 74.
[27] *Ibid* at paragraph 75.

19

decision, as a matter of New York Convention principle. This is particularly "*because of the summary character of recognition proceedings*".[28]

37.  The Respondents contend that the Liability Award does not in and of itself convey any decision to be enforced. By its own terms, the Liability Award is a predicate for further proceedings in the Remedies Phase. As such, Claimants cannot point to any serious prejudice they would suffer if the Liability Award were reconsidered.[29]

38.  Further, the Respondents hold that a Singapore court would not, rigidly impose the rule of finality, particularly under these circumstances where there has been fraud. They cite the Singapore Court of Appeal in *Su Sh-Hsyu v Wee Yue Chew:*[30]

> "*[F]inis litium could not invariably and/or rigidly be imposed to such an extent that it would allow a miscarriage of justice to go uncorrected*".[31]

## B. Claimants' Arguments

### (i)  Reconsideration is not an open question

---

[28] See, Gary Born, *International Commercial Arbitration* (Kluwer 2014), at page 3790; see also page 3775 where Born explains that "*it would be inappropriate to apply wholesale the preclusion rules of the arbitral seat to determine the preclusive effects of a prior award (or judgment), and [] international principles derived from the New York Convention should instead be applied*".
[29] Respondents' Reply at paragraph 76.
[30] [2007] 3 SLR(R) 673.
[31] *See Su Sh-Hsyu v. Wee Yue Chew* [2007] 3 SLR(R) 673 at paragraph 36.

39. The Claimants contend that the only circumstances in which an arbitral tribunal seated in Singapore may revise its award are specifically enumerated in section 19B of the IAA[32] (set out below at paragraph 53). The exceptions are exhaustive and as follows.

  (a) Article 33 allows an arbitral tribunal to correct its award for "*any errors in computation, any clerical or typographical errors or any errors of similar nature*", which is not the present case.[33]

  (b) Article 34(4) provides for recourse when there is an application for set aside by a court, stating that "*[t]he court, when asked to set aside an award, may, where appropriate . . . suspend the setting aside proceedings . . . to give the arbitral tribunal an opportunity to resume the arbitral proceedings or to take such other action as in the arbitral tribunal's opinion will eliminate the grounds for setting aside*".[34] Here, the Respondents have made no application to the Singapore High Court to set aside the Liability Award and as such Article 34(4) is inapplicable.

  (c) Section 19B(4) of the IAA preserves "*the right of a person to challenge the award by any available arbitral process of appeal or review or in accordance with the provision of this Act and the Model Law*". However, this exception is inapplicable as the reference in section 19B(4) of the IAA to "*any available arbitral process of*

---

[32] Claimants' Sur-Reply at paragraph 10.
[33] *Ibid* at paragraph 11.
[34] *Ibid.*

21

*appeal or review*" is to a built-in mechanism for appeal to an appellate tribunal within the applicable arbitration rules.[35]

40. Claimants contend that the exceptions listed above are exhaustive.[36]

### (ii) *The Tribunal does not have inherent or implied authority to reconsider the Liability Award*

41. Claimants assert that the issue of whether an inherent power to reconsider the Liability Award exists and its scope is one of Singapore law, as this arbitration is seated in Singapore.[37]

42. Claimants also contend that Mr. Yeo was wrong to suggest that there are no Singapore case authorities addressing the Tribunal's lack of authority to reconsider the Liability Award. Claimants cite Chan Sek Keong SJ (as he then was) in *PT Perusahaan Gas Negara (Persero) TBK v CRW Joint Operation* for the proposition that section 19B of the IAA does not vest in the Tribunal any power to reconsider an award.

> "*[O]nce a tribunal has issued an award (be it an interim, interlocutory, partial or final award), the tribunal is <u>functus officio</u> in relation to the specific issue(s) dealt*

---

[35] Claimants' Sur-Reply at paragraph 12.
[36] *Ibid* at paragraph 11.
[37] Claimants' Opposition at paragraph 19.

