**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL GAMING PHILIPPINES, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> ENRIQUE K. RAZON, JR.; BLOOMBERRY RESORTS AND HOTELS INC.; SURESTE PROPERTIES, INC.; COLLINGWOOD INVESTMENT COMPANY LIMITED; COLLINGWOOD OIL & GAS HOLDINGS, LLC; COLLINGWOOD USA, INC.; COLLINGWOOD BROOKSHIRE USA, INC.; COLLINGWOOD APPALACHIAN MINERALS, LLC; ASIA ARROW LIMITED; RIZOLINA LLC; ENSARA LLC; NOZAR LLC; BOWERY BAY LLC; CAMPANILLA LLC; FESARA LLC; AND 11 ESSEX STREET REALTY LLC, <br><br> *Defendants*. | No. 21-CV-2655 (LGS) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**<u>DEFENDANTS' MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................... ii

I.    THE COURT LACKS PERSONAL JURISDICTION OVER THE DEBTOR
      DEFENDANTS, CICL, AND THE ENERGY ENTITIES .................................1

      A.    The Debtor Defendants Have Not Consented to Jurisdiction ..................................1

      B.    There Is No Long-Arm Jurisdiction Over the Debtor Defendants .........................2

      C.    Rule 4(k)(2) Does Not Create Jurisdiction Over the Debtor Defendants ...............5

      D.    "Alter Ego" Is Not a Basis for Asserting Personal Jurisdiction Over Any
            Entity Here .............................................................................................................6

II.   GGP FAILS TO STATE A CLAIM FOR ALTER EGO LIABILITY .............................8

      A.    Mr. Razon Is Not Liable as an Alter Ego of Bloomberry .......................................8

            1.    Domination Without More Does Not Suffice for Veil-Piercing.................8

            2.    Plaintiff Throws in the Towel on Its Ability To Allege Fraud or
                  Other Wrong ...........................................................................................11

            3.    Plaintiff Does Not Allege Complete Domination......................................12

      B.    The Non-Bloomberry Entities Are Not Liable as Alter Egos of Mr. Razon .........15

III.  GGP FAILS TO STATE A CONVERSION CLAIM AGAINST MR. RAZON.............17

IV.   THE COURT SHOULD DISMISS UNDER *FORUM NON CONVENIENS* ..................19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*,
  2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ...........................................................................5

*Accordia Ne., Inc. v. Thesseus Int'l Asset Fund, N.V.*,
  205 F. Supp. 2d 176 (S.D.N.Y. May 24, 2002) ......................................................................14

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*,
  126 F. Supp. 3d 388 (S.D.N.Y. 2015)......................................................................................13

*Ascento Capital, LLC v. MinervaWorks, LLC*,
  2021 WL 2206487 (S.D.N.Y. June 1, 2021) .............................................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).................................................................................................................11

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
  510 F. Supp. 3d 108 (S.D.N.Y. 2020).......................................................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).................................................................................................................11

*Bristol-Myers Squibb Co. v. Super. Ct.*,
  137 S. Ct. 1773 (2017)...............................................................................................................6

*Canario v. Lidelco, Inc.*,
  782 F. Supp. 749 (E.D.N.Y. 1992) ..........................................................................................15

*Cascade Energy & Metals Corp. v. Banks*,
  896 F.2d 1557 (10th Cir. 1990) ...............................................................................................16

*Carey v. Bayerische Hypo-Und Vereinsbank AG*,
  370 F.3d 234 (2d Cir. 2004).....................................................................................................19

*Cath. Diocese v. John Doe 119*,
  131 Nev. 246 (2015) ..................................................................................................................6

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*,
  316 F. Supp. 3d 635 (S.D.N.Y. 2018)..........................................................................10, 11, 14

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010)......................................................................................................3

*Compañía De Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*,
  970 F.3d 1269 (10th Cir. 2020) ..........................................................................................5, 6

*Conley v. Gibson*,
  355 U.S. 41 (1957)..............................................................................................................11

*Constellation Energy Commodities Grp. Inc. v. Transfield ER Cape Ltd.*,
  801 F. Supp. 2d 211 (S.D.N.Y. 2011)................................................................................19

*Copenhagen Reinsurance Co. (UK) v. Sargeant Marine, Inc.*,
  1998 WL 323489 (S.D.N.Y. June 17, 1998) ........................................................................2

*Daimler v. Bauman*,
  571 U.S. 117 (2014).............................................................................................................7

*Dow Chem. Pac. Ltd. v. Rascator Maritime S.A.*,
  782 F.2d 329 (2d Cir. 1986)....................................................................................8, 10, 14

*Feitshans v. Kahn*,
  2006 WL 2714706 (S.D.N.Y. Sept. 21, 2006)....................................................................18

*Figueiredo Ferraz E Engenharia de Projeto Ltda. v. Republic of Peru*,
  665 F.3d 384 (2d Cir. 2011)...............................................................................................20

*Fisser v. Int'l Bank*,
  282 F.2d 231 (2d Cir. 1960).................................................................................................9

*Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.*,
  2018 WL 3639929 (S.D.N.Y. July 10, 2018) ......................................................................5

*Gartner v. Snyder*,
  607 F.2d 582 (2d Cir. 1979)...............................................................................................15

*Gold v. Feinberg*,
  101 F.3d 796 (2d Cir. 1996)...........................................................................................9, 10

*Goldberg v. Colonial Metal Spinning & Stamping Co.*,
  1993 WL 361672 (S.D.N.Y. Sept. 14, 1993).....................................................................10

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  564 U.S. 915 (2011).........................................................................................................7, 8

*Gordian Grp., LLC v. Syringa Expl., Inc.*,
  168 F. Supp. 3d 575 (S.D.N.Y. 2016)..................................................................................2

*Guidi v. Inter-Continental Hotels Corp.*,
  224 F.3d 142 (2d Cir. 2000)...............................................................................................19

*Home-Stake Prod. Co. v. Talon Petr., C.A.*,
   907 F.2d 1012 (10th Cir. 1990) ........................................................................7, 8

*HS Europe S.A. v. El Attal*,
   2010 WL 3000059 (S.D.N.Y. July 22, 2010) ........................................................20

*Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*,
   523 F.2d 527 (2d Cir. 1975)....................................................................................9

*Kalin v. Xanboo, Inc.*,
   526 F. Supp. 2d 392 (S.D.N.Y. 2007)...................................................................15

*Kinetic Instr., Inc. v. Lares*,
   802 F. Supp. 976 (S.D.N.Y. 1992) .........................................................................7

*King v. Fox*,
   28 F. App'x 95 (2d Cir. 2002) ........................................................................17, 18

*Kingston Dry Dock Co. v. Lake Champlain Trans. Co.*,
   31 F.2d 265 (2d Cir. 1929)...................................................................................16

*Lakah v. UBS AG*,
   996 F. Supp. 2d 250 (S.D.N.Y. 2014)........................................................9, 10, 19

*In re M/V MSC FLAMINIA*,
   107 F. Supp. 3d 313 (S.D.N.Y. 2015).....................................................................5

*In re Tronox Inc.*,
   855 F.3d 84 (2d Cir. 2017) ..................................................................................12

*Manichaean Capital, LLC v. Exela Techs., Inc.*,
   251 A.3d 694 (Del. Ch. 2021)..............................................................................16

*Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*,
   2019 WL 1206690 (S.D.N.Y. Mar. 14, 2019) ......................................................19

*Miramax Film Corp. v. Abraham*,
   2003 WL 22832384 (S.D.N.Y. Nov. 25, 2003) .......................................................7

*Mohamad v. Rajoub*,
   2018 WL 1737219 (S.D.N.Y. 2018)........................................................................7

*N. Fork Partners Investment Holdings, LLC v. Bracken*,
   2020 WL 6899486 (S.D.N.Y. Nov. 23, 2020) .........................................................3

*Network Ent., Inc. v. APBA Offshore Prods., Inc.*,
   2002 WL 31050846 (S.D.N.Y. Sept. 12, 2002)...............................................11, 14

*Oriental Comm. & Shipping Co., Ltd. v. Rosseel, N.V.*,
  702 F. Supp. 1005 (S.D.N.Y. 1988)....................................................................10

*In re Oswego Barge Corp.*,
  664 F.2d 327 (2d Cir. 1981)...............................................................................9

