September 3, 2021

**VIA ECF**
Hon. Sarah Netburn
United States District Court for the Southern District of New York
40 Foley Square, Room 430
New York, NY 10007

Re:     *Global Gaming Philippines, LLC v. Razon, Jr., et al.*, 21 Cv. 2655 (LGS) (SN)

Dear Magistrate Judge Netburn:

As directed by the Court (ECF No. 144), the Parties jointly submit this status letter to identify issues that require the Court's intervention with regard to Plaintiff's motions to compel production of documents by Defendant Enrique K. Razon, Jr. ("Razon") (ECF No. 112); the Debtor Defendants (ECF No. 109); the Real Estate Entities (ECF No. 113); and the Energy Entities (ECF No. 110).

## PLAINTIFF'S STATEMENT

**Defendants Continue to Delay Productions, Claiming Newly Revealed Data Issues**
This action commenced more than five months ago, and Defendants *still have not produced any email communications* (other than communications that had been produced in the Arbitration) and apparently have not begun searching emails or any meaningful search of other electronic data.

Defendants' data loss and data retrieval issues have become a significant factor in delaying fact discovery, yet they failed to raise those issues until the last three weeks, gradually revealing the extent of their issues. At the outset of this action, in the Parties' Rule 26(f) conference, Defendants did not raise any issue about preservation of or access to ESI. In the parties' May 6, 2021, joint letter and proposed case management plan to the Court, Defendants did not identify such issues and, instead, *advocated to close fact discovery by early September*. (ECF No. 46 at 4.) On June 8, 2021, Defendants urged Judge Schofield to set July 30 as the cutoff for complete productions of documents for requests previously served (*i.e.*, the document requests that are the subject of Plaintiff's motions to compel). (ECF No. 83.) But the Defendants' recent revelations reveal that the deadlines they advocated have long been impossible for them to honor:
1. ICTSI's email server:
    a. In mid-August, Defendants gave notice that a significant amount of email data stored by Razon's company, ICTSI,[1] before March 2016 was deleted. Plaintiff has not been able to verify the fact or extent of the loss, the circumstances under which the data was deleted, whether it is recoverable and whether backup sources exist, but the ICTSI servers at issue contained data highly relevant to the issues in this case. In fact, according to counsel, Razon used his ICTSI.com address as his sole email address to conduct business for all his businesses, including the Entity Defendants, and many (if not most) of the Entity Defendants' relevant personnel used ICTSI.com email

---

[1] ICTSI refers to Razon's port management company, International Container Terminals Services, Inc. As alleged in this Action, Razon has appointed common officers, directors and other agents across each of his entities including ICTSI, uses resources from those entities interchangeably and disregards corporate separateness. Defendants acknowledged in the August 12 Letter, that ICTSI.com email addresses were used by the entity Defendants.

      addresses, including Estella Tuason-Occeña and Gerard Festin, who were the subject of Your Honor's ruling on August 4. (Hrg. Tr. at 42-43, 45.) The potential loss of ICTSI.com emails means other sources (*i.e.*, other senders and recipients) of emails are now more significant in the data search, yet Defendants are resisting and have not started searching those sources.

    b. On August 30, counsel disclosed that <u>despite the numerous initial RFPs served by Plaintiff in May 2021, Defendants have not yet searched the ICTSI server for the data that they admit exists</u>. Defendants claim it cannot be searched remotely, and contend that COVID restrictions in the Philippines have prohibited them from accessing the server. On September 2, Defendants informed Plaintiff that the Philippines has extended the lockdown to September 7.

2. <u>Solaire's pre-2018 email archives</u>: One week ago, on August 27, Defendants gave notice that pre-2018 data for many of the Debtor Defendants' personnel using Solaire's email system (including Occeña and many others) is accessible only by restoring archive tapes, and "further restoration efforts will be needed if we reach agreement [on search terms]."

The timing and completeness of Defendants' eventual production of data/documents remains uncertain. In the five months since this case commenced, Defendants apparently have done nothing to gather relevant data from ESI repositories and search for responsive documents. Faced with a fact-discovery deadline of October 11 and a requirement to start discussing expert discovery schedules next week (per the Case Management Order), Defendants' effort has been lethargic, if not an intentional effort to run the clock.

