UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

GLOBAL GAMING PHILIPPINES, LLC,

                                          Plaintiff,                      21-CV-02655 (LGS) (SN)

              -against-                                          **ORDER**

ENRIQUE K. RAZON, JR., et al.,

                                       Defendants.

-------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

        Defendants Enrique K. Razon, Jr. ("Razon"), and 11 Essex Street Realty LLC, Asia Arrow Limited, Bowery Bay LLC, Campanilla LLC, Ensara LLC, Fesara LLC, Nozar LLC, and Rizolina LLC (collectively, the "Real Estate Entities") move to compel Plaintiff, Global Gaming Philippines, LLC, to produce documents relating to Plaintiff's knowledge and investigation of the relationship between Razon, the Debtor Defendants,[1] and the Real Estate Entities. ECF No. 103. Defendants Collingwood Oil & Gas Holdings, LLC, Collingwood USA, Inc., Collingwood Brookshire USA, Inc., and Collingwood Appalachian Minerals, LLC (collectively, the "Energy Entities") also request that the Court order Plaintiff to produce documents, communications, and records of payments between itself (or its counsel) and various third parties. See ECF No. 102. Razon, the Real Estate Entities, and the Energy Entities adopt each other's arguments as they apply to similar requests for production that each group of Defendants has served upon Plaintiff.

---

[1] The Debtor Defendants are Bloomberry Resorts and Hotels, Inc. ("BRHI") and Sureste Properties, Inc. ("SPI").

I.      **Documents Relating to the Defendants as Alter Egos**

In this action to recognize and enforce an arbitral award against the Debtor Defendants following an agreement between Plaintiff and the Debtor Defendants (the "MSA"), Plaintiff has named Razon and the Real Estate Entities as Defendants and as alter egos of the Debtor Defendants and Razon, respectively. Plaintiff seeks to pierce the corporate veil and hold Razon and the Real Estate Entities liable for the arbitration award. See, e.g., ECF No. 85 at ¶ 202.

"The concept of piercing the corporate veil is a limitation on the accepted principles that a corporation exists independently of its owners, as a separate legal entity, that the owners are normally not liable for the debts of the corporation, and that it is perfectly legal to incorporate for the express purpose of limiting the liability of the corporate owners." Morris v. N.Y. Dep't of Tax'n & Fin., 82 N.Y.2d 135, 140 (1993). In order to pierce the corporate veil, a party must show that "(1) the owner has exercised such control that the corporation has become a mere instrumentality of the owner, which is the real actor; (2) such control has been used to commit a fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff." Atateks Foreign Trade, Ltd. v. Priv. Label Sourcing, LLC, 402 F. App'x 623, 625 (2d Cir. 2010) (quoting Freeman v. Complex Computing Co., 119 F.3d 1044, 1052 (2d Cir. 1997)). "It is well settled that New York courts are reluctant to disregard the corporate entity," particularly because New York permits "individuals to incorporate for the very purpose of avoiding personal liability." William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600 (2d Cir. 1989) (collecting cases). Therefore, courts will only allow the corporate veil to be pierced when the party can demonstrate that the corporate "form has been used to achieve fraud, or when the corporation has been so dominated by an individual . . . and its separate identity so disregarded, that it primarily

2

transacted the dominator's business rather than its own and can be called the other's alter ego." Id. (quoting Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979)).

Both parties cite to Brunswick Corp. v. Waxman, in which the plaintiff attempted to pierce the corporate veil and hold the corporate officials personally responsible for a deficiency committed by their corporation. 599 F.2d 34, 34–35 (2d Cir. 1979). The trial court had determined that the plaintiff "knowingly entered into the conditional sales contracts involved in this litigation with a no-asset corporation which was created for the sole purpose of taking title to the equipment" the plaintiff sold; therefore, the Court of Appeals concluded that Plaintiff "knew or should be charged with the knowledge" that the individual defendants "wished to avoid personal liability and that the sole obligor on the sales contract was to be the corporate dummy created for that purpose." Id. at 36. The Court of Appeals also noted that because the plaintiff investigated whether the corporation would bring in sufficient revenue to make the agreed-upon payments, it was "aware or should have known that the dummy corporation was created for the limited purpose of purchase, that the property and buildings in which the equipment was to be installed were owned by the [defendants] in their individual capacities, and that the [defendants] would personally conduct" the business. Id. Thus, the plaintiff, by contracting with the corporation rather than with the individual officers, "obtained precisely what it bargained for," and given that it did not bargain for the individual liability of the corporate officers, piercing of the corporate veil in that case "would not in our view accomplish justice or equity but would in fact thwart that end." Id.

Here, Razon and the Real Estate Entities (and by extension, the Energy Entities) seek to compel Plaintiff to comply with several requests for production ("RFP") that seek "all documents" relating to Plaintiff's discussions regarding who and what entities would be a party

3

to the agreement, and expectations as to who would be liable for the Debtor Defendants' debts, among other topics. See ECF No. 103, Ex. 1. Razon and the Real Estate Entities insist this discovery is relevant to determine whether Plaintiff will ultimately be able to pierce the corporate veil and establish a theory of Razon's alter egos. ECF No. 103. Plaintiff, on the other hand, contends that the RFPs at issue are exceptionally burdensome and of questionable relevance. ECF No. 125.

Throughout its response, Plaintiff appears to draw a distinction between documents created before and after the MSA was executed, acknowledging that a plaintiff's knowledge *before* the signing of the contract was relevant to the veil piercing inquiry, whereas a plaintiff's knowledge *after* the signing was not. Id. at 10.

