October 29, 2021

**VIA ECF**
Hon. Sarah Netburn
United States District Court for the Southern District of New York
40 Foley Square, Room 430
New York, NY 10007

**Re:**   *Global Gaming Philippines, LLC v. Razon, Jr., et al.*, 21 Cv. 2655 (LGS) (SN)

Dear Magistrate Judge Netburn:

As directed by the Court on October 20, 2021 (Dkt. 173) (the "October 20 Order"), the parties submit this joint letter.

**Plaintiff's Statement**

The October 20 Order directed the parties to report regarding ESI and the use of technology-assisted review (TAR) software to search both the ICTSI and Solaire email systems. Separately, the Order directed the parties to submit, on November 10, another letter identifying any other unresolved disputes. Defendants' portion of the letter goes beyond the scope that the Court directed the parties to address, and does so in a transparent attempt to pull the wool over the Court's eyes. Instead of complying with the Court's order that they run search terms, they argue relevance. Their *modus operandi* is to unilaterally determine what Plaintiff "needs" to try this case, and to respond to discovery in accordance with what Defendants believe is relevant. In doing so, they have refused to review and produce documents resulting from Plaintiff's requested searches, and produced only limited documents. Given the compressed time-frame for addressing all of the ESI-related issues regarding Defendants' discovery efforts, and the fact that Defendants first provided their draft of this letter this afternoon, Plaintiff reserves its right to raise, and respond to, non-ESI issues when the parties file the letter due on November 10.

      *Background Regarding the ESI and TAR Issues*

In this action, Plaintiff seeks (a) to enforce a foreign arbitral award of more than $300 million against the Debtor Defendants (BRHI and SPI); (b) to hold the other Defendants liable for the Debtor Defendants' obligations, as alter egos; and (c) to hold Defendant Enrique K. Razon Jr. ("Razon") liable for conversion of certain option shares. The scope of discovery relates only to the alter ego analysis, the conversion claim, and personal jurisdiction over several of the defendants who have challenged jurisdiction.

At the August 4, 2021 hearing on Plaintiff's motions to compel (Dkt. 109, 110, and 113), the Court declined to address each RFP individually, addressed only a few RFPs, and directed the parties to meet and confer based on its guidance to resolve their disputes. Plaintiff thereafter attempted to engage Defendants to discuss those unresolved document requests, but Defendants steadfastly refused to discuss any of the RFPs that were not the subject of express Court orders to compel.

On August 12, 2021, Defendants began proposing the use of search terms. That letter also gave notice that ICTSI—whose email accounts had been used by Razon and his numerous agents, including personnel of the Debtor Defendants and other Defendants—had lost certain ESI prior to

Hon. Sarah Netburn
October 29, 2021
Page 2

March 2016. On August 27, 2021, Defendants identified five repositories holding potentially relevant documents to be searched:

- ICTSI Emails: including the sole email account used by Defendant Razon (according to Defendants), and the email account used by his lieutenant, Estella Tuason-Occeña;

- BRHI/SPI Emails (a/k/a Solaire): emails accounts hosted on Solaire's email system, including emails that were restored from various archive tapes;

- Collingwood Emails: emails hosted on Collingwood's email system;

- Arbitration Litigation Collection: documents that were collected by BRHI/SPI's counsel in connection with the underlying arbitration, including emails collected from both Solaire's and ICTSI's email server systems; and

- Atwan Litigation Collection: documents that were collected by Collingwood's counsel in connection with a litigation in the United States District Court for the Northern District of Texas, including emails collected from Collingwood's and ICTSI's email server systems.

Without waiving its right to insist on production of documents responsive to the unresolved RFPs, Plaintiff proposed search terms. Defendants refused to run those search terms. On September 21, the Court ordered Defendants to run Plaintiff's search terms in the five repositories and other email accounts and provide hit reports to Plaintiff by September 24, 2021. (Dkt. 162.) Ultimately, Defendants provided (on October 13) the following charts showing hits for Plaintiff's proposed searches on the ICTSI and Solaire repositories. (The last columns, under the headings "Revised per October 7 Letter" and "Oct 8 Revision" refer to the search results after omitting terms Defendants had indicated were "problematic.")

