December 3, 2021

<u>**VIA ECF**</u>
Hon. Sarah Netburn
United States District Court for the Southern District of New York
40 Foley Square, Room 430
New York, NY 10007

Re:    <u>***Global Gaming Philippines, LLC v. Razon, Jr., et al.*, 21 Cv. 2655 (LGS) (SN)***</u>

Dear Magistrate Judge Netburn:

As directed by the Court on December 2 (Dkt. 186) (the "Order"), the parties respectfully submit this joint letter.

    **I.**      **Update on narrowing Plaintiff's Search No. 6**

Defendants have run or are in the process of running Plaintiff's revised searches in lieu of Plaintiff's original Search No. 6.  The results from Solaire were reasonable, and Defendants have agreed to review those documents.  The parties expect the results from ICTSI to be similar and have agreed to meet and confer further regarding next steps if the results are unreasonably high.

    **II.**     **Update on hit results from the "SRockEnergy.com" search**.

The parties have reached an agreement on how to de-duplicate Defendants' documents against the Ahmad Atwan production.  Defendants have therefore agreed to review the de-duplicated documents that hit on the "srockenergy.com" search for documents responsive to the topics in JX-1 (described below) and any Court order.

    **III.**    **Chart regarding the parties' positions on Plaintiff's eight outstanding RFPs.**

For this topic, please see the attached JX-1.

    **IV.**    **Update on whether non-party Eric Chiu will search his gmail account and whether the search terms should be in English.**

*Plaintiff's position:* Mr. Chiu is a former employee of GGAM, located in Macau, who has no ongoing relationship with the Company. Defendants nevertheless insisted that Plaintiff search his personal email account. At the conference on Nov. 23, the Court directed Plaintiff: "to reach out to Mr. Choo [sic: Chiu] and find out what language his emails would be in during the relevant period of time, work with defense counsel to see if there is a couple of words we can look for during the particular window, and see if anything is there." Transcript at 45; Dkt. No. 184.

Accordingly, Plaintiff's counsel emailed Mr. Chiu, who responded by email on November 29 (Eastern), saying: "Sorry for the delayed reply as I don't use Gamil much these days. I will check my Gmail and get back to you asap." (Ex. PX-1 hereto.) Mr. Chiu has not answered Plaintiff's questions.

On November 30, at 10 p.m., Defendants issued a set of five interrogatories, only two of which relate to Mr. Chiu. In their statement below, Defendants argue that they immediately need

Hon. Sarah Netburn
December 3, 2021
Page 2

information concerning Mr. Chiu (Interrogatory Nos. 4 and 5). Here, Defendants are trying to have it both ways. They have known about Mr. Chiu for a decade, yet they did not issue this interrogatory until three days ago, and they demand an immediate response. Plaintiff will respond to those two interrogatories by December 6, as they request.

Defendants cram into this status letter an entirely new set of issues regarding interrogatories that have nothing to do with Mr. Chiu.  Their interrogatory Nos. 1, 2, and 3 are much more complicated than Nos. 4 and 5. If the Defendants want to agree that all responses to interrogatories must be served within 21 days of service, Plaintiff will agree to serve responses to Interrogatory Nos. 1, 2, and 3 within 21 days from the date of service.

In their argument below, Defendants express doubt that Mr. Chiu's relevant communications might have used Chinese characters. First, Plaintiff has not represented that Mr. Chiu used only Chinese characters. Second, Defendants argue that "the very documents that Plaintiff itself produced, … show Mr. Chiu communicating with GGP executives exclusively in English." If Defendants want only communications between Mr. Chiu and GGP executives, then there is no reason to search Mr. Chiu's personal email account.

*Defendants' position*:  On December 1, Plaintiff informed Defendants that Mr. Chiu "has not answered any questions regarding his emails, including the languages of his emails in the gmail account, and we do not know whether he will search, or allow searching of, his personal email account."  Today, at 1:03 p.m., we received a copy of PX-1.

