| | | |
|---|---|---|
| **Kevin N. Ainsworth**<br>212 692 6745<br>kainsworth@mintz.com | <br>MINTZ | Chrysler Center<br>666 Third Avenue<br>New York, NY 10017<br>212 935 3000<br>mintz.com |

December 20, 2021

The Honorable Sarah Netburn
United States Magistrate Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY  10007

**Re:**   ***Global Gaming Philippines, LLC v. Razon, Jr., et al.*, 21 Cv. 2655 (LGS)-(SN) /
Request for Pre-Motion Conference Regarding Privilege Assertion**

Dear Judge Netburn:

On behalf of Plaintiff Global Gaming Philippines, LLC ("Plaintiff"), we respectfully request a pre-motion conference for a motion to determine the non-privileged status of documents produced by non-party, non-attorney Ahmad Atwan ("Atwan") pursuant to Rule 26(b)(5)(B).

At issue now—after extensive meet and confer efforts to narrow the issues—are 126 documents that Atwan produced in response to subpoena (the "126 Documents"). He produced 124 in May 2021 and two in October 2021. The Energy Entities have collectively—and belatedly—asserted that the 126 Documents are both attorney-client privileged communications and attorney work-product.[1] Plaintiff's motion will demonstrate that those documents were never privileged and that, if they were privileged, the the privilege was waived.

A document-by-document evaluation of privilege seems premature—or at least inefficient—until Plaintiff has been allowed to review the 126 Documents to potentially eliminate from its motion any documents that are irrelevant to the issues in this action. As required by Rule 26(b)(5)(B), Plaintiff, who had the documents without objection by any defendant for five months between Atwan's subpoena response and the Energy Entities' assertion of privilege, promptly sequestered all allegedly privileged documents upon receiving the Energy Entities' claim of privilege. Some of them are undoubtedly relevant, but others may be immaterial. Plaintiff has asked the Energy Entities to allow Plaintiff to review the 126 Documents for the purpose of minimizing the number of documents at issue —without that review causing a further waiver of privilege—but the Energy Entities will not allow such a review. Plaintiff, therefore, respectfully requests that the Court issue

---

[1] No single defendant has claimed the privileges. Counsel for Defendants Collingwood Investment Company Limited ("CICL"), Collingwood Oil & Gas Holdings, LLC ("Collingwood Holdings"), Collingwood USA, Inc. ("CUSA"), Collingwood Brookshire USA, Inc. ("CBUSA"), and Collingwood Appalachian Minerals, LLC ("CAM") vaguely contends that the 126 Documents are privileged communications with "Collingwood counsel" and that the "privileges are asserted on behalf of the Energy Entities involved in the transactions contemplated and discussed in the emails." *See* Exs. B, D hereto. Thus, the terms "Energy Entity" and "Energy Entities" are used in this letter to identify those Defendants.

MINTZ

The Honorable Sarah Netburn
December 20, 2021
Page 2

an order pursuant to Federal Rule of Evidence 502(d) allowing Plaintiff to conduct such a review of the 126 Documents without that review resulting in a further waiver.

## I.     BACKGROUND

The First Amended Complaint ("FAC") details how Atwan helped Defendant Enrique K. Razon, Jr. ("Razon") to move assets from the Philippines into the United States, particularly into the Energy Entities. (FAC ¶¶ 157-93.) Atwan's relationship to, and actions for, Razon are relevant to the alter ego analysis regarding Razon and the Energy Entities. Atwan is not an attorney and, as clearly set forth in the agreements the Energy Entities rely on to support their claim of privilege,[2] he primarily provided business advice. The Energy Entities themselves have described the predominant purpose of the 126 Documents as business advice. *See, e.g.,* Ex. D ("*Atwan worked as a broker and advisor* to [CUSA], [CBUSA], and their subsidiaries.") (emphasis added). The relationship between Razon and Atwan eventually soured, and Razon—through CUSA and CBUSA—sued Atwan (the "Texas Litigation").[3] (FAC at p. 54 n.4.)

## II.    MEET AND CONFER EFFORTS

On April 28, 2021, Plaintiff served on Defendants a notice of subpoena to Atwan. *See* Ex. A hereto. The subpoena requested, among other things: "Documents reflecting all Communications (oral or written) with any Bloomberry Personnel relating to any Opportunities and/or Transactions during the Relevant Period." Defendants never objected to the subpoena. On May 28, 2021, Plaintiff produced to Defendants all documents that Atwan had produced in response to the subpoena as of that date. For five months, no Defendant raised any issues about Atwan's production of documents.

On October 20, 2021, the Energy Entities first asserted that Atwan had produced attorney-client privileged communications. Counsel for the Energy Entities said he had not yet reviewed all documents produced by Atwan, but asserted that all communications involving specified lawyers (hundreds of documents) were privileged. Although he did not provide Bates numbers, Plaintiff immediately sequestered all documents it identified based on the information provided by counsel.

