```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
GLOBAL GAMING PHILIPPINES, LLC,                              :
                                      Plaintiff,             :     21 Civ. 2655 (LGS)
                                                             :
                        -against-                            :     OPINION AND ORDER
                                                             :
ENRIQUE K. RAZON, JR., et al.                                :
                                      Defendants.            :
                                                             :
-------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Global Gaming Philippines, LLC ("Global Gaming" or "Plaintiff") brings this civil action primarily to enforce an arbitration award under federal law against Defendants Bloomberry Resorts and Hotels Inc. ("BRHI"), Sureste Properties, Inc. ("Sureste") (collectively, the "Debtor Defendants") and, through corporate veil piercing, against their shareholder Enrique K. Razon, Jr.  The First Amended Complaint (the "Complaint") also seeks to enforce the same arbitration award against Defendants Collingwood Investment Company Limited ("Collingwood Investment"), Collingwood Oil & Gas Holdings, LLC, Collingwood USA, Inc., Collingwood Brookshire USA, Inc. and Collingwood Appalachian Minerals, LLC (collectively, the "Energy Entities"), and Asia Arrow Limited ("Asia Arrow"), Rizolina LLC, Ensara LLC, Nozar LLC, Bowery Bay LLC, Campanilla LLC, Fesara LLC and 11 Essex Street Realty LLC (collectively, the "Real Estate Entities") (the Energy Entities and Real Estate Entities together, the "Non-Bloomberry Entities") under the theory that the Non-Bloomberry Entities are alter egos of Razon.  Lastly, the Complaint alleges a conversion claim under Philippine law against Razon personally.

Defendants move to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(2) and (6) and the doctrine of forum non conveniens.  For the reasons below, Defendants'

motion to dismiss is granted as to all claims against the Non-Bloomberry Entities and the conversion claim against Razon. Claims against the Debtor Defendants and Razon under the theory of corporate veil piercing survive.

I. BACKGROUND

The following facts are taken from the Complaint and documents attached to or incorporated by reference in the Complaint and are construed in the light most favorable to Plaintiff as the non-moving party. *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

A. The Management Services Agreement

Plaintiff Global Gaming is a casino development and management company that operates around the world. In 2011, Razon, who controls the Debtor Defendants, approached Global Gaming to seek a financial and operational partnership for his new casino, Solaire, which was already under development in the Philippines. Global Gaming, along with a third-party, New York-based investment bank Cantor Fitzgerald, entered into a Management Services Agreement (the "MSA"), an Equity Option Agreement (the "EOA") and a Participation Agreement with the Debtor Defendants.

The MSA stipulated that Global Gaming would provide management expertise and technical services from its experience in the casino industry in exchange for equity ownership in Solaire. Clause 18.3 of the MSA provided that the EOA would grant Global Gaming (1) the right to purchase from the Debtor Defendants up to a 10% equity ownership interest of Solaire from the Debtor Defendants and (2) the right to co-invest in any competing casino projects alongside Razon, at no worse economic terms than Razon's. The EOA was separately executed later as described below.

The MSA's arbitration provides that "the decision of the arbitration panel shall be final and binding . . . upon both parties and enforceable in all jurisdictions." The MSA also contains a choice-of-law provision stating, "This Agreement is made under and shall be governed by and construed in accordance with the laws of the Republic of the Philippines."

### B. Corporate Structure and Restructure

Initially, BRHI was wholly owned by Sureste, which Razon controlled through a shell holding company, Prime Metroline Transit Corp. ("Prime"). After executing the MSA, Razon established Bloomberry Resorts Corp. ("BRC") and caused Prime to transfer its shares in Sureste to BRC in exchange for shares in the newly-formed BRC. In sum, after the transfer of shares, BRHI is still wholly-owned by Sureste, and Sureste is owned by BRHI and BRC. Through his various personal holding companies, including Prime, Razon owns approximately two-thirds of the outstanding shares of BRC, which owns approximately 90% of Sureste. Razon appointed trusted, loyal personnel to various executive positions at BRC. The corporate structure as alleged in the Complaint is as follows:



On or about March 9, 2012, BRC became a publicly traded company on the Philippine Stock Exchange (the "PSE"). On April 16, 2012, Global Gaming entered into the EOA, as

stipulated in the MSA, which included an option for Global Gaming to purchase BRC shares (the "Option Shares") at an agreed-upon price and for Global Gaming to co-invest in any competing casino projects started by Razon. The accompanying Participation Agreement required Razon, through Prime, to repurchase the Option Shares from Global Gaming at fair market value upon Global Gaming's demand if "the MSA terminates for any reason whatsoever."

