**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL GAMING PHILIPPINES, LLC, *Plaintiff*, v. ENRIQUE K. RAZON, JR., et al., *Defendants*. | No. 21-CV-2655 (LGS) |

## DECLARATION OF MARJORIE T. UYENGCO-NOLASCO

I, Marjorie T. Uyengco-Nolasco, declare as follows:

1. I am the Managing Partner of Nolasco and Associates Law Offices, in Manila, Philippines. I am duly licensed to practice law in the Philippines since 1999. I was a member of the Philippine Judiciary from 2006 to 2016. I resigned as a Judge and returned to private practice in March 2016. I am a Professorial Lecturer I at the Philippine Judicial Academy, I am also a part-time faculty at the Centro Escolar University School of Law and Jurisprudence, a lecturer for the Mandatory Continuing Legal Education (MCLE) program for several accredited MCLE providers, including the University of the Philippines College of Law Institute for the Administration of Justice (UP Law-IAJ). My curriculum vitae is attached herewith as Exhibit 1.

2. I make this Declaration in support of the motion of Defendant Enrique K. Razon, Jr., to dismiss Count V of the Second Amended Complaint ("SAC") of Global Gaming Philippines, LLC ("GGAM").

**I. Background**

3. In the preparation of this Declaration, I have relied on the contents of the SAC and its attachments, as well as certain court records and the authorities referred to below.

4. Briefly, I understand that: (a) GGAM is seeking to enforce the foreign arbitral award in the amount of approximately $296,562,709.02 ("Final Award") that was rendered in the arbitration filed by GGAM against Bloomberry Resorts and Hotels Inc. ("BRHI") and Sureste Properties, Inc. ("SPI") under the Management Services Agreement ("MSA") entered into by BRHI and SPI with GGAM; and (b) GGAM seeks to recognize the Final Award and enforce liability within the United States against Mr. Razon, on the theory that he is the alter ego of BRHI and SPI, and has also asserted a claim for "trespass to chattels" against Mr. Razon.

5. I understand that: (a) pending the constitution of the Arbitral Tribunal, GGAM arranged to sell the "Option Shares" of Bloomberry Resorts Corporation ("BRC") that GGAM obtained under the MSA; (b) on 16 January 2014, BRC obtained a voluntary trading suspension of its shares in the Philippine Stock Exchange ("PSE"). This trading suspension was lifted by the PSE on 17 January 2014 at the request of GGAM (see SAC Appendix 3 (Interim Measures Award, as defined below) ¶¶ 42-46); (c) on 17 January 2014, BRHI and SPI, together with Prime Metroline Holdings, Inc. ("PMHI") filed a petition with the Regional Trial Court ("RTC") to prevent the sale of the Option Shares which were then subject of the arbitration; (d) on 20 January 2014, the RTC issued a temporary order of protection which restrained GGAM and other market players from disposing of any of the Option Shares (SAC ¶ 111); (e) on 25 February 2014, the RTC granted a writ of preliminary attachment and writ of preliminary injunction ("25 February 2014 Order") to restrain GGAM from disposing of the Shares to maintain the status quo pending the arbitration (Exhibit 2); (f) on 9 December 2014, the Arbitral Tribunal issued its *Order in Respect of Claimant's Interim Measures of Protection* (*"*Interim Measures Award*"*), declaring that the 25 February 2014 Order is superseded and that parties are restored to their status quo ante as of 15 January 2014 and purporting to allow GGAM to sell the Option Shares (SAC Appendix 3 (Interim

2

Measures Award) ¶ 141); (g) on 20 September 2016, the Arbitral Tribunal issued the *Partial Award on Liability* ("Liability Award"); (h) on 27 September 2019, the Arbitral Tribunal issued the *Final Award* ("Final Award"); and (i) no recognition or enforcement proceedings of any of the arbitral awards were commenced by GGAM in the Philippines.

