**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL GAMING PHILIPPINES, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ENRIQUE K. RAZON, JR.;<br>BLOOMBERRY RESORTS AND HOTELS<br>INC.; SURESTE PROPERTIES, INC.<br><br>*Defendants*. | No. 21-CV-2655 (LGS) (SN) |

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT ENRIQUE K. RAZON, JR.'S**
**PARTIAL MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.     PLAINTIFF FAILS TO STATE A CLAIM FOR TRESPASS TO CHATTELS ... 3

     A.     There Is a Conflict: Philippine Law Does Not Recognize Trespass
To Chattels .................................................................................................. 3

     B.     The Court Must Apply Philippine Law ....................................................... 5

II.     THE TRESPASS CLAIM IS BARRED BY RES JUDICATA ............................. 8

     A.     The Trespass Claim Is Precluded Under U.S. Law ..................................... 9

     B.     The Trespass Claim Is Precluded Under Philipine Law ............................ 12

III.    THE TRESPASS CLAIM IS IMPERMISSIBLY DUPLICATIVE OF THE
ALTER EGO CLAIM ASSERTED AGAINST RAZON .................................... 13

IV.    THE PUNITIVE DAMAGES DEMAND MUST BE DISMISSED .................... 15

CONCLUSION ............................................................................................................. 17

# **TABLE OF AUTHORITIES**

**U.S. Cases**

*Airport Mart Inc. v. Dunkin' Donuts Franchising LLC*,
  2019 WL 4413052 (S.D.N.Y. Sept. 16, 2019)...................................................................... 15

*Am. Ins. Co. v. Messinger*, 43 N.Y.2d 184 (1970)............................................................ 8

*Astoria Med. Grp. v. Health Ins. Plan of Greater N.Y.*, 11 N.Y.2d 128 (1962) ............................ 14

*Biofrontera AG v. Deutsche Balaton AG*, 2020 WL 1489788 (S.D.N.Y. Mar. 27, 2020) ............ 3

*Centr. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359 (2d Cir. 1995)... 9

*Chigirinskiy v. Panchenkova*, 2015 WL 1454646 (S.D.N.Y. Mar. 31, 2015) ................................ 5

*Cho v. Blackberry Ltd.*, 991 F.3d 155 (2d Cir. 2021) ...................................................... 10

*Citigroup Global Markets, Inc. v. KLCC Invs., LLC*,
  2015 WL 5853916 (S.D.N.Y. Sept. 28, 2015), *aff'd*, 706 F. App'x 38 (2d Cir. 2017)............. 5

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (1987) ................................ 14, 15

*Deutsch v. Novartis Pharm. Corp.*, 723 F. Supp. 2d 521 (E.D.N.Y. 2010)................................ 16

*Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 600 F.3d 190 (2d Cir. 2010) ................ 9

*Feitshans v. Kahn*, 2006 WL 2714706 (S.D.N.Y. Sept. 21, 2006)................................ 9

*Florasynth, Inc. v. Pickholtz*, 750 F.2d 171 (2d Cir. 1982) ........................................ 14

*Gate Techs LLC v. Delphix Capt. Mkts., LLC*, 2013 WL 3455484 (S.D.N.Y. July 9, 2013)....... 14

*Goldstein v. Doft*, 353 F.2d 484 (2d Cir. 1965) ................................................. 8

*Guidi v. Inter-Cont'l Hotels Corp.*, 2003 WL 1907901 (S.D.N.Y. April 16, 2003) .................. 16

*Hacohen v. Bolliger Ltd.*, 108 A.D.2d 357 (1st Dep't 1985).................................. 6

*Hoelzer v. City of Stamford*, 722 F. Supp. 1106 (S.D.N.Y. 1989).............................. 6

*Hoelzer v. City of Stamford,* 933 F.2d 1131 (2d Cir. 1991)................................... 6

*In re Teltronics Servs., Inc.*, 762 F.2d 185 (2d Cir. 1985) ............................................................ 10

*Jackie's Enter., Inc. v. Belleville*, 165 A.D.3d 1567 (3d Dep't 2018) ........................................... 4

*Kinsey v. N.Y. Times Co.*, 991 F.3d 171 (2d Cir. 2021) ............................................................. 3, 5

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ...................................................... 3

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991) ........................................................ 4

*Kwiecinski v. John Renke II, Law Office*, 2012 WL 4344589 (E.D.N.Y. July 30, 2012) ............... 6

*La Luna Enter., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384 (S.D.N.Y. 1999) ................................. 5, 6

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155 (2d Cir. 2012) ..................... 5

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45 (2d Cir. 2014) .................... 5, 7

*Lund's Inc. v. Chemical Bank*, 870 F.2d 840 (2d Cir. 1989) ...................................................... 6

*Maharaj v. Bankamerica Corp.*, 128 F.3d 94 (2d Cir. 1997) .................................................. 8, 9

*Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342 (2020) ........................................................ 17

*Monahan v. N.Y.C. Dep't of Corrections*, 214 F.3d 275 (2d Cir. 2000) ....................................... 9

*MWL Brasil Rodas & Eixos Ltda v. K-IV Enter. LLC*, 661 F. Supp. 2d 419 (S.D.N.Y. 2009) ...... 6

