**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

GLOBAL GAMING PHILIPPINES, LLC,

        *Plaintiff*,

    v.

ENRIQUE K. RAZON, JR., BLOOMBERRY RESORTS AND HOTELS, INC., and SURESTE PROPERTIES, INC.,

        *Defendants*.

No. 21-CV-2655 (LGS) (SN)

---

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' RULE 72(a) OBJECTION TO MAGISTRATE JUDGE'S APRIL 18, 2022, ORDER GRANTING PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

Plaintiff Global Gaming Philippines, LLC ("GGAM") respectfully submits this memorandum in opposition to the Objection of Defendants Bloomberry Resorts and Hotels, Inc., and Sureste Properties, Inc. (collectively "Defendants"), to an emergency protective order (Dkt. No. 231) (the "Order").

## I.  INTRODUCTION

Defendants have failed to prove that Judge Netburn abused her discretion by granting a protective order denying deposition discovery related to a debunked and recycled "FCPA Argument" that an arbitration tribunal seated in Singapore ("Tribunal") and the Singapore courts (sitting in primary jurisdiction) have rejected *five times*. Indeed, this Court has previously rejected an effort by Defendants to compel *documentary* discovery on those same issues, holding "the Court is unwilling to allow collateral litigation 'undertaken in a foreign forum by a party to [the] arbitration in an attempt to protect itself from an adverse arbitral award' as it would 'tend seriously to undermine the underlying scheme of the [Federal Arbitration Act] and the New York Convention.'" Order of Mag. J. Netburn, Dkt. No. 155 at 3-4; *objection overruled* Dkt. No. 170. The Court overruled Defendants' objection to that order, stating: "Discovery in this proceeding similarly should be limited 'to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.'" Dkt. No. 170 at 3 (quoting *Beijing Shougang Mining Inv. Co., Ltd. v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021)).

Undeterred, on the eve of depositions of GGAM's witnesses, Defendants pressed for *deposition* discovery regarding their purported "FCPA Argument." Plaintiff sought an emergency protective order. Magistrate Judge Netburn saw the issues in the proper context and issued the Order denying such discovery, based on the reasoning of this Court's prior orders. Dkt. No. 231 (citing Dkt. No. 155 and 170).

1

Unlike the Singapore Courts, this Court sits in *secondary jurisdiction*, with a limited role under the FAA and the New York Convention: to *recognize* and *enforce* a duly issued foreign arbitration award. *See CBF Industria de Gusa v. AMCI Holdings, Inc.*, 850 F.3d 58, 72 (2d Cir. 2017). FAA Section 207 mandates enforcement of a foreign arbitral award unless the court finds one of the limited grounds for refusal or deferral of recognition or enforcement of the award specified in the New York Convention. 9 U.S.C. § 207.

While the FAA and New York Convention allow limited, enumerated defenses, including a "public policy" defense, Defendants have a heavy burden to prove the defense, which is "construed very narrowly and should be applied only where enforcement would violate our 'most basic notions or morality and justice.'" Dkt. No. 155 at 2 (citing *Europcar Italia S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 313, 315 (2d Cir. 1998)); *Telenor Mobile Communs. AS v. Storm LLC*, 584 F.3d 396, 410 (2d Cir. 2009).

Moreover, as a matter of law, Defendants cannot re-litigate issues decided in arbitration. The Second Circuit has emphasized: "courts may not 'revisit or question the fact-finding or the reasoning which produced the award.'" *Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x 8, 11 (2d Cir. 2014).

Defendants fail to prove that the Order does not articulate good cause or make any particularized finding with regard to the desired discovery. Defendants mischaracterize and misstate the facts of what the Tribunal and Singapore courts heard and decide.[1] They also filed

---

[1] Incredibly, Defendants base their claim that they did not have the opportunity to present their defense to the arbitrator on a partisan expert report that they submitted during the arbitration. Their reliance on this report exposes Defendants' strategy as nothing more than an attempt to re-litigate the arbitration—an end expressly contrary to the public policy of the United States under the New York Convention. *See Pagaduan v. Carnival Corp.*, 830 F. App'x 61, 63 (2d Cir. Nov. 25, 2020) ("There is 'well-established federal public policy in favor of arbitration,' and 'improper collateral litigation' may itself 'seriously . . . undermine' national policy.").

2

material that they had not submitted to Judge Netburn, and that material is not properly considered in this context.[2]

The Order cites the Court's two previous orders explaining why document discovery was denied, including the public policy underpinning the FAA. Nothing more was required. Accordingly, Defendants' objection should be overruled.

