**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL GAMING PHILIPPINES, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> ENRIQUE K. RAZON, JR.; <br> BLOOMBERRY RESORTS AND HOTELS <br> INC.; AND SURESTE PROPERTIES, INC., <br><br> *Defendants*. | No. 21-CV-2655 (LGS) (SN) |

## <u>FIRST AMENDED ANSWER OF ENRIQUE K. RAZON, JR.</u>

Defendant Enrique K. Razon, Jr., by and through his undersigned counsel, hereby answers

the Second Amended Complaint (the "<u>Complaint</u>") of Plaintiff Global Gaming Philippines, LLC

("<u>Plaintiff</u>" or "<u>GGP</u>") as follows:[1]

1.      Denies the allegations in Paragraph 1 of the Complaint, except admits that Plaintiff

brings this action against Bloomberry Resorts and Hotels Inc. ("<u>BRHI</u>") and Sureste Properties

Inc. ("<u>SPI</u>" and together with BRHI, the "<u>Bloomberry Defendants</u>" or "<u>Debtor Defendants</u>") and

Razon.

2.      Denies the allegations in Paragraph 2 of the Complaint, except admits that Razon

is a Philippine national.

3.      Denies the allegations in Paragraph 3 of the Complaint.

---

[1] This Answer is being filed at this time in light of the concerns regarding efficiency expressed by Judge Netburn (Dkt. No. 224) but is not intended to withdraw or otherwise waive any of Razon's defenses, including the defenses set forth in his pending motion to dismiss Count V pursuant to Rule 12(b)(6) (ECF No. 232). Razon denies all allegations in the Complaint not expressly admitted herein. In addition, the Complaint contains headings and subheadings. Razon does not admit that the Complaint's headings or subheadings are accurate or appropriate for any purpose and, to the extent that any heading or subheading can be read to contain factual allegations, Razon denies each of them.

4.      Denies the allegations in Paragraph 4 of the Complaint, except admits that (i) Solaire opened to the public in March 2013, and (ii) Solaire turned a profit in 2013-2019.

5.      Denies the allegations in Paragraph 5 of the Complaint, except admits that the Bloomberry Defendants terminated the Management Services Agreement ("MSA") in September 2013.

6.      Denies the allegations in Paragraph 6 of the Complaint and respectfully refers the Court to the arbitral tribunal's (i) Order in Respect of Claimants' Interim Measures Application, dated December 9, 2014 (the "Interim Measures Award"); (ii) Partial Award on Liability, dated September 20, 2016 (the "Liability Award"); and (iii) Final Award, dated September 27, 2019 (the "Final Award"), for the complete and accurate statement of their contents.

7.      Denies the allegations in Paragraph 7 of the Complaint, and respectfully refers the Court to the MSA and the applicable judicial rulings in Singapore for a complete and accurate statement of their contents.

8.      Denies the allegations in Paragraph 8 of the Complaint, except lacks knowledge or information sufficient to form a belief as to whether GGP conducted an "investigation" and if so, whether it was "extensive."

9.      Denies the allegations in Paragraph 9 of the Complaint.

10.     Denies the allegations in Paragraph 10 of the Complaint, except admits that GGP has brought this action against the Bloomberry Defendants and Razon and presently asserts such claims as are stated in the Complaint.

11.     Lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 11 of the Complaint.

12.     Denies the allegations in Paragraph 12, except admits that Razon is a Philippine national.

13.     Denies the allegations in Paragraph 13 of the Complaint, except admits that (i) BRHI is a company organized under the laws of the Republic of the Philippines, with its headquarters located at The Executive Offices, Solaire Resort and Casino, 1 Asean Avenue, Entertainment City, Tambo, Parañaque City, Philippines, (ii) BRHI owns and operates the casino at Solaire in Manila and holds the gaming license issued by PAGCOR, the Philippine gaming authority, and (iii) BRHI is a wholly-owned subsidiary of SPI.

14.     Denies the allegations in Paragraph 14 of the Complaint, except admits that (i) SPI is a company organized under the laws of the Republic of the Philippines, with its headquarters located at The Executive Offices, Solaire Resort and Casino, 1 Asean Avenue, Entertainment City, Tambo, Parañaque City, Philippines, (ii) SPI owns and operates the real property, hotel, and restaurant operations of Solaire, and (iii) SPI is owned by BRHI (9.34%) and Bloomberry Resorts Corporation ("BRC") (90.66%).

15.     Denies the allegations in Paragraph 15 of the Complaint, except admits that Collingwood Investment Company Limited ("Collingwood Cayman") is an exempted company incorporated in the Cayman Islands with limited liability, that Razon is sole director of Collingwood Cayman, and that Collingwood Cayman wholly owns Collingwood Oil & Gas Holdings, LLC ("Collingwood Holdings") and Asia Arrow Limited ("Asia Arrow").

16.     Denies the allegations in Paragraph 16 of the Complaint, except admits that Collingwood Holdings is a limited liability company formed under the laws of Delaware, with its principal place of business in Harris County, Texas, that Collingwood Holdings is a wholly-owned subsidiary of Collingwood Cayman, that Collingwood Holdings was formed in 2016, and that

Collingwood USA, Inc. ("CUSA") and Collingwood Brookshire USA, Inc. ("CBUSA") had acquired energy holdings in the United States.

17.     Denies the allegations in Paragraph 17 of the Complaint, except admits that CUSA is a corporation organized under the laws of Delaware, with its principal place of business in Harris County, Texas, that CUSA is a wholly-owned subsidiary of Collingwood Holdings, that Razon serves as the President of CUSA, that Jose Eduardo Alarilla is a Director of CUSA, and that Alarilla is Vice Chairman of BRC and President of SPI.

18.     Denies the allegations in Paragraph 18 of the Complaint, except admits that CBUSA is a corporation organized under the laws of Delaware, with its principal place of business in Harris County, Texas, that CBUSA a wholly-owned subsidiary of Collingwood Holdings, that Razon serves as the President of CBUSA, and that Jose Eduardo Alarilla is a Director of CBUSA.

19.     Admits the allegations in paragraph 19 of the Complaint.

20.     Paragraph 20 of the Complaint requires no response as it only sets forth definitions, not allegations.

21.     Denies the allegations in paragraph 21 and the chart, except admits that the corporate ownership chart is accurate as to The Collingwood Trust's ownership of Collingwood Cayman, Collingwood Cayman's ownership of Collingwood Holdings, Collingwood Holding's ownership of CBUSA and of CUSA, CUSA's ownership of Collingwood Appalachian Minerals, LLC ("CAM"), and CAM's ownership of Collingwood Appalachian Minerals I, LLC, Collingwood Appalachian Minerals II, LLC, and Collingwood Appalachian Minerals III, LLC.

22.     Denies the allegations in paragraph 22, except admits that Asia Arrow was formed under the laws of the British Virgin Islands, that Asia Arrow is a wholly-owned subsidiary of

Collingwood Cayman, and that Asia Arrow owns a residence at 768 Fifth Avenue (the Plaza), Unit 2001, New York, New York.

23.     Denies the allegations in paragraph 23, except admits that Rizolina LLC ("Rizolina") is a limited liability company organized in New York with its principal place of business located in New York, New York, that Felicia S. Razon is the sole member of Rizolina, that Medel Payumo is the registered agent for Rizolina, and that Rizolina owns the real property consisting of Unit PH1-G at 211 East 13th Street, New York, New York.

24.     Denies the allegations in paragraph 24, except admits that Ensara LLC ("Ensara") is a limited liability company organized in New York with its principal place of business located in New York, New York, that Felicia S. Razon is the sole member of Ensara, that Medel Payumo is the registered agent for Ensara, and that Ensara owns the real property consisting of 211 East 13th Street #6A, New York, New York.

25.     Denies the allegations in paragraph 25, except admits that Nozar LLC ("Nozar") is a limited liability company organized in New York with its principal place of business located in New York, New York, that Felicia S. Razon is the sole member of Nozar, that Medel Payumo is the registered agent for Nozar, and that Nozar owns the real property consisting of Unit 28D in the building known as Ralph Walker Tribeca at 100 Barclay, located at 100 Barclay Street, New York, New York.

