**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GLOBAL GAMING PHILIPPINES, LLC,

        *Plaintiff,*

   v.

ENRIQUE K. RAZON, JR., BLOOMBERRY
RESORTS AND HOTELS, INC., and
SURESTE PROPERTIES, INC.,

        *Defendants.*

No. 21-CV-2655 (LGS) (SN)

## PLAINTIFF'S OPPOSITION TO DEFENDANT ENRIQUE K. RAZON, JR.'S PARTIAL MOTION TO DISMISS

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Robert I. Bodian
Kevin N. Ainsworth
Jason P.W. Halperin
Barry A. Bohrer
Kaitlyn A. Crowe
Iris B. Greenquist
Daniel T. Pascucci
    (admitted *pro hac vice*)
Joseph R. Dunn
    (admitted *pro hac vice*)
666 Third Avenue
New York, NY 10017
T: (212) 935-3000
F: (212) 983-3115
rbodian@mintz.com
kainsworth@mintz.com
jhalperin@mintz.com
bbohrer@mintz.com
kacrowe@mintz.com
ibgreenquist@mintz.com
dtpascucci@mintz.com
jrdunn@mintz.com
*Attorneys for Plaintiff*
*Global Gaming Philippines, LLC*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

PROCEDURAL BACKGROUND........................................................................................ 2

ARGUMENT ...................................................................................................................... 4

I.  THE SECOND AMENDED COMPLAINT ALLEGES A CLAIM FOR TRESPASS TO CHATTELS. ........................................................................................ 4

    A.  Razon Does Not Contest that the SAC States a Claim for Trespass to Chattels Under New York Law........................................................................................ 4

    B.  For Philippine Law to Apply Rather Than New York Law, There Must Be a Conflict Between Them—and There Is Not. ............................................................. 4

        1.  Razon Can Be Liable Under Philippine Law for Interference with GGAM's Right to Enjoy and Dispose of Property. ................................................ 6

        2.  Razon Also Can Be Liable Under Philippine Law for Quasi-Delict. ........................ 7

II.  GGAM'S TRESPASS TO CHATTELS CLAIM IS NOT BARRED BY RES JUDICATA ................................................................................................................. 9

    A.  Razon Fails To Meet His Burden to Dismiss Under U.S. Law Res Judicata Doctrine. . 9

    B.  Razon's Arguments Under Philippine Law Fail for the Same Reasons. ...................... 11

III.  THE TRESPASS TO CHATTELS CLAIM IS NOT DUPLICATIVE OF THE ALTER EGO CLAIM ASSERTED AGAINST RAZON. ............................................. 13

IV.  THE PUNITIVE DAMAGES DEMAND IS PROPER UNDER PHILIPPINE AND NEW YORK LAW. ..................................................................................................... 15

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Carvel Corp. v. Noonan*, 350 F.3d 6 (2d Cir. 2003) .................................................... 17

*Cho v. Blackberry Ltd.*, 991 F.3d 155 (2d Cir. 2021) ................................................ 11

*Computer Assocs. Int'l, Inc. v. Altai, Inc.* 126 F.3d 365 (2d Cir. 1997) ................................... 9, 11

*D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 168 A.D.3d 505 (1st Dep't 2019) ........................................................................................... 14

*Del Carmen Onrubia de Beeck v. Costa*, 959 N.Y.S.2d 628 (N.Y. Sup. Ct., N.Y. Cnty. 2013) .... 5

*Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612 (S.D.N.Y. 2006) ........................................ 10

*Feitshans v. Kahn*, No. 06 Civ. 2125 (SAS), 2006 U.S. Dist. LEXIS 68633 (S.D.N.Y. Sept. 21, 2006) ........................................................................................... 10

*Gate Techs, LLC, v. Delphix Capt. Mkts., LLC*, No. 12 Civ. 7075 (JPO), 2013 U.S. Dist. LEXIS 95368 (S.D.N.Y. July 9, 2013) ........................................................... 14

*IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137 (2d Cir. 2004) ........................................ 5

*Integrated Constr. Enters. v. GN Erectors, Inc.*, No. 16 Civ. 5561 (PAE), 2020 U.S. Dist. LEXIS 22839 (S.D.N.Y. Feb. 10, 2020) ........................................................ 5, 6

*Langenberg v. Sofair*, No. 03 Civ. 8339 (KMK) (FM), 2006 U.S. Dist. LEXIS 88157 (S.D.N.Y. Dec. 7, 2006) ........................................................................................... 17

*Lavazza Premium Coffees Corp. v. Prime Line Distribs., Inc.*, No. 20 Civ. 9993 (KPF), 2021 U.S. Dist. LEXIS 237299 (S.D.N.Y. Dec. 10, 2021) ........................................ 13

*Nadeau v. Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637 (S.D.N.Y. 2017) ......... 16

*Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc.*, No. 02 Civ. 7666 (LBS), 2005 U.S. Dist. LEXIS 8896 (S.D.N.Y. May 11, 2005) ................................................... 5

*NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168 (2d Cir. 2008) ...................... 13, 14

