**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL GAMING PHILIPPINES, LLC, *Plaintiff*, v. ENRIQUE K. RAZON, JR., et al., *Defendants.* | No. 21 Cv. 2655 (LGS) |

## DECLARATION OF JUSTICE REYNATO S. PUNO

I, Reynato S. Puno, declare as follows:

1. I submit this declaration in support of Plaintiff[1], and in response to the Uyengco-Nolasco Declaration. I disagree with Ms. Uyengco-Nolasco's analysis.

### A. My Personal Background and Experience

2. I currently reside in Quezon City, Manila, the Republic of the Philippines.

3. I served as Chief Justice of the Supreme Court of the Republic of the Philippines from December 2006 to May 2010. From June 1993 to December 2006, I served as an Associate Justice of the Supreme Court. I am now retired from the Supreme Court.

4. I hold legal academic degrees from the University of the Philippines in Manila, Southern Methodist University in Dallas, Texas, and the University of California, Berkeley. I also hold honorary degrees in law from one dozen universities located in the Philippines or South Korea.

---

[1] Capitalized terms shall have the same meaning as defined in Plaintiff's Memorandum of Law, filed contemporaneously with this Declaration.

5.      From 1972 until my retirement in 2010 as Chief Justice of the Supreme Court, I served either as a member of the Philippine judiciary or as a senior member of the Government of the Republic of the Philippines, including as Acting Solicitor General and Acting Secretary of Justice. I was appointed to the position of Associate Justice of the Court of Appeals by President Ferdinand E. Marcos. His successor, Corazon C. Aquino, re-appointed me as Associate Justice of the Court of Appeals. President Fidel V. Ramos appointed me Associate Justice of the Supreme Court. President Gloria Macapagal-Arroyo appointed me Chief Justice of the Supreme Court.

### B. The Facts Alleged Against Razon in the Second Amended Complaint Meet the Elements of at Least Two Claims Under Philippine Law.

#### 1. Philippine Law Provides a Private Right of Action for Interference with the Right to Enjoy and Dispose of Property.

6.      Philippine law recognizes the right of an owner "to enjoy and dispose of a thing" and a corresponding right of action for interference with that right. Under Article 428 of the Civil Code of the Philippines, "the owner has the right to enjoy and dispose of a thing, without other limitations than those established by law." "The owner also has the right of action against the holder and possessor of the thing in order to recover it." Ms. Uyengco-Nolasco does not address this claim in her Declaration.

7.      In *Sen Po Ek Marketing Corporation v. Teodora Price Martinez*, G.R. No. 134117 (S.C., 9 Feb. 2000) (Phil.), the Supreme Court of the Philippines affirmed that the owner of property has the absolute right to dispose of the property as she wishes:

> The owner of the property . . . [has] the right to exercise all the attributes of ownership, to wit: jus possidendi, jus utendi, jus fruendi, jus abutendi, and jus vendicandi. *With respect to jus disponendi, she may dispose of the property to whomsoever and in whatsoever manner and whatever consideration she wishes,* although at a loss or even for free and no one can complain, except as may otherwise be provided by law, like the limitations on donation and in the case of sale, the right of pre-emption of an adjoining owner and the right of first refusal under the Urban Land

Reform Law (P.D. No. 1517) when the area is proclaimed as an urban land reform zone.

(Emphasis added.)

8. The Philippine Supreme Court has recognized this principle with respect to shares of stock. In *Fleischer v. Botica Nolasco Co.*, G.R. No. L-23241 (S.C., 14 March 1925) (Phil.), the Supreme Court of the Philippines, discussing the nature, character, and transferability of shares of stock on the basis of Section 35 (now Section 63) of the Corporation Code, stated:

> Said section specifically provides that the shares of stock "are personal property and may be transferred by delivery of the certificate endorsed by the owner, etc." Said section 35 [now section 63] defines the nature, character and transferability of shares of stock. Under said section they are personal property and may be transferred as therein provided. Said section contemplates no restriction as to whom they may be transferred or sold. It does not suggest that any discrimination may be created by the corporation in favor or against a certain purchaser. *The holder of shares, as owner of personal property, is at liberty, under said section, to dispose of them in favor of whomsoever he pleases, without any other limitation in this respect, than the general provisions of law.*

(Emphasis added.)

9. Under Philippine law, the facts alleged against Razon for the claim called "Trespass to Chattel" state a claim for damages for his interference with GGAM's right to sell its shares.

### 2. Philippine Law Provides a Private Right of Action for Quasi-Delict, Including Intentional Torts.

10. While there is no claim called "trespass to chattels" under Philippine law, a claim based on the same allegations is recoverable under Philippine law as quasi-delict. Ms. Uyengco-Nolasco is incorrect when she says the quasi-delict claim does not include intentional acts.

