**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL GAMING PHILIPPINES, LLC,<br><br>*Plaintiff,*<br><br>v.<br><br>ENRIQUE K. RAZON, JR.;<br>BLOOMBERRY RESORTS AND HOTELS<br>INC.; AND SURESTE PROPERTIES, INC.,<br><br>*Defendants.* | No. 21-CV-2655 (LGS) (SN) |

## DEBTOR DEFENDANTS' AMENDED ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Bloomberry Resorts and Hotels Inc. ("BRHI")[1] and Sureste Properties, Inc. ("SPI," and together with BRHI, "Debtor Defendants"),[2] by and through their undersigned counsel, hereby answer Plaintiff Global Gaming Philippines, LLC's ("Plaintiff" or "GGP") Second Amended Complaint (the "Complaint") as follows:[3]

1.     Deny the allegations in Paragraph 1 of the Complaint, except admit so much of Paragraph 1 as seeks to allege that Plaintiff brings this action against Debtor Defendants and Razon.

---

[1] Unless otherwise specified, capitalized terms used herein shall have the same meaning given to them in the Second Amended Complaint.

[2] Debtor Defendants answer the Complaint solely on behalf of themselves, not Defendant Razon.

[3] Debtor Defendants deny all allegations in the Complaint not expressly admitted herein. In addition, the Complaint contains headings and subheadings. Debtor Defendants do not admit that the Complaint's headings or subheadings are accurate or appropriate for any purpose and, to the extent that any heading or subheading can be read to contain factual allegations, Debtor Defendants deny each of them. Furthermore, the Court dismissed certain claims in the First Amended Complaint by order dated March 21, 2022 (Dkt. 216) (the "March 21 Order"), specifically, "all claims against the Non-Bloomberry Entities [as defined in the March 21 Order] and the conversion claim against Razon." Dkt. 216 at 1-2. Debtor Defendants aver that no response is required to the extent that allegations in the Complaint relate to such claims. To the extent a response is required, Debtor Defendants deny all such allegations.

2.     Deny the allegations in Paragraph 2 of the Complaint, except admit so much of Paragraph 2 as seeks to allege that Razon is a Philippine national.

3.     Deny the allegations in Paragraph 3 of the Complaint.

4.     Deny the allegations in Paragraph 4 of the Complaint, except admit so much of Paragraph 4 as seeks to allege that (i) Solaire opened to the public in March 2013, and (ii) Solaire turned a profit in 2013-2019.

5.     Deny the allegations in Paragraph 5 of the Complaint, except admit so much of Paragraph 5 as seeks to allege that the Debtor Defendants terminated the MSA in September 2013.

6.     Deny the allegations in Paragraph 6 of the Complaint and respectfully refer the Court to the arbitral tribunal's (i) Order in Respect of Claimants' Interim Measures' Application, dated December 9, 2014 (the "Interim Measures Award"); (ii) Partial Award on Liability, dated September 20, 2016 (the "Liability Award"); and (iii) Final Award, dated September 27, 2019 (the "Final Award"), for the complete and accurate statement of their contents.

7.     Deny the allegations in Paragraph 7 of the Complaint, and respectfully refer the Court to the MSA and the applicable judicial rulings in Singapore for a complete and accurate statement of their contents.

8.     Deny having knowledge or information sufficient to form a belief regarding the truth of the allegations in the first sentence of Paragraph 8 of the Complaint.  Deny the allegations in the second sentence of Paragraph 8.

9.     Deny the allegations in Paragraph 9 of the Complaint.

10.     Deny the allegations in Paragraph 10 of the Complaint, except admit that GGP has brought this action against the Debtor Defendants and Razon and presently assert such claims as are stated in the Complaint.

11.     Deny having knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 11 of the Complaint.

12.     Deny having knowledge or information sufficient to form a belief regarding the truth of the allegations in Paragraph 12 of the Complaint regarding the "Alter Ego Entities," which are no longer defendants after the Court dismissed all claims against them, and otherwise deny the allegations in Paragraph 12, except admit so much of Paragraph 12 as seeks to allege that Razon is a Philippine national.

13.     Deny the allegations in Paragraph 13 of the Complaint, except admit so much of Paragraph 13 as seeks to allege that (i) BRHI is a company organized under the laws of the Republic of the Philippines, with its headquarters located at The Executive Offices, Solaire Resort and Casino, 1 Asean Avenue, Entertainment City, Tambo, Parañaque City, Philippines, (ii) BRHI owns and operates the casino at Solaire in Manila and holds the gaming license issued by PAGCOR, the Philippine gaming authority, and (iii) BRHI is a wholly-owned subsidiary of SPI.

14.     Deny the allegations in Paragraph 14 of the Complaint, except admit so much of Paragraph 14 as seeks to allege that (i) SPI is a company organized under the laws of the Republic of the Philippines, with its headquarters located at The Executive Offices, Solaire Resort and Casino, 1 Asean Avenue, Entertainment City, Tambo, Parañaque City, Philippines, (ii) SPI owns and operates the real property, hotel, and restaurant operations of Solaire, and (iii) SPI is owned by BRHI (9.34%) and Bloomberry Resorts Corporation ("BRC") (90.66%).

15.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 of the Complaint regarding Collingwood Cayman, which is no longer a defendant after the Court dismissed all claims against it.

16.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint regarding Collingwood Holdings, which is no longer a defendant after the Court dismissed all claims against it.

17.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint regarding CUSA, which is no longer a defendant after the Court dismissed all claims against it.

18.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint regarding CBUSA, which is no longer a defendant after the Court dismissed all claims against it.

19.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint regarding CAM, which is no longer a defendant after the Court dismissed all claims against it.

20.     Paragraph 20 of the Complaint requires no response as it contains only defined terms, not allegations.

21.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 of the Complaint regarding the Energy Entities, none of which is a defendant after the Court dismissed all claims against the Energy Entities.

22.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 22 of the Complaint regarding Asia Arrow, which is no longer a defendant after the Court dismissed all claims against it.

23.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 of the Complaint regarding Rizolina, which is no longer a defendant after the Court dismissed all claims against it.

24.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 of the Complaint regarding Ensara, which is no longer a defendant after the Court dismissed all claims against it.

25.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 of the Complaint regarding Nozar, which is no longer a defendant after the Court dismissed all claims against it.

26.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 of the Complaint regarding Bowery, which is no longer a defendant after the Court dismissed all claims against it.

27.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 of the Complaint regarding Campanilla, which is no longer a defendant after the Court dismissed all claims against it.

28.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 of the Complaint regarding Fesara, which is no longer a defendant after the Court dismissed all claims against it.

29.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 of the Complaint regarding Essex, which is no longer a defendant after the Court dismissed all claims against it.

30.     Paragraph 30 of the Complaint requires no response as it contains only defined terms, not allegations.

31.     Paragraph 31 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 31.

32.     Deny the allegations in Paragraph 32 of the Complaint, except admit so much of Paragraph 32 as seeks to allege that Forbes listed Razon as the second-wealthiest individual billionaire in the Philippines in 2021.

33.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 of the Complaint.

34.     Deny the allegations in Paragraph 34 of the Complaint.

35.     Deny the allegations in Paragraph 35 of the Complaint.

36.     Deny the allegations in Paragraph 36 of the Complaint, and respectfully refer the Court to the *Wall Street Journal* article from 2014 for the complete and accurate statement of its contents.

