**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GLOBAL GAMING PHILIPPINES, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ENRIQUE K. RAZON, JR., et al.,<br><br>*Defendants*. | No. 21-CV-2655 (LGS) |

**SUPPLEMENTAL DECLARATION OF MARJORIE UYENGCO-NOLASCO**

I, Marjorie T. Uyengco-Nolasco, declare as follows:

1. I previously submitted a Declaration dated 18 April 2022 ("First Nolasco Declaration") in support of Defendant Enrique K. Razon's motion to dismiss Count V of the Second Amended Complaint of Plaintiff GGAM.[1] I addressed certain matters of Philippine law, particularly with regard to "trespass to chattels", *res judicata* and splitting a cause of action, and entitlement to punitive damages.

2. I have reviewed the *Plaintiff's Opposition to Defendant Enrique K. Razon, Jr.'s Partial Motion to Dismiss* dated 17 June 2022 (the "GGAM Opposition") and the *Declaration of (Ret.) Justice Reynato S. Puno* dated 17 June 2022 (the "Puno Declaration") submitted in support of Plaintiff and in response to the First Nolasco Declaration. I submit this Supplemental Declaration to respond to certain assertions in the Puno Declaration.

I. **Owner's Rights Over His Property**

3. The Puno Declaration discusses Article 428 of the Civil Code of the Philippines. Article 428 provides that "[t]he owner has the right to enjoy and dispose of a thing, without other limitations than those established by law. The owner has also a right of action against the holder and possessor of the thing in order to recover it." With respect, there are at least three conceptual flaws with the Puno Declaration's suggestion that Article 428 creates a cause of action equivalent to trespass to chattels.

4. First: Article 428 does not create an action for damages for interference with property, contrary to what the Puno Declaration (¶ 9) suggests. The right of action created by Article 428 is for an owner to *recover* a thing that is being held and possessed by another. However, GGAM seems to be using the trespass claim mainly to obtain *damages* for alleged interference with the

---

[1] Where not specified, capitalized terms have the same meanings assigned in the First Nolasco Declaration.

1

shares. Puno Decl. ¶ 9; GGAM Opp 13-15. The Puno Declaration does not address this mismatch between what the statute says and the remedy sought by Plaintiff.

5. Further, neither of the cases relied on by the Puno Declaration provides support for the idea that Article 428 authorizes an equivalent to "trespass to chattels." Both are concerned simply with expounding on the rights that an owner of property possesses. Neither case involved a claim brought under Article 428 (or an equivalent uncodified legal right) or even cites Article 428. And neither case involved a claim comparable in any way to the "trespass to chattels" claim here.[2]

6. The second reason Article 428 is inapplicable is that it requires that the property in question be "in possession of" the defendant. I see no allegation in the SAC that the Option Shares are in the possession of Mr. Razon. Rather, as alleged, the Option Shares remain in the custody of Deutsche Bank, in a restricted account. SAC at 86 n.30. Under the plain terms of the Civil Code, then, the Article 428 right of action would not support the trespass to chattels claim asserted here against Mr. Razon.

7. The final reason Article 428 is inapplicable is that **the right to ownership is subject to limitations established by law**. (The text states: "The owner has the right to enjoy and dispose of a thing, without *other limitations than those established by law*."). The Puno Declaration glosses over this important point.

8. In one of the very cases cited in the Puno Declaration, examples of such limitations to the right of ownership were provided, such as "limitations on donation and in the case of sale, the right of pre-emption of an adjoining owner and the right of first refusal under the Urban Land

---

[2] *Sen Po Ek Marketing Corp. vs. Martinez*, G.R. No. 134117, 9 February 2000, did not discuss a cause of action for damages, but rather an owner's right to sell the subject property. In this case, what was being questioned was the execution of a deed of absolute sale by the owner, with the claimant arguing that it had a right of first refusal over the property. *Fleischer vs. Botica Nolasco Co., Inc.*, G.R. No. L-23241, 14 March 1925, involved the refusal of a corporation to register a transfer of stock in its books. The case entailed no separate and stand-alone claim for damages.

