**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| GLOBAL GAMING PHILIPPINES, LLC, |
| *Plaintiff,* |
| vs. |
| ENRIQUE K. RAZON, JR.; et al., |
| *Defendants.* |

No. 21 Cv. 2655 (LGS)(SN)

### MEMORANDUM OF LAW IN SUPPORT OF MOTION OF PLAINTIFF GLOBAL GAMING PHILIPPINES, LLC, TO EXCLUDE TESTIMONY OF CATHERINE ROGERS

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
AND POPEO, P.C.

Kevin N. Ainsworth
Jason P.W. Halperin
Daniel T. Pascucci
Joseph R. Dunn
Barry A. Bohrer
Kaitlyn A. Crowe

666 Third Avenue
New York, NY 10017
T:  (212) 935-3000
F:  (212) 983-3115
jhalperin@mintz.com
dtpascucci@mintz.com
jrdunn@mintz.com
kainsworth@mintz.com
bbohrer@mintz.com
kacrowe@mintz.com

*Attorneys for Plaintiff*
*Global Gaming Philippines, LLC*

# TABLE OF CONTENTS

                                                                                        **Page**

PRELIMINARY STATEMENT ............................................................................... 1

I.      PERTINENT BACKGROUND................................................................... 4

   A.   The Arbitral Tribunal Rejects Defendants' Allegedly "Compelling Evidence" of
        Corruption by GGAM, and Holds Defendants in Breach of the MSA ....................... 4

   B.   The Tribunal Rejects Defendants' FCPA Arguments in the Remedies Phase .................. 5

   C.   The Singapore Courts Reject the FCPA Argument and Confirm the Awards .................. 7

   D.   This Court Has Four-Times Rejected Defendants' Efforts to Relitigate the
        Arbitration.................................................................................... 8

   E.   Defendants Now Seek to Relitigate the FCPA Argument Through a Legal Brief
        Posing as a Report of a Purported Expert Witness ................................... 10

II.     RELEVANT LEGAL STANDARDS ............................................................. 11

   A.   U.S. Law Strongly Favors Recognition and Enforcement of a Foreign Arbitral
        Award, and Narrowly Interprets New York Convention Defenses ......................... 11

        1.   The Public Policy Defense; NY Convention Article V(2)(b).................... 13

        2.   The Article V(1)(b) Defense—Due Process........................................ 14

        3.   The Article V(1)(d) Defense—The Parties' Agreement ........................... 14

   B.   The Test for Admissibility of Expert Testimony................................. 14

III.    ARGUMENT ............................................................................... 16

   A.   Because Relitigation of the Arbitration Is Impermissible, Rogers' Opinions Are of
        No Consequence in Determining the Outcome ....................................... 16

   B.   Rogers' Opinions Are Irrelevant to an Article V Defense............................. 18

        1.   Rogers Does Not Support a Cognizable Public Policy Defense ............... 18

        2.   Rogers Does Not Support Article V(1)(b) and V(1)(d) Defenses ............. 18

   C.   Rogers' Testimony Should Be Precluded Because Her Report Is a 77-Page Legal
        Brief Masquerading as an Expert Witness Report ................................... 21

   D.   Rogers' Testimony Is Utterly Unreliable........................................ 24

IV.     CONCLUSION ............................................................................... 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
    303 F.3d 256 (2d Cir. 2002)......................................................................................15, 16

*Beijing Shougang Mining Inv. Co., v. Mongolia*,
    11 F.4th 144 (2d Cir. 2021) ..............................................................................................12

*Brooks v. Outboard Marine Corp.*,
    234 F.3d 89 (2d Cir. 2000)................................................................................................15

*BSH Hausergäte GMbH v. Kamhi*,
    291 F. Supp. 3d 437 (S.D.N.Y. 2018)........................................................................14, 20

*Chin v. Port Auth. of N.Y. & N.J.*,
    685 F.3d 135 (2d Cir. 2012)..............................................................................................16

*Commodities & Minerals Enter. v. CVG Ferrominera Orinoco*,
    49 F. 4th 802 (2d Cir. 2022) ..................................................................................... *passim*

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993)......................................................................................................3, 15

*Davis v. Carroll*,
    937 F. Supp. 2d 390 (S.D.N.Y. 2013)......................................................................15, 16, 24

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*,
    403 F.3d 85 (2d Cir. 2005)..........................................................................................12, 13

*Fed. Trade Comm'n v. Vyera Pharm., LLC*,
    No. 20-cv-00706 (DLC), 2021 WL 5336949 (S.D.N.Y. Nov. 16, 2021)..............................16

*GE Transp. (Shenyang) Co. v. A-Power Energy Generation Sys.*,
    15-cv-6194 (PAE), 2016 WL 3525358 (S.D.N.Y. June 22, 2016)........................................12

*Highland Capital Mgmt., L.P. v. Schneider*,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)......................................................................14, 15, 23

*Huzhour Chuangtai Rongyuan Inv. Mgmt. P'ship v. Qin*,
    No. 21-cv-9221 (KPF), 2022 WL 4485277 (S.D.N.Y. Sept. 26, 2022) .................................19

*In re KIND LLC "Healthy and All Natural" Litig.*,
    Nos. 15-MD-2645 (NRB), 15-MC-2645 (NRB), 2022 WL 4125065 (S.D.N.Y.
    Sept. 9, 2022) ..................................................................................................................15

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)..........................................................15, 22, 23

*Israel v. Springs Indus., Inc.*,
    1:98-cv-05106, 2007 WL 9724896 (E.D.N.Y. Jul. 30, 2007) ....................................3

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
    729 F.3d 99 (2d. Cir. 2013)...............................................................................14, 19

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)...................................................................................................15

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985)...................................................................................................12

*Navigators Ins. Co. v. Goyard, Inc.*,
    No. 20-cv-6609 (AKH) (GWG), 2022 WL 2205596 (S.D.N.Y. June 21, 2022)..............16, 22

*Odeon Capital Grp. LLC v. Ackerman*,
    864 F.3d 191 (2d Cir. 2017)......................................................................................21

*Pagaduan v. Carnival Corp.*,
    830 F. App'x 61 (2d Cir. 2020) ................................................................................12

*Parsons & Whittemore Overseas Co. v. Societe Generale de L'industrie du Papier*,
    508 F.2d 969 (2d. Cir. 1974).................................................................................14, 18

*Ruggiero v. Warner-Lambert Co.*,
    424 F.3d 249 (2d Cir. 2005)......................................................................................15

*Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*,
    116 F.3d 41 (2d Cir. 1997).....................................................................................12, 16

*Sobel v. Hertz, Warner & Co.*,
    469 F.2d 1211 (2d Cir. 1972)....................................................................................12

*Thor Equities, LLC v. Factory Mut. Ins. Co.*,
    No. 20-cv-3380 (AT) (GWG), 2022 WL 4139846 (S.D.N.Y. Sept. 13, 2022) ......................15

*Travel Sentry, Inc. v. Tropp*,
    527 F. Supp. 3d 256 (E.D.N.Y. 2021) ........................................................................22

*United Paperworkers Int'l Union v. Misco, Inc.*,
    484 U.S. 29 (1987)....................................................................................................12

*United States v. Stewart*,
    433 F.3d 273 (2d Cir. 2006)......................................................................................16

**Statutes**

9 U.S.C. §207 ..........................................................................................................4

28 U.S.C. §636(b)(1)(A) .......................................................................................3

*Federal Arbitration Act* ........................................................................................9

**Other Authorities**

Fed. R. Evid. 104 ................................................................................................14

Fed. R. Evid. 401 ................................................................................................15

Fed. R. Evid. 402 ...........................................................................................3, 15

Fed. R. Evid. 702 ..........................................................................................*passim*

Plaintiff Global Gaming Philippines, LLC ("GGAM") submits this memorandum of law, together with the Declaration of Kevin N. Ainsworth, executed November 15, 2022 ("Ainsworth Decl."), in support of GGAM's motion to exclude the testimony of attorney Catherine Rogers, whom Defendants Bloomberry Resorts and Hotels, Inc. ("BRHI") and Sureste Properties, Inc. ("SPI") (collectively "Defendants") have identified as an expert witness.

