

RACHEL PENSKI FISSELL  rfissell@walfishfissell.com  +1.212.672.0523
405 Lexington Avenue, 8th Floor  New York, NY 10174  www.walfishfissell.com

December 19, 2022

<u>**VIA ECF**</u>

Hon. Lorna G. Schofield
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:    *Global Gaming Philippines, LLC v. Razon, et al.*, No. 21-cv-2655 (LGS)

Dear Judge Schofield:

This letter is submitted on behalf of Defendant Enrique K. Razon, Jr. pursuant to the Court's December 2, 2022 Order (Dkt. 311) and includes a proposed briefing schedule as well as a response to pages 5-7 of Plaintiff's December 12 letter (Dkt. 313).

## Proposed Schedule for Briefing

Because Plaintiff intends to file for summary judgment on the issue of whether Razon is an alter ego of the Bloomberry Defendants, Razon has proposed a schedule for sequenced, as opposed to simultaneous, briefing for the parties' summary judgment motions as well as Razon's motion to exclude Plaintiff's expert Troy Dahlberg (*see* Dkt. 314), as follows[1]:

- **By February 3, 2023**, Plaintiff shall file its motion for summary judgment and accompanying brief, not to exceed 25 pages;

- **By March 3, 2023**, Razon shall file his opposition to Plaintiff's summary judgment motion and cross-motion for summary judgment in a combined brief not to exceed 45 pages, and a motion to exclude Mr. Dahlberg and accompanying brief, not to exceed 15 pages;

- By **March 24, 2023**, Plaintiff shall file its reply in support of its motion for summary judgment and its opposition to Razon's cross-motion for summary judgment, in a combined brief not to exceed 35 pages, and an opposition to Razon's motion to exclude Mr. Dahlberg, not to exceed 15 pages; and

- By **April 14, 2023**, Razon shall file his reply in support of his cross-motion for summary judgment, not to exceed 15 pages, and reply in support of his motion to exclude Mr. Dahlberg, not to exceed 8 pages.

---

[1] A proposed order with Defendants' combined proposed briefing schedule is being filed concurrently herewith by the Bloomberry Defendants.

Sequenced, as opposed to simultaneous, briefing on the summary judgment motions will be most efficient and effective, as it will require the parties to respond to each other's arguments and thereby clarify and refine the issues for the Court. Based on a review of Your Honor's past orders related to summary judgment, we understand that a sequenced approach is typical for this Court.

## **Plaintiff's Motion for Summary Judgment Will Be Meritless**

Plaintiff claims that because this Court denied Razon's motion to dismiss – under a standard which required the Court to construe all allegations in *Plaintiff's* favor – Plaintiff will somehow be able prove via a summary judgment motion – where the Court will be required to construe all evidence in *Razon's* favor – that there is *no genuine issue of material fact* that Plaintiff is entitled to the extraordinary remedy of veil-piercing (Dkt. 313 at 6) in circumstances in which no court has ever pierced the corporate veil. Namely, Plaintiff seeks to pierce the veil (i) of a publicly traded corporation in good standing on a stock exchange, (ii) of two corporations **without any evidence** that these entities are currently insolvent, undercapitalized, and have ever made any unauthorized payments of cash or assets to Razon, and (iii) where the alleged wrongful conduct was variously a simple breach of contract, a judicial remedy provided and upheld by the Philippine courts, and/or a failure to comply with an arbitral award that has yet to be recognized or enforced in this matter. Plaintiff's proposed summary judgment motion is frivolous.

Regarding the applicable law, we agree with Plaintiff that there is no meaningful difference between Philippine, federal, or New York law on alter ego liability. But none of these jurisdictions employs a disjunctive test for assessing alter ego liability. All three jurisdictions require (1) total domination of a debtor corporation by a shareholder or parent corporation; (2) a fraudulent or other wrongful act; **_and_** (3) the alleged abuse of the corporate form *causes* harm to the plaintiff. *Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 523 F.2d 527, 539 (2d Cir. 1975) (conjunctive test for federal cases like this one);[2] *Lakah v. UBS AG*, 996 F. Supp. 2d 250, 260 (S.D.N.Y. 2014) (federal and New York law are the same); *Maricalum Mining Corp. v. Florentino*, G.R. No. 22183 (Phil. July 23, 2018).

