

# DANIEL M. PERRY

*Partner*
55 Hudson Yards  |  New York, NY 10001-2163
T: 212.530.5083
dperry@milbank.com  |  milbank.com

December 19, 2022

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Global Gaming Philippines, LLC v. Razon Jr., et al.*, No. 21-cv-2655 (LGS)

Dear Judge Schofield:

Defendants Bloomberry Resorts and Hotels Inc. ("BRHI") and Sureste Properties, Inc. ("SPI") respectfully submit this response to Plaintiff's ("GGAM") pre-motion letter (Dkt. 313) regarding its anticipated (i) motion to enforce an arbitral award (the "Award") and (ii) motions to exclude the expert testimony of (a) Professor Catherine Rogers and (b) Frederick Gushin and Daniel Reeves of Spectrum Gaming Group (together, "Spectrum")[1]—which are, in reality, backdoor dispositive motions on the issue of whether BRHI/SPI are precluded from asserting statutory defenses to enforcement of the Award.

## GGAM's Enforcement Motion Should Be Denied on Multiple Grounds

GGAM's enforcement motion fails because GGAM cannot meet its burden of establishing that the undisputed facts show that the Court has personal jurisdiction over BRHI/SPI. *See* Dkt. 315. To the extent that the Court finds that it has jurisdiction over BRHI/SPI (it does not), GGAM's enforcement motion should be denied on the following grounds set forth in Article V(2)(b) of the New York Convention: enforcement of the Award would violate U.S. public policy because GGAM (i) engaged in unlawful corruption while performing under the MSA and/or (ii) committed a fraud in the Arbitration to hide that conduct.

The evidence will show that, unbeknownst to BRHI/SPI, while operating as the management services provider for Solaire, GGAM's CEO (Bill Weidner) and President for Asia (Eric Chiu) were implementing (i) a "strategy" based on "convincing" a Chinese government official to exert influence over Chinese/Macanese junket operators in order to increase VIP junket business at

---

[1] *See* Dkt. Nos. 299, 302 (together, the "*Daubert* Motions").

MILBANK LLP

NEW YORK  |  LOS ANGELES  |  WASHINGTON, D.C.  |  SÃO PAULO  |  FRANKFURT
LONDON  |  MUNICH  |  BEIJING  |  HONG KONG  |  SEOUL  |  SINGAPORE  |  TOKYO

Solaire (thereby increasing GGAM's management fees under the MSA), and (ii) another "strategy" based on the sham commodity trade settlements (a common method for trade-based money laundering—*see* Spectrum Rep. ¶¶ 4, 39-43 (Dkt. 304-1)) so that Chinese citizens interested in gambling abroad could evade Chinese currency controls.

The evidence further shows that at the same time that Weidner's and Chiu's conduct with their former employer, Las Vegas Sands ("LVS"), was under investigation for FCPA violations by the U.S. Department of Justice ("DOJ") and U.S. Securities and Exchange Commission ("SEC"), GGAM and/or its counsel (who represented Weidner in connection with that investigation *and* GGAM in the Arbitration), violated the Tribunal's discovery orders and the agreed-upon evidentiary rules by failing to search for or produce documents in Chiu's possession concerning GGAM's efforts to bring VIPs and junkets to Solaire (that is, documents regarding GGAM's two "strategies"). Indeed, despite being "instrumental" to delivering these VIPs, and despite being the only GGAM executive who spoke Mandarin, GGAM **did not produce a single communication** between Chiu and any of the Chinese government officials and/or businessmen that Chiu was directly interacting with in furtherance of GGAM's "strategies." GGAM nevertheless falsely and repeatedly assured BRHI/SPI and the Tribunal that it had produced all documents it was ordered to produce and was not aware of any responsive documents that it had not produced.

These facts should be sufficient to demonstrate that the Award should not be enforced on public policy grounds,[2] including because it would reward GGAM for (i) engaging in illegal/corrupt conduct at Solaire as part of its "performance" under the MSA,[3] and/or (ii) committing a fraud in the Arbitration by hiding evidence of its illegal/corrupt conduct in violation of the Tribunal's discovery orders and applicable evidentiary rules.[4]

Unsurprisingly, we do not have video footage of Chiu handing the Chinese government official a duffel bag of cash in exchange for his exerting his influence over private actors for GGAM's benefit (bribery is rarely proven through direct evidence—hence the reason why the FCPA has

---

[2] These facts also are sufficient to demonstrate that the Award should not be enforced because the Arbitration was not conducted in accordance with the parties' agreement to arbitrate and violated BRHI/SPI's due process rights. *See* New York Conv. art. (v)(1)(b) and (d); *see also* Rogers Rep. §§ IV(C) and (D) (Dkt. 301-1).

