UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------X
                                                            :
GLOBAL GAMING PHILIPPINES, LLC,                             :
                                        Plaintiff,          :          21 Civ. 2655 (LGS)
                                                            :
                  -against-                                 :          OPINION & ORDER
                                                            :
ENRIQUE K. RAZON, JR., et al.,                              :
                                        Defendants.         :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Global Gaming Philippines, LLC brings this civil action against Bloomberry

Resorts and Hotels, Inc. ("BRHI"), Sureste Properties, Inc. ("Sureste") (together, "Debtor

Defendants") and their shareholder Enrique K. Razon, Jr. ("Razon" or "Defendant"). Plaintiff,

among other forms of relief, seeks to enforce a foreign arbitration award rendered on September

27, 2019 (the "Final Award"). A prior Opinion and Order dismissed Plaintiff's conversion claim

against Razon but granted Plaintiff leave to file a Second Amended Complaint (the "SAC") to

substitute a trespass to chattels claim. *See Glob. Gaming Philippines, LLC v. Razon*, No. 21 Civ.

2655, 2022 WL 836716, at *8 (S.D.N.Y. Mar. 21, 2022). Razon's motion to dismiss this new

claim is denied.

## I.    BACKGROUND

Familiarity with the factual and procedural history of this case is assumed. *See generally

id.* For the purpose of Defendant's motion to dismiss, all facts alleged in the SAC are presumed

to be true. *See Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 306 (2d Cir. 2021). The

facts are construed in the light most favorable to Plaintiff as the non-moving party. *Id.*

In brief, Plaintiff and Razon, along with non-party investment bank Cantor Fitzgerald,

entered into a partnership to finance development of Solaire, a new casino under development in

the Philippines.  Plaintiff and the Debtor Defendants entered into a Management Services

Agreement (the "MSA"), which required the parties to execute a further Equity Option

Agreement (the "EOA").  Following the execution of the MSA, Razon established the

Bloomberry Resorts Corporation ("BRC"), a publicly traded company on the Philippine Stock

Exchange ("PSE").  Through various holding companies, Razon owns around 64% of the

outstanding shares in BRC.  BRC owns over 90% of Sureste, one of the Debtor Defendants, and

Sureste wholly owns the other Debtor Defendant, BRHI.

       The MSA granted Plaintiff the option to purchase up to a 10% equity interest in Solaire

from the Debtor Defendants through the EOA.  The EOA gave Plaintiff an option to purchase

BRC shares at an agreed-upon price (the "Option Shares").  On December 20, 2012, Plaintiff

exercised this option and executed the Participation Agreement.  The Participation Agreement

obligated Razon to purchase the Option Shares from Plaintiff at fair market value in the event the

MSA terminated for any reason, other than a willful breach by Plaintiff.  On September 12, 2013,

Razon terminated the MSA and Plaintiff initiated arbitration under the MSA's arbitration clause.

That arbitration concluded with the entry of the Final Award on September 27, 2019, in favor of

Plaintiff.  The Final Award included a finding that the Debtor Defendants, under the control of

Razon, actively impeded Plaintiff's right to sell the shares.

       During the pendency of the arbitration and after entry of the Final Award, Razon has

interfered with Plaintiff's interest in the Option Shares.  In January 2014, Plaintiff attempted to

sell the Option Shares through a block sale.  In response, Razon (through BRC) leveraged

personal relationships with the President of the PSE to suspend trading of all BRC shares for one

week to prevent the sale.  Shortly thereafter, Razon (through the Debtor Defendants and another

holding company) successfully sought writs of preliminary attachment and preliminary

injunction in the Philippine court system.  These writs prevented Plaintiff from selling the Option

Shares.  In December 2014, the arbitral panel issued an order, binding on the Debtor Defendants,

vacating and superseding the writs.  Razon caused the Debtor Defendants to refuse to comply

with this order.

In September 2016, the arbitral panel determined liability in favor of Plaintiff, including

its right to dispose of the Option Shares.  Plaintiff requested Deutsche Bank, the custodian of the

shares, to transfer the shares into a trading account, a request that Deutsche Bank stated could be

granted only with BRC's consent.  Razon caused BRC to withhold consent.  Razon also caused

BRC to make various false or misleading disclosures to the PSE, including allegations that the

arbitral panel had rejected.  Following the issuance of the Final Award, Razon caused BRC to

issue further false or misleading disclosures to the PSE and not to comply with the Final Award's

orders to withdraw the preliminary writs, affirm Plaintiff's ownership in the Option Shares and

release them for sale.  Razon has instead continued to renew the bonds required to maintain the

preliminary writs in the Philippine courts, most recently in February 2021.

