**IN THE MATTER OF AN ARBITRATION BEFORE A TRIBUNAL CONSTITUTED IN ACCORDANCE WITH A MANAGEMENT SERVICES AGREEMENT DATED SEPTEMBER 9, 2011 AND THE UNCITRAL ARBITRATION RULES 2010**

---

**BETWEEN**

**GLOBAL GAMING PHILIPPINES LLC (AS ASSIGNOR)**
**GGAM NETHERLANDS B.V. (AS ASSIGNEE)**

**CLAIMANTS**

**AND**

**BLOOMBERRY RESORTS AND HOTELS INC.**
**SURESTE PROPERTIES, INC.**

**RESPONDENTS**

---

**PARTIAL AWARD ON LIABILITY**

SEPTEMBER 20, 2016

---

The Arbitral Tribunal:

Mr. R Doak Bishop, Esq. (Arbitrator)

Mr. Michael Hwang, S.C. (Arbitrator)

Dr. Andrés Rigo Sureda (Presiding Arbitrator)

1

95. The Respondents contend that, when asked how he was planning to oversee operations if he was not planning to move to Manila, Mr. Stone replied: "*Yes, will I be here? Will I have a presence here?  All the time . . . And, you know, I'll always have a presence here*"[49].

96. The Respondents submit that the Claimants' "*misrepresentation that it would provide "hands-on" management and that its principals had the contact information for foreign VIP "high rollers" and junket operators, induced Bloomberry to enter into the [MSA]*"[50].

   *(v)  Cantor's role*

97. The Respondents allege that the Claimants misrepresented Cantor's role. In particular:

   (a) "*Mr. Weidner explained that Cantor Fitzgerald ("Cantor") provided "backing" and a "significant capital commitment" to GGAM's activities*"[51].

   (b) "*When Bloomberry questioned Cantor's role in the negotiations, Bloomberry was informed that some Cantor employees provided "admin" services to GGAM. That was to be expected of a new start-up company that needed administrative support, and was consistent with Mr. Weidner's explanation to Mr. Razon in their first meeting that Cantor provided "backing"*"[52].

98. The Respondents characterize GGAM as "*an investment vehicle for a New York-based financial institution*", and submit that this was "*not what Bloomberry was seeking—and not what GGAM represented itself to be—when it entered into its agreement*"[53].

99. The Respondents submit that, while Mr. Razon had thought that he was "*getting Mr. Weidner as a partner and visionary*", in fact, Mr. Razon "*was getting Mr. Weidner as an entrepreneur with divided loyalties, who had already wedded*

---

[49] Rejoinder at para. 37; Respondents' Exhibit R-114.
[50] Defense at para. 180.
[51] Rejoinder at para. 31.
[52] Rejoinder at para. 32; Respondents' Exhibit R-235
[53] Rejoinder at para. 154; Razon Supplementary Declaration at para. 14.

36