Fissell Decl.
Ex. 7

# EQUITY OPTION AGREEMENT

THIS EQUITY OPTION AGREEMENT (this "Agreement"), dated as of April 16, 2012 (the "Effective Date"), is entered into by and between PRIME METROLINE TRANSIT CORP., a corporation organized and existing under the laws of the Republic of the Philippines ("Grantor"), BLOOMBERRY RESORTS CORPORATION, a corporation organized and existing under the laws of the Republic of the Philippines ("BRC"), and GLOBAL GAMING PHILIPPINES LLC, a limited liability company organized and existing under the laws of the State of Delaware, U.S.A. ("Grantee").

## RECITALS

WHEREAS, Grantor owns 7,325,656,500 shares in the outstanding capital stock, par value One Philippine Peso per share, of BRC, a publicly-listed corporation organized and existing under the laws of the Republic of the Philippines with an address at Unit 601 6th Floor Ecoplaza, Chino Roces Avenue Extension, Makati City, Philippines;

WHEREAS, BRC owns one hundred percent (100%) of the issued and outstanding shares of stock of Sureste Properties Inc. ("Sureste"), a corporation organized and existing under the laws of the Republic of the Philippines with an address at 26th Floor, 139 Corporate Center Building, Valero Street, Salcedo Village, Makati City, Philippines;

WHEREAS, Sureste owns one hundred percent (100%) of the issued and outstanding shares of stock of Bloomberry Resorts and Hotels Inc. (formerly known as "Bloombury Investment Holdings, Inc.") ("Bloomberry"), a corporation organized and existing under the laws of the Republic of the Philippines with an address at Unit 601, 6th Floor Ecoplaza Building, Pasong Tamo Extension, Makati City, Philippines; and

WHEREAS, Sureste and Bloomberry, as Owners, have agreed under the Management Services Agreement dated September 9, 2011 and entered into by and among the Sureste, Bloomberry, and Grantee (the "MSA"), to grant or cause to be granted to Grantee, an option to purchase the Option Shares (as defined below), which option shall be exercisable solely in accordance with and pursuant to the terms and conditions set forth herein.

NOW, THEREFORE, the parties hereto agree as follows:

## ARTICLE I.

### DEFINITIONS AND INTERPRETATION

Section 1.1 <u>Definitions.</u> For all purposes of this Agreement, except as otherwise expressly provided or unless the context clearly requires otherwise:

"<u>Action</u>" means any written action, appeal, petition, plea, charge, complaint, claim, suit, demand, dispute, grievance, notice, litigation, arbitration, mediation, hearing,

understandings or arrangements or other restrictions on title or transfer of any nature whatsoever.

"Facilities" has the meaning set forth in the MSA.

"Gaming Approvals" means all necessary consents, approvals or other authorizations of PAGCOR in order for Grantor to grant the Option to Grantee and for Investor to acquire and own the Option Shares without violation of Philippine Gaming Laws.

"Gaming Authority" means PAGCOR.

"Gaming Laws" means all applicable laws regulating or otherwise pertaining to casinos, legal gaming, gambling, or the conduct of gaming activities located in the Philippines.

"Governmental Entity" means any domestic or foreign court, arbitral tribunal, administrative agency or commission or other governmental or other regulatory authority or agency, including any Gaming Authority.

"Grantee" has the meaning set forth in the Preamble.

"Grantor" has the meaning set forth in the Preamble.

"Grantor's Equity Contribution" means Philippine Peso Nine Billion Two Hundred Eleven Million Eight Hundred Forty Thousand Five Hundred Fifty Six (PHP 9,211,840,556.00).

"Investor" means the company designated by the Grantee to exercise the option under this Agreement, which company shall either be (a) an entity organized and existing under the laws of the Netherlands as required to satisfy the tax structure of Grantee provided that such entity must at all times be controlled by the same individuals as Grantee; or (b) an entity that must at all times: (i) have the same set of ultimate stockholders/owners, each with the same ultimate percentage stockholdings/ownership as the stockholders/owners of the Grantee; and (ii) have the same directors and managing officers as the Grantee.

"Investor Guarantee" has the meaning set forth in Section 8.3(a).

"MSA" means the Management Services Agreement dated September 9, 2011 by and among Sureste, Bloomberry, and Grantee.

"Notice of Exercise" has the meaning set forth in Section 2.3.

"Option" has the meaning set forth in Section 2.1.

