```
 1    UNITED STATES DISTRICT COURT
      SOUTHERN DISTRICT OF NEW YORK
 2
      - - - - - - - - - - - - - - - - - - x
 3                                         :
      GLOBAL GAMING PHILIPPINES, LLC,      :
 4                                         :
             Plaintiff,                    :
 5                                         :
         v.                                : Case No.
 6                                         : 21 Cv. 2655
      ENRIQUE K. RAZON, JR.;               : (LGS)(SN)
 7    BLOOMBERRY RESORTS AND HOTELS INC.;  :
      SURESTE PROPERTIES INC.;             :
 8                                         :
             Defendants.                   :
 9                                         :
      - - - - - - - - - - - - - - - - - - x
10
11       **HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**
12
13                VIDEOTAPED DEPOSITION OF
14                BINYOMIN AVROHOM KAPLAN
15                     MAY 19, 2022
16
17          VIDEOTAPED DEPOSITION OF BINYOMIN AVROHOM
18    KAPLAN, produced as a witness at the instance of the
19    Plaintiff, and duly sworn remotely, was taken in the
20    above-styled and numbered cause on MAY 19, 2022, at the
21    offices of Milbank LLP, 55 Hudson Yards, New York, New
22    York, from 9:44 a.m. to 4:46 p.m., before Bridget
23    Lombardozzi, CSR, RMR, CRR, and Notary Public of the
24    State of New York, pursuant to the Federal Rules of
25    Civil Procedure and the provisions stated on the record.
```

---

**Fissell Decl. Ex. 34**

```
 1    together sometimes as "Bloomberry," you'll
 2    understand me?
 3         A.   Yes.
 4         Q.   So was GGP represented by counsel in
 5    connection with negotiating the MSA?
 6         A.   Yes.
 7         Q.   Counsel in the U.S.?
 8         A.   Yes.
 9         Q.   And counsel in the Philippines?
10         A.   Yes.
11         Q.   Which counsel in the U.S.?
12         A.   A combination of internal Cantor counsel
13    and Paul Hastings.
14         Q.   And which counsel in the Philippines?
15         A.   Puno & Puno.
16         Q.   Did GGP conduct any due diligence
17    regarding Bloomberry or Mr. Razon before entering
18    into the MSA?
19         A.   "Bloomberry" means Sureste and BRHI?
20         Q.   We can start with that.
21         A.   Okay.  Because I don't think BRC was in
22    existence at the time before the MSA.  But, yes,
23    we did do due -- due diligence.
24         Q.   Describe the due diligence.
25         A.   I think it's documents that you've seen.
```

---

```
 1    it does look the same.
 2         Q.   Okay.  Apart from what's reflected in
 3    this Exhibit 2010 and apart from what may be
 4    reflected in the Spectrum Group's report, did GGP
 5    conduct any other due diligence into BRHI and SPI
 6    before GGP entered into the MSA?
 7                  MR. AINSWORTH:  Objection.
 8              Assumes facts not in evidence.
 9         A.   Not to my knowledge.
10         Q.   All right.  So what was the -- did --
11    let me withdraw that.
12              All right.  Before it entered into the
13    MSA, did GGP conduct any due diligence or
14    investigation into the assets of BRHI and SPI?
15         A.   I think that's in here.
16         Q.   When you say "in here," are you
17    referring to this Exhibit 2010?
18         A.   That you just gave me, yes.
19         Q.   Okay.  Do you have any knowledge of any
20    such due diligence apart from what may be
21    reflected in Exhibit 2010?
22         A.   No.
23         Q.   Prior to entering into the MSA, did GGP
24    conduct any due diligence into the financial
25    condition of BRHI or SPI?
```

