---

**Page 1**

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - - - x
 3                                     :
     GLOBAL GAMING PHILIPPINES, LLC,   :
 4                                     :
              Plaintiff,               :
 5                                     :
         v.                            : Case No.
 6                                     : 21-CV-2655
     ENRIQUE K. RAZON, JR.;            : (LGS)(SN)
 7   BLOOMBERRY RESORTS AND HOTELS INC.;:
     SURESTE PROPERTIES INC.;          :
 8                                     :
              Defendants.              :
 9                                     :
     - - - - - - - - - - - - - - - - - x
10
                REMOTE VIDEOTAPED DEPOSITION OF
11
                      WILLIAM P. WEIDNER
12
         **** Confidential - Attorneys' Eyes Only ****
13
                        April 20, 2022
14
15       REMOTE VIDEOTAPED DEPOSITION OF WILLIAM P.
     WEIDNER, produced as a witness at the instance of
16   the Plaintiff, and duly sworn remotely, was taken in
     the above-styled and numbered cause on April 20,
17   2022, from 9:04 a.m. (PST) to 4:35 p.m. (PST),
     remotely before Dawn K. Larson, RDR, CRR, reported
18   by machine shorthand, pursuant to the Rule 30 of the
     Federal Rules of Civil Procedure and the provisions
19   stated on the record.
```

---

**Page 105**

 1   Q.  Right.  And Sureste Properties Inc.?
 2   A.  Yes.
 3   Q.  Does that refresh your recollection that
 4   those were the entities that were the counterparties
 5   on the MSA?
 6   A.  Yes.
 7   Q.  And not Mr. Razon personally?
 8   A.  Both signed by Mr. Razon.
 9   Q.  Did you understand Mr. Razon to be
10   personally a party to the MSA?
11   A.  No.
12   Q.  And when you were involved at any time
13   during the course of the negotiation, did Mr. Razon
14   or anyone on his team ever say to you that led you
15   to believe that Mr. Razon's personal assets would be
16   available to satisfy any liability under the MSA?
17       MR. PASCUCCI:  Object to the form.
18   A.  Repeat the question again, please.
19       MS. FISSELL:  Could you read that back?
20       (The requested portion was read.)
21   A.  No, not under the MSA.
22   Q.  I'm sorry?
23   A.  No, not under the MSA.
24   Q.  What about under the EOA?
25   A.  No, not under the EOA.  No.

---

**Page 106**

 1   Q.  Or any other agreement?
 2   A.  Not under any other agreement.  His
 3   personal assets were what he had in the entity
 4   before it went public.  So I don't know -- and
 5   during the period of time that we began performing
 6   services before the MSA was signed, we expected him
 7   to fund what was going in.  And we would put up --
 8   he solicited us to put up 10 percent of whatever
 9   funds he put in.  So personal funds were going into
10   the development of what became the public company,
11   and then when the public company became the public
12   company, it was a public company.
13   Q.  Right.  Is it your understanding when a
14   person contributes assets to a company, that those
15   assets, then, become the assets of the company as
16   separate from the person?
17       MR. PASCUCCI:  Object to form.
18   A.  You didn't ask that.  You asked -- I
19   thought you asked --
20       BY MS. FISSELL:
21   Q.  But I'm asking you that question now.  I'm
22   not asking you to go back to the other question.
23   A.  Okay.  No.  No.  When they make their
24   contribution and the measurement of the payment for
25   10 percent of whatever that is, that becomes the box

---

**Page 107**

 1   that you're playing in.  So his contributions before
 2   it went public were the part of the measurement of
 3   what 10 percent of that was, which was the bargain
 4   relating to going public.  So, when it's in that
 5   box, it's in the box.
 6   Q.  And when you are saying "in the box," you
 7   mean in the box being the assets of the company?
 8   A.  Yes.
 9   Q.  So going back to my question before, did
10   you understand that Mr. Razon's personal assets
11   would be available to satisfy any liability of BRHI
12   or SPI?
13       MR. PASCUCCI:  Object to form.
14       BY MS. FISSELL:
15   Q.  After -- once they are in the box, his
16   assets have been put in the box, did you understand
17   his other personal assets that were not in the box
18   would be available to satisfy the liability of BRHI
19   and SPI?
20       MR. PASCUCCI:  Object to the form.
21   A.  He's a wealthy man.  And if he accepts our
22   purchase and then he acts inappropriately, I believe
23   they become fair game, as a layman.