> *with by the award—i.e., the tribunal cannot revisit its decision and change it even*
> *if it turns out to be wrong".[38]*

43. Claimants highlight that the legislative history of section 19B supports the view that the drafters of section 19B made a deliberate choice to prohibit an arbitral tribunal from revisiting an award except as permitted under section 19B.[39]

44. Claimants submit that Respondents' reliance on *Fougerolle* and *Biloune* is flawed.[40] In the former, the Court dismissed the application to set aside the award based on alleged fraudulent withholding of evidence, because the documents were withheld in good faith, and the documents in issue were not relevant. In the latter, the tribunal rejected the request for reconsideration as there was no "*credible evidence*" that any of the tribunal's determinations "*was based on or the product of false testimony, fraudulent evidence, or otherwise of such a nature as to undermine the authority and finality of the previous award*".[41]

45. Further, the Claimants contend that the Respondents cannot rely on section 19B(4) of the IAA, as the reference in section 19B(4) of the IAA to "*any available arbitral process of*

---

[38] [2015] 4 SLR 364 ("***Persero***") at paragraph 32.
[39] See Rajah's Expert Report at paragraphs 29 to 32, which explained that section 19B was introduced to negate the decision of the Court of Appeal in *Tang Boon Jek Jeffrey v Tan Poh Leng Stanley* [2001] 2 SLR(R) 273 where it was held that an arbitral tribunal under the IAA is not *functus officio* on any aspect of the dispute before it had determined every aspect of that dispute.
[40] Claimants' Opposition at paragraph 24.
[41] *Biloune* at paragraphs 35 - 35.

*appeal or review*" is to a built-in mechanism for appeal to an appellate tribunal within the applicable arbitration rules.[42]

46.    The Claimants note that, in any event, Mr. Yeo's explanation that the arbitral tribunal may reconsider an award where there has been fraud on the basis of an implied power which is conferred by the arbitration agreement is unavailable on the present facts, as the MSA's arbitration clause expressly states that there will be no review.[43] Clause 19.2(b) states:

> "The decision of the arbitration panel shall be final and binding on the Parties, without right of appeal. The Parties agree in advance that if one Party initiates arbitration, the other Party shall be bound to participate, and the decision of the arbitration panel shall be binding upon both Parties and enforceable in all jurisdictions".

### (iii)    *The enforcing of the Liability Award by the Singapore High Court precludes its reconsideration.*

47.    Claimants assert that the Singapore High Court's judgment recognising and enforcing the Liability Award is preclusive[44] and the Liability Award became enforceable like any other Singapore High Court judgment. The Tribunal does not have the jurisdiction to

---

[42] Claimants' Sur-Reply at paragraph 12.
[43] *Ibid* at paragraph 20.
[44] *Ibid* at paragraph 18.

nullify or invalidate that judgment by revoking and revising the Liability Award.[45] "*Put simply, the Tribunal cannot set aside a judgment of the Singapore High Court.*"[46]

48. Claimants further contend that the Respondents would not be prejudiced by the Tribunal not reconsidering the Liability Award as the Respondents can seek redress from the Singapore High Court.[47]

49. In this vein, Claimants contend that the only avenue for a party to challenge an arbitral award is by bringing set aside proceedings in the Singapore Courts.[48] Claimants note that, in contrast to section 19B of the IAA, section 24 of that act provides the right to make an application to the Singapore High Court to set aside an award on the ground of fraud.[49]

## C. Tribunal's Analysis

50. The Tribunal finds that whether the Liability Award can be reconsidered by the Tribunal is governed by Singapore law, as Singapore is the seat of the arbitration and Singapore law is the *lex arbitrii.* Therefore, Respondents Counsel's submissions on foreign practices was of limited assistance to the Tribunal.

---

[45] *Ibid.*
[46] Rajah's Expert Report at paragraph 69.
[47] Claimants' Sur-Reply at paragraph 22.
[48] *Ibid* at paragraph 21.
[49] *Ibid.*

*(i)*    *Reconsideration is not an open question*

51.    Respondents have tried to argue that whether a tribunal has the authority to reconsider an award is an open question. Respondents wish to assert that there is no direct Singapore case authority on this proposition, and that in the circumstance where fraud has been committed, and the fraud is not discoverable until after the window for challenging the award, the Singapore courts would allow an arbitral tribunal to reconsider the fraudulently received award even if it had already been confirmed by a Singapore court.

52.    The Tribunal finds otherwise. In Singapore, the question of whether an award may be reconsidered by the tribunal is a closed one, and the Tribunal may not reconsider an award.

53.    Claimants' arguments centre around section 19B of the IAA, section 19B of the IAA and the relevant Articles from the Model Law. They are set out below for convenience.