*Picard v. Magnify Inc.*,
  583 B.R. 829 (S.D.N.Y. 2018)..........................................................................14

*Prodprogramma-Impuls Ltd. v. Bank of India*,
  2012 WL 2411809 (S.D.N.Y. June 25, 2012) ..................................................20

*Reed & Martin, Inc. v. Westinghouse Elec. Corp.*,
  439 F.2d 1268 (2d Cir. 1971)..............................................................................2

*Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*,
  2011 WL 3586455 (S.D.N.Y. Aug. 12, 2011) ...................................................14

*Rolls-Royce Motor Cars, Inc. v. Schudroff*,
  929 F. Supp. 117, 120 (S.D.N.Y. 1996).............................................................14

*Roxx Allison Ltd. v. Jewelers Inc.*,
  385 F. Supp. 3d 377 (S.D.N.Y. 2019)..................................................................3

*Sabol v. Bayer Healthcare Pharm., Inc.*,
  439 F. Supp. 3d 131 (S.D.N.Y. 2020)..................................................................7

*Schiff v. ZM Equity Partners, LLC*,
  2020 WL 5077712 (S.D.N.Y. Aug. 27, 2020) ...................................................10

*Schwartz v. Sensei, LLC*,
  2020 WL 5817010 (S.D.N.Y. Sept. 30, 2020) ...................................................10

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*,
  450 F.3d 100 (2d Cir. 2006)............................................................................3, 4

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014)................................................................................2

*Sphere Digital LLC v. Armstrong*,
  2020 WL 6064156 (S.D.N.Y. Oct. 14, 2020) ...................................................14

*Sporn v. MCA Records*,
  58 N.Y.2d 482 (1983) ...................................................................................17, 18

*In re SSA Bonds Antitrust Litig.*,
  420 F. Supp. 3d 219 (S.D.N.Y. 2019)..................................................................5

*Status Int'l S.A. v. M&D Maritime Ltd.*,
   994 F. Supp. 182 (S.D.N.Y. 1998) ............................................................10

*Sunward Elecs, Inc. v. McDonald*,
   362 F.3d 17 (2d Cir. 2004)...................................................................3, 4

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*,
   571 F.3d 221 (2d Cir. 2009)......................................................................7

*United States v. Swiss Am. Bank, Ltd.*,
   191 F.3d 30 (1st Cir. 1999).......................................................................5

*Unithai Maritime Ltd. v. RP Logistics Pvt. Ltd.*,
   2008 WL 11518033 (S.D.N.Y. Aug. 13, 2008)................................10, 14

*Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*,
   475 F. Supp. 2d 275 (S.D.N.Y. 2006)..............................................10, 11, 14

*Walden v. Fiore*,
   571 U.S. 277 (2014).................................................................................4

*Williamson v. Recovery, Ltd.*,
   542 F.3d 43 (2d Cir. 2008)................................................8, 10, 12, 13

*Wm. Passalacqua Bldrs. v. Resnick Devs. S., Inc.*,
   933 F.2d 131 (2d Cir. 1991).....................................................................14

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998)....................................................................15

**Federal and State Statutes**

Federal Arbitration Act, 9 U.S.C. §§ 201-208 ...........................................2

CPLR 302.............................................................................................2, 3, 4

**Other Authorities**

Fed. R. Civ. P. 10(c) .................................................................................3

Fed. R. Civ. P. 4(k)(2)........................................................................1, 5, 6

Fed. R. Civ. P. 8(a) .................................................................................11

Plaintiff's opposition ("Opp.") is riddled with legal infirmities. Because there is no long-arm jurisdiction over the Debtor Defendants[1] in New York, Plaintiff falls back on a flimsy consent theory that is foreclosed by Second Circuit precedent, a Rule 4(k)(2) theory whose prerequisites cannot be satisfied, and a theory of "imputed tag jurisdiction" that is as novel as it is unfounded. And Plaintiff urges that same novel theory as the sole basis for personal jurisdiction over CICL and the Energy Entities, conceding the absence of long-arm jurisdiction over them. On the alter ego claim against Mr. Razon, Plaintiff effectively admits that it does not allege a fraud or other wrong, but claims that it does not have to. For this erroneous proposition Plaintiff cites non-binding dicta from maritime cases that are inconsistent with controlling Second Circuit authority. And even assuming *arguendo* that those dicta supplied the standard, the FAC plainly fails to meet it. In fact, Plaintiff does not dispute that it is asking this court to make history by piercing the veil of an exchange-listed company for the first time. The attempt at an extraordinary "reverse-pierce" from Mr. Razon to the Non-Bloomberry Entities is even more far-fetched; Plaintiff cannot establish that Plaintiff and Mr. Razon had a creditor/debtor relationship such that the Non-Bloomberry Entities were used to defraud or otherwise wrong Plaintiff. Plaintiff also fails to deal with the time and preclusion bars on its conversion claim, and its *forum non conveniens* analysis ignores the realities of this case and key precedent, even relying on a dissent. It is time to dismiss this case.[2]

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER THE DEBTOR DEFENDANTS, CICL, AND THE ENERGY ENTITIES

### A.  The Debtor Defendants Have Not Consented to Jurisdiction

Plaintiff leads with the new theory that an MSA clause providing that "the decision of the arbitration panel shall be binding upon both Parties ***and enforceable in all jurisdictions***" is a forum

---

[1] Defined terms have the same meanings as in our opening memorandum ("Motion" or "Mot.").

[2] The pro forma request for leave to amend (Opp. 29 n.27, 40) should be denied. The FAC's defects are incurable.

selection clause. Opp. 4 (quoting Dkt. 85-4 § 19.2(b)). But this language is nothing more than a boilerplate "entry of judgment" clause.[3] An entry of judgment provision that is, like this one, silent on personal jurisdiction should not be read as an award-debtor's "consent to the jurisdiction of any court in any country in the world." *Sonera*, 750 F.3d at 227 (rejecting argument that foreign debtor defendant waived personal jurisdiction defense through such a clause).

GGP bases its "consent" argument on two inapposite cases that the unsuccessful litigant in *Sonera* also raised.[4] In *Reed & Martin, Inc. v. Westinghouse Elec. Corp.*, the AAA arbitration was *seated in New York City*, a fact that, when coupled with the AAA's rules (part of the contract there but not here) and Section 9 of the FAA (which is inapplicable here), created personal jurisdiction on consent. 439 F.2d 1268, 1276-77 (2d Cir. 1971). And in the *Copenhagen* case, among other things, (i) the court independently found it had jurisdiction over the defendant due to its contacts with the forum, and (ii) the service of suit clause provided defendant's consent to be sued in the United States. 1998 WL 323489, at *2 (S.D.N.Y. June 17, 1998).[5]

**B.   There Is No Long-Arm Jurisdiction Over the Debtor Defendants**

The Motion explained that specific jurisdiction over the Debtor Defendants does not exist under CPLR 302(a)(1) because the MSA was a Philippine transaction, governed by Philippine law, in which Global Gaming *Philippines*, LLC (a non-New York company) provided management services for a resort and casino located in the Philippines. Mot. 7-9. GGP cites three cases that

---

[3] Although such clauses, arguably required for enforcement of *domestic* awards, are "technically unnecessary" in the context of foreign awards, "authorities on international arbitration recommend such clauses be included even in international agreements out of an abundance of caution." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 227 n.3 (2d Cir. 2014) (citing a practice manual).

[4] *See* Aug. 14, 2013 FRAP 28(j) Letter, Case No. 12-4280-cv(L) (2d Cir. Aug. 14, 2013), ECF No. 135.