**Defendants' Non-Compliance with the Court's August 4, 2021 Rulings**

Despite the Court's direction at the hearing on August 4, ***Defendants have not produced a single additional document to Plaintiff***. The Court directed the Defendants to produce to Plaintiff, by August 20 (Tr. at 60), certain documents and communications, including: communications related to the formation of the Real Estate Entities and the decision to make Ms. Razon (and her children) the members (Tr. at 20); Debtor Defendant's communications that involve any of the other defendant entities (Tr. at 47); documents concerning the employment of Ms. Occeña,[2] Mr. Festin, and Mr. Lacap (Tr. at 42-43, 45).[3] Plaintiff raised this issue in its August 20 letter to the Court. (ECF No. 142.) Defendants nevertheless have not produced documents.

**Impasses Concerning Plaintiff's Requests for Production**

After several lengthy meetings and letters since August 20, the Parties have reached an impasse on many issues. This week, Plaintiff provided a narrowed list of proposed initial search terms—with the expectation (and express reservation of rights) that Plaintiff will be able to request

---

[2] Counsel for the Energy Entities represented to the Court at the August 4 hearing that Ms. Occeña did not have a written agreement to work as CFO for Defendant Collingwood Investment Company Ltd. (Tr. at 41.) Earlier today, after counsel received Plaintiff's portion of this letter, counsel produced a purported written agreement—which, among other things, calls into question the thoroughness of any search done to date and the diligence that preceded counsel's representations.

[3] The Court also directed Defendants to provide and documents concerning personal use of the BRHI planes and use of those planes by other Defendants. (Tr. at 59.) During meet-and-confers, Defendants have admitted that—contrary to counsel's representation on the record in the August 4 hearing (Tr. at 60)—BRHI in fact has two airplanes as Plaintiff asserted. Defendants have agreed to provide "summaries" of the travels on the BRHI planes and provided summaries today, September 3, 2021. Plaintiff's counsel has not had an opportunity to evaluate the sufficiency of the summaries.

additional follow-up searches and productions. Plaintiff's proposed terms are tailored to the issues, include many of the document requests that remain unresolved, and include searches of email addresses used by Razon's personnel for his businesses.[4] (A copy of Plaintiff's August 31 letter with search terms is attached as PX A.) If Defendants were to run Plaintiff's suggested searches and produce responsive (non-privileged) Communications, the outstanding disputes could be substantially narrowed, and the need for further document production could be reduced. Yet they refuse to do so. (Attached as PX B is Defendants' response, dated September 2, 2021.) In fact, Defendants' arguments below concerning the structure of particular searches—first provided to Plaintiff today at 4:53 p.m.—is the first substantive feedback they provided regarding those searches. This is pure gamesmanship. To the extent the Court does not summarily grant Plaintiff's request for an order directing Defendants to run the searches in PX A, Plaintiff requests a hearing to respond to the misleading arguments made below.

Defendants also refuse even to provide hit counts for the search terms. Their refusal flies in the face of the Court-ordered "Stipulation and Order Establishing The Protocol for the Production Of Documents and Electronically Stored Information ('ESI')" (ECF No. 79) ("ESI Protocol"), which addresses this very situation and provides "when negotiating search terms for ESI searches" … "[a] Producing Party *will provide to a Requesting Party reasonable 'hit' counts of Documents*, as well as a hit count Including families, and a unique hit count (to the extent the review platform/vendors used by counsel can feasibly provide these), …." ESI Protocol ¶3.2 (emphasis added). Instead of negotiating in good faith, Defendants notified Plaintiff yesterday that they refuse to discuss Plaintiff's proposed search terms. (See PX B hereto.)

**Defendants' Redactions and Withholding of Information**
Counsel for Razon, Ms. Penski Fissell, represented to the Court in writing that: "Mr. *Razon has agreed to produce the Deed of Trust* [for the Collingwood Trust]." (ECF No. 123 (emphasis added).) Counsel made that representation two months ago in order to avoid arguing the merits of Plaintiff's motion to compel, including any argument about the relevance of the document. Despite her express representation, however, counsel produced only two heavily-redacted pages of that document and withheld at least six pages, asserting they are irrelevant. Ms. Penski Fissell has repeatedly refused to meet and confer on the issue, despite her representation to the Court that she was willing to do so. Yesterday, she sent an email reiterating the position that the missing pages are not relevant, resting on the illogical position that the date of formation of the trust renders it irrelevant. The Collingwood Trust exists today, owns the Energy Entity Defendants (including Collingwood Investment Company Limited), and is a linchpin in Razon's movement of assets at issue in this case. In addition, Plaintiff's claim for conversion includes a demand for punitive damages, and Plaintiff is entitled to discovery into Razon's assets for that reason.