The Court agrees with Plaintiff's temporal distinction. The court in Brunswick and its progeny were concerned with taking the extraordinary veil-piercing step when "the party seeking to pierce the veil had the opportunity to investigate the financial records and structure of the relevant corporation ahead of time." Lakah v. UBS AG, 996 F. Supp. 2d 250, 268 (S.D.N.Y. 2014). What a party investigated or discovered *after* an agreement is signed, however, is irrelevant to the analysis of what the plaintiff "knew or should have known" when they entered into an agreement with a corporation. See Brunswick, 599 F.3d at 36.

Accordingly, the Court grants Razon and the Real Estate Entities' motion to the extent that it seeks relevant documents from the period *before* the MSA was executed. Plaintiff has already agreed to produce documents relevant to RFP No. 12 that were created before the MSA was executed and offered to meet and confer in an effort to limit the scope of RFP No. 8. ECF No. 125 at 9–10. The parties are directed to meet and confer in order to narrow the scope of the disputed RFPs to the relevant time period and the relevant inquiry into Plaintiff's investigation, if

any, as to the relationships between the Debtor Defendants and their alleged alter egos. The motion is denied as to any documents related to Plaintiff's investigation or knowledge after the MSA was executed.

## II.     Documents Relating to Third Parties

In response to the Energy Entities' requests for records relating to Plaintiff's interactions with various third parties, Plaintiff asserts that the contested discovery is not relevant, unduly intrusive, and not proportional to the needs of the case. ECF No. 125. Plaintiff also claims that any responsive communications would be protected from disclosure due to the common interest doctrine. Id.

The common interest doctrine is "an extension of the attorney client privilege." United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (quoting Waller v. Fin. Corp. of Am., 828 F.2d 579, 583 n.7 (9th Cir. 1987)). The rule

> serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. . . . Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected. . . . [I]t is therefore unnecessary that there be actual litigation in progress for the common interest rule of the attorney-client privilege to apply. . . . Neither is it necessary for the attorney representing the communicating party to be present when the communication is made to the other party's attorney.

Id. at 243–44 (citations and internal quotation marks omitted); accord Egiazaryan v. Zalmayev, 290 F.R.D. 421, 433 (S.D.N.Y. 2013).

The common interest rule will apply if "(1) the party who asserts the rule . . . share[s] a common legal interest with the party with whom the information was shared and (2) the statements for which protection is sought [were] designed to further that interest." Egiazaryan,

5

290 F.R.D. at 433 (quoting Allied Irish Banks, P.L.C. v. Bank of Am., N.A., 252 F.R.D. 163, 171 (S.D.N.Y. 2007)). "'The clearest indication of common interest is dual representation' in a particular litigation." Id. at 434 (quoting Am. Re-Ins. Co. v. U.S. Fid. & Guar. Co., 40 A.D.3d 486, 491 (1st Dep't 2007)). The rule also applies, however, to situations "where there is a joint defense or strategy, but separate representation." Id. (quoting Am. Re-Ins. Co., 40 A.D.3d at 491); see Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. 1995) ("[T]he doctrine applies where parties are represented by separate counsel but engage in a common legal enterprise."). Courts have not required the parties to have "identical legal interests" in order for the rule to apply; rather, they need "a limited common purpose," which necessitates disclosures to certain parties which would otherwise serve to waive the attorney-client privilege. Egiazaryan, 290 F.R.D. at 434 (citations omitted).

Plaintiff asserts that its communications with Ahmad Atwan, Chad Brown, Demetri Argyropoulous, Hay, and Dome/BBH are protected under the common interest privilege because they share a "limited common purpose" in "cooperating in Plaintiff's investigation of the facts surrounding the transactions involving Razon/Collingwood and Razon's unlawful use of the Collingwood entities as alter ego instrumentalities." ECF No. 125 at 14. Yet Plaintiff has not established that it shares a sufficient common interest with each of these individuals or entities and that the statements at issue were intended to "further that interest." Egiazaryan, 290 F.R.D. at 433. The fact that these non-parties (excluding Argyropoulous) are in litigation against Collingwood does not establish a limited common purpose. Nor has Plaintiff made the necessary "showing that the communication[s] in question w[ere] given in confidence and that the client[s] reasonably understood it to be so given," when it is Plaintiff's burden to establish all elements of the common interest rule. Chevron Corp. v. Donziger, 296 F.R.D. 168, 203 (S.D.N.Y. 2013).

Although Plaintiff cannot rely on the common interest privilege to avoid the production of the documents at issue, the Court nevertheless denies the Energy Entities' motion as it seeks records that are far too broad and not relevant to issues in this case. The Energy Entities have not sufficiently established how the broad array of records and communications sought relate to Plaintiff's attempted enforcement of the arbitration awards and veil piercing, or with the Defendants' asserted defenses. Given that Plaintiff has offered to meet and confer on this issue, the parties are directed to do so.

### III. Conclusion

The Razon and the Real Estate Entities' motion to compel discovery is granted in part and denied in part. Plaintiff is ordered to produce documents from the period before the MSA was executed that relate to what it knew or should have known about the entity with which it was contracting. The parties are directed to meet and confer in order to narrow the scope of the disputed RFPs to the relevant time period and relevant inquiry. The Razon and the Real Estate Entities' motion is denied as to any documents related to Plaintiff's investigation or knowledge after the MSA was executed. The Energy Entities' motion is also denied.

The Clerk of Court is respectfully directed GRANT in part and DENY in part the motion at ECF No. 103.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:    September 17, 2021
         New York, New York