| ICTSI GGP Search # | Resulting No. of Items | Revised per October 7 Letter |
|---|---|---|
| 1 | 425 | |
| 2 | 0 | |
| 3 | 67,428 | 14,227 |
| 4 | 24,420 | 21,811 |
| 5 | 2,101 | |
| 6 | 34,915 | |
| 7 | 462 | |
| 8 | 11,557 | 8,054 |
| 9 | 0 | |
| 10[1] | 374,144 | |
| 11 | 0 | |
| 12 | 63,496 | 46,458 |

| Solaire GGP Search # | Resulting No. of Items | Oct 8 Revision |
|---|---|---|
| 3 | 7,939 | 698 |
| 4 | 19,502 | 11,372 |
| 5 | 80 | |
| 6 | 2,813 | |
| 10[1] | 207,924 | |
| 11 | 24 | |
| 12 | 33,423 | 7,635 |

---

[1] *See infra* for discussion re Plaintiff's Search No. 10.

Arguing that many of the search terms were too broad, Defendants refused to take any further action with regard to those searches. In a joint letter to the Court dated October 15, 2021 (Dkt. 171 at 2-3), Plaintiff explained that the most efficient path to finalize searching would be for Defendants to take a multi-step approach: (a) review and produce responsive documents immediately from searches that did not result in unusually high hit-counts; (b) for the searches having unduly large hit counts, omit terms that Defendants have identified as problematic, re-run the searches and, if the hit counts are reasonable, review and produce responsive documents from that data; and (c) continue to work with Plaintiff to narrow the other searches. Defendants have been largely unwilling to take these steps, instead insisting on producing only documents from *their own* search terms, because (they argue) the Court did not order Defendants to review the results of Plaintiff's terms, only to provide hit counts.

Plaintiff also pointed out that the large hit-counts shown in the charts above were not reliable because, in part, Defendants have not used litigation-support software or transferred data to a litigation support system (such as Relativity) to enable efficient searching and deduplication of data. The reported hit counts likely are counting the same document numerous times – particularly for the Solaire Emails, which were restored from an (as yet) unspecified number of archive tapes. Regarding this search issue, the Court's October 20 Order stated (in part):

> Rule 26(g) requires a party responding to discovery requests to conduct a "reasonable inquiry." In the context of electronically stored information (ESI), that may require the use of a technology-assisted review (TAR) program. In light of the issues raised by the Plaintiff, use of TAR or other software is likely necessary. The parties are ORDERED to meet and confer to discuss production of all ESI, including whether a TAR software is necessary. The parties are ORDERED to report to the Court on the status of their discussions and whether any disputes remain by October 29, 2021.[2]

*Status and Disputes*

In a recent meet-and-confer, Defendants refused to transfer data from ICTSI and Solaire data sets and use TAR software to run searches, perform deduplication, and identify any problematic search terms. Defendants have not explained their refusal to download and search, using TAR software, the emails in the Solaire system. This afternoon, counsel for Defendants provided a Declaration of Estella Tuason-Occena explaining that ICTSI—the port management company owned and controlled by Razon—refuses to upload data to another platform to perform TAR searching. Plaintiff has not been given sufficient opportunity to review that declaration (or the accompanying declaration of ICTSI's Chief Financial Officer), and will respond further once it has done so.

Defendants' attempt to paint ICTSI as an independent third-party who is being unduly burdened by this discovery process is disingenuous at best. ICTSI (owned and controlled by Razon) admittedly consented to Razon's and others' use of the ICTSI email system to conduct business for other entities in the "Razon Group of Companies." Razon's agents (including Tuason-Occena)

---

[2] The Order requires the parties to file a status letter on November 10 identifying any other outstanding issues.

Hon. Sarah Netburn
October 29, 2021
Page 4

have used those email accounts to conduct their business for Razon and the Defendant entities. Defendants have obligations in this litigation to search for, review, and produce potentially responsive documents, and there appears to be no legitimate dispute that those emails are within the possession, custody and/or control of the Defendants. Defendants cannot use ICTSI's "non-party" label to skirt their obligations.

Indeed, the thrust of ICTSI's objection to downloading data is that Plaintiff's search terms may capture emails unrelated to the issues in this action. It is Defendants' "cross-pollination" that created that problem for them. Razon controls ICTSI and consented to that commingling. Emphasizing the commingling and data issues, Defendants have reported that Ms. Tuason-Occena's emails on the Solaire email system no longer exist in that system because they enabled both (a) automatic forwarding of her emails to the ICTSI server, and (b) automatic deletion of those emails on the Solaire system. There is no question the Defendants have the ability to search for and produce all responsive documents from the ICTSI email accounts.