Defendants request that the Court direct Plaintiff to continue to follow up with Mr. Chiu and ensure that the relevant searches of his Gmail account occur. We note in this regard that the notion that Mr. Chiu's emails relevant to this case would not be in English (*see* Nov. 23 Hr'g. Tr. at 44:17-20) is belied by the very documents that Plaintiff itself produced, which show Mr. Chiu communicating with GGP executives exclusively in English, *see, e.g.,* GGAM-SDNY-0075309, GGAM-SDNY-0135415, GGAM-SDNY-0095577.  Regarding above, as Plaintiff well knows, our requests are not only limited to Mr. Chiu's communications with GGP executives.  Further, the emails cited here also suggest that Mr. Chiu was communicating with third parties located in China in English as well.

We have served interrogatories on Plaintiff relating to Mr. Chiu so that we can be sure to get full and accurate information related to Mr. Chiu and his relationship with Plaintiff.  *See* attached DX-1.  Plaintiff has agreed to respond to Interrogatories Nos. 4 and 5 by December 6, 2021.

   V.    **Update on GGP's and Cantor's searches related to the Option Shares.**

*Plaintiff's Statement:* At the Court conference on November 12, counsel for the Debtor Defendants requested, for the first time and without having filed a motion to compel, to have Plaintiff run search terms regarding why (according to counsel for Debtor Defendants) Plaintiff has not gone into the Philippines to dissolve the purported injunction.[1] (Tr. at 84-85.) This request by the Debtor Defendants pertained only to their RFP No. 25, to which Plaintiff had timely objected and which

---

[1] In fact, as counsel for the Debtor Defendants well knows, litigation has been ongoing in the Philippines since 2014 regarding the arbitral panel's Interim Measures Award, which dissolved the injunction issued earlier that year.

Hon. Sarah Netburn
December 3, 2021
Page 3

was never the subject of a motion to compel. (PX-2.) On November 12, the Court directed that the Debtor Defendants could provide Plaintiff with <u>three</u> search terms on that topic.

Plaintiff reported that it had run those search terms on certain company email accounts, including those of William Weidner, Brad Stone, and Garry Saunders, and the parties disputed whether Plaintiff should be required to also run those terms over personal email accounts. The Court directed Plaintiff to: "review those [already identified] documents for responsiveness, turn over those documents. I'm not sure I'm going to allow any more discovery on this. I authorized the three search terms. You should be producing the documents that were presented there. I'm disinclined to continue further." (Tr. at 55.)

In the spirit of compromise, Plaintiff also has searched personal email accounts of William Weidner, Brad Stone, and Garry Saunders for documents responsive to the three search terms provided by the Debtor Defendants. That collection was completed on December 1, and the data is being processed by Plaintiff's vendor. Plaintiff plans to de-duplicate those emails across the data previously collected and then begin searching them along with the company emails that Plaintiff collected.[2]

At the conference on November 23, Counsel for Defendant Razon also asked for documents to be produced in response to the search terms previously provided by the Debtor Defendants and responsive to Razon's RFP No. 16, to which Plaintiff had timely objected and responded: "Subject to its objections, Plaintiff will produce non-privileged documents within its possession, custody, or control, if any, concerning Razon's influence in the Philippines, including its Courts and the Philippine Stock Exchange." Defendant Razon has now requested that his RFP No. 16 be construed to include all communications relating to Plaintiff's conversion claim against Razon, including, without limitation, the basis for Plaintiff allegedly failing to seek to enforce the arbitral tribunal's orders and rulings in the Philippine courts, which Razon contends are relevant to the conversion claim.  To avoid disputes on this issue, Plaintiff agrees to produce any such responsive non-privileged communications resulting from Defendants' three "Option Share" search terms.

*Defendants' position:*   See below under VI.