Plaintiff promptly and repeatedly asked the Energy Entities to provide specificity about the asserted privilege, including describing the documents "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The Energy Entities refused. On October 29, the Energy Entities provided a narrowed list of 136 documents, but did not identify who was asserting the privilege and provided no additional information. *See* Ex. C. On November 10, the Energy Defendants asserted that the 136 documents "are protected by the attorney-client privilege. These privileges are asserted on behalf of the Energy Entities

---

[2] The agreements have been designated as "Confidential" and Plaintiff will file them under seal with its motion in accordance with Rule 26(b)(5)(B).

[3] On December 14, 2021, CUSA and CBUSA filed a "Plaintiffs' Notice Of Nonsuit With Prejudice As To Ahmad Atwan and Source Rock, LLC Only," in the Texas Litigation, indicating they had settled with Atwan.

**MINTZ**

The Honorable Sarah Netburn
December 20, 2021
Page 3

involved in the transactions contemplated and discussed in the emails." Ex. D. Of course, at this point, Plaintiff could not review those sequestered emails without violating Rule 26(b)(5)(B).

On November 19, 2021, the Energy Entities provided a categorical privilege log *collectively* asserting, in a single log entry, both attorney-client privilege and work product privilege over all 136 documents. *See* Ex. E. This was the first time defendants asserted the work product privilege and they have never shown how communications with a broker for acquisition of oil and gas rights were made in anticipation of litigation. *See O'Gorman v. Kitchen*, No. 20-CV-1404 (LJL), 2021 WL 1292907, at *5 (S.D.N.Y. Apr. 7, 2021) (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (clarifying that work product applies to documents "created because of anticipated litigation," and not "documents that are prepared in the ordinary course of business")). The single log entry describes all 136 documents as: "Documents and communications reflecting or requesting legal advice regarding the Energy Entities' business." The log does not provide dates of documents or detail to enable anyone to assess the claim of attorney-client privilege.

The parties continued to meet and confer through December 17 to try to resolve this dispute without motion practice. Those efforts resulted in the Energy Entities de-designating (on December 13) an additional 10 documents, reducing the dispute to the 126 Documents.

### III.  THE ENERGY ENTITIES CANNOT ESTABLISH THAT ANY PRIVILEGE ATTACHED TO THE 126 DOCUMENTS

The burden is on the party asserting the privilege to establish its existence and scope. *See Gateway, Inc. v. ACS Com. Sols., Inc.*, No. 07CIV6732CMDF, 2009 WL 10696075, at *3 (S.D.N.Y. Sept. 28, 2009). The attorney-client privilege only protects communications "(1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011).

#### 1.  The Energy Entities' Categorical Privilege Log Is Inadequate.

The Energy Entities' privilege log is inadequate because it does not provide sufficient information about the nature of the documents to determine the validity of the privilege assertion. *See In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 325 (S.D.N.Y. 2020); *see also id.* (a party's use of a categorical privilege log does not obviate its "obligation to provide 'sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.'") (quoting *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). Moreover, their privilege log describes all 126 Documents collectively, in a single entry, as "[d]ocuments and communications reflecting or requesting legal advice regarding the Energy Entities' business." *See* Ex. E. This is insufficient. *See Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80, 86 (S.D.N.Y. 2019) (the burden to establish the essential elements of the privilege is not discharged by mere conclusory or *ipse dixit* assertions).

**MINTZ** 

The Honorable Sarah Netburn
December 20, 2021
Page 4

The Energy Entities also have not identified any individual privilege holder(s) who purportedly assert the privilege over the 126 Documents. They simply lump all of the "Energy Entities" together. In their letter of November 10, 2021, they stated the "privileges are being asserted on behalf of the Energy Entities involved in the transactions *contemplated and discussed in the emails*." Ex. D. In other words, they referred to sequestered documents, which they claim are privileged, and they have refused to allow Plaintiff to review those documents.

### 2. The Energy Entities Cannot Prove That The Predominant Purpose Of The 126 Documents Was To Obtain Or Provide Legal Advice.

Atwan is not an attorney. Indeed, the agreements the Energy Entities cite to establish their privilege claim show that the primary purpose of Atwan's services was to provide *business* advice.[4] The Energy Entities themselves have described the predominant purpose of the 126 Documents as business advice. *See, e.g.,* Ex. D ("*Atwan worked as a broker and advisor* to [CUSA], [CBUSA], and their subsidiaries.") (emphasis added).