## C. Termination of the MSA and Arbitration

On July 12, 2013, Razon sent Global Gaming a formal Notice of Termination of the MSA, citing Global Gaming's poor performance even though Solaire was profitable. Global Gaming submitted a Notice of Arbitration pursuant to the arbitration clause in the MSA on September 12, 2013.

Global Gaming moved to sell the publicly traded Option Shares at a discounted block-sale price to various institutional investors. In response, Razon used his personal connections at the PSE to ensure that BRC's request to suspend all trading of BRC shares was granted. The Debtor Defendants and Razon -- through Prime -- filed for writs and a temporary restraining order (the "TRO") in the Philippine Regional Trial Court to enjoin Global Gaming from selling the Option Shares. The TRO and the writs were granted.

The arbitral tribunal (the "Tribunal"), on the other hand, found that Global Gaming had the right to sell the Option Shares pursuant to the MSA and vacated the TRO. The Tribunal found in the Final Award (the "Final Award") that the Debtor Defendants materially breached the MSA and that the Debtor Defendants' obstruction of Global Gaming's right to sell the Option Shares was tantamount to a "de factor seizure." Debtor Defendants were ordered to pay the value of the Option Shares as damages, and if they did not comply, Global Gaming was

4

permitted to sell the Option Shares on the open market.  Finally, the Tribunal awarded Global Gaming and its affiliate approximately $296,562,709 as damages.

The Debtor Defendants have not yet paid the damages or complied with the Final Award.  For example, Razon and the Debtor Defendants have not yet authorized Deutsche Bank -- Global Gaming's share custodian for the Option Shares -- to return the Option Shares to Global Gaming's trading account and have continued to block other efforts to implement the Final Award.  Defendants' challenges to the Final Award in Singapore have been unsuccessful, and an appeal to the Singapore Court of Appeal remains pending.

Plaintiff in this action seeks to enforce the Final Award against the Debtor Defendants and against Razon and the Non-Bloomberry Entities through corporate veil piercing.

## II.    DISCUSSION

### A.  Personal Jurisdiction

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Troma Ent., Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 217 (2d Cir. 2013) (internal quotation marks omitted); *accord Simmons v. AMTRAK*, No. 19 Civ. 6986, 2020 WL 2904847, at *1 (S.D.N.Y. June 3, 2020).  When a motion to dismiss is decided on the basis of the complaint, the plaintiff need only make a prima facie showing that jurisdiction exists. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted); *accord Simmons*, 2020 WL 2904847, at *1.  Such a showing entails making legally sufficient allegations of jurisdiction, including "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant[s]." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (alteration added); *accord Daou v. BLC Bank, S.A.L.*, No. 20 Civ. 4438, 2021 WL 1338772, at *7 (S.D.N.Y. Apr. 9, 2021).

"[A] federal court applies the forum state's personal jurisdiction rules if the federal statute does not specifically provide for national service of process." *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks omitted); *accord Pettenato v. Beacon Health Options, Inc.*, 425 F. Supp. 3d 264, 272 (S.D.N.Y. 2019). The Federal Arbitration Act does not provide for national service of process. *See* 9 U.S.C. § 9. A federal court may exercise jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A). Under New York's long-arm statute, a court has specific jurisdiction "over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," so long as the cause of action "aris[es] from" that transaction. CPLR § 302(a)(1). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (1988); *accord James v. iFinex Inc.*, 127 N.Y.S.3d 456, 461 (1st Dep't 2020). "Whether a defendant has transacted business within New York is determined under the totality of the circumstances." *Piccoli v. Cerra, Inc.*, 105 N.Y.S.3d 499 (2d Dep't 2019).