**II.   Whether Philippine Law Recognizes "Trespass to Chattels" or the Equivalent**

   **A.   Whether Trespass to Chattels Would Qualify as a Quasi-Delict Under Philippine Law**

6.   In my opinion, a "trespass to chattels" does not exist in and is unknown to Philippine law. I understand that the following are the general elements of "trespass to chattels" in the U.S.: (a) intent, (b) physical interference with (c) possession resulting in (d) harm.[1]

7.   Torts in the U.S. or other common-law jurisdictions are often analogized to quasi-delicts in Philippine law, which are defined under Article 2176 of the Philippine Civil Code.[2] A quasi-delict, however, is limited to negligent acts or omissions and excludes the notion of willingness or intent. Instructive is the case of *Gashem Shookat Baksh vs. Court of Appeals*,[3] which states that "[i]n the general scheme of the Philippine legal system envisioned by the Commission responsible for drafting the New Civil Code, intentional and malicious acts, with certain exceptions, are to be governed by the Revised Penal Code while negligent acts or omissions are to be covered by Article 2176 of the Civil Code."

8.   A trespass to chattels, which is an **intentional** act, cannot fall under the definition of a quasi-delict under Philippine law.

---

[1] New York Pattern Jury Instructions – Civil 3:9 (collecting cases); *see also* Restatement (Second) of Torts § 217
[2] Article 2176 provides: "Whoever by act or omission causes damage to another, there being fault or negligence, is obliged to pay for the damage done. Such fault or negligence, if there is no pre-existing contractual relation between the parties, is called a quasi-delict and is governed by the provisions of this Chapter."
[3] G.R. No. 97336, 19 February 1993. All decisions cited in this Declaration are from the Supreme Court of the Philippines, unless otherwise noted.

3

9. Additionally, by definition, quasi-delict only applies where there is no pre-existing contractual relation between the parties. Here, there is a contractual relationship between GGAM on the one hand, and BRHI and SPI, on the other, *i.e,* the MSA. In fact, the claims relating to interference of the sale of the Option Shares and non-compliance with the Interim Measures Award have actually been raised in the arbitration proceedings convened pursuant to the MSA.

### B. Whether BRHI/SPI's Actions (and thus Mr. Razon's) With Respect to the Option Shares Would Qualify as an Abuse of Right under Philippine Law

10. The Philippine Civil Code does have "catch-all provisions" that generally cover an "Abuse of Rights" situation. Articles 19, 20 and 21 of said Code provide for an award of damages to a party who suffers damage whenever one commits an act in violation of some legal provision, or an act which though not constituting a transgression of positive law, nevertheless violates some rudimentary rights of the party aggrieved.[4] Significantly, Article 19 by itself is not the basis of an actionable tort.[5] It describes the degree of care required so that an actionable tort may arise when it is alleged together with Article 20[6] or Article 21[7][8].

11. The elements of an Abuse of Rights under Article 19 are: (1) there is a legal right or duty; (2) which is exercised in bad faith; and (3) for the sole intent of prejudicing or injuring another.[9] An "abuse of rights" action does not appear to be an equivalent action to trespass to chattels since they have different elements. Nonetheless, Abuse of Rights can be construed broadly, and so I consider whether Abuse of Rights could cover the relevant allegations here.

---

[4] *Carpio vs. Valmonte,* G.R. No. 151866, 9 September 2004.
[5] *Arco Pulp and Paper Co., Inc. et. al. vs. Lim*, G.R. No. 206806, June 25, 2014.
[6] Article 20. Every person who, contrary to law, wilfully or negligently causes damage to another, shall indemnify the latter for the same.
[7] Article 21. Any person who wilfully causes loss or injury to another in a manner that is contrary to morals, good customs or public policy shall compensate the latter for the damage.
[8] *Carpio vs. Valmonte, supra,* note 4.
[9] *Metroheights Subdivision Homeowners Association, Inc. vs. CMS Construction and Development Corp.,* G.R. No. 209359, 17 October 2018.