*N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38 (2d Cir. 1999) ................................................. 3

*N.Y.U. v. Cont'l Ins. Co.*, 87 N.Y.2d 308 (1995) ..................................................................... 16

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883 (1st Dep't 1982) .................... 14-15

*Pike v. Freeman*, 266 F.3d 78 (2d Cir. 2001) ........................................................................ 8, 9

*Saxe v. Thompson Med. Co.*, 1987 WL 7362 (S.D.N.Y. Feb. 20, 1987) ................................... 16

*Soules v. Connecticut*, 882 F.3d 52 (2d Cir. 2018) ............................................................... 8, 10

*Sporn v. MCA Recs., Inc.*, 58 N.Y.2d 482 (1983) .................................................................... 2

*Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc.*,
   2015 WL 2130537 (S.D.N.Y. May 6, 2015) ........................................................................ 17

*Transience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441 (S.D.N.Y. 2014) ........................ 14

*United States v. Merritt Meridian Const. Corp.*, 95 F.3d 153 (2d Cir. 1996) ............................ 15

*Weisman v. Rosenker*, 1985 WL 182 (S.D.N.Y. Jan. 10, 1985) .................................................... 2

*Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416 (2d Dep't 1999) ................................... 15

**U.S. Statutes**

CPLR § 202 .......................................................................................................................... 2

CPLR § 214 .......................................................................................................................... 2

**Other U.S. Authorities**

Restatement (Second) of Judgments § 24 ............................................................................ 8

Restatement (Second) of Torts § 217 .................................................................................. 4

**Philippine Cases, Statutes, and Rules**

*Igot vs. Valenzona*, G.R. No. 230687 (Phil. Dec. 5, 2018) ............................................... 13

*Lanuza v. BF Corp.*, G.R. No. 174938 (Phil. Oct. 1, 2014) ....................................... 8, 12

*P.L. Uy Realty Corp. vs. ALS Mgmt. & Dev. Corp.*, G.R. No. 166462 (Phil. Oct. 24, 2012) ...... 13

*Riviera Golf Club, Inc. v. CCA Holdings, B.V.*,
   G.R. No. 173783, 760 Phil. 655 (June 15, 2015) ............................................... 12, 13

*Stilianopulos v. City of Legaspi*, G.R. No. 133913 (Phil. Oct. 12, 1999) ............................ 12-12

*Yasona v. De Ramos*, G.R. No. 156339 (Phil. Oct. 6, 2004) ........................................... 4

Philippine Civil Code, Article 2232 ................................................................................... 16

Rule 2 of the Rules of Civil Procedure ............................................................................. 12

Plaintiff Global Gaming Philippines, LLC ("GGP") has tacked on to this arbitral enforcement proceeding a trespass to chattels claim (the "Trespass Claim"). The Trespass Claim is a contrivance to circumvent the punitive damages waiver in the arbitral contract and re-do the arbitration by bringing a claim directly against Defendant Enrique K. Razon, Jr. This Court has already properly pared down the case by dismissing Plaintiff's meritless "reverse pierce" claims against entities that obviously had no relationship to the arbitral contract or the arbitral award. Opinion 13-15.[2] The Trespass Claim is equally defective –it is unavailable under Philippine law, which applies here, and also barred by res judicata, among other things – and it is time to dismiss it, too.

The crux of the Trespass Claim is that Razon has allegedly interfered with Plaintiff's interest in the so-called Option Shares.[3] Specifically, Razon allegedly caused the Bloomberry Defendants to obtain a temporary restraining order and then a preliminary injunction against a planned sale of the Option Shares in early 2014. Additionally, the Bloomberry Defendants (allegedly at Razon's direction) have annually renewed the bond required to support the injunction even though a December 2014 ruling by the arbitral tribunal (the Interim Measures Award) purported to vacate the Philippine injunction and instructed the Bloomberry Defendants to take

---

[1] Mindful of the concerns regarding efficiency expressed by Judge Netburn (Dkt. No. 224), Razon currently intends to file an Answer to the SAC on or about May 2 (30 days before the close of fact discovery).

[2] "Opinion" refers to the Opinion and Order of the Court dated March 21, 2022 (Dkt. No. 216). "SAC" refers to the Second Amended Complaint (Dkt. No. 218). Unless otherwise noted in this Memorandum, all emphasis is added and all internal citations and quotation marks are omitted.

[3] The Option Shares are an equity stake in Bloomberry Resorts Corporation ("BRC") issued to Plaintiff as partial compensation for its services under the Management Services Agreement ("MSA") with BRC subsidiaries Bloomberry Resorts and Hotels Inc. and Sureste Properties Inc. (the "Bloomberry Defendants" or "Debtor Defendants").

steps to free up the shares. SAC ¶¶ 236-253.[4] Although the SAC does not identify any action performed by Razon personally, *see id.*, Plaintiff asserts that Razon is "independently liable for the acts and omissions" constituting the Trespass Claim, "whether acting individually *or through his alter ego entities* (*including the Debtor Defendants* and Prime)." SAC ¶ 254.