## II.   FACTUAL BACKGROUND

### A.   Defendants Arbitrated and Lost Their Baseless FCPA Argument.

After issuing a unanimous "Partial Award on Liability" ("Liability Award") holding that Defendants breached the Management Services Agreement ("MSA") with GGAM, the Tribunal held a second phase hearing in which it heard and rejected Defendants' FCPA Argument. *See* Final Award ¶¶ 273-75, 282 (attached as Ex. A). The Tribunal found the alleged evidence of fraud on the Tribunal to be trivial, stating: "even if there had been any concealment, there would have been no prejudice." *Id.* ¶ 282.[3] That is an express factual finding by the Tribunal as to the lack of materiality of Debtor Defendants' FCPA Argument and cannot be second-guessed.

---

[2] Defendants submitted reports of Thomas B. Mason (Dkt. Nos. 246-1 and 246-2) which they did not submit in opposition to Plaintiff's motion for a protective order. Those reports are not properly before the Court. *See Thai Lao Lignite Co. v. Gov't of the Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) ("Rule 72(a) limits a district court's consideration of a magistrate's rulings to whether the decision was clearly erroneous based on the evidence and information before her.").

[3] The Final Award describes the FCPA Findings as follows: "At the outset, the Tribunal observes that the FCPA Findings were made in relation to a different entity (i.e., LVS), and not in relation to GGAM. Moreover, they do not on their face name either Mr. Weidner or Mr. Chiu, although their identities seem to be conceded by Claimants. Further, the most that the FCPA Findings could mean is that the US DOJ and SEC have come to certain conclusions about the actions of certain persons (who have not apparently been given an opportunity to personally answer the allegations against them by those authorities). Moreover, the FCPA Findings, while raising questions, do not appear on their face to actually find any illegal conduct by those persons, except possibly for LVS to have a sufficient internal monitoring and compliance system in place." Dkt. 125 at 6; Ex. A ¶ 274.

3

**B.    The Singapore Courts Confirmed the Award and Rejected Defendants' "Public Policy" Defense.**

Defendants filed an application in the High Court of Singapore—the court having primary jurisdiction—seeking to set aside or resist enforcement of the Liability Award. *See* Ex. B. In confirming the Liability Award, the High Court admitted into evidence Defendants' alleged new evidence of fraud, Ex. B ¶ 102, and rejected the FCPA Argument, holding that Defendants' "allegations of concealment of information . . . are not made out. In any case, the procedural fraud allegation is short on the materiality requirement ie, *it is not so material that it would have substantially affected the Partial* [i.e., Liability] *Award*." *Id.* ¶ 112 (emphasis added). The High Court also found there to be no basis for Defendants' arguments that GGAM had failed to disclose documents appropriately or otherwise committed fraud. *Id.* ¶¶ 134, 143, 197. The High Court stated: "The plaintiffs' accusations are without basis. There is no concealment of information by either [GGAM counsel] Paul Hastings or GGAM aimed at deceiving the plaintiffs or the Tribunal. . . . There are also no material deficiencies in the GGAM and/or Paul Hastings' document production in the Arbitration." *Id.* ¶ 144. Notably, the High Court recognized that Defendants "arguments that either should have been raised or were indeed raised before the Tribunal, *which are now being camouflaged as grounds of procedural fraud*." *Id.* (emphasis added). The High Court also rejected Defendants' suggestion that the FCPA Findings were evidence of corruption in the performance of the MSA and operation of Solaire. *Id.* at ¶¶ 199-201.

Defendants appealed the High Court's judgment to the Singapore Court of Appeal, which affirmed. Ex. D ¶ 73; *see also id.* ¶¶ 53, 72, 98. That judgment is final and should be given preclusive effect here.

Defendants also filed an application in the High Court to set aside the Final Award. Ex. C. They again recycled the rejected FCPA Argument in their challenge to the Final Award. *Id.* ¶¶

4

8(b), 9, 31(b), 32, 71. The High Court dismissed the application, finding that "the Tribunal did consider the FCPA Findings for the purpose of assessing damages," *id.* ¶ 76-77, and that "the Tribunal examined the evidence and held that the FCPA Findings did not permit GGAM's damages to be reduced to nil." *Id.* ¶ 78.

Defendants then appealed the High Court's judgment and, on October 4, 2021, the Court of Appeal affirmed that judgment. Ex. E. In their appeal, Defendants again raised the FCPA Argument, and the Court of Appeal rejected it. *See id.* ¶¶ 153-160. **In issuing the final word of the primary jurisdiction, the Court of Appeal described the Defendants' argument that the Tribunal had refused to consider the FCPA Argument during the remedies phase as "startling," adding: "[t]his, with respect, is a woeful mischaracterization of the Tribunal's reasoning in the Remedies Award."** *Id.* ¶ 157 (emphasis added). The Court of Appeal further found that "the Tribunal expressly considered the FCPA Findings and other documents." *Id.* ¶ 158. That judgment is final, and should be given preclusive effect in this Court.