26.     Denies the allegations in paragraph 26, except admits that Bowery Bay LLC ("Bowery Bay") is a limited liability company organized in New York with its principal place of business located in New York, New York, that Felicia S. Razon is the sole member of Bowery Bay, that Medel Payumo is the registered agent for Bowery Bay, and that Bowery Bay owns real property consisting of Unit PHB of 21-30 44th Drive, Queens, New York.

27.     Denies the allegations in paragraph 27, except admits that Campanilla LLC ("Campanilla") is a limited liability company organized in New York with its principal place of business located in New York, New York, that Felicia S. Razon is the sole member of Campanilla, that Medel Payumo is the registered agent for Campanilla, and that Campanilla owns real property consisting of Unit PHJ of 21-30 44th Drive, Queens, New York.

28.     Denies the allegations in paragraph 28, except admits that Fesara LLC ("Fesara") is a limited liability company organized in New York with its principal place of business located in New York, New York, that the members of Fesara are Felicia S. Razon, Katrina S. Razon, and Enrique S. Razon IV, that Medel Payumo is the registered agent for Fesara, and that Fesara owns real property located at 44 Carmine Street, New York, New York.

29.     Denies the allegations in paragraph 29, except admits that 11 Essex Realty LLC ("11 Essex") is a limited liability company organized in New York with its principal place of business located in New York, New York, that the members of 11 Essex are Felicia S. Razon, Katrina S. Razon, and Enrique S. Razon IV, that Medel Payumo is the registered agent for 11 Essex, and that 11 Essex owns real property located at 11 Essex Street, New York, New York.

30.     Paragraph 30 of the Complaint requires no response as it only sets forth definitions, not allegations.

31.     Paragraph 31 of the Complaint states legal conclusions to which no response is required.

32.     Denies the allegations in Paragraph 32 of the Complaint, except admits that Forbes listed Razon as the second-wealthiest individual billionaire in the Philippines in 2021.

33. Denies the allegations in Paragraph 33 of the Complaint, except admits that Razon's grandfather founded a port management business in or around 1916 and that Razon's father, Enrique M. Razon, Sr., rebuilt the business after World War II.

34. Denies the allegations in Paragraph 34 of the Complaint.

35. Denies the allegations in Paragraph 35 of the Complaint.

36. Denies the allegations in Paragraph 36 of the Complaint, and respectfully refers the Court to the *Wall Street Journal* article from 2014 for the complete and accurate statement of its contents.

37. Denies the allegations in Paragraph 37 of the Complaint, except admits that the Bloomberry Defendants' assets are located only in the Philippines.

38. Denies the allegations in the first sentence of paragraph 38 of the Complaint, and admits the allegations in the last two sentences of Paragraph 38 of the Complaint.

39. Denies the allegations in Paragraph 39 of the Complaint, except admits that Razon is Chairman and CEO of BRC and Chairman of certain of its subsidiaries.

40. Denies the allegations in Paragraph 40 of the Complaint.

41. Admits the allegations in Paragraph 41 of the Complaint.

42. Admits the first sentence of paragraph 42 of the Complaint, and lacks knowledge or information sufficient to form a belief as to the truth of the second sentence, except admits that the Philippines has favorable regulatory and gaming tax regimes, complemented by relatively low costs and a high-quality workforce, and otherwise.

43. Denies the allegations in Paragraph 43 of the Complaint.

44. Denies the allegations in Paragraph 44 of the Complaint.

45.     Denies the allegations in Paragraph 45 of the Complaint, except admits that the Bloomberry Defendants sought to engage top-level consultants and executives with relevant expertise in the gaming industry.

46.     Denies the allegations in Paragraph 46 of the Complaint, except admits that BRHI engaged Nevada-based Steelman Partners, LLP, the same company that designed JW Marriott (Las Vegas), The Plaza Hotel and Casino (Las Vegas), Harrah's Atlantic City (New Jersey), MGM Foxwoods (Connecticut), Sands Macau, and The Four Seasons Macau, to design Solaire, and the Bloomberry Defendants hired Philippines-based contractors Design Coordinates, Inc. and D.M. Consunji, Inc. to oversee Solaire's construction.

47.     Denies the allegations in Paragraph 47 of the Complaint, except admits that the Bloomberry Defendants entered into the MSA with GGP, and respectfully refers the Court to the MSA for the complete and accurate contents thereof.

48.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint.

49.     Denies the allegations in Paragraph 49 of the Complaint, except admits that BRHI retained SpencerStuart to identify a Chief Operating Officer for Solaire.

50.     Denies the allegations in Paragraph 50 of the Complaint, except admits that Razon met with Mr. Weidner and Mr. Saunders in Las Vegas in March 2011 to discuss Solaire.

51.     Denies the allegations in Paragraph 51 of the Complaint.

52.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint concerning Global Gaming's "extensive diligence," and denies the remaining allegations in Paragraph 52, except admits that (i) after the initial meeting between Razon, Saunders, and Weidner, certain parties began communicating regarding the

economic and operational terms under which GGP and/or Global Gaming Asset Management, L.P. (together "GGAM") would manage Solaire and the management fees and equity interest GGAM would receive as compensation for such management, and (ii) certain parties executed the Confidentiality Agreement, effective as of March 1, 2011, and respectfully refers the Court to the Confidentiality Agreement for the complete and accurate terms thereof.

53.     Denies the allegations in Paragraph 53 of the Complaint, except admits that (i) certain parties communicated about the terms of their contractual relationship over a six-month period, and (ii) GGP was engaged by the Bloomberry Defendants to provide management and technical services in the development and construction of Solaire and to manage the operation of Solaire in exchange for management fees and an equity interest in Solaire.

54.     Denies the allegations in Paragraph 54, except admits that (i) the Bloomberry Defendants sent responses to document requests and diligence checklists by email to Cantor Fitzgerald employees acting on behalf of GGAM, and (ii) Razon had email and/or telephonic communication with Weidner, Occeña, Alarilla, and Tan (none of whom is based in New York) relating to negotiating the GGP relationship during one or more trips that Mr. Razon made to New York in the April-June 2011 time frame (during which he would have stayed at the Plaza residence in Manhattan), and respectfully refers the Court to his flight logs and to the contemporaneous emails for the most accurate reconstruction of his whereabouts and communications.

55.     Denies the allegations in Paragraph 55 of the Complaint, except admits that the Bloomberry Defendants, GGAM, and certain Cantor Fitzgerald employees acting on behalf of GGAM, communicated about the terms of the MSA between June 2011 and September 2011.

56.     Denies the allegations in Paragraph 56 of the Complaint, except admits the existence of the email excerpted, and respectfully refers the Court to that email for the complete and accurate statement of its contents.

57.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint concerning GGAM's and/or Cantor Fitzgerald's view of the importance and/or materiality of the right to participate in any other similar casino projects that Razon might pursue, or of whether and how GGAM "sought to protect" any purported investment into Solaire, and otherwise denies the allegations in Paragraph 57, except admits that by late August and/or early September 2011, the Bloomberry Defendants and GGAM agreed among other things that GGAM would provide services in exchange for management fees and an equity option, and respectfully refers the Court to the MSA for the complete and accurate statement of the terms thereof.

58.     Denies the allegations in Paragraph 58 of the Complaint, except admits that (i) the Bloomberry Defendants and GGP entered into the MSA, and (ii) BRC, GGP, and Prime Metroline Transit Corp. ("Prime") entered into an Equity Option Agreement ("EOA"), to which was annexed a Participation Agreement, and respectfully refers the Court to the MSA, EOA, and Participation Agreement for the complete and accurate terms thereof.

59.     Lacks knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 59, except admits that the MSA was executed on or around September 9, 2011, and respectfully refers the Court to the MSA for the complete and accurate terms thereof.

60.     Denies the allegations in Paragraph 60 of the Complaint, except admits that (i) Razon's December 7, 2014 Declaration submitted in the arbitration contains the language quoted in footnote 7, and (ii) Clause 18.3 of the MSA contains the language quoted in Paragraph 60, and

respectfully refers the Court to Razon's December 7, 2014 Declaration and the MSA for the complete and accurate statement of their contents.