*Nuss v. Sabad*, 976 F. Supp. 2d 231 (N.D.N.Y. 2013) ................................................ 6

*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67 (2d Cir. 1998) ......................... 10

*Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883 (1st Dep't 1982) ........................ 15

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) ..................................... 6

*Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, No. 14 Civ 3770 (JFK), 2015 U.S. Dist. LEXIS 116104 (S.D.N.Y. Aug. 31, 2015) .................................................................. 6

*Soules v. Connecticut*, 882 F.3d 52 (2d Cir. 2018) ...................................................... 11

*Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441 (S.D.N.Y. 2014) ................ 14, 15

*Waltree Ltd. v. ING Furman Selz LLC*, 97 F. Supp. 2d 464 (S.D.N.Y. 2000) ...................... 17

*Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416 (2d Dep't 1999) ........................... 15

## Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 4

## Philippine Cases, Statutes, and Rules

Article 2176 of the Civil Code of the Philippines ........................................................... 8

Article 428 of the Civil Code of the Philippines ............................................................. 6

*Chua v. Metropolitan Bank & Trust Co.*, G.R. No. 182311, August 19, 2009 ..................... 12

*Dulay v. Court of Appeals*, G.R. No. 1081017, 3 April 1995 ............................................ 8

*Encinas v. Agustin*, G.R. No. 187317, 11 April 2013 ..................................................... 12

*Fleischer v. Botica Nolasco Co.*, G.R. No. L-23241, 14 March 1925 ................................ 6

*Singson v. Bank of the Philippine Islands*, G.R. No. L-24837, 27 June 1968 ...................... 9

Plaintiff Global Gaming Philippines, LLC ("GGAM"), respectfully submits this Memorandum of Law, together with the Declaration of Chief Justice Reynato S. Puno, executed June 17, 2022 ("Puno Decl."), in Opposition to the Partial Motion to Dismiss the Second Amended Complaint ("Motion" or "MTD") of Defendant Enrique K. Razon, Jr. ("Razon").

## INTRODUCTION

While the Motion is styled as a partial motion to dismiss GGAM's trespass to chattels claim, it is, in fact, an untimely motion to reconsider the Court's order of March 21, 2022 (ECF No. 216) ("Order"), in which this court granted GGAM leave to substitute a trespass to chattels claim for its previously asserted conversion claim. After considering the same arguments that Razon now raises (*i.e.*, Philippine law applies, the claim is barred by res judicata, and the claim is duplicative), the Court concluded that the First Amended Complaint alleges facts that would support a trespass to chattels claim. *Id.* at 17. The Court granted GGAM leave to file an amended complaint "for the sole purpose of substituting a trespass to chattels claim for the conversion claim," which GGAM did, in the form of its Second Amended Complaint ("SAC"). *See* ECF No. 218.

Now, Razon raises those same previously considered defenses to challenge the sufficiency of the very allegations the Court already concluded "would support such a claim." His motion is wasteful, is wrong on the law, and disregards key facts.

As demonstrated below, and as the Court previously found, GGAM's trespass to chattels claim is viable under New York law. There is no conflict between New York law and Philippine law, so New York law governs. In any event, GGAM's claim is viable under Philippine law as well.

Razon fails to meet his burden to show that GGAM's claim should be dismissed based on res judicata, claim-duplication, and claim-splitting. Those arguments all suffer from fundamental

1

flaws. At the pleading stage, unless he admits his alter ego liability, Razon cannot establish the requisite identity of the parties, and the claims in the arbitration differ in significant ways from GGAM's claim against Razon. Razon was not a party to the arbitration. Razon was not a party to any contract with GGAM. Razon's personal conduct was not at issue in the arbitration. And significantly, Plaintiff's trespass to chattels claim includes conduct of Razon that occurred (a) after the contract at issue in the arbitration had been terminated, as well as (b) after the arbitration had concluded. Under the facts alleged, the Court correctly granted GGAM the right to substitute its claim for trespass to chattels.

Finally, although Razon did not previously challenge GGAM's demand for punitive damages, he now moves to dismiss that demand. The facts alleged against Razon, including his willful interference with GGAM's rights, are more than sufficient to sustain an award of punitive damages under both New York law and Philippine law. Razon's motion to dismiss should be denied in its entirety.

## PROCEDURAL BACKGROUND

GGAM's First Amended Complaint (ECF No. 85) asserted a claim against Razon for conversion of GGAM's shares of Bloomberry Resorts Corp. ("BRC") by interfering with GGAM's right to receive dividends issued by BRC and GGAM's right to sell those shares. On July 15, 2021, Razon (in a motion filed by all Defendants)[1] moved to dismiss the conversion claim, arguing that (a) Philippine law applied, (b) the claim was barred by the statute of limitations, (c) the claim was barred by the doctrine of res judicata, and (d) the claim was duplicative of GGAM's claim in the

---

[1] Including Defendants Bloomberry Resorts and Hotel, Inc. ("BRHI"), and Sureste Properties, Inc. ("SPI"), and then-Defendants Collingwood Investment Co., Ltd., Collingwood Oil & Gas Holdings, LLC, Collingwood USA, Inc., Collingwood Brookshire USA, Inc., Collinwood Appalachian Minerals, LLC, Asia Arrow Ltd., Rizolina LLC, Ensara LLC, Nozar LLC, Bowery Bay LLC, Campanilla LLC, Fesara LLC, and 11 Essex Street Realty LLC.