11. Ms. Uyengco-Nolasco argues that quasi-delicts are limited under Philippine law to negligent acts or omissions, and exclude the notion of willfulness or intent. She opines that, since

trespass to chattels is an intentional act, it cannot fall under the definition of a quasi-delict under Philippine law.[2] To support this conclusion, she cited *Baksh v. Court of Appeals*:[3]

> In the general scheme of the Philippine legal system envisioned by the Commission responsible for drafting the New Civil Code, intentional and malicious acts, with certain exceptions, are to be governed by the Revised Penal Code while negligent acts or omissions are to be covered by Article 2176 of the Civil Code.

12. The premise of her opinion is erroneous. First, the statement in *Baksh* quoted above is nothing more than dicta. In fact, Article 2176 was never again mentioned in *Baksh*, much less applied by the Court in ruling for the respondents therein. Second, the quote as cited by Ms. Uyengco-Nolasco was incomplete. Thus, the complete quote continues as follows:

> In between these opposite spectrums are injurious acts which, in the absence of Article 21, would have been beyond redress. Thus, Article 21 fills that vacuum. It is even postulated that together with Articles 19 and 20 of the Civil Code, Article 21 has greatly broadened the scope of the law on civil wrongs; it has become much more supple and adaptable than the Anglo-American law on torts.

13. In *Dulay v. Court of Appeals*,[4] a case decided years after *Baksh*, the Supreme Court made clear:

> [T]here is no justification for limiting the scope of Article 2176 of the Civil Code to acts or omissions resulting from negligence. Well-entrenched is the doctrine that *Article 2176 covers not only acts committed with negligence, but also acts which are voluntary and intentional.*[5]

14. Considering then that the concept of quasi-delicts does include acts which are voluntary and intentional, Mr. Razon's intentional acts which constitute trespass to chattels under American law may be considered as a quasi-delict under Philippine law.

---

[2] Decl. ¶¶ 7-8.
[3] G.R. No. 97336, 19 February 1993.
[4] G.R. No. 108017, 3 April 1995 (emphasis added).
[5] Emphasis added. *See also Elcano v. Hill*, G.R. No. L-24803, 26 May 1977; *Virata v. Ochoa*, G.R. No. L-46179, 31 January 1978; *Andamo v. Intermediate Appellate Court*, G.R. No. 74761, 6 November 1990.

4

15. To sustain a claim for liability under quasi-delict, the following is required: (a) damages suffered by the plaintiff; (b) fault of negligence of the defendant, or some other person for whose acts he is answerable; (c) the connection of cause and effect between the fault or negligence of the defendant and the damages incurred by the plaintiff.[6] The allegations of the SAC state facts that meet these elements.

16. Ms. Uyengco-Nolasco further argues that the rule on quasi-delicts applies only where there is no pre-existing contractual relation between the parties. Uyengco-Nolasco Decl. ¶9. However, the Supreme Court has ruled that an act in breach of a contract may likewise be a tort.[7] The Supreme Court has applied this rule to strike down the same argument advanced by Ms. Uyengco-Nolasco:

> The lower court held that plaintiffs' claim for damages cannot be based upon a tort or quasi-delict, their relation with the defendants being contractual in nature. *We have repeatedly held, however, that the existence of a contract between the parties does not bar the commission of a tort by the one against the other and the consequent recovery of damages therefor.*[8]

### C. The Trespass to Chattels Claim is Not Precluded Under Philippine Law by Res Judicata or the Rule Against Claim Splitting.

17. The trespass to chattels claim asserted by GGAM is not barred by the doctrine of res judicata or the rule against claim splitting, as Ms. Uyengco-Nolasco suggests.

18. The elements of res judicata are as follows: (1) the former judgment or order must be final; (2) the judgment or order must be on the merits; (3) it must have been rendered by a court having jurisdiction over the subject matter and the parties; (4) there must be, between the first and the second action, identity of parties, of subject matter and cause of action.[9]

---

[6] *Huang v. Philippine Hoteliers, Inc.*, G.R. No. 180440, 5 December 2012.
[7] *Air France v. Carrascoso*, G.R. No. L-21438, 28 September 1966.
[8] *Singson v. Bank of the Philippine Islands*, G.R. No. L-24837, 27 June 1968 (emphasis added).
[9] *Encinas v. Agustin*, G.R. No. 187317, 11 April 2013.