37.     Deny the allegations in Paragraph 37 of the Complaint, except admit so much of Paragraph 37 as seeks to allege that Debtor Defendants' assets are located only in the Philippines.

38.     Aver that the allegations concerning "the cornerstone of Razon's enterprise" in Paragraph 38 of the Complaint is not sufficiently precise for Debtor Defendants to admit or deny the truthfulness thereof, and otherwise deny having knowledge or information sufficient to form a belief as to the truth of the allegations in the last two sentences of Paragraph 38.

39.     Deny the allegations in Paragraph 39 of the Complaint, except admit so much of Paragraph 39 as seeks to allege that Razon is Chairman and CEO of BRC and Chairman of certain of its subsidiaries.

40.     Deny the allegations in Paragraph 40 of the Complaint.

41.     Admit the allegations in Paragraph 41 of the Complaint.

42.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 42 of the Complaint, except admit so much of Paragraph 42 as seeks

to allege that the Philippines has favorable regulatory and gaming tax regimes, complemented by relatively low costs and high-quality workforce.

43.     Deny the allegations in Paragraph 43 of the Complaint, except admit so much of Paragraph 43 as seeks to allege that Solaire's website describes it as "the Las Vegas of the Philippines."

44.     Deny the allegations in Paragraph 44 of the Complaint.

45.     Deny the allegations in Paragraph 45 of the Complaint, except admit so much of Paragraph 45 as seeks to allege that the Debtor Defendants sought to engage top-level consultants and executives with relevant expertise in the gaming industry.

46.     Deny the allegations in Paragraph 46 of the Complaint, except admit so much of Paragraph 46 as seeks to allege that (i) BRHI engaged Nevada-based Steelman Partners, LLP, the same company that designed JW Marriott (Las Vegas), The Plaza Hotel and Casino (Las Vegas), Harrah's Atlantic City (New Jersey), MGM Foxwoods (Connecticut), Sands Macau, and The Four Seasons Macau, to design Solaire, and (ii) Debtor Defendants hired Philippines-based contractors Design Coordinates, Inc. and D.M. Consunji, Inc. to oversee Solaire's construction.

47.     Deny the allegations in Paragraph 47 of the Complaint,[4] except admit so much of Paragraph 47 as seeks to allege that Debtor Defendants entered into the MSA with GGP, and respectfully refer the Court to the MSA for the complete and accurate contents thereof.

48.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 of the Complaint.

---

[4] In Paragraph 47, Plaintiff defines "Global Gaming" to mean "Global Gaming Asset Management, LLC," but Debtor Defendants are not aware of any such entity.

49. Deny the allegations in Paragraph 49 of the Complaint, except admit so much of Paragraph 49 as seeks to allege that BRHI retained SpencerStuart to identify a Chief Operating Officer for Solaire.

50. Deny the allegations in Paragraph 50 of the Complaint, except admit so much of Paragraph 50 as seeks to allege that Razon met with Mr. Weidner and Mr. Saunders in Las Vegas in March 2011 to discuss Solaire.

51. Deny the allegations in Paragraph 51 of the Complaint.

52. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 52 of the Complaint concerning "Global Gaming's extensive diligence," deny the remaining allegations in Paragraph 52, except admit so much of Paragraph 52 as seeks to allege that (i) after the initial meeting between Razon, Saunders, and Weidner, certain parties began communicating regarding the economic and operational terms under which GGAM would manage Solaire and the management fees and equity interest GGAM would receive as compensation for such management, and (ii) certain parties executed the Confidentiality Agreement, effective as of March 1, 2011, and respectfully refer the Court to the Confidentiality Agreement for the complete and accurate terms thereof.

53. Deny the allegations in Paragraph 53 of the Complaint, except admit so much of Paragraph 53 as seeks to allege that (i) certain parties communicated about the terms of their contractual relationship over a six-month period, and (ii) GGAM was engaged by the Debtor Defendants to provide management and technical services in the development and construction of Solaire and to manage the operation of Solaire in exchange for management fees and an equity interest in Solaire.

54.     Debtor Defendants deny the allegations in Paragraph 54 of the Complaint, except admit so much of Paragraph 54 as seeks to allege that (i) the Debtor Defendants sent responses to document requests and diligence checklists by email to Cantor employees acting on behalf of GGAM, and (ii) Razon had email and/or telephonic communication with Weidner, Occeña, Alarilla, and Tan (none of which are based in New York) relating to negotiating the GGP relationship during one or more trips that Mr. Razon made to New York in the April-June 2011 time frame (during which he would have stayed at the Plaza residence in Manhattan), and respectfully refer the Court to his flight logs and to the contemporaneous emails for the most accurate reconstruction of his whereabouts and communications.

55.     Deny the allegations in Paragraph 55 of the Complaint, except admit so much of Paragraph 55 as seeks to allege that Debtor Defendants, GGAM, and certain Cantor employees acting on behalf of GGAM, communicated about the terms of the MSA between June 2011 and September 2011.

56.     Deny the allegations in Paragraph 56 of the Complaint, except admit so much of Paragraph 56 as seeks to allege the existence of the excerpted email, and respectfully refer the Court to that email for the complete and accurate statement of its contents.

57.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 57 of the Complaint concerning GGAM's and/or Cantor's view of the importance and/or materiality of the right to participate in any other similar casino projects that Razon might pursue, otherwise deny the allegations in Paragraph 57, except admit so much of Paragraph 57 as seeks to allege that by late August and/or early September 2011, Debtor Defendants and GGAM agreed that (i) GGAM would provide the requested services in exchange for management fees and the equity option, and (ii) the Debtor Defendants, or any of their

directors, partners, officers or affiliates were prohibited from being involved in the ownership, management or operation of another casino or casino/hotel project in the Philippines of the same magnitude or scale as Solaire unless GGAM had been invited to render management services in such other facilities, and respectfully refer the Court to the MSA for the complete and accurate statement of the terms thereof.

58.     Deny the allegations in Paragraph 58 of the Complaint, except admit so much of Paragraph 58 as seeks to allege that (i) the Debtor Defendants and GGP entered into the MSA, and (ii) BRC, GGP, and Prime Metroline Transit Corp. ("Prime") entered into an Equity Option Agreement ("EOA"), to which was annexed a Participation Agreement, and respectfully refer the Court to the MSA, EOA, and Participation Agreement for the complete and accurate terms thereof.

59.     Deny the allegations in Paragraph 59 of the Complaint, except admit so much of Paragraph 59 as seeks to allege that (i) the MSA was executed on or around September 9, 2011, (ii) a Cantor employee on behalf of GGAM emailed GGP's MSA signature page to Occeña in the Philippines, (iii) Occeña emailed the fully executed MSA to the Cantor employee on behalf of GGAM, and respectfully refer the Court to the MSA for the complete and accurate terms thereof.

60.     Deny the allegations in Paragraph 60 of the Complaint, except admit so much of Paragraph 60 as seeks to allege that (i) Razon's December 7, 2014 Declaration submitted in the arbitration contains the language quoted in footnote 7, and (ii) Clause 18.3 of the MSA contains the language quoted in Paragraph 60, and respectfully refer the Court to Razon's December 7, 2014 Declaration and the MSA for the complete and accurate statement of their contents.