2

Reform-Law (P.D. No. 1517) when the area is proclaimed as an urban land reform zone."[3] Additionally, *Fleischer* does not discuss any "limitations . . . established by law." The restrictions on stock transfer invalidated in that case were *not* established by law; they were set forth in a company's by-laws and were *contrary* to law.

9. Here, Philippine law as construed and applied by the courts of the Philippines expressly allows the limitation on the disposition of the Option Shares of which GGAM complains. Specifically, Rule 5 of the Special ADR Rules authorizes the issuance of interim measures of protection in the form of a writ of preliminary attachment and/or preliminary injunction. The right to use, enjoy, and dispose of one's property may of course be properly limited where the law allows for, and grants, a preliminary attachment or preliminary injunction. Thus the judicial restraint here – the writ and injunction on the Option Shares – plainly qualifies as a "limitation established by law."

10. It is also worth noting (even setting aside that, as discussed above, the trespass claim asserted here is not to *recover* property in the *possession* of another) the *"*basic tenet of civil procedure that replevin[4] will not lie for property in *custodia legis*. A thing is in *custodia legis* when it is shown that it has been and is subjected to the official custody of a judicial executive officer in pursuance of his execution of a legal writ. . . . [I]f it was otherwise, there would be interference with the possession before the function of the law had been performed as to the process under which the property was taken. Thus, a defendant in an execution or attachment cannot replevy goods in the possession of an officer under a valid process," although once the obligations

---

[3] *San Pe Ek Marketing Corp., supra*.

[4] Replevin "is an action for the recovery of personal property. . . . When utilized as a principal remedy, the objective is to recover possession of personal property that may have been wrongfully detained by another. When sought as a provisional relief, it allows a plaintiff to retain the contested property during the pendency of the action." *Enriquez vs. Mercantile Insurance Co.,* G.R. No. 210950, 15 August 2018.

3

for which any properties have been levied against have been satisfied, "an action to recover possession will lie."[5]

11. GGAM, in claiming that the application for interim measures constitutes interference with its rights of ownership, essentially argues that the said interim measures were wrongfully issued. As I explained in the First Nolasco Declaration (¶ 17), an owner of property subject to an injunction or attachment (whether issued under the Special ADR Rules or under the Rules of Court) has recourse to the injunction or attachment bond if he suffers damage as a result of an injunction or attachment later declared to be improvidently issued. The owner can seek those damages before the same court which issued the injunction or attachment. This recourse to the bond or against the party who obtained the injunction or attachment (in case the bond is insufficient) in the same case is the exclusive remedy of the property owner for a wrongfully imposed injunction or attachment.[6]

## II. Quasi-Delicts

12. As mentioned in my earlier Declaration, quasi-delict is generally limited to negligent acts. First Nolasco Decl. ¶¶ 7-8. While I am aware that there is a view that the same could cover intentional acts, I respectfully maintain that it cannot be so sweeping as to cover any and all acts where redress could be sought under other sources of obligation, such as breach of contract, other provisions of the Civil Code providing for liability (such as those covering intentional torts and the Abuse of Rights provisions that I discussed in my earlier Declaration), or court and ADR Rules providing a remedy for a wrongfully issued injunction.[7] If redress can be

---

[5] *Chua vs. Court of Appeals,* G.R. No. 79021, 17 May 1993 (citations omitted).

[6] See Rule 5.9 of the Special ADR Rules. See also Section 20, Rule 57 and Section 8, Rule 58 of the Rules of Court; *Pacis vs. COMELEC,* G.R. No. L-29026, 22 August 1969.

[7] See concurring opinion of Justice Vitug in *Tan vs. Nitafan,* G.R. No. 76965 (11 March 1994): "The broad concept of quasi-delict has evidently been purposely structured in order to render actionable any wrongful act or omission,

had from another source of obligation, then one should not be able to broadly allege a quasi-delict.