## PRELIMINARY STATEMENT

In their <u>eighth</u> bite at the apple, Defendants again seek to relitigate issues they lost in a Singapore arbitration. This Court has already rejected Defendants' efforts to relitigate their "FCPA Argument" regarding alleged corruption and concealment of evidence, which the arbitral Tribunal and Courts of Singapore also found meritless. Last year, when Defendants first sought to relitigate those issues here, the Court ruled they had been resolved in arbitration, stating: "documents from the Arbitral Tribunal's Final Award specifically addressed the issue of the Department of Justice's non-prosecution agreement with LVS and the Debtor Defendants' 'speculative' assertions as to Weidner's and Chiu's actions and their consequences."[1] The Court denied Defendants' motion to compel, citing the New York Convention's "emphasis on enforcing international arbitral awards and 'considerations of reciprocity' coupled with the evidence that suggests that these issues were previously litigated in the arbitration in question."[2] Defendants were not deterred, however, and later pushed for depositions about their "FCPA Argument." The Court granted GGAM a protective order for the same reasons it previously cited.[3]

Now, under the guise of expert-witness disclosure, Defendants again seek to relitigate their "FCPA Argument" through a 77-page legal brief by attorney Catherine Rogers, based on evidence

---

[1] Dkt. No. 155, objection overruled Dkt. No. 170.
[2] *Id.*
[3] Dkt. No. 231, objection overruled Dkt. No. 266.

"adduced in the arbitration itself."[4] Rogers' proffered testimony is not relevant to this proceeding to enforce the foreign arbitral award, because she addresses matters that were decided in arbitration, and Defendants are not permitted to relitigate the arbitration.

Rogers' argument fails to state a cognizable "public policy" defense to enforcement of the arbitral awards under the New York Convention. She applies the wrong legal standard, and her analysis is entirely irrelevant to the test in this circuit. The correct test is whether *"*enforcement itself, 'within the parameters of the arbitrator's interpretation of the facts,' … violates public policy." *Commodities & Minerals Enter. v. CVG Ferrominera Orinoco*, 49 F. 4th 802, 819 (2d Cir. 2022). Allegations of corruption in the underlying contract, even where provable, do not support a cognizable public policy defense. *Id*. Rogers, however, disagrees with the test stated in *Commodities & Minerals* and argues it "would render the public policy exception largely meaningless."[5] Nevertheless, this Court is bound to follow the Second Circuit, and Rogers' speculation that GGAM had planned to engage in corrupt activities is irrelevant.

Rogers' testimony also is not admissible because her report is a simply a 77-page legal brief, reaching legal conclusions based on cherry-picked, out-of-context evidence from the arbitral record. Defendants' use of a lawyer to testify on these topics is a blatantly improper attempt to usurp the role of the court. Moreover, her opinions extend far beyond her area of expertise.

Rogers' opinions are unreliable for several reasons. First, as noted, her view of the public policy defense is contrary to controlling authority. Second, she fails to discuss the Tribunal's rulings that contradict her; the Tribunal considered the evidence cited by Rogers, including evidence she characterizes as "compelling evidence" of corruption, and held that Defendants (a) had failed to prove that GGAM had engaged in unethical conduct, and (b) were not justified in

---

[4] Report at 48. A copy of the Rogers Report ("Report") is attached to the Ainsworth Declaration as Exhibit A.
[5] *Id.* at 43 n.178.

terminating the Management Services Agreement ("MSA"). The heart of Rogers' corruption argument concerns (and mischaracterizes) GGAM's planned strategies to bring junket operators and VIPs to Defendants' casino, Solaire; yet the Tribunal found that Defendants terminated the MSA *before* Solaire was ready to bring in such clients. The Tribunal also held that GGAM's alleged concealment of evidence regarding its planned strategies was irrelevant to Defendants' liability. Rogers does not discuss those findings. She also fails to consider the Singapore Courts' judgments rejecting the same arguments she now advances. When Defendants argued that the Tribunal did not consider their FCPA Argument (an argument that Rogers advances), Singapore's highest court described their position as "startling," adding: "[t]his, with respect, is a woeful mischaracterisation of the Tribunal's reasoning in the Remedies Award." That court further found that "the *Tribunal expressly considered the FCPA Findings* and other documents." Finally, Rogers does not mention this Court's prior rulings that Defendants cannot relitigate their FCPA Argument.

Far from expressing an independent expert opinion, Rogers' report is pure advocacy; she omits facts that undermine her conclusions, spins other facts out of context, and aims to smear GGAM. Indeed, she criticizes GGAM for its planned strategy to engage an allegedly corrupt junket operator (SunCity) but disregards the facts that (a) Defendants' CEO, Enrique K. Razon, Jr. ("Razon") testified in arbitration that it was Defendants—not GGAM—who brought in SunCity; and (b) Defendants continued doing business with SunCity until the eve of the arrest of its chairman in 2021. Those flaws and other inconsistencies in Rogers' report makes her opinions and testimony unreliable and inadmissible under Evidence Rules 402 and 702.

This motion to exclude testimony is non-dispositive[6] and is aimed at streamlining GGAM's forthcoming motion to recognize and enforce arbitral awards, consistent with federal policy and

---

[6] *See* 28 U.S.C. §636(b)(1)(A); *Israel v. Springs Indus., Inc.,* 1:98-cv-05106 (ENV) (RML), 2007 WL 9724896, *3-4 & n.4 (E.D.N.Y. Jul. 30, 2007) (rejecting argument that *Daubert* motion is dispositive).

the New York Convention.[7] In the parties' meet and confer, Defendants made clear that they hope to delay the resolution of this motion. There is no just reason for such delay; the issues raised in this non-dispositive motion are ripe and will have to be decided. Preventing Defendants' improper efforts to relitigate the arbitration will alleviate the burden on Judge Schofield when deciding GGAM's enforcement motion.

## I.    PERTINENT BACKGROUND

### A.    The Arbitral Tribunal Rejects Defendants' Allegedly "Compelling Evidence" of Corruption by GGAM, and Holds Defendants in Breach of the MSA

In 2011, Defendants engaged GGAM through a Management Services Agreement ("MSA") to assist with the development and management of a casino-resort project, Solaire Resort and Casino ("Solaire"), in the Philippines.[8] In 2013, Defendants wrongfully terminated the MSA.[9] GGAM initiated arbitration in Singapore in accordance with the MSA. The arbitration was before a tribunal of three arbitrators.