At the motion to dismiss stage, this Court held that Plaintiff had *alleged* sufficient facts to meet both (1) *and* (2), adding in *dicta* – without the benefit of any submissions on Philippine law – that Philippine law may require only (1) *or* (2). Dkt. 216 at 12. Pursuant to Fed. R. Civ. P. 44.1, Razon intends to submit a report from Teresita Herbosa, a Philippine attorney with over 33 years of experience and the former chairwoman of the Philippine Securities and Exchange Commission, that discusses the *Rivera* decision cited by the Court (Dkt. 216 at 12) and explains that Philippine law, like federal and New York law, supplies a conjunctive test for alter ego.[3] Notably, although

---

[2] The *Status* case cited in footnote 12 of Plaintiff's letter (Dkt. 313 at 6) refers to *dicta* in *maritime* cases, as opposed to the general federal common law standard (itself equivalent to the New York conjunctive standard), which for cases like this one brought under the FAA is the relevant standard. *See* Dkt. 147 at ECF pp. 15-17.

[3] Plaintiff states without elaboration that it intends to move to exclude Ms. Herbosa from testifying, hinting via parenthetical that she offers legal opinions (Dkt. 313 at 6 n.13). However, the applicable portions of Ms. Herbosa's initial report are primarily being submitted not as expert testimony on *factual issues* pursuant to Fed. R. Evid. 702, but as testimony on *foreign law* that the Court is permitted to rely on pursuant to Fed. R. Civ. P. 44.1. *See Katsoolis v. Liquid Media Grp., Ltd.*, No. 18 CIV. 9382 (LGS), 2019 WL 4735364, at *3 (S.D.N.Y. Sept. 27, 2019) (Schofield, J.) ("In ascertaining the content of foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.") (cleaned up).

Plaintiff vaguely asserts that it disagrees with Ms. Herbosa's interpretation of Philippine law (Dkt. 313 at 6), Plaintiff has not given any notice under Rule 44.1 that it intends to rely on any expert on Philippine law (Plaintiff did not proffer an expert to rebut Ms. Herbosa's opinions on Philippine law) and thus Plaintiff's counsel appears to be offering only their own interpretation of Philippine legal decisions despite never having practiced there.

The flimsiness of Plaintiff's proposed motion is most evident in its failure to identify – other than in the broadest terms – the supposed undisputed facts that entitle it to summary judgment here. Dkt. 313 at 6. In contrast to Razon's letter, which in two pages outlined in specific terms his summary judgment grounds (Dkt. 314 at 2-3), the absence of any detail from Plaintiff is striking. Plaintiff will not be able to succeed. Purely by way of preview, among the many reasons why not:

(1) There is *no* evidence that the Bloomberry Defendants are insolvent, undercapitalized or have made any improper payouts of any kind to BRC, Prime, or Razon. Nor is there any evidence that Razon, Prime, or BRC has guaranteed any of the Bloomberry Defendants' debts.

(2) Each of BRC, BRHI, and SPI maintain separate books and records, separate financial statements, were audited every year by independent auditors, held regular board meetings, and held annual elections of directors and officers.

(3) Each of the supposed wrongful acts – the termination of the MSA, obtaining Writs related to the Option Shares, and non-compliance with the award – was duly approved by the boards of directors of the Bloomberry Defendants.

(4) BRHI and SPI have their own CFO (with his own staff) which prepares their financial statements separate from BRC, Prime, and Razon. Bloomberry's COO Thomas Arasi – an individual with no previous relationship with Razon – is generally responsible for running the casino complex with minimal oversight from Razon.

(5) The uncontroverted evidence (including testimony from Razon's compensation expert) that Razon's use of corporate resources has been *de minimis* and, in any event, was duly approved by the boards including BRC's board which has two independent directors.

Plaintiff cannot identify a *single case* in which a corporate veil was pierced in circumstances anything like these. The only summary judgment warranted on alter ego is in Razon's favor, not Plaintiff's.

Respectfully submitted,

Rachel Penski Fissell