[3] *See Kitchen v. Rayburn*, 86 U.S. 254, 262 (1873) (noting that "the powers of the court **can never** be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage") (emphasis added); *Commercial Union Co. v. Lines*, 378 F.3d 204, 208 (2d Cir. 2004) (citing *Kitchen* and noting that the judicial policy of refusing to "lend [the court's] power to assist or protect a fraud" trumps the general federal policy favoring arbitration," and explaining its concern that "if we confirm an arbitration award under which [a fraudulent acting award creditor] was allowed to benefit from this fraud, we would violate the principle, fundamental in our jurisprudence, that a wrongdoer shall not be permitted to profit through his own wrongdoing").

[4] *See Europcar Italia, S.p.A. v. Maiellano Tours, Inc.*, 156 F.3d 310, 315 (2d Cir. 1998) (acknowledging that "a fraudulently obtained arbitration agreement or award . . . might violate public policy and therefore preclude enforcement" under Art. V(2)(b) of the New York Convention); *France v. Bernstein*, 43 F.4th 367 (3d Cir. 2022) (reversing confirmation of arbitral award obtained by party that withheld important information demanded in discovery because "knowingly conceal[ing] evidence is analogous to perjured testimony," and "[a]s other courts have held, obtaining an award by perjured testimony constitutes fraud"). At a minimum, "[a]n honest process is what those who agree to arbitration have a right to expect." *Id.* at 382.

"books and records" violations). There is, however, circumstantial evidence showing that GGAM made at least two unexplained payments of $25,000 to Chiu's offices in Macau at the same time that Chiu was meeting with this Chinese government official and receiving benefits from him on behalf of GGAM. *See* Spectrum Rep. at ¶¶ 3, 29-35(Dkt. 304-1). GGAM's failure to produce communications of Chiu (GGAM's President for Asia) with Chinese government officials in violation of the Tribunal's discovery orders suggests that those communications were problematic. And there is also the application of common sense—why would Chinese government officials appointed in Macau be inclined to influence Chinese junket operators to take their Chinese business to the Philippines other than by way of an illicit inducement?

The evidence of Weidner's and Chiu's illegal/corrupt conduct at Solaire must also be considered in light of the "FCPA Orders" issued by the DOJ and SEC, which place Weidner and Chiu at the center of similarly corrupt conduct while employed by LVS during the period of time immediately preceding the formation of GGAM, including with some of the same Chinese government agencies and businesses that were involved in their "strategies" while at Solaire. *See* Spectrum Rep. ¶¶ 5, 40, and Appendix A (Dkt. 304-1).

## GGAM's Proposed Motion to Exclude Professor Rogers and Spectrum Should Be Denied

GGAM's two 25-page *Daubert* Motions represent GGAM's attempt to force a dispositive ruling on its issue preclusion argument so that BRHI/SPI might be foreclosed from presenting evidence in support of its statutorily-permitted defenses. They were also filed strategically to simply expand page limitations on issues primarily directed to their motion to confirm the arbitral award. We do not believe it is necessary to hear these lengthy Motions at this juncture. In the alternative, the Motions should be combined and substantially shortened to avoid unnecessary burden on the Court. In any event, a careful review of the issues BRHI/SPI raised in the Arbitration, the issues the Tribunal actually decided, the issues the Tribunal reserved for the enforcing courts, and the issues currently raised by BRHI/SPI's defenses disposes of GGAM's issue preclusion argument.[5]