## II.     STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and

draws all reasonable inferences in favor of the non-moving party but does not consider

"conclusory allegations or legal conclusions couched as factual allegations."  *Dixon v. von

Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a

motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state

a claim to relief that is plausible on its face.'"  *Kaplan v. Lebanese Canadian Bank, SAL*, 999

F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[] [plaintiff's] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). To survive dismissal, "plaintiffs must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

New York's choice of law rules govern claims heard under the Court's supplemental jurisdiction. *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989); *Hodnett v. Medalist Partners Opportunity Master Fund II-A, L.P.*, No. 21 Civ. 38, 2022 WL 4072935, at *7 (S.D.N.Y. Sept. 2, 2022). "Under New York choice-of-law rules, the first step in any choice of law inquiry is to determine whether there is an actual conflict between the rules of the relevant jurisdictions." *Kinsey v. New York Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021) (internal quotation marks omitted). If such a conflict exists, "[i]n tort cases, New York applies the law of the state with the most significant interest in the litigation." *Id.* (internal quotation marks omitted). "An actual conflict of law exists if the applicable law from each jurisdiction provides different substantive rules, and the differences have a significant possible effect on the outcome of the trial[.]" *Holborn Corp. v. Sawgrass Mut. Ins. Co.*, 304 F. Supp. 3d 392, 398 (S.D.N.Y. 2018) (internal quotation marks and citation omitted).

## III.   DISCUSSION

Defendant argues that Plaintiff's claim for trespass to chattels must be dismissed because (1) it is barred by res judicata, (2) Philippine law should govern this dispute, and no equivalent

claim exists under Philippine law and (3) the claim is duplicative of Plaintiff's claim to enforce the Final Award.  Defendant further argues that even if the claim is not dismissed, Plaintiff cannot recover punitive damages if successful.  All of these arguments fail.

### A. Res Judicata

The doctrine of res judicata bars a party from asserting a claim that was already adjudicated, or could have been adjudicated, in a previous proceeding.  Defendant argues that the trespass claim could have been raised in the arbitration, and therefore is barred under the doctrine of res judicata under both New York and Philippine law, thus obviating the need for a choice of law analysis.  This argument is incorrect.  Plaintiff's claim pleads facts that post-date the issuance of the Final Award, which by definition could not have been raised in the arbitration.  Under both New York and Philippine law, Plaintiffs are not precluded from asserting a claim based on these facts.

#### 1.  New York Law

In New York, "[r]es judicata bars re-litigation if (1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Soules v. Connecticut*, 882 F.3d 52, 55 (2d Cir. 2018).  Res judicata applies when the previous proceeding was an arbitration.  *See Pike v. Freeman*, 266 F.3d 78, 90 (2d Cir. 2001) ("[Res judicata] serves to bar certain claims in federal court based on the binding effect of past determinations in arbitral proceedings."); *Caron v. TD Ameritrade*, No. 19 Civ. 9015, 2020 WL 7027593, at *5 (S.D.N.Y. Nov. 30, 2020).

Defendant's argument for res judicata fails because the trespass claim arises in part out of facts that post-date the Final Award, meaning it could not have been raised in the prior action.  In

analyzing the third element of res judicata, the question is "whether the second lawsuit concerns the same claim -- or nucleus of operative facts -- as the first suit, applying three considerations: (1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties expectations." *Soules*, 882 F.3d at 55 (internal quotation marks omitted). As Defendant details in his Reply Memorandum of Law submitted in support of the motion, many factual allegations made in support of the trespass claim are incorporated into the Final Award. These include allegations regarding Razon's interference with the sale of the Option Shares on the Philippine Stock Exchange, the issuance of the writs of preliminary attachment and preliminary injunction, public statements regarding the enforceability of an interim order by the arbitral panel and the withholding of consent to Deutsche Bank to release the Option Shares. However, the trespass claim also includes factual allegations regarding public filings made from September 2019 to February 2021, Razon's alleged non-cooperation with the arbitral award and the continued renewal of the bonds necessary to keep the writs of attachment and injunction in place. Because these events took place after the issuance of the Final Award, a claim that arises out of them cannot be precluded. *See SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1464 (2d Cir. 1996) ("If the second litigation involved different transactions, and especially subsequent transactions, there generally is no claim preclusion."); *SEC v. Thompson*, 238 F. Supp. 3d 575, 593 (S.D.N.Y. 2017) (same).