"Option Shares" means 921,184,056 shares of BRC which are listed as of the date hereof, and, to the extent that the Notice of Exercise identifies less than the

Subject to Arbitration Confidentiality Orders                                    BLOOM_0082035

Exchange (PSE) in accordance with and pursuant to the terms, conditions and provisions of this Agreement. If Grantee does not exercise the Option within the Option Term in accordance with the terms of this Agreement, Grantee shall be deemed to have forfeited, relinquished and irrevocably waived any and all right, title and/or interest in and to the Option and the Option Shares; and neither party shall have any further or continuing rights or obligations under this Agreement.

Section 2.6 <u>Competing Projects; Co-Investment Rights</u>. Notwithstanding the foregoing, and as contemplated by Section 18.8 of the MSA, in the event that Enrique K. Razon, Jr., Grantor, BRC, Sureste, Bloomberry, or any of their respective directors (other than the independent directors of BRC as defined under PSE rules), partners, officers or affiliates (as applicable, the "Competing Entity"), at any time commencing on the Effective Date through and including the Closing Date, agrees to own, manage, lease, license, operate or similar arrangement for (a) another casino or casino/hotel project in the Philippines of the same magnitude or scale as the Facilities, or (b) any other casino or casino/hotel project in the Philippines that includes Foreign Junket Players, Local High Roller Tables and/or Foreign High Roller Tables (each as defined in the MSA) (collectively, a "Competing Project Opportunity"), Grantor hereby agrees that, effective upon the Closing hereunder and during the validity of the MSA, it shall cause such Competing Entity to grant Grantee the opportunity to purchase or otherwise acquire an ownership interest in the Competing Entity or the Competing Project Opportunity (the "Co-Investment Option"). The terms and conditions of such Co-Investment Option shall be in accordance with and pursuant to the express terms and conditions set forth in Clause 6.2 of the Participation Agreement.

## ARTICLE III.

## PURCHASE AND SALE OF SHARES

Section 3.1 <u>Sale and Transfer of Option Shares</u>. Upon the exercise of the Option, the Grantor shall cause the Option Shares to be crossed through the PSE for the benefit of the Grantee or the Investor, as applicable, free and clear of all Encumbrances on the Closing Date. Grantor and BRC covenant and agree to perform or cause the performance of the following on a timely basis (a) disclosure of the Transaction to the PSE and the Securities and Exchange Commission and procurement of the approval of the PSE of the crossing of the Option Shares through the PSE, (b) disclosure of the Transaction to PAGCOR, and (c) payment of the transaction taxes and broker fees relating to or in connection with the cross of the shares through the PSE.

Section 3.2 <u>Option Strike Price</u>. Subject to the terms and conditions of this Agreement, in consideration of the aforesaid sale and delivery to Investor (through its stock broker) of the Option Shares, at the Closing of the Option, Investor shall pay to the designated broker of the Grantor by wire transfer of immediately available funds the sum of (a) the Applicable Percentage multiplied by One Hundred-Fifty Million U.S. Dollars ($150,000,000), plus (b) the Applicable Percentage multiplied by Grantor's Equity Contribution (collectively, the "Strike Price"). In the event that any portion of the Strike Price is converted from U.S. Dollars to Philippine Pesos or *vice versa* the

Subject to Arbitration Confidentiality Orders

BLOOM_0082039

IN WITNESS WHEREOF, Grantor and Grantee have executed and delivered this Equity Option Agreement or have caused this Equity Option Agreement to be executed and delivered by their respective officers thereunto duly authorized, all as of the date first written above.

GRANTOR:

PRIME METROLINE TRANSIT CORP.,
a corporation organized and existing
under the laws of the Republic of the
Philippines

By: _____
Name: Jose Eduardo J. Alarilla
Title: Director

GRANTEE:

GLOBAL GAMING PHILIPPINES LLC,
a limited liability company organized and
existing under the laws of the State of
Delaware, U.S.A.

By: _____
Name: William Weidner
Title: Chief Executive Officer

BRC:

BLOOMBERRY RESORTS CORPORATION,
a corporation organized and existing
under the laws of the Republic of the
Philippines

By: _____
Name: Jose Eduardo J. Alarilla
Title: Vice Chairman

Equity Option Agreement dated April 16, 2012 by and between Prime Metroline Transit Corp., Bloomberry Resorts Corporation and Global Gaming Philippines LLC

Subject to Arbitration Confidentiality Orders

BLOOM_0082055