---

```
 1         A.   Yes, what's reflected in here.
 2         Q.   And apart from what may be reflected
 3    here, you're not aware of any other due diligence
 4    that GGP conducted into the financial condition of
 5    BRHI and SPI, is that correct?
 6         A.   Correct.
 7         Q.   Prior to entering into the MSA, did GGP
 8    conduct any due diligence into the level of
 9    capitalization of BRHI or SPI?
10         A.   Is that different than what you just
11    asked me?  Yes.  This diligence.
12         Q.   Referring to Exhibit 20 --
13         A.   Yes, Exhibit 2010.
14         Q.   And you're not aware of any other such
15    due diligence apart from what's reflected in
16    Exhibit 2010, correct?
17         A.   And the other report I mentioned.
18         Q.   Is it your understanding that the other
19    report you mentioned deals with the level of
20    capitalization of BRHI or SPI?
21         A.   No.
22         Q.   Now, if I were to ask about due
23    diligence into the solvency of BRHI or SPI, would
24    you give me the same answer, that it's reflected
25    in Exhibit 2010 and you're not aware of any other
```

1   A.  I don't recall seeing anything like that
2   in the MSA.
3       Q.  Did GGP have any discussions about
4   whether Mr. Razon should be a party to the MSA?
5       A.  No.
6       Q.  Did GGP have any discussions about
7   whether Mr. Razon should be a party to the equity
8   option agreement or the related participation
9   agreement?
10              MR. AINSWORTH:  Objection.
11          Beyond the scope of the deposition
12          notice.
13              You can answer in your
14          individual capacity.
15      A.  Yes.
16              MR. WALFISH:  I just want to
17          note for the record that I don't
18          accept Mr. Ainsworth's objections and,
19          hopefully, Mr. Ainsworth will be a
20          little bit more judicious with his
21          objections.
22              MR. AINSWORTH:  Hopefully,
23          you'll be more judicious with your
24          questions.
25  BY MR. WALFISH:

1       Q.  So, Mr. Kaplan, to the extent that there
2   were such discussions, please describe them.
3               MR. AINSWORTH:  Objection.
4           Give me a second.  Let me read the...
5               Again, it's beyond the scope
6           of the deposition topic.
7               And you can answer in your
8           individual capacity to the extent you
9           know.
10      A.  Yeah, I want to bifurcate this.  Any
11  discussions that we had internally were
12  privileged.  We proposed in an initial interaction
13  on the equity option agreement that Mr. Razon
14  guarantee the obligations.
15      Q.  And what was the reason for that
16  proposal?
17      A.  We had no idea who was the grantor at
18  the time.
19      Q.  And was that proposal ultimately adopted
20  in the final version of the agreement?
21      A.  No.  We received a corporate entity with
22  substance and withdrew the request.
23      Q.  At any time before the MSA was signed,
24  did anybody from the Bloomberry side ever say to
25  anybody on the GGP side, in words or substance,

1   that Mr. Razon's personal assets would be
2   available to satisfy the debt or obligation of
3   BRHI or SPI?
4       A.  I understand that Mr. Razon spoke of
5   contributing more capital to the entity as part of
6   the discussions.
7       Q.  Apart from that, did anyone from the
8   Bloomberry side say, in words or substance, that
9   if BRHI or SPI had an obligation under the MSA,
10  that Mr. Razon's personal assets could be looked
11  to to satisfy that obligation?
12      A.  I don't think so.
13      Q.  Before the MSA was signed, did anybody
14  from the Bloomberry side ever say to anybody on
15  the GGP side, in words or substance, that
16  Mr. Razon was guaranteeing the obligations of BRHI
17  or SPI?
18      A.  I don't think so.
19      Q.  Before the MSA was signed, did anybody
20  from the Bloomberry side ever say to anybody on
21  the GGP side, in words or substance, that
22  Mr. Razon would be personally liable for any debts
23  or obligations of BRHI or SPI?
24              MR. AINSWORTH:  Objection.
25          Asked and answered.