24       BY MS. FISSELL:
25   Q.  That wasn't my question, though.

---

CONFIDENTIAL - Attorney's Eyes Only
Deposition of William P. Weidner   Global Gaming Philippines, LLC v. Enrique K. Razon, Jr., et al

1      My question was, during the negotiations,
2  did you have an understanding that his personal
3  assets would be available to satisfy a liability of
4  BRHI or SPI?
5      MR. PASCUCCI: Objection. Form.
6      A. No. Because we purchased shares in a
7  public company. I expected the public company's
8  assets to -- or I expected to pay the bills for our
9  management services and that the company would trade
10 and we'd be able to then liquidate that which we --
11 he solicited and we purchased.
12     So we expected to be able to get our money
13 back, at least, and whatever the profit from beyond
14 that, that holding, whatever the market was
15 providing for us. So we -- at that point in time,
16 we didn't expect Razon to pay because the market
17 paid it because we owned it. We expected the
18 company to pay our management fees.
19     BY MS. FISSELL:
20     Q. And did you understand that there was a
21 personal guarantee from Mr. Razon on the MSA?
22     A. Did I understand --
23     Q. Did you believe there was a personal
24 guarantee from Mr. Razon under the MSA?
25     A. I don't believe so. I don't believe

---

CONFIDENTIAL - Attorney's Eyes Only
Deposition of William P. Weidner   Global Gaming Philippines, LLC v. Enrique K. Razon, Jr., et al

1  there's a clause of that nature.
2      Q. And same with the EOA?
3      There is no personal guarantee under the
4  EOA?
5      A. No, I don't believe so.
6      Q. Is it safe to say that you've been
7  involved in a lot of contract negotiations in your
8  career?
9      A. A number.
10     Q. And was the counterparty typically a
11 company as opposed to an individual?
12     A. Yes.
13     Q. And in those contract negotiations, did
14 you ever seek a personal guarantee from that
15 company's CEO or majority shareholder?
16     A. Not that I recall.
17     Q. And do you recall a counterparty ever
18 asking any of the corporations that you worked for
19 for a personal guarantee from the CEO or a majority
20 shareholder?
21     A. Asking for a personal guarantee. Yes.
22     Q. And what were those circumstances?
23     A. Circumstances whether -- you said asking
24 for. You didn't say that I -- that I -- yes, of
25 course.

---

CONFIDENTIAL - Attorney's Eyes Only
Deposition of William P. Weidner   Global Gaming Philippines, LLC v. Enrique K. Razon, Jr., et al

1      MS. FISSELL: All right. Well, let's
2  finish this doc.
3      BY MS. FISSELL:
4      Q. If you go to Page 42. You see under
5  "political risk"?
6      A. Yes.
7      Q. The third bullet lists "history of
8  corruption and limited judicial recourse."
9      A. Yes.
10     Q. Do you recall that being a concern when
11 you were discussing getting -- entering into a
12 contract with BRHI and SPI?
13     A. Yes.
14     Q. And if we go to Page 43, the next page, if
15 you look at the second-to-last bullet, it
16 says: "Despite the recent election of respected
17 President Aquino, the Philippines can still be a
18 challenging environment for companies to operate in.
19 The performance of good companies can be impaired by
20 political corruption, with the courts often
21 providing limited scope for recourse."
22     Do you see that?
23     A. Yes.
24     Q. And that was a concern as well?
25     A. Yes.

---

CONFIDENTIAL - Attorney's Eyes Only
Deposition of William P. Weidner   Global Gaming Philippines, LLC v. Enrique K. Razon, Jr., et al

1      Q. And at the time you understood Mr. Razon
2  to have significant personal wealth at the time you
3  were entering into the contract?
4      A. Yes.
5      Q. And you did not request a personal
6  guarantee from Mr. Razon under the MSA; correct?
7      MR. PASCUCCI: Asked and answered.
8      A. No.
9      MS. FISSELL: Okay. We can take a break.
10     EVEREST TECHNICIAN: We are going off the
11 record. The time is approximately 12:59 p.m.
12     (Brief recess.)
13     EVEREST TECHNICIAN: The time is
14 approximately 1:16 p.m. We are back on the record.
15     BY MS. FISSELL:
16     Q. Mr. Weidner, were you involved in the
17 negotiations of the EOA?
18     I understand that "involved in
19 negotiations" are difficult words, but did you have
20 an awareness that the EOA was being negotiated?
21     A. Yes, I was.
22     Q. And without disclosing any privileged
23 communications, you were generally kept abreast of
24 the discussions and the back-and-forth on the EOA?
25     A. Yes.