   **Singapore International Arbitration Act ("IAA")**

   **Effect of award**

   *19B.—(1)   An award made by the arbitral tribunal pursuant to an arbitration agreement **is final and binding on the parties** and on any persons claiming through*

*or under them and may be relied upon by any of the parties by way of defence, set-off or otherwise in any proceedings in any court of competent jurisdiction.*

*(2)* **Except as provided in Articles 33 and 34(4) of the Model Law,** *upon an award being made, including an award made in accordance with section 19A,* **the arbitral tribunal shall not vary, amend, correct, review, add to or revoke the award.**

*(3) For the purposes of subsection (2), an award is made when it has been signed and delivered in accordance with Article 31 of the Model Law.*

*(4) This section shall not affect the right of a person to challenge the award by any available arbitral process of appeal or review or in accordance with the provisions of this Act and the Model Law.*

[emphasis added]

### *Model Law*

### *Article 33*

*Correction and interpretation of award; additional award*

*(1)    Within thirty days of receipt of the award, unless another period of time has been agreed upon by the parties:*

27

(a) a party, with notice to the other party, may request the arbitral tribunal to correct in the award any errors in computation, any clerical or typographical errors or any errors of similar nature;

(b) if so agreed by the parties, a party, with notice to the other party, may request the arbitral tribunal to give an interpretation of a specific point or part of the award.

If the arbitral tribunal considers the request to be justified, it shall make the correction or give the interpretation within thirty days of receipt of the request. The interpretation shall form part of the award.

(2)    The arbitral tribunal may correct any error of the type referred to in paragraph (1)(a) of this Article on its own initiative within thirty days of the date of the award.

(3)    Unless otherwise agreed by the parties, a party, with notice to the other party, may request, within thirty days of receipt of the award, the arbitral tribunal to make an additional award as to claims presented in the arbitral proceedings but omitted from the award. If the arbitral tribunal considers the request to be justified, it shall make the additional award within sixty days.

28

*(4)     The arbitral tribunal may extend, if necessary, the period of time within which it shall make a correction, interpretation or an additional award under paragraph (1) or (3) of this Article.*

*(5)     The provisions of Article 31 shall apply to a correction or interpretation of the award or to an additional award.*

### Article 34

*Application for setting aside as exclusive recourse against arbitral award*

*(4)     The court, when asked to set aside an award, may, where appropriate and so requested by a party, suspend the setting aside proceedings for a period of time determined by it in order to give the arbitral tribunal an opportunity to resume the arbitral proceedings or to take such other action as in the arbitral tribunal's opinion will eliminate the grounds for setting aside.*

54.  The Tribunal finds that an award is final and binding in Singapore unless it falls within the ambit of one of the exceptions enumerated in section 19B of the IAA and the relevant Model Law provisions. In the present instance, none of the exceptions is applicable.

55.  The reconsideration requested of the Tribunal is not of "*any errors in computation, any clerical or typographical error...*" and so Article 33 of the model law is unavailable.

29

56. Respondents have not made an application to the Singapore High Court to set aside the Liability Award either, and as such Article 34(4) is also unavailable.

57. Finally, section 19B(4) of the IAA is unavailable as the Tribunal finds that the reference in section 19B(4) of the IAA to "*any available arbitral process of appeal or review*" is to a built-in mechanism for appeal to an appellate tribunal within the applicable arbitration rules. As no such appeal process exists under the UNCITRAL Rules 2010, the section 19B(4) exception too, is unavailable.

58. The Tribunal is persuaded that the exceptions as enumerated in section 19B of the IAA is exhaustive in light of Singapore courts' discussion on the issue of finality of awards. As shown below and contrary to Respondents' experts, there is case authority relevant to this matter.

59. In *Persero*, Chan Sek Keong SJ (as he then was) summarised the significance of section 19B of the IAA as follows:

> "*[O]nce a tribunal has issued an award (be it an interim, interlocutory, partial or final award), the tribunal is* <u>functus officio</u> *in relation to the specific issue(s) dealt with by the award—i.e., the tribunal cannot revisit its decision and change it even if it turns out to be wrong*".[50]

---

[50] *Ibid* at paragraph 206.