[5] Even if Section 19.2(b) was a forum selection clause (it is not), it would not be "valid and enforceable." Opp. 4-5. Courts do not enforce "forum selection clauses 'that do not apply to an ascertainable forum.'" *Gordian Grp., LLC v. Syringa Expl., Inc*., 168 F. Supp. 3d 575, 581 (S.D.N.Y. 2016) (clause was "plainly unenforceable" because it provided for "jurisdiction in any court in which [company] . . . is sued or otherwise found or brought").

found CPLR 302(a)(1) satisfied after determining that, in stark contrast to this case, multiple *Sunward* factors (*see* Mot. 8-9) (or as Plaintiff terms a subset of them, "*Roxx Allison* factors") were met. Opp. 6-8. In *Roxx Allison Ltd. v. Jewelers Inc.*, 385 F. Supp. 3d 377, 380-81 (S.D.N.Y. 2019), the out-of-state defendant made numerous purchases from a company incorporated and located in New York, with payments made into New York, and goods shipped out of New York. *Id.* at 380-81. In *North Fork*, a plaintiff *located in New York* alleged that it was fraudulently induced into an agreement that (i) involved the issuance of a loan in New York, (ii) chose New York law, (iii) required disputes to be settled in New York, (iv) required notices to be sent to plaintiff in New York and (v) resulted in monthly (fraudulent) statements sent into New York. 2020 WL 6899486, at *1-*4, *7-*13 (S.D.N.Y. Nov. 23, 2020). And *Ascento Capital, LLC v. MinervaWorks, LLC*, 2021 WL 2206487 (S.D.N.Y. June 1, 2021), also involved, among other distinguishing factors, (i) a plaintiff located in New York, (ii) the defendant attending multiple in-person pre-contractual meetings in New York, and (iii) a contract that would require the defendant to make a payment to plaintiff in New York. *Id.* at *1-*3, *5-*7. *Nothing* like any of these circumstances is present here.[6]

Unable to marshal any case law that supports it, GGP points to various alleged facts while ignoring that all of them are irrelevant to the analysis of long-arm jurisdiction:

- GGP points to the parties travelling to New York to attend meetings with investors, Opp. 8-10, but flatly ignores that participation in these meetings fell "outside the scope of the MSA," Mot. 10 (citing and quoting Dkt. 85-1 ¶¶ 366(b), 370, 372[7]), and therefore are irrelevant to the CPLR 302(a)(1) analysis, *see* Mot. 8 (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 105 (2d Cir. 2006), a binding precedent that Plaintiff ignores).

- GGP points to negotiation of the MSA via *email* and *phone* into New York, *see* Opp. 8-9, but flatly ignores that "conducting contractual negotiations by phone, fax or mail with a party" –

---

[6] GGP also cites *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010), Opp. 7, but *Chloe* involved a defendant who (i) operated a highly interactive website offering counterfeit bags for sale to New York customers, (ii) shipped a counterfeit bag to a customer in New York, and (iii) "engaged in fifty-two other transactions where merchandise was shipped to New York." 616 F.3d at 170.

[7] The arbitral rulings are part of the pleading for all purposes. Fed. R. Civ. P. 10(c).

3

let alone a *non-party* such as Cantor – "in New York does not constitute the transaction of business within the state." Mot. 9-10 (citing a string of cases).[8]

- GGP points to Cantor lawyers in New York collecting signature pages for the MSA, Opp. 9, but ignores that *Sunward* focuses on where the MSA was signed, which according to the FAC was the Philippines. Mot. 10; FAC ¶ 59.

- GGP's discussion of Bloomberry's alleged contacts with Cantor, Opp. 9-10, completely ignores that Cantor was not a party to the MSA or the arbitration (Mot. 11 & n.9). Further, that Cantor *happens to be* located in New York is irrelevant when Defendants did not direct themselves at New York. *See, e.g.*, *Walden v. Fiore*, 571 U.S. 277, 284-86 (2014) ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction. . . . Due process requires that a defendant be haled into court in a forum State based on *his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State*," like Cantor here).

- GGP claims for the first time that it "spent extensive hours" performing unspecified services in New York, Opp. 10, but ignores that the jurisdictionally relevant inquiry is into *Defendants'*, not Plaintiff's, activities in New York. Mot. 11; *see also Walden*, 571 U.S. at 284-86. Even so, virtually all of GGP's services under the MSA were centered around operating Solaire in the Philippines. The FAC says nothing about "extensive hours" and indeed fails to identify a single instance of GGP actually performing services in New York. *See* Mot. 11-12 & n.10.

- GGP points to a Confidentiality Agreement governed by New York law, but claims, egregiously, that the agreement was between "the Debtor Defendants *and Cantor*," Opp. 9, when in fact the agreement was between the Debtor Defendants and GGAM, and executed for GGAM by William Weidner, who was not in New York. Perry Decl. Ex. 1. GGP also ignores that the claims here do not arise from the Confidentiality Agreement – a requirement under *Sole Resort*. Mot. 8, 10 n.7.

There is no long-arm jurisdiction over the Debtor Defendants in New York.[9]

---

[8] GGP also refers to its allegation "[o]n information and belief" that "during this same time period Razon also traveled to New York and conducted negotiations with [Plaintiff] while staying at his" pied-à-terre in New York. Opp. 7-9 (citing FAC ¶ 54). But, as we explained without rejoinder, GGP does not and cannot allege that Mr. Razon attended any in-person meetings or negotiations with GGP in New York, and even if it had done so, that still would not satisfy CPLR 302(a)(1). Mot. 9-10 n.7.

[9] On due process, GGP does not analyze minimum contacts separately from CPLR 302(a)(1), even though we did (Mot. 12), and its discussion of the reasonableness factors (Opp. 11) is faulty. For instance, some of the arbitration proceedings took place in Washington, D.C. instead of Singapore (the seat of the arbitration) because of health issues of one arbitrator and/or one counsel. *See* Dkt. 85-3 ¶¶ 22-23; Dkt. 85-1 ¶ 68. GGP also cites no authority for the novel proposition that the location of a party's *counsel* (as opposed to the party itself) is relevant to a reasonableness/convenience analysis. If that were so, an out of state defendant could never hire in-state counsel to challenge jurisdiction. *See also* Mot. 12 n.11, 37-40 (discussing factors relevant to reasonableness); section IV below.

### C. Rule 4(k)(2) Does Not Create Jurisdiction Over the Debtor Defendants

Rule 4(k)(2) is not available *unless* "the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one State," *and* "the defendant's total contacts with the United States as a whole are sufficient to confer the court with personal jurisdiction without offending due process." *Astor Chocolate Corp. v. Elite Gold Ltd.*, 510 F. Supp. 3d 108, 124 (S.D.N.Y. 2020). To meet the former requirement, a plaintiff must "certify[] that, to its knowledge, [the foreign defendant] is not subject to jurisdiction in any state's courts."[10] As the First Circuit has explained, "assigning the burden to defendants" would unfairly put "a defendant in a 'Catch-22' situation, forcing it to choose between conceding its potential amenability to suit in federal court (by denying that any state court has jurisdiction over it) or conceding its potential amenability to suit in some identified state." *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999).[11]

Certification here is not as simple as Plaintiff suggests (Opp. 13 n.6).[12] As Plaintiff notes, the only relevant contacts are those relating to the contract (its breach and resultant injury) that gave rise to the arbitration. Opp. 14-15. The only jurisdictionally relevant allegations then are that BRHI and SPI contracted with a Nevada entity and that one or two in-person meetings concerning the MSA occurred in Nevada (*see* FAC ¶¶ 50, 64, 75; Dkt. 85-4 at 31, 61-62). If Plaintiff submitted a Rule 4(k)(2) certification, it would be an admission that these contacts are insufficient for long-

---

[10] *Astor*, 510 F. Supp. 3d at 134-35 (declining to apply Rule 4(k)(2) without certification); *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 240 (S.D.N.Y. 2019) (same); *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, 2015 WL 1514539, at *13 (S.D.N.Y. Mar. 31, 2015) (same), *aff'd*, 771 F. App'x 498 (2d Cir. 2019); *In re M/V MSC FLAMINIA*, 107 F. Supp. 3d 313, 322–23 (S.D.N.Y. 2015) (same).

[11] Plaintiff relies heavily on the Tenth Circuit's *Compañía* decision (Opp. 14-15), but the Tenth Circuit – unlike the First Circuit and courts in this Circuit – does not require any such certification. 970 F.3d at 1284.

[12] In *Freeplay Music, LLC v. Nian Infosolutions Priv. Ltd.* (cited at Opp. 13 n.6), plaintiff's CEO certified under penalty of perjury, and did so only *after* the court had found state long-arm jurisdiction unsatisfied. 2018 WL 3639929, at *13 & n. 47 (S.D.N.Y. July 10, 2018). GGP cannot make the certification here as long as it continues to argue for state long-arm jurisdiction. *See also Astor*, 510 F. Supp. 3d at 134 n.13.

arm jurisdiction in Nevada.[13] But if those contacts are insufficient for jurisdiction in Nevada – the long-arm jurisdiction of which is co-extensive with the limits of due process[14] – they are necessarily insufficient to satisfy federal due process under Rule 4(k)(2).