Defendants also have broadly redacted many other documents. In their paltry production to date, they have redacted (for example) names and addresses of parties to agreements, terms of

---

[4] As the Court knows, Razon is the central figure controlling a vast network of companies, including each of the fifteen entity defendants in this action. Plaintiff issued a large number of document requests to Razon directed to a variety of topics, including his control over each of those entities, discovery concerning Plaintiff's claim for conversion, and discovery relevant to jurisdiction over the Debtor Defendants. Plaintiff's motion to compel included 70 individual document requests. Defendants are loath to search the emails of Defendant Razon, and the parties have not yet reached agreement on nearly all of those requests.

agreements, bank account numbers, and other information of indeterminate nature due to the redactions. They explained that some (unspecified) redacted information is protected by Philippine law, but they have not identified such documents or information. Even in this letter, they do not attempt to justify their redactions.

A two-tier Confidentiality Order was entered by the Court. (ECF No. 95.) There is no legitimate basis for withholding pages or redacting non-privileged information.[5]

**Order Requested by Plaintiff:** Plaintiff requests an order directing Defendants to:

1. Immediately produce the Deed of Trust in its entirety without redaction.

2. Immediately re-produce documents without redactions, except where redactions are limited to attorney-client communications or work product, and to provide, no later than September 10, a privilege log regarding the redactions they have made and any documents they have withheld.

3. Immediately produce documents the Court ordered them to produce at the August 4 hearing (identified above).

4. Restore, no later than September 17, 2021, all archived emails for all email accounts that likely have relevant information[6] for the period January 1, 2010, to present.

5. Immediately take action to access remotely, make a forensic copy, or otherwise gain ready access to the data stored on the ICTSI server(s) so that Defendants will not be hindered by further restrictions that may be imposed in the Philippines.

6. By no later than September 10, 2021, run Plaintiff's proposed initial search terms (in the attachment to PX A hereto) across all appropriate email accounts (as indicated in PX A) and produce the initial categories of responsive documents listed on PX A (excluding emails that were produced in the arbitration, which can easily be electronically de-duped); or if Defendants insist such production would be unduly burdensome, to provide hit counts for Plaintiff's proposed search terms, as required by the ESI Protocol.[7]

---

[5] Defendants have argued to Plaintiff that the Court denied (or Plaintiff had abandoned) any request the Court did not expressly address at the August 4 hearing. That position is contradicted by the record, including Your Honor's statement that "my intention is to give the parties some direction and scope and hopefully to give you then an opportunity to go back into your discovery efforts …." (Hearing held August 4, 2021, Tr. at 5.)

[6] While Plaintiff is an outsider to the operations of all of Razon's entities, Plaintiff understands that the email addresses listed in Plaintiff's proposed search terms (PX A) are likely to have relevant information. Additional accounts known to Defendants may also contain relevant information.

[7] Defendants' statement below misrepresents that Plaintiff agreed (a) no attachments to emails need to be produced, and (b) that the Debtor Defendants' production of board meeting minutes appointing officers and directors negated the need to search for related communications. Plaintiff did not agree to any such limitations.

## DEFENDANTS' STATEMENT

Plaintiff GGP's statement is littered with red herrings and issues that have no bearing on the relief it requests. Our response below is in response to the six numbered items in GGP's statement just above. As it assesses GGP's requests, we ask the Court to weigh the significant, uncurable legal flaws in Plaintiff's alter ego theories. *See* Dkt. No. 143 at 1; *see generally* Dkt. No. 147 at 8-17.

*GGP #1: Deed of Trust*. GGP claims above that the Trust "is a linchpin in Razon's movement of assets at issue in this case," but the operative complaint nowhere makes such allegation, mentioning the Trust only in passing in one paragraph (FAC ¶ 117). Nor could it. Of all the transfer of funds information produced to Plaintiff regarding every transaction in the FAC, not one document shows a movement of funds through a bank account in the Trust's name. The Trust's *only* connection to this lawsuit is its ownership of CICL the holding company, which in turn owns certain other alleged alter egos (*see, e.g.* Dkt. No. 112 at 4 n.7; FAC ¶ 117). And, the produced portions of the Deed show all material information, including Mr. Razon's role, the Trust's beneficiaries, and, most importantly, that it was created in 2002 – nearly 10 years before Mr. Razon met GGP – and thus could never have been an instrument to defraud or otherwise wrong GGP. GGP's request for every single page of the Razon family's highly sensitive and private estate planning document is nothing more than personal intrusion for intrusion's sake. **Mr. Razon requests that the Court deny this request.**