Aside from the issues of downloading ICTSI and Solaire data and using TAR software, Defendants refuse to run Plaintiff's proposed alternative searches directly on the ICTSI and Solaire systems. If they were to run alternative searches and provide hit counts, the parties could negotiate a narrowed set of search terms. For example, although Plaintiff's search No. 10 apparently hit on a large number of documents, Plaintiff had previously, and subsequently, proposed more-focused, discrete searches to run in lieu of No. 10, with the expectation that each discrete search would capture relevant information and would be less likely to capture noise. (See Letter dated 12, 2021, attached hereto as PX-1.) Defendants have refused to run those discrete searches.

Defendants' counsel also argue that, even after omitting terms they view as too broad, the search results (shown in the charts above) are problematic and they refuse to review the resulting hits. Accordingly, their argument that Plaintiff should further narrow "plaza" is a red herring, since they have omitted "plaza" and refuse to review the resulting hits or provide any information regarding other allegedly overbroad terms. Defendants refuse to (a) review the results of Search Nos. 1-2, 5-7, and 10, and (b) to run any subset of those searches to determine whether the searches can be narrowed to less burdensome numbers.

*Conversion*

Plaintiff's claim for conversion includes acts by Razon beginning in 2014 through the present. (Am. Compl. ¶¶ 245-263.) Defendants, nevertheless, argue below—without basis—that the only relevant acts occurred in 2014. That is false. Moreover, while certain emails and documents relevant to the conversion claim may be privileged, that is not an undue burden; Defendants have the ability to cull privileged materials through electronic searching, and the parties have agreed to use categorical privilege logs. Since Defendants are unwilling to negotiate a narrower set of search terms, they should be ordered to review the search results regarding Razon's interference with Plaintiff's ownership of its option shares.

*Plaintiff's Motions to Compel BRHI/SPI, Collingwood Entities, and Real Estate Entities*

As noted above, at the August 4 hearing on three of Plaintiff's motions to compel, the Court declined to address each RFP individually, addressed only a few RFPs, and directed the parties to meet and confer, based on the Court's guidance, to resolve their disputes. Defendants have

steadfastly refused to discuss any of the RFPs that were the subject of those motions to compel. Even after being ordered to run Plaintiff's search terms, Defendants refuse to produce documents responsive to RFPs other than those that the Court expressly ordered them to produce. Thus, many of the RFPs that were the subject of those three motions to compel remain unresolved. For example (and without limitation), Plaintiff's RFP 8 to the Debtor Defendants requested communications concerning their appointment of officers and directors. (See Mot. to Compel (Dkt. 109) at 5.) On August 20, Plaintiff proposed narrow sets of search terms for this category of documents; Plaintiff sent that letter to Defendants again on October 14. Defendants, however, refused to run those searches.

### *Defendants' Complaint About Plaintiff's Search Terms*

Defendants' complaint about Plaintiff's search terms is a manufactured argument-for-argument's sake. This is not a situation where Plaintiff is unwilling to run an effective search or to cooperate with Defendants. Instead, Defendants let discovery proceed for five months—after Plaintiff had already gathered client data for review—before asking Plaintiff about search terms. Since Plaintiff's review of data was ongoing, Plaintiff (a) suggested Defendants could review Plaintiff's resulting production and determine whether they thought additional searches were needed, and (b) asked Defendants to identify any search terms they thought should be included. Defendants refused to suggest any search terms, yet they accuse Plaintiff of being uncooperative. Moreover, in this letter (below)—without ever having asked Plaintiff about these topics—Defendants argue that "Plaintiff itself refuses to indicate whether (i) its own searches for responsive documents involved searching the emails of their in-house counsel and/or outside counsel, (ii) it has custody of such emails, or (iii) it is willing to provide search hit reports for such emails." This sand-bagging argument should be rejected.

Indeed, this eleventh hour ill-conceived, tit-for-tat argument typifies the Defendants' posture in meet and confers. These asks are not directed at any legitimate need or issue in the case. In fact, counsel for Razon described the reason for Defendants' requests as "If we have to do it, why shouldn't you?" Their request below appears to be a response to Plaintiff's position that the emails of Mr. Tan—the corporate secretary of BRHI/SPI—should be searched for responsive documents, as he was intimately involved in the various transactions that are the subject of this case. In contrast, Defendants provide no basis for their request, which they stated in this letter for the first time. (Nor do they seem to have considered the implications of their request, as counsel for BRHI/SPI in this action was involved in various transactions at issue in the alter ego analysis.)