## VI.    Update on searching the personal email accounts of four individuals

*Plaintiff's position:*  As noted above, Plaintiff has collected and is reviewing personal emails of Messrs. Weidner, Stone, and Saunders regarding the three search terms provided by the Debtor Defendants on November 15, 2021. (See Section V above.) Plaintiff agrees to produce non-privileged documents responsive to the Debtor Defendants' RFP No. 25 and/or "concerning

---

[2] In addition, on November 15, Defendants—for the first time—provided proposed search terms for Plaintiff's search of pre-MSA communications and demanded searches of additional custodians. Plaintiff was able to upload that data right before Thanksgiving. Thus, simultaneously with efforts to collect data regarding enforcement actions in the Philippines after December 2014, Plaintiff has been collecting and reviewing thousands of additional pre-MSA data based upon Defendants' belatedly expanded search term request.

This past Monday, November 29, Defendants—for the first time—proposed a new search term and expanded date range regarding the pre-MSA period, and Plaintiff has agreed to run that search term. That latest collection has not been completed.

Hon. Sarah Netburn
December 3, 2021
Page 4

Razon's influence in the Philippines, including its Courts and the Philippine Stock Exchange if any exist" (the scope of Razon's RFP No. 16 to which Plaintiff agreed).

The fourth individual is Mr. French, who stopped working at GGAM in 2015 and is now in Macau. Plaintiff's counsel has spoken with Mr. French, who seems agreeable to allow Plaintiff's consultant to run searches in his AOL and Gmail accounts. Because he is in a time zone that is 13 hours ahead, it may take a few days to find a time when Plaintiff's consultant can communicate with Mr. French to begin that process.

As noted in Plaintiff's Statement in Section V, to avoid disputes, Plaintiff agrees to produce responsive non-privileged communications resulting from Defendants' three "Option Share" search terms

*Defendants' position:*    We do understand why Plaintiff has included the detail above in Section V. or VI..  But we are happy to report that our understanding of these two issues has been resolved as follows and the Court does not need to take any further action at this time:

Plaintiff has agreed to review the emails and attachments that hit on Defendants' three Option Share search terms in (a) the GGAM and Cantor data servers (as reported to Defendants' counsel in an email on November 18) and (b) personal email accounts of Messrs. Weidner, Stone, Saunders, and French and will produce all communications relating to Plaintiff's conversion claim against Razon, including, without limitation, the basis for Plaintiff failing to seek to enforce the arbitral tribunal's orders and rulings in the Philippine courts.

## VII.    Other Issues

*Plaintiff's position:* Plaintiff has agreed to search the email servers of GGAM and Cantor, and in the personal email accounts of Messrs. Saunders, Stone, and Weidner, for the search terms that Defendants have demanded to date, and to review the data for responsiveness to Razon's and the Real Estate Defendants' RFP Nos. 5, 7, 8, and 12. Plaintiff will produce responsive, non-privileged documents. The new issues raised by Defendants below is an attempt to create a meaningless dispute.

Plaintiff produced documents responsive to RFP Nos. 5, 7, 8, and 12, on October 29 and made a supplemental production on November 12.

Importantly, before Plaintiff commenced its search of documents regarding those RFPs, Defendants refused to provide any search terms to Plaintiff or to identify custodians. On November 9, Plaintiff disclosed to Defendants the search terms it had used and the custodians it had searched for this purpose. On November 15, Defendants for the first time asked Plaintiff to expand its search terms and to search (a) additional email accounts at Cantor Fitzgerald, (b) personal email accounts of Messrs. Weidner, Stone, and Saunders, and (c) personal email accounts of Plaintiff's former employees Eric Chiu and Michael French.

On November 29—long after Plaintiff had made its production of pre-MSA documents, disclosed the search terms it had used, and commenced searching the personal email accounts of Messrs. Weidner, Stone, and Saunders—Defendants again asked Plaintiff to expand the date range and search terms for the pre-MSA period.  Despite the utter irrelevance of the expanded date range,

Hon. Sarah Netburn
December 3, 2021
Page 5

Plaintiff has agreed to conduct that search and will review and produce non-privileged responsive documents.