Communications with an attorney that are *predominantly* for business input preclude any privilege from attaching. *See Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015) ("Communications that are made for purposes of evaluating the commercial wisdom of various options as well as in getting or giving legal advice are not protected."); *see also Colton v. United States*, 306 F.2d 633, 638 (2d Cir. 1962) (business or other advice separable from attorney's professional legal services is not privileged). "The test for deciding whether a communication that contains both legal and non-legal advice is privileged is 'whether the predominant purpose of the communication is to render or solicit legal advice.'" *Durling v. Papa John's Int'l, Inc.*, No. 16CIV3592CSJCM, 2018 WL 557915, at *3 (S.D.N.Y. Jan. 24, 2018) (quoting *In re Cnty. of Erie*, 473 F.3d 413, 420 (2d Cir. 2007)). Here, the Energy Entities' correspondence with Plaintiff describes Atwan as providing only business services. *See* Exs. B, D.[5]

### IV. THE ENERGY ENTITIES WAIVED ANY PRIVILEGE

The privilege log demonstrates there were at least two third-party strangers to any purported attorney-client relationship: Atwan and Brown, neither of whom are lawyers.[6] *See* Ex. E. Both Atwan's and Brown's roles were to assist Razon, CUSA, and CBUSA in their business, not legal, decisions. In the absence of evidence that their presence or participation in, or receipt of, the privileged communications was necessary to facilitate communication with the Energy Entities' lawyers or assist the lawyers in providing legal advice, their inclusion waives or nullifies any

---

[4] Razon engaged Atwan through Atwan's companies Source Rock Minerals, LLC ("SRM") and Source Rock Energy, LLC ("SRE"). Only CUSA engaged Atwan individually. Plaintiff has seen no evidence that any other Energy Entity had a written agreement with Atwan or his companies.

[5] The Energy Entities have proffered no facts or showing to Plaintiff to support their categorical assertion that all 126 Documents are attorney work product. To support this assertion, defendants must show that the documents were created in anticipation of litigation. *See O'Gorman*, *supra*, 2021 WL 1292907, at *5 (S.D.N.Y. Apr. 7, 2021).

[6] Due to the lack of details regarding the relationships between all other named authors and recipients, Plaintiff is unable to assess whether the presence of one or more of them also destroys the privilege.

**MINTZ**

The Honorable Sarah Netburn
December 20, 2021
Page 5

privilege. *See Scott v. Chipotle Mexican Grill, Inc.*, 94 F. Supp. 3d 585, 590-96 (S.D.N.Y. 2015) (Netburn, J.); *see also Valassis Commc'ns, Inc. v. News Corp.*, No. 17-CV-7378 (PKC), 2018 WL 4489285, at *3 (S.D.N.Y. Sept. 19, 2018) (the mere inclusion of a lawyer on an e-mail regarding business discussions does not, on its own, establish the privilege).

Even if the 126 Documents were privileged when created, the Energy Entities for more than two years failed to take steps to maintain the confidentiality of those documents. A party seeking the protections of the privilege must affirmatively act to maintain confidentiality. *See Niceforo v. UBS Glob. Asset Mgmt. Americas, Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014). A party waives the privilege if it delays seeking return of privileged communications prior to or during litigation. *See id.* (pre-litigation delay); *LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, No. 04 CIV. 5452 (PKL), 2007 WL 2324292, at *5 (S.D.N.Y. Aug. 13, 2007) (delay during litigation).

Here, assuming the 126 Documents ever were privileged, the Energy Entities waived their privilege due to their inaction or delay when they terminated their relationship with Atwan and sued him without securing return of the documents. By June 2019, it was clear to Razon and the Energy Entities that Atwan was an adverse party, and they filed the Texas Litigation against him. The Energy Entities have not shown that they ever took steps to protect the confidentiality of their allegedly privileged communications with him. A delay of several months after the relationship ends has been found to constitute a waiver. *See Niceforo*, 20 F. Supp. 3d at 437 (finding employee waived privilege by not requesting return of privileged communications left at work for over 15 months after termination, and observing that even a two-month delay can constitute waiver). Here, the delay of more than two years is a clear waiver.

Additionally, the Energy Entities waited six months after the Notice of Subpoena and five months after receiving 124 of the 126 Documents before taking any action to protect the confidentiality of those documents. That delay waived any privilege that may have existed. *See LaSalle Bank*, 2007 WL 2324292, at *3, 5 (one-month delay in requesting return of privileged documents that were inadvertently produced constituted a waiver); *see also Liz Claiborne, Inc. v. Mademoiselle Knitwear, Inc.*, No. 96 CIV. 2064 (RWS), 1996 WL 668862, at *5 (S.D.N.Y. Nov. 19, 1996) (same).

Plaintiff respectfully requests that the Court issue an order pursuant to Federal Rule of Evidence 502(d) authorizing Plaintiff to review the 126 Documents, without that review creating a further waiver of privilege, for the purpose of reducing the number of documents that would be the subject of dispute. Plaintiff also requests a schedule for briefing on a motion to determine the applicability of the asserted privileges and whether any privilege has been waived.

Respectfully submitted,

*/s/ Kevin N. Ainsworth*
Kevin N. Ainsworth

**MINTZ**

The Honorable Sarah Netburn
December 20, 2021
Page 6



Enclosures

cc: All counsel of record (Via ECF)