Additionally, a plaintiff must "demonstrate that the exercise of personal jurisdiction comports with due process." *Charles Schwab Corp.*, 883 F.3d 68, 82 (2d Cir. 2018) (citation omitted). First, "[w]here the claim arises out of, or relates to, the defendant's contacts with the forum -- i.e., specific jurisdiction is asserted -- minimum contacts necessary to support such jurisdiction exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Id.* (internal quotation

6

marks omitted). "Second, once minimum contacts are established, a court considers those contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* (internal quotation marks omitted). Those factors include: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Eades v. Kennedy, PC L. Offs.*, 799 F.3d 161, 169 (2d Cir. 2015) (citation omitted); *accord Ascento Cap., LLC v. MinervaWorks, LLC*, No. 20 Civ. 6195, 2021 WL 2206487, at *5 (S.D.N.Y. June 1, 2021). Because New York's long-arm statute is more restrictive and "does not extend in all respects to the constitutional limits," facts satisfying New York's long-arm statute will likewise satisfy the minimum contacts and reasonableness requirements of due process. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 60-61 (2d Cir. 2012); *accord Jimenez v. Bosie, LLC*, No. 19 Civ. 11570, 2021 WL 2941916, at *3 (S.D.N.Y. July 12, 2021).

Tag jurisdiction also permits a court to exercise "personal jurisdiction over an individual who is served, and thus 'tagged,' while physically present in the forum." *In re del Valle Ruiz*, 939 F.3d 520, 526 n.7 (2d Cir. 2019); *see also* CPLR § 308. Tag jurisdiction comports with due process and does not demand additional constitutional inquiries. *In re del Valle Ruiz*, 939 F.3d at 527; *accord Loughlin v. Goord*, No. 20 Civ. 6357, 2021 WL 3932616, at *5 (S.D.N.Y. Sept. 1, 2021).

"[I]n general, alter egos are treated as one entity for jurisdictional purposes." *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (internal quotation marks

7

omitted) (construing New York law); *accord HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20 Civ. 967, 2021 WL 918556, at *10 (S.D.N.Y. Mar. 10, 2021) (construing New York law). When determining personal jurisdiction based on the alter ego theory, courts apply a "less onerous standard" than that necessary to pierce the corporate veil for liability purposes under New York law. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (construing New York law); *accord Bank of Am. v. Apollo Enter. Sols., LLC*, No. 10 Civ. 5707, 2010 WL 4323273 at *4 (S.D.N.Y. Nov. 1, 2010) (same); *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 196 (2d Cir. 2005) (same). Specifically, a plaintiff need only show that one entity was subject to the "complete domination of the other" to establish an alter ego relationship for the purpose of personal jurisdiction. *Apollo Enter. Sols., LLC*, 2010 WL 4323273, at *4 (internal quotation marks omitted); *see Marine Midland Bank, N.A.*, 664 F.2d at 904.

1. **Personal Jurisdiction over the Debtor Defendants**

There is specific personal jurisdiction over the Debtor Defendants under CPLR § 302(a)(1) because the Complaint alleges that the Debtor Defendants negotiated the MSA for over two years by email and phone with the New York-based investment firm, Cantor Fitzgerald, and Razon negotiated the MSA on behalf of the Debtor Defendants in part from his residence in New York. Such a prolonged relationship with a New York entity constitutes "a transaction of business in New York" per CPLR § 302(a)(1). *See Fischbarg v. Doucet*, 880 N.E.2d 22, 27 (N.Y. 2007) (holding that a Californian Defendant transacted businesses in New York for establishing an ongoing attorney-client relationship with an attorney in New York). Moreover, the Complaint alleges that Razon "traveled to New York and conducted negotiations with GGAM while staying at his residence in [New York]." *See FIA Leveraged Fund Ltd. v. Grant*

8

*Thornton LLP*, 56 N.Y.S.3d 12, 16 (1st Dep't 2017) (listing apartment leases and meetings in New York as relevant factors for finding jurisdiction under CPLR § 302).  The Debtor Defendants also knew that Cantor, which is a 50% owner of GGAM, would provide financial resources, including other access to U.S. capital markets.  Given "the totality of the circumstances," *Piccoli*, 105 N.Y.S.3d at 499, the Court finds that the Complaint sufficiently alleges a prima facie case of personal jurisdiction under § 302(a)(1) at this stage.  Such continuous and purposeful contact similarly satisfies the minimum contacts and fair play requirements of due process.  *Licci*, 673 F.3d at 60-61 (2d Cir. 2012) (holding that satisfying New York's long-arm statute satisfies the minimum contact and fair play due process requirements); *accord Jimenez*, 2021 WL 2941916, at *3.  There is no significant burden on the Debtor Defendants given their size and contacts with New York, and the forum has an interest in enforcing the arbitration of a business relationship that was negotiated in large part out of New York.