12. The allegations here appear to come closest to the theory of "malicious prosecution." There is liability for malicious prosecution under Articles 19 to 21 only when "an action for damages brought by one against whom a criminal prosecution, civil suit, or other legal proceeding has been instituted maliciously and without probable cause, *after the termination of such prosecution, suit, or other proceeding in favor of the defendant therein… Concededly, the mere act of submitting a case to the authorities for prosecution does not make one liable for malicious prosecution.*"[10]

13. Additionally, "Well-settled is the rule that the commencement of a legal action does not *per se* make the action wrongful and subject the action to damages, for the law could not have meant to impose a penalty on the right to litigate."[11] There can be no abuse of rights when the acts are legally permissible remedies which have actually been positively acted upon by Philippine courts.

14. Based on the SAC (¶¶ 106, 107, 236), GGAM sought to sell the Option Shares before the arbitral tribunal was constituted. BRHI and SPI, in filing the petition for, and in annually the bonds for, the writs of preliminary injunction and preliminary attachment have invoked legal remedies to preserve or protect their own rights or interest. Interim relief may be applied for considering: (a) the need to prevent irreparable loss or injury; (b) the need to provide security for the performance of any obligation; (c) the need to produce or preserve evidence; or (d) the need to compel any other appropriate act or omission.[12] Given that GGAM is a non-resident corporation with no other assets in the Philippines except for the Option Shares, the application for interim relief seems to have been warranted as a means of preserving the status quo pending BRHI/SPI's

---

[10] *Yasona vs. De Ramos,* G.R. No. 156339, 6 October 2004; See also *Tan vs.Valeriano*, G.R. No. 185559, 2 August 2017.
[11] *United Coconut Planters Bank vs. Basco,* G.R. No. 142668, 31 August 2004
[12] A.M. No. 07-11-08-SC, Special Rules of Court on Alternative Dispute Resolution ("Special ADR Rules")

assertion in the arbitration of a counterclaim against GGAM for causal fraud (akin to fraud in the inducement in the US). (*See* SAC Appendix 3 (Interim Measures Award) ¶¶ 93, 96; SAC Appendix 1 (Final Award) ¶ 170(a)).

15. BRHI and SPI were entitled to assert their claims through means allowed by law, which includes obtaining security for their counterclaims.[13] "The proper exercise of a lawful right cannot constitute a legal wrong for which an action will lie, although the act may result in damage to another, for no legal right has been invaded."[14]

16. Here, the Court of Appeals has already upheld the position of BRHI, SPI and PMHI when the appellate court affirmed the validity of the relief issued by the RTC and ruled that the Interim Measures Award required recognition and/or enforcement proceedings before it may be given any legal effect.[15] When GGAM sued Deutsche Bank in Hong Kong to compel delivery of the Option Shares, Deutsche Bank filed a *Motion for Clarification and/or Set Clarificatory Hearing Ad Cautelam*[16] with the RTC on the validity of the injunction, attachment and garnishment. The RTC and the Court of Appeals affirmed those remedies.[17] In other words, because the legal proceedings of which Plaintiff complains (the petition for writs and injunctive relief) have *not* ended in favor of GGAM, they cannot be the basis for BRHI/SPI's liability for malicious prosecution, much less for Mr. Razon personally to be held liable for an Abuse of Rights.

---

[13] The Option Shares were given as part of the consideration for GGAM's service under the MSA alleged to have been breached by GGAM.
[14] See *The Orchard Golf and Country Club Inc, vs. Yu*, G.R. No. 191033, 11 January 2016; *see also Spouses Cristino vs. Court of Appeals*, G.R. No. 116100, 9 February 1996.
[15] See 29 May 2015 *Resolution* (Exhibit 3) and 27 November 2015 *Resolution* (Exhibit 4) of the Court of Appeals in *GGAM vs. BRHI et al.*, CA-G.R. SP No. 134340
[16] See Motion for Clarification and/or Set Clarificatory Hearing *Ad Cautelam*, filed by Deutsche Bank Manila Branch (Exhibit 5)
[17] See 23 November 2017 Order of the RTC (Exhibit 6) and 8 November 2018 Decision of the Court of Appeals in CA-G.R. No. 153758 (Exhibit 7).