The Trespass Claim fails. Under settled choice of law rules, it is governed by Philippine law, and Philippine law does not recognize "trespass to chattels," nor would some other species of tort-like liability be available under Philippine law on the facts alleged. The Trespass Claim also is barred by the doctrine of res judicata (whether under U.S. or Philippine law) and the related Philippine prohibition on claim-splitting. The Trespass Claim consists almost entirely of allegations that the arbitral tribunal *already decided* were a basis for liability against the Bloomberry Defendants, entities with which Razon is in privity so as to bar a successive action on the same facts. Additionally, the Trespass Claim fails on the separate basis that it is wholly duplicative, both on the allegations and the remedies, of Plaintiff's contractual cause of action to enforce the final arbitral award directly against Razon as alter ego of the Bloomberry Defendants.

Finally, the punitive damages demand must be dismissed. First of all, the MSA expressly excludes punitive damages for claims under the MSA, which is what the Trespass Claim is, despite

---

[4] Plaintiff also refers to a January 2014 trading suspension on the Philippine stock exchange. SAC ¶ 237. But the suspension was lifted, at *Plaintiff's* request, a day after it was imposed (Dkt. No. 218-3 (Interim Measures Award) ¶¶ 42-46) and four days *before* the block sale was to take place (SAC ¶ 236), and so the suspension could not have been a cause of harm to Plaintiff. Moreover, as an alleged "independently unlawful act" (SAC ¶ 235) of trespass, the January 2014 trading suspension has been time-barred since January 2017. *See* CPLR §§ 202, 214(3)&(4). The fact that trespass can be a "continuing wrong" does not mean that *every act* constituting an alleged trespass, no matter how old, is fair game. Rather, it means that each *new* act of trespass gives rise to a *new* claim which is actionable within three years from the accrual of *that* claim. *Sporn v. MCA Recs., Inc.*, 58 N.Y.2d 482, 488 (1983) ("continuing trespass" will "give rise to successive causes of action *each time there is an interference with a person's property* so that relief would not be barred by the Statute of Limitations *for interferences occurring within three years of the commencement of the action*."); *see also Weisman v. Rosenker*, 1985 WL 182, at *2 (S.D.N.Y. Jan. 10, 1985) ("A new claim accrues each day the rightful possessor's use and enjoyment of the chattel is impaired").

the label. Second, the alleged facts would not give rise to punitive damages under Philippine law (because the Bloomberry Defendants have done nothing other than use valid legal procedures in the Philippines) – or for that matter under New York law, since the challenged conduct was not part of a pattern of behavior directed at the public broadly.

## ARGUMENT

## I.     PLAINTIFF FAILS TO STATE A CLAIM FOR TRESPASS TO CHATTELS

The Trespass Claim is asserted under the Court's supplemental and/or diversity jurisdiction. SAC ¶ 31; Opinion 10. Accordingly, the Court must apply the choice of law rules of New York. *E.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43 (2d Cir. 1999); *Biofrontera AG v. Deutsche Balaton AG*, 2020 WL 1489788, at *10 (S.D.N.Y. Mar. 27, 2020); Opinion 10-11.

### A.     There Is a Conflict: Philippine Law Does Not Recognize Trespass To Chattels

Under New York choice of law rules, the first step is to assess whether there is an actual conflict between the law of relevant foreign jurisdiction, *i.e.* the Philippines, and that of the local jurisdiction. *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021). There is. This Court has already opined that the facts alleged in the SAC support a claim for trespass to chattels under New York law. Opinion 17.[5]

By contrast, the claim is not cognizable under Philippine law. First of all, Philippine law does not recognize "trespass to chattels" as a tort. Nolasco Decl. ¶ 6. Common-law torts are sometimes analogized to "quasi-delicts" in the Philippine Civil Code, but quasi-delicts cannot be

---

[5] Razon does not concede that the SAC states a claim for trespass to chattels under New York law. However, the Court has already stated that it does, and Razon does not seek to have the Court reconsider that determination here. Razon nevertheless respectfully reserves his right to contest this issue at a later phase of the case, including at summary judgment and on appeal.

intentional, Nolasco Decl. ¶¶ 7-8, whereas trespass to chattels is an *intentional* interference with property, *e.g.*, *Jackie's Enter., Inc. v. Belleville*, 165 A.D.3d 1567, 1572 (3d Dep't 2018); Restatement (Second) of Torts § 217. Further, quasi-delict is available only where there is no contractual relationship between the parties, but here GGP had a contractual relationship with the entities through which Razon allegedly acted, namely the Bloomberry Defendants and Prime, Razon's holding company. *Id.* ¶ 9; *see also* SAC ¶¶ 77-81. For these reasons, the Trespass Claim could not be asserted as a quasi-delict under Philippine law. Nolasco Decl. ¶¶ 7-9.