### III. ARGUMENT

#### A. Defendants Have Not Shown Magistrate Judge Netburn Abused Her Discretion in Denying the Motion to Compel.

##### 1. Standard of Review

A magistrate judge's ruling on a non-dispositive matter, including a discovery dispute, may be set aside only if the district court determines the ruling to be "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(b); *Thai Lao Lignite (Thail.) Co. v. Govt. of the Lao People*, 924 F. Supp. 2d 508, 511 (S.D.N.Y. 2013). Under this highly deferential standard, magistrate judges "are afforded broad discretion in resolving non-dispositive disputes and reversal is appropriate only if their discretion is abused." *Id*. (emphasis added); *Soroof Trading Dev. Co. Ltd. v. GE Microgen Inc*., No. 10-cv-01391 (LGS), 2014 WL 4058061 at *4 (S.D.N.Y. Aug. 14,

5

2014). The fact that reasonable minds may differ on the wisdom of the Magistrate Judge's denial of the requested discovery is not sufficient to overturn the Order. *See, e.g., id*. at *2. A party "seeking to overturn a magistrate judge's decision thus carries a heavy burden." *Id*.

Here, the Order incorporated by reference the analysis in two prior orders regarding the same FCPA Arguments that Defendants hope to revive. Defendants fail to prove that Judge Netburn abused her discretion.

### 2. Defendants Have Not Met Their Burden to Show that Discovery is Appropriate.

As Judge Netburn noted in her order denying Defendants' motion to compel, "[a]lthough a 'public policy' defense to enforcement is permitted by . . . the New York Convention, Defendants have a heavy burden to prove the defense, which is 'construed very narrowly and should be applied only where enforcement would violate our 'most basic notions of morality or justice.'" Order at 2, Dkt. No. 155 (quoting *Europcar*, 156 F.3d at 315). Here, Defendants have offered only arguments that they lost in the arbitration and in the courts of Singapore and have articulated no basis for a defense that would not consist of merely re-litigating factual issues fully resolved by the arbitration tribunal and Singapore courts.

As the Supreme Court has held, courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987). "The court may not substitute its view for that of the arbitrator nor may it even review the award for clear error. . . . When an arbitrator[] explain[s his] conclusions . . . in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result." *Saint Mary Home, Inc. v. SEIU, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997); *see also Yukos Capital S.A.R.L. v. Samaraneftegaz*, 592 F. App'x

6

8, 11 (2d Cir. 2014) ("[C]ourts may not revisit or question the fact-finding or reasoning which produced the award.") (internal quotes omitted).

Here, Defendants' public policy-based FCPA Argument has already been considered exhaustively and rejected by the arbitration Tribunal, as well as by the reviewing Singapore Courts. On that basis alone, Judge Netburn properly denied Defendants' motion, and her order should be affirmed.[4] In these circumstances, denial of discovery is appropriate. *See Zulworld Shipping Inc. v. Prams Water Shipping Co.*, No. 11 Civ. 7597 BSJ RLE, 2012 WL 2394406 at *2 (S.D.N.Y. June 25, 2012) (denying discovery where into fraud on arbitration where movant failed to make a "clear and convincing" showing of fraud); *objections overruled*, No. 11 CIV. 7597 KBF, 2013 WL 2246913 (S.D.N.Y. May 16, 2013).[5] To hold otherwise and to allow Defendants to re-litigate—again—their discredited theories would upset the "emphatic federal policy" favoring arbitration in international commercial disputes. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 631 (1985); *Pagaduan v. Carnival Corp.*, 830 F. App'x 61, 63 (2d Cir. Nov. 25, 2020) ("[I]mproper collateral litigation may itself seriously . . . undermine national policy.") (internal quotes omitted).[6]

---

[4] As argued previously, the preclusive effect of the Singapore judgments once more provides an alternate basis to affirm Judge Netburn's order. *See* Dkt. No. 168 at 10-11.

[5] Defendants' attempt to brush aside *Zulworld* as only pertaining to the standard for vacatur is unpersuasive at best and misleading at worst. As the court in *Zulworld* stated, "Although the Court is not determining the Petition to Vacate here, the standards articulated above," i.e., clear and convincing evidence of fraud, "guide the analysis of whether allowing for discovery would undermine the benefits of arbitration, namely, 'avoidance of time-consuming and costly litigation.'" *Id.* at *1, quoting *InterChem Asia 2000 v. Oceana Petrochem.*, 373 F. Supp. 2d 340, 340 (S.D.N.Y. 2005).