61.     Denies the allegations in Paragraph 61 of the Complaint, and respectfully refers the Court to the MSA for the complete and accurate terms thereof.

62.     Denies the allegations in Paragraph 62 of the Complaint, except admits that (i) BRHI, which holds the provisional gaming license to operate Solaire's gaming operations in the Philippines, and SPI, the parent company of BRHI that owns the hotel and non-gaming components of Solaire, entered into the MSA with GGP, and (ii) Razon executed the MSA as Chairman and CEO of BRHI and SPI.

63.     Denies the allegations in Paragraph 63 of the Complaint, and respectfully refers the Court to the MSA for the complete and accurate terms thereof.

64.     Denies the allegation in the first sentence of Paragraph 64 of the Complaint, lacks knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 64, except admits that (i) certain principals of GGAM had residences in the United States, and (ii) GGAM participated in meetings and conferences in New York and elsewhere in the United States with potential investors in BRC's "top-up offering."

65.     Denies the allegations in Paragraph 65 of the Complaint.

66.     Denies the allegations in Paragraph 66 of the Complaint.

67.     Denies the allegations in Paragraph 67 of the Complaint, except admits that (i) Prime previously owned all of the equity interest in SPI, (ii) BRC was a Philippine corporation, (iii) BRHI was a wholly owned subsidiary of SPI, and (iv) Prime changed its name to Prime Metroline Holdings, Inc. in 2012, and then changed its name to Prime Strategic Holdings, Inc. on or around August 11, 2020.

68.     Denies the allegations in Paragraph 68 of the Complaint, except admits that Occeña has served as an executive officer at ICTSI, a Director and the Treasurer of Prime, the Treasurer of SPI and BRHI, and the Chief Financial Officer and Treasurer of BRC.

69.     Denies the allegations in Paragraph 69 of the Complaint, except admits that Christian Gonzalez, who is Razon's nephew, is an Executive Vice President of ICTSI and a Director of BRC, SPI, and BRHI.

70.     Denies the allegations in Paragraph 70 of the Complaint, except admits that Silverio "Benny" Tan is a Director and Corporate Secretary of Prime, an Assistant Corporate Secretary of ICTSI, the Corporate Secretary of Apex Mining Co., and the Corporate Secretary of BRC, SPI, and BRHI.

71.     Denies the allegations in Paragraph 71 of the Complaint, except admits that (i) Thomas Arasi is currently the President of BRC and BRHI and was the President of SPI, (ii) Donato Almeda is currently a Director of BRC, BRHI and SPI, and (iii) Jose Eduardo Alarilla is currently a Director of BRC and BRHI and a director of Apex Mining Co.

72.     Denies the allegations in Paragraph 72 of the Complaint, except admits that Razon serves as the Chairman and CEO of BRC and as the Chairman of SPI and BRHI.

73.     Denies the allegations in Paragraph 73 of the Complaint, except admits that (i) on September 30, 2011, the SPI shares were transferred to Prime, and (ii) on February 6, 2012, BRC acquired Prime's shares in SPI.

74.     Denies the allegations in Paragraph 74 of the Complaint.

75.     Denies the allegations in Paragraph 75 of the Complaint, except admits that (i) Clause 18.3 of the MSA stated that "[t]he parties shall execute a mutually acceptable Option Agreement to embody the share purchase option," and respectfully refers the Court to the MSA

for the complete and accurate terms thereof, and (ii) the Bloomberry Defendants, GGAM, and certain Cantor Fitzgerald employees acting on behalf of GGAM communicated about the terms of the EOA and the Participation Agreement annexed thereto prior to the EOA being executed on April 16, 2012.

76. Denies the allegations in Paragraph 76 of the Complaint, except admits that (i) on February 6, 2012 BRC acquired Prime's shares in SPI, (ii) the new BRC shares were listed on the PSE on March 9, 2012, completing the "backdoor listing," and (iii) BRC shares are traded under the symbol BLOOM:PM.

77. Denies the allegations in Paragraph 77 of the Complaint, except admits that on April 16, 2012, GGP, Prime, and BRC entered into the EOA, and respectfully refers the Court to the EOA and MSA for the complete and accurate terms thereof.

78. Denies the allegations in Paragraph 78 of the Complaint, and respectfully refers the Court to the MSA, EOA, and Participation Agreement for the complete and accurate terms thereof.

79. Denies the allegations in Paragraph 79 of the Complaint, except admits that Alarilla executed the EOA on behalf of Prime and BRC, and respectfully refers the Court to the EOA for the complete and accurate terms thereof.

80. Denies the allegations in Paragraph 80 of the Complaint, and respectfully refers the Court to the EOA and Participation Agreement for the complete and accurate terms thereof.

81. Denies the allegations in Paragraph 81 of the Complaint, except admits that Occeña executed the Participation Agreement on behalf of BRC and Prime, and respectfully refers the Court to the Participation Agreement, which is annexed to the EOA, for the complete and accurate terms thereof.

82.     Denies the allegations in Paragraph 82 of the Complaint, except admits that (i) certain principals of GGAM participated in a "road show" in April and May 2012 to meet with potential investors in advance of a "top-up" equity offering, (ii) the road show began in Washington, D.C. and included presentations in New York, San Francisco, Boston, Kansas City, Denver, Asia, and the United Kingdom, and (iii) the road show presentations were attended by Razon, Occeña, other executives of the Bloomberry Defendants, and/or certain principals of GGAM.

83.     Deny the allegations in Paragraph 83 of the Complaint, except (i) admit that GGP, Prime, BRC, Falcon Investco Holdings, Inc., and Quasar Holdings, Inc. executed lock-up agreements in connection with the top-up offering, and respectfully refer the Court to those agreements, as well as the placing agreement executed by BRC, for the complete and accurate terms thereof, and (ii) as to footnote 14, state that Razon lacks knowledge and information sufficient to form a belief as to why New York law was selected for the lock-up agreement form that the various companies were asked to sign..

84.     Denies the allegations in Paragraph 84 of the Complaint, except admits that (i) on May 1, 2012, Razon, Weidner and Saunders attended road show meetings with potential investors in New York City, and (ii) a dinner was held in Manhattan on May 1, 2012.

85.     Denies the allegations in Paragraph 85 of the Complaint, and further notes, for clarification, that the Gulfstream jet N818KE, which Razon used in the March 2011 to approximately February 2013 time period and which in that time period made approximately 25 flights to Teterboro, New Jersey (a number of them without Mr. Razon or his family members on board), was not BRHI's jet during that period of time.

86. Lacks knowledge and information sufficient to form a belief regarding the truth of the allegations in the last sentence of Paragraph 86 of the Complaint, and otherwise denies the allegations in Paragraph 86, except admits that (i) Razon's December 7, 2014 Declaration submitted in the arbitration contains the language quoted in Paragraph 86, and respectfully refers the Court to that Declaration for the complete and accurate statement of its contents, and (ii) the top-up offering closed on May 3, 2012, at PHP 7.50 per share, and raised more than $209 million.

87. Denies the allegations in the first three sentences of Paragraph 87 as they relate to Razon, and otherwise lacks knowledge and information sufficient to form a belief as to their truth; denies the allegations in the last sentence of paragraph 87, and respectfully refers the Court to the applicable audio recording and/or transcript for a complete and accurate statement of their contents.

88. Denies the allegations in Paragraph 88 of the Complaint, and respectfully refers the Court to the excerpted email for the complete and accurate statement of its contents.

89. Denies the allegations in Paragraph 89 of the Complaint, except admits that in June 2012, Forbes Asia published an article stating that Razon's net worth increased from $1.6 billion to $3.6 billion.

90. Denies the allegations in Paragraph 90 of the Complaint, except admits that on or about December 20, 2012, GGP executed an option to purchase shares in BRC for approximately $37.43 million.

91. Denies the allegations in Paragraph 91 of the Complaint, except admit that as of the date this Action was filed, Prime held 53.80% of BRC's common stock, Razon & Co. Inc. (formerly known as Falcon Investco Holdings) held 2.04% of BRC's common stock and Quasar Holdings, Inc. held 8.35% of BRC's common stock.