arbitration against BRHI and SPI. *See* ECF Nos. 117-120. On March 21, 2022, the Court held that

the statute of limitations barred GGAM's conversion claim against Razon, but that GGAM could

assert a trespass to chattels claim based on the same facts. In this regard, the Court relied on New

York law and held:

> The Complaint does not assert a trespass to chattel claim, even
> though it alleges facts that would support such a claim. The
> Complaint alleges that Razon is *interfering* with Plaintiff's alleged
> right to the arbitration award by way of not complying with it and
> thwarting its enforcement. *See Sporn*, 448 N.E.2d at 1326
> (explaining that where a defendant merely interfered with plaintiff's
> property then the cause of action is for trespass, while denial of
> plaintiff's dominion, rights, or possession is the basis of an action
> for conversion).
>
> Plaintiff may file a Second Amended Complaint within seven days
> of the date of this Opinion for the sole purpose of substituting a
> trespass to chattel claim for the conversion claim. Any further
> amendment shall require leave of court.

Order at 17 (emphasis added).

Razon never sought reconsideration of that order.

As permitted by the Order, Plaintiff filed its Second Amended Complaint ("SAC") on

March 28, 2022, substituting a trespass to chattels claim for the conversion claim. *See* ECF No.

218. Razon admits: "This Court has already opined that the facts alleged in the SAC support a

claim for trespass to chattels under New York law." MTD at 3.

Without seeking reconsideration of the Court's Order granting GGAM leave to assert a

claim for trespass to chattels, Razon filed his Partial Motion to Dismiss the Second Amended

Complaint challenging the substituted claim on grounds that he raised in his first motion to dismiss.

ECF Nos. 232-235. Razon seeks a second bite at the apple; he raises the same arguments regarding

the application of Philippine law, res judicata, and claim-duplication that the Court rejected when

it granted leave for GGAM to assert the claim for trespass to chattels. Razon goes further with his

Philippine law argument this time and submits new expert witness declarations regarding Philippine law, arguing that GGAM cannot state a claim for trespass to chattels under Philippine law and that the punitive damages demand must be dismissed.

Razon's motion under Rule 12(b)(6) must be denied.

## ARGUMENT

## I.     THE SECOND AMENDED COMPLAINT ALLEGES A CLAIM FOR TRESPASS TO CHATTELS.

Despite Razon's protest, New York law applies, and, in any event, the Second Amended Complaint states a claim for relief under both Philippine and New York law.

### A.     Razon Does Not Contest that the SAC States a Claim for Trespass to Chattels Under New York Law.

Notably, Razon does not assert that the SAC fails to state a claim for trespass to chattels under New York law. *See* MTD at 3 ("This Court has already opined that the facts alleged in the SAC support a claim for trespass to chattels under New York law.") Instead, his argument is premised on the application of Philippine law, which he previously argued for in his first motion to dismiss, and which the Court did not accept when holding that GGAM had stated a cause of action under New York law for trespass to chattels. *See* Order at 17. In his second bite at that apple, Razon has failed to demonstrate error in the Court's decision.

### B.     For Philippine Law to Apply Rather Than New York Law, There Must Be a Conflict Between Them—and There Is Not.

Razon has failed to meet his burden to show that there is a conflict between New York law and Philippine law. Absent such a conflict, New York law applies. It is undisputed that the SAC states a claim for trespass to chattels under New York law.

In order to substantiate his argument that Philippine law applies, Razon must show that there is a conflict in the two bodies of laws. "Absent an actual conflict, 'a New York court will

4

dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it.'" *Integrated Constr. Enters. v. GN Erectors, Inc.*, No. 16 Civ. 5561 (PAE), 2020 U.S. Dist. LEXIS 22839, at *10 (S.D.N.Y. Feb. 10, 2020); *see also IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter, however, unless the laws of the competing jurisdictions are actually in conflict."). In New York, an "actual conflict" exists between the laws of two competing jurisdictions only where "'the applicable law from each jurisdiction provides different substantive rules' and those differences are 'relevant to the issue at hand' and 'have a significant possible effect on the outcome of the trial.'" *Integrated Constr. Enters.*, 2020 U.S. Dist. LEXIS 22839, at *9 (internal citations omitted); *see also IBM*, 363 F.3d at 143 (noting that laws of competing jurisdictions are only in conflict "where the applicable law from each jurisdiction provides different substantive rules," and "[i]n the absence of substantive difference, . . . a New York court will dispense with choice of law analysis").