19. The third and fourth elements are absent. As to the third element, the arbitral award was rendered by an arbitral tribunal, and not by a court. The doctrine of res judicata applies only to judicial or quasi-judicial proceedings under Philippine law.[10]

20. As to the fourth element, there must be identity of parties, of subject matter and cause of action. There is no identity of parties because Razon was not a party in the arbitration case.

21. There is also no identity of subject matter. The subject of an action is defined as the matter or thing with respect to which the controversy has arisen, concerning which a wrong has been done.[11] In the arbitration case, the controversy arose from the material breach of BRHI's and Sureste's obligations under the Management Services Agreement ("MSA") and the wrongful termination of the MSA, and during the arbitration those respondents interfered with GGAM's ownership of its shares in BRC. The Tribunal stated:

> 448. In these circumstances, the Respondents' flagrant disregard for the Tribunal's IM Order and Liability Award, and willful refusal indefinitely to enable GGAM access to the Shares for the apparent purpose of pressuring the Claimants into a settlement on Respondents' terms is tantamount to their de facto seizure, a misappropriation for the purpose of using them to settle other matters in dispute between the Parties. There is no doubt that the Respondents have refused to comply with the IM Order and the Liability Award even though they had committed themselves to comply, and have prevented the Claimants from the free disposal of their Shares.
>
> 449. On this basis, the Tribunal finds that, at least since the IM Order, the Respondents are liable for damages under Articles 20 and 2176 of the CCP. The Respondents have acted contrary to their legal obligations under the MSA and the UNCITRAL Rules to be bound by the Tribunal's IM Order and Liability Award, and this act has caused damage to GGAM Philippines, the rightful owner of the Shares.

---

[10] *Id.*

[11] *Taganas, et al. v. Emulsan, et al.*, G.R. No. 146980, September 2, 2003.

22. On the other hand, in the trespass to chattel claim filed in New York, the controversy arose from *Razon's* pattern of repeated and independently unlawful acts, personally and using his alter ego instrumentalities. The trespass to chattel claim also includes acts done after the arbitration case.

23. Similarly, the claim-splitting rule applies only where the parties are *identical in regard to the same subject of controversy*. In *Chua v. Metropolitan Bank & Trust Co.* (G.R. No. 182311, August 19, 2009), the Supreme Court explained: "The rule against splitting a cause of action is intended to prevent repeated litigation between the same parties in regard to the same subject of controversy, to protect the defendant from unnecessary vexation; and to avoid the costs and expenses incident to numerous suits." (Emphasis supplied.) Mr. Razon was not a party to the arbitration, and the rule against claim splitting does not prevent a claim against him. There is also no identity of subject matter as discussed above.

### D. Punitive Damages are Recoverable for the Trespass to Chattels Claim Under Philippine Law.

24. Punitive or exemplary damages[12] may be recovered against the Defendants in this matter under Philippine law. Preliminarily, I disagree with Ms. Uyengco-Nolasco's outline on the rules of punitive damages in paragraph 25 of her Declaration, in which she states:

> Under Philippine law, punitive or exemplary damages are available in contracts or quasi-contracts only if the following requisites are present: (1) they may be imposed by way of example in addition to compensatory damages, and only after the claimant's right to them has been established; (2) that they cannot be recovered as a matter of right, their determination depending upon the amount of compensatory damages that may be awarded to the claimant; and (3) the act must be accompanied by bad faith or done in a wanton, fraudulent, oppressive or malevolent manner.

---

[12] *See Tankeh v. Development Bank of the Philippines*, G.R. No. 171428, 11 November 2013.

25. The first statement modifies Article 2234 of the Civil Code, which requires plaintiff to show that it is entitled to moral, temperate or compensatory damages before a court may award exemplary damages. Article 2229 of the Civil Code also states that exemplary damages are imposed in addition to moral, temperate, or liquidated damages. Based on these provisions, the award of punitive damages may not rely solely on an award for compensatory damages. Instead, punitive damages may also be awarded when the right to moral or temperate damages has been established.

26. The second statement is based on Article 2233 of the Civil Code which states that the court will decide whether exemplary damages should be awarded. However, Article 2233 does not prescribe the amount of exemplary damages which the court may award. In relation to this, Article 2216 provides that the assessment of such damages is left to the sound discretion of the court, according to the circumstances of each case.

27. As to the third statement, I agree with Ms. Uyengco-Nolasco that bad faith must be alleged in order to recover punitive damages. Contrary to Ms. Uyengco-Nolasco's assertions, however, GGAM has sufficiently alleged bad faith in the Second Amended Complaint with regard to the conduct of Mr. Razon.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: 17 June 2022

_____
**REYNATO S. PUNO**
Chief Justice (Ret.)