61.     Deny the allegations in Paragraph 61 of the Complaint, and respectfully refer the Court to the MSA for the complete and accurate terms thereof.

62.     Deny the allegations in  Paragraph 62 of the Complaint, except admit so much of Paragraph 62 as seeks to allege that (i) BRHI, which holds the provisional gaming license to operate Solaire's gaming operations in the Philippines, and SPI, the parent company of BRHI that owns the hotel and non-gaming components of Solaire, entered into the MSA with GGP, and (ii) Razon executed the MSA as Chairman and CEO of BRHI and SPI.

63.     Deny the allegations in Paragraph 63 of the Complaint, and respectfully refer the Court to the MSA for the complete and accurate terms thereof.

64.     Deny the allegation in the first sentence of Paragraph 64 of the Complaint, deny having knowledge or information sufficient to form a belief regarding the truth of the remaining allegations in Paragraph 64, except admit so much of Paragraph 63 as seeks to allege that (i) certain principals of GGAM had residences in the United States, and (ii) GGAM participated in meetings and conferences in New York and elsewhere in the United States with potential investors in BRC's "top-up offering."

65.     Deny the allegations in Paragraph 65 of the Complaint.

66.     Deny the allegations in Paragraph 66 of the Complaint.

67.     Deny the allegations in Paragraph 67 of the Complaint, except admit so much of Paragraph 67 as seeks to allege that (i) Prime previously owned all of the equity interest in SPI, which it sold to BRC on February 6, 2012, (ii) BRHI was a wholly owned subsidiary of SPI, and (iii) Prime changed its name to Prime Metroline Holdings, Inc. in 2012, and then changed its name to Prime Strategic Holdings, Inc. on or around August 11, 2020.

68.     Deny the allegations in Paragraph 68 of the Complaint, except admit so much of Paragraph 68 as seeks to allege that Occeña has served as an executive officer at ICTSI, a Director

and the Treasurer of Prime, the Treasurer of SPI and BRHI, and the Chief Financial Officer and Treasurer of BRC.

69.     Deny the allegations in Paragraph 69 of the Complaint, except admit so much of Paragraph 69 as seeks to allege that Christian Gonzalez, who is Razon's nephew, is an Executive Vice President of ICTSI and a Director of BRC, SPI and BRHI.

70.     Deny the allegations in Paragraph 70 of the Complaint, except admit so much of Paragraph 70 as seeks to allege that Silverio Benny Tan is a Director and Corporate Secretary of Prime, an Assistant Corporate Secretary of ICTSI, the Corporate Secretary of Apex Mining Co., and the Corporate Secretary of BRC, SPI and BRHI.

71.     Deny the allegations in Paragraph 71 of the Complaint, except admit so much of Paragraph 71 as seeks to allege that (i) Thomas Arasi is currently the President of BRC and BRHI and was the President of SPI, (ii) Donato Almeda is currently a Director of BRC, BRHI and SPI, and (iii) Jose Eduardo Alarilla is currently a Director of BRC and BRHI.

72.     Deny the allegations in Paragraph 72 of the Complaint, except admit so much of Paragraph 72 as seeks to allege that Razon serves as the Chairman and Chief Executive Officer of BRC and the Chairman of SPI and BRHI.

73.     Deny the allegations in Paragraph 73 of the Complaint, except admit so much of Paragraph 73 as seeks to allege that (i) on September 30, 2011, the SPI shares were transferred to Prime, and (ii) on February 6, 2012, BRC acquired Prime's shares in SPI.

74.     Deny the allegations in Paragraph 74 of the Complaint.

75.     Deny the allegations in Paragraph 75 of the Complaint, except admit so much of Paragraph 75 as seeks to allege that (i) Clause 18.3 of the MSA stated that "[t]he parties shall execute a mutually acceptable Option Agreement to embody the share purchase option," and

respectfully refer the Court to the MSA for the complete and accurate terms thereof, and (ii) Debtor Defendants, GGAM, and certain Cantor employees acting on behalf of GGAM communicated about the terms of the EOA and the Participation Agreement annexed thereto prior to the EOA being executed on April 16, 2012.

76. Deny the allegations in Paragraph 76 of the Complaint, except admit so much of Paragraph 76 as seeks to allege that (i) on February 6, 2012, BRC acquired Prime's shares in SPI, (ii) the new BRC shares were listed on the PSE on March 9, 2012, completing the "backdoor listing," and (iii) BRC shares are traded under the symbol BLOOM:PM.

77. Deny the allegations in Paragraph 77 of the Complaint, except admit so much of Paragraph 77 as seeks to allege that on April 16, 2012, GGP, Prime, and BRC entered into the EOA, and respectfully refer the Court to the EOA for the complete and accurate terms thereof.

78. Deny the allegations in Paragraph 78 of the Complaint, and respectfully refer the Court to the MSA, EOA, and Participation Agreement for the complete and accurate terms thereof.

79. Deny the allegations in Paragraph 79 of the Complaint, except admit so much of Paragraph 79 as seeks to allege that Alarilla executed the EOA on behalf of Prime and BRC, and respectfully refer the Court to the EOA for the complete and accurate terms thereof.

80. Deny the allegations in Paragraph 80 of the Complaint, and respectfully refer the Court to the EOA and Participation Agreement for the complete and accurate terms thereof.

81. Deny the allegations in Paragraph 81 of the Complaint, except admit so much of Paragraph 81 as seeks to allege that Occeña executed the Participation Agreement on behalf of BRC and Prime, and respectfully refer the Court to the Participation Agreement, which is annexed to the EOA, for the complete and accurate terms thereof.

82.     Deny the allegations in Paragraph 82 of the Complaint, except admit so much of Paragraph 82 as seeks to allege that (i) certain principals of GGAM participated in a "road show" in April and May 2012 to meet with potential investors in advance of a "top-up" equity offering, (ii) the road show began in Washington, D.C. and included presentations in New York, San Francisco, Boston, Kansas City, Denver, Asia, and the United Kingdom, and (iii) the road show presentations were attended by Razon, Occeña, other executives of Debtor Defendants, and/or certain principals of GGAM.

83.     Deny the allegations in Paragraph 83 of the Complaint, except (i) admit that GGP, Prime, BRC, Falcon Investco Holdings, Inc., and Quasar Holdings, Inc. executed lock-up agreements in connection with the top-up offering, and respectfully refer the Court to those agreements, as well as the placing agreement executed by BRC, for the complete and accurate terms thereof, and (ii) as to footnote 14, state that the Debtor Defendants lack knowledge and information sufficient to form a belief as to why New York law was selected for the top-up agreement form that the various companies were asked to sign.

84.     Deny the allegations in Paragraph 84 of the Complaint, except admit so much of Paragraph 84 as seeks to allege that (i) on May 1, 2012, Razon, Occeña, Weidner and Saunders attended road show meetings with potential investors in New York City, and (ii) a dinner was held in Manhattan on May 1, 2012.

85.     Deny the allegations in Paragraph 85 of the Complaint, except admit so much of Paragraph 85 as seeks to allege that the Gulfstream jet N818KE made 25 trips to Teterboro, New Jersey between March 2011 and September 12, 2013.