13. As I have previously noted, the acts complained of consist of seeking and maintaining the interim measures of protection from the RTC under the Special ADR Rules. First Nolasco Decl. ¶¶ 14-16.

14. Even assuming that some improvidence in the issuance and maintenance of the writs of attachment and injunction is eventually shown, the remedy is clearly provided for under Philippine law, and that is a claim against the bonds issued for the attachment and injunction rather than an independent tort action. First Nolasco Decl. ¶ 17. Given that a specific remedy exists, quasi delict is not available. The Puno Declaration also ignores this remedy.

15. I note that the Puno Declaration does not dispute my overall point that Abuse of Rights and tort liability more generally is unavailable given that Plaintiff is complaining about the use of valid remedies applied for, granted, and thus far upheld under Philippine law. First Nolasco Decl. ¶¶ 13-16. In fact, the Puno Declaration never actually argues that successful use of Philippine court procedures could constitute a tort under Philippine law. And the Puno Declaration does not cite any instance in which successful use of the Philippine courts was found to be a quasi-delict, or an abuse of rights, or to satisfy any other tort theory of liability or recovery.

16. As to the matter of Article 2176 being applicable even if there are contractual relations, as asserted in the Puno Declaration, it bears reiterating that by definition, quasi-delict only applies where there is no pre-existing contractual relation between the parties. The only instance when a quasi-delict action may proceed even if there is an existing contract is "if the act or omission

---

causing damage to another, that would not otherwise be actionable under any of the other stated sources of obligation — law, contracts, quasi-contracts and delicts — and thus ensure that appropriate relief can be sought. It has not been intended, however, that quasi-delict should predominate over such other sources of obligations where, in fact, the applicability of such other sources is clearly on hand."

complained of would constitute an actionable tort *independently of the contract*."[8] In this case, I respectfully reiterate that the acts complained of (*i.e.,* seeking the writs and maintaining them and the bonds) are not actionable torts, and they are also not *independent of the contract*. GGAM's fundamental complaint is that BRHI and SPI did not fulfill their *contractual obligation* pursuant to the MSA's arbitration clause to comply with the arbitral tribunal's own rulings. See Final Award ¶ 449 ("The Respondents have acted contrary to their legal obligations under the MSA and UNCITRAL Rules to be bound by the Tribunal's IM Order and Liability Award, and this act has caused damage to [GGAM], the rightful owner of the Shares.").[9]

### III. Res Judicata and Claim Splitting

17. The Puno Declaration claims that there could be no *res judicata* or claim-splitting in this case as there is supposedly no identity of parties or of subject matter (Puno Decl. ¶¶ 20-23).

18. I respectfully disagree. The Puno Declaration relies heavily on the mere expedient that Mr. Razon was not a named party in the arbitration proceedings. However, as I discussed in my earlier Declaration, for res judicata to attach, "[a]bsolute identity of parties is not required but only substantial identity, and there is substantial identity of parties when there is a community of interest between a party in the first case and a party in the second case, even if the latter was not impleaded in the first case. A shared identity of interest is sufficient to invoke the coverage of the principle of *res judicata*."[10]

19. Significantly, the Puno Declaration is totally silent on this point and ignores the trio of

---

[8] *Far East Bank and Trust Co. vs. Court of Appeals*, G.R. No. 108164, 23 Feb. 1995 (emphasis added).

[9] I disagree with the arbitrators' related conclusion that the conduct could give rise to liability under Articles 20 or 2176 of the Philippine Civil Code. I believe the arbitrators, among other mistakes, confused theories of tort liability with contractual liability.

[10] First Nolasco Decl. ¶ 22 (citing *Igot vs. Valenzona,* G.R. No. 230687, 5 December 2018; *Guerrero vs. Land Management Bureau,* G.R. No. 183641, 22 April 2015; and *P.L. Uy Realty Corporation vs. ALS Management and Development Corporation*, G.R. No. 166462, 24 October 2012).