The Tribunal bifurcated the arbitration and held a Liability Hearing in 2015, at which Defendants argued that they were justified in terminating the MSA because "GGAM was not directly responsible for successfully bringing in individual VIP players or putting in place large junket operators."[10] Regarding SunCity, a Macanese junket operator, Razon testified that GGAM "didn't bring in any SunCity. … SunCity only started in May of this year."[11] GGAM, on the other hand, argued that Razon terminated the MSA before Solaire was ready to begin bringing in VIPs

---

[7] As directed by Judge Schofield, GGAM will file its motion under 9 U.S.C. §207 after the close of discovery. Dkt. No. 294. Discovery is scheduled to close on December 9, 2022. Dkt. No. 277.
[8] Ainsworth Decl. Ex. B (Partial Award on Liability ("Liability Award")) ¶ 47.
[9] *Id.* ¶58; *see also id.* at 120, ¶3.
[10] Ainsworth Decl. Ex. H (Respondents' Statement of Defense & Amended Counterclaims, Feb. 2, 2015) at 56-57.
[11] Ainsworth Decl. Ex. I (Tr. 10/20/2015) at 149; *see also* Ainsworth Decl. Ex. J (Tr. 10/21/2015) at 125-27 (testimony of Lorraine Koo Mann Loo).

and junket operators. The Tribunal agreed with GGAM that Defendants terminated the MSA before Solaire was ready to bring in those types of clients.[12]

During the Liability Hearing, the Tribunal considered the evidence at the heart of Rogers' opinion—an email and testimony of GGAM's CEO that Rogers characterizes as "compelling" evidence of corruption—all related to GGAM's planned strategies to bring in junket operators and VIPs. Because Defendants terminated the MSA so early, GGAM's planned strategies were irrelevant to the liability determination.[13] Moreover, the Tribunal expressly rejected Defendants' assertion that GGAM had not acted "in the highest standards of business ethics."[14] In a 138-page Partial Award on Liability, the Tribunal unanimously held (among other things) that Defendants wrongfully terminated the MSA.[15]

### B. The Tribunal Rejects Defendants' FCPA Arguments in the Remedies Phase

Defendants sought reconsideration of the Liability Award, arguing that GGAM had engaged in procedural fraud by concealing information about its planned strategies to bring junkets and VIP customers to Solaire (the "FCPA Argument"). In support of their argument, Defendants cited to a 2016 order by the U.S. Securities and Exchange Commission ("SEC") and a 2017 non-prosecution agreement by the U.S. Department of Justice ("DOJ"), related to violations of the Foreign Corrupt Practices Act between 2006 and 2009 by Las Vegas Sands Corp. ("LVS") for failing to adequately maintain internal controls and books and records. The Tribunal denied reconsideration, but allowed Defendants to present their evidence in the Remedies Phase.

Defendants fully briefed their FCPA Argument in the Remedies Phase, positing that "no damages of any kind should be awarded … in light of the FCPA Orders, which have revealed

---

[12] Liability Award ¶131.
[13] Liability Award ¶131.
[14] *Id.* ¶245.
[15] *Id.* at 120.

GGAM's fraud and contravention of the MSA."[16] They also made the following arguments that they now seek to relitigate in this proceeding through the testimony of Rogers:

- "[T]he findings of the DOJ and the SEC revealed that the Claimants concealed critical information from, and made misrepresentations to, the Respondents and the Tribunal."[17]

- "GGAM committed fraud in the arbitration, in addition to having engaged in corrupt practices in the course of the contractual performance that was at the heart of the arbitration such that enforcing the Liability Award would be contrary to the public policy of the Philippines."[18]

- "[T]he Arbitration was compromised by the conduct of GGAM's former arbitration counsel's violation of their professional obligations."[19]

- "Bloomberry and Sureste were denied an adequate opportunity to present their case, as a result of GGAM's manipulation … failing to search the files of Eric Chiu."[20]

The Tribunal <u>unanimously</u> rejected all of those arguments in a 171-page Final Award, which states, in part:

> 273. The Tribunal turns to address the Respondents' concerns in relation to the findings made by the DOJ and SEC (together the "**FCPA Findings**")….
> …
> 275. In this regard, the Tribunal's view is that the Respondents *have not presented a convincing case* showing how exactly the SEC and DOJ findings would have led to an event or sequence of events that would have culminated in a contractually recognised event entitling the Respondents to terminate the MSA.
>
> 282. Besides the FCPA Findings themselves, the Respondents also alleged that the findings of the DOJ and the SEC revealed that the Claimants concealed critical information from, and *made misrepresentations to, the Respondents and the Tribunal*. …. Further, as noted above, although raising questions, the Findings do not appear on their face to actually find illegal conduct by Mr. Weidner or Mr. Chiu, and no evidence beyond the DOJ and SEC documents was presented by Respondents to prove the underlying facts and conduct. For the reasons above, the Tribunal has also found that, even if it took the FCPA Findings at face value, such findings do not, on balance, affect the reasonable certainty of GGAM exercising its unilateral

---

[16] Ainsworth Decl. Ex. C [hereinafter "Final Award"] ¶457 (emphasis omitted).
[17] Final Award ¶282; *see also id.* ¶¶338, 489.
[18] *Id.* ¶408(a); *see also id.* ¶¶282, 338, 489.
[19] *Id.* ¶459 (emphasis omitted).
[20] *Id.* ¶408(b); *see also id.* ¶¶282, 338, 489.

right to renew the MSA for the second five-year term. Therefore, *even if there had been any concealment, there would have been no prejudice suffered by the Respondents*.[21]

That last sentence is an express factual finding by the Tribunal that the allegedly "concealed" evidence was not material.

## C. The Singapore Courts Reject the FCPA Argument and Confirm the Awards

Defendants asserted their "FCPA Argument" in the courts of Singapore, which have primary jurisdiction, as grounds to set aside or resist enforcement of the Liability Award as "contrary to Singapore public policy."[22] The High Court rejected their argument, holding: "The FCPA Findings pertain to misconduct by LVS, a different company from GGAM, in a different venture (LVS, not Solaire), in a different country (China, not the Philippines), which occurred from 2006 to 2009, four years prior to the opening of Solaire …."[23] The High Court added, "[t]he *strategies* employed in LVS, which were impugned in the FCPA Findings are also clearly different from those employed in Solaire."[24]

The High Court also held that Defendants' "allegations of concealment of information … are not made out. In any case, the procedural fraud allegation is short on the materiality requirement *ie, it is not so material that it would have substantially affected the Partial [(i.e., Liability)] Award*."[25] The court found there to be no basis for Defendants' arguments that GGAM had failed to disclose documents appropriately or otherwise committed fraud,[26] and stated: "There is no concealment of information by either Paul Hastings or GGAM aimed at deceiving the

---

[21] Final Award ¶¶273-75, 282 (emphasis added). *See also id.*¶¶278-81, 345 ("In any event …, the FCPA Findings on their face do not establish or imply that GGAM did not perform its obligations under the MSA. In fact, those Findings do not refer to GGAM at all, much less address GGAM's performance under the MSA."); *id.* ¶408(b) (describing Defendants' fraud argument).

[22] Ainsworth Decl. Ex. D (Judgment of High Ct. of Singapore, Jan. 3, 2020) ¶¶3-6, 91, 92.

[23] *Id.* ¶199; *see also id.* ¶201.

[24] *Id.* ¶200 (emphasis added).

[25] *Id.* ¶112 (emphasis added); *see also id*. ¶¶114-219.

[26] *Id.* ¶¶134, 143, 197.

plaintiffs or the Tribunal …. There are also no material deficiencies in the GGAM and/or Paul Hastings' document production in the Arbitration."[27] Notably, the High Court recognized that Defendants' "arguments are complaints that either should have been raised or were indeed raised before the Tribunal, which are now being camouflaged as grounds of procedural fraud."[28] Defendants appealed that judgment, which was affirmed.[29] That judgment is final.