GGAM does not address (i) the Tribunal's holding that it **lacked jurisdiction** to hear, let alone decide, BRHI/SPI's argument that GGAM committed fraud in the Arbitration by knowingly withholding documents in discovery related to its illegal conduct at Solaire, and (ii) the Tribunal's statement that the **enforcing courts**—*e.g.*, **this Court—would be the** "**better forum"** to address BRHI/SPI's "allegation of fraud" given its "seriousness" and "potential criminal consequences."[6] Despite these unambiguous statements by the Tribunal, GGAM nevertheless persists with its issue preclusion argument, which is premised on GGAM's conflating two distinct arguments (described in footnote 7 below) that BRHI/SPI raised in the Arbitration's remedies phase (the "Reduced

---

[5] *See* Final Award ¶¶ 343, 408, 419 (Dkt. 218-1) (reiterating that, due to lack of jurisdiction, the Tribunal could not and would not decide the issue of whether GGAM engaged in illegality/corruption *at Solaire* and then committed fraud in the Arbitration by concealing evidence of that illegal/corrupt conduct). As such, there is no discussion in the Final Award about the merits of the allegations that Weidner and Chiu engaged in illegal/corrupt conduct in implementing Weidner's two "strategies" for Solaire, and that GGAM's failure to produce Chiu's documents constituted a fraud in the Arbitration.

[6] Decision on Request for Reconsideration of the Liability Award ¶¶ 72-74 (Dkt. 141-1).

Damages for LVS Illegality/Concealment Argument" and the "No Damages for Solaire Illegality/Concealment Argument," respectively).[7]

In the Final Award, the Tribunal considered and rejected the Reduced Damages for LVS Illegality/Concealment Argument.[8] Specifically, regarding BRHI/SPI's allegation that Weidner concealed facts in August 2012 (during the negotiation of the agreements at issue) regarding the FCPA investigation into Weidner's and Chiu's conduct at LVS, the Tribunal concluded that "even if there had been any concealment, there would have been no prejudice suffered by the Respondents."[9] Although the context surrounding this sentence confirms that the Tribunal was referring to whether GGAM "concealed" facts in August 2012 about Chiu/Weidner's involvement in the FCPA violations at LVS (which concealment *is not* the focus of BRHI/SPI's defenses to enforcement), GGAM presents this language as a finding related to the factual bases for the "No Damages" argument—*i.e.*, that GGAM's ***corrupt/illegal conduct at Solaire*** and fraudulent concealment of evidence revealing such misconduct in the Arbitration precluded any damages award (which concealment *is* the focus of certain of BRHI/SPI's defenses).[10] There is no support in the Award for GGAM's position. The Tribunal repeatedly refused to consider or decide whether GGAM committed fraud in the Arbitration. GGAM's fraud in the Arbitration is one of the primary grounds on which BRHI/SPI plan to resist enforcement of the Award, and it is the exact reason why the expert testimony of Rogers and Spectrum is relevant to this enforcement action. Such expert testimony is intended to assist the Court with its inquiry into whether there are statutory grounds under the New York Convention to deny enforcement of the Award. There is no doubt that BRHI/SPI's experts have extensive experience and expertise in the areas on which they opine, and they have tied that experience to their opinions and the facts in this case.[11] Professor Rogers provides vital context about custom and practice in international arbitration proceedings, the applicable IBA evidentiary rules, and the ethical standards that GGAM violated, and then applies her expertise to analyze how GGAM's conduct strayed from such standards, and custom and practice. Mr. Reeves and Mr. Gushin also apply their decades of industry experience to help the Court decode GGAM's two "strategies"—which were, in reality, predicated on government bribery and money laundering.[12]

---

[7] The "**Reduced Damages**" argument was predicated on the allegation that GGAM wrongfully concealed Weidner/Chiu's involvement in the illegal conduct *at LVS* (as described in the FCPA Orders) starting in August 2012 when the FCPA investigation into LVS was made public (at which time GGAM assured BRHI/SPI that GGAM's executives were not involved in any of the conduct being investigated). The "**No Damages**" argument was predicated on the allegation that GGAM engaged in illegality/corruption *at Solaire* and then committed fraud in the Arbitration by concealing evidence of that illegal/corrupt conduct.

[8] *See, e.g.*, Final Award ¶ 274 (finding that the FCPA Orders did not, "on their face," name Weidner/Chiu and "while raising questions, [the FCPA Orders] do not appear on their face to actually find any illegal conduct by those persons").