The Second Circuit's decision in *Proctor v. LeClaire*, 715 F.3d 402 (2d Cir. 2013), requires this result. In *Proctor*, an incarcerated plaintiff brought a due process claim regarding the adequacy of periodic reviews that kept him in administrative segregation within the prison. *Id.* at 404-05. In a previous action, the plaintiff had unsuccessfully challenged the basis for his

initial placement in administrative confinement, and in the course of litigation, had raised the issue of the periodic reviews. *Id.* at 406-08. Although the court in the previous action found the issue was not properly before it because the plaintiff had never amended his pleadings to include the issue, the court nevertheless concluded the periodic reviews had not resulted in a due process violation. *Id.* at 408. In the subsequent action, the district court applied res judicata to preclude the plaintiff from challenging the adequacy of the periodic reviews. *Id.* at 408-11. The Second Circuit reversed, holding that "[a]cts committed after the filing of the complaint are not within the scope of the plaintiff's claim," finding error in "view[ing] the initial confinement and the subsequent periodic reviews as 'the same transaction.'" *Id.* at 412-13. In doing so, *Proctor* treated the application of res judicata as binary: because it did not wholly bar the plaintiff's claims, it did not prevent him from bringing a due process challenge to the periodic reviews. *Id.* at 413-14. Here, all of Razon's alleged actions pleaded in the SAC relevant to the trespass to chattels claim occurred "after Plaintiff commenced arbitration over Razon's unlawful termination of the MSA." Even though the Final Award incorporated references to these events, they form a distinct set of facts for purposes of res judicata.

Even if the actions that took place between the commencement of arbitration and the issuance of the Final Award were treated as within the scope of Plaintiff's claim, the actions after the Final Award, such as the periodic renewal of bonds to maintain the writs of attachment and injunction, represent different transactions for purposes of res judicata. *Proctor* makes this clear, stating that Plaintiff could legally bring a new action after every adverse periodic review. *Id.* at 416 ("[T]he [district] court expressed concern that if claim preclusion or issue preclusion did not prevent [the plaintiff] from challenging the periodic reviews, which occur every 60 days, he could bring a new action after every adverse decision . . . . In theory, such repetitive litigation

7

would be possible." (citation omitted)).  This is also why the Defendant is wrong to say this case is like *Soules*.  There, even though the plaintiff's employment was terminated in response to the filing of the first action, his conduct in litigation "effectively amended his complaint to add a retaliatory termination claim."  882 F.3d at 56.  However, in *Soules*, all relevant actions pleaded in the second action occurred prior to the adjudication of the first.  In contrast, in this case, the SAC sufficiently pleads an interference with their property rights from conduct after the issuance of the Final Award.

Accordingly, Plaintiff's claim is not barred based on res judicata under New York law.

## 2.  Philippine Law

Principles of res judicata under Philippine law similarly do not bar the trespass to chattel claim or similar claims under Philippine law.  Defendant points to two provisions of Philippine law, regarding claim splitting and res judicata, to argue otherwise.  Both arguments fail.

The Philippine Rules of Civil Procedure prohibit splitting a single cause of action.  *See* 2019 Amendments to the 1997 Rules of Civil Procedure (A.M. No. 19-10-20-SC), Rule 2: Cause of Action, § 4, https://sc.judiciary.gov.ph/files/amendments/2019-rules-of-civil-procedure.pdf (hereinafter, "Phil. Civil Rules").  "Cause of action" is defined in terms of the underlying conduct -- "the act or omission by which a party violates a right of another."  *Id*. § 2.  Duplicative claims are subject to dismissal: "If two or more suits are instituted on the basis of the same cause of action, the filing of one or a judgment upon the merits in any one is available as a ground for the dismissal of the others."  *Id.* § 4.  The SAC's claim for trespass arises from conduct that is in part distinct from the conduct that gave rise to the Final Award, i.e., "act[s] or omission[s]" that occurred *after* the Final Award.  *Id*. § 2.  A suit brought under Philippine law in quasi-delict or for the interference with Plaintiff's property right in the Option Shares, as

8

discussed below, accordingly would not be "instituted on the basis of the same cause of action." *Id.* § 4.  Thus, the prohibition on claim splitting would provide no basis to dismiss.