1       A.  I don't think so.
2       Q.  At any time before the MSA was signed,
3   did anybody from the Bloomberry side ever say to
4   anybody on the GGP side, in words or substance,
5   that there would be recourse to any company or any
6   person other than BRHI or SPI for the obligations
7   of BRHI and SPI under the MSA?
8               MR. AINSWORTH:  Objection.
9       A.  I don't think so.
10      Q.  At any time before the MSA was signed,
11  did anybody on the GGP or Cantor side ever say to
12  anyone else on that side, in words or substance,
13  that Mr. Razon's personal assets would be
14  available to satisfy a debt or obligation of BRHI
15  or SPI?
16      A.  It was not contemplated.
17      Q.  So is the answer to my question, no,
18  nobody ever said that?
19      A.  Correct.
20      Q.  At any time before the MSA was signed,
21  did anyone on the GGP or Cantor side ever say to
22  anyone else on that side, in words or substance,
23  that Mr. Razon was providing a guarantee of the
24  obligations of BRHI and SPI under the MSA?
25              MR. AINSWORTH:  Objection.

                Asked and answered.
      A.   I don't think so.
      Q.   At any time before the MSA was signed,
did anyone on the GGP or Cantor side ever say to
anyone else on that side, in words or substance,
that Mr. Razon would be personally liable for any
debts or obligations of BRHI or SPI?
                MR. AINSWORTH:  Objection.
           Hold on.
                You can answer to the extent
           it doesn't disclose attorney-client
           communications.
      A.   I'm not sure what the difference is
between this question and the one before, but
ultimately the answer is I -- I'm not aware.
      Q.   You're not aware that anybody ever said
that, correct?
      A.   Correct.
      Q.   At any time before the MSA was signed,
did anyone on the GGP or Cantor side ever say to
anyone else on that side, in words or substance,
that there would be recourse to any company or any
person other than BRHI or SPI for the obligations
of BRHI and SPI under the MSA?
                MR. AINSWORTH:  Objection.

                Again, to the extent you can
           answer without disclosing
           attorney-client communications, you
           can.
      A.   I'm not aware.
      Q.   Meaning you're not aware that anyone
said that, right?
      A.   Correct.
      Q.   Prior to entering into the MSA, did GGP
conduct any due diligence or investigation into
whether any arbitration award or judgment against
BRHI or SPI would be enforceable in the
Philippines?
                MR. AINSWORTH:  Objection.
                Again, to the -- to the
           extent you can answer without
           disclosing attorney-client
           communications, you can answer.
      A.   It was not contemplated.
      Q.   You're aware that there's an arbitration
clause in the MSA?
      A.   I am.
      Q.   You're aware that the way arbitration
works is a tribunal is convened and eventually
renders an award presumably in favor of one party

           instruction.  Same objection.
      A.   I have disclosed the discussions that
I'm aware of.
      Q.   And how about the basis for the
allegation?
                MR. AINSWORTH:  Objection.
      Q.   Anything else?
                MR. AINSWORTH:  Objection.
           Same instruction.  Same obj -- same
           objection.  Same instruction.
      A.   I don't know whether there's anything
else.
      Q.   All right.  Let's turn to something
else.
           You're aware that GGP has not filed a
proceeding to recognize and enforce the final
arbitral award in the Philippines, right?
      A.   Yes.
      Q.   Why has GGP not done so?
                MR. AINSWORTH:  Objection.
                To the extent you can answer
           without disclosing attorney-client
           communications, work product, you may
           do so.
      A.   Leaving aside privileged discussions, I

think that we have seen continued thwarting of the
sale of the option shares with the renewed
injunction and bond and it creates complex
questions about the process.
      Q.   You're also aware, though, that the
courts of the Philippines have said that to get
that injunction lifted, GGP needs to get the
arbitral awards recognized and enforced.  You know
that, right?
                MR. AINSWORTH:  Objection.
           Calls for a legal conclusion.
                To the extent you can answer
           without disclosing attorney-client
           communications, you may.
      A.   I understand the injunction has not been
released.
      Q.   Well, but are you aware one way or the
other about whether the courts of the Philippines
have said that to get the injunction lifted, GGP
needs to have the arbitral awards recognized and
enforced?
                MR. AINSWORTH:  Objection.
           Calls for a legal conclusion.
                To the extent you can answer
           without disclosing attorney-client