60. Similarly, in *PT Asuransi,*[51] Prakash J considered the consequences if the same issue which had been the subject of an earlier award was dealt with a second time in further arbitral proceedings. Her Honour found that this would constitute a breach of section 19B(1) of the IAA and the further arbitral proceedings would lack jurisdiction.[52] This statement was approved by the Singapore Court of Appeal.[53]

61. The above authorities confirm the finality of the award in Singapore law.

62. The historical background leading to the enactment of section 19B of the IAA also supports the view that, in Singapore, an award is final and binding. This background is set out in no uncertain manner by Chan Sek Keong SJ in *Persero:*[54]

> *"Section 19B was introduced to negate the decision of the Court of Appeal in Tang Boon Jek Jeffrey v Tan Poh Leng Stanley [2001] 2 SLR(R) 273 ("**Jeffrey Tang**"). In that case, it was held that an arbitral tribunal under the IAA was not functus officio on any aspect of the dispute before it until it had determined every aspect of that dispute. Section 19B makes it clear that every award, whatever type of award it might be, is final and binding on those aspects of the dispute which the award determines (see Persero HG (2014) at [126]). As the Court of Appeal said in PT First Media TBK v Astra Nusantara International BV [2014] 1 SLR 372 ("First Media" at [140]:*

---

[51] *PT Asuransi Jasa Indonesia v Dexia Bank SA* [2006] 1 SLR(R) 197.

[52] *Ibid* at paragraph 30.

[53] *PT Asuransi Jasa Indonesia v Dexia Bank SA* [2007] 1 SLR(R) 597 at paragraph 55.

[54] *Persero* at paragraphs 205 – 206.

31

> *... Parliament's intention to align the effect of interim awards with that of final awards was driven by its object of providing that all awards - interim and final - should reflect the principle of finality. What this meant was that an award, once issued, was to be final and conclusive as to the merits of the subject-matter determined under that award; and it could thereafter only be altered in the limited circumstances provided for in Arts 33 and 34(4) of the Model Law. This is nothing more than another way of saying that the issues determined under the award are res judicata . ...*

*The last sentence of the quotation above suggests that s 19B was introduced to address the issue of res judicata.* ***In my view, given that s 19B was specifically enacted to negate the decision of the Court of Appeal in Jeffrey Tang, it was intended to restore or restate the established law that once a tribunal has issued an award (be it an interim, interlocutory, partial or final award), the tribunal is functus officio in relation to the specific issue(s) dealt with by the award - ie, the tribunal cannot revisit its decision and change it even if it turns out to be wrong.*** *Section 19B, as drafted, is wide enough to express both the principle of functus officio and the principle of res judicata in relation to arbitral awards. But, it was not necessary for s 19B to address the res judicata principle since Jeffrey Tang was concerned not with that principle, but rather, with the functus officio principle. The res judicata principle would continue to apply whether or not s 19B was enacted.*
(emphasis in the original)

63.  Further, when the Explanatory Statement appended to the bill enacting section 19B is considered, it becomes clear that the drafters of section 19B had intentionally limited the arbitral tribunal from revisiting an award except as permitted under section 19B:

> "*[E]xcept as provided in the Model Law, an award made in accordance with Article 31 of the Model Law [which, inter alia, stipulates that an award "shall be made in writing and shall be signed by the arbitrator or arbitrators'} shall not be revisited by an arbitral tribunal. Every award, including an award made at different points in time on different issues or different parts of a claim, counter-claim or cross-claim is final and may not be varied, amended, corrected, reviewed, added to or revoked except as allowed under the Model Law*".[55] (emphasis added)

64.  Finally, Claimants' assertion that a Singapore court would likely allow a tribunal, where there is fraud, to reconsider its award is doubtful as there is no fraud exception enumerated under section 19B (see paragraph 74 below for further discussion).

*(ii)    In Singapore, the Tribunal does not have an inherent or implied authority to reconsider*

65.  As the Tribunal finds that the exceptions enumerated in section 19B are exhaustive (see above at paragraph 58), it follows that, in Singapore, the Tribunal does not have inherent

---

[55] International Arbitration (Amendment) Bill No. 38/2001; see Rajah's Expert Report at paragraph 31.

authority to reconsider a prior award. Further, the position in Singapore is consistent with the jurisprudence in other Model Law jurisdictions.[56] It is the understanding of the Tribunal that such authority exists in very few jurisdictions and rarely used:

> "***Revocation of an award by the arbitral tribunal is an exceptional and unusual authority, which apparently exists in only a few jurisdictions and which is exercised only very rarely. A very limited number of jurisdictions provide a statutory mechanism for remitting an award to the arbitrators*** *in the case of fraud on an arbitral tribunal ... In particular, the UNCITRAL Model Law, contains no express authority for a tribunal to reconsider its award based on allegations that it was obtained by fraud*".[57] [emphasis added]

66.  As noted before, as the matter at hand is to be decided by Singapore law, the cases of *Fougelle* and *Biloune* are of limited assistance to the Tribunal. Their relevance is further limited by the fact that, where the authority for revocation exists, it is "*exceptional and unusual*".