Even if Plaintiff could somehow make the certification, federal due process still would be unsatisfied because GGP's claim does not "arise out of or relate to" BRHI's and SPI's contacts with the United States. *See Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1780-81 (2017). *Compañía* (cited at Opp. 14) actually demonstrates this point. *Compañía* focused on whether the defendant's U.S. contacts injured the plaintiff, giving rise to the claim that was arbitrated. 970 F.3d at 1284-89. Even though it was a "close question," the test was "narrowly" satisfied, as multiple in-person meetings in the U.S. during which defendant misled plaintiff resulted in the breach of contract that was the subject of arbitration. *Id.* Here, unlike there, BRHI's and SPI's only relevant contacts with the United States – namely, attending a pre-contractual meeting with GGP in Nevada – in no way resulted in the breach or any injury that was at issue in the arbitration. *See also SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018) (where, as here, defendant has had only "limited contacts" with the applicable forum, appropriate focus is whether "plaintiff's injury was proximately caused by those contacts"). The unreasonableness showing here is also stronger than one that had "some traction" in *Compañía*. *Id.* at 1289.[15]

**D.  "Alter Ego" Is Not a Basis for Asserting Personal Jurisdiction Over Any Entity Here**

Conceding that long-arm jurisdiction does not exist for CICL and the Energy Entities (Mot. 12-14), Plaintiff argues that they (and the Debtor Defendants) are subject to jurisdiction as alleged

---

[13] The FAC's smattering of allegations about investor meetings in various U.S. locales is irrelevant because (as discussed in the Motion and above), those meetings were unrelated to the arbitral contract. Mot. 10; page 3 above.

[14] *See, e.g.*, *Cath. Diocese v. John Doe 119*, 131 Nev. 246, 249 (2015).

[15] For instance, the *Compañía* defendant, unlike the Debtor Defendants, had its General Counsel *actually located* in the U.S., and did "hundreds of millions of dollars of business here," 970 F.3d at 1290, compared to Bloomberry, which derives no revenue from the U.S. *E.g.*, Dkt. 12-3 at 9 (Bloomberry's marketing offices are all in Asia).

alter egos of Mr. Razon. Opp. 12, 29, 35. This fails because the alter ego allegations are insufficient. *See* II. below; Mot. 14-32. But even if they were sufficient, Mr. Razon concedes jurisdiction *in this proceeding* not because of his contacts with New York but because he was personally served with process here – so-called "tag" jurisdiction. Tag jurisdiction does not apply to an entity (*e.g.*, *Mohamad v. Rajoub*, 2018 WL 1737219, at *5 (S.D.N.Y. Mar. 12, 2018)) – as we pointed out (Mot. 14 n.16) without rejoinder and as this Court has already held.[16]

"Tag" jurisdiction is a form of *general jurisdiction* under CPLR 301. *See, e.g.*, *Mohamad*, 2018 WL 1737219, at *5. But *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 929 (2011) and *Daimler v. Bauman*, 571 U.S. 117, 122 (2014) each sharply limited the locales in which a corporation is subject to all-purpose (general) jurisdiction as well as the circumstances in which one defendant's concession of jurisdiction could be imputed to another because of their corporate affiliation. Plaintiff cites not a single case – nor have we located any – in which "tag" jurisdiction over an individual was imputed on an alter ego theory to corporate entities having no connection to the forum. Such a novel maneuver would raise serious due process concerns.

Plaintiff's case law mostly addresses whether jurisdiction that is *already properly established over a corporate entity* can be imputed to that entity's owner or affiliates on an alter ego theory.[17] But the "rationale" of cases "holding a corporate parent to answer for conduct within

---

[16] Tr. 19, 25-29 ("Tag jurisdiction is not effective over a corporation. . . . So, without tag jurisdiction *what that leaves is general jurisdiction and specific jurisdiction as a means to obtain jurisdiction over a corporation*."); s*ee also id.* at 28-29 (flagging that the personal jurisdiction holding would remain law of the case absent additional evidence of contact between Bloomberry and New York).

[17] Opp. 12 (citing *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009), *SNET v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010), and *Kinetic Instr., Inc. v. Lares*, 802 F. Supp. 976, 986 (S.D.N.Y. 1992)). It is far more common to use a domestic subsidiary's activities to obtain jurisdiction over a foreign parent than it is to "do the reverse and seek personal jurisdiction over a foreign subsidiary based on the actions of its domestic parent." *Sabol v. Bayer Healthcare Pharm., Inc.*, 439 F. Supp. 3d 131, 143-44 (S.D.N.Y. 2020). Plaintiff does manage to cite a pre-*Daimler / Goodyear* outlier, *Miramax Film Corp. v. Abraham*, 2003 WL 22832384, at *6 (S.D.N.Y. Nov. 25, 2003), that used reverse-piercing to assert jurisdiction over two entities based in part on the fact that their controlling individual did not dispute jurisdiction. Notably, in that case, quite unlike this one, those two entities *had been used to work an alleged fraud on the plaintiff. See id.* at *2-*3, *8.

the forum carried out by an [alleged] alter ego subsidiary," does not apply in reverse. *Home-Stake Prod. Co. v. Talon Petr., C.A.*, 907 F.2d 1012, 1021 (10th Cir. 1990). As the Tenth Circuit explained on strikingly similar facts, "*it is unfair to impute to the [allegedly] dominated corporation the forum contacts of its [alleged individual] alter ego.* The corporate defendants are entitled to defend their status as real legal entities, separate from [the individual], in a forum with which they themselves have sufficient contacts." *Id.* (emphasis added).

## II.     GGP FAILS TO STATE A CLAIM FOR ALTER EGO LIABILITY

### A.  Mr. Razon Is Not Liable as an Alter Ego of Bloomberry

#### 1.  Domination Without More Does Not Suffice for Veil-Piercing

Plaintiff relies on dicta from a trio of maritime cases to argue that it is not required to allege a fraud or other wrong at all.[18] Instead, Plaintiff argues, the veil-piercing test under federal common law is "disjunctive," and therefore it suffices *solely* to allege domination and control. Opp. 17. Here is the exact passage Plaintiff is relying on: "'[The individual] must have used [the corporate entity] to perpetrate a fraud or have so dominated and disregarded [the corporate entity]'s corporate form that [the corporate entity] *primarily*[19] transacted [the individual]'s personal business rather than its own corporate business.'" *Williamson v. Recovery, Ltd.*, 542 F.3d 43, 53 (2d Cir. 2008) (emphasis added; alterations in original). Similar language appears in *Dow Chemical Pac. Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 342 (2d Cir. 1986) and *Kirno Hill Corp. v. Holt*, 618 F.2d 982, 985 (2d Cir. 1980). This language employs a *higher* standard for domination than does New York law, and as explained in II.B.3 below, there is no serious argument that the FAC meets it.

---

[18] Elsewhere in its brief, Plaintiff seems to concede that some type of wrongful conduct is required. Opp. 32-33 (requesting that Non-Bloomberry Entities be "reverse pierced" because of supposed improper diversion of assets from Mr. Razon to them, though not from the Debtor Defendants to Mr. Razon); *see also* Opp. 24 n.17 (citing a case for the proposition that "'the *predicate for application of corporate veil piercing is the commission of a fraud* or *wrong*'" in a section of the brief arguing that no such requirement exists).

[19] Plaintiff's otherwise near-verbatim quotation of *Williamson* incorrectly substitutes the word "essentially" for "primarily." Opp. 17.