*GGP #2: Redactions*. On August 20, GGP asked Defendants to produce unredacted documents or "[i]f Defendants [would] not produce unredacted documents . . . a log to enable GGP to assess the grounds for redacting the documents." Dkt. No. 143-1 at 2. In response, Defendants agreed to GGP's alternative proposal that Defendants "provide a categorical log of redactions showing the bates number and the reason for the redaction after all document productions are completed." PX B. GGP has now backtracked and only wants unredacted documents. **Defendants request that the Court allow, in the first instance (and as initially proposed by GGP), a categorical log of redactions.**

*GGP #3-5: Immediate production of certain documents, restoration of archived emails, and other unreasonable demands*. Defendants have produced the BRHI/SPI plane logs as ordered. And CICL produced documentation concerning Ms. Occeña's employment by CICL as finance officer. The remainder of the documents have been the subject of extensive (unresolved) negotiations over search terms and custodians with GGP. Furthermore, Defendants' collection of emails has been greatly impacted by the Covid lockdown measures in Manila. GGP's #4-5 suggest that Defendants can somehow overcome these government-imposed measures. Of course, they cannot. But Defendants have been, and will continue, to use best efforts to collect emails upon resolution of the custodians and search terms to be used. **Defendants request that the Court deny GGP's requested relief in #3-5.**

*GGP #6: Search terms & custodians.* Instead of conducting GGP's proposed search terms and custodians in PX A[8], **Defendants request to be allowed to run the search terms and custodians**

---

[8] This iteration of proposed search terms (PX A) was first provided to us in a letter dated August 31, 2021, but received by all NY/DC-based defense counsel on September 1, 2021 at 12:21 am.

**in the Appendix attached as DX 1 hereto.** Defendants have endeavored to accept many of GGP's proposed search terms, and our custodian list includes nearly every individual that would be likely to have responsive information. Further, Defendants have offered to add additional custodians if, after producing documents, it becomes clear that Defendants did not include a relevant custodian. The issues with each of GGP's proposed searches in PX A are significant and summarized below:

Search 1: There is almost no difference in the parties' proposals other than Plaintiff is seeking documents regarding the appointment of Ms. Occeña and Mr. Tan as officers of CICL which occurred over 14 and 20 years ago, respectively, and thus would not be located by Plaintiff's proposed search. And, CICL has produced whatever documents it has regarding such appointments.

Search 2: Plaintiff broadens Defendants' search related to Mr. Sicat and Mr. Argyropoulos (DX 1, Search 2), tangential witnesses whose sole alleged relevance is described in Razon's Response to Plaintiff's Motion (Doc No. 123 at 2-3). Plaintiff thus seeks significantly more information than is warranted.

Search 3: Plaintiff adds significantly more custodians to Defendants' proposed search despite Defendants informing Plaintiff that Defendants believe their proposal captures all custodians that could have potentially relevant information.

Search 4: With respect to the Energy Entities-Related Search Terms, the only stated relevance is to show the involvement of non-Collingwood personnel in the Energy Entities' business (a fact that is hardly disputed). Thus, the actual substance of the emails is largely irrelevant. Moreover, Plaintiff's proposal is totally unreasonable. First, GGP's additional search terms contain overly broad and irrelevant terms not tailored to the Energy Entities' business or the transactions identified in GGP's FAC. Second, GGP's requested custodians are broader than GGP's document requests. Despite only seeking documents concerning three individuals (Occeña, Festin, and Lacap), Defendants proposed searching additional email accounts. Not satisfied with Defendants' proposal, GGP seeks significantly more email accounts including accounts that Defendants could not possibly have possession, custody or control of, such as *the personal email accounts of an outside counsel* (Mr. Tan) and a BRC board member, and even though substantially all of Mr. Tan's in-scope communications would be covered by the attorney-client privilege. Third, the documents that Plaintiff wants produced have no relevance to this suit. For example, all "pre-transaction communications" to/from/cc/bcc Ms. Occeña is overly broad and will likely require the production of sensitive due diligence data, such as seismic information. Previously, GGP had agreed to not seek the production of any attachments to communications and Defendants included that limitation in their proposal.

Search 5: This is a broader version of Search 1 and is irrelevant for the reasons noted above, and raises the same concerns with Mr. Tan's email as discussed for Search 4.