### **Defendants' Statement**

Plaintiff's scorched-earth approach needs to be reined in. In Plaintiff's world, no issue is too small to raise to Your Honor, no amount of search hits too excessive, and no RFP worthy of compromise. Plaintiff's attitude flies in the face of Judge Schofield's order (Dkt. 170) that **"[d]iscovery in this proceeding . . . should be limited"** and Your Honor's conclusion that Plaintiff's extensive requests for "all communications" are "overly broad in their scope." (Dkt. 154 (denying nearly all ESI discovery of Mr. Razon except with respect to two RFPs).) As just one example of Plaintiff's behavior, despite a wealth of information showing that Plaintiff's search terms yielded, in Plaintiff's own words, "unusually high hit-counts" (Dkt. 171 at 2), Plaintiff has not offered *one single concession on one of its proposed search terms – despite promising that it would.* And

while engaging Defendants in never-ending (and uncompromising) negotiations on search terms, Plaintiff has demanded that Defendants quickly produce ESI[3] discovery and now demands that Defendants re-do all ESI discovery again, but this time with their search terms. Plaintiff can't have it both ways – require immediate production of ESI discovery while continuing to negotiate for their own ESI discovery of Defendants. Defendants have now completed their productions in response to all Court orders. Such compliance required Defendants to review over 45,000 documents, and resulted in the production of over 50,000 pages representing over 7,500 documents (which is in addition to the over 17,000 documents that Defendants had already produced). Any additional email discovery is unwarranted in this streamlined proceeding. Plaintiff has every document that it could ever need to try this case.

In an extraordinary display of hypocrisy, Plaintiff has refused, without explanation, to provide Defendants with the custodians and search terms that it used to locate its own responsive documents, much less negotiate with Defendants on such search parameters or run search hit reports. Plaintiff apparently believes that discovery should proceed under two sets of rules, one for Defendants and a very different one for itself. Plaintiff should be ordered to comply with the ESI Protocol (Dkt. 79), provide its search parameters to Defendants and negotiate with Defendants about such search parameters in good faith – just as Defendants have done for the last three months with Plaintiff.[4]

### A. Any Additional ESI Discovery from Defendants Should Be Denied

Beginning on August 12, 2021, Defendants sent Plaintiff a letter with proposals for how they intended to comply with the Court's orders during the August 4 hearing regarding the production of documents. (*See* Dkt. 142-1.) Plaintiff countered with a laundry list of counterproposals. The parties exchanged additional letters, held multiple meet and confer discussions, and ultimately were unable to reach an agreement on search terms and custodians, with the result being that the parties submitted a joint letter to the Court on September 3, 2021 that attached competing search term and custodian proposals. (*See* Dkt. 148.) In response, the Court did not order that Defendants follow either proposal but ordered that Defendants conduct the searches Plaintiff requested and provide resulting search hit reports. (*See* Dkt. 162.) Defendants did that.

Plaintiff complained about the level of detail in some of these results (*see* Dkt. 171 at 2), following which the Court ordered the parties to discuss the possible use of technology-assisted review (TAR) for searching ESI (Dkt. 173 at 2). *First*, Plaintiff simply told the Court half-truths (Dkt. 171 at 2). Defendants provided Plaintiff with detailed hit-level results on a sample set of emails including 69 pages of such results in a letter on September 29, 2021. (*See* DX 1[5].) This information was more than sufficient to identify many of the terms that produced excessive hits. *Second,* and relatedly, Plaintiff has made no good faith attempt to negotiate its proposed search

---

[3] We use "ESI" herein to refer to emails that are stored in various electronic repositories.

[4] Plaintiff notes above that it received Defendants' portion of this letter this afternoon. Defendants met and conferred with Plaintiff on all topics in this letter on multiple occasions including as recently as two days ago, and Plaintiff first provided its draft of this letter at 6:13 p.m. tonight.