The interrogatories served by Defendants at 10 p.m. on November 30, 2021 are an entirely new issue. Notably, the reason for their interrogatories seems to be a tit-for-tat argument; since they had to explain their data loss issues and describe what data remains, they seem to feel it is appropriate to ask Plaintiff about the servers of GGAM and Cantor—notwithstanding that Defendants have presented no evidence to suggest there is a reason for asking those questions. Nevertheless, Plaintiff is willing to serve responses and objections to the new interrogatories within three weeks, provided that Defendants agree that all interrogatory responses are due within three weeks of service. A shorter time frame would be unduly burdensome under the circumstances.

*Defendants' position:*  With respect to the Due Diligence Requests (*i.e.* RFP Nos. 5, 7, 8 and 12 served by Razon and the Real Estate Entities) to which this Court has twice ordered Plaintiff to produce responsive documents (Dkt. 157, 173), Plaintiff has failed to cooperate in the discovery process in the same way that Defendants have with respect to discovery taken of them.  We will not include the history of the parties' discussions here, although Defendants disagree wholeheartedly with Plaintiff's recitation of the parties' negotiations in this section VII.

Instead, we (regretfully) ask that the Court order Plaintiff to respond to Defendant Real Estate Entities' Interrogatories Nos. 1-3 (*see* DX-1) by December 6, 2021.  Because Plaintiff has refused to answer simple questions directed to it regarding the information stored on the "GGP and Cantor data servers" without Defendants' first serving an interrogatory, Defendants were forced to serve the attached interrogatories seeking such information.  *See* DX-1.  As noted above, because the fact discovery deadline is fast approaching and depositions need to happen soon, Defendants are entitled to know whether there is some category of information that has not been maintained by Plaintiff and whether additional searching may need to occur.

## VIII.   Deadline for document production

The Parties (a) jointly request that the Court lift the stay of document production (as provided in the Court's Order entered November 18, 2021 (Dkt. No. 181) and (b) that document production for all outstanding requests be substantially completed by December 23, 2021.

Hon. Sarah Netburn
December 3, 2021
Page 6

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.

/s/ Kevin N. Ainsworth
Kevin N. Ainsworth
Jason P.W. Halperin
Daniel T. Pascucci
Joseph R. Dunn

666 Third Avenue
New York, NY 10017
T: (212) 935-3000
F: (212) 983-3115
jhalperin@mintz.com
dtpascucci@mintz.com
jrdunn@mintz.com
kainsworth@mintz.com

*Attorneys for Plaintiff*
*Global Gaming Philippines, LLC*


WALFISH & FISSELL PLLC

/s/ Rachel Penski Fissell
Rachel Penski Fissell
Daniel R. Walfish
405 Lexington Ave 8th floor
New York, NY 10174
Telephone: 212-672-0523
rfissell@walfishfissell.com

*Attorneys for Defendants Enrique K. Razon,*
*Jr., Asia Arrow Limited, Rizolina LLC,*
*Ensara LLC, Nozar LLC, Bowery Bay LLC,*
*Campanilla LLC, Fesara LLC, and 11 Essex*
*Street Realty LLC*


MEHAFFYWEBER, PC

/s/ Corey J. Seel
Corey J. Seel (pro hac vice)
KONOR CORMIER (pro hac vice)
DIANA J. SHELBY (pro hac vice)
500 Dallas, Suite 2800
Houston, TX 77002
Telephone: 713-655-1200
Facsimile: 713-655-0222
coreyseel@mehaffyweber.com
konorcormier@mehaffyweber.com
DianaShelby@mehaffyweber.com

*Attorneys For Defendants Collingwood*
*Investment Company Limited, Collingwood*
*Oil & Gas Holdings, LLC; Collingwood USA,*
*Inc., Collingwood Brookshire USA, Inc. and*
*Collingwood Appalachian Minerals, LLC*


MILBANK LLP

/s/ Daniel M. Perry
Daniel M. Perry
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
dperry@milbank.com

Brett P. Lowe (admitted pro hac vice)
1850 K Street, NW
Suite 1100
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 263-7586
mnolan@milbank.com
eculbertson@milbank.com
blowe@milbank.com

*Attorneys for Defendants Bloomberry Resorts*
*And Hotels Inc. and Sureste Properties, Inc.*