      The Complaint also sufficiently alleges that the Debtor Defendants are alter egos of Razon, over whom the Court has "tag jurisdiction."  Razon was served with process in New York, and Defendants do not dispute this fact.  The Complaint alleges facts that support the inference that Razon exercised complete control over the Debtor Defendants, including his ownership interest as reflected in the corporate structure described above and his appointment of trusted and loyal associates to leadership positions in the Debtor Defendants.  Under either theory, the exercise of personal jurisdiction over the Debtor Defendants is proper at this stage of the litigation.

### B. Rule 12(b)(6)

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

### 1. Sufficiency of the Claims Against Razon and the Debtor Defendants

"Because jurisdiction in this case is based on diversity of citizenship as well as the presence of a federal question, we follow the choice-of-law rules of New York, the forum state." *Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir. 1994) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941)); *accord Biofrontera AG v. Deutsche Balaton AG*, 18 Civ. 5237, 2020 WL 1489788, at *10 (S.D.N.Y. Mar. 27, 2020) ("In a federal question action

where a federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." (internal quotation marks omitted)). Under New York's choice-of-law rules, the law of the state of incorporation determines whether the corporate veil will be pierced.[1] *Quinn v. Teti*, 234 F.3d 1262, 2000 WL 1616806, at *2 n.2 (2d Cir. 2000); *In re Stillwater Asset Backed Offshore Fund Ltd.*, No. 16 Civ. 8883, 2018 WL 1610416, at *9 (S.D.N.Y. Mar. 30, 2018), *aff'd sub nom. Stillwater Liquidating LLC v. Net Five at Palm Pointe, LLC*, 777 F. App'x 16 (2d Cir. 2019).

Since the Debtor Defendants are incorporated in the Philippines, Philippine veil-piercing law controls Plaintiff's effort to enforce the Final Award against the Debtor Defendants. Both parties rely on New York law in their memoranda of law, and neither party provides Philippine law. Accordingly, New York law will guide the analysis where Philippine law is not readily available. *See Loebig v. Larucci*, 572 F.2d 81, 85 (2d Cir. 1978) ("When there is no presumption that New York law is the same as foreign law and no evidence has been presented as to foreign law, New York courts have decided the cases in accordance with New York law."); *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ. 488, 2016 WL 11680976, at *15 (S.D.N.Y. Aug. 23, 2016) (same).

To plead a claim of veil piercing under Philippine law, Plaintiffs must show that the "[1] corporate fiction is used to defeat public convenience, justify wrong, protect fraud, or defend crime, or [2] [] it is made as a shield to confuse the legitimate issues, or [3] [] a corporation is the

---

[1] The issue of whether an entity's corporate veil should be pierced is not within the scope of the MSA's choice-of-law provision. *See Standex Int'l Corp. v. QCP, Inc.*, No. 16 Civ. 492, 2017 WL 481447, at *4 (S.D.N.Y. Feb. 6, 2017) ("The law of the state of incorporation applies to the veil-piercing analysis even if there is a choice-of-law provision in a contract that governs the relationship between the parties.") (internal quotation marks omitted). Moreover, in the case of the Debtor Defendants, Philippine law is both the law of the place of incorporation and the agreed upon law in the MSA.