17. Even assuming *arguendo* that BRHI, SPI and PMHI were later on found to have been not entitled to the injunction and attachment writs issued, the proper remedy for GGAM is not to sue for malicious prosecution but rather to claim for damages against the attachment and injunction bonds posted by BRHI and SPI.[18] If the bond is insufficient to cover the amount of damage, GGAM can levy against any assets of BRHI, SPI and PMHI. Here GGAM has refused to acknowledge the benefit of the bond that was issued for its protection. It has also not commenced any action for the recognition or enforcement that conforms with the requirements under Philippine law.

18. In conclusion, in my opinion, I do not believe that a claim for an Abuse of Rights against Mr. Razon[19] arising from BRHI, SPI, and PMHI's actions with respect to the Option Shares would be available under the facts alleged in the SAC.

### III. Assuming a Trespass-to-Chattels Claim Were Recognized, Whether It Would Be Barred by Res Judicata and the Prohibition On Splitting a Cause of Action

19. Even assuming *arguendo* that liability on the "trespass to chattels" claim would be available under Philippine law (it would not be), Mr. Razon cannot be sued independently on this claim for that is tantamount to splitting a cause of action. While a cause of action may give rise to several forms of relief, only one action can be filed. A single cause of action or entire claim or demand cannot be split up or divided into two or more different actions.[20] Moreover, as discussed below, suing Mr. Razon for the same actions is barred by Philippine *res judicata* principles.

20. In *Lanuza, Jr. vs. BF Corporation, et al.*,[21] the Supreme Court of the Philippines held that if a claim against a corporation made in an arbitration is also asserted against any of its officers

---

[18] See Rule 5.9 of the Special ADR Rules.
[19] I also note that the personal liability of Mr. Razon for the acts of BRHI, SPI, and PMHI described above hinges on whether there are grounds to pierce the corporate veil of those entities. I do not necessarily agree that the facts in the SAC, taken as true, would be sufficient to hold Mr. Razon liable as BRHI/SPI's alter ego under Philippine law. I understand, however, that the Court has already ruled on this issue, and do not offer any opinion on it here.
[20] See *Riviera Golf Club vs. CCA Holdings*, G.R. No. 173783, 17 June 2015.
[21] G.R. No. 174938, 1 October 2014.

or directors on a theory of piercing the veil of corporate fiction, the claim against such officer or director must also be made in an arbitration proceeding initiated against the corporation. Otherwise, the Supreme Court held, this would amount to a splitting of cause of action, which is prohibited under Philippine law.[22] Here, claims relating to interference with the sale of the Option Shares and non-compliance with the Interim Measures Award have been raised in the arbitration proceedings which resulted in the Constructive Remedy in the Final Award. SAC Appendix 1 (Final Award) ¶¶ 467-74, 507(c)-(e). Thus, to now allow a claim to proceed against Mr. Razon based on the same facts would be violative of the prohibition against splitting a cause of action.