The closest analogue in the Philippines that could potentially capture trespass to chattels is "Abuse of Rights," perhaps on a theory of malicious prosecution. Nolasco Decl. ¶¶ 10-12. However, the facts alleged here do not satisfy malicious prosecution or Abuse of Rights. *Id.* ¶¶ 13-18. The complained-of conduct consists of nothing more or less than invoking valid legal procedures in the Philippines to protect the Bloomberry Defendant's rights, *id.* ¶ 14, and those procedures thus far have had outcomes *favorable* to the Bloomberry Defendants. *Id.* ¶¶ 14-18. For there to be liability on a theory of malicious prosecution or Abuse of Rights, the proceedings would have to be resolved *unfavorably* to Bloomberry. *Id.* ¶¶ 12, 16 (citing *Yasona v. De Ramos*, G.R. No. 156339 (Phil. Oct. 6, 2004)). Instead the Philippine courts have repeatedly upheld Bloomberry's position, finding that the tribunal's Interim Measures Award was not self-executing, that the injunctions were properly imposed[6] and remain valid, and that GGP must initiate arbitral recognition and enforcement proceedings in the Philippine courts if it wishes to have the injunctions dissolved on the basis of the arbitral awards. *Id.* ¶¶ 14-16 & Exs. 2-7.[7] (Of note, the

---

[6] The Bloomberry Defendants requested the injunctions in order to preserve the status quo because they were seeking restitution of the Option Shares in the arbitration as a remedy for their counterclaims against GGP. *See* Dkt. No. 218-3 (Interim Measures Award) ¶¶ 93, 96; Dkt. No. 218-1 (Final Award) ¶ 170(a).

[7] The Court can take judicial notice of the Philippine judicial proceedings and their outcome. *E.g.*, *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). The concurrently filed Declaration of Ninez C.

whole point of the bond is to compensate GGP in the event that the writs and injunction are later found not to have been proper. *Id*. ¶ 17.)

As a matter of Philippine law, the *successful* use of Philippine legal procedures cannot give rise to liability on a theory of Abuse of Rights. *Id*. ¶¶ 11-18. Put another way, the Philippine courts would never recognize tort-like liability for successfully using those same courts and for not complying with an arbitral award that those same courts have said is not self executing. *See id*.

## B. The Court Must Apply Philippine Law

Because a conflict exists, the next step is to determine "which jurisdiction's substantive law controls." *Kinsey*, 991 F.3d at 176. "In tort cases New York applies the law of the [jurisdiction] with the most significant interest in the litigation." *Id*. Interest analysis gives "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 157-58 (2d Cir. 2012) (*Licci I*) (cleaned up), *reh'g denied*, 739 F.3d 45 (2d Cir. 2014) (*Licci II*).

Interest analysis distinguishes between conduct-regulating rules and loss-allocating rules. *Licci I*, 672 F.3d at 158. "Conduct-regulating rules are those that people use as a guide to governing their primary conduct, while loss allocating rules are laws that prohibit, assign, or limit liability after the tort occurs." *Id*. (cleaned up). Whether the pled facts, deemed true, give rise to liability for trespass to chattels depends on a conduct-regulating rule. *See, e.g.*, *La Luna Enter., Inc. v. CBS Corp.*, 74 F. Supp. 2d 384, 389 (S.D.N.Y. 1999) (describing trespass as a "conduct-regulating tort"); *Chigirinskiy v. Panchenkova*, 2015 WL 1454646, at *5 (S.D.N.Y. Mar. 31, 2015) ("Conversion is plainly a conduct-regulating tort."); *Citigroup Global Mkts., Inc. v. KLCC Invs.,*

Maningat attests to the authenticity of the relevant judicial records.

*LLC*, 2015 WL 5853916, at \*7 (S.D.N.Y. Sept. 28, 2015) ("conversion is a conduct-regulating tort"), *aff'd*, 706 F. App'x 38 (2d Cir. 2017).

The jurisdiction that has the greatest concern with regulating the conduct underlying a trespass or conversion claim is the jurisdiction where the property was located and interfered with – in other words, where the tort occurred. *E.g.*, *Lund's, Inc. v. Chemical Bank*, 870 F.2d 840, 842-43, 845-46 (2d Cir. 1989) (applying New York law to conversion claim, even though the transacting participants were located in Minnesota, because alleged conversion happened at a bank in New York); *MWL Brasil Rodas & Eixos Ltda v. K-IV Enter. LLC*, 661 F. Supp. 2d 419, 428 (S.D.N.Y. 2009) (applying New Jersey law to conversion claim, because the acts of conversion occurred and the property was being wrongfully held in New Jersey); *La Luna*, 74 F. Supp. 2d at 389 (Florida law applied to trespass claim because the property allegedly trespassed upon was in Florida); *Kwiecinski v. John Renke II, Law Office*, 2012 WL 4344589, at \*3 n.6, \*4-\*5 (E.D.N.Y. July 30, 2012) (applying Florida law because alleged conversion happened in Florida even though plaintiff resided in New York), *R&R adopted*, 2012 WL 4344552, at \*2 (E.D.N.Y. Sept. 21, 2012); *Hacohen v. Bolliger Ltd.*, 108 A.D.2d 357, 358-59, 360-61 (1st Dep't 1985) (Connecticut law applied to conversion that occurred at a warehouse in Connecticut even though owner of property was in New York); *see also Hoelzer v. City of Stamford*, 722 F. Supp. 1106, 1112 (S.D.N.Y. 1989) (injury from trespass to chattels or conversion happened in New York, where the property was located and allegedly interfered with, though putative owner was a Connecticut school), *aff'd*, 933 F.2d 1131, 1136 (2d Cir. 1991).