[6] Defendants' reliance on *Thomas Kinkade Co. v. Hazlewood*, 2007 WL 217384, at *4 (N.D. Cal. Jan. 25, 2007) for the proposition that this Court must satisfy itself that the [A]ward[s] [were] not infected by fraud" is misplaced. The obvious difference between this case and *Kinkade* is that here, unlike in *Kinkade*, the purported fraud was fully presented and rejected multiple times in multiple fora, such that no additional discovery is necessary for the Court to be satisfied that the award was not infected by fraud.

7

### B. Defendants Have Not Shown Judge Netburn's Decision to Be Clearly Erroneous or Contrary to Law.

Defendants argue—erroneously—that Judge Netburn's decision did not find "good cause" for a protective order under Rule 26(c) and did not analyze the scope, relevance, or proportionality of the deposition discovery under Rule 26(c). This is a misguided reading of the Order in isolation. The Order was appropriately issued in summary fashion—referencing two prior decisions in this action—because the Defendants attempt to re-litigate fully resolved arbitration issues had already been addressed by two prior orders rejecting Defendants' motion to compel document discovery regarding the same FCPA Argument. The Order undeniably articulates a rationale meeting the Rule 26(c) criteria for "good cause" to issue the protective order, as does Plaintiff's letter brief requesting it. Dkt. Nos. 155, 226. Moreover, as explained by Plaintiff in its motion for a protective order, Defendants had manufactured a timing emergency by concealing—until the eve of depositions—their intention to take deposition discovery on the FCPA Argument issues. Dkt. No. 226. Defendants' tactics necessitated a ruling on an emergency basis to avoid delaying depositions.

Part of Defendants' argument is based on a mistaken assumption that they are entitled to discovery in an action to enforce an arbitral award. Hence, they argue that Plaintiff "did not acknowledge its burden, let alone endeavor to make any particularized factual showing of harm that would result if its witnesses were not shielded from answering questions about their fraud." Dkt. No. 246 at 5. As noted above, this is not a typical civil proceeding, and the Court does not sit in primary jurisdiction. The FAA mandates enforcement of the Final Award unless Defendants meet their heavy burden to prove a defense that is allowed under the New York Convention. Here, Defendants have failed to show that they have a potentially viable defense, because they arbitrated and lost the issues underlying their purported public policy defense. It is Defendants, therefore, who have failed to meet their burden.

In any event, Plaintiff did describe its burden in its motion, stating: "Defendants' late-revealed position would vastly expand the scope of the depositions (to cover topics already previously litigated to exhaustion in Singapore) and force an *unnecessary and undue burden* on Plaintiff to prepare its witnesses for re-litigation of these irrelevant topics on short notice." Dkt. No. 226 at 5 (emphasis added). This kind of pointless and protracted investigation of matters *already settled in the arbitration* is clearly not the procedure contemplated by the FAA and the New York Convention.

Defendants wrongly suggest that there is some imbalance in discovery taken by Plaintiff and the limitations imposed on Defendants. Dkt. No. 246 at 2. To support this argument, Defendants rely on what they characterize as "sweeping" discovery directed at Plaintiff's claims against other defendants. *Id.* This argument is misleading. This action, as against Defendants, is limited to the summary recognition and enforcement proceeding, but Plaintiff has filed distinct claims against Defendant Enrique K. Razon, Jr., for alter ego liability and trespass to chattels. Plaintiff previously maintained alter ego claims against other defendants who have since been dismissed. The alter ego and trespass claims are inherently factual and necessitated discovery. However, the Defendants who filed the instant objection to the Order are not parties to those claims and do not seek discovery to address any of Plaintiff's alter ego or trespass claims. They seek to delay enforcement of a foreign arbitral award by re-litigating a fraud defense that has been soundly and repeatedly rejected.

The Order adopted the well-reasoned and affirmed rationale of the Court's prior orders (Dkt. No. 155 and 170). Defendants' argument is form over function in the extreme. Accordingly, Defendants' objection should be overruled.

| | |
|---|---|
| Dated: May 13, 2022<br>New York, New York | Respectfully submitted,<br><br>MINTZ, LEVIN, COHN, FERRIS,<br>GLOVSKY AND POPEO, P.C.<br><br>*/s/ Kevin N. Ainsworth*<br>Jason P.W. Halperin<br>Daniel T. Pascucci<br>Joseph R. Dunn<br>Kevin N. Ainsworth<br><br>666 Third Avenue<br>New York, NY 10017<br>T: (212) 935-3000<br>F: (212) 983-3115<br>jhalperin@mintz.com<br>dtpascucci@mintz.com<br>jrdunn@mintz.com<br>kainsworth@mintz.com<br><br>*Attorneys for Plaintiff*<br>*Global Gaming Philippines, LLC* |