92.     Denies the allegations in Paragraph 92 of the Complaint, except admits that (i) Solaire held its grand opening on March 16, 2013, and (ii) Solaire opened on time, on budget, and to outstanding reviews.

93.     Denies the allegations in Paragraph 93 of the Complaint.

94.     Denies the allegations in Paragraph 94 of the Complaint, except admits that the language quoted in Paragraph 94 is found in the "Message of Enrique K. Razon for the 2013 Bloomberry Resorts Corp. Shareholders' Meeting," and respectfully refers the Court to that message for the complete and accurate statement of its contents.

95.     Denies the allegations in Paragraph 95 of the Complaint, except admits that a subsidiary of BRC operates a casino in Korea and that another subsidiary of BRC is planning to develop a casino in Japan.

96.     Denies the allegations in Paragraph 96 of the Complaint.

97.     Denies the allegations in Paragraph 97 of the Complaint.

98.     Denies the allegations in Paragraph 98 of the Complaint, except admits that Sicat is the former president of the PSE, the national stock exchange of the Philippines, admits the allegations in footnote 16, and admits that he has a friendly relationship with former President Gloria Macapagal-Arroyo and her husband, Jose Miguel Arroyo.

99.     Denies the allegations in Paragraph 99 of the Complaint, except admits that Razon (i) is the chairman of Pilipinas Golf Tournaments, Inc., which runs the Philippine Golf Tour, (ii) is a donor to De La Salle University's sports program, (iii) donated PHP 50 million to the De La Salle University for the Enrique M. Razon Sports Complex, named after Razon's father, and (iv) is a member of the American Management Association, the U.S.-Philippines Society, and the World Economic Forum.

100.    Denies the allegations in Paragraph 100 of the Complaint, except admits that on July 12, 2013, Razon sent an email to principals of GGAM, and respectfully refers the Court to that email and the Liability Award for the complete and accurate statement of their contents.

101.    Admits the allegation in Paragraph 101 of the Complaint that on July 30, 2013, BRC issued a press release that attributed to Razon a statement that "Solaire has begun to generate profit after only a few months," and respectfully refers to the Court to that press release for the complete and accurate statement of its contents.

102.    Denies the allegations in Paragraph 102 of the Complaint, except admits that on September 12, 2013, the Bloomberry Defendants sent GGAM a formal Notice of Termination of the MSA, and respectfully refers the Court to that notice and to the MSA for the complete and accurate statement of their contents.

103.    Admits the allegations in Paragraph 103 of the Complaint.

104.    Admits that Clause 19.2(b) of the MSA contains the language quoted in Paragraph 104, and respectfully refers the Court to the MSA for the complete and accurate terms thereof.

105.    Denies the allegations in Paragraph 105 of the Complaint, and respectfully refers the Court to GGP's submissions in the arbitration for the complete and accurate statement of GGP's claims and requested relief in the arbitration.

106.    Denies the allegations in Paragraph 106 of the Complaint, except admits that (i) on the date the MSA was terminated, BRC's shares were being traded on the public market between PHP 11.8 and PHP 12.3 per share, which was higher than the price paid for the Option Shares, and (ii) after the MSA was terminated and before the arbitral tribunal was constituted, GGP attempted to sell the Option Shares.

107.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 107.

108.     Denies the allegations in Paragraph 108 of the Complaint, and respectfully refers the Court to (i) the September 13, 2013 *Wall Street Journal* article, and (ii) Razon's December 7, 2014 Declaration submitted in the arbitration for the complete and accurate statement of their contents.

109.     Denies the allegations in Paragraph 109 of the Complaint, except lacks knowledge and information sufficient to form a belief as to whether Sicat, without the knowledge or involvement of Razon, was "receiving compensation" from a third party in connection with transactions associated with Razon and/or the Energy Entities (as defined in the Complaint).

110.     Denies the allegations in Paragraph 110 of the Complaint, except admits that (i) on January 15, 2014, BRC's corporate secretary, Silverio Benny Tan, sent a letter to the PSE requesting a voluntary trading suspension of BRC shares from January 16, 2014 to January 23, 2014, (ii) on January 16, 2014 Plaintiff sent a letter to the PSE to request that the PSE withdraw the suspension, and (iii) on January 17, 2014, the PSE lifted the trading suspension upon Plaintiff's request, and respectfully refers the Court to BRC's letter and GGP's letter to the PSE for the complete and accurate statement of their contents.

111.     Denies the allegations in Paragraph 111 of the Complaint, except admits that (i) on or about January 17, 2014, the Debtor Defendants and Prime filed a petition with the Regional Trial Court in Makati ("RTC") for writs and a temporary restraining order (TRO), and respectfully refer the Court to the January 17, 2014 petition for the complete and accurate statement of its contents, (ii) on January 20, 2014, the RTC granted the TRO, and (iii) on February 27, 2014, the

RTC issued writs of preliminary attachment and preliminary injunction, and respectfully refers the Court to the February 27, 2014 RTC order for the complete and accurate statement of its contents.

112.    Denies the allegations in Paragraph 112 of the Complaint, except admits that as a result of the preliminary writs issued by the RTC, Deutsche Bank transferred the Option Shares to a restricted, non-trading account where they are still held today.

113.    Denies the allegations in paragraph 113 of the Complaint, except admits that (i) the three-member arbitral tribunal was formed on March 28, 2014, and (ii) during the arbitration, the Bloomberry Defendants were represented by a Washington D.C.-based team from the global law firm now named Milbank LLP.

114.    Denies the allegations in Paragraph 114 of the Complaint, except admits that the Final Award was issued on September 27, 2019, and respectfully refers the Court to the Final Award for the complete and accurate statement of its contents.

115.    Denies the allegations in Paragraph 115 of the Complaint, except admits that the arbitral tribunal issued its Interim Measures Award on December 9, 2014, and respectfully refers the Court to the Interim Measures Award for the complete and accurate statement of its contents.

116.    Admits the allegations in Paragraph 116 of the Complaint.

117.    Denies the allegations in Paragraph 117 of the Complaint, except admits that (i) the arbitral tribunal conducted its merits hearing on liability in Singapore from October 15-24, 2015, and (ii) on September 20, 2016, the arbitral tribunal issued the Liability Award, and respectfully refers the Court to the Liability Award for the complete and accurate statement of its contents.

118.    Admits that (i) the arbitral tribunal conducted its hearing on remedies in Washington, D.C., from May 28 – June 1, 2018, (ii) on September 27, 2019, the arbitral tribunal issued the Final Award, and (iii) the Final Award contains substantially the phrase quoted in

Paragraph 118 of the Complaint, and respectfully refers the Court to the Final Award for the complete and accurate statement of its contents.

119.     Denies the allegations in Paragraph 119 of the Complaint, except admits that the Final Award contains the quoted language, and respectfully refers the Court to the Final Award for the complete and accurate statement of its contents.

120.     Denies the allegations in Paragraph 120 of the Complaint, and respectfully refers the Court to the Final Award for the complete and accurate statement of its contents.

121.     Denies the allegations in Paragraph 121 of the Complaint, and respectfully refers the Court to the Final Award for the complete and accurate statement of its contents.

122.     Admits the allegations in Paragraph 122 of the Complaint.

123.     With respect to the allegations in Paragraph 123 of the Complaint, respectfully refers the Court to the applicable filings in and rulings of the Singapore courts for a complete and accurate statement of their contents.

124.     With respect to the allegations in Paragraph 124 of the Complaint, respectfully refers the Court to the applicable filings in and rulings of the Singapore courts for a complete and accurate statement of their contents.

125.     Denies the allegations in Paragraph 125 of the Complaint, except admits that the Bloomberry Defendants have renewed annually the preliminary injunction and preliminary attachment bonds, and respectfully refers the Court to the Interim Measures Award for the complete and accurate statement of its contents.

126.     Denies the allegations in Paragraph 126 of the Complaint, and respectfully refers the Court to the Liability Award for the complete and accurate statement of its contents.