Where the two jurisdictions have causes of action with elements that are "substantially similar," there is no conflict. *See, e.g.*, *Del Carmen Onrubia de Beeck v. Costa*, 959 N.Y.S.2d 628, 639 (N.Y. Sup. Ct., N.Y. Cnty. 2013) (holding that, since "the elements of this cause of action are substantially similar in New York and Argentina and the court sees no differences that would affect the outcome of this case, it will proceed using New York law."); *see also Nat'l Oil Well Maint. Co. v. Fortune Oil & Gas, Inc.*, No. 02 Civ. 7666 (LBS), 2005 U.S. Dist. LEXIS 8896, at *6 (S.D.N.Y. May 11, 2005) (holding that "a choice of law analysis is unnecessary, and New York law shall govern the breach of contract counterclaim" where the rules at issue were "substantially similar under English law and New York law.").

Moreover, "[w]hile the Court need not determine if a conflict of law would be outcome determinative, if a court finds that the effect would be the same under either state's law, there is

no actual conflict." *Integrated Constr. Enters.*, 2020 U.S. Dist. LEXIS 22839, at *9-10 (finding no actual conflict and thus applying New York law); *see also, e.g., Royal & Sun All. Ins., PLC v. E.C.M. Transp., Inc.*, No. 14 Civ. 3770 (JFK), 2015 U.S. Dist. LEXIS 116104, at *11 (S.D.N.Y. Aug. 31, 2015) ("this issue does not present an actual conflict, as the outcome appears to be the same regardless of which state's law is chosen."). It is enough for the claims to be analogous, even if they do not have the same name. *See, e.g., Nuss v. Sabad*, 976 F. Supp. 2d 231, 241-43 (N.D.N.Y. 2013) (noting "the existence of multiple functionally similar Mexican legal doctrines, as well as corresponding analogs to New York's crime-fraud exception to the privilege" and, finding no conflict between the analogs, "apply[ing] the law of New York, the forum state").

Here, there is no conflict because the New York trespass to chattels claim has analogous claims under Philippine law. As shown in the declaration of Chief Justice Reynato S. Puno and explained below, the facts alleged in the SAC would support recovery under a number of theories under Philippine law that are analogous to New York's claim for trespass to chattels.

### 1. Razon Can Be Liable Under Philippine Law for Interference with GGAM's Right to Enjoy and Dispose of Property.

GGAM's trespass to chattels allegations support a claim against Razon under Philippine law for interference with its right to enjoy and dispose of property. As Chief Justice Puno explains, "Philippine law recognizes the right of an owner 'to enjoy and dispose of a thing' and a corresponding right of action for interference with that right" under Article 428 of the Civil Code of the Philippines. Puno Decl. ¶ 6. As Chief Justice Puno observes, "The Philippine Supreme Court has recognized this principle with respect to shares of stock." *Id.* ¶ 8 (citing *Fleischer v. Botica Nolasco Co.*, G.R. No. L-23241 (S.C., 14 March 1925) (Phil.)).

Such a claim for interference is, in all but name, a claim for trespass to chattels. *Compare, e.g., Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 437 (2d Cir. 2004) ("A trespass to chattel

occurs when a party intentionally damages or interferes with the use of property belonging to another.") (citation omitted). In fact, the SAC alleges Razon's interference with GGAM's ownership rights over the Option Shares:

> 234. … Razon also sought to use his *interference* with Plaintiff's rights to create leverage in the dispute between Razon and Plaintiff over Razon's unlawful termination of the MSA. Finally, Razon has *sought to prevent a sale of the Option Shares* to ensure he maintains his dominance and control over BRC and the Debtor Defendants.
>
> 235. Thus, beginning in early 2014, Razon commenced a pattern of repeated and independently unlawful acts, personally and using his alter ego instrumentalities, the Debtor Defendants and Prime*, to intentionally and without authority effectively seize and exercise control over the Option Shares, and prevent and otherwise interfere with Plaintiff exercising any of its ownership rights* attendant thereto.
>
> …
>
> 258. *As a result of Razon's trespass, interference and intermeddling with the Option Shares*, including through actions taken before and after the Final Award, Plaintiff has suffered substantial damages in an amount to be proven at trial, but in no event less than $196,000,000.

SAC ¶¶ 234, 235, 258 (emphasis added).

Razon's expert witness, Ms. Uyengco-Nolasco, does not address this claim under Philippine law for interference with ownership rights, nor does Razon in his Motion.

Given this clear analog in Philippine law and, therefore, the lack of an actual conflict of laws, New York law should control. Since the SAC has stated a viable claim against Razon for his trespass to chattels, the motion to dismiss must be denied.

### 2. Razon Also Can Be Liable Under Philippine Law for Quasi-Delict.

The allegations of the SAC also support a claim for quasi-delict. The elements of a quasi-delict under Philippine law are: "(a) damages suffered by the plaintiff; (b) fault or negligence of the defendant . . . ; (c) the connection of cause and effect between the fault or negligence of the

defendant and the damages incurred by the plaintiff." Puno Decl. ¶ 15. The SAC makes the prima facie case for such a claim, alleging that: (a) GGAM has suffered damages, (b) Razon intentionally failed to comply with the arbitral order recognizing and interfered with GGAM's ownership and right to sell the Option Shares, and (c) that failure and interference caused GGAM's damages. *See* SAC ¶¶ 231-259; *see also* Puno Decl. ¶ 15 ("The allegations of the SAC state facts that meet these elements.").