86.     Deny having knowledge and information sufficient to form a belief regarding the truth of the allegations in the last sentence of Paragraph 86 of the Complaint, and respectfully refer

the Court to Exhibit B to the Declaration of Leo D. Venezuela, dated December 7, 2014 and submitted in the arbitration, for the complete and accurate statement of its contents, including a list of BRC's investors in the "top-up offering," and otherwise deny the allegations in Paragraph 86, except admit so much of Paragraph 86 as seeks to allege that (i) Razon's December 7, 2014 Declaration submitted in the arbitration contains the language quoted in Paragraph 86, and respectfully refer the Court to that declaration for the complete and accurate statement of its contents, (ii) the top-up offering closed on May 3, 2012, at PHP 7.50 per share, and (iii) the top-up offering raised more than $209 million.

87.    Deny the allegations in Paragraph 87 of the Complaint, except admit so much of Paragraph 87 as seeks to allege that (i) Brad Stone made statements at UBS Global Emerging Markets Conferences in New York and San Francisco in November 2012, and (ii) a transcript of a November 16, 2012 investor presentation reflects that Occeña made statements at this presentation, and respectfully refer the Court to the November 16, 2012 transcript for the complete and accurate statement of its contents.

88.    Deny the allegations in Paragraph 88 of the Complaint, except admit so much of Paragraph 88 as seeks to allege the existence of the email excerpted in Paragraph 88, and respectfully refer the Court to that email for the complete and accurate statement of its contents.

89.    Deny the allegations in Paragraph 89 of the Complaint, except admit so much of Paragraph 89 as seeks to allege that on June 20, 2012, Forbes Asia published an article stating that Razon's net worth increased from $1.6 billion to $3.6 billion.

90.    Deny the allegations in Paragraph 90 of the Complaint, except admit so much of Paragraph 90 as seeks to allege that on or around December 20, 2012, GGP executed the equity option to purchase the Option Shares for approximately $37.43 million.

91.     Deny the allegations in Paragraph 91 of the Complaint, except admit so much of Paragraph 91 as seeks to allege that as of the date this Action was filed, (i) Prime held 53.80% of BRC's common stock, (ii) Razon & Co. Inc. (formerly known as Falcon Investco Holdings) held 2.04% of BRC's common stock, and (iii) Quasar Holdings, Inc. held 8.35% of BRC's common stock.

92.     Deny the allegations in Paragraph 92 of the Complaint, except admit so much of Paragraph 92 as seeks to allege that (i) Solaire held its grand opening on March 16, 2013, and (ii) Solaire opened on time, on budget, and to outstanding reviews.

93.     Deny the allegations in Paragraph 93 of the Complaint.

94.     Deny the allegations in Paragraph 94 of the Complaint, except admit so much of Paragraph 94 as seeks to allege that the language quoted in Paragraph 94 is found in the "Message of Enrique K. Razon for the 2013 Bloomberry Resorts Corp. Shareholders' Meeting," and respectfully refer the Court to that message for the complete and accurate statement of its contents.

95.     Deny the allegations in Paragraph 95 of the Complaint, except admit so much of Paragraph 95 as seeks to allege that a subsidiary of BRC, Solaire Korea Co., Ltd., operates a casino in Korea, and another subsidiary of BRC, Bloomberry Resorts Japan, Inc., is planning to develop a casino in Japan.

96.     Deny the allegations in Paragraph 96 of the Complaint.

97.     Deny the allegations in Paragraph 97 of the Complaint.

98.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 98 of the Complaint.

99.     Deny the allegations in Paragraph 99 of the Complaint, except admit so much of Paragraph 99 as seeks to allege that Razon (i) is the chairman of Pilipinas Golf Tournaments, Inc.,

which runs the Philippine Golf Tour, (ii) is a donor to De La Salle University's sports program, (iii) donated PHP 50 million to the De La Salle University for the Enrique M. Razon Sports Complex, named after Razon's father, and (iv) is a member of the American Management Association, the U.S.-Philippines Society, and the World Economic Forum.

100.    Deny the allegations in Paragraph 100 of the Complaint, except admit so much of Paragraph 100 as seeks to allege that on July 12, 2013, Razon sent an email to certain principals of GGAM, and respectfully refer the Court to that email and the Liability Award for the complete and accurate statement of their contents.

101.    Admit the allegation in Paragraph 101 of the Complaint that on July 30, 2013, BRC issued a press release that attributed to Razon a statement that "Solaire has begun to generate profit after only a few months," and respectfully refer the Court to that press release for the complete and accurate statement of its contents.

102.    Deny the allegations in Paragraph 102 of the Complaint, except admit so much as Paragraph 102 as seeks to allege that on September 12, 2013, Debtor Defendants and BRC sent GGAM a formal Notice of Termination of the MSA and the Participation Agreement.

103.    Admit the allegations in Paragraph 103 of the Complaint.

104.    Admit the allegation in Paragraph 104 of the Complaint that Clause 19.2(b) of the MSA contains the language quoted in Paragraph 104, and respectfully refer the Court to the MSA for the complete and accurate terms thereof.

105.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 105 of the Complaint, and respectfully refer the Court to the Liability Award and the Final Award for the complete and accurate statement of their contents, including GGP's claims and requested relief in the arbitration.

106.     Deny the allegations in Paragraph 106 of the Complaint, except admit so much of Paragraph 106 as seeks to allege that (i) on the date the MSA was terminated, BRC's shares were being traded on the public market between PHP 11.8 and PHP 12.3 per share, which was higher than the price paid for the Option Shares, and (ii) after the MSA was terminated and before the arbitral tribunal was constituted, GGP attempted to sell the Option Shares.

107.     Aver with respect to Paragraph 107 of the Complaint that it is Debtor Defendants' understanding that on or about January 15, 2014, Plaintiff was planning to sell the Option Shares at PHP 8.05 per share through a block sale to more than 50 institutional investors.

108.     Deny the allegations in Paragraph 108 of the Complaint, and respectfully refer the Court to (i) the September 13, 2013 *Wall Street Journal* article, and (ii) Razon's December 7, 2014 Declaration submitted in the arbitration for the complete and accurate statement of their contents.

109.     Deny the allegations in Paragraph 109 of the Complaint.

110.     Deny the allegations in Paragraph 110 of the Complaint, except admit so much of Paragraph 110 as seeks to allege that (i) on January 15, 2014, BRC sent a letter to the PSE requesting a voluntary trading suspension of BRC shares from January 16, 2014 to January 23, 2014, (ii) on January 16, 2014 Plaintiff sent a letter to the PSE to request that the PSE withdraw the suspension of the trading of BRC shares, and (iii) on January 17, 2014, the PSE lifted the trading suspension upon Plaintiff's request, and respectfully refer the Court to BRC's letter and GGP's letter to the PSE for the complete and accurate statement of their contents.

111.     Deny the allegations in Paragraph 111 of the Complaint, except admit so much of Paragraph 111 as seeks to allege that (i) on or about January 17, 2014, the Debtor Defendants and Prime filed a petition with the Regional Trial Court ("RTC") in Makati for writs and a TRO, and respectfully refer the Court to the January 17, 2014 petition for the complete and accurate statement

of its contents, (ii) on January 20, 2014, the RTC granted the TRO, and (iii) on February 27, 2014, the RTC issued writs of preliminary attachment and preliminary injunction, and respectfully refer the Court to the February 27, 2014 RTC order for the complete and accurate statement of its contents.

112.    Deny the allegations in Paragraph 112 of the Complaint, except admit so much of Paragraph 112 as seeks to allege that as a result of the preliminary writs issued by the RTC, Deutsche Bank transferred the Option Shares to a restricted, non-trading account where they are still held today.