6

recent authorities I cited in support of it. The Puno Declaration's sole citation here is for the **generic** elements of res judicata. Puno Decl. ¶ 18 (citing *Encinas v. Agustin*, G.R. No. 187317 (11 April 2013)). To note, *Encinas* specifically says that forbidden forum shopping exists when there is, among other things: "(1) identity of parties, *or at least such parties as those representing the same interests in both actions*; (2) identity of rights asserted and reliefs prayed for, *the reliefs being founded on the same facts*."

20. That the absolute identity of parties is likewise not required for forbidden claim-splitting to exist is demonstrated by the 2014 case of *Lanuza, Jr. vs. BF Corporation, et al.*,[11] which held that if a claim against a corporation made in an arbitration is also asserted against any of its officers or directors on a veil-piercing theory, the claim against such officer or director must also be made in an arbitration proceeding initiated against the corporation. Otherwise, the Supreme Court held, this would amount to a splitting of cause of action, which is prohibited under Philippine law. First Nolasco Decl. ¶ 20 (citing Rule 2 of the Rules of Civil Procedure).

21. The Puno Declaration ignores *Lanuza* and instead cites a case that pre-dates it. Puno Decl. ¶ 23 (citing *Chua v. Metro. Bank & Trust Co.*, G.R. No. 182311 (19 August, 2009)). However, *Chua* does not say that the parties have to be absolutely identical for claim-splitting to apply. Rather, *Chua* states that "the rule against splitting a cause of action is intended to prevent repeated litigation between the same parties . . . ." That is a statement of the purpose of the claim-splitting doctrine, not a holding that the doctrine will not apply when the parties are *substantially* identical as opposed to *absolutely* identical. In fact, without confronting any issues of absolute versus substantial identity, *Chua* found that the complaining parties *had* committed forbidden forum-shopping – even though there were some superficial differences in the damages seemingly

---

[11] G.R. No. 174938, 1 October 2014.

7

claimed as between two different actions.

22. I also respectfully disagree with the Puno Declaration's assertion that there is "no identity of subject matter." Puno Decl. ¶ 21. As I explained, and as the Puno Declaration does not dispute, "a party cannot, by varying the form of the action or by adopting a different method of presenting his case, escape the operation of the doctrine of res judicata." First Nolasco Decl. ¶ 21 (citing *Riviera Golf Club v. CCA Holdings*, which the Puno Declaration ignores).[12]

23. The Puno Declaration seeks to draw an irrelevant and unfounded distinction[13] between the *origins* of the controversy (which the Puno Declaration incorrectly says was solely the termination of the MSA by BRHI and SPI[14]) and the subject matter of controversy that the arbitrators actually considered, which extended to things that happened "*during the arbitration*," including that, in the tribunal's view, BRHI and SPI "*interfered with GGAM's ownership of its shares in BRC*." Puno Decl. ¶ 21. The Puno Declaration then goes on to note that the Tribunal found "flagrant disregard for the Tribunal's [Interim Measures] Order and Liability Award," insofar as BRHI and SPI had not complied with the awards. *Id*. (quoting Final Award ¶¶ 448-49). In the tribunal's view, BRHI and SPI "are liable for damages under" Article 2176 of the Philippine Civil Code. Final Award ¶ 449. Article 2176 is the quasi-delict provision which, according to the Puno Declaration, authorizes the equivalent of a "trespass to chattels" claim.

24. The Puno Declaration thus acknowledges on its face that the identical subject matter

---

[12] *Riviera* also says: "The test of identity of causes of action rests on whether the same evidence would support and establish the former and the present causes of action." The Puno Declaration does not seriously dispute that this test is satisfied, at least for any actions that occurred *before* the Final Award was rendered.

[13] *Taganas v. Emuslan et al.*, G. R. No. 146980 (2 September 2003), cited at Puno Decl. ¶ 21, which arose from a road accident, does not ever suggest that the relevant "subject matter" must be eternally fixed at the outset of a proceeding and cannot extend to events that occur *during the proceeding* and become the basis for judgments of liability rendered in the proceeding.