Defendants also applied to the courts of Singapore to set aside or deny enforcement of the Final Award. They recycled their FCPA Argument and concealment arguments, and they asserted that the Tribunal never considered those arguments.[30] The High Court rejected their arguments as contrary to the record, and confirmed the Final Award.[31]

Defendants appealed, and the Court of Appeal rejected Defendants' assertion that the Tribunal did not consider their FCPA Argument. The court described the assertion as "startling," and added: "This, with respect, is a woeful mischaracterisation of the Tribunal's reasoning in the Remedies Award."[32] The Court of Appeal found that "the *Tribunal expressly considered the FCPA Findings* and other documents," adding: "the Tribunal considered the allegations of fraud and/or corruption on the part of Mr [sic] Weidner, Mr [sic] Chiu and the respondents …."[33] That is the final judgment of the courts of primary jurisdiction.

### D. This Court Has Four-Times Rejected Defendants' Efforts to Relitigate the Arbitration

Throughout this case, Defendants have attempted to delay and magnify this summary proceeding by relitigating the arbitration. In each instance, the Court has recognized that allowing

---

[27] *Id.* ¶144.
[28] *Id.*
[29] Ainsworth Decl. Ex. F (Judgment of Court of Appeal of Singapore, Feb. 16, 2021) ¶ 98.
[30] Ainsworth Decl. Ex. E (Judgment of High Ct. of Singapore, May 29, 2020) ¶¶8(b), 9, 31(b), 32, 71.
[31] *Id.* ¶78.
[32] Ainsworth Decl. Ex. G (Judgment of Court of Appeal of Singapore, Oct. 4, 2021) ¶¶ 156-57.
[33] *Id.* ¶158 (emphasis added).

such relitigation would undermine important U.S. policies against allowing the expansion of summary confirmation proceedings through such tactics. The Court denied Defendants' motion to compel production of documents, holding: "The Debtor Defendants have not met their "heavy burden" in demonstrating that enforcement of the arbitration awards would be contrary to United States public policy," adding

> At this stage, the Court is unwilling to allow collateral litigation "undertaken in a foreign forum by a party to [the] arbitration in an attempt to protect itself from an adverse arbitral award" *as it would "tend seriously to undermine the underlying scheme of the [Federal Arbitration Act] and the New York Convention*." *Telenor Mobile Commc'ns AS v. Storm LLC*, 584 F.3d 396, 410-11 (2d Cir. 2009).[34]

Regarding the FCPA Argument, the Court stated: "documents from the Arbitral Tribunal's Final Award specifically addressed the issue of the Department of Justice's non-prosecution agreement with LVS and the Debtor Defendants' 'speculative' assertions as to Weidner's and Chiu's actions and their consequences."[35]

When Defendants improperly sought to probe those issues in depositions, the Court issued a protective order again denying their efforts to relitigate the arbitration. The Court reiterated: "[t]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court. … Discovery in this proceeding similarly should be limited to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."[36]

---

[34] Dkt. No. 170 at 1 (overruling objection); *see also* Dkt. No. 155.
[35] Dkt. No. 155 at 3-4.
[36] Dkt. No. 266 at 2 (citations omitted).

## E. Defendants Now Seek to Relitigate the FCPA Argument Through a Legal Brief Posing as a Report of a Purported Expert Witness

In a 77-page legal brief masquerading as an expert report, Rogers rehashes arguments that were rejected by the Tribunal, the Singapore courts, and this Court. Rogers admits the alleged "evidence of illegal and corrupt activity" underlying her opinions was "adduced in the arbitration itself."[37] In fact, all evidence cited by Rogers—except the 2021 arrest of SunCity's chairman, which occurred eight years after Defendants terminated the MSA—was considered and rejected by the Tribunal.

The following chart shows, in the left column, arguments made by Defendants in the Arbitration, and in the right column, Rogers' summary of her arguments:

| Arbitration Arguments | Rogers' Report |
|---|---|
| "GGAM … having *engaged in corrupt practices in the course of the contractual performance that was at the heart of the arbitration* such that enforcing the Liability Award would be contrary to the public policy of the Philippines." (Final Award ¶408 (emphasis added).)<br><br>"[T]he Respondents again reiterate … that '*no damages of any kind should be awarded to the Claimants in light of the FCPA Orders, which have revealed GGAM's fraud and contravention of the MSA.*' The Respondents further submitted that "*Mr [sic] Weidner, assisted by his counsel, engaged in a continuum of deceit and misrepresentations from the beginning of the Parties' relationship,*' and that the unrebutted expert opinion of Mr [sic] Thomas Mason was that '*the Arbitration was compromised by the conduct of GGAM's former arbitration counsel's violation of their professional obligations.*'" (Final Award ¶459 (emphasis in original). | "First, [the Award] … could be refused recognition under Article V(2)(b) because of GGAM's *admittedly illegal conduct while operating as the management services provider for Solaire* violates public policy."[38] (Report at 5 (emphasis added).)<br><br>"The evidence of illegal and corrupt activity [was] adduced in the arbitration itself." (*Id.* at 48.) |

---

[37] Report at 48.

[38] Rogers argues that GGAM admitted illegal conduct during the Liability Phase. Report at 5, 65. That evidence was before the Tribunal when it issued the Liability Award and again in the Remedies Phase.

| | |
|---|---|
| "Bloomberry and Sureste were denied an adequate opportunity to present their case, as a result of GGAM's manipulation … *failing to search the files of Eric Chiu*". (Final Award ¶408(b) (emphasis added).)<br><br>"[T]he Respondents also alleged that the findings of the DOJ and the SEC revealed that the Claimants concealed critical information from, and made misrepresentations to, the Respondents and the Tribunal." (Final Award ¶282; *see also id.* ¶¶338, 489.) | "Second, they could be refused recognition under Article V(1)(d) because of *GGAM's failure to produce documents* in violation of the parties' agreement and the tribunal's document production order was not in accordance with the parties' agreement." (*Id.* at 5 (emphasis added).)<br><br>"Without these documents from Mr. Chiu, Bloomberry was forced to present its case in the Liability Hearing solely on the documents produced to date by GGAM." (*Id.* at 60.) |
| "The Respondents further contend that … [they] have legitimate grounds to oppose the enforcement of the Tribunal's IM Order and Liability Award under Article V(1)(b) of the New York Convention. … Bloomberry and Sureste *were denied an adequate opportunity to present their case*, as a result of GGAM's manipulation … failing to search the files of Eric Chiu". (Final Award ¶408(b) (emphasis added); *see also id.* ¶¶282, 338, 489.) | "Third, they could be refused recognition under article V(1)(b) because GGAM's *failure to produce documents denied Bloomberry a fair opportunity to present its case*." (*Id.* at 5 (emphasis added).) |
| "*GGAM committed fraud in the arbitration*, in addition to having engaged in corrupt practices in the course of the contractual performance that was at the heart of the arbitration such that enforcing the Liability Award would be contrary to the public policy of the Philippines." (Final Award ¶408(a) (emphasis added); *see also id.* ¶¶282, 338, 489.) | "Fourth, they could be refused recognition under Article V(2)(b) because *GGAM's failure to produce documents constituted procedural fraud* and thereby violates public policy." (*Id.* (emphasis added).) |

## II.    RELEVANT LEGAL STANDARDS

### A.    U.S. Law Strongly Favors Recognition and Enforcement of a Foreign Arbitral Award, and Narrowly Interprets New York Convention Defenses

As the Court has recognized, "[i]t is well-settled that '[t]he confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'"[39] Indeed, there is an "emphatic federal policy in favor of arbitral dispute

---

[39] Dkt Nos. 170, 266 (quoting *Beijing Shougang Mining Inv. Co., v. Mongolia*, 11 F.4th 144, 160 (2d Cir. 2021)).

resolution. … [and] that federal policy applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985). Accordingly, courts seek "to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Beijing Shougang Mining* 11 F.4th at 160 (citation omitted). "'[I]improper collateral litigation' may itself 'seriously … undermine' national policy." *Pagaduan v. Carnival Corp.*, 830 F. App'x 61, 63 (2d Cir. 2020).