[9] Final Award ¶ 282. In other words, because the Tribunal found that the FCPA Orders, "at face value," would not justify terminating GGAM early (and therefore would not result in a reduction of damages), it is of no moment that GGAM may have concealed facts that would have put BRHI/SPI on notice that the FCPA Orders would be issued.

[10] *See, e.g.*, Dkt. 300 (Mem. of Law ISO Mot. to Exclude Rogers) at 7 (quoting Final Award ¶ 282).

[11] *See* Rogers Rep. (Dkt. 301-1) at 1-3 (background/qualifications); Spectrum Rep. (Dkt 304-1) at 4-7 (same).

[12] GGAM's pre-motion letter claims that the Tribunal "found [Spectrum's arbitration report] irrelevant." Letter at 4. The Tribunal made no such finding. ***At no point*** in the Final Award did the Tribunal even discuss the Spectrum report.

Finally, there is no merit to GGAM's attempt to justify its *Daubert* Motions on the ground that BRHI/SPI's experts "[b]urden this Summary Proceeding." Letter at 3-4. First, the *Daubert* Motions themselves are a burden designed to expand briefing at a time when "there is no need for the Court to gate-keep expert testimony from itself."[13] Second, expert reports are routinely filed in enforcement proceedings,[14] and courts have acknowledged that evidentiary hearings "may be necessary to resolve a material factual dispute."[15] This case is an example of a case where a more fulsome hearing, including with the benefit of expert evidence, is needed to resolve material factual disputes about what the Tribunal did and did not consider and whether BRHI/SPI are permitted to pursue their statutory defenses against enforcement of the Award.

## Proposed Procedure and Briefing Schedule

As noted in our opening letter, GGAM cannot set forth undisputed facts concerning jurisdiction that support a ruling of summary judgment in its favor. Indeed, GGAM's pre-motion letter does not even mention which undisputed facts it intends to rely on. Nevertheless, BRHI/SPI understand that GGAM's anticipated motion to enforce the Award will seek to do just that. Accordingly, it appears that BRHI/SPI and GGAM will be filing cross-motions for summary judgment on the issue of personal jurisdiction. BRHI/SPI's proposed briefing schedule, which is included in the proposed Order submitted herewith,[16] accounts for these cross-motions and proposes sequencing the briefs such that each party is entitled to two briefs and each brief can take account of and address the arguments and statements of undisputed material facts set forth by the other party. We considered whether it would be more efficient for each party to simply file two briefs simultaneously (*i.e.*, motions and oppositions from each party on the same respective dates), but we believe the sequenced schedule in the proposed Order is better calibrated to avoiding the "ships passing in the night" issue that frequently characterizes briefing by opposing parties submitted simultaneously.[17]

The proposed briefing will allow the Court to decide all outstanding issues in this case on the papers, or, at a minimum, significantly narrow the issues for resolution during an evidentiary hearing and/or a trial, including, *inter alia*, whether there are any relevant disputed facts concerning whether (i) the Court has personal jurisdiction over BRHI/SPI, and/or (ii) the Award should not be enforced based on BRHI/SPI's non-personal jurisdiction-based defenses to enforcement (*e.g.*, that enforcement of the Award would violate U.S. public policy, among other defenses).

---

[13] *Matter of Manhattan by Sail, Inc.*, 436 F. Supp. 3d 803, 810 (S.D.N.Y. 2020) (cleaned up)
[14] *See, e.g., Grupo Unidos por el Canal, S.A. v. Autoridad del Canal de Panama*, 2021 WL 5834296, at *4 (S.D. Fla. Dec. 9, 2021) (citing Expert Report of Gary Born (Dkt. No. 57-92) (opining on international arbitration practice and norms, procedural rules (*e.g.*, ICC Rules and IBA Guidelines), and whether such standards/rules were violated)).
[15] *Jiangsu Beier Decoration Materials Co. v. Angle World LLC*, 52 F.4th 554, 560 (3d Cir. 2022) (cleaned up).
[16] The proposed Order submitted herewith contains Defendants' combined proposed briefing schedule.
[17] We have reviewed some precedent from this Court and believe our approach is consistent with the Court's statement in its December 2, 2022 Order (Dkt. 311) that "[o]n cross-motions for summary judgment, the court typically takes two memoranda of law per side."

Respectfully submitted,

*/s/ Daniel M. Perry*

Daniel M. Perry