The Philippines additionally has a doctrine of res judicata which requires, among other things, "between the first and second actions . . . identity of subject matter."  *Riviera Golf Club v. CCA Holdings*, 760 Phil. Rep. 655, 665 (June 17, 2015).  The test for identity of causes of action is "whether the same evidence would support and establish the former and the present causes of action."  *Id.*  Here, the requirement of "identity of subject matter" between the arbitration claim and the trespass claim in this action is not met.  Evidence supporting the Final Award is necessarily different from evidence of conduct that occurred after the award.  For example, the SAC includes allegations of Razon's public statements through the Debtor Defendants and of renewal of bonds needed to maintain the injunctions that post-date the Final Award.  Evidence of this conduct, which occurred after the arbitration, was not reviewed by the arbitral panel. Defendant's expert implicitly concedes as much, asserting that the "test [for identity of subject matter] is satisfied, at least for any actions that occurred *before* the Final Award was rendered" and that "events that occur *during the proceeding* and become the basis for judgments of liability rendered in the proceeding" can be incorporated into the subject matter for purposes of res judicata.  Even if the expert is correct as a matter of Philippine law, Plaintiff has alleged conduct by Razon *after* the issuance of the Final Award.  Defendant's expert does not identify Civil Code sections or binding case law (i.e., from the Philippine Supreme Court) applying res judicata to only portions of a plaintiff's claim, when other portions post-date the former proceeding.  In the absence of such evidence, Defendant has not proven the claim would be barred under Philippine law.

*     *     *

Under either New York or Philippine law, Plaintiff's claim for trespass to chattels would not be barred by res judicata or a prohibition on claim splitting.  Accordingly, there is no need to conduct a choice of law analysis, *see Kinsey*, 991 F.3d at 176, and the res judicata defense is rejected.  That said, any damages recoverable on the trespass claim cannot duplicate damages represented by the Final Award.  Any damages on the trespass claim in addition to the Final Award must be based on conduct that post-dates the award.

**B. Failure to State a Claim**

In their briefing, the parties do not dispute that Plaintiff alleges a cognizable trespass to chattels claim under New York law.  They instead focus on whether such a claim is viable under Philippine law.  Defendants argue that such a claim is not viable under Philippine law, that Philippine law applies and that the claim must therefore be dismissed.  Based on the parties' submissions and its own research, the Court concludes that Philippine law would recognize a cause of action based on the facts alleged in Count V, whether as an interference with Plaintiff's property rights, *see* Civil Code, § 428, Rep. Act 386, as amended (Phil.) ("Phil. Civil Code"), or as a quasi-delict, *see id.*, § 2176.  Because both New York and Philippine law recognize a cause of action on the alleged facts, a choice of law analysis is unnecessary to adjudicate Defendant's motion to dismiss.  *See Johnson v. Nextel Comm'ns Inc.*, 780 F.3d 128, 142 n.16 (2d Cir. 2015) ("In addressing the conflicts issue, our prior opinion was concerned with whether the individual named plaintiffs … had stated a claim for relief."); *Holborn*, 304 F. Supp. 3d at 398 ("Because a choice of law analysis is fact intensive, courts often decline to make a choice of law determination at the motion to dismiss stage." (internal quotation marks omitted)).

Under Philippine law, the owner of property "has the right to enjoy and dispose of a thing" and "a right of action against the holder and possessor of the thing in order to recover it."