67.  In sum, the clarity of section 19B of the IAA leaves no doubt that the Tribunal has no authority to reconsider the Liability Award.

---

[56] See Gary Born, *International Commercial Arbitration* (Kluwer 2014) at pages 3116 – 3117 "*Save for the particular statutory authorizations contained in the Model Law for corrections or interpretations of the award, a tribunal loses its capacity to act in an arbitration after the final award has been made. Thus, under the Model Law, the rule that an arbitral tribunal becomes "functus officio" is expressly mandated, but with specified and carefully-delineated residual statutory authority*".

[57] *Ibid*, at pages 3154 – 3155.

34

68. As to Respondents' assertion that the Tribunal has an implied power conferred by the arbitration agreement to reconsider the Liability Award, the Tribunal rejects this assertion, as it is clear from the relevant clause of the MSA, Clause 19.2(b), that there was to be no review of the Tribunal's award (Clause 19.2(b) is set out at paragraph 46).

*(iii)*    ***Does the enforced Liability Award preclude its reconsideration by the Tribunal?***

69. Claimants have tried to argue that the enforced Liability Award does not preclude the Tribunal from reconsidering it. Claimants relies heavily on commentary by *Gary Born*[58] for the proposition that "*[g]enerally, there is no preclusive effect to be given to a national court's prior recognition decision, as a matter of New York Convention principle*".

70. However, the same section of *Gary Born* starts with "*it is unclear whether decisions by national courts to recognise (or deny recognition to) foreign arbitral awards have preclusive effects*".[59]

71. As the Tribunal finds that it may not reconsider the Liability Award under Singapore law, which is applicable here (see paragraph 52), there is no need for the Tribunal to decide whether it is precluded from reconsidering the Liability Award because it has been enforced by the Singapore High Court.

---

[58] *Ibid,* at page 3790.
[59] *Ibid.*

72. However, it is the inchoate view of the Tribunal that any reconsideration of the Liability Award by the Tribunal would be tantamount to setting aside the Singapore High Court judgment.

73. In any event, the Tribunal is cognisant that in the event a tribunal does not reconsider an award despite issues of fraud, the aggrieved party is not bereft of a remedy. Such a party may still apply to a Singapore court, "*(a) to set aside the Singapore Judgment; and (b) for leave to apply to set aside the Singapore Order of Court (as was done in Astro)*".[60]

74. The Tribunal believes that, where there are allegations of fraud, the Courts might be the better forum not least because of the seriousness of an allegation of fraud and its potential criminal consequences. Further, section 24 of the IAA provides the right to make an application to the Singapore High Court to set aside an award on the ground of fraud. This section reads:

**Section 24 of the IAA**

*Notwithstanding Article 34(1) of the Model Law, the High Court may, in addition to the grounds set out in Article 34(2) of the Model Law, set aside the award of the arbitral tribunal if—*

*(a) the making of the award was induced or affected by fraud or corruption; or*

---

[60] See Rajah's Expert Report at paragraph 70.

*(b) a breach of the rules of natural justice occurred in connection with the making of the award by which the rights of any party have been prejudiced.*

This provision is in contrast to section 19B, where there is no fraud exception and would support the view that the drafters of the IAA had intended for matters of fraud to be dealt with by a court rather than by an arbitral tribunal.

### D. Conclusion

75. The Tribunal finds, for the reasons given above, that it may not reconsider the Liability Award. In particular, the request for reconsideration does not fall within any of the enumerated exceptions of section 19B of the IAA.

## VII.  RELIEF AND REMEDIES

76. The Tribunal denies Respondents' request for the Tribunal to reconsider the Liability Award in its entirety.

77. The Tribunal directs that this arbitration proceed on the agreed schedule for the damages phase.

37

## VIII.  COSTS

78.  The Tribunal reserves its decision on costs until the next phase of the proceedings.

[Signature Page Follows]

Mr. R Doak Bishop, *Esq.*
Arbitrator

Dr Michael Hwang *S.C.*
Arbitrator

Dr. Andrés Rigo Sureda
Presiding Arbitrator

Date:    22/11/2017
Singapore