But the dicta Plaintiff relies on is not the correct federal standard in the Second Circuit. Plaintiff's cases were self-consciously pronouncing *solely* on maritime law and had nothing to do with the FAA.[20] The Second Circuit's FAA cases incontestably require a fraud or other wrong in addition to domination. *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975) (declining to bind a non-party to an arbitration agreement as an alter ego because even if the complete domination prong was met, there was "no evidence . . . that such control was used to perpetrate a fraud or something akin to fraud. *Such a showing is a sine qua non to holding a non-signatory bound by an arbitration agreement* [as an alter ego].") (emphasis added) (citing *Fisser v. Int'l Bank*, 282 F.2d 231, 238-39 (2d Cir. 1960) (drawing on **New York law** in FAA case to hold that alter ego liability requires both complete domination and a fraud or other wrong)). In fact, in a different FAA case, the same attorney representing Plaintiff here made the identical argument, citing the same dicta[21] – and lost. After reviewing the Second Circuit's cases, Judge Cederbaum concluded that "the federal and New York standards appear to be one and the same," and so the federal standard "should correctly be read as requiring both domination *and* fraud" or other wrong. *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 260 (S.D.N.Y. 2014).[22]

Further, the language Plaintiff relies on is *dicta*. *Interocean* and *Fisser* were decided well before Plaintiff's trio. To whatever extent Plaintiff argues that non-FAA maritime cases are controlling here, later Second Circuit panels had no authority to overrule – nor is a district court free to ignore – the earlier panels. *E.g.*, *Gold v. Feinberg*, 101 F.3d 796, 801 (2d Cir. 1996); *see also Lakah*, 996 F. Supp. 2d at 260 (following *Interocean* as "older and therefore binding"). And

---

[20] Judge-made maritime law is "simply one branch" of federal common law, not the entirety of it. *In re Oswego Barge Corp.*, 664 F.2d 327 (2d Cir. 1981).

[21] *See* Mem. of L. at 57-58 & n.54, *Lakah*, 07 Civ. 2799 (S.D.N.Y. June 19, 2013), ECF No. 191 ("Ainsworth Brief").

[22] Our Motion cited *Lakah* on (among other things) the equivalence between federal common law and New York law. Mot. 15 n.18. Plaintiff ignored it.

sure enough: *Williamson* did not impose alter ego liability because domination was not adequately alleged (542 F.3d at 52-53), *Dow Chemical* found fraud *in addition to* a disregard of the corporate form (782 F.2d at 342-43), and *Kirno Hill* reversed a judgment of alter ego liability because plaintiff had shown *neither* fraud *nor* the requisite domination (618 F.2d at 985). Not one of the trio *actually held* that mere domination, without a fraud or other wrong, is sufficient. Similarly, *not one* of plaintiff's cases used mere domination, without a fraud or other wrong, to pierce the veil or find such a claim stated.[23]

As if Plaintiff were trying to undermine its own argument, the sole FAA case that Plaintiff cites on alter ego expressly applied the "conjunctive" standard. *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 316 F. Supp. 3d 635, 649-50 (S.D.N.Y. 2018) (denying motion to dismiss where plaintiffs sufficiently alleged both domination/control and commission of a fraud/wrong); *see also Oriental Comm. & Shipping Co., Ltd. v. Rosseel, N.V.*, 702 F. Supp. 1005, 1018-19 (S.D.N.Y. 1988) (applying conjunctive standard in FAA case). Plaintiff had to allege a fraud or other wrong that harmed it – and basically admits it did not and cannot do so. *See* II.A.2. below. That dooms its claims. *See, e.g.*, *Schiff v. ZM Equity Partners, LLC*, 2020 WL 5077712, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing because even if complete domination was adequately alleged, abuse of the corporate form to commit a fraud or wrongdoing was not); *Schwartz v. Sensei, LLC*, 2020 WL 5817010, at *9-*10 (S.D.N.Y. Sept. 30, 2020) (similar, plus *harm* was not alleged).

---

[23] *See Goldberg v. Col. Metal Spinning & Stamping Co.*, 1993 WL 361672, at *5-*7 (S.D.N.Y. Sept. 14, 1993) (piercing veil where defendants "manipulated the corporate form in a fraudulent effort to shirk their obligations"); *Status Int'l S.A. v. M&D Maritime Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998) (domination was not adequately alleged, rendering the discussion of a disjunctive versus conjunctive standard dicta); *Wajilam Exports (Singapore) Pte. Ltd. v. ATL Shipping Ltd.*, 475 F. Supp. 2d 275, 283 (S.D.N.Y. 2006) (sustaining alter ego claim where plaintiff alleged that contracting party diverted its revenues to the alleged dominator); *Unithai Maritime Ltd. v. RP Logistics Pvt. Ltd.*, 2008 WL 11518033, at *4 (S.D.N.Y. Aug. 13, 2008) (plaintiff alleged that dominating entity used dominated entity "as 'pass through' entity to insulate itself from creditors").

### 2.   Plaintiff Throws in the Towel on Its Ability To Allege Fraud or Other Wrong

Plaintiff does not seriously dispute that the FAC fails to allege an abuse of the corporate form to perpetrate a fraud or other wrong. Opp. 25 & n.20. For instance, Plaintiff *expressly concedes* the absence of any allegation that Mr. Razon has diverted the assets of Bloomberry, rendered it judgment-proof, undercapitalized it, or otherwise used Bloomberry to perpetrate a fraud on Plaintiff. Opp. 19 n.11. Plaintiff also acknowledges that a "'simple breach of contract, without more, does not constitute a fraud or wrong'" warranting veil-piercing (Mot. 23; *see* Opp. 25), and further does not dispute that the arbitrators made *no finding* (nor does the FAC contain any cognizable allegation) that Bloomberry's breach of contract as found by the tribunal was somehow in bad faith, wrongful, or pretextual. Mot. 23 n.28.[24]

Half-heartedly trying to identify some actionable wrong, Plaintiff argues that Bloomberry terminated the MSA and has subsequently resisted arbitral enforcement for Mr. Razon's "personal benefit." Opp. 25; *see also* Opp. 19, 20, 21.[25] However, as Defendants explained without rejoinder: (1) a summary allegation of "personal benefit" does not suffice for veil-piercing, (2) terminating GGP was *squarely in the interest of Bloomberry as an entity*, as was pressing defenses to arbitral

---

[24] Plaintiff argues that the "wrong" can be a "breach of a legal duty, or a dishonest or unjust act in contravention of plaintiff's legal rights," Opp. 25 (citing *CBF*), but Plaintiff does not actually allege a breach of a legal duty (apart from breach of contract, which is insufficient) or dishonest or unjust act. It is no answer to say that the pleading is governed by Rule 8(a). Opp. 19, 21, 22. Even under Rule 8(a), there must be well-pled, non-conclusory factual allegations to support *each element* of a claim. *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In fact, Plaintiff tellingly places significant reliance on pre-"Twiqbal" Rule 8(a) cases (*see* Opp. 19 (citing *Wajilam*), 22 (citing *Network*)), even urging application of the "no set of facts" standard from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court overruled that standard in *Twombly*, saying that this "puzzling" formulation is "best forgotten." 550 U.S. at 563.

[25] Plaintiff tepidly suggests an additional theory of a wrong: that Mr. Razon allegedly used Bloomberry personnel "*to help him move assets from his own name to an array of entities*, further remoting them from any potential liability he may face." Opp. 25. But this is circular logic. As we explain in II.B. below, allegedly moving assets from *Mr. Razon* to Non-Bloomberry Entities cannot possibly be a wrong that harmed Plaintiff *unless* Plaintiff makes a prior showing that Mr. Razon is an alter ego of Bloomberry (and thus a debtor of Plaintiff), and Plaintiff cannot do that by showing Mr. Razon moved his own personal assets somewhere else. Separately, although Plaintiff alludes to the theory that Mr. Razon's supposed "leveraging" of a relationship with PSE head Hans Sicat somehow constituted the requisite wrong (Opp. 21), Plaintiff offers no response to our point that this theory flunks the causation requirement (Mot. 23).

enforcement, (3) Bloomberry has no obligation to operate in the best interests of Plaintiff, as opposed to the best interests of Bloomberry's shareholders, Mot. 23-25, and (4) contesting arbitral enforcement is *not* "'the kind of fraudulent or wrongful conduct that calls for piercing the corporate veil.'" Mot. 25 (quoting *Am. Fuel*).

Plaintiff also offers *no response* to our point that the true thrust of the FAC was the defective theory that veil-piercing would be equitable because the Philippine courts cannot be trusted to dispense justice in this matter. Mot. 5, 26. Finally, we explained that where, as here, a sophisticated plaintiff had an opportunity to investigate its contractual counterparties ahead of time and *chose not to* make the corporation's controlling shareholder personally liable on the contract, courts are particularly reluctant to pierce. Mot. 26-27. Plaintiff has no response to this, either.