Searches 6 and 7: We have already produced all of the funding documents related to the acquisitions by the subsidiaries, including communications from Mr. Razon, on behalf of CICL, requesting the transfer of funds to the various third parties involved in the transactions. Asking

for "all documents" related to the funding of these transactions is overly broad. And, for the same reason as noted in Search 4, the search terms proposed are overly broad.

Searches 8 and 12: First, these searches (using incredibly broad terms) would have Defendants search for and produce "ALL" emails relating to GGP's failed attempt to sell the Option Shares *due to a Philippine judicial injunction* from January 2014 – when the injunction was imposed– *to the present*, regardless of whether they are responsive to any GGP document request, much less are related to a request that Defendants agreed to produce documents for or are the subject of a Court order. Second, BRHI/SPI already produced such documents to GGP in the Arbitration,[9] including documents related to the involvement of Mr. Sicat in GGP's attempted sale of the Shares in January 2014.[10] Third, GGP has provided no coherent explanation as to the relevance of documents for the period *after* mid-January 2014, when the injunction was imposed. Fourth, the vast majority of documents post-January 2014 would be privileged. Indeed, the parties have engaged in litigation concerning the Option Shares since then. GGP's search would require BRHI/SPI to review effectively all documents regarding such legal proceedings. GGP has not attempted to explain how such a huge endeavor could be proportional to the needs of this case. Finally, GGP's position cannot be squared with its own refusal to search for and produce any documents in response to BRHI/SPI's request for documents regarding the Philippine legal proceedings concerning the Option Shares.[11]

Search 10: This search comes as a surprise to BRHI/SPI, as BRHI/SPI believed 1RFP No. 8 (*see* Dkt. 109-2 at 8) was resolved following BRHI/SPI's production of meeting minutes – for a period of roughly a decade – that reflect the appointment of (i) BRHI's/SPI's directors, and (ii) the officers of BRHI/SPI that are required to be appointed by BRHI's/SPI's by-laws. Notably, GGP did not raise any issue with this compromise or production during the August 4 hearing.[12] Yet, GGP seeks sweeping discovery from numerous custodians for a time period spanning over a decade without articulating how such sweeping discovery is relevant and proportional to the needs of this case. At best, the documents might show that Mr. Razon, as chairman, CEO and indirect majority shareholder of BRHI/SPI, exerted influence over who would lead BRHI/SPI's multibillion-dollar casino and resort business. But such fact would have no bearing on the factors that courts consider in assessing whether an individual improperly "completely dominates" a company for purposes of the veil piercing analysis.[13]

Searches 9 and 11: First, like Searches 8 and 12, these use incredibly broad terms and would have Defendants search for and produce "ALL" emails concerning "the negotiation, execution, and/or performance" of the MSA and EOA, regardless of whether they are responsive to any GGP document request, much less are related to a request that Defendants agreed to produce documents

---

[9] *See, e.g.*, Dkt. 109-6 at 2-4 (noting GGP's previous request in the Arbitration for "[d]ocuments, including but not limited to Communications to, from, or including any of Bloomberry Hotels, Sureste, Bloomberry Resorts Corp., Prime Metroline, or ICTSI, discussing or referring to: . . . GGAM's attempted sale of the Shares in January 2014").
[10] Indeed, BRHI/SPI produced in the Arbitration GGP's letter to Mr. Sicat dated January 16, 2014, which BRHI/SPI bates stamped as BRHI_0014890, as well as email correspondence that attached that letter, bates stamped as BRHI_0014888 – BRHI_0014889. GGP had not even attempted to rebut this point.
[11] *See* GGP's R&Os to BRHI's and SPI's First Set of RFPs (Dkt. No. 104-2) at RFP Nos. 24 and 25.
[12] *See* Defendants' August 12, 2021 Letter to GGP (Dkt. No. 143-1) at 5-6.
[13] *See, e.g.*, Dkt. No. 134 (GGP's Opposition to the Motion to Dismiss) at 18.

for or are the subject of a Court order. Second, these searches seek documents that BRHI/SPI already produced to GGP in the Arbitration.[14] Third, these searches disregard the Court's instruction that (i) BRHI/SPI identify GGP's RFPs in the Arbitration that overlap with 1RFP Nos. 2 and 3, (ii) GGP identify the extent to which 1RFP Nos. 2 and 3 do not overlap with GGP's RFPs in the Arbitration as identified by BRHI/SPI, and (iii) to the extent GGP can identify a lack of overlap, the parties work together to come up with focused searches for such documents.[15] BRHI/SPI did its part (*see* Dkt. No. 143-1), but GGP's response (Dkt. No. 143-2) failed to identify any lack of overlap, and instead requested that BRHI re-search and re-produce the documents that it already searched for and produced in the Arbitration.[16] In subsequent communications, GGP has remained unable to identify any lack of overlap. This proposed search by GGP is yet a further instance of GGP disregarding the Court's orders, and should be rejected.