[5] Defendants' exhibits attached hereto are labeled DX #, and so on.

terms with Defendants.  For example, it was readily apparent from the search hit results provided on September 29 (along with Defendants' review of thousands of documents) that a search for the term "plaza" returned thousands (if not tens of thousands) of documents that were not responsive. (*See* DX 1 at 2.)  But Plaintiff refused to modify its proposed searches to remove even this one term, and despite telling Defendants that it would propose modified search terms, it never did. *Third*, the ESI Protocol – stipulated by the parties and ordered by Judge Schofield – quite properly requires only "reasonable 'hit' counts of Documents."  "Unique hit counts" of the kind that Plaintiff is demanding are required only "to the extent that the review platform/vendors used by counsel can feasibly provide" them.  (*See* Dkt. 79 at ¶ 3.2.)  Here, as Plaintiff well knows (*see* DX 1, DX 2), it is simply not "feasible" for ICTSI (a non-party) to export, and counsel's review platforms to ingest, the volume of data that would be required to provide detailed hit counts of the kind Plaintiff is demanding.  *See* Declaration of Estella Tuason-Occeña (DX 3); Affidavit of Rafael D. Consing Jr. (DX 3, Annex B).

Plaintiff misleadingly claims that Defendants refused to "use TAR software to run searches." Technology-assisted *review* (TAR), however, normally refers to the use of technology to *reduce* a party's burden of *review* by using methods like predictive coding and/or artificial intelligence in place of a traditional document-by-document review.  Plaintiff has never once proposed anything of the kind.  Plaintiff instead has seized upon the Court's reference to TAR to try to *increase* Defendants' burden – even though it is not at all feasible for ICTSI, at a minimum, to search documents in the way that Plaintiff proposes, even though all Defendants have complied entirely with the ESI Protocol in place in this case, and even though Plaintiff's proposal is entirely unnecessary here.

*Finally*, and most critically, the entire discussion of Defendants' search capabilities assumes that more ESI searching and production needs to happen.  On October 16, Plaintiff demanded immediate compliance with all pending Court orders. (Dkt. 171 at 5.)  This Court agreed (Dkt. 173). Defendants complied.  Which begs the question – why do Defendants need to keep searching their emails?  Plaintiff – without even having a chance to review Defendants' production – seeks a re-do by demanding that its own search terms be run to look for the same emails and documents that Defendants have already produced.  This is emblematic of Plaintiff's insistence on creating burden for burden's sake.  As we will explain, with respect to each of the categories for which the Court has ordered ESI discovery, Defendants have already gone above and beyond what was necessary and produced thousands of documents.

The Court has ordered ESI discovery broadly on four main topics (further detail on the Court's Orders is set forth in DX 2.)  Defendants' searches have captured all relevant information on these topics, as described below.

**Topic #1:  ESI related to the Real Estate Entities (*see* DX 2 at 1-2).**  Defendants reviewed over 20,000 documents that resulted from their searches, and produced all responsive, non-privileged documents.  In addition, Defendants recently received approximately 500 emails from Mr. Razon's wife Felicia Razon. These are currently being reviewed and any nonduplicative, nonprivileged, responsive documents will be produced by no later than November 3.  Plaintiff's proposed search strings for this topic (when run on the emails on ICTSI's and Solaire's servers) – even with the most problematic terms removed – still yield an additional nearly 15,000 hits.  There is no need to collect, review, and produce even more documents on this topic, which is focused on the formation

of the Real Estate Entities and what the Court referred to as the issue of "cross-pollination." DX 2 at 1-2. Because Defendants' documents on this subject were produced today, Plaintiff has no basis for claiming that Defendants' production is any way incomplete.