directors or officers," "formal legal requirements of the subsidiary [] not [being] observed" and "the subsidiary [] not act[ing] independently . . . but tak[ing] their orders from the parent corporation").

The allegations that Razon controlled the Debtor Defendants to deny Plaintiff's exercise of the Option Shares and that Razon continues to obstruct Plaintiffs' lawful right to enforce the Final Arbitration Award through the Debtor Defendants is sufficient to plead a wrong against Plaintiff for purposes of veil piercing.[2] *See Rivera,* G.R. No. 155639 (finding a basis for veil piercing where the corporation is a "corporate fiction" and is used to "defeat [] public convenience . . . justify [] wrong, protect fraud, or defend [] crime"); *Kukan Int'l Corp. v. Hon. Amor Reyes*, G.R. No. 182729 (Sept. 29, 2010) (Phil.), https://elibrary.judiciary.gov.ph/thebookshelf/showdocs/1/54563 (stating that parties seeking to pierce the corporate veil must "establish that the separate and distinct personalities of the corporations are set up to justify a wrong, protect fraud, or perpetrate a deception").

### 2. Sufficiency of the Claims Against the Non-Bloomberry Entities

The Complaint seeks (1) a declaratory judgment that the Non-Bloomberry Entities are alter ego entities of Razon, (2) enforcement of the arbitration award against them and (3) an injunction against their transferring funds. In essence, the Complaint asserts that the Non-Bloomberry Entities are liable as Razon's alter ego based on a "reverse" veil piercing theory. While traditional veil piercing seeks "to hold individuals liable for the actions of a corporation they control," reverse veil piercing "seeks to hold a corporation accountable for the actions of its shareholders." *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997)

---

[2] Because the Complaint does not allege conduct amounting to fraud, nor is fraud a basis for the asserted corporate veil piercing in this case, the *Twombly* and *Iqbal* standard and Fed. R. Civ. P. 8 apply. *See generally* Fed. R. Civ. P. 8-9.

13

(applying New York law); *see also Manichaean Cap., LLC v. Exela Tech., Inc.*, 251 A.3d 694, 712 (Del. Ch. 2021) (applying Delaware law); *see generally* Reverse Piercing of Corporate Veil, 1 Fletcher Cyc. Corp. § 41.70.

As noted above, in this case, the law of the state of incorporation determines whether the corporate veil will be pierced. *Quinn*, 234 F.3d 1262, 2000 WL 1616806, at *2 n.2. The Non-Bloomberry entities are incorporated in New York, Delaware, the Cayman Islands and the British Virgin Islands. The Cayman Islands and the British Virgin Islands apply English common law to analyze corporate veil piercing. *See JSC VTB Bank v. Alexander Katunin*, [2021] BVIHC (COM) 2014/0062 (applying English law for corporate veil piercing); *In re Tyson*, 433 B.R. 68, 79 (S.D.N.Y. 2010), *aff'd* 511 F. App'x 120 (2d Cir. 2013) (stating that the British Virgin Islands use English law for corporate veil piercing).

The viability of Plaintiff's reverse veil piercing claim under English common law is unclear. The Court has not found any English common law authority recognizing reverse veil piercing, and the parties have not provided any. While New York and Delaware law permit reverse veil piercing, *see Am. Fuel Corp.*, 122 F.3d at 134; *Manichaean Cap., LLC*, 251 A.3d at 712, some states have barred reverse veil piercing because of "the potential harm to innocent shareholders." 1 James D. Cox & Thomas Lee Hazen, *Treatise on the Law of Corporations* § 7:18 (3d ed. 2017); *see Sky Cable, LLC v. DIRECTV, Inc.*, 886 F.3d 375, 386 (4th Cir. 2018). While English common law permits traditional corporate veil piercing if a person "deliberately evades . . . frustrates [an existing legal obligation or liability] by interposing a company under his control," *Prest v. Petrodel Resources Ltd.* [2013] UKSC 34, [¶35], it is "vanishingly rare," *JSC VTB Bank*, [2021] BVIHC (COM) 2014/0062. *See In re Tyson*, 433 B.R. at 79 (stating that the British Virgin Islands use the English law of corporate veil piercing, which requires that the

14

defendant incurred liability to the plaintiff at the time he interposed the corporate structure and that a wrong or fraud was committed by the controlled entity). Given that reverse corporate veil piercing follows "logically the premises of traditional veil piercing," *Sky Cable, LLC*, 886 F.3d at 386 (internal quotation marks omitted), any English reverse corporate veil piercing law is probably equally -- if not more -- stringent than that of New York or Delaware. Accordingly, the Court applies the reverse veil piercing law of New York to the Non-Bloomberry Entities incorporated in the Cayman Islands and the British Virgin Islands.