21. In addition, when there is an identity of causes of action, and the matter has already been litigated and passed upon on the merits, the prohibition against *res judicata* likewise applies. *Riviera Golf Club vs. CCA Holdings*[23] explains that [r]es judicata requires that "(1) the former judgment must be final; (2) it must have been rendered by a court having jurisdiction of the subject matter and the parties; (3) it must be a judgment on the merits; and (4) there must be, between the first and second actions (a) identity of parties, (b) identity of subject matter, and (c) identity of causes of action. . . . It is a settled rule that the application of the doctrine of res judicata to identical causes of action does not depend on the similarity or differences in the forms of the two actions. *A party cannot, by varying the form of the action or by adopting a different method of presenting his case, escape the operation of the doctrine of res judicata. The test of identity of causes of action rests on whether the same evidence would support and establish the former and the present causes of action.*"

---

[22] See Rule 2 of the Rules of Civil Procedure, Section 3: "*One suit for a single cause of action.* - A party may not institute more than one suit for a single cause of action."
Section 4. *Splitting a single cause of action; effect of* - If two or more suits are instituted on the basis of the same cause of action, the filing of one or a judgment upon the merits in anyone is available as a ground for the dismissal of the others.
[23] *Supra*, note 20.

22. Even if Mr. Razon was not a party to the arbitration proceedings, there is a community of interests and the relief sought is the same. "Absolute identity of parties is not required but only substantial identity, and there is substantial identity of parties when there is a community of interest between a party in the first case and a party in the second case, even if the latter was not impleaded in the first case. A shared identity of interest is sufficient to invoke the coverage of the principle of *res judicata*."[24]

23. *P.L. Uy Realty* (cited in note 24 above) noted that"[t]he principle of res judicata may not be evaded by the mere expedient of including an additional party to the first and second action."

24. In sum, even if a trespass to chattels / Abuse of Rights theory of liability were available against Mr. Razon, it is barred by the doctrine of res judicata and/or the prohibition on claim splitting.

### IV. Whether Punitive Damages Are Recoverable on the Facts Alleged

25. Under Philippine law, punitive or exemplary damages are available in contracts or quasi-contracts only if the following requisites are present: (1) they may be imposed by way of example in addition to compensatory damages, and only after the claimant's right to them has been established; (2) that they cannot be recovered as a matter of right, their determination depending upon the amount of compensatory damages that may be awarded to the claimant; and (3) the act must be accompanied by bad faith or done in a wanton, fraudulent, oppressive or malevolent manner.[25] Specifically, the defendant must have acted in a "wanton, fraudulent, reckless, oppressive, or malevolent manner."[26] It is an elementary rule in Philippine law that good faith is

---

[24] *Igot vs. Valenzona,* G.R. No. 230687, 5 December 2018; *see also Guerrero vs. Land Management Bureau,* G.R. No. 183641, 22 April 2015; *P.L. Uy Realty Corporation vs. ALS Management and Development Corporation*, G.R. No. 166462, 24 October 2012.
[25] *Supra,* note 6
[26] Article 2232 of the Philippine Civil Code.

presumed and that the burden of proving bad faith rests upon the party alleging the same.[27] Good faith refers to the state of mind which is manifested by the acts of the individual concerned, and is presumed. Bad faith, which involves a dishonest purpose or some moral obloquy and conscious doing of a wrong, must therefore be proved.[28]

26. The actions of BRHI, SPI and PMHI here do not appear to be tainted with bad faith. Most importantly, it appears that these actions are in accordance with legally afforded remedies which have actually not been overturned by any court action to date. Given so, then a claim for exemplary damages truly has no basis.

27. I note that Clause 12.3(a) of the MSA provides that "[n]either Party shall be liable to the other under this Agreement for any indirect or consequential loss or punitive damages." Clause 19.2(c) also provides that an arbitral award "may not include, and the parties specifically waive any right to an award of multiple, exemplary or punitive damages."

28. As no punitive damages may be awarded against BRHI and SPI, then neither may the same be awarded against Mr. Razon under the same factual premises, especially where Mr. Razon is likewise sued as an alter ego of BRHI and SPI.

---

[27] *Tan vs. Valeriano,* G.R. No. 185559, 2 August 2017.
[28] See *Diaz vs. Encanto, et al.,* G.R. No. 171303, 20 January 2016.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: April 18, 2022

_____
Marjorie A. Uyengco-Nolasco