Here, the Philippines plainly has a far greater interest than New York in whether liability for trespass is available. The Option Shares are located in the Philippines: they are shares of a Philippine company traded on the Philippine stock exchange and have been held in the Philippines

in accounts hosted by the Manila branch of Deutsche Bank. *See, e.g.*, SAC ¶¶ 76, 112, 239 n.30, 247; *see also* Nolasco Decl. Ex. 5. All of the alleged actions to interfere with Plaintiff's rights in the Option Shares occurred in the Philippines. The judicial restraints on the planned sale were imposed by the courts of the Philippines, and the bond annually posted to support the injunction is posted by Philippine companies in the Philippines with the Philippine courts. *See Licci II*, 739 F.3d at 49 ("[T]he conduct of AmEx that appellants allege was tortious occurred in New York. New York has the greatest interest in regulating conduct within its borders, and consequently its law applies."). To the extent Plaintiff complains that Razon has caused Bloomberry to disregard the arbitral tribunal's instructions in relation to the shares, the tribunal was constituted pursuant to and applied Philippine law (the MSA, in which the parties agreed to establish an ad hoc tribunal to arbitrate their disputes, was created under and governed by Philippine law, *see* Dkt. No. 218-4 (MSA) ¶¶ 19.2, 19.3) – furnishing yet another reason why the Philippines has an interest in regulating the alleged conduct underlying this claim.

New York, by contrast, has no interest in Trespass Claim. No conduct relevant to the Trespass Claim occurred in New York. No property relevant to the Trespass Claim is or ever has been located in New York. No injury relevant to the Trespass Claim was experienced in New York. In fact, this Court has already recognized that the substantially identical predecessor conversion claim was alleged "under Philippine law." Opinion at 1.

The choice of law analysis requires the application of Philippine law, and under Philippine law, Plaintiff fails to state a claim. The Trespass Claim must be dismissed.

## II. THE TRESPASS CLAIM IS BARRED BY RES JUDICATA[8]

The Trespass Claim is barred by the doctrine of res judicata, or claim preclusion, the prohibition on relitigating claims decided in a prior proceeding. The requirements for res judicata are that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [same parties] or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Soules v. Connecticut*, 882 F.3d 52, 55 (2d Cir. 2018). "Simply put, the doctrine states that once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning 'the transaction, or series of connected transactions, out of which the [first] action arose.'" *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (quoting Restatement (Second) of Judgments § 24(1)).

Res judicata is just as applicable to a final arbitration award as it is to a final judgment. *E.g.*, *Pike v. Freeman*, 266 F.3d 78, 90-91 (2d Cir. 2001); *Am. Ins. Co. v. Messinger*, 43 N.Y.2d 184, 189-90 (1970); *Goldstein v. Doft*, 353 F.2d 484, 484 (2d Cir. 1965) ("Arbitration would be of little value if the entire controversy or any part thereof could be reopened later by a mere change in the words or phrases used to characterize the matters included in the claim" considered by the arbitrators); *see also Lanuza v. BF Corp.*, G.R. No. 174938 (Phil. Oct. 1, 2014) (prohibition on filing successive suits for a single cause of action applies to arbitral proceedings).

---

[8] Razon moved to dismiss the predecessor conversion claim on grounds of res judicata and duplicativeness. Dkt. No. 118 at 35-37. The Court did not reach those arguments.

As discussed further below, whether the res judicata issues are analyzed under U.S. law[9] or the law of the Philippines, the result is the same – the Trespass Claim is barred. Accordingly, there is no conflict of laws here and no need to resolve the choice of law question.

**A.      The Trespass Claim Is Precluded Under U.S. Law**

Under U.S. law, the conditions for res judicata to attach are a prior adjudication on the merits, the same parties or those in privity with them, and a cause of action that was or could have been asserted in the prior proceeding. See page 8 above. The first of these requirements is satisfied because the final arbitral award serves as an adjudication on the merits.

The requirement of parties or privies also is plainly satisfied. GGP was a claimant in the arbitration and is the plaintiff here. The respondents in the arbitration were the Bloomberry Defendants as opposed to Razon, but the parties do not need to be identical in the second proceeding. "[L]iteral privity is not a requirement." *Monahan v. N.Y.C. Dep't of Correction*s, 214 F.3d 275, 285 (2d Cir. 2000). Rather, res judicata applies if the party's "*interests* were adequately represented" in the prior proceeding. *Id*. *See also Centr. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995) ("the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant").

Privity is easily satisfied here. The SAC notes that Razon is the founder, chairman and CEO, and majority shareholder of the Bloomberry Defendants and BRC. SAC ¶¶ 39, 63 n.8, 72, 91. Necessarily, Razon's "interests were at stake in the prior arbitration." *See Feitshans v. Kahn*, 2006 WL 2714706, at *4 (S.D.N.Y. Sept. 21, 2006) ("Naming new defendants in this action does

---

[9] Federal and New York res judicata law are equivalent. *See, e.g.*, *Maharaj*, 128 F.3d at 97; *Pike*, 266 F.3d at 90 n.14 ("there appears to be no significant difference between New York preclusion law and federal preclusion law); *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 600 F.3d 190, 195-96 (2d Cir. 2010). We refer to the federal and New York res judicata law collectively in this brief as "U.S. law."

not help plaintiffs because res judicata operates to preclude claims, rather than particular configurations of parties.").