127. Denies the allegations in Paragraph 127 of the Complaint, except admits that (i) on or around November 14, 2016, BRC filed its SEC 17-Q (Quarterly Report) with the PSE, (ii) on March 17, 2017, Plaintiff's counsel sent a letter to Debtor Defendants' counsel, and (iii) on March 27, 2017, Debtor Defendants' counsel sent a letter to Plaintiff's counsel, and respectfully refers the Court to the November 14, 2016 BRC filing, the March 17, 2017 letter, and the March 27, 2017 letter for the complete and accurate statement of their contents.

128. Denies the allegations in Paragraph 128 of the Complaint, except admits that Plaintiff's counsel wrote to Debtor Defendants' counsel on October 10, 2016, March 17, 2017, and April 3, 2017, and respectfully refers the Court to these letters for the complete and accurate statement of their contents.

129. Denies the allegations in Paragraph 129 of the Complaint, except admits that (i) on or around September 28, 2015, Razon and Alarilla, on behalf of the Bloomberry Defendants, met with GGAM's representatives in San Francisco to discuss potential settlement, and (ii) on May 11, 2017, representatives of GGAM and the Debtor Defendants met at Cantor Fitzgerald's New York office to discuss potential settlement.[2]

130. Denies the allegations in Paragraph 130 of the Complaint.

131. Denies the allegations in Paragraph 131 of the Complaint.

---

[2] Razon notes that these were confidential settlement discussions, and that, to the extent paragraph 129 appears to allege that Razon or the Bloomberry Defendants made any purported admission during any of these discussions, any such allegation is denied, and furthermore, Plaintiff appears to have committed a serious and blatant breach of a signed agreement between Plaintiff and the Bloomberry Defendants in which both sides agreed in writing that "all communications" at these meetings "shall be deemed to be confidential and privileged, and shall not be disclosed" and that the parties "shall not discuss, reference or describe" any such communications "in any [] proceeding anywhere in the world."

132.     The second clause of the final sentence of Paragraph 132 states legal conclusions to which no response is required. Razon otherwise denies the allegations in Paragraph 132 of the Complaint, and respectfully refers the Court to BRC's June 1, 2020 Philippine SEC disclosure for the complete and accurate statement of its contents.

133.     Denies the allegations in Paragraph 133 of the Complaint.

134.     Denies the allegations in Paragraph 134 of the Complaint, except admits that BRC's PowerPoint presentation during the "investor road show" contained the "BRC corporate structure" image included in Paragraph 134, and respectfully refers the Court to the PowerPoint presentation for the complete and accurate statement of its contents.

135.     Denies the allegations in Paragraph 135 of the Complaint, except admits that (i) since 2012, Razon directly or indirectly controlled at least 63% of BRC's common stock, and (ii) BRC's "road show" presentation contained the "Overview of Bloomberry Resorts Corporation" image copied in Paragraph 135, and respectfully refers the Court to the PowerPoint presentation for the complete and accurate statement of its contents.

136.     Denies all of the allegations in Paragraph 136 of the Complaint as they relate to Razon, and lacks knowledge or information sufficient to form a belief as to what remarks, if any, Occeña made at "an investor conference in November 2012," and respectfully refers the Court to the applicable audio recording and/or transcript for the complete and accurate statement of their contents.

137.     Denies the allegations in Paragraph 137 of the Complaint.

138.     Denies the allegations in Paragraph 138 of the Complaint, and respectfully refers the Court to the quoted email for the complete and accurate statement of its contents.

139.     Denies the allegations in Paragraph 139 of the Complaint.

140.     Denies the allegations in Paragraph 140, except admits that (i) the email excerpted in Paragraph 140 exists, and respectfully refers the Court to that email for the complete and accurate statement of its contents, (ii) MORE Electric and Power Corp. is an electricity supplier in Iloila City, the Philippines, but it is a different company from Monte Oro Resources & Energy Inc., which on information and belief is the "MORE" referred to in the email, and (iii) Razon's wife had a personal friendship with Rosanna Go before she passed away.

141.     Denies the allegations in Paragraph 141 of the Complaint, except admits that on March 27, 2021, Razon and his family flew from Manila to Newark, New Jersey on the Gulfstream jet N818KE.

142.     Denies Paragraph 142 to the extent it alleges (i) that the Bloomberry Defendants are not "legitimate corporate entities" or are "mere instrumentalities of Razon, acting at the direction and for the sole benefit of Razon, to the unlawful detriment of" any party, or (ii) that Razon understood and intended that GGP would rely on any false premise; and lacks knowledge or information sufficient to form a belief as to (i) what "premise," if any, GGP would or did rely on, and (ii) whether GGP is a "legitimate third party."

143.     Denies the allegations in Paragraph 143 of the Complaint, except lacks knowledge or information sufficient to form a belief as to GGP's "presumption" and "expectation," if any.

144.     Denies the allegations in Paragraph 144.

145.     Denies the allegations in Paragraph 145, except to the extent that (i) any of the allegations were contained in, and admitted in response to, paragraphs 22 through 29, Razon's response to which is hereby incorporated by reference as if fully set forth herein, and (ii) paragraph 145 alleges that Razon and members of his family from time to time stay at the Asia Arrow property, which is admitted, and (iii) Razon refers the Court to the alleged permits listing his name,

if any, for the complete and accurate statement of their contents, and (iv) paragraph 145 alleges how the names "Rizolina", "Ensara", "Nozar", and "Fesara" were derived; while Razon does not dispute these derivations, to the best of his understanding and recollection, it was Razon's wife, not Razon, who came up with them.

146.    Denies the allegations in Paragraph 146.

147.    Denies the allegations in Paragraph 147, except admits that the Real Estate Entities have, at times, received funds from Razon or Collingwood Cayman.

148.    Denies the allegations in Paragraph 148.

149.    Denies the allegations in Paragraph 149, except admits that some of the Energy Entities have acquired mineral rights and oil and gas assets in various regions of the United States.

150.    Denies the allegations in Paragraph 150.

151.    Denies the allegations in Paragraph 151 of the Complaint.

152.    Denies the allegations in Paragraph 152 of the Complaint, except lacks knowledge and information sufficient to form a belief as to whether Sicat, without the knowledge or involvement of Razon, was compensated by a third party for bringing investment opportunities to Razon and/or the Energy Entities.

153.    Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153 of the Complaint, except admits that in or around late 2013 or early 2014, Sicat introduced Razon to Demetri Argyropoulos.

154.    Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 154 of the Complaint.

155.    Denies the allegations in Paragraph 155 of the Complaint, except that, to the extent that paragraph 155 alleges the existence of "a financial arrangement between Argyropoulos and

Sicat," Razon lacks knowledge or information sufficient to form a belief as to the truth of such an allegation.

156.     Denies the allegations in Paragraph 156 of the Complaint, except admits that a January 21, 2014 Forbes Magazine article with the indicated title contains the language quoted in footnote 22, and respectfully refers the Court to the article for the complete and accurate statement of its contents.

157.     Denies the allegations in Paragraph 157 of the Complaint, except (i) admits that Argyropoulos introduced Razon to Ahmad Atwan, who Razon understands to have worked as an investment banker in New York, (ii) admits that Sicat introduced Razon to Argyropoulos, and (iii) lacks knowledge and information sufficient to form a belief as to whether Sicat and/or others at PSE "facilitated additional conference calls and correspondence" as stated in the last sentence of paragraph 157.

158.     Denies the allegations in Paragraph 158 of the Complaint, except (i) admits that Razon began working with Atwan in 2014 to source investment opportunities in the U.S. mineral and oil and gas sectors, (ii) states that the first sentence of footnote 23 appears to be Plaintiff's own inference or characterization based on the fact of the lawsuit, to which no response is required as the lawsuit speaks for itself, and (iii) admits that CUSA and CBUSA brought an action against Atwan in Texas state court, which action remains pending (though not against Atwan), and respectfully refers the Court to the applicable filings in the "Collingwood Litigation" (as defined by the Complaint) and related federal action for the identity of the parties and claims in those cases.