Chief Justice Puno explains that a claim for quasi-delict includes *intentional* torts: "Well-entrenched is the doctrine that Article 2176"—the source of quasi-delict in the Philippine Civil Code—"covers not only acts committed with negligence, but also acts which are voluntary and intentional." Puno Decl. ¶ 13 (quoting *Dulay v. Court of Appeals*, G.R. No. 1081017, 3 April 1995).

Razon's expert misstates Philippine law when arguing that the quasi-delict claim covers only negligent acts. MTD at 3-4 (citations omitted). Ms. Uyengco-Nolasco's declaration quotes a case to suggest that Article 2176 only includes negligent acts or omissions. *See* Decl. of Marjorie T. Uyengco-Nolasco. (hereinafter the "Uyengco-Nolasco Decl.") ¶¶ 7-8. According to Chief Justice Puno, however, "[t]he premise of her opinion is erroneous." Puno Decl. ¶ 12. Not only is Ms. Uyengco-Nolasco's quote both taken out of context and dicta, *see id.*, it is explicitly contravened by subsequent rulings of the Philippine Supreme Court. Puno Decl. ¶ 13 (citing *Dulay v. Court of Appeals*, G.R. No. 1081017, 3 April 1995).

Ms. Uyengco-Nolasco's declaration also asserts: "by definition, quasi-delict only applies where there is no pre-existing contractual relation between the parties," and she argues that the "contractual relationship between GGAM, on the one hand, and BRHI and SPI, on the other" defeat this claim against Razon. Uyengco-Nolasco Decl. ¶ 9; MTD at 4. However, there is no

contract between GGAM and Razon, and Razon has denied that BRHI and SPI are his alter egos. Razon's Am. Answer, ECF. No. 253, ¶¶ 204-11. While Plaintiff will establish that BRHI and SPI are alter egos of Razon, there is no <u>basis at the pleading stage</u> for finding a contractual relationship between GGAM and Razon.

In any event, Ms. Uyengco-Nolasco's analysis again is incorrect. As Chief Justice Puno states, "the [Philippine] Supreme Court has ruled that an act in breach of a contract may likewise be a tort," and "has applied this rule to strike down the same argument advanced by Ms. Uyengco-Nolasco." Puno. Decl. ¶ 16 ("'We have repeatedly held . . . that the existence of a contract between the parties does not bar the commission of a tort by the one against the other and the consequent recovery of damages therefor.") (quoting *Singson v. Bank of the Philippine Islands*, G.R. No. L-24837, 27 June 1968). Quasi-delict, then, is an available avenue to recovery for GGAM in this case.

In short, contrary to Razon's arguments, Philippine law provides claims analogous to trespass to chattels, and there is no conflict. Accordingly, the Motion should be denied.

## II. GGAM'S TRESPASS TO CHATTELS CLAIM IS NOT BARRED BY RES JUDICATA

Razon's arguments that the trespass to chattels claim is barred by res judicata are equally unavailing. He raised the same res judicata argument in his first motion to dismiss, and the Court rejected that argument when granting GGAM leave to substitute the trespass to chattels claim. His renewed effort to assert res judicata fares no better.

### A. Razon Fails To Meet His Burden to Dismiss Under U.S. Law Res Judicata Doctrine.

Razon again does not come close to carrying his burden on the fact-intensive res judicata defense asserted in the Motion. *See Computer Assocs. Int'l, Inc. v. Altai, Inc.* 126 F.3d 365, 369 (2d Cir. 1997) ("The burden is on the party seeking to invoke *res judicata*."). Res judicata may be

raised on a motion to dismiss pursuant to Rule 12(b)(6) only where the basis for that defense is set forth on the face of the complaint or established by public record. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74-75 (2d Cir. 1998); *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 620 (S.D.N.Y. 2006).

Here, Razon contends that while he contests the alter ego allegations in the SAC (and the sufficiency of those allegations), he can rely on those allegations to bar the trespass to chattel claim against him. In doing so, Razon seeks to equate the trespass to chattels claim to the "constructive remedy" that the arbitral panel granted in favor of Plaintiff based on the Debtor Defendants' defiance of the arbitral tribunal's orders and wrongful interference under Philippine law. In this regard, the Motion relies on a flawed and unsupported premise that the trespass to chattels claim is merely "duplicative" of the "claim" at issue and remedy granted in the arbitration.[2]

Razon has provided no analysis or support for the notion that his personal acts of interference and liability therefor was at issue (much less litigated) in the arbitration, or that Razon's scheme to interfere—for his personal benefit—with GGAM's ownership and sale of the Option Shares was adjudicated. Nor can he do so, since he was not a party to the arbitration and many of his acts occurred *after* the arbitral Tribunal issued its Final Award.