113.    Deny the allegations in paragraph 113 of the Complaint, except admit so much of Paragraph 113 as seeks to allege that (i) the three-member arbitral tribunal was formed on March 28, 2014, and (ii) during the arbitration, Debtor Defendants were represented by a Washington D.C.-based team from the global law firm now named Milbank LLP.

114.    Deny the allegations in Paragraph 114 of the Complaint, except admit so much of Paragraph 114 as seeks to allege that the Final Award was issued on September 27, 2019, and respectfully refer the Court to the Final Award for the complete and accurate statement of its contents.

115.    Deny the allegations in Paragraph 115 of the Complaint, except admit so much of Paragraph 115 as seeks to allege that the arbitral tribunal issued its Interim Measures Award on December 9, 2014, and respectfully refer the Court to the Interim Measures Award for the complete and accurate statement of its contents.

116.    Admit the allegations in Paragraph 116 of the Complaint.

117.    Deny the allegations in Paragraph 117 of the Complaint, except admit so much of Paragraph 117 as seeks to allege that (i) the arbitral tribunal conducted its merits hearing on

liability in Singapore from October 15-24, 2015, and (ii) on September 20, 2016, the arbitral tribunal issued the Liability Award, and respectfully refer the Court to the Liability Award for the complete and accurate statement of its contents.

118. Admit that (i) the arbitral tribunal conducted its merits hearing on remedies in Washington, D.C., from May 28 – June 1, 2018, (ii) on September 27, 2019, the arbitral tribunal issued the Final Award, and (iii) the Final Award contains substantially the phrase quoted in Paragraph 118 of the Complaint, and respectfully refer the Court to the Final Award for the complete and accurate statement of its contents.

119. Deny the allegations in Paragraph 119 of the Complaint, except admit so much of Paragraph 119 as seeks to allege that the Final Award contains the quoted language, and respectfully refer the Court to the Final Award for the complete and accurate statement of its contents.

120. Deny the allegations in Paragraph 120 of the Complaint, and respectfully refer the Court to the Final Award for the complete and accurate statement of its contents.

121. Deny the allegations in Paragraph 121 of the Complaint, and respectfully refer the Court to the Final Award for the complete and accurate statement of its contents.

122. Admit the allegations in Paragraph 122 of the Complaint.

123. Paragraph 123 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Debtor Defendants respectfully refer the Court to the referenced decisions of the High Court of Singapore and the Singapore Court of Appeal for the complete and accurate statement of their contents.

124. Paragraph 123 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Debtor Defendants respectfully refer the Court to

the referenced decisions of the High Court of Singapore and the Singapore Court of Appeal for the complete and accurate statement of their contents.

125.     Deny the allegations in Paragraph 125 of the Complaint, except admit so much of Paragraph 125 as seeks to allege that the Debtor Defendants have renewed annually the preliminary injunction and preliminary attachment bonds, and respectfully refer the Court to the Interim Measures Award for the complete and accurate statement of its contents.

126.     Deny the allegations in Paragraph 126 of the Complaint, and respectfully refer the Court to the Liability Award for the complete and accurate statement of its contents.

127.     Deny the allegations in Paragraph 127 of the Complaint, except admit so much of Paragraph 127 as seeks to allege that (i) on or around November 14, 2016, BRC filed its SEC 17-Q (Quarterly Report) with the PSE, (ii) on March 17, 2017, Plaintiff's counsel sent a letter to Debtor Defendants' counsel, and (iii) on March 27, 2017, Debtor Defendants' counsel sent a letter to Plaintiff's counsel, and respectfully refer the Court to the November 14, 2016 BRC filing, the March 17, 2017 letter, and the March 27, 2017 letter for the complete and accurate statement of their contents.

128.     Deny the allegations in Paragraph 128 of the Complaint, except admit so much of Paragraph 128 as seeks to allege that on (i) on October 10, 2016, Plaintiff's counsel wrote to Debtor Defendants' counsel, (ii) on March 17, 2017, Plaintiff's counsel wrote to Debtor Defendants' counsel, and (iii) on April 3, 2017, Plaintiff's counsel wrote to Debtor Defendants' counsel, and respectfully refer the Court to these letters for the complete and accurate statement of their contents.

129.     Deny the allegations in Paragraph 129 of the Complaint, except admit so much of Paragraph 129 as seeks to allege that (i) on or around September 28, 2015, Razon and Alarilla met

with GGAM's representatives in San Francisco to discuss potential settlement, and (ii) on May 11, 2017, representatives of GGAM and the Debtor Defendants met at Cantor's New York office to discuss potential settlement. Debtor Defendants note that these meetings were confidential settlement discussions.

130. Deny the allegations in Paragraph 130 of the Complaint.

131. Deny the allegations in Paragraph 131 of the Complaint.

132. The second clause of the final sentence of Paragraph 132 of the Complaint states legal conclusions to which no response is required. Debtor Defendants otherwise deny the allegations in Paragraph 132, and respectfully refer the Court to BRC's June 1, 2020 Philippine SEC disclosure for the complete and accurate statement of its contents.

133. Deny the allegations in Paragraph 133 of the Complaint.

134. Deny the allegations in Paragraph 134 of the Complaint, except admit so much of Paragraph 134 as seeks to allege that BRC's PowerPoint presentation during the "investor road show" contained the "BRC corporate structure" image included in Paragraph 134, and respectfully refer the Court to the PowerPoint presentation for the complete and accurate statement of its contents.

135. Deny the allegations in Paragraph 135 of the Complaint, except (i) aver that it is Debtor Defendants' understanding that since 2012, Razon has directly or indirectly controlled at least 63% of BRC's common stock, and (ii) admit that BRC's "road show" presentation contained the "Overview of Bloomberry Resorts Corporation" image copied in Paragraph 135, and respectfully refer the Court to the PowerPoint presentation for the complete and accurate statement of its contents.

136.     Deny the allegations in Paragraph 136 of the Complaint, except admit so much of Paragraph 136 as seeks to allege that the transcript from an investor conference in November 2012 contains the language quoted in Paragraph 136, and respectfully refer the Court to the transcript for the complete and accurate statement of its contents.

137.     Deny the allegations in Paragraph 137 of the Complaint.

138.     Deny the allegations in Paragraph 138 of the Complaint, except admit so much of Paragraph 138 as seeks to allege that a May 2012 email from Occeña to Garry Saunders contained the language quoted in Paragraph 138, and respectfully refer the Court to that email for the complete and accurate statement of its contents.

139.     Deny the allegations in Paragraph 139 of the Complaint.

140.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 140 of the Complaint regarding any purported friendship between Mr. and Mrs. Razon and Rosanna Go, deny the remaining allegations in Paragraph 140, except admit so much of Paragraph 140 as seeks to allege that (i) the email excerpted in Paragraph 140 exists, and respectfully refer the Court to that email for the complete and accurate statement of its contents, and (ii) that MORE Electric Power Corp. is an electricity distributor in the city of Iloilo in the Philippines.

141.     Deny the allegations in Paragraph 141 of the Complaint, except admit so much of Paragraph 141 as seeks to allege that on March 27, 2021, Razon and his family flew from Manila to Newark, New Jersey, on the Gulfstream jet N818KE.