[14] This is not a complete description of the subject matter at the inception of arbitration. At the very outset, BRHI and SPI were counterclaiming against the Option Shares for "causal fraud." *See* Interim Measures Award ¶¶ 93, 96; Final Award ¶ 170(a).

8

of alleged interference with the sale of the Option Shares by virtue of non-compliance with the tribunal's rulings (the basis of the trespass claim here) was already raised and decided in the arbitration proceedings. To now sue Mr. Razon on the very same claims raised before and decided by the Arbitral Tribunal does not avoid the res judicata bar and is precisely the forbidden claim-splitting contemplated in *Lanuza*.

25. The Puno Declaration asserts that the trespass claim arises from "*Razon*'s pattern of repeated and independently unlawful acts, personally and using his alter ego instrumentalities," Puno Declaration ¶ 22, but does not identify any acts of Mr. Razon separate from acts of BRHI and SPI that were at issue in the arbitration. As I have previously explained and as the Puno Declaration does not dispute, Mr. Razon's liability for the acts of BRHI and SPI turns entirely on whether there are grounds to pierce the corporate veil of those entities. First Nolasco Decl. at 7 n.19.

26. The Puno Declaration additionally argues that *res judicata* does not apply to a decision rendered by an "arbitral tribunal" as opposed to a court (*id*. ¶ 19). The Puno Declaration does not make this argument in relation to claim-splitting, appearing to concede that the distinction between arbitration and litigation is irrelevant for the claim-splitting prohibition. *See id*. ¶ 23.

27. I respectfully disagree that an arbitral award has no res judicata effect.[15] An arbitral award is akin to a compromise agreement. In both instances, the parties to a dispute contractually agree to resolve a controversy. Both are private alternatives to court proceedings that are meant to end or avoid litigation. Both are final and binding. The chief difference is that in compromise agreements, the parties mutually agree on the terms resolving the dispute. On the other hand, in an arbitration, it is a contractually chosen third person or tribunal that decides on the terms resolving

---

[15] The case of *Encinas v. Agustin*, G.R. No. 187317 (11 April 2013), cited in the Puno Declaration (¶ 19), had nothing to do with arbitration.

9

the dispute in accordance with the rules and procedures contractually agreed upon by the parties. It is well established that compromise agreements, whether confirmed by a court or not, have res judicata effect.[16] A fortiori the same must be true of arbitral awards – as *Lanuza* suggests.

## IV. **Punitive Damages**

28. I respectfully disagree with the assertion in the Puno Declaration that there is bad faith in the allegations for purposes of an award of punitive damages in the Philippines. Again, the actions of BRHI, SPI and PMHI are in accordance with legally afforded remedies which have actually not been overturned by any court action to date. First Nolasco Decl. ¶¶ 25-26. This point is not disputed in the Puno Declaration. The Puno Declaration asserts without elaboration that "GGAM has sufficiently alleged bad faith in the [SAC] with regard to the conduct of Mr. Razon," Puno Decl. ¶ 27, but the Puno Declaration makes no attempt to reconcile this statement with the fact that the complained-of conduct consists exclusively of the use of valid (and so far successful) legal procedures in the Philippines. In my view, the Philippine courts would not permit an award of punitive damages for such conduct, and the Puno Declaration does not seriously argue otherwise. Absent any court finding that the interim judicial measures were improvidently issued, no bad faith (or wanton, fraudulent, oppressive, or malevolent conduct, *see* First Nolasco Decl. ¶ 25) can be found here.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Dated: July 28, 2022

_____
Marjorie T. Uvengco-Nolasco

---

[16] *Mayuga vs. Court of Appeals*, G.R. No. L-46953, 28 September 1987; *Cochingyan, Jr. vs. Cloribel*, G.R. Nos. L-27070-71, 22 April 1977; *Republic of the Philippines vs. Florendo,* G.R. 166866, 27 March 2008.