As a matter of law, courts do not reconsider arbitrators' findings. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37-38 (1987) (reversing order that vacated arbitration award on public policy grounds); *Saint Mary Home, Inc. v. Serv. Emps. Int'l Union, Dist. 1199*, 116 F.3d 41, 44 (2d Cir. 1997). The Second Circuit and this Court have held:

> The court may not substitute its view for that of the arbitrator nor may it even review the award for clear error. … When an "arbitrator[] explain[s] his] conclusions . . . in terms that *offer even a barely colorable justification for the outcome reached*, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result."

*Saint Mary Home*, 116 F.3d at 44 (emphasis added) (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 704 (2d Cir. 1978));[40] *see also GE Transp. (Shenyang) Co. v. A-Power Energy Generation Sys.*, 15-cv-6194 (PAE), 2016 WL 3525358, at *3-4, 10 (S.D.N.Y. June 22, 2016) (enforcing foreign arbitral award).

A party opposing enforcement of an arbitral award has a "heavy burden" to prove a defense allowed by the New York Convention. *Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005); *Commodities & Minerals Enter. v. CVG Ferrominera Orinoco*, 49 F.4th 802, 815 (2d Cir. 2022). "[T]he showing required to avoid

---

[40] "[T]here is no general requirement that arbitrators explain the reasons for their award," *Sobel v. Hertz, Warner & Co.*, 469 F.2d 1211, 1214 (2d Cir. 1972). Here, however, the Tribunal has issued a 138-page Liability Award and 171-page Final Award, each explaining in substantial detail the Tribunal's reasoning.

summary confirmance is high." *Encyclopaedia Universalis,* 403 F.3d at 90 (citation omitted); *Commodities & Minerals,* 49 F.4th at 810.

## 1.     The Public Policy Defense; NY Convention Article V(2)(b)

Article V(2)(b) of the New York Convention provides that recognition and enforcement "may be refused" if "[t]he recognition or enforcement of the award would be contrary to the public policy" of the United States. The test is whether "enforcement itself, 'within the parameters of the arbitrator's interpretation of the facts,' … violates public policy." *Commodities & Minerals Enter.,* 49 F.4th at 819 (citation omitted). That defense is narrowly defined and "encompass[es] only those circumstances where *enforcement* would violate our most basic notions of morality and justice." *Id.* at 818 (emphasis added) (citation and internal quotation marks omitted). The inquiry is "limited to determining *whether the award itself, as contrasted with the reasoning that underlies the award,* 'create[s] [an] explicit conflict with other laws and legal precedents' and thus clearly violates an identifiable public policy." *Id.* at 818-19 (emphasis added). "In reviewing an arbitral award for violations of public policy, a court may not 'revisit or question the fact-finding or the reasoning which produced the award.'" *Id.* at 818 (citation omitted).

In *Commodities & Minerals*, the Second Circuit explicitly rejected the argument that corruption in the underlying contract is cognizable as a public policy defense. *Id.* The court held that such an argument "'falls outside of Article V(2)(b)'s narrow public policy exception ….[,] merely seeks to relitigate the Panel's factual determination," and "offers no argument that *enforcement itself, 'within the parameters of the arbitrator's interpretation of the facts,'* … violates public policy." *Id.* at 818-19 (emphasis added). By contrast, the court explained, a viable public policy defense arose where the "award at issue was one for specific performance that required India to turn over certain land in that country to the plaintiff." *Id.* at 819 n.13 (citing *Hardy Expl. & Prod. (India), Inc. v. Gov't of India, Ministry of Petroleum & Nat. Gas*, 314 F. Supp. 3d

95 (D.D.C. 2018)). In that case, enforcement itself "violated clear United States policy respecting a sovereign nation's right to control its own land." *Id.*

## 2. The Article V(1)(b) Defense—Due Process

Article V(1)(b) of the New York Convention allows a court to refuse to recognize and enforce an award if "[t]he party against whom the award is invoked … was otherwise unable to present his case." That defense requires a showing that the arbitration was conducted in violation of due process rights. *See Parsons & Whittemore Overseas Co. v. Societe Generale de L'industrie du Papier* (RAKTA), 508 F.2d 969, 975-76 (2d. Cir. 1974) (rejecting purported Article V(1)(b) defense where arbitral tribunal acted within its discretion). Courts must recognize and enforce an award unless there has been "a denial of 'fundamental fairness.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d. Cir. 2013) (quoting *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 20 (2d Cir. 1997)).

## 3. The Article V(1)(d) Defense—The Parties' Agreement

Article V(1)(d) of the New York Convention allows a court to refuse to recognize and enforce an award if "[t]he composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties …." Such a defense fails, however, if "there is more than a 'barely colorable justification' to support finding" that the arbitrators conducted the arbitration in accordance with the parties' agreed-upon procedure. *BSH Hausergäte GMbH v. Kamhi*, 291 F. Supp. 3d 437, 443-44 (S.D.N.Y. 2018) (rejecting Article V(1)(d) defense where the "parameters of the arbitration" comported to the procedural rules and substantive law dictated by the parties' underlying agreement).

## B. The Test for Admissibility of Expert Testimony

Federal Rule of Evidence 104 requires the court to make preliminary determinations on the admissibility of evidence. *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 467

(S.D.N.Y. 2005) (granting motion to exclude expert testimony). Rule 402 dictates that "[i]rrelevant evidence is not admissible." A fact is irrelevant unless it "is of consequence in determining the action." Fed. R. Evid. 401.

Rule 702 governs the admissibility of expert testimony and incorporates the principles enunciated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 125 L.Ed 469, 113 S. Ct. 2786 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), in which the Supreme Court held that Daubert's general gatekeeping obligation "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Thor Equities, LLC v. Factory Mut. Ins. Co.*, No. 20-cv-3380 (AT) (GWG), 2022 WL 4139846, at *2 (S.D.N.Y. Sept. 13, 2022); *Highland Capital*, 379 F. Supp. 2d at 467; *see also Brooks v. Outboard Marine Corp.*, 234 F.3d 89, 91 (2d Cir. 2000). Expert testimony is only admissible if it "assist[s] the trier of fact to understand the evidence or determine a fact in issue." *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 253 (2d Cir. 2005); *see also In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 540 (S.D.N.Y. 2004).