Phil. Civil Code, § 428.  This right also includes the right against interference, subject to circumstances in which the right against interference fails.  *See id.* § 432 ("The owner of a thing has no right to prohibit the interference of another with the same, if the interference is necessary to avert an imminent danger and the threatened damage, compared to the damage arising to the owner from the interference, is much greater.").  The right of ownership further includes the right to "encumber, alienate, or dispose" of property.  *See Vitug v. Abuda*, 776 Phil. Rep. 540, 554 (Jan. 11, 2016).  Although these provisions suggest their application to the ownership of land or other tangible property, the Supreme Court of the Philippines has applied these principles to non-tangible property, including shares of stock.  *See, e.g.*, *Fleischer v. Botica Nolasco Co.*, 47 Phil. Rep. 584 (Mar. 14, 1925) ("The holder of shares, as owner of personal property, is at liberty . . . to dispose of them in favor of whomsoever he pleases[.]").  In addition to § 428's specific cause of action to recover property, Philippine law also recognizes a general right to sue "any private individual[] who directly or indirectly obstructs, defeats, violates or in any manner impedes or impairs . . . [t]he right against deprivation of property without due process of law" for damages.  Phil. Civil Code, § 32(6).  Taken together, these provisions create a viable cause of action on the facts alleged in Count V.

Additionally, Philippine law recognizes a right of action for quasi-delicts, a legal concept analogous, though not identical, to a tort.  Phil. Civil Code, § 2176 ("Whoever by act or omission causes damage to another, there being fault or negligence, is obliged to pay for the damage done.  Such fault or negligence, if there is no pre-existing contractual relation between the parties, is called a quasi delict[.]").  Quasi-delicts may apply to intentional conduct.  *See Dulay v. Court of Appeals*, 313 Phil. Rep. 8 (Apr. 3, 1995) ("Article 2176 covers not only acts of negligence but also acts which are intentional and voluntary[.]").  The existence of a contract

between the parties does not preclude liability for a quasi-delict if the relevant conduct would still create liability even in the absence of a contractual relationship.  *See Coca-Cola Bottlers Philippines, Inc. v. Court of Appeals*, 298 Phil. Rep. 52 (Oct. 18, 1993) ("[L]iability for quasi-delict may still exist despite the presence of contractual relations.").

At the pleading stage, it is sufficient to conclude that Count V states a claim under Philippine law.  Because there is no actual conflict between New York and Philippine law as to whether Count V states a claim, the Court does not engage in a choice of law analysis and does not decide the elements Plaintiff must prove at trial.

### C. Punitive Damages

Defendant argues that the demand for punitive damages in the trespass claim must be struck because the parties to the MSA waived their right to seek punitive damages and because neither New York nor Philippine law would recognize a claim for punitive damages.  These arguments fail.  Plaintiff may seek punitive damages.

Razon terminated the MSA on September 12, 2013, by sending Plaintiff a Notice of Termination.  All of the conduct alleged in the trespass claim occurred after the termination.  The two limitations on punitive damages in the MSA speak of damages for disputes "under this Agreement."  While a contract could be drafted to waive punitive damages for conduct following termination, the waiver in this case does not do so.  *Cf. My Play City, Inc. v. Conduit, Ltd.,* 589 F. App'x 559, 562 (2d Cir. 2014) (summary order) (finding that limitation of liability as to "any claims arising out of *or related to* th[e] agreement" applied unambiguously to both pre- and post-termination claims (emphasis added)).  The punitive damages waiver at issue here extends only to claims "under" the MSA, with no language about claims "related to" it.  Count V alleges tortious conduct that postdates the termination of the MSA.  Consequently, the trespass

12

claim is not brought "under" the MSA, and the waiver does not bar Plaintiff from seeking punitive damages.

Philippine law does not bar recovery of punitive damages as a matter of law on the facts alleged in the SAC.  Philippine law allows for the recovery of "moral . . . [and] exemplary damages," which, like other forms of damages, are "left to the discretion of the court, according to the circumstances of each case."  Phil. Civil Code, § 2216.  Moral damages may be awarded in cases of "[w]illful damage to property" and "breaches of contract where the defendant acted fraudulently or in bad faith."  *Id.*, § 2220.  "Exemplary or corrective damages are imposed, by way of example or correction for the public good, in addition to [other forms of] damages."  *Id.*, § 2229.  In cases where liability is based on a quasi-delict, "exemplary damages may be granted if the defendant acted with gross negligence."  *Id.*, § 2231.  The parties' experts agree that these provisions, taken together, require a showing of bad faith to recover punitive damages, and disagree on whether the facts alleged in Count V sufficiently allege bad faith.

The SAC sufficiently alleges bad faith.  The SAC alleges that Razon "leveraged his personal and business relationship" with the President of the PSE, who complied with Razon's wishes due to "an undisclosed financial relationship," and that Razon knowingly "cause[d] significant damage to Plaintiff . . . to create leverage in the [arbitration]."  On the whole, these provisions of the Civil Code indicate that the demand for punitive damages would not be barred as a matter of Philippine law.