### 3.   Plaintiff Does Not Allege Complete Domination

Plaintiff does not dispute that no U.S. court has ever pierced the veil of a company listed and in good standing on a stock exchange, or even held that a claim for doing so was *stated*. Mot. 4, 16-17; Opp. 23. Instead Plaintiff suggests that Mr. Razon could somehow be the alter ego of the Debtor Defendants *but not of their listed parent*. This makes no sense (BRHI and SPI are operating units of BRC), and Plaintiff cites no case in which such a thing has happened.[26] Plaintiff concedes that BRC – with its dispersed shareholders, two independent directors, and capitalization, governance, disclosure, and audit obligations imposed by the Philippine authorities (Mot. 16-18) – is *not* alleged to be the alter ego of Mr. Razon. Opp. 23. That alone should end the inquiry.

Also, *even if* Plaintiff were correct (and it is not) that the passage it relies on from *Williamson* supplies the correct federal standard for veil-piercing, it is simply not possible to allege

---

[26] To reach Mr. Razon, Plaintiff necessarily "would need [at least] two veil-piercings or findings of alter ego liability – the first to get to [BRC], the [] direct parent of [BRHI and SPI], and the second to get to [Mr. Razon] as the non-debtor ultimate" majority shareholder. *In re Tronox Inc.*, 855 F.3d 84, 106 n.27 (2d Cir. 2017).

that the Debtor Defendants have so "disregarded the corporate form that they ***primarily*** transact *[Mr. Razon's] personal business* rather than their own corporate business," 542 F.3d at 53. And in fact, no such allegation appears in the FAC, which (1) does not actually plead disregard of Bloomberry's corporate form (as we previously explained without rejoinder, Mot. 17-18), and (2) makes it very clear that Bloomberry is *primarily* transacting the corporate business of *Bloomberry*, namely operating Solaire.[27] And that is so despite the allegations that Bloomberry personnel *sometimes* wore different hats and assisted the Razon family with unrelated investments.

Regardless of which Second Circuit formulation applies, the factors that are *supposed to inform* the "domination" analysis are not satisfied.[28] Mot. 17-19, 31-32 (discussing each of the factors). Plaintiff attempts to sidestep this problem by gesturing at *generalized* allegations of control, as if it were sufficient to allege that the chairman, CEO, and indirect majority shareholder installed loyal executives at the company and played a hands-on role in managing it. Opp. 19-23. Plaintiff also urges the Court to consider the "totality" of its allegations, Opp. 25, but that is just a distraction from the fact that *the traditional veil-piercing factors are not alleged here.*

Defendants explained, citing a series of cases, that "undercapitalization" (along with the related phenomenon of siphoning of assets to render a corporation judgment-proof) is "practically a *sine qua non* of alter ego status." Mot. 4, 17, 20. Plaintiff's response: undercapitalization is but one of many non-dispositive factors. Opp. 23. That may *technically* be true, but Plaintiff fails to cite *any case* in which an alter ego claim was upheld, at the pleading stage or otherwise, without

---

[27] *E.g.*, FAC ¶ 13 ("BRHI owns and operates the gaming elements of *Solaire*"), ¶ 14 (SPI "owns and operates the non-gaming elements of *Solaire*"); *see also* Dkt 85-1 ¶¶ 284-323 (discussing BRHI's and SPI's past and anticipated future performance in operating the business of Solaire).

[28] Plaintiff cites a list of 12 or 13 factors compared to the 10 cited by Defendants. Opp. 18; Mot. 16. The lists are similar, though Plaintiff's list *adds* "siphoning of corporate funds by a principal," "insolvency," "perpetuation of fraud by shareholders in maintaining the corporate form," and "failure to pay dividends," several of which are sometimes considered under the "fraud or other wrong" prong (*see, e.g.*, *AFTC II*, 126 F. Supp. 3d at 410, *aff'd*, 716 F. App'x at 28), and *none* of which is or could be alleged here – as Plaintiff acknowledges.

any indication of undercapitalization and/or diversion of funds for personal use.[29] (What is more, most of Plaintiff's cases were decided under the "conjunctive" standard, meaning they reflect ample allegations or findings of a fraud or other wrong *in addition to* domination.) Even *Sphere Digital*, on which Plaintiff heavily relies (Opp. 18, 19, 22), fits the pattern. The contracting party there – which was alleged to have been used as a device to "shift liability for the payment of [plaintiff's] invoices" away from a different entity that "had paid them historically," 2020 WL 6064156, at *2 (S.D.N.Y. Oct. 14, 2020) – eventually filed for bankruptcy,[30] demonstrating that it was undercapitalized and/or insolvent.

As Plaintiff seems to recognize, the only allegations that are even *potentially* relevant to a traditional veil-piercing analysis are (1) the alleged use of the corporate plane, and (2) the alleged use of Bloomberry personnel/office equipment for Energy Entity business. Mot. 19, 31; Opp. 24 & nn.18, 19.[31] But Defendants have explained that use of the plane, without more, is insufficient,

---

[29] *See* Opp. 17-25 (citing *Wm. Passalacqua Bldrs. v. Resnick Devs. S., Inc.*, 933 F.2d 131, 139 (2d Cir. 1991) ("Developers was severely undercapitalized"); *CBF*, 316 F. Supp. 2d at 647-48 (contracting party allegedly "was inadequately capitalized at the time of the transaction" and subsequently transferred all of its assets to a different entity and claimed insolvency); *Network Ent., Inc. v. APBA Offshore Prods., Inc.*, 2002 WL 31050846, at *4 (S.D.N.Y. Sept. 12, 2002) (contracting party allegedly was "suddenly bereft of assets" and plaintiff allegedly was "harmed by . . . [alleged dominator's] diminishment of [contracting party's] assets"); *Picard v. Magnify Inc.*, 583 B.R. 829, 849 (S.D.N.Y. 2018) (entities had been stripped of cash amid withdrawals of fictitious Madoff-related profits for personal use); *Accordia Ne., Inc. v. Thesseus Int'l Asset Fund, N.V.*, 205 F. Supp. 2d 176, 178, 181-82 (S.D.N.Y. May 24, 2002) (controlling individual "grossly undercapitalized" the entity defendants); *Rolls-Royce Motor Cars, Inc. v. Schudroff*, 929 F. Supp. 117, 120, 122 (S.D.N.Y. 1996) ("unbeknownst to Rolls-Royce, [contracting defendant] was insolvent at the time of the [relevant] transactions"); *Ridge Clearing & Outsourcing Solutions, Inc. v. Khashoggi*, 2011 WL 3586455, at *9, *11 (S.D.N.Y. Aug. 12, 2011) ("Ultimate was severely undercapitalized from its inception" and "likely insolvent" at the time of the transaction that harmed plaintiff); *Dow Chem.*, 782 F.2d at 342-43 (affirming district court finding that "Dr. Galin treated Rascator as his alter ego particularly when he drained Rascator of the profits of his fraud," 594 F. Supp. 1490, 1499 (S.D.N.Y. 1984)); *Wajilam*, 475 F. Supp. 2d at 283 (contracting party allegedly diverted its revenues to the alleged dominator); *Unithai*, 2008 WL 11518033, at *4 (dominating entity allegedly received payments meant for dominated entity, and used dominated entity "as 'pass through' entity to insulate itself from creditors")).

[30] *See Sphere Digital LLC, v. Armstrong*, No. 20 Civ. 821 (D. Utah Jan. 4, 2021), ECF No. 62.

[31] Plaintiff refers vaguely to "commingling" of Bloomberry's "assets," Opp. 22, 24, but as we explained without dispute, Plaintiff is referring solely to this (*i.e.*, the plane and the assistance with the energy investments), not to commingling of personal and corporate *funds*, which is what courts conducting a veil-piercing analysis are normally interested in. Mot. 18 & n.24, 20-21. In fact, personal use of corporate *property* or non-financial *resources* is a comparatively unimportant veil-piercing factor that does not even make *Plaintiff's* list of 12 or more factors. Opp. 18.

Mot. 19 (citing *Gartner v. Snyder*, 607 F.2d 582 (2d Cir. 1979) and *Canario v. Lidelco, Inc.*, 782

F. Supp. 749 (E.D.N.Y. 1992)), and Plaintiff has no meaningful response. Opp. 24.[32] And Plaintiff

concedes, as it must, that overlap among personnel is "insufficient without other factors." Opp. 31

n.28; *see also Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007) ("A person can

hold positions as a corporate officer . . . of two companies, and yet can be acting in only one of

those two roles at a given moment."). Here there are no other factors. The alleged involvement of

Bloomberry personnel in Energy Entity business does not suddenly make Mr. Razon personally

liable for Bloomberry's debts, and neither does anything else in the FAC.