Search 13: This search seeks the emails of Mr. Razon's wife and children related to (a) the Real Estate Entities' formation and (b) investments or other contributions of capital into a Real Estate Entity. As to formation, GGP wants to know the extent, if any, of *Mr. Razon's* involvement with such entities. Aug. 4, 2021 Hr'g Tr. 19:7-12. We therefore have agreed to search his emails and those of certain personnel of the non-Real Estate Entities. *See* DX 1, Search 3. Mrs. Razon's or her children's involvement with those entities' formation would be unremarkable. As to investments or contributions of capital into the Real Estate Entities, GGP has repeatedly stated it is not seeking information regarding "broken windows," Aug. 4, 2021 Hr'g Tr. 14:12-22, the Court already denied Plaintiff's request for communications regarding the purchase of the real estate that each Real Estate Entity owns, *id*. 17:23-18:13, and, as the Real Estate Entities have explained numerous times, there are no other investments or contributions of capital to such entities, *see, e.g,* Dkt. No. 122 at 2.

---

[14] *See generally* BRHI/SPI's July 16, 2021 letter to the Court in opposition to GGP's letter motion to compel (Dkt. No. 124) at 2-3.
[15] *See* August 4, 2021 Hr'g Tr. 54-55.
[16] GGP's August 20, 2021 response letter referred to purportedly "narrow[ing]" its 1RFP Nos. 2 and 3, notwithstanding that such purportedly "narrowed" RFPs would still be captured by the RFPs that GGP made to BRHI/SPI in the Arbitration and for which BRHI/SPI produced documents. This was not the Court's instruction, and GGP's failure to identify any overlap requires that 1RFP Nos. 2 and 3 be denied.

Respectfully submitted,

| | |
|---|---|
| MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C. | WALFISH & FISSELL PLLC |
| /s/ Kevin N. Ainsworth | /s/ Rachel Penski Fissell |
| Kevin N. Ainsworth<br>Jason P.W. Halperin<br>Daniel T. Pascucci<br>Joseph R. Dunn<br>666 Third Avenue<br>New York, NY 10017<br>T: (212) 935-3000<br>F: (212) 983-3115<br>jhalperin@mintz.com<br>dtpascucci@mintz.com<br>jrdunn@mintz.com<br>kainsworth@mintz.com | Rachel Penski Fissell<br>Daniel R. Walfish<br>405 Lexington Ave 8th floor<br>New York, NY 10174<br>Telephone: 212-672-0523<br>rfissell@walfishfissell.com |
| *Attorneys for Plaintiff Global Gaming Philippines, LLC* | *Attorneys for Defendants Enrique K. Razon, Jr., Asia Arrow Limited, Rizolina LLC, Ensara LLC, Nozar LLC, Bowery Bay LLC, Campanilla LLC, Fesara LLC, and 11 Essex Street Realty LLC* |
| MEHAFFYWEBER, PC | MILBANK LLP |
| /s/ Corey J. Seel | /s/ Daniel M. Perry |
| Corey J. Seel (pro hac vice)<br>KONOR CORMIER (pro hac vice)<br>DIANA J. SHELBY (pro hac vice)<br>500 Dallas, Suite 2800<br>Houston, TX 77002<br>Telephone: 713-655-1200<br>Facsimile: 713-655-0222<br>coreyseel@mehaffyweber.com<br>konorcormier@mehaffyweber.com<br>DianaShelby@mehaffyweber.com | Daniel M. Perry<br>55 Hudson Yards<br>New York, NY 10001<br>Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219<br>dperry@milbank.com<br><br>Brett P. Lowe (admitted *pro hac vice*)<br>1850 K Street, NW<br>Suite 1100<br>Washington, DC 20006<br>Telephone: (202) 835-7500<br>Facsimile: (202) 263-7586<br>blowe@milbank.com |
| *Attorneys For Defendants Collingwood Investment Company Limited, Collingwood Oil & Gas Holdings, LLC; Collingwood USA, Inc., Collingwood Brookshire USA, Inc. and Collingwood Appalachian Minerals, LLC* | *Attorneys for Defendants Bloomberry Resorts And Hotels Inc. and Sureste Properties, Inc.* |

116023877v.1