**Topic #2: ESI related to the Energy Entities (*see* DX 2 at 3)**. Defendants reviewed nearly 20,000 documents that resulted from their searches, and produced all responsive, non-privileged documents. In addition, Plaintiff subpoenaed, and received, 9,885 documents from Ahmad Atwan, a former consultant for the Energy Entities (*see* DX 3 ¶ 13). Plaintiff's search strings for this topic – even with certain problematic terms removed – yields an additional 33,000 hits. The ESI searches for this topic (whether proposed by Plaintiff or Defendants) are targeted solely to the so-called "cross-pollination" issue, namely whether certain employees of the Award Debtors also worked on Energy Entity business. Defendants' email productions provided previously and today (not to mention the Atwan production) are more than sufficient on that topic. Such productions were also extremely time consuming and costly, as numerous responsive documents involved communications with counsel about transactions, and thus had to be evaluated for privilege and redacted where appropriate. In addition, Defendants offered to stipulate to certain employees' roles with the Energy Entities – and have done so now in the Declaration of Ms. Occeña (*see* DX 3 ¶¶ 5, 13-14) – to avoid this costly and unnecessary review and production. As yet another example of Plaintiff's bad faith approach to discovery, it responded that it would accept a stipulation only if Defendants *also* stipulated to "Mr. Razon's domination and control" and "the use of __assets__ . . . of Debtor Defendants for the benefit of his other companies" – as opposed to just the personnel of Debtor Defendants, even though Plaintiff knows that no assets (*i.e.,* funds) from any Debtor Defendant was ever used for the benefit of any other company. In other words, Plaintiff was only willing to stipulate to ultimate legal conclusions and facts entirely unrelated to the purpose of this ESI search. Defendants thus conducted the requisite document review and have produced all relevant documents. No further discovery on this topic is necessary.

**Topic #3: ESI related to negotiation and/or performance of the MSA and EOA (*see* DX 2 at 4)**. Defendants reviewed over 3,400 documents that resulted from their searches (nearly 700 of which had already been produced to Plaintiff in the Arbitration), and produced all responsive, non-privileged documents. For the reasons set forth in DX 2 ¶¶ 16-17, no further review or production of documents on this topic is needed.

**Topic #4: ESI related to Conversion/the Option Shares (*see* DX2 at 5-6)**. Defendants reviewed over 1,700 documents in response to these Court orders and produced all responsive, non-privileged documents. Plaintiff wants Defendants to upload, search, and review documents that result from 60,000 hits on the subject of the Option Shares for the time period January 1, 2014 to the present. Yet all relevant actions with respect to the Option Shares took place solely in 2014, and it is hard to divine any responsive communication after January 2014 – at which time the parties were already in active litigation – that would not be privileged. So Plaintiff is essentially asking Defendants to search thousands of documents for a needle in a haystack that refers back to earlier events and is somehow *not* privileged. Defendants' searches on this topic are sufficient.

In sum, further ESI searches on the topics listed above should be denied as not proportional to the needs of this case.

  B.  **Plaintiff's Requests for Documents Not Subject to a Court Order Should Be Denied**

Hon. Sarah Netburn
October 29, 2021
Page 9

Plaintiff demands that the Court order Defendants to search for ESI – specifically, Plaintiff's searches 1-2, 5-7, and 10 – in response to RFPs that are not the subject of any court order. But, as of October 29, **Plaintiff had failed to identify even one outstanding RFP that these searches even relate to**. Given Plaintiff's inability to correlate these searches with an outstanding RFP, they can readily be denied.

Moreover, as to Search 10 – which seeks ESI related to the appointment of directors and officers of BRHI/SPI – the Court should readily deny that request. To date, Defendants have produced the following information regarding the appointment of directors/officers of BRHI/SPI: (i) the minutes of meetings of their board of directors since September 9, 2011 that reflect the appointment of (a) BRHI's and SPI's directors, and (b) the officers of BRHI and SPI that are required to be appointed by BRHI's and SPI's by-laws; and (ii) the employment agreements for officers at the vice president level and above, which amounts to over 40 employment agreements.

Plaintiff's initial proposed search (Search 10) for emails related to appointments of officers yielded over a half million hits. Plaintiff has intimated that it would narrow the time periods for these searches, but still propose searches that include a person's name and their title – which clearly would pull up every email with that person's signature block even if for a narrower time period. Plaintiff nevertheless terms this a "discrete search." But there is no need to even consider Plaintiff's proposal further.

For one, it is an untimely attempt to seek reconsideration of the Court's September 15 Order holding that Plaintiff was not entitled to ESI related to the selection and appointment of officers and directors of BRHI and SPI. (*See* Dkt. 154 at 2 (discussion of RFPs 98-101)). The Court should rule on that basis alone. In addition, and just as important, Plaintiff has not explained how such communications are at all relevant to its alter ego claims. The fact that a majority shareholder and CEO is involved in the selection or appointment of directors and key officers is unremarkable and not probative of alter ego status. If anything, the alter ego theory is *undermined* by the presence of so many officers and directors and the formalities surrounding their appointment. Plaintiff cannot show that further discovery on this topic is at all proportional to the needs of this case.