The Complaint fails to plead sufficient facts to impose liability on the Non-Bloomberry Entities for the conduct of Razon. The Complaint alleges that Razon formed these corporate entities to "conceal[] his ownership of such assets from his creditors," and "divert[] significant resources from [the Debtor Defendants] . . . to create a pool of legacy wealth in the United States for his and his family's personal benefit." While the allegations tend to show that Razon may have controlled the Non-Bloomberry Entities, the Complaint does not plead facts showing that Razon or the Non-Bloomberry Entities used the corporate form "for a wrongful or fraudulent purpose" under New York law. *Am. Fuel Corp.*, 122 F.3d at 135. The conclusory allegations of concealment and wealth aggregation do not plausibly or sufficiently allege a cognizable legal wrong under New York law.

The claim against Collingwood, the Non-Bloomberry Entity incorporated in Delaware, likewise fails. Reverse veil piercing under Delaware law looks to whether the corporation was an "alter ego" of the owner and asks "whether the owner is utilizing the corporate form to perpetuate fraud or an injustice." *Manichaean Cap., LLC*, 251 A.3d at 714-15. The Complaint's allegations are similarly insufficient to plead a claim of reverse veil piercing under Delaware law because these acts alone do not perpetuate "fraud or an injustice." *Id.*

### 3. Claim of Conversion Against Razon

The statute of limitations bars the conversion claim against Razon. The cause of action for conversion alleges that "in early 2014, Razon commenced a pattern of repeated and independently unlawful acts, . . . to intentionally and without authority effectively seize and exercise control over the Option Shares" specifically by causing the PSE on January 16, 2014, to suspend trading in all BRC shares for one week in order to prevent Plaintiff from selling its options shares, and then on January 20, 2014, obtaining a TRO to Prevent selling the shares, and later a preliminary injunction. Since then, the Debtor Defendants have annually renewed, as recently as February 2021, the bonds required to support the continuing injunctive relief.

The parties do not dispute that New York's statute of limitations governs. *See generally* CPLR § 202 (requiring in relevant part that a cause of action that accrues outside New York must be timely under the law of New York and the state where the cause of action accrued). Under New York law, a claim for conversion is subject to a three-year statute of limitations. *See* CPLR § 214(3). "For the purposes of the Statute of Limitations, if the action is one for conversion, the time period will run from when that cause of action accrued -- that is, when the conversion occurred." *Sporn v. MCA Records, Inc.*, 448 N.E.2d 1324, 1327 (1983); *accord Siegler v. Lippe*, 137 N.Y.S.3d 429, 433 (2d Dep't 2020). Here, Plaintiff's conversion claim against Razon accrued in January 2014 and is time barred.

Plaintiff is incorrect that the continuing wrong doctrine applies to extend the statute of limitations for the conversion claim. The memorandum of law contends that the conversion claim is not time barred because Defendants have taken "subsequent unlawful and affirmative acts in furtherance of his scheme to deprive Plaintiff of its indisputable (and adjudicated) rights." As explained above, the statute of limitations for a claim of conversion accrues at the "moment

16

of conversion." In contrast, "a trespass to chattel claim is never time-barred" because it is a "continuing violation." *See Weisman v. Rosenker*, No. 84 Civ. 2258, 1985 WL 182, at *2 (S.D.N.Y. Jan. 10, 1985). The Complaint does not assert a trespass to chattel claim, even though it alleges facts that would support such a claim. The Complaint alleges that Razon is *interfering* with Plaintiff's alleged right to the arbitration award by way of not complying with it and thwarting its enforcement. *See Sporn*, 448 N.E.2d at 1326 (explaining that where a defendant merely interfered with plaintiff's property then the cause of action is for trespass, while denial of plaintiff's dominion, rights, or possession is the basis of an action for conversion).