Under Second Circuit precedent, a majority shareholder and CEO of a company is in privity with the company for purposes of res judicata: The court of appeals has repeatedly deemed privity satisfied upon relationships that are *less* close than the one alleged here between Razon and the Bloomberry Defendants. *See, e.g.*, *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021) (claim against corporate officer "in his individual capacity" was precluded following suit against company and two other officers; newly sued officer had been acting "on behalf of the company" and had a "sufficiently close relationship to the original defendant[s] to justify preclusion."); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190-91 (2d Cir. 1985) (Beagan, who was founder, president, chairman of the board, and only 20% shareholder of Teltronics was in privity with Teltronics such that judgment in a case brought by Teltronics raised a res judicata bar to a subsequent suit by Beagan arising from the same facts).

The final requirement – that the cause of action was or could have been raised in the prior proceeding – also is clearly satisfied. The newly asserted cause of action does not need to have the same label or even rest on the same legal theories as the prior one. "Even claims based upon different legal theories are barred [by res judicata] provided they arise from the same transaction or occurrence." *Cho*, 991 F.3d at 168. And it is not necessary that a given theory or claim have been asserted in the prior proceeding, only that it "could have been raised" there. *Id*. *See also Soules*, 882 F.3d at 55 (court must consider whether the second proceeding concerns the same "nucleus of operative facts" as the first, with reference to "(1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations.").

The theory of liability asserted here was asserted in the arbitration. The arbitrators considered at length whether, and decided that, the Bloomberry Defendants had "interfer[ed] with and block[ed] the exercise of [Plaintiff's] ownership rights in its Shares, especially its right to sell the Shares," rendering the Bloomberry Defendants liable for damages. Dkt. No. 218-1 (Final Award) ¶¶ 449, 450. Similarly, Plaintiff asserts here that Razon "interfer[ed] with Plaintiff exercising . . . its ownership rights" in the Option Shares," SAC ¶ 235, rendering Razon liable for damages. SAC ¶¶ 234-35, 257, 258.

The facts at issue in the two proceedings are the same. The arbitrators premised their finding of liability on the Bloomberry Defendants' decision not to comply with the tribunal's Interim Measures Award in 2014 and instead to continue availing themselves of the injunction that has remained in place in the Philippines (Dkt. No. 218-1 ¶¶ 436-448). Plaintiff premises its Trespass Claim on the identical actions, this time recharacterized as conduct of Razon *through* the Bloomberry Defendants (SAC ¶¶ 236-256).

The remedies sought are essentially the same, too. The panel imposed "Constructive Remedies" on the Bloomberry Defendants so that Plaintiff would have the benefit of owning the shares. Dkt. No. 218-1 ¶¶ 446-50, 467-74, 507(c)-(e). Plaintiff here seeks substantially the same relief, this time against Razon personally. SAC ¶ 251 & pages 95-96; *compare* Dkt. No. 218-1 ¶ 507(c)-(e). Plaintiff is clearly seeking to relitigate in a judicial action precisely what has already been determined in the arbitration.[10]

The Trespass Claim is precluded under U.S. law.

---

[10] To the extent Plaintiff claims that *since the Final Award*, the Bloomberry Defendants and Razon have taken actions to interfere with enforcement of the award, the allegations are wholly duplicative of the award-enforcement claim against Razon and fail on that basis, as discussed in the next section.

## B. The Trespass Claim Is Precluded Under Philippine Law

The identical result obtains under Philippine law. The Philippines has a strong policy and prohibition against "splitting" a claim into multiple proceedings. Nolasco Decl. ¶¶ 19-20 (citing *Riviera Golf Club, Inc. v. CCA Holdings, B.V.*, G.R. No. 173783, 760 Phil. 655 (June 15, 2015); Rule 2 of the Rules of Civil Procedure). A plaintiff may assert its claim once, and may not assert the same claim simultaneously or successively in different fora. *Id.* In other words, in the Philippines one needs only to have *initiated* an action, not to have obtained a *final judgment* in it, in order for all subsequent actions on that claim to be barred. *Id.* And this prohibition applies to a claim asserted first in an arbitration and then in a judicial proceeding. *Id.* ¶ 20 (citing *Lanuza v. BF Corp.*, G.R. No. 174938 (Oct. 1, 2014) (claimant in arbitration alleging that an officer or director of a respondent company is liable on a veil-piercing theory is required to bring that claim in the arbitration lest it be barred thereafter under Philippine claim-splitting rules)). Since Razon could have been sued in the arbitration as an alleged alter ego of the Bloomberry Defendants (*Lanuza*), under Philippine law he may not now be judicially sued on substantially the same claim. Nolasco Decl. ¶ 20. Again, the Trespass Claim seeks to hold Razon liable for the actions of Bloomberry Defendants, nearly all of which were at issue in the arbitration.

The Philippines also has a res judicata doctrine, which is closely related to its policy against claim-splitting. Nolasco Decl. ¶ 21 (citing *Riviera Golf Club*). The res judicata elements in the Philippines are essentially the same as in the U.S.: "(1) the former judgment must be final; (2) it must have been rendered by a court having jurisdiction of the subject matter and the parties; (3) it must be a judgment on the merits; and (4) there must be, between the first and second actions (a) identify of parties, (b) identity of subject matter, and (c) identity of causes of action." *Id.*

As in the U.S., the "identity" requirements are not literal or absolute. The "identical parties" requirement is satisfied if there is *privity* between the second litigant and the first. *Stilianopulos v.*

*City of Legaspi*, G.R. No. 133913 (Phil. Oct. 12, 1999) (a final judgment "should be conclusive upon the parties *and those in privity with them*"). There need only be a "substantial identity" or a "community of interest between a party in the first case and a party in the second case, even if the latter was not impleaded in the first case," and "the principle of res judicata may not be evaded by the mere expedient of including an additional party to the first and second action." Nolasco Decl. ¶¶ 22-23 (quoting *Igot vs. Valenzona*, G.R. No. 230687 (Phil. Dec. 5, 2018), and *P.L. Uy Realty Corp. vs. ALS Mgmt. & Dev. Corp.*, G.R. No. 166462 (Phil. Oct. 24, 2012)). As explained above, Razon and the Bloomberry Defendants have substantially the same interests, according to the allegations of the SAC.

Also as in the U.S., it does not matter if the *label* of the cause of action has changed. "The test of identity of causes of action rests on whether the ***same evidence*** would support and establish the former and the present causes of action." *Riviera Golf Club*; Nolasco Decl. ¶ 21. That test is obviously satisfied here, for reasons reviewed above.

Accordingly, the Trespass Claim is barred under Philippine law by res judicata and related anti-claim-splitting principles. Nolasco Decl. ¶ 24.

## III. THE TRESPASS CLAIM IS IMPERMISSIBLY DUPLICATIVE OF THE ALTER EGO CLAIM ASSERTED AGAINST RAZON

The Trespass Claim is entirely duplicative of and subsumed within the contractual claim to enforce the award against Razon as the alleged alter ego of the Debtor Defendants. The Court specifically found that the alleged "other wrong" supporting the veil-piercing theory is that "Razon controlled the Debtor Defendants to deny Plaintiff's exercise of the Option Shares and that Razon continues to obstruct Plaintiffs' lawful right to enforce the Final Arbitration Award through the Debtor Defendants." Opinion 13. The identical conduct is alleged as part of the Trespass Claim. The relief sought is substantially similar too (apart from the defective punitive damages demand,

discussed next). *Compare* SAC at page 92 ¶ A (seeking to enforce the Final Award directly against Razon, including through a damages judgment and/or judicial confirmation of the Constructive Remedy (Dkt. No. 218-1 ¶ 507(c)-(e))) *with* SAC at pages 95-96 ¶¶ F, G (as remedies on Trespass Claim, seeking damages and/or injunctive orders equivalent to the Constructive Remedy).

Indeed, the whole point of the Trespass Claim is that Razon allegedly has caused the Bloomberry Defendants not to comply with the awards rendered by the tribunal. Nothing more or less is alleged in support of the claim. But an unconfirmed arbitral award is simply "a *contract* right." *Florasynth, Inc. v. Pickholtz*, 750 F.2d 171, 176 (2d Cir. 1982). That is because "[a]rbitration is essentially a creature of contract, a contract in which the parties themselves charter a private tribunal for the resolution of their disputes." *Astoria Med. Grp. v. Health Ins. Plan of Greater N.Y.*, 11 N.Y.2d 128, 132-33 (1962). Accordingly, the non-compliance with an unconfirmed arbitral award is actionable as breach of *contract*. *Florasynth*, 750 F.2d at 176. The alter ego award-enforcement claim against Razon is a *contract* claim. And the Trespass Claim rests on no alleged duty other than the duty to comply with the awards, which, again, is a *contractual* duty. *See Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987) (a "breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated").

As a matter of pleading standards in this District and New York law (as well as Philippine law, which forbids claim-splitting, *see* Nolasco Decl. ¶¶ 19-20, 24), the Trespass Claim is wholly duplicative of the award-enforcement claim and must be dismissed. *See, e.g.*, *Gate Techs LLC v. Delphix Capt. Mkts., LLC*, 2013 WL 3455484, at *4-*5 (S.D.N.Y. July 9, 2013) (dismissing duplicative conversion claim); *Transience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 456 (S.D.N.Y. 2014) (duplicative conversion claims are "routinely dismissed"); *Peters Griffin*

*Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884 (1st Dep't 1982) ("an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract"); *Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 417 (2d Dep't 1999) ("Since the appellant's conversion counterclaim does not stem from a wrong which is independent of the alleged breach of the mortgage agreements, it was properly dismissed.").

## IV.    THE PUNITIVE DAMAGES DEMAND MUST BE DISMISSED

The MSA expressly disclaimed any party's right to seek punitive damages. Dkt. No. 218-4 (MSA) ¶¶ 12.3(a), 19.2(c). Punitive damages waivers are routinely enforced, at least when made, as here, between sophisticated parties. *E.g.*, *Airport Mart Inc. v. Dunkin' Donuts Franchising LLC*, 2019 WL 4413052, at *8 (S.D.N.Y. Sept. 16, 2019) ("Explicit waivers of punitive . . . damages . . . are routinely upheld" (collecting cases)); *see also* Nolasco Decl. ¶¶ 27-28. Because the Trespass Claim is simply a relabeled attempt to enforce a contractual right against an alleged alter ego of the contracting defendants, the punitive damages demand necessarily fails. *See United States v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 162 (2d Cir. 1996) ("we do not think that the restrictions upon damages for breach of contract claims can be avoided merely by recasting the breach as a tort." (citing *Clark-Fitzpatrick*, 70 N.Y.2d at 389)).

Even wrongly assuming that punitive damages here are not barred by the contractual waiver, punitive damages still would not be available on these allegations. First, the availability of punitive damages here is governed by Philippine law. Punitive damages are generally classified as "conduct-regulating,"[11] and so the court looks to "the law of the jurisdiction where the conduct

---

[11] Because this is the consensus of the District courts in this Circuit, we assume here that this classification is correct. However, to our knowledge, neither the Second Circuit nor the New York Court of Appeals has passed on this issue. Should this motion be denied and should a conflict or potential conflict between Philippine law and New York law on punitive damages emerge, we reserve the right to argue that the availability of punitive damages is properly understood as a loss-allocating rule and/or that the law of the forum should apply.

occurred." *Deutsch v. Novartis Pharm. Corp.*, 723 F. Supp. 2d 521, 524-25 (E.D.N.Y. 2010) (collecting cases); *see also Guidi v. Inter-Cont'l Hotels Corp.*, 2003 WL 1907901, at *3-*4 (S.D.N.Y. April 16, 2003) (looking to Egyptian law on punitive damages because "the tortious conduct occurred primarily . . . in Cairo"); *Saxe v. Thompson Med. Co.*, 1987 WL 7362, at *1 (S.D.N.Y. Feb. 20, 1987) (to the extent punitive damages law varies between two jurisdictions, "the law to be applied is that of the jurisdiction in which the injury-causing conduct occurred."). Here, the conduct occurred in the Philippines. *See* Section I.B. above.

The Philippines would not award punitive damages on the alleged facts underlying the Trespass Claim (even if they otherwise gave rise to liability under Philippine law, which they do not). The relevant standard for awarding punitive damages is high and requires, among other things, "wanton, fraudulent, reckless, oppressive, or malevolent" behavior. Nolasco Decl. ¶ 25 (citing Article 2232 of the Philippine Civil Code). But again, Plaintiff is complaining that the Bloomberry Defendants are availing themselves of their legal rights in the Philippines. And the legal proceedings in the Philippines have thus far been decided in Bloomberry's favor. In fact, in resolving the motion filed by Deutsche Bank seeking clarification, the Philippine courts likewise affirmed the existence and propriety of the injunctive measures that Plaintiff here claims represent a trespass to chattels. Nolasco Decl. ¶ 16 & Exs. 5-7. The Philippine courts would not find Bloomberry's (or Razon's) actions to have been "wanton, fraudulent, reckless, oppressive, or malevolent" when the proceedings that Plaintiff complains of have been decided in Bloomberry's favor. *Id*. ¶¶ 25-26.

To the extent Plaintiff's complaint is that even since the Final Award, Bloomberry continues to renew the injunctions rather than cooperate in releasing the shares, again, arbitral awards in the Philippines are not self-executing (Plaintiff has not sought to confirm the awards in the

Philippines), *id*. ¶ 16, and Bloomberry is entitled to avail itself of its legal options in the Philippines. The Philippine courts would not classify that as "wanton, fraudulent, reckless, oppressive, or malevolent" behavior. Nolasco Decl. ¶ 26.

The result would be the same even if this Court were to apply New York law. In New York, where a lawsuit "has its genesis in the contractual relationship between the parties," punitive damages are unavailable unless the plaintiff demonstrates "egregious conduct" that is "part of a pattern directed at the public generally." *N.Y.U. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315-16 (1995); *accord Matter of Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 360 (2020). "Courts in this Circuit have largely interpreted [the New York Court of Appeals cases] to stand for the proposition that punitive damages may not be recovered for tort claims arising out of a contractual relationship unless the plaintiff can satisfy the so-called public aim requirement." *Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc.*, 2015 WL 2130537, at *1 (S.D.N.Y. May 6, 2015). In *Starr*, a claim that funds in an account had been converted had the required contractual nexus because the account was created, and the funds deposited in it, pursuant to a contract. *Id*. So too here, the Option Shares allegedly interfered with were issued pursuant to, governed by, and represented consideration exchanged as part of, the parties' contractual relationship – as Plaintiff repeatedly alleges. SAC ¶¶ 53, 57, 58, 60, 77, 80, 105.

Because the Trespass Claim here arises from a contractual relationship, Plaintiff would need to satisfy the public-aim requirement to recover punitive damages in New York. But no "pattern directed at the public generally" is or could be alleged here. Plaintiff is complaining about alleged interference solely with *its own* shares. Punitive damages are unavailable.

## CONCLUSION

Count V of the SAC and the demand for punitive damages should be dismissed, with prejudice.

Dated: April 18, 2022                        WALFISH & FISSELL PLLC
          New York, New York

By:   */s/ Daniel R. Walfish*
          Rachel Penski Fissell
          Daniel R. Walfish
          405 Lexington Ave 8th floor
          New York, NY 10174
          Telephone: 212-672-0521
          dwalfish@walfishfissell.com

          *Attorneys for Defendant Enrique K. Razon, Jr.*