159.     Denies the allegations in Paragraph 159, except admits that (i) Razon made trips to the United States between 2014 and 2017, (ii) Razon met with Atwan and others in New York

City, and (iii) Razon discussed potential investment opportunities sourced by Atwan, which opportunities were in Kentucky, West Virginia, Texas, and other jurisdictions.

160.    Denies the allegations in Paragraph 160 of the Complaint.

161.    Denies the allegations in Paragraph 161 of the Complaint except to the extent consistent with the terms and contents of the agreement between Razon and Source Rock Minerals, LLC ("SRM"), the existence of which Razon admits and to which he respectfully refers the Court for a complete and accurate statement of its terms and contents.

162.    Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162 of the Complaint, except admits that (i) Atwan identified an opportunity to invest in Mesa Appalachian LLC, which owned certain mineral rights; (ii) Razon understands that Mesa Appalachian LLC was owned and/or controlled by T. Boone Pickens, and (iii) a January 21, 2014 Forbes article with the indicated title contained the language quoted in footnote 24, and respectfully refers the Court to the article for the complete and accurate statement of its contents.

163.    Denies the allegations in Paragraph 163 of the Complaint, except states, as to the second sentence, that Razon lacks knowledge as to whether certain personnel who held positions with the Bloomberry Defendants and/or BRC, including Occeña, Festin, and Tan, participated in conference calls with BP Capital Management, LP from the premises of Solaire, and further lacks knowledge that Sicat participated in any such calls.

164.    Denies the allegations in Paragraph 164, except admits that Razon (i) made trips to the United States, (ii) met with Atwan in New York, and (iii) met with Pickens and advisors to BP Capital Management, LP in Dallas to discuss proposed investments

165.    Denies the allegations in Paragraph 165, except admits that (i) in or about October 2014, which was during the pendency of the arbitration, CUSA acquired a minority equity interest in Mesa Appalachian, LLC from Pickens and/or an entity associated with him, (ii) Collingwood Cayman paid the approximately $50 million purchase price for this acquisition, which Collingwood Cayman transferred to the seller from its account at HSBC Hong Kong, (iii) CUSA was formed, with Razon's approval as director Collingwood Cayman, at about this time, (iv) CUSA at that time did not have a bank account or independent operations, and (v) Collingwood Cayman compensated Atwan; Razon lacks knowledge that Argyropoulos received any compensation, much less that Argyropoulos split any compensation he received with Sicat.

166.    Denies the allegations in Paragraph 166, except admits (i) that Razon wished to work with Atwan, not Argyropoulos, (ii) the existence of an agreement to which Source Rock Energy, LLC is party that relates to the sourcing of investments for CUSA or CBUSA by Atwan and that Razon signed, and respectfully refers the Court to that agreement for its contents and terms, and further refers the Court to the applicable court filings for a complete and accurate statement of what the relevant Collingwood entities allege in the Collingwood Litigation.

167.    Denies the allegations in Paragraph 167, except admits that (i) CUSA invested approximately $7 million to acquire certain leasehold interests in Texas, and refers the court to the applicable transaction documents for their contents and terms, and (ii) Collingwood Cayman advanced CUSA the purchase price for this acquisition, which Collingwood Cayman transferred to the seller from its account at HSBC Hong Kong.

168.    Denies the allegations in Paragraph 168, except admits that (i) in March 2016, CUSA purchased certain additional rights in the "DZ1" area from an entity associated with Boone Pickens, (ii) this was a transaction arranged by Atwan, and (iii) Collingwood Cayman advanced

CUSA the $18.75 million purchase price for this acquisition, which Collingwood Cayman transferred to the seller from its account at HSBC Hong Kong.

169. Denies the allegations in Paragraph 169, except admits that (i) CBUSA ultimately invested a total of approximately $25 million in the so-called Salt Dome Project in Waller County, Texas, which began in or around April 2016, (ii) Collingwood Cayman loaned CBUSA the funds for the investments, which Collingwood Cayman transferred from its account at HSBC Hong Kong, and refers the Court to applicable filings in the Collingwood Litigation for a complete and accurate statement of their contents, and (iii) at the inception of the Salt Dome Project, CBUSA did not have its own bank account or independent operations.

170. Denies the allegations in Paragraph 170, except admits (i) that from in or around August 2016 to summer 2017, CUSA invested a total of approximately $30 million in oil and gas assets in Kentucky and/or West Virginia through transactions involving Hay Mineral Resources, LLC ("HMR"), (ii) the existence of a participation agreement to which HMR and CUSA were party and which Razon signed on behalf of CUSA ("HMR Participation Agreement"), and refers the Court to that agreement for its contents and terms, (iii) that after the HMR Participation Agreement was executed, Razon traveled to Kentucky to meet with Monte Hay, who Razon understands to be the principal of HMR and (iv) that Collingwood Cayman advanced CUSA the funds for the investments, which Collingwood Cayman transferred from its account at HSBC Hong Kong.

171. Denies the allegations in Paragraph 171, except admits that Razon and Atwan played golf with Pickens at Augusta National Golf Club in Augusta, Georgia, but does not recall when they did so.

172.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 172 of the Complaint.

173.     Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 173 of the Complaint. Denies the remainder of paragraph 173, except admits that (i) in February 2017, CUSA invested approximately $94 million to purchase the remaining equity interest in Mesa Appalachian from its then-owner(s), including Pickens and/or an entity affiliated with him, and (ii) Collingwood Cayman loaned CUSA the purchase price for this acquisition, which Collingwood Cayman transferred to the sellers from its account at HSBC Hong Kong.

174.     Denies the allegations in paragraph 174, avers that it is not possible to respond to the allegation that CAM "continues to own the mineral rights described above", as "the mineral rights described above" is unclear, but admits that CAM is the same entity as Mesa Appalachian, LLC, and states on information and belief that it has not sold assets since the name change.

175.     Denies the allegations in Paragraph 175.

176.     Denies the allegations in Paragraph 176, except admits the existence of the email excerpted in Paragraph 176 and respectfully refer the Court to the referenced email for a complete and accurate statement of its contents.

177.     Denies the allegations in Paragraph 177, except admits that (i) prior to Collingwood Holdings' formation, CUSA and CBUSA were wholly-owned subsidiaries of Collingwood Cayman, (ii) after December 2016, CUSA and CBUSA were wholly-owned subsidiaries of Collingwood Holdings, (iii) Collingwood Cayman is the parent company of Collingwood Holdings and Asia Arrow, and (iv) Collingwood Cayman paid the purchase prices for investments held in the name of CUSA and CBUSA as an advance to these subsidiaries.

178.     Denies the allegations in paragraph 178 and the chart, except admits that the corporate ownership chart is accurate as to The Collingwood Trust's ownership of Collingwood Cayman, Collingwood Cayman's ownership of Collingwood Holdings, Collingwood Holding's ownership of CBUSA and of CUSA, CUSA's ownership of CAM, and CAM's ownership of Collingwood Appalachian Minerals I, LLC, Collingwood Appalachian Minerals II, LLC, and Collingwood Appalachian Minerals III, LLC.

179.     Denies the allegations in paragraph 179, except lacks knowledge as to what chart, if any, was created and submitted to Citibank for purposes of opening bank accounts in the United States for the Collingwood Appalachian Minerals, LLC entities.

180.     Denies the allegations in Paragraph 180, except admits that (i) Razon at all times has been President of CUSA and CBUSA, and  (iii) Alarilla is a Director of BRC and a director of CUSA and CBUSA.

181.     Denies the allegations in Paragraph 181, except admits the existence of the email excerpted in Paragraph 181, and respectfully refers the Court to that email for the complete and accurate statement of its contents.

182.     Denies the allegations in Paragraph 182.

183.     Denies the allegations in Paragraph 183, except admits that (i) Arnold Rivas is BRC's Vice President for Administration, Gerard "Bing" Festin is BRC's Vice President for Controllership, Fritz Lacap is BRC's Vice President for Business Development and Corporate Planning, Silverio "Benny" Tan is BRC's Corporate Secretary and Compliance Officer, but notes they are not employees of the Bloomberry Defendants, (ii) Occeña is Treasurer of the Bloomberry Defendants, (iii) the initial signatories for CUSA's and CBUSA's bank accounts were Razon, Occeña, Alarilla, Festin, and Rivas, (iv) Tan has been identified as a person to whom CUSA-

related notices should be sent and was so identified in the HMR Participation Agreement and (v) Occeña, Razon, and others met with Atwan in New York to discuss energy investments.

184.    Denies the allegations in Paragraph 184, except lacks knowledge as to whether Robert Hadlow is an accountant by profession, and admits that (i) Collingwood Holdings, CUSA, and CBUSA first acquired physical office space in March 2018, (ii) the operations of those entities were ultimately overseen by Razon (acting in his capacity as a duly authorized director and/or officer of those entities and/or Collingwood Cayman), and (iii) Robert Hadlow works for Collingwood Holdings and its subsidiaries.

185.    Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 185 regarding any process that was or was not undertaken by J.P. Morgan and any requirement that the bank did or did not have, denies that CUSA did not have an address in the United States, and admits the existence of the email excerpted in Paragraph 185, to which Razon respectfully refers the Court for the complete and accurate statement of its contents.

186.    Denies the allegations in Paragraph 186, except admits that Razon, in his capacity as a duly authorized officer and/or director of CUSA, at one point signed a W-9 for CUSA that listed its address as 242 E. 38th Street Suite 6A, New York, New York.

187.    Denies the allegations in Paragraph 187, except admits that Razon has held a meeting in a Plaza conference room and elsewhere in New York to discuss potential energy investments.

188.    Denies the allegations in Paragraph 188, except admits the existence of the chart copied in Paragraph 188, and respectfully refers the Court to the chart for its complete contents.

189.    Denies the allegations in Paragraph 189, except admits (i) that CUSA and CBUSA first opened bank accounts in the U.S. in 2016, (ii) that Collingwood Cayman made payments on

behalf of CUSA and CBUSA, and (iii) the existence of the email excerpted in Paragraph 189, and respectfully refers the Court to the email for the complete and accurate statement of its contents.

190.     Denies the allegations in Paragraph 190, except admits that the initial signatories for CUSA's and CBUSA's new Citibank accounts were Razon, Occeña, Alarilla, Festin, and Rivas.

191.     Denies the allegations in Paragraph 191, except admits that Razon has personally met with Atwan and with most of the potential sellers and partners and/or their principals for the energy-related transactions referred to in the Complaint, and that these meetings occurred in the United States.

192.     Denies the allegations in Paragraph 192, except admits that in September 2019, CUSA and CBUSA commenced suit against Atwan and Pathhead Capital, Inc., among others, which suit remains pending (but not as to Atwan) in the 116th District Court in Dallas County, Texas, and respectfully refers the Court to the complaint and other filings in that action for a complete and accurate statement of the claims asserted there and the contents of the other filings referred to in Paragraph 192.

193.     Denies the allegations in paragraph 193.

194.     In response to Paragraph 194 of the Complaint, Razon repeats and realleges his answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

195.     Paragraph 195 of the Complaint states legal conclusions to which no response is required.

196.     Paragraph 196 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Razon admits that (i) the Liability Award and Final

Award were issued by a three-member arbitral tribunal seated in Singapore, and (ii) Singapore is a contracting state to the New York Convention.

197.    Admits that copies of the Final Award, Liability Award, Interim Measures Award, and the MSA are attached to the Complaint as Appendices 1, 2, 3, and 4, respectively, and respectfully refers the Court to these Appendices for a complete and accurate statement of their respective contents.

198.    Admits that Clause 19.2 of the MSA contains the language quoted in Paragraph 198, and respectfully refers the Court to the MSA for the complete and accurate terms thereof.

199.    Denies the allegations in Paragraph 199 of the Complaint, except admits that the Final Award was issued on September 27, 2019, and respectfully refers the Court to the Final Award for the complete and accurate statement of its contents.

200.    Paragraph 200 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 200.

201.    Paragraph 201 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 201.

202.    Paragraph 202 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 202.

203.    Paragraph 203 states legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 203.

204.    In response to Paragraph 204, Razon repeats and realleges his answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

205.    Denies the allegations in Paragraph 205 of the Complaint.

206.    Paragraph 206 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 206.

207.    Denies the allegations in Paragraph 207 of the Complaint.

208.    Paragraph 208 of the Complaint is a prayer for relief to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 208.

209.    Paragraph 209 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 209.

210.    Paragraph 210 of the Complaint is a prayer for relief to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 210.

211.    Denies the allegations in Paragraph 211 of the Complaint and notes that all claims against the Energy Entities and the Real Estate Entities have been dismissed.

212.    Paragraph 212 of the Complaint is a prayer for relief to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 212.

213.    In response to Paragraph 213, Razon repeats and realleges his answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

214.    Paragraph 214 sets forth legal conclusions; to the extent any response is required, Razon denies the allegations and assertions in Paragraph 214.

215.    Razon denies the allegations in the first sentence of Paragraph 215. The last sentence of Paragraph 15 states legal conclusions to which no response is required; to the extent a response is required, Razon denies the allegations and assertions in this sentence, and notes that all claims against the Energy Entities and the Real Estate Entities have been dismissed.

216.    Denies the allegations in Paragraph 216.

217.    Paragraph 217 of the Complaint is a prayer for relief only to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 217 and notes that all claims against the Energy Entities and the Real Estate Entities have been dismissed.

218.    Paragraph 218 of the Complaint is a prayer for relief to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 218.

219.    Paragraph 219 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 219.

220.    Paragraph 220 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 220.

221.    Paragraph 221 of the Complaint is a prayer for relief to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 221.

222.     In response to Paragraph 222, Razon repeats and realleges his answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

223.     Paragraph 223 of the Complaint is asserted against the Bloomberry Defendants only and therefore no response from Razon is required. To the extent a response is required, this paragraph states a legal conclusions to which no response is required.

224.     Paragraph 224 of the Complaint is asserted against the Bloomberry Defendants only and therefore no response from Razon is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 224 of the Complaint.

225.     Paragraph 225 of the Complaint is asserted against the Bloomberry Defendants only and therefore no response from Razon is required. To the extent a response is required, Razon denies the allegations in Paragraph 225 of the Complaint.

226.     Paragraph 226 of the Complaint is asserted against the Bloomberry Defendants only and contains a prayer for relief only; therefore no response from Razon is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 226.

227.     Paragraph 227 of the Complaint is asserted against the Bloomberry Defendants only and contains a prayer for relief only; therefore no response from Razon is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 227.

228.     Paragraph 228 of the Complaint is asserted against the Bloomberry Defendants only and states legal conclusions; therefore no response from Razon is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 228.

229.     Paragraph 229 of the Complaint is asserted against the Bloomberry Defendants only and states legal conclusions; therefore no response from Razon is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 229.

230. Paragraph 230 of the Complaint is asserted against the Bloomberry Defendants only and contains a prayer for relief only; therefore no response from Razon is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 230.

231. In response to paragraph 231, Razon repeats and realleges his answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

232. Paragraph 232 of the Complaint contains legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations in Paragraph 232.

233. Denies the allegations in Paragraph 233, except admits that (i) Plaintiff purchased the Option Shares from Prime in December 2012 pursuant to the EOA, and (ii) the MSA was terminated in September 2013.

234. Denies the allegations in Paragraph 234.

235. Denies the allegations in Paragraph 235.

236. Denies the allegations in the first and third sentences of Paragraph 236, and lacks knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of Paragraph 236.

237. Denies the allegations in Paragraph 237, except admits that on January 15, 2014, BRC's corporate secretary, Silverio Benny Tan, sent a letter to the PSE requesting a voluntary trading suspension of BRC shares from January 16, 2014 to January 23, 2014, and respectfully refers the Court to that letter for the complete and accurate statement of its contents.

238. Denies the allegations in Paragraph 238, except admits that (i) on January 16, 2014 Plaintiff sent a letter to the PSE to request that the PSE withdraw the suspension of the trading of BRC shares, and (ii) on January 17, 2014, the PSE lifted the suspension upon Plaintiff's request.

239. Denies the allegations in Paragraph 239, except admits that (i) the arbitral tribunal was not yet constituted by January 17, 2014, (ii) on or about January 17, 2014, the Bloomberry Defendants and Prime filed a petition with the RTC for a TRO, (iii) on January 20, 2014, the RTC granted the TRO, (iv) on February 27, 2014, after several days of hearings, the RTC issued writs of preliminary attachment and preliminary injunction, and (v) Deutsche Bank, the custodian of the Option Shares, transferred the Option Shares to a restricted, non-trading account, and respectfully refers the Court to the RTC's January 20 and February 27, 2014 orders and rulings for the complete and accurate statement of its contents.

240. Denies the allegations in Paragraph 240, except admits that on or about December 9, 2014, the arbitral tribunal issued the Interim Measures Award, and respectfully refers the Court to the Interim Measures Award for the complete and accurate statement of its contents.

241. Denies the allegations in Paragraph 241.

242. Denies the allegations in Paragraph 242, except admits the existence of an article by ABS-CBN News, *Shares of Solaire operator Bloomberry fall*, dated Dec. 12, 2014, which contains the language quoted in Paragraph 242, and respectfully refers the Court to that article for the complete and accurate statement of its contents.

243. Denies the allegations in Paragraph 243, except admits that (i) on September 20, 2016, the arbitral tribunal issued the Liability Award, and (ii) on September 28, 2016, BRC made a public disclosure to the PSE, and respectfully refers the Court to the Liability Award, BRC's September 28, 2016 disclosure, and the Final Award for the complete and accurate statement of their contents.

244. Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 244.

245.     Denies the allegations in Paragraph 245, except admits that (i) on October 10, 2016, Plaintiff's counsel sent a letter to Debtor Defendants' counsel, and (ii) on October 11, 2016, Debtor Defendants' counsel sent a letter to Plaintiff's counsel, and respectfully refers the Court to those letters and the Final Award for the complete and accurate statement of their contents.

246.     Denies the allegations in Paragraph 246, except admits that (i) on or about November 14, 2016, BRC made a public disclosure to the PSE, and (ii) on or about December 31, 2016, BRC made a public disclosure to the PSE, and respectfully refers the Court to these disclosures for the complete and accurate statement of their contents.

247.     Denies the allegations in Paragraph 247, except admits that (i) on or about March 17, 2017, Plaintiff's counsel sent a letter to Debtor Defendants' counsel, (ii) on or about March 27, 2017, Debtor Defendants' counsel sent a letter to Plaintiff's counsel, (iii) on April 3, 2017, Plaintiff's counsel sent a letter to Debtor Defendants' counsel, and (iv) on April 10, 2017, Debtor Defendants' counsel sent a letter to Plaintiff's counsel, and respectfully refers the Court to these letters for the complete and accurate statement of their contents.

248.     The second sentence of Paragraph 248 contains legal conclusions to which no response is required. To the extent a response to Paragraph 148 is required, Razon denies the allegations and assertions in Paragraph 248, except admits that on September 27, 2019, the arbitral tribunal issued the Final Award, and respectfully refers the Court to the Final Award for the complete and accurate statement of its contents.

249.     Denies the allegations in Paragraph 249.

250.     Denies the allegations in Paragraph 250, except admits that BRC made public disclosures on September 30, 2019, November 14, 2019, January 6, 2020, March 4, 2020, May 14, 2020, May 26, 2020, June 1, 2020, August 13, 2020, November 10, 2020, and February 16, 2021,

and respectfully refers the Court to these disclosures for the complete and accurate statement of their contents.

251.	Denies the allegations in Paragraph 251, except admits that (i) Debtor Defendants did not pay Plaintiff for the Option Shares within 30 days of the Final Award, and (ii) Prime is the majority shareholder of BRC, and respectfully refers the Court to the Final Award for the complete and accurate statement of its contents.

252.	Denies the allegations in Paragraph 252, except admits that (i) Plaintiff's counsel sent a letter to Debtor Defendants' counsel on October 28, 2019, and (ii) Debtor Defendants sought to set aside the Liability Award and Final Award, and respectfully refer the Court to the October 28, 2019 letter and the decisions of the High Court of Singapore and the Singapore Court of Appeal for the complete and accurate statement of their contents.

253.	Denies the allegations in Paragraph 253, except admits that Debtor Defendants have renewed the Bonds (as defined in the Complaint) annually, and respectfully refers the Court to the Final Award for the complete and accurate statement of its contents.

254.	Paragraph 254 states legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 254.

255.	Denies the allegations in Paragraph 255.

256.	Paragraph 256 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 256.

257.	Paragraph 257 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 257.

258.    Paragraph 258 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 258.

259.    Paragraph 259 of the Complaint sets forth legal conclusions to which no response is required. To the extent a response is required, Razon denies the allegations and assertions in Paragraph 259.

## AFFIRMATIVE DEFENSES

260.    By asserting the Affirmative Defenses set forth below, Razon intends no alteration of the burden of proof and/or production which otherwise exists. Furthermore, all such defenses are pleaded in the alternative, and do not constitute any admission of liability or that Plaintiff is entitled to any relief whatsoever.

### First Defense

261.    Plaintiff fails to state a claim against Razon on which relief can be granted.

### Second Defense

262.    Plaintiff's claims against Razon are barred, in whole or in part, by any or all of: *res judicata*, claim preclusion, merger and bar, and the prohibition on splitting a claim.

### Third Defense

263.    Plaintiff's claims against Razon are barred by applicable statutes of limitations.

### Fourth Defense

264.    Plaintiff's claims against Razon are barred, in whole or in part, by their own fraudulent and/or illegal conduct and by the doctrines of unclean hands, *in pari delicto*, and/or unjust enrichment.

## Fifth Defense

265.    Plaintiff's claims against Razon are barred, in whole or in part, and this Court lacks and/or should decline to exercise jurisdiction, by application of principles of *forum non conveniens* and international comity.

## Sixth Defense

266.    Plaintiff's prayers seeking declaratory and/or injunctive relief against Razon are barred because Plaintiff has an adequate remedy at law, cannot demonstrate irreparable injury, and cannot demonstrate that the equities favor Plaintiff.

## Seventh Defense

267.    Plaintiff's claims against Razon are barred, in whole or in part, because Plaintiff seeks damages and/or declaratory or injunctive relief in excess of the value of the arbitral award.

## Eighth Defense

268.    Plaintiff's claims against Razon are barred to the extent that Plaintiff seeks a double recovery in the form of *both* money damages *and* injunctive and/or declaratory relief associated with the Option Shares.

## Ninth Defense

269.    Plaintiff's claims against Razon are barred, in whole or in part, by the doctrines of contributory and/or comparative negligence.

## Tenth Defense

270.    Razon asserts any defense to arbitral enforcement under the New York Convention, as incorporated into the Federal Arbitration Act, or otherwise under federal law, that may be available to the Bloomberry Defendants, including but not limited to the grounds set forth in the

Second Affirmative Defense of the Bloomberry Defendants' April 11, 2022 Answer to the Complaint, which is incorporated as if fully set forth herein.

<u>Eleventh Defense</u>

271.    To the extent that the Court finds that Plaintiff's claims against the Bloomberry Defendants are barred, in whole or in part, by the New York Convention, the Federal Arbitration Act, or otherwise under federal law, Counts I-III of the Complaint asserted against Razon should be dismissed against Mr. Razon for the same reason.

**RULE 44.1 NOTICE**

Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Razon gives notice that he intends to raise issues about Philippine law as it bears on, potentially among other things, liability under, defenses to, and remedies sought in connection with, Count V of the Complaint.

Dated:    May 23, 2022
          New York, New York

                      WALFISH & FISSELL PLLC

By:  */s/ Rachel Penski Fissell*
        Rachel Penski Fissell
        Daniel R. Walfish
        405 Lexington Ave 8th floor
        New York, NY 10174
        Telephone: 212-672-0523
        rfissell@walfishfissell.com

        *Attorneys for Defendant Enrique K. Razon, Jr.*