Finally, Razon's bare assertion that Plaintiff could and should have asserted the trespass to chattels claim in the arbitration is wholly unsupported. Razon was not a named party to the arbitration clause in the MSA, and presents no meaningful analysis on which this Court can

---

[2] Razon relies on *Feitshans v. Kahn*, No. 06 Civ. 2125 (SAS), 2006 U.S. Dist. LEXIS 68633, at *18 (S.D.N.Y. Sept. 21, 2006), and other similar cases, in which the court applied claim preclusion to *identical* claims that had been previously adjudicated against parties in privity. *Feitshans* is inapposite. There, the plaintiff had previously prevailed and was awarded damages in arbitration on breach of employment contract claims against certain defunct former employers. Plaintiff then brought the same breach of employment contract claims in a subsequent lawsuit against the alleged alter egos of the defunct entities, but sought new and additional damages. *Id*. at *16-19.

conclude at the pleading stage that an attempt to join him to that proceeding would have been appropriate or successful.

None of the cases cited by Razon compel a different outcome. Razon cites *Cho v. Blackberry Ltd.*, 991 F.3d 155 (2d Cir. 2021) and *Soules v. Connecticut*, 882 F.3d 52 (2d Cir. 2018), to emphasize that even theories of recovery that were not litigated, but "could have been raised," in the underlying action are barred by *res judicata*, but neither bars recovery for events that *could not have been raised* because they happened after the initial action. Indeed, *Soules* specifically recognizes the rule of *Computer Associates*, cited above, that, "for the purposes of *res judicata*, 'the scope of litigation is framed by the complaint [in the original action] at the time it is filed,' and that the doctrine 'does not apply to new rights acquired during the action which might have been, but which were not, litigated.'" *Soules*, 882 F.3d at 56 (quoting *Computer Assoc.*, 126 F.3d at 369-70). Here, all of Razon's trespass actions occurred after the wrongful termination of the MSA and after commencement of the arbitration, and some of his continuing actions for which GGAM seeks recovery under the trespass to chattels claim occurred *after* the arbitration.

**B.    Razon's Arguments Under Philippine Law Fail for the Same Reasons.**

For the same reasons, Razon's arguments regarding "claim splitting" and res judicata under Philippine law fare no better. The claim against Razon is not identical to the arbitrated claim against the Debtor Defendants, and is based on (among other things) events that occurred after the arbitration ended.

As Chief Justice Puno explains in his declaration, under Philippine law, "[t]he elements of res judicata are as follows: (1) the former judgment or order must be final; (2) the judgment or order must be on the merits; (3) it must have been rendered by a court having jurisdiction over the subject matter and the parties; (4) there must be, between the first and the second action, identity of parties, of subject matter and cause of action." Puno Decl. ¶ 18 (citing *Encinas v. Agustin*, G.R.

11

No. 187317, 11 April 2013). Here, notably, "the fourth element[]" is "absent."[3] *Id.* ¶ 19. First, as Chief Justice Puno notes, "[t]here is no identity of parties because Razon was not a party in the arbitration case." *Id.* ¶ 20. Second, "[t]here is also no identity of subject matter." *Id.* ¶ 21. "In the arbitration case, the controversy arose from the material breach of BRHI's and Sureste's obligations under the Management Services Agreement ('MSA') and the wrongful termination of the MSA, and during the arbitration those respondents interfered with GGAM's ownership of its shares in BRC." *Id.* By contrast, "in the trespass to chattel claim filed in New York, the controversy arose from *Razon's* pattern of repeated and independently unlawful acts, personally and using his alter ego instrumentalities. The trespass to chattel claim also includes act done *after* the arbitration case." *Id.* ¶ 22 (emphases in original and added). Accordingly, res judicata does not apply.

Similarly to res judicata under Philippine law, "the claim-splitting rule applies only where the parties are *identical in regard to the same subject of controversy*." Puno Decl. ¶ 23 (emphasis in original). In *Chua v. Metropolitan Bank & Trust Co.* (G.R. No. 182311, August 19, 2009), the Supreme Court explained: "The rule against splitting a cause of action is intended to prevent repeated litigation **between the same parties** in regard to the same subject of controversy, to protect the defendant from unnecessary vexation; and to avoid the costs and expenses incident to numerous suits." (Emphasis added.) The rule does not apply where, as here, Razon was not a party to the Arbitration, and where the two proceedings do not address the "same subject of controversy."

---

[3] Chief Justice Puno also opined that the statutory basis for res judicata in the Philippines (*i.e.*, the "third element") does not apply to decisions of arbitral tribunals. For the reasons described above, the Court can deny Razon's motion without reaching that issue.

Again, in short, Razon's argument that the trespass to chattels claim is precluded under Philippine law—just like his analogous argument under New York law—is unpersuasive. The Motion, therefore, must be denied.

### III.     THE TRESPASS TO CHATTELS CLAIM IS NOT DUPLICATIVE OF THE ALTER EGO CLAIM ASSERTED AGAINST RAZON.

In granting GGAM leave to assert its claim for trespass to chattel, the Court declined to accept Razon's argument that the claim was duplicative. ECF No. 118 at 6, 36-37. Razon nevertheless again argues that the trespass to chattels claim is duplicative of GGAM's effort to enforce the arbitral Award, which Razon characterizes as a "contract claim." MTD at 13-15. His argument must be rejected again.

Razon asserts that the identical conduct at issue in the arbitration against the Debtor Defendants "is alleged as *part of* the Trespass Claim against him." (*Id.* ¶ 13 (emphasis added).) Some overlapping facts, however, do not make claims duplicative. Even a cursory reading of the SAC's allegations shows that the two claims are distinct from one another: GGAM has asserted a tort claim, not a contract claim, against Razon, who was not a party to the arbitration or any contract with GGAM. The claim against Razon is based on his tortious conduct in interfering with GGAM's ownership rights, including the right to receive dividends and right to sell the shares. The trespass claim is based entirely on Razon's conduct *after* the arbitration was filed and includes his conduct *after the issuance of the final arbitration award. See, e.g.*, SAC ¶¶ 234, 235, 244-253, 254 and 258.

"Two claims are duplicative of one another if they arise from the same facts . . . and do not allege distinct damages." *Lavazza Premium Coffees Corp. v. Prime Line Distribs., Inc.*, No. 20 Civ. 9993 (KPF), 2021 U.S. Dist. LEXIS 237299, *44 (S.D.N.Y. Dec. 10, 2021) (quoting *NetJets Aviation, Inc. v. LHC Communs., LLC*, 537 F.3d 168, 175 (2d Cir. 2008)); *see also e.g. D.K. Prop.,*

*Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 168 A.D.3d 505, 507 (1st Dep't 2019) ("The first and second causes of action plead different conduct by defendant"). Here, the facts underlying GGAM's claims, while overlapping in part, are substantively and temporally different, are against different persons, and result in different damages. *See id.* ("[Plaintiff's] conversion claim and breach of contract claim arise out of different facts and allege different injuries"). Accordingly, they are not impermissibly duplicative.

Further, Plaintiff is entitled to distinct damages for the trespass claim, namely punitive damages against Razon for his unlawful conduct. "Where a claimant is entitled to a particular category of damages on one claim but not on the other, the claims are not duplicative." *NetJets*, 537 F.3d at 175 (vacating district court's dismissal of claims because they were not duplicative). Plaintiff is entitled to distinct damages for the trespass to chattels claim—including damages for the independent harm GGAM has suffered by being unable to use, sell, or benefit from its Option Shares since entry of the final Award, and punitive damages against Razon for his unlawful conduct. *See id.* (overturning district court's dismissal of purportedly duplicative claims where the two claims at issue had distinct damages components).

The cases Razon cites do not change this necessary outcome. The cases—all of which, incidentally, relate to conversion rather than trespass to chattels—do not dismiss claims that, as here, involve a different time period, or different defendants, or a different set of facts independent of the contract claim. Rather, they involve classic "double-dipping" contract and conversion claims based on identical facts. *See Gate Techs, LLC, v. Delphix Capt. Mkts., LLC*, No. 12 Civ. 7075 (JPO), 2013 U.S. Dist. LEXIS 95368, at *15-16 (S.D.N.Y. July 9, 2013) (plaintiffs not disputing that underlying facts are different and seeking identical damages for both claims); *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 456 (S.D.N.Y. 2014) (holding that conversion

claim hinges entirely on breach and no other facts); *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 884 (1st Dep't 1982) ("[C]onversion cannot be validly maintained where damages are merely being sought for breach of contract."); *Wolf v. Nat'l Council of Young Israel*, 264 A.D.2d 416, 417 (2d Dep't 1999) (holding that conversion claim and damages sought were not independent of contract claim).[4] That is not the case here. There is simply no impermissible overlap between the substance of the two claims at issue here, and the Motion should be denied.

## IV. THE PUNITIVE DAMAGES DEMAND IS PROPER UNDER PHILIPPINE AND NEW YORK LAW.

Razon fails to persuade that GGAM's punitive damages demand should be dismissed as contrary to Philippine and New York law. Rather, his argument is based on the same discredited premises as his arguments addressed above.

Razon argues that punitive damages against him for trespass to chattels are barred by section 12.3 of the MSA, which states: "Neither Party shall be liable to the other under this Agreement for any indirect or consequential loss or punitive damages." *See* MTD at 15. He is wrong for several reasons. Razon was not a party to the MSA, and GGAM's claim against Razon for trespass to chattels is a tort claim for conduct that occurred after the Debtor Defendants wrongfully terminated the MSA. Since the claim against Razon is not a contract claim under the MSA, the waiver language does not apply to him.

Razon also argues that, although he was not a party to the MSA, he can rely on the waiver language of the MSA, because GGAM has alleged he is an alter ego of the Debtor Defendants. But he also disputes being their alter ego. Until he concedes that he is, or the Court finds that he

---

[4] *Transcience Corp. v. Big Time Toys, LLC*, 50 F. Supp. 3d 441, 456 (S.D.N.Y. 2014) is further distinguishable in that the Court dismissed the claim because "possession of Plaintiffs' property here would have been lawful if not for the alleged breach of contract." This is not the case here, where Razon's intentional interference with GGAM's ownership in the shares was unlawful regardless of the parties' dispute over the MSA.

is, an alter ego of the parties to the MSA, GGAM is allowed to assert an alternative claim against him personally.

Even as alter ego of the Debtor Defendants, however, Razon cannot rely on the MSA's Section 12.3 because the Debtor Defendants materially breached the MSA by wrongfully terminating it. A breaching party cannot enforce a contract after breaching it. *Nadeau v. Equity Residential Props. Mgmt. Corp.*, 251 F. Supp. 3d 637, 641 (S.D.N.Y. 2017) ("Under New York law, when a party to a contract materially breaches that contract, it cannot then enforce that contract against a non-breaching party.").

Razon also argues, erroneously, that punitive damages are unavailable under Philippine law under the facts alleged in the SAC. He argues: "The relevant standard for awarding punitive damages is high and requires, among other things, "wanton, fraudulent, reckless, oppressive, or malevolent" behavior." According to the declaration of Chief Justice Puno, this is inaccurate, and punitive damages are available under Philippine law. Chief Justice Puno's analysis concludes that Philippine courts would find that the SAC has sufficiently alleged bad faith for the punitive damages award to stand. Puno Decl. ¶ 27.[5] Indeed, GGAM has alleged (among other things):

> 234. However, Razon has at all times understood that the Option Shares have significant value, and that preventing Plaintiff from realizing that value, through both receipt of dividends paid on the Option Shares and proceeds of disposition of the Option Shares, would cause significant damage to Plaintiff. Razon also sought to use his interference with Plaintiff's rights to create leverage in the dispute between Razon and Plaintiff over Razon's unlawful termination of the MSA. Finally, Razon has sought to prevent a sale

---

[5] Notably, Razon's brief omits Ms. Uyencgo-Nelasco's own reference to "bad faith" in the standard, which is plainly present in GGAM's allegations, but is, of course, unhelpful to Razon's case. *Compare* Uyencgo-Nelasco Decl. ¶ 25 ("[T]he act must be accompanied by bad faith or done in a wanton, fraudulent, oppressive or malevolent manner.") with MTD at 16 ("The relevant standard for awarding punitive damages is high and requires, among other things, "wanton, fraudulent, reckless, oppressive, or malevolent behavior.").

> of the Option Shares to ensure he maintains his dominance and
> control over BRC and the Debtor Defendants.

As Chief Justice Puno concluded, the SAC's allegations meet the threshold for punitive damages under Philippine law.

Finally, Razon argues, again erroneously, that punitive damages would be unavailable under New York law. Here again, Razon wrongly attempts to conflate the Debtor Defendants' breach of the MSA with Razon's independent tort of trespass to chattels. GGAM's claim is not contract-based and does not arise out of a contractual relationship with Razon. GGAM owns the Option Shares. Razon has willfully interfered with GGAM's right to receive dividends and its right to sell those shares. Accordingly, the "public aim" cases the Razon cites—which limit punitive damages where the tort claims "aris[e] out of" contract claims—simply do not apply.

"New York courts have applied the 'public harm' standard only to cases in which the defendant's allegedly tortious conduct was ***directly related to the contract between the plaintiff and defendant***." *Carvel Corp. v. Noonan*, 350 F.3d 6, 25 (2d Cir. 2003) (emphasis added). Here, Razon's individual conduct is an independent tort and does not (and cannot) "arise" from a contract with Razon, as there was no contract between Razon and GGAM. Razon's ongoing interference with the Option Shares is also not "directly related" to any contract. Razon's tortious conduct began after the Debtor Defendants wrongfully terminated the MSA, and continues to this day. Therefore, there is no requirement that Plaintiff demonstrate harm to the general public. *See Waltree Ltd. v. ING Furman Selz LLC*, 97 F. Supp. 2d 464, 471 (S.D.N.Y. 2000) (where the fraud constitutes "an independent tort . . .[the] plaintiff need not allege that defendants' conduct harmed the general public in order to properly seek punitive damages"); *see also Langenberg v. Sofair*, No. 03 Civ. 8339 (KMK) (FM), 2006 U.S. Dist. LEXIS 88157, at *12 (S.D.N.Y. Dec. 7, 2006)

(report and recommendation) ("[T]he showing of a public wrong . . . need not be shown when a tort claim does not 'arise from' a contractual relationship.").

## CONCLUSION

For the foregoing reasons, Razon's Partial Motion to Dismiss the Second Amended Complaint should be denied.

Dated: June 17, 2022      MINTZ, LEVIN, COHN, FERRIS,
   New York, New York    GLOVSKY AND POPEO, P.C.

Respectfully submitted,

By: */s/ Kevin N. Ainsworth*
  Robert I. Bodian
  Kevin N. Ainsworth
  Barry A. Bohrer
  Jason P.W. Halperin
  Kaitlyn A. Crowe
  Iris B. Greenquist
  Daniel T. Pascucci
    (admitted pro hac vice)
  Joseph R. Dunn
    (admitted pro hac vice)

666 Third Avenue
New York, NY 10017
T: (212) 935-3000
F: (212) 983-3115
rbodian@mintz.com
kainsworth@mintz.com
bbohrer@mintz.com
jhalperin@mintz.com
kacrowe@mintz.com
ibgreenquist@mintz.com
dtpascucci@mintz.com
jrdunn@mintz.com

*Attorneys for Plaintiff*
*Global Gaming Philippines, LLC*