142.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 142 of the Complaint.

143.     Deny the allegations in Paragraph 143 of the Complaint.

144. The Court dismissed all claims against the Alter Ego Entities (as defined in the Complaint), and therefore, no response is required for Paragraphs 144 to 148 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraphs 144 to 148.

145. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149 of the Complaint.

146. Deny the allegation in first clause of Paragraph 150 of the Complaint, and otherwise deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 150.

147. Deny the allegations in the first sentence of Paragraph 151 of the Complaint. The Court dismissed all claims against the Energy Entities, and therefore, no response is required to the second sentence of Paragraph 151. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 151.

148. Deny the allegations in Paragraph 152 of the Complaint.

149. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 153 of the Complaint.

150. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 154 of the Complaint.

151. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 155 of the Complaint.

152. Deny the allegations in Paragraph 156 of the Complaint, except admit so much of Paragraph 156 as seeks to allege that a January 21, 2014 Forbes Magazine article with the indicated

title contains the language quoted in footnote 22, and respectfully refer the Court to the article for the complete and accurate statement of its contents.

153. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 157 of the Complaint.

154. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 158 of the Complaint.

155. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 159 of the Complaint.

156. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 160 of the Complaint.

157. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 161 of the Complaint.

158. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 162 of the Complaint, except admit so much of Paragraph 162 as seeks to allege that a January 21, 2014 Forbes article with the indicated title contained the language quoted in footnote 24, and respectfully refer the Court to the article for the complete and accurate statement of its contents.

159. The Court dismissed all claims against the Energy Entities (as defined in the Complaint), and therefore, no response is required for Paragraph 163 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 163.

160.    The Court dismissed all claims against the Energy Entities, and therefore, no response is required for Paragraph 164 of the Complaint.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 164.

161.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 165 of the Complaint.

162.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 166 of the Complaint.

163.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 167 of the Complaint.

164.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 168 of the Complaint.

165.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 169 of the Complaint.

166.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 170 of the Complaint.

167.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 171 of the Complaint.

168.    Deny having knowledge or information sufficient to form a belief as to the truth of the allegations Paragraph 172 of the Complaint, except admit so much of Paragraph 172 as seeks to allege the existence of the email excerpted in Paragraph 172 of the Complaint, and respectfully refer the Court to the email for the complete and accurate statement of its contents.

169.    The Court dismissed all claims against the Energy Entities, and therefore, no response is required for Paragraph 173 of the Complaint.  To the extent a response is required,

Debtor Defendants deny the allegations concerning Debtor Defendants in the second sentence of Paragraph 174, and otherwise deny having knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 173.

170.     Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 174 of the Complaint.

171.     The Court dismissed all claims against the Energy Entities, and therefore, no response is required to Paragraph 175 of the Complaint.  To the extent a response is required, Debtor Defendants deny the allegations regarding the Debtor Defendants in the first sentence of Paragraph 175, and deny having knowledge or information sufficient to form a belief as to the truth of the allegations in the remainder of Paragraph 175.

172.     The Court dismissed all claims against the Energy Entities, and therefore, no response is required to Paragraph 176 of the Complaint.  To the extent a response is required, Debtor Defendants deny the allegations regarding the Debtor Defendants in the first sentence of Paragraph 176 and deny having knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 176, except admit so much of Paragraph 176 as seeks to allege the existence of the email excerpted in Paragraph 176 and respectfully refer the Court to the referenced email for a complete and accurate statement of its contents.

173.     The Court dismissed all claims against CUSA, CBUSA, Collingwood Cayman, Collingwood Holdings, and Asia Arrow, and therefore, no response is required to Paragraph 177 of the Complaint.  To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 177.

174.     The Court dismissed all claims against CUSA, CBUSA, Collingwood Cayman, Collingwood Holdings, and Asia Arrow, and therefore, no response is required to Paragraph 178

of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 178.

175. The Court dismissed all claims against CUSA, CBUSA, Collingwood Cayman, Collingwood Holdings, and Asia Arrow, and therefore, no response is required to Paragraph 179 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 179.

176. The Court dismissed all claims against the Energy Entities, including CUSA, CBUSA, and therefore, no response is required to Paragraph 180 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 180, except admit so much of Paragraph 180 as seeks to allege that Alarilla is a Director of BRC.

177. The Court dismissed all claims against the Energy Entities, and therefore, no response is required to Paragraph 181 of the Complaint. To the extent a response is required, Debtor Defendants deny the allegations regarding the Debtor Defendants in the first sentence of Paragraph 181, and otherwise deny having knowledge or information sufficient to form a belief as to the truth of the remainder of allegations in Paragraph 181, except admit so much of Paragraph 181 as seeks to allege the existence of the email excerpted in Paragraph 181, and respectfully refer the Court to that email for the complete and accurate statement of its contents.

178. The Court dismissed all claims against the Energy Entities, and therefore, no response is required to Paragraph 182 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 182.

179.     The Court dismissed all claims against the Energy Entities, and therefore, no response is required Paragraph 183 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 183, except admit so much of Paragraph 183 as seeks to allege that Arnold Rivas is BRC's Vice President for Administration, Gerard "Bing" Festin is BRC's Vice President for Controllership, Fritz Lacap is BRC's Vice President for Business Development and Corporate Planning, Silverio Benny Tan is BRC's Corporate Secretary and Compliance Officer, and Occeña is Treasurer of the Debtor Defendants.

180.     The Court dismissed all claims against the Energy Entities, and therefore, no response is required to Paragraph 184 of the Complaint. Further, the first sentence of Paragraph 184 states legal conclusions to which no response is required. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the factual allegations in Paragraph 184.

181.     The Court dismissed all claims against CUSA, and therefore, no response is required to Paragraph 185 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 185, except admit so much of Paragraph 185 as seeks to allege the existence of the email excerpted in Paragraph 185, and respectfully refer the Court to that email for the complete and accurate statement of its contents.

182.     The Court dismissed all claims against CUSA, and therefore, no response is required to Paragraph 186 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 186.

183. The Court dismissed all claims against the Energy Entities, and therefore, no response is required Paragraph 187 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 187.

184. The Court dismissed all claims against the Energy Entities, and therefore, no response is required Paragraph 188 of the Complaint. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 188, except admit so much of Paragraph 188 as seeks to allege the existence of the chart copied in Paragraph 188, and respectfully refer the Court to the chart for the complete and accurate statement of its contents.

185. The Court dismissed all claims against the Energy Entities, including CUSA and CBUSA, and therefore, no response is required Paragraph 189 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 189, except admit so much of Paragraph 189 as seeks to allege the existence of the email excerpted in Paragraph 189, and respectfully refer the Court to the email for the complete and accurate statement of its contents.

186. The Court dismissed all claims against CUSA and CBUSA, and therefore, no response is required Paragraph 190 of the Complaint. To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 190.

187. Deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 191 of the Complaint.

188. The Court dismissed all claims against CUSA and CBUSA, and therefore, no response is required Paragraph 192 of the Complaint. To the extent a response is required, Debtor

Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 192.

189.     The Court dismissed all claims against the Energy Entities, and therefore, no response is required Paragraph 193 of the Complaint.  To the extent a response is required, Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 193.

190.     In response to Paragraph 194 of the Complaint, Debtor Defendants repeat and reallege their answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

191.     Paragraph 195 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants admit that the United States is a signatory to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), codified at Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201 *et seq.*

192.     Paragraph 196 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants admit that (i) the Liability Award and Final Award were issued by a three-member arbitral tribunal seated in Singapore, (ii) Singapore is a contracting state to the New York Convention, and (iii) the New York Convention applies to the Liability Award and the Final Award.

193.     Admit that copies of the Final Award, Liability Award, Interim Measures Award, and the MSA are attached to the Complaint as Appendices 1, 2, 3, and 4, respectively, and respectfully refer the Court to these Appendices for a complete and accurate statement of their respective contents.

194.    Admit that Clause 19.2 of the MSA contains the language quoted in Paragraph 198 of the Complaint, and respectfully refer the Court to the MSA for the complete and accurate terms thereof.

195.    Deny the allegations in Paragraph 199 of the Complaint, except admit so much of Paragraph 199 as seeks to allege that the Final Award was issued on September 27, 2019, and respectfully refer the Court to the Final Award for the complete and accurate statement of its contents.

196.    Paragraph 200 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 200.

197.    Paragraph 201 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 201.

198.    Paragraph 202 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 202.

199.    Paragraph 203 of the Complaint states legal conclusions to which no response is required. To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 203.

200.    Debtor Defendants repeat and reallege their answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

201.    Deny the allegations in Paragraph 205 of the Complaint.

202.     Paragraph 206 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 206.

203.     Deny the allegations in Paragraph 207 of the Complaint.

204.     Paragraph 208 of the Complaint is a prayer for relief to which no response is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 208.

205.     Paragraph 209 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 209.

206.     Paragraph 210 of the Complaint is a prayer for relief to which no response is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 210.

207.     Deny the allegations in Paragraph 211 of the Complaint and note that all claims against the Energy Entities and the Real Estate Entities have been dismissed.

208.     Paragraph 212 of the Complaint is a prayer for relief to which no response is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 212.

209.     Debtor Defendants repeat and reallege their answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

210.     Paragraph 214 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 214.

211.     Paragraph 215 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. Further, the last sentence of Paragraph 15 states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 215 to the extent they are made with respect to Debtor Defendants, and otherwise deny having knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 215.

212.     Paragraph 216 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 216.

213.     Paragraph 217 of the Complaint is a prayer for relief only to which no response is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 217.

214.     Paragraph 218 of the Complaint is a prayer for relief to which no response is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 218.

215.     Paragraph 219 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 219.

216.     Paragraph 220 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 220.

217.    Paragraph 221 of the Complaint is a prayer for relief to which no response is required.   To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 221.

218.    Debtor Defendants repeat and reallege their answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

219.    Paragraph 223 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 223.

220.    Deny the allegations in Paragraph 224 of the Complaint.

221.    Deny the allegations in Paragraph 225 of the Complaint.

222.    Paragraph 226 of the Complaint is a prayer for relief to which no response is required.   To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 226.

223.    Paragraph 227 of the Complaint is a prayer for relief to which no response is required.   To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 227.

224.    Paragraph 228 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 228.

225.    Paragraph 229 of the Complaint states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 229.

226. Paragraph 230 of the Complaint is a prayer for relief to which no response is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 230.

227. Debtor Defendants repeat and reallege their answers to the preceding paragraphs with the same force and effect as though fully set forth herein.

228. Paragraph 232 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 232.

229. Paragraph 233 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 216, except admit so much of Paragraph 216 as seeks to allege that (i) Plaintiff purchased the Option Shares from Prime in December 2012 pursuant to the EOA, and (ii) the MSA was terminated in September 2013.

230. Paragraph 234 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 234.

231. Paragraph 235 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 235.

232. Paragraph 236 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 236, except aver that it is Debtor Defendants'

understanding that on or about January 15, 2014, Plaintiff was planning to sell the Option Shares at PHP 8.05 per share through a block sale to more than 50 institutional investors.

233.    Paragraph 237 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 237, except admit so much of Paragraph 237 as seeks to allege that on January 15, 2014, BRC sent a letter to the PSE requesting a voluntary trading suspension of BRC shares from January 16, 2014 to January 23, 2014, and respectfully refer the Court to that letter for the complete and accurate statement of its contents.

234.    Paragraph 238 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 238, except admit so much of Paragraph 238 as seeks to allege that (i) on January 16, 2014 Plaintiff sent a letter to the PSE to request that the PSE withdraw the suspension of the trading of BRC shares, and (ii) on January 17, 2014, the PSE lifted the suspension of trading upon Plaintiffs' request.

235.    Paragraph 239 of the Complaint states a claim against Razon only, and therefore no response is required.  To the extent a response is required, the Debtor Defendants deny the allegations in Paragraph 239, except admit so much of Paragraph 239 as seeks to allege that (i) the arbitral tribunal was not yet constituted by January 17, 2014, (ii) on or about January 17, 2014, Debtor Defendants and Prime filed a petition with the RTC for a TRO, (iii) on January 20, 2014, the RTC granted the TRO, (iv) on February 27, 2014, the RTC issued writs of preliminary attachment and preliminary injunction, and (v) Deutsche Bank, the custodian of the Option Shares, transferred the Option Shares to a restricted, non-trading account, and respectfully refer the Court

to the RTC's January 20, 2014 and February 27, 2014 orders and rulings for the complete and accurate statement of its contents.

236. Paragraph 240 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 240, except admit so much of Paragraph 240 as seeks to allege that on or about December 9, 2014, the arbitral tribunal issued the Interim Measures Award, and respectfully refer the Court to the Interim Measures Award for the complete and accurate statement of its contents.

237. Paragraph 241 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 241.

238. Paragraph 242 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 242, except admit so much as Paragraph 242 as seeks to allege the existence of an article by ABS-CBN News, *Shares of Solaire operator Bloomberry fall*, dated Dec. 12, 2014, which contains the language quoted in Paragraph 242, and respectfully refer the Court to that article for the complete and accurate statement of its contents.

239. Paragraph 243 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required. To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 243, except admit so much of Paragraph 243 as seeks to allege that (i) on September 20, 2016, the arbitral tribunal issued the Liability Award, and (ii) on September 28, 2016, BRC made a public disclosure to the PSE, and respectfully refer the Court

to the Liability Award, BRC's September 28, 2016 disclosure, and the Final Award for the complete and accurate statement of their contents.

240.     Paragraph 244 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, the Debtor Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 244.

241.     Paragraph 245 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 245, except admit so much of Paragraph 245 as seeks to allege that (i) on October 10, 2016, Plaintiff's counsel sent a letter to Debtor Defendants' counsel, and (ii) on October 11, 2016, Debtor Defendants' counsel sent a letter to Plaintiff's counsel, and respectfully refer the Court to those letters and the Final Award for the complete and accurate statement of their contents.

242.     Paragraph 246 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 246, except admit so much of Paragraph 246 as seeks to allege that (i) on or about November 14, 2016, BRC made a public disclosure to the PSE, and (ii) on or about December 31, 2016, BRC made a public disclosure to the PSE, and respectfully refer the Court to these disclosures for the complete and accurate statement of their contents.

243.     Paragraph 247 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 247, except admit so much of Paragraph 247 as seeks to allege that (i) on or about March 17, 2017, Plaintiff's counsel sent a letter to Debtor Defendants'

counsel, (ii) on or about March 27, 2017, Debtor Defendants' counsel sent a letter to Plaintiff's counsel, (iii) on April 3, 2017, Plaintiff's counsel sent a letter to Debtor Defendants' counsel, and (iv) on April 10, 2017, Debtor Defendants' counsel sent a letter to Plaintiff's counsel, and respectfully refer the Court to these letters for the complete and accurate statement of their contents.

244.     Paragraph 248 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  Further, the second sentence of Paragraph 248 states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 248, except admit so much of Paragraph 248 as seeks to allege that on September 27, 2019, the arbitral tribunal issued the Final Award, and respectfully refer the Court to the Final Award for the complete and accurate statement of its contents.

245.     Paragraph 249 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 249.

246.     Paragraph 250 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 250, except admit so much of Paragraph 250 as seeks to allege that BRC made public disclosures on September 30, 2019, November 14, 2019, January 6, 2020, March 4, 2020, May 14, 2020, May 26, 2020, June 1, 2020, August 13, 2020, November 10, 2020, and February 16, 2021, and respectfully refer the Court to these disclosures for the complete and accurate statement of their contents.

247.     Paragraph 251 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 251, except admit so much of Paragraph 251 as seeks to allege that Debtor Defendants did not pay Plaintiff for the Option Shares within 30 days of the Final Award, and respectfully refer the Court to the Final Award for the complete and accurate statement of its contents.

248.     Paragraph 252 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 252, except admit so much of Paragraph 252 as seeks to allege that (i) Plaintiff's counsel sent a letter to Debtor Defendants' counsel on October 28, 2019, and (ii) Debtor Defendants sought to set aside the Liability Award and Final Award, and respectfully refer the Court to the October 28, 2019 letter and the decisions of the High Court of Singapore and the Singapore Court of Appeal for the complete and accurate statement of their contents.

249.     Paragraph 253 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  To the extent a response is required, Debtor Defendants deny the allegations in Paragraph 253, except admit so much of Paragraph 253 as seeks to allege that the Debtor Defendants have renewed the Bonds annually, and respectfully refer the Court to the Final Award for the complete and accurate statement of its contents.

250.     Paragraph 254 of the Complaint states a claim against Razon only, and therefore no response from Debtor Defendants is required.  Further, Paragraph 254 states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 254.

251.    Paragraph 255 of the Complaint states a claim against Razon only, and states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 255.

252.    Paragraph 256 of the Complaint states a claim against Razon only, and states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 256.

253.    Paragraph 257 of the Complaint states a claim against Razon only, and states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 257.

254.    Paragraph 258 of the Complaint states a claim against Razon only, and states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 258.

255.    Paragraph 259 of the Complaint states a claim against Razon only, and states legal conclusions to which no response is required.  To the extent a response is required, Debtor Defendants deny the factual allegations in Paragraph 259.

## AFFIRMATIVE DEFENSES

256.    By asserting the Affirmative Defenses set forth below, Debtor Defendants intend no alteration of the burden of proof and/or burden of going forward with evidence which otherwise exists with respect to any particular issues at law or in equity.  Furthermore, all such defenses are pleaded in the alternative, and do not constitute any admission of liability or that Plaintiff is entitled to any relief whatsoever.

### First Defense

257.    This Court lacks personal jurisdiction over the Debtor Defendants.

<u>Second Defense</u>

258.     Plaintiff's claims against Debtor Defendants are barred, in whole or in part, by the New York Convention, including the grounds for refusing enforcement set forth in Article V therein, and specifically including Articles V(1)(b) and V(2)(b), and including but not limited to reason of (i) the inability of Debtor Defendants to present their case and the lack of due process afforded Debtor Defendants, and (ii) recognition and enforcement of the Awards would be contrary to the public policy of the United States because, *inter alia*, GGP committed fraud in the arbitration, as detailed in Defendants' Opposition to Plaintiff's Emergency Motion (Dkt. No. 30), Spectrum Report (Dkt. No. 30-1), BRHI's and SPI's Letter Motion to Compel GGP to Produce Documents (Dkt. No. 104), BRHI's and SPI's Letter in further Support of their Motion to Compel GGP to Produce Documents (Dkt. No. 141), and BRHI's and SPI's Rule 72(a) Objection to the Magistrate Judge's September 16, 2021 Order Denying Their Motion to Compel (Dkt. No. 165), and/or seeks to collect on the Final Award in violation of the tax laws of the Republic of the Philippines and potentially other countries.

<u>Third Defense</u>

259.     Plaintiff's claims against Debtor Defendants are barred, in whole or in part, by the doctrine of unclean hands, *in pari delicto*, and/or unjust enrichment, as detailed in Defendants' Opposition to Plaintiff's Emergency Motion (Dkt. No. 30), Spectrum Report (Dkt. No. 30-1), BRHI's and SPI's Letter Motion to Compel GGP to Produce Documents (Dkt. No. 104), BRHI's and SPI's Letter in further Support of their Motion to Compel GGP to Produce Documents (Dkt. No. 141), and BRHI's and SPI's Rule 72(a) Objection to the Magistrate Judge's September 16, 2021 Order Denying Their Motion to Compel (Dkt. No. 165).

### Fourth Defense

260.   Plaintiff's claims against Debtor Defendants are barred, in whole or in part, by *res judicata* and/or the doctrine of estoppel, including judicial, collateral, and equitable estoppel.

### Fifth Defense

261.   Plaintiff's claims against Debtor Defendants are barred, in whole or in part, and this Court lacks and/or should decline to exercise jurisdiction, by application of principles of international comity and *forum non conveniens*.

### Sixth Defense

262.   Plaintiff's prayer seeking injunctive relief against Debtor Defendants is barred because Plaintiff has an adequate remedy at law, as detailed in Defendants' Opposition to Plaintiff's Emergency Motion (Dkt. No. 30).

### Seventh Defense

263.   The Complaint fails to state a claim on which injunctive relief can be granted as to the Debtor Defendants.

### Eighth Defense

264.   Plaintiff's claims against Debtor Defendants are barred, in whole or in part, because Plaintiff seeks damages in excess of the arbitral award.

### Ninth Defense

265.   Debtor Defendants intend to rely upon such other and further defenses as may become available or apparent during pre-trial proceedings in this case and hereby reserve all rights to assert such defenses.

**RULE 44.1 NOTICE**

Pursuant to Rule 44.1 of the Federal Rules of Civil Procedure, Debtor Defendants give notice that they intend to raise issues about international law and the law of foreign countries, potentially including the Philippines. Debtor Defendants are in the process of investigating such foreign law, and reserve the right to amend this Answer and Affirmative Defenses in accordance therewith, including but not limited to by pleading additional affirmative defenses that may be available thereunder.

Dated:  June 28, 2022                MILBANK LLP
        New York, New York

                            By:  /s/ Daniel M. Perry
                                Daniel M. Perry
                                55 Hudson Yards
                                New York, NY 10001
                                Telephone: (212) 530-5000
                                Facsimile: (212) 530-5219

                                Erin M. Culbertson
                                Brett P. Lowe (admitted *Pro Hac Vice*)
                                1850 K Street, NW
                                Suite 1100
                                Washington, DC 20006
                                Telephone: (202) 835-7500
                                Facsimile: (202) 263-7586
                                *Counsel to Defendants Bloomberry Resorts and Hotels, Inc. and Sureste Properties, Inc.*