An expert's testimony must actually be relevant to an issue in the case to be admissible. Fed. R. Evid. 402; *Thor Equities, LLC v. Factory Mut. Ins. Co.*, No. 20-cv-3380 (AT) (GWG), 2022 WL 4139846, at *3 (S.D.N.Y. Sept. 13, 2022) (citing *United States v. Cruz*, 363 F.3d 187, 192 (2d Cir. 2004); *In re KIND LLC "Healthy and All Natural" Litig.*, Nos. 15-MD-2645 (NRB), 15-MC-2645 (NRB), 2022 WL 4125065, at *15-16 (S.D.N.Y. Sept. 9, 2022) (excluding irrelevant expert witnesses' report); *Davis v. Carroll*, 937 F. Supp. 2d 390, 414, 420 (S.D.N.Y. 2013) (same).

To be admissible "an expert's analysis [must] be reliable at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002) (affirming order excluding expert opinions as unreliable). To determine reliability, the "district court should undertake a rigorous

examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id*. The court should "exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.* (citation omitted).

It is axiomatic that "[a]n expert is … barred from giving testimony on issues of law." *Navigators Ins. Co. v. Goyard, Inc*., No. 20-cv-6609 (AKH) (GWG), 2022 WL 2205596, at *3 (S.D.N.Y. June 21, 2022) (cleaned up) (citation omitted). "[A]n opinion that purports to explain the law to the [factfinder] trespasses on the trial judge's exclusive territory." *United States v. Stewart*, 433 F.3d 273, 311 (2d Cir. 2006); *see also Fed. Trade Comm'n v. Vyera Pharm., LLC*, No. 20-cv-00706 (DLC), 2021 WL 5336949, at *3 (S.D.N.Y. Nov. 16, 2021). Expert testimony that merely repeats the same points made by counsel would not assist the trier of fact. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 161 (2d Cir. 2012) (affirming exclusion of expert testimony that was repetitive of counsel's argument).

Defendants, as the proponent of Rogers' testimony, bear the burden of satisfying the admissibility standards and must prove by preponderance of evidence that it is reliable. *See Davis*, 937 F.Supp.2d at 413-14. They fail to meet their burden.

## III.   ARGUMENT

### A.   Because Relitigation of the Arbitration Is Impermissible, Rogers' Opinions Are of No Consequence in Determining the Outcome

Rogers' opinions are irrelevant to the enforcement of the Final Award because they address issues that were decided in arbitration and, as a matter of law, cannot be relitigated in this proceeding. *See, e.g.*, *Commodities & Minerals Enter.*, 49 F. 4th at 818-19; *Saint Mary Home,* 116 F.3d. at 44-47 (rejecting purported public policy defense as improper effort to relitigate arbitral award). Rogers' opinions duplicate issues that were argued to and rejected by the arbitral Tribunal.

In the Liability Phase, the Tribunal rejected Defendants' argument that GGAM breached the MSA by "fail[ing] to act 'in the highest standards of business ethics.'"[41] The Tribunal reached its decision after considering <u>all</u> the evidence—including the testimony and email that Rogers now characterizes as "compelling" evidence of corruption by GGAM.[42] Indeed, with the exception of the 2021 arrest of the chairman of SunCity, all of the evidence Rogers reviewed was adduced in the arbitration.[43] Furthermore, the core of Rogers' opinions—an allegedly corrupt plan to bring in VIP customers and junkets—was irrelevant to the outcome of the arbitration because, the Tribunal found, Defendants terminated the MSA before Solaire was ready to start bringing in such customers.[44]

In the Remedies Phase, the Tribunal considered and rejected as immaterial the FCPA Argument including allegations that GGAM had withheld emails of Eric Chiu.[45] Indeed, Defendants asserted in arbitration the same Article V(1)(b) defense that they assert here.[46] The Tribunal rejected Defendants' arguments, expressly finding that the FCPA Argument and the alleged "concealment" of evidence would not have entitled Defendants to terminate the MSA and did not impact the damages determination. The Final Award states: "Respondents have not presented a convincing case showing how exactly the SEC and DOJ findings would have led to an event or sequence of events that would have culminated in a contractually recognised event entitling the Respondents to terminate the MSA."[47] Regarding the alleged concealment of Eric Chiu emails, the Final Award also states: "For the reasons above, the Tribunal has also found that,

---

[41] Liability Award ¶¶243-45.
[42] Report at 48, 77.
[43] Report at 48.
[44] Liability Award ¶131.
[45] Final Award ¶¶237-75, 278-71, 282, 345, 408(a)-(b); Rogers Report at 23-28, 38, 41-77.
[46] Final Award ¶408. The chart above (at p. 10-11) shows the duplication the arguments made by Defendants in the Remedies Hearing and the proposed testimony of Rogers.
[47] Final Award ¶275.

even if there had been any concealment, there would have been no prejudice suffered by the Respondents."[48] This Court cannot revisit those findings. *See Commodities & Minerals Enter.*, 49 F.4th at 818 (citing *IBEW, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 716 (2d Cir. 1998)).

## B.  Rogers' Opinions Are Irrelevant to an Article V Defense

### 1.  Rogers Does Not Support a Cognizable Public Policy Defense

Rogers does not address the question of whether *"enforcement itself*, '*within the parameters of the arbitrator's interpretation of the facts*,' … violates public policy." *See Commodities & Minerals*, 49 F.4th at 818-19. Instead, she applies the wrong legal test. She describes a purported "debate among jurisdictions" about the scope of the public policy exception and opines that "when corruption is involved, requiring proof that enforcement itself violates public policy 'would render the public policy exception largely meaningless ….'"[49] However, the Second Circuit unambiguously confirmed the polar opposite view, holding that corruption in an arbitrated contract—even if proven—"falls outside the narrow public policy exception codified by Article V(2)(b)." *Commodities & Minerals Enter.*, 49 F.4th at 818. The holding in *Commodities & Minerals* is controlling. As a matter of law, Rogers' opinions about alleged corruption in performance of the MSA are irrelevant to the public policy defense.

### 2.  Rogers Does Not Support Article V(1)(b) and V(1)(d) Defenses

Defendants seek to assert an Article V defense based on a discovery dispute—allegations that GGAM withheld documents. But Rogers' testimony would be irrelevant to any such defense. First, an Article V(1)(b) defense—on grounds that a party was "unable to present his case"—requires proof of a violation of due process under U.S. law. *See Parsons & Whittemore Overseas*,

---

[48] *Id.* ¶282; *see also id.* ¶¶237-75, 278-71, 345, 408(b).
[49] Report at 43 n.178.

508 F.2d at 975-76 (rejecting purported V(1)(b) defense where arbitral tribunal acted within its discretion). Courts must recognize and enforce an award unless there has been "a denial of fundamental fairness." *Kolel Beth*, 729 F.3d at 104. For example, in *Kondot S.A. v. Duron LLC*, the court found there was no "denial of fundamental fairness" and rejected that defense where the defendant "had ample opportunity to be heard regarding all the issues in the arbitration" and "took full advantage of that opportunity." 586 F. Supp. 3d 246, 258-59 (S.D.N.Y. 2022); *see also Huzhour Chuangtai Rongyuan Inv. Mgmt. P'ship v. Qin*, No. 21-cv-9221 (KPF), 2022 WL 4485277, at *8-9 (S.D.N.Y. Sept. 26, 2022) (rejecting Article V(1)(b) defense).

Here, the arbitral record demonstrates that Defendants had ample opportunity to be heard and took full advantage of that opportunity. For example, in the Liability Phase, Defendants raised concerns about procedural fairness and argued that they were unable to present their case. The Tribunal specifically addressed Defendants' concerns, noting "the IBA Rules 2010 obliges the Tribunal to consider procedural economy in dealing with requests for document production and related evidentiary matters."[50] The Tribunal concluded, "[t]he Tribunal is satisfied that … the Parties were afforded a fair and reasonable opportunity to present their respective cases …."[51]

In the Remedies Phase, Defendants raised the identical Article V(1)(b) defense that they seek to assert here, arguing they "were denied an adequate opportunity to present their case, as a result of GGAM's … failing to search the files of Eric Chiu."[52] Rogers' argument is belied by the arbitral record. The Tribunal rejected that same argument, holding that "even if there had been any concealment, there would have been no prejudice suffered by the Respondents."[53] The Tribunal also considered Defendants' FCPA Argument and found: "Respondents have not presented a

---

[50] Liability Award Annex ¶13.
[51] *Id.* Annex ¶ 26.
[52] Final Award ¶408(b); *see also id.* ¶¶282, 338, 489.
[53] *Id.* ¶282.

convincing case showing how exactly the SEC and DOJ findings would have led to an event or sequence of events that would have culminated in a contractually recognised event entitling the Respondents to terminate the MSA."[54] Rogers fails to even acknowledge the Tribunal's findings. Her opinion fails to address any issue of fundamental fairness and, therefore, is irrelevant to an Article V(1)(b) defense.

Rogers also argues the Court could refuse enforcement of the Awards because the arbitration was not in accordance with the parties' agreement, citing Article V(1)(d). However, an Article V(1)(d) defense fails if "there is more than 'a barely colorable justification' to support a finding" that the arbitrators conducted the arbitration in accordance with the parties' agreed-upon procedure. *BSH Hausergäte GMbH*, 291 F. Supp. 3d at 443-44 (rejecting Article V(1)(d) defense where the "parameters of the arbitration" comported to the procedural rules and substantive law dictated by the parties' underlying agreement). Here, as in *BSH Hausergäte*, there is no dispute that the Tribunal applied the agreed-upon UNCITRAL Rules and IBA Rules on the Taking of Evidence in International Arbitration ("IBA Rules").

Rogers does not opine that *the Tribunal* failed to conduct the arbitration in accordance with the parties' agreed procedures. Instead, she argues that GGAM did not comply with the IBA Rules when GGAM allegedly withheld Chiu emails (regarding efforts to bring in junket operators and VIPs).[55] Even if Rogers' description of GGAM's conduct were accurate (it is not), the IBA Rules vested the Tribunal with discretion to decide discovery disputes and to sanction a party's failure to conduct itself in good faith.[56] The arbitral record is conclusive proof that (a) Defendants asked

---

[54] Final Award ¶275. The Tribunal also found that Defendants terminated the MSA before Solaire was ready to bring in VIPs and junket operators and found (despite what Rogers calls "compelling evidence" of corruption) there was no unethical conduct by GGAM. Liability Award ¶¶131, 245.

[55] Report at 59.

[56] Ainsworth Decl. Ex. K (Article 9 of the IBA Rules on the Taking of Evid. in Int'l Arb. (2010)). Articles 9(5), 9(6), and 9(7) of the IBA Rules permit—but do not require—the Tribunal to draw adverse inferences for a party's failure to produce evidence and to assess costs if a party has "failed to conduct itself in good faith in the taking of evidence."

the Tribunal to exercise its discretion under the IBA Rules to deny GGAM's costs because of the same arguments advanced by Rogers; and (b) the Tribunal denied Defendants' requested relief.[57] Rogers opinion, therefore, is another attempt to relitigate the issues and is irrelevant to the question of whether the arbitration was conducted "in accordance with the agreement of the parties."

Rogers also argues that the alleged discovery issues amounted to procedural fraud and a "public policy" defense, but the matters addressed in her Report do not assert a cognizable public policy defense. Procedural fraud is not cognizable as a "public policy" issue unless it was material to the outcome of the arbitration. *See, e.g., Odeon Capital Grp. LLC v. Ackerman,* 864 F.3d 191, 197 (2d Cir. 2017) ("If the alleged fraud went only to a collateral issue, or to an issue that did not influence the arbitrators' findings, then that fraud cannot serve as a basis for vacating the award because the award was not 'procured by' fraud."). The Tribunal addressed the same argument made by Rogers and found that the allegedly withheld evidence was not material to the outcome.[58] Rogers points to nothing that was material to the outcome. Her opinion—legal argument—is irrelevant to a public policy defense under the New York Convention.

### C.     Rogers' Testimony Should Be Precluded Because Her Report Is a 77-Page Legal Brief Masquerading as an Expert Witness Report

Rogers' report is a 77-page attorney brief masquerading as an expert report. She does nothing more than cherry-pick evidence from the arbitral record and offer legal conclusions based on an erroneous view of the law that was rebuffed in *Commodities & Minerals Enterprise*. Her testimony must be excluded for several reasons.

---

[57] Final Award ¶¶170(c), 487.
[58] Final Award ¶¶273-75, 282 (stating "even if there had been any concealment, there would have been no prejudice suffered by the Respondents"), 408(a). The Tribunal's finding regarding lack of materiality is entirely consistent with its finding that Defendants' terminated the MSA before Solaire was ready to start bringing in VIPs and junket operators. Liability Award ¶131.

First, her interpretations of and conclusions of law are not admissible. "An expert is …
barred from giving testimony on issues of law." *Navigators Ins.*, 2022 WL 2205596, at *3.
"[E]xperts should not be permitted to "supplant the role of counsel in making argument at trial,
and the role of the jury in interpreting the evidence. … This principle requires the exclusion of
testimony that states a legal conclusion." *Rezulin Prods. Liab. Litig.*, 309 F. Supp. at 541; *see
Travel Sentry, Inc. v. Tropp*, 527 F. Supp. 3d 256, 263 (E.D.N.Y. 2021). The Court should exclude
Rogers' conclusions that (a) the Awards "should, be refused recognition and enforcement under
Article V of the New York Convention"; (b) GGAM's conduct violated public policy;[59]
(c) GGAM failed to produce documents in violation of the parties' agreement and the tribunal's
document production order; (d) Defendants were denied a fair opportunity to present their case;
and (e) GGAM's alleged conduct constituted procedural fraud.[60]

Second, she offers nothing helpful to the Court. "One of the fundamental requirements of
Rule 702 is that the proposed testimony 'assist the trier of fact to understand the evidence or to
determine a fact in issue.'" *Id.* at 540. Advocacy is to be done by counsel, not through an expert.
*Id.* at 551 (excluding witness who "does no more than counsel … will do in argument, *i.e.*,
propound a particular interpretation of [defendant]'s conduct."). Rogers' report states that she was
engaged to: "to provide an expert opinion regarding the applicable *procedural and ethics rules*
governing an international arbitration proceeding and *grounds for refusing recognition and
enforcement* of an arbitral award … in light of credible evidence of corruption and procedural
fraud."[61] This Court needs no assistance in understanding procedural and ethics rules, and Rogers'

---

[59] As noted above, the test for an Article V(2)(b) public policy defense is not based on GGAM's conduct.
[60] Report at 5.
[61] Report at 1 (emphasis added). Rogers' opinions concerning alleged ethical violations by GGAM's counsel in
arbitration are entirely irrelevant. (*See* Report at 71.) In *Rezulin Prod.*, for example, the court excluded testimony of
two purported experts who "intend to testify … [that the defendant] acted in an unethical manner, especially with
respect to its presentation of, or reaction to, Rezulin clinical data and the conduct of Rezulin clinical trials." 309 F.
Supp. 2d. at 542. The court held: "the witnesses' opinions regarding ethical standards for reporting or analyzing

opinions go far beyond her areas of expertise. She does not have any claimed expertise in identifying "credible evidence of corruption" or in interpreting the laws of any relevant country regarding corruption.[62] Her opinion about the test for the public policy defense is contrary to the test in the Second Circuit. Her opinions about foreign laws are entirely irrelevant.[63] Her skewed recitation of certain facts from the arbitral record also is not helpful. *See Highland Capital*, 379 F. Supp. 2d at 469 ("an expert cannot be presented … solely for the purpose of constructing a factual narrative based upon record evidence.")

Third, Rogers also has no special ability in assessing the credibility of evidence or drawing inferences from the evidence. Courts have held that "[i]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *Rezulin Prods. Liab. Litig.*, 309 F. Supp. at 547. Yet Rogers improperly opines about GGAM's motives, arguing that the evidence "suggest[s] an intentional, systematic, and highly strategic noncompliance with the tribunal's document production order."[64] Her opinion is rife with inferences that are contrary to the Tribunal's views of the evidence, including her conclusion that GGAM engaged in "admittedly illegal conduct."[65] Her skewed views are nothing more than attorney advocacy.

---

clinical trial data or conducting clinical trials articulate nothing save for the principle that research sponsors should be honest." *Id.* The Court stated, "[e]ven if charitably viewed as a 'standard,' the testimony nevertheless is 'so vague as to be unhelpful to a fact-finder.'" *Id.* at 543. Likewise, Rogers' opinions about ethics rules amount to nothing more than her conclusion that GGAM did not conduct itself in good faith because its attorneys (allegedly) did not "produce documents as ordered [by the Tribunal]." (Report at 5, 64-65; *see also id.* at 59, 71.) The alleged ethical breach by GGAM's former counsel is irrelevant to the issues in this proceeding, namely whether Defendants were denied due process and whether the alleged failure to produce documents as ordered amounted to fraud in the arbitration.

[62] She cites no laws that purportedly were broken by GGAM

[63] *E.g.*, Report at 42 (referring to "most jurisdictions"), 43 ("courts and scholars around the world …"), 44 (same), 73 (referring to "other courts around the world", citing UK court, French courts, Austrian court, and "most courts"), 74 (citing English courts).

[64] Report at 64; *see also id.* at 70, 76 (arguing "strategic, intentional manipulation of the document production process").

[65] Report at 4 (stating evidence "called into question the credibility of GGAM's CEO"), 5 (referring to "admittedly illegal conduct"), 44 (referring to "incriminating nature" of emails), 47 (arguing testimony "reeks of corruption, even if some aspects require some inference"), 49 (describing allegedly "credible corroborative evidence"), 71 (stating it is "reasonable to assume" allegedly withheld evidence would have been important); 76 (same), 48 and 77 (describing testimony and email as "compelling" evidence of corruption). The Tribunal considered the evidence and concluded that Defendants failed to prove unethical conduct by GGAM. Liability Award ¶245

### D. Rogers' Testimony Is Utterly Unreliable

Rogers' analysis is so incomplete and misleading that it is utterly unreliable. "Where … expert testimony rests on inadequate factual foundations, problematic assumptions, or a misleadingly partial selection of relevant facts, it must be excluded under Rule 702." *Davis*, 937 F.Supp. 2d at 418. Rogers' analysis omits key portions of the arbitral record, the Tribunal's findings, Defendants' arguments to the Singapore courts, and those courts' judgments. *See, e.g.*, *Davis*, 937 F.Supp. 2d at 418-20. Rogers' manifestly unreliable opinions should be excluded.

Rogers argues that "the tribunal never considered the issue of GGAM's engaging in corrupt and illegal conduct in fulfilling its obligations under the underlying contract, much less in light of the Non-Prosecution Agreement and other relevant evidence that subsequently came to light."[66] The Singapore Court of Appeal called that argument a "woeful mischaracterization" because the Tribunal expressly considered those arguments and concluded: "the Tribunal's view is that the Respondents have not presented a convincing case showing how exactly the SEC and DOJ findings would have led to an event or sequence of events that would have culminated in a contractually recognised event entitling the Respondents to terminate the MSA."[67]

Rogers' accusation of criminal conduct by the Macau junket operator, SunCity, is not only a red herring, it demonstrates her failure to consider relevant material and proves her opinions to be unreliable. Her report mentions SunCity 47 times, argues that SunCity "committing illegal acts every day," ignores her own client's admissions, and smears GGAM as corrupt for allegedly bringing SunCity to Solaire.[68] In an unexplainable leap, she argues that the arrest of SunCity's chairman in 2021—eight years after Razon terminated GGAM's role at Solaire—somehow taints

---

[66] Report at 4.
[67] Final Award ¶275.
[68] *See* Rogers Report at 17-22, 39-40, 45-49.

GGAM.[69] But she fails to address highly pertinent facts including Razon's testimony that GGAM "didn't bring in any SunCity. … SunCity only started in May of this year [2015]."[70] Indeed, Defendants argued in arbitration that they terminated the MSA because GGAM brought <u>no</u> junket operators or VIPs to Solaire and "none of GGAM's purported contacts with junket operators brought their business to the Solaire."[71] Rogers also ignores the fact that Solaire worked with SunCity from 2015 until the eve of its chairman's arrest in 2021.[72] Rogers does not explain how any alleged corruption at SunCity taints GGAM but does not taint Defendants.

Rogers also erroneously opines that a "core" issue in the arbitration was "could and did GGAM satisfy its obligations under the MSA to provide Solaire with foreign VIP customers, Chinese junket operators, and premium direct customers?"[73] That was not a core issue. The Tribunal found that issue to be irrelevant to Defendants' liability because Razon terminated the MSA before Solaire was ready to start bringing in such customers.[74]

## IV.    CONCLUSION

For the foregoing reasons, the Court should exclude all testimony of Catherine Rogers.

---

[69] Report at 39-40, 49.
[70] Ainsworth Decl. Ex. I at 149; *see also* Ainsworth Decl. Ex. J at 125-27. Razon terminated the MSA in 2013.
[71] Ainsworth Decl. Ex. H at 56-57; *see also* Report at 11 (stating Defendants' alleged bases for terminating MSA.)
[72] Ainsworth Decl. Ex. I at 149; *see also* Ainsworth Decl. Ex. J at 125-27; Report of the Committee on Inquiry/Investigation of Philippine Amusement and Gaming Corporation ("PAGCOR") dated February 21, 2022 at 29. The PAGCOR Committee Report, describing Solaire's work with SunCity as late as August 2021, is at this link: https://www.pagcor.ph/regulatory/pdf/announcements/decision-regarding-suncity.pdf (last viewed Nov. 14, 2022).
[73] Report at 53.
[74] Liability Award ¶131 (emphasis added).

Dated: November 15, 2022
New York, New York

Respectfully submitted,

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.

*/s/ Kevin N. Ainsworth*
Kevin N. Ainsworth
Jason P.W. Halperin
Daniel T. Pascucci
Joseph R. Dunn
Barry A. Bohrer
Kaitlyn A. Crowe

666 Third Avenue
New York, NY 10017
T:  (212) 935-3000
F:  (212) 983-3115
kainsworth@mintz.com
jhalperin@mintz.com
dtpascucci@mintz.com
jrdunn@mintz.com
bbohrer@mintz.com
kacrowe@mintz.com

*Attorneys for Plaintiff*
*Global Gaming Philippines, LLC*