Finally, punitive damages are available under New York law.  In cases involving "mixed issues of contract and tort," a plaintiff may recover punitive damages only if certain conditions are met, including that the conduct creating liability "must be part of a pattern directed at the public generally."  *Carvel Corp. v. Noonan*, 350 F.3d 6, 24 (2d Cir. 2003) (internal quotation

marks omitted) (construing New York law); *accord Broker Genius, Inc. v. Seat Scouts LLC*, No. 17 Civ. 8627, 2018 WL 2214708, at *9 (S.D.N.Y. May 14, 2018).  However, "New York courts have applied the 'public harm' standard only to cases in which the defendant's allegedly tortious conduct was directly related to the contract between the plaintiff and defendant." *Carvel Corp.*, 350 F.3d at 25.  Applying this principle, *Carvel Corp.* found that "the existence of [the parties' contracts] was not -- at least in principle -- *necessary* for this dispute to have arisen." *Id.* Because the tort claim "ar[ose] from the extra-contractual conduct of [the defendant]," the plaintiff did not have to meet the public harm standard. *Id.*  So too here.  Razon's alleged interference with Plaintiff's right to sell its shares, motivated in part by a desire to maintain control over BRC and the Debtor Defendants, is unrelated to the contract dispute and would support a cause of action even without any contractual relationship between the parties.  Further, Razon terminated the contract prior to any of the alleged wrongful conduct.  Therefore, Plaintiff need not satisfy the public aim requirement under New York law, and Defendant offers no other basis to dismiss the demand for punitive damages.

Because there is no actual conflict between Philippine and New York law on the availability of punitive damages, no choice of law analysis is necessary at this stage of the litigation.

### D. Duplicativeness

Finally, Defendant moves to dismiss the trespass claim on the ground that it is duplicative, under New York law, of Plaintiff's claim to enforce the Final Award against Razon. "Two claims are duplicative of one another if they arise from the same facts and do not allege distinct damages." *NetJets Aviation, Inc. v. LHC Comm'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008) (internal quotation marks omitted) (construing New York law); *accord Demurjian v.*

14

*Demurjian*, 139 N.Y.S.3d 192, 193 (1st Dep't 2021).  Defendant's argument fails, because the claims do not arise from the same facts and allege distinct damages.

The trespass claim emerges out of facts distinct from the enforcement claim, which may result in distinct damages.  The basis of the trespass claim is Razon's alleged interference with Plaintiff's exercise of its ownership rights in the Option Shares, including his leveraging of personal relationships to halt trading of all BRC on the Philippine Stock Exchange, his misuse of Philippine court proceedings to enjoin the sale of the shares, his causing the Debtor Defendants to deny permission to Deutsche Bank to release the Option Shares, and his public statements and renewal of the writs of attachment following the issuance of the Final Award.  Some of these alleged actions do not overlap with the basis for enforcing the award, particularly Razon's post-Award conduct.  While the factual bases for both claims overlap, the trespass claim alleges different actions and motivations for Razon's conduct (to "maintain his control over BRC and the Debtor Defendants," in addition to gaining leverage in the arbitration).  Because the two claims do not arise from identical facts, the separate facts underlying the trespass claim may give rise to punitive damages independent of the enforcement claim.  Accordingly, the two claims allege distinct damages.  *See NetJets*, 537 F.3d at 157; *Townsquare Media, Inc. v. Regency Furniture, Inc.*, No. 21 Civ. 4695, 2022 WL 4538954, at *22 (S.D.N.Y. Sept. 28, 2022) ("[A] claim is duplicative -- and therefore must be dismissed -- as long as the relief sought is identical." (internal quotation marks omitted)).  Because the trespass claim emerges out of a distinct set of facts and seeks damages unavailable in the enforcement claim, the two claims are not duplicative.

**IV.    CONCLUSION**

For the reasons given above, the Defendant's Motion to Dismiss the Count V of the SAC

is **DENIED**.

The Clerk of Court is respectfully directed to close the motion at Dkt. 232.

Dated: January 11, 2023
       New York, New York

L**ORNA** G. S**CHOFIELD**
U**NITED** S**TATES** D**ISTRICT** J**UDGE**