### B. The Non-Bloomberry Entities Are Not Liable as Alter Egos of Mr. Razon

We explained that the FAC does not (and cannot) allege that the corporate form of the Non-

Bloomberry Entities was used to visit a fraud or other wrong on Plaintiff, or to harm it. Mot. 27-

28. Plaintiff responds that Mr. Razon has "diverted his assets into the [Non-Bloomberry] Entities

with the intent of shielding those assets ***from his creditors, including Plaintiff***." Opp. 32-33, 35.

First of all, this theory of a "wrong" is not pled in the FAC. *See* Opp. 32 (citing FAC ¶¶ 143, 150-

52, 160, 193, none of which allege that Plaintiff is a creditor of Mr. Razon); FAC ¶¶ 215, 217

(failing to identify a wrong warranting reverse piercing); *see also Wright v. Ernst & Young LLP*,

152 F.3d 169, 178 (2d Cir. 1998) (opposition brief cannot be used to amend pleading).

Further, Mr. Razon *was not a debtor of Plaintiff when he made the transfers and he still is

not a debtor of Plaintiff.* Plaintiff and Mr. Razon will not be creditor and debtor until at a minimum

(1) the Award is reduced to a judgment against the Bloomberry entities, (2) Bloomberry's veil is

---

[32] Plaintiff ignores *Gartner*, and attempts to distinguish *Canario* on the basis that it applied the "conjunctive" standard and was rendered on summary judgment, not the pleading stage, with no credible evidence presented, prompting Plaintiff to accuse us of "misleading" the Court. Opp. 24 n.19. But *Canario* was very clear (and so were we in describing it – we specifically referred to "allegations", Mot. 19) that "*even if these allegations* [regarding much more extreme personal use of a corporate plane than is alleged here] *were substantiated*, they would not "rise to the level necessary to pierce the corporate veil." 782 F. Supp. at 760 (emphasis added). So too here.

pierced such that judgment also is rendered against Mr. Razon, and (3) Mr. Razon refuses to pay

such a (highly hypothetical) judgment. Even then, in order to reverse pierce, Plaintiff would have

to show that equity required looking to the assets of the Non-Bloomberry Entities as opposed to

attaching Mr. Razon's personal assets. In the meantime, this is nothing more than an attempt to

"bypass[] normal judgment-collection procedures, whereby judgment creditors attach the

judgment debtor's *shares in* [a] corporation," but "*not the corporation's assets*." *Cascade Energy

& Metals Corp. v. Banks*, 896 F.2d 1557, 1576-79 (10th Cir. 1990) (overruling a reverse pierce)

(emphasis added). Plaintiff's "reverse pierce" claims are unripe and are, in substance, a request for

an advisory ruling about the parameters of a hypothetical enforcement-of-judgment proceeding

against Mr. Razon.[33]

And while Plaintiff appears to recognize that special-purpose entities are not automatically

deemed "dominated" by their owners (Mot. 29; Opp. 32), Plaintiff mostly does not discuss

(because the FAC does not plead) the *actual factors* used to assess domination, such as lack of

corporate formalities or intermingling of Mr. Razon's personal funds with the Non-Bloomberry

Entities' corporate funds. Instead Plaintiff offers pages of bullet points to support Mr. Razon's

mere "ownership and control over the Energy Entities" (Opp. 29-31), which is not the test. Plaintiff

also refers to use of Bloomberry personnel and resources (though not Bloomberry funds) to assist

with the Energy Entities' business (Opp. 29-32), which is insufficient because case law (that

Plaintiff fails to meaningfully distinguish) plainly allows this and because the Non-Bloomberry

Entities are not alleged to be alter egos of *Bloomberry*. Also, these allegations are totally

---

[33] It is important to bear in mind that "reverse piercing" is an exceptional remedy (even more so than ordinary veil-piercing) and controversial. *See Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694, 711-15 & n.93 (Del. Ch. 2021). To the extent Plaintiff claims that federal common law should be understood as distinct from New York law, Plaintiff does not cite, and we are not aware of, any case in this Circuit applying federal common law that held an *entity* liable for its *owner's* (here, unpled and, to date, non-existent) debts. *See Kingston Dry Dock Co. v. Lake Champlain Trans. Co.*, 31 F.2d 265, 267 (2d Cir. 1929) (L. Hand, J.) (maritime case stating that reverse pierce "if possible at all, must be extremely rare" and involve subsidiary's domination of owner).

conclusory as to the Real Estate Entities. Mot. 31-32 & n.33; Opp. 36; II.A.3 above. In fact, if Plaintiff is correct that domination *alone* suffices to pierce the corporate veil, and if Plaintiff is *also* correct that the FAC's weak and conclusory allegations establish domination of the Non-Bloomberry Entities, then *every single-owner, special-purpose entity would automatically be an alter ego of its owner*. That, of course, is not the law.

### III.    GGP FAILS TO STATE A CONVERSION CLAIM AGAINST MR. RAZON

Attempting to get around the time bar on its conversion claim, Plaintiff invokes the "continuing wrong doctrine." Opp. 26. But as we already noted (Mot. 34 n.36), and as the New York Court of Appeals has squarely held, the continuing wrong doctrine does not apply to conversion claims. *Sporn v. MCA Records*, 58 N.Y.2d 482 (1983); *accord King v. Fox*, 28 F. App'x 95, 98 (2d Cir. Jan. 29, 2002). *Sporn* distinguished between trespass – a mere "interference with plaintiff's property" – and conversion, *i.e.*, the "denial of plaintiff's rights to the property or possession of that property," 58 N.Y.2d at 487. *Sporn* explained that the continuing wrong doctrine applies only to the former, not the latter: "If defendant hits plaintiff's horse repeatedly, plaintiff has a new cause of action upon each striking; but if defendant destroys plaintiff's horse, or ***takes it and claims it as his own***, plaintiff's right accrues immediately and he must sue with the period of limitation measured from that date – or never." *Id.* (cleaned up and with emphasis added).

The FAC alleges that beginning in 2014, Mr. Razon and Bloomberry "***seized***" the Option Shares. FAC ¶ 258 (tribunal found "*de facto* seizure"); *see also id.* ¶¶ 118, 150, 245, 267; Dkt. 85-1 ¶¶ 446-50. Within the limitations period, Mr. Razon allegedly has "***continued to . . . . maintain his de facto seizure of the Option Shares*** and prevent Plaintiff from enjoying and exercising its rights and privileges attended [sic] to its lawful ownership of that property." *Id.* ¶ 259; *see also id.* ¶ 249 n.31 (alleging that Mr. Razon has "continue[d] his seizure"); Opp. 27 (claiming that recently, Mr. Razon "took affirmative steps *to prevent Plaintiff from regaining its rights to own, possess,*

*and dispose of the Option Shares*.”). As alleged, Mr. Razon did not merely hit the horse a few times; he took it (and has held on to it). The claim is time-barred.

Plaintiff’s only authority for applying the continuing wrong doctrine to conversion in New York is *Nuss v. Sabad*, 2016 WL 4098606 (N.D.N.Y. July 28, 2016). There the earlier event, which was outside the limitations period, consisted of tricking the plaintiffs into paying nearly in full, rather than just on a 50/50 basis, for certain property. *Id.* at \*1-\*2. The later event, which was within the limitations period, consisted of diluting, from 50% to 4.5%, the plaintiffs’ *ownership of a corporation that owned the property*. *Id*. at \*2. These were different conversions and the second one caused “a far more significant injury” than the first. *Id*. at \*9. Because the case involved “a series of related but *separate harms*,” *Nuss* concluded that it should depart from *Sporn*. *Id*. at \*10 (emphasis added).[34] Here, there has been just one harm – consistently since 2014. *Compare* FAC ¶ 118-19, Dkt. 85-1 ¶¶ 467-74, 507(c)-(e) (arbitrators imposed the Constructive Remedy worth $196 million based on “the full value of the Shares as of December 9, 2014”) *with* FAC ¶ 268 & page 99 (Plaintiff is still seeking $196 million to compensate it for the loss of the Option Shares).

Next, Plaintiff tries to deal with its *res judicata* problem by arguing that Mr. Razon was not a party to the arbitration. Opp. 28-29. However, he did not need to be a *party*. He only needed to be **in privity** with Bloomberry, which he clearly was and which Plaintiff does not actually dispute. Mot. 35.[35] Also, the FAC identifies no “personal acts of conversion” by Mr. Razon (Opp. 28) distinct from Bloomberry’s “de facto seizure” as found by the tribunal; in other words, the

---

[34] The reason for the continuing wrong doctrine is that a plaintiff might not know its *damages* until the series of wrongs is complete. *King*, 28 F. App’x at 98 (citing *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030 (2d Cir. 1992)). But here, those policies are inapplicable “because by [2014], at the latest, [Plaintiff] could predict [its] alleged damages with ease and precision,” *King*, 28 F. App’x at 98.

[35] Plaintiff calls *Feitshans* “inapposite” (Opp. 28 n.26), yet Plaintiff’s own description of the case makes it sound indistinguishable – which it is.

same claim was raised before.[36] Plaintiff additionally has no response to our separate point that the conversion claim is an impermissibly duplicative, relabeled attempt to enforce the Award against Mr. Razon as the alleged alter ego of Bloomberry. Mot. 36-37; *see also* FAC 99.

## IV.    **THE COURT SHOULD DISMISS UNDER *FORUM NON CONVENIENS***

GGP does not dispute that it forum-shopped or that forum-shopping reduces deference, Mot. 37, yet states categorically that its choice should be given the "greatest deference" because it is a "domestic company." Opp. 37. However, the forum choice of a domestic corporate plaintiff that "maintain[s] a business presence in foreign countries" receives less deference than that of an "individual of modest means." *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2d Cir. 2004). Here, GGP is an internationally focused business (FAC ¶ 48) that entered into a relationship under which GGP would "manage the day-to-day operations of the Facilities" *located in Manila*. Dkt. 85-4 at 39.[37] Deference is reduced.

Backtracking from the FAC's assertions that Mr. Razon has undue "influence" in the Philippines, GGP seeks to disqualify the Philippines on the grounds that were GGP to proceed there, GGP could not reach the Defendants' U.S. assets. Opp. 38. But the Second Circuit has explained that the adequacy of the alternate forum depends on whether "*some assets*" are available

---

[36] Plaintiff suggests that for *res judicata*, Plaintiff had to be able to name Mr. Razon in the arbitration. That is not the test, but even supposing it were: an individual can be forced to arbitrate on the contracts of a corporation if the individual is the corporation's alter ego. *See, e.g.*, *Lakah*, 996 F. Supp. 2d at 254 (same counsel "pursued discovery for five and a half years, attempting to show that" individuals were bound as alter egos on entities' arbitration clauses); *see also* Ainsworth Brief 5, 56. Therefore, to the extent Plaintiff is arguing that it could not have brought Mr. Razon into the arbitration, Plaintiff is admitting that its alter ego claim against him fails.

[37] We explained that *one reason* for reducing deference is that GGP is not a New York entity. Mot. 38. GGP tries to refute this point by citing *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142 (2d Cir. 2000), and a district court case (*Constellation*) that itself relied on *Guidi*. Opp. 37 & n.36. But what *Guidi* actually held is that "the states where Plaintiffs reside are not relevant to the *forum non conveniens* analysis *in this case*," and expressly distinguished between the sympathetic individual plaintiffs suing there and a corporate plaintiff of GGP's ilk. 224 F.3d at 146 n.4, 147 ("***This is not a case where the plaintiff is a corporation doing business abroad and can expect to litigate in foreign courts***.") (emphasis added). On top of that, one of GGP's own cases said that plaintiff's status as an out-of-state company was a factor weighing *against deference*. *Mexico Infrastructure Fin., LLC v. Corp. of Hamilton*, 2019 WL 1206690, at *6 (S.D.N.Y. Mar. 14, 2019) ("New York is not Plaintiff's home forum.").

there, "***not whether the precise asset located here can be executed upon there***." *Figueiredo v. Peru*, 665 F.3d 384, 390-91 (2d Cir. 2011) (emphasis added). Rather than reckon with *Figueiredo*, Plaintiff relies on its dissent. Opp. 38-39. Moreover, Bloomberry has not just "some" but substantially *all* of its assets in the Philippines – billions of dollars' worth, a sizable portion of which is cash or cash equivalents. *See* Mot. 17 n.22; *see also* Dkt. 12-3 at 74.

GGP is clearly hoping the Court will not reach the third step of the *forum non* analysis. Opp. 37, 38, 39. GGP makes no attempt to grapple with (among other things) the "extraordinary, multi-layered comity problem" that the conversion claim would present in this jurisdiction (this Court would have to sit in judgment of the Philippine courts as the alleged tortious instruments of Mr. Razon's will, *see* Mot. 33 n.35, 39), nor with the significant conflicts of laws issues likely to arise. Mot. 39-40. GGP instead makes the unremarkable point that it is a "favored policy" of the United States to confirm Convention awards. Opp. 39. But the Second Circuit has held (over the dissent that GGP relies on) that this "general policy must give way" in the face of strong countervailing factors. 665 F.3d at 392.[38] Additionally, GGP's assertion that the witnesses and evidence it needs "are either located in the United States or readily available" (Opp. 40) is belied by GGP's recent request for Letters Rogatory to obtain testimony and evidence from the Philippines. Dkt. 116. GGP also cites no authority for assessing the Philippine witness' convenience differently to the extent they can use (according to Plaintiff's unsupported assertion, Opp. 40) "private jets" to "ease" the (at least) 32-hour round trip voyage from Manila that they would have to undertake to testify about matters with no connection to New York.

---

[38] Indeed, courts in this Circuit have not hesitated to dismiss Convention actions based on *forum non conveniens*. *See, e.g.*, *Prodprogramma-Impuls Ltd. v. Bank of India*, 2012 WL 2411809 at *10-11 (S.D.N.Y. June 25, 2012) (dismissing because of the inconvenience of establishing successor or alter ego liability as between two Indian corporations when India could more appropriately and conveniently adjudicate such issues); *HS Europe S.A. v. El Attal*, 2010 WL 3000059, at *5-6 (S.D.N.Y. July 22, 2010) (application to enforce international award against alleged alter egos dismissed because none of the parties was present in New York, and an adequate alternative forum existed).

Dated: September 3, 2021                                          Respectfully submitted,
      New York, New York

MILBANK LLP                                                      WALFISH & FISSELL PLLC

/s/  Daniel M. Perry_____                                     /s/  Rachel Penski Fissell____
Daniel M. Perry                                                 Rachel Penski Fissell
55 Hudson Yards                                                 Daniel R. Walfish
New York, NY 10001                                             405 Lexington Ave 8th floor
Telephone: (212) 530-5000                                      New York, NY 10174
Facsimile: (212) 530-5219                                      Telephone: 212-672-0523
dperry@milbank.com                                             rfissell@walfishfissell.com
                                                                dwalfish@walfishfissell.com
Brett P. Lowe (admitted *pro hac vice*)
1850 K Street, NW                                               *Attorneys for Defendants Enrique K.*
Suite 1100                                                      *Razon Jr., Asia Arrow Limited,*
Washington, DC 20006                                           *Rizolina LLC, Ensara LLC, Nozar*
Telephone: (202) 835-7500                                      *LLC, Bowery Bay LLC, Campanilla*
Facsimile: (202) 263-7586                                      *LLC, Fesara LLC, and 11 Essex Street*
blowe@milbank.com                                             *Realty LLC*

*Attorneys for Defendants Bloomberry Resorts*
*and Hotels Inc. and Sureste Properties, Inc.*

MEHAFFYWEBER, PC

/s/  Corey J. Seel_____
Corey J. Seel (admitted *pro hac vice*)
Konor Cormier (admitted *pro hac vice*)
Diana J. Shelby (admitted *pro hac vice*)
500 Dallas, Suite 2800
Houston, TX 77002
Telephone: 713-655-1200
Facsimile: 713-655-0222
coreyseel@mehaffyweber.com
konorcormier@mehaffyweber.com
dianashelby@mehaffyweber.com

*Attorneys for Defendants Collingwood*
*Investment Company Limited; Collingwood Oil*
*& Gas Holdings, LLC; Collingwood USA,*
*Inc., Collingwood Brookshire USA, Inc. and*
*Collingwood Appalachian Minerals, LLC*