    C.    ***Defendants' Certifications Regarding Third-Party Email Accounts***

In accordance with the Court's October 20 Order (at 2), Defendants attach declarations explaining that Mr. Razon's children K. Razon and E.S. Razon are merely passive owners of 11 Essex Street Realty LLC and Fesara LLC (the only two entities in which they each own a minority interest), and that Defendants do not have custody over and cannot run search terms through the personal email accounts of Jose Alarilla and or the email accounts of Silverio "Benny" Tan.[6]

---

[6] Further to the Court's October 20 Order, earlier today Defendants sent Plaintiff emails identifying the search terms used to create the Arbitration/Litigation Data (which took numerous hours to pull together) and the Atwan Data.

Hon. Sarah Netburn
October 29, 2021
Page 10

### D. Like Defendants, Plaintiffs Should Be Ordered to Disclose Their Search Parameters

As noted above, the ESI Protocol requires that Plaintiff meet and confer over its own search parameters. Dkt. 79 ¶ 3.1. Plaintiff continues to refuse to do so. The Court should order Plaintiff to disclose its custodians and search terms to Defendants and to negotiate in good faith with Defendants about any potential modifications to those parameters.

What is more, even as Plaintiff relentlessly presses Defendants for searches of an outside attorney's email files, Plaintiff itself refuses to indicate whether (i) its own searches for responsive documents involved searching the emails of their in-house counsel and/or outside counsel, (ii) it has custody of such emails, or (iii) it is willing to provide search hit reports for such emails.

Hon. Sarah Netburn
October 29, 2021
Page 11

Respectfully submitted,

| | |
|---|---|
| MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C. | WALFISH & FISSELL PLLC |
| | |
| _/s/ Kevin N. Ainsworth_ | _/s/ Rachel Penski Fissell_ |
| Kevin N. Ainsworth | Rachel Penski Fissell |
| Jason P.W. Halperin | Daniel R. Walfish |
| Daniel T. Pascucci | 405 Lexington Ave 8th floor |
| Joseph R. Dunn | New York, NY 10174 |
| | Telephone: 212-672-0523 |
| 666 Third Avenue | rfissell@walfishfissell.com |
| New York, NY 10017 | |
| T: (212) 935-3000 | _Attorneys for Defendants Enrique K. Razon, Jr., Asia Arrow Limited, Rizolina LLC, Ensara LLC, Nozar LLC, Bowery Bay LLC, Campanilla LLC, Fesara LLC, and 11 Essex Street Realty LLC_ |
| F: (212) 983-3115 | |
| jhalperin@mintz.com | |
| dtpascucci@mintz.com | |
| jrdunn@mintz.com | |
| kainsworth@mintz.com | |
| | |
| _Attorneys for Plaintiff Global Gaming Philippines, LLC_ | |
| | |
| MEHAFFYWEBER, PC | MILBANK LLP |
| | |
| _/s/ Corey J. Seel_ | _/s/ Daniel M. Perry_ |
| Corey J. Seel (pro hac vice) | Daniel M. Perry |
| KONOR CORMIER (pro hac vice) | 55 Hudson Yards |
| DIANA J. SHELBY (pro hac vice) | New York, NY 10001 |
| 500 Dallas, Suite 2800 | Telephone: (212) 530-5000 |
| Houston, TX 77002 | Facsimile: (212) 530-5219 |
| Telephone: 713-655-1200 | dperry@milbank.com |
| Facsimile: 713-655-0222 | |
| coreyseel@mehaffyweber.com | Brett P. Lowe (admitted pro hac vice) |
| konorcormier@mehaffyweber.com | 1850 K Street, NW |
| DianaShelby@mehaffyweber.com | Suite 1100 |
| | Washington, DC 20006 |
| _Attorneys For Defendants Collingwood Investment Company Limited, Collingwood Oil & Gas Holdings, LLC; Collingwood USA, Inc., Collingwood Brookshire USA, Inc. and Collingwood Appalachian Minerals, LLC_ | Telephone: (202) 835-7500 |
| | Facsimile: (202) 263-7586 |
| | mnolan@milbank.com |
| | eculbertson@milbank.com |
| | blowe@milbank.com |
| | |
| | _Attorneys for Defendants Bloomberry Resorts And Hotels Inc. and Sureste Properties, Inc._ |