Plaintiff may file a Second Amended Complaint within seven days of the date of this Opinion for the sole purpose of substituting a trespass to chattel claim for the conversion claim. Any further amendment shall require leave of court.

**4. Forum Non Conveniens**

"The grant or denial of a motion to dismiss for forum non conveniens is generally committed to the district court's discretion." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000); *accord Stewart v. Manhattan Yacht Club, Inc.*, No. 16 Civ. 9764, 2018 WL 3579849, at *2 (S.D.N.Y. July 25, 2018). Whether dismissal is appropriate is based on a three-part test: "(1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Fasano v. Yu*, 921 F.3d 333, 335 (2d Cir. 2019); *see Iragorri v. United Techs. Corp.*, 274 F.3d 65, 71 (2d Cir. 2001) (en banc). The movant carries the burden of proof. *See Wiwa*, 226 F.3d at 100; *accord Little v. XL Ins. Co. SE*, No. 18 Civ. 11919, 2019 WL 6119118, at *5 (S.D.N.Y. Nov. 18, 2019).

Dismissal based on forum non conveniens is denied. Whether dismissal is appropriate is based on a three-part test: "(1) the deference to be accorded the plaintiff's choice of forum; (2) the adequacy of the alternative forum proposed by the defendants; and (3) the balance between the private and public interests implicated in the choice of forum." *Fasano*, 921 F.3d at 335. Plaintiff's choice of forum is accorded deference because the Final Award based on the MSA is enforceable in all jurisdictions.

The Philippines is also an adequate alternative forum as "the defendants are amenable to service of process there, and [] it permits litigation of the subject matter of the dispute." *Norex Petroleum Ltd. v. Access Indus., Inc.*, 416 F.3d 146, 157 (2d Cir. 2005); *accord Accent Delight Int'l Ltd. v. Sotheby's*, 394 F. Supp. 3d 399, 410 (S.D.N.Y. 2019).

In considering whether Plaintiff's forum or the alternative forum is appropriate, courts consider the following private interest factors: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Iragorri*, 274 F.3d 65, 73-74 (2d Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)); *accord Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 301 (S.D.N.Y. 2018) (listing the enforceability of judgment as an additional relevant factor). The public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having controversies decided at home; (3) the interest in having a trial in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflict of laws or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *See Aguinda v.*

*Texaco, Inc.*, 303 F.3d 470, 480 (2d Cir. 2002) (citing *Gulf Oil Corp.*, 330 U.S. at 508-09); *accord Lazare Kaplan Int'l Inc.*, 337 F. Supp. 3d at 301.

Here, the balance of private and public interest is neutral. While Defendants are located in the Philippines, various sources of proof and witnesses seem to be located both in the United States and the Philippines. The litigation requires application of both U.S. and Philippine laws. The balance of interests is not enough to trump the deference accorded to Plaintiff's choice of forum, especially given that this action is brought as an enforcement of arbitration award. *See* Restatement (Third) U.S. Law of Int'l Comm. Arb. TD No. 4, § 2.25 cmt. a (2015) ("[T]he Restatement takes the position that the New York Convention precludes courts from refusing to enforce a Convention award on the basis of forum non conveniens."). The motion to dismiss based on the forum non conveniens doctrine is denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED in part and DENIED in part. For clarity, the remaining claims are enforcement of arbitration against the Debtor Defendants and Razon, the request for declaratory judgment that Razon is an alter ego of the Debtor Defendants and the request for injunctive relief against the transfer of assets by the Debtor Defendants and Razon. By March 28, 2022, Plaintiff may file a Second Amended Complaint for the limited purpose of asserting a trespass to chattel claim against Razon. The Clerk of Court is respectfully directed to close the motion at Dkt. No. 117.

Dated: March 21, 2022
   New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE