**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GLOBAL GAMING PHILIPPINES, LLC,

         *Plaintiff*,

        v.

ENRIQUE K. RAZON, JR.;
BLOOMBERRY RESORTS AND HOTELS
INC.; SURESTE PROPERTIES, INC.

        *Defendants*.

No. 21-CV-2655 (LGS) (SN)

 

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANT ENRIQUE K. RAZON, JR.'S**
**MOTION TO EXCLUDE THE TESTIMONY OF TROY A. DAHLBERG**

**TABLE OF CONTENTS**

I.    DAHLBERG IS NOT QUALIFIED TO OFFER HIS OPINIONS HERE ......................... 1

II.   DAHLBERG'S "METHODOLOGY" IS NONEXISTENT, LET ALONE RELIABLE AND APPLIED WITH THE REQUISITE ANALYTICAL RIGOR ................................. 4

III.  DAHLBERG IMPROPERLY USURPS THE ROLE OF FACTFINDER ......................... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F. 3d 256 (2d Cir. 2002)...............................................................................5

*Choi v. Tower Research Capital LLC*,
  2 F.4th 10 (2d Cir. 2021) ...............................................................................3, 5

*Davis v. Carroll*,
  937 F. Supp. 2d 390 (S.D.N.Y. 2013)...............................................................8

*In re Flutie New York Corp.*,
  310 B.R. 31 (Bankr. S.D.N.Y. 2004) ...............................................................1

*In re Fosamax Prods. Liab. Litig.*,
  645 F. Supp. 2d 164 (S.D.N.Y. 2009)............................................................8, 9

*H. Daya Int'l Co. v. Do Denim, LLC*,
  2023 WL 1340422 (S.D.N.Y. Jan. 31, 2023) ...................................................1

*Highland Cap. Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005)............................................................7, 9

*Lippe v. Bairnco Corp.*,
  288 B.R. 678 (S.D.N.Y. 2003)...........................................................................9

*In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig*,
  982 F.3d 113 (2d Cir. 2020).............................................................................4

*In re Mirena IUS Levonrgestrel-Related Prods. Liab.*,
  341 F. Supp. 3d 23 (S.D.N.Y. 2018)................................................................7

*Muniz v. Rexnord Corp.*,
  2006 WL 5153078 (N.D. Ill. Nov. 2, 2006) .....................................................4

*In re MV MSC Flaminia*,
  2018 WL 3208598 (S.D.N.Y. July 28, 2017) .................................................10

*Nimely v. City of N.Y.*,
  414 F.3d 381 (2d Cir. 2005).........................................................................1, 10

*In re Pfizer Inc. Sec. Litig.*,
  819 F.3d 642 (2d Cir. 2016)..............................................................................7

*Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*,
 2008 WL 7211982 (W.D. Okla. Nov. 21, 2008) .................................................1

*Querub v. Moore Stephens Hong Kong*,
 649 F. App'x 55 (2d Cir. 2016) .................................................................3

*In re Rezulin Prod. Liab. Litig.*,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004).........................................................9

*Rochester Gas & Elec. Corp. v. GPU, Inc.*,
 2008 WL 8912083 (W.D.N.Y. Aug. 8, 2008), *aff'd*, 355 Fed. Appx. 547 (2d
 Cir. 2009) ..............................................................................................2

*SEC v. Tourre*,
 950 F. Supp. 2d 666 (S.D.N.Y. 2017).....................................................1, 8

*Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group*,
 2020 WL 5822058 (S.D.N.Y. Sept. 30, 2020) (Schofield, J.) ...........................5

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991)....................................................................6

*United States v. Brooks*,
 2010 WL 291769 (E.D.N.Y. Jan. 11, 2010) ................................................6

*United States v. Funds Held in the Name of or for the Benefit of Wetterer*,
 210 F.3d 96 (2d Cir. 2000).......................................................................3

**Other Authorities**

Fed. R. of Evidence 702...............................................................................1

*Tatung Co. v. Shu Tze Hsu*,
 No. 13-cv-01743, Nov. 28, 2016 Hr'g Tr. (C.D. Cal. Nov. 28, 2016) (ECF No.
 989) .....................................................................................................5

GGAM[1] bears the burden of establishing that Dahlberg and his proposed testimony meet the requirements of Fed. R. of Evidence 702. *E.g., SEC v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2017). It cannot do so.

## I. DAHLBERG IS NOT QUALIFIED TO OFFER HIS OPINIONS HERE

Under Rule 702, the court first must determine that Dahlberg is qualified to offer his proffered opinions. *Nimely v. City of N.Y.*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). "A court's inquiry into a proposed expert's qualifications . . . seeks to determine whether the proposed expert is, in fact, an expert *in the area in which he or she intends to testify*." *Tourre*, 950 F. Supp. 2d at 674, 678 (emphasis added); *H. Daya Int'l Co. v. Do Denim, LLC*, 2023 WL 1340422, at *3 (S.D.N.Y. Jan. 31, 2023) (Courts should "compare the expert's area of expertise with the particular opinion the expert seeks to offer[.]") (cleaned up; citation omitted).

The prototypical expert in an alter ego case is either a law professor who opines on corporate governance or structures or a forensic accountant who investigates accounting matters and opines on issues like solvency, undercapitalization, or siphoning of funds. Dahlberg is the latter but seeks to testify about the former, among numerous other topics with no connection to his expertise. We are not aware of any court in this Circuit that has allowed a forensic accountant in an alter ego case to testify on anything other than solvency. *See, e.g.*, *In re Flutie New York Corp.*, 310 B.R. 31, 41 (Bankr. S.D.N.Y. 2004); *see also Ponca Tribe of Indians of Okla. v. Cont'l Carbon Co.*, 2008 WL

---

[1] All terms not defined herein have the meaning ascribed to them in the Statement of Undisputed Material Facts in Support of Defendant Enrique K. Razon, Jr.'s Motion for Summary Judgement (Dkt. 345). "Report" refers to the Report of Troy A. Dahlberg, dated Sept. 16, 2022, attached as Ex. A to the Declaration of Rachel Penski Fissell, dated February 22, 2023 ("Fissell Decl."), filed concurrently herewith. "Reb. Report" refers to the Rebuttal Report of Dahlberg, dated Nov. 4, 2022, excerpts of which are attached as Ex. B to the Fissell Decl. "Reports" refers to the Report and Reb. Report. "Tr." refers Dahlberg's deposition transcript, excerpts of which are attached as Ex. C to the Fissell Decl.

7211982, at *3 (W.D. Okla. Nov. 21, 2008) (permitting forensic accountant to testify about capitalization but precluding testimony on other "Indicia of Corporate Separateness").[2]

Dahlberg claims to have been retained as a forensic accountant[3] (Report ¶ 1) with expertise in "detailed accounting and financial analyses of complex transactions," determining "whether accounting transactions were proper," and identifying "financial and accounting irregularities." *Id.* ¶ 274; Report Ex. 2 at 2. But in this case Dahlberg does not perform any "accounting and financial analyses" (let alone "detailed" ones), nor assess "accounting transactions," nor identify any "*financial or accounting irregularities*" (because there are no such irregularities here). He does not analyze BRHI's or SPI's financial statements or accounting records, or otherwise offer any opinion on solvency, capitalization, or anything at all that might have been within his accounting expertise, Tr. 16:3-6 – again, because there is nothing actually alleged to be amiss in those areas.

Dahlberg has tried to create the illusion of qualification by claiming to be an expert in (i) corporate governance, Tr. 22:25-23:15 (ii) disclosures, *id.* 37:6-8, (iii) legal ethics, *id.* 83:5-7, and (iv) fiduciary duties, *id.* 35:22-24. Dahlberg is not an expert in these areas. He has never published on these topics (Report Ex. 2 at 16; Tr. 28:13-18, 35:16-21); the words "governance," "fiduciary duty," and "ethics" are absent from his CV (*see generally* Report Ex. 2; Tr. 25:7-26:1; *id.* 40:10-41:6); and when he has testified in alter ego cases, it has also involved accounting or solvency issues (Report Ex. 3).

---

[2] In a bench trial to determine whether a public utility was liable as an alter ego for environmental cleanup, a law professor, with expertise in corporate governance, was permitted to distill and summarize "historical documents," provide "historical perspective with respect to the public utility industry during the relevant time period," i.e. 1920-1940, and place "the historical data in context with well-established principles of corporate governance." *Rochester Gas & Elec. Corp. v. GPU, Inc.*, 2008 WL 8912083, at *1, *5 (W.D.N.Y. Aug. 8, 2008), *aff'd*, 355 Fed. Appx. 547, 551 (2d Cir. 2009).

[3] He also claims to be retained as a "business practices" expert. Report ¶ 1. It is unclear what that means, and unsurprisingly, Dahlberg could not coherently define this amorphous expertise. Tr. 17:9-18:8, 22:2-23. Dahlberg does not even use the phrase "business practices" in his own description of his qualifications or his CV (Report ¶ 274 & Ex. 2), and admitted that he has no publications, certifications, or degrees in "business practices," *id*. 18:25-19:9.

Making matters worse, Dahlberg purports to offer opinions (he mostly narrates facts, *see infra* § III) regarding governance and formalities of *Philippine* corporations. *See, e.g.,* Report ¶¶ 45-56, 66-75, 91-94, 102-257; Reb. Report ¶¶ 18-66; Tr. 110:22-111:25, 149:15-150:8. But Dahlberg has *zero* expertise regarding *Philippine* corporations. Report Ex. 2; Tr. 20:14-18, 33:6-12, 34:19-25, 107:7-10, 111:22-25. Courts routinely exclude experts who testify outside their area of expertise. *E.g.*, *Querub v. Moore Stephens Hong Kong*, 649 F. App'x 55, 57 (2d Cir. 2016) (affirming exclusion of expert in Hong Kong/Chinese auditing standards from testifying about auditing standards applicable to U.S. auditors because she was not qualified to discuss U.S. standards and any opinions about foreign standards were irrelevant). And in alter ego cases, on issues like corporate formalities or corporate structure, the Second Circuit is crystal clear: whether a particular company has complied with corporate formalities must be judged by the standards of the place of incorporation, *United States v. Funds Held in the Name of or for the Benefit of Wetterer*, 210 F.3d 96, 108-09 (2d Cir. 2000) (declining to pierce corporate veil of Guatemalan company because expert testified that the company adhered to requisite corporate formalities under Guatemalan law). The only expert qualified to opine on such matters is one knowledgeable about the formalities required by that local law. *See Querub*, 649 F. App'x at 57. Dahlberg has no Philippine expertise and is manifestly unqualified to opine on Philippine corporate governance.

We are also not aware of any Second Circuit case that has ever permitted an expert to testify on whether conduct was "wrongful" for alter ego purposes unless such conduct involved judgment proofing, undercapitalizing, or other siphoning from the debtor. But here Dahlberg offers opinions on whether board-approved decisions (having nothing to do with judgment proofing and the like) were wrongful. Report ¶¶ 101-133; Reb. Report ¶¶ 50-53. The Report's "Wrongful Actions" section (Report § V.B.) reads like a legal brief, not an expert report. *See Choi v. Tower*

*Research Capital LLC*, 2 F.4th 10, 20 (2d Cir. 2021) (affirming exclusion of expert report that "function[ed] as little more than a legal brief that parrots plaintiff's arguments").

## II. DAHLBERG'S "METHODOLOGY" IS NONEXISTENT, LET ALONE RELIABLE AND APPLIED WITH THE REQUISITE ANALYTICAL RIGOR

Even wrongly assuming that Dahlberg were qualified, the Court still would have to assess his methodology to ensure that it is reliable "at every step" by undertaking "'a *rigorous examination* of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and the methods to the case at hand.'" *In re Mirena IUS Levonorgestrel-Related Prod. Liab. Litig*, 982 F.3d 113, 122–23 (2d Cir. 2020). Dahlberg's supposed "methodology" is to (1) cherry-pick indicia of (*i.e.* factors supporting) an alter ego relationship from the "Alter Ego" chapter (the "Chapter" or "Ch.")[4] of the Litigation Services Handbook: The Role of the Financial Expert, *see* Report ¶¶ 34-35, 38, 45, 66, 76, 95, 101, 133-35, 144, 159-160, 173, 195-96, 200, 207-08, 226, 229, 233, 241, 246, 253, 258, and then (2) offer "an opinion about how much evidence there is to support the existence of [his cherry-picked] indicia," *see, e.g.*, Tr. 308:8-14, 68:19-25, 290:22-291:9, all while (3) ignoring any evidence that might *refute* his selected indicia, *id*. 45:5-20; 68:9-25, 197:8-14.

This is not a methodology, let alone a reliable one. The Chapter is *descriptive*, not *prescriptive*. It is not meant to be anything other than an overview of alter ego law, *see generally* Chapter, and one meant for *non-lawyers* at that. Report ¶ 34. In the words of the only court to have considered an expert's reliance on (an earlier version of) the Chapter, "there is no evidence" that the Chapter "has been subjected to peer review and/or that it has been generally accepted to support the expert's alter-ego analysis." *Muniz v. Rexnord Corp.*, 2006 WL 5153078, at *2 (N.D. Ill. Nov. 2, 2006) (precluding expert testimony on alter-ego relationship where the expert's "primary

---

[4] Excerpts of the Chapter are attached as Exhibit D to the Fissell Decl.

resource" was the Chapter); *see also Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F. 3d 256, 266 (2d Cir. 2002) (describing reliability test).

Worse, Dahlberg uses the Chapter not to guide any sort of forensic accounting inquiry (or other actual *expert* analysis), but instead to pronounce what the law is. Expert testimony cannot usurp "the role of the trial judge in instructing the jury as to the applicable law." *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Group,* 2020 WL 5822058, at *1 (S.D.N.Y. Sept. 30, 2020) (Schofield, J.) (precluding expert from offering "any opinion on what he believes or assumes the law to be"). Yet Dahlberg uses the Chapter to instruct the jury on the alter ego standard. Report ¶¶ 34-35, 38, 45, 66, 76, 95, 101, 133-35, 144, 159-160, 173, 195-96, 200, 207-08, 226, 229, 233, 241, 246, 253, 258.[5] Each of these paragraphs must be excluded as improper instruction of the law. *See Choi*, 2 F.4th at 20 (affirming exclusion of expert who "identifie[d] a handful of rules" from a trading exchange's rulebook which were "the same rules that plaintiffs marshal in their briefing").

This Court need not take our word on all of this. The only federal court to consider alter ego testimony from Dahlberg in recent years planned to exclude it (before the case settled) because, among other things, it and another expert's testimony "lack credible foundation. They're outside their area of expertise. These reports **read like law school treatises**. . . . They're **argumentative** and they intrude on the jury with impermissible opinions, legal conclusions and they're outside their realm." *Tatung Co. v. Shu Tze Hsu*, No. 13-cv-01743, Nov. 28, 2016 Hr'g Tr. at 37-38 (C.D. Cal. Nov. 28, 2016) (ECF No. 989).

At bottom, Dahlberg's approach is simply to take the law (the Chapter's version anyhow) and apply it to a ludicrously one-sided version of the facts. *See, e.g.*, Tr. 59:2-60:2 (describing his analysis as a search for evidence that "looks like it's directly related to this indicia that could then

---

[5] *See also* Reb. Report ¶¶ 10-12, 20 (same but without reference to Chapter).

have an impact on the ultimate legal decision about whether its [sic] alter ego existed"); 57:8-24, 307:17-308:3. This is not permissible expert testimony. While an expert can opine on "general corporate governance concepts, such as . . . the concept of parent-subsidiary corporate separateness[,]" "overwhelmingly, courts specifically preclude the expert from offering either legal conclusions or opinions that apply corporate governance concepts to the case's specific facts." *United States v. Brooks*, 2010 WL 291769, at *4 (E.D.N.Y. Jan. 11, 2010); *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991) ("[T]estimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice").

But it gets worse. When the Chapter becomes inconvenient, Dahlberg simply invents new indicia (*i.e.,* factors) or applies Chapter-indicia to irrelevant facts. In perhaps the most egregious example, Dahlberg renames the Chapter's "Financial Dependence" indicum, Ch. at 6-7, to "Financial *Inter*dependence," *see* Report § V.G. According to the Chapter, "Financial Dependence" is concerned with "whether the debtor corporation is financially dependent" on the putative alter ego. Ch. at 6-7. In other words, if actually using the Chapter, Dahlberg would analyze whether BRHI/SPI are *financially dependent* on *Razon*. Instead, the Report discusses (i) *BRC's* dependence on BRHI/SPI (the opposite dependence contemplated by the Chapter), *see* Report ¶ 268, (ii) BRHI/SPI's supposed dependence on *Prime or BRC*, not Razon, *see* Report ¶¶ 262-65, 269-72, and (iii) supposed "overlapping banking relationships" – not even dependence at all – between BRC, BRHI, and SPI (again not Razon), *see* Report ¶ 266. Dahlberg only identifies one example of BRHI/SPI's supposed financial dependence on Razon: Razon's initial capitalization of the entities. Report ¶¶ 259-60. But the Chapter describes such funding as evidence of a *lack of an alter ego* relationship. Ch. at 8. Dahlberg even was forced to concede that this initial

capitalization is "not overly relevant" today. Tr. 243:13-21. In another example, although Dahlberg conceded that the only relevant relationship here is between *Razon* and BRHI/SPI, Tr. 46:16-21, 48:2-19, 182:19-183:9, the Report repeatedly applied Chapter-indicia to *BRC's* or *Prime*'s relationship with BRHI/SPI, *see, e.g.,* Report § V.E, V.F.2-3, V.G.2, V.G.4-5. The misapplication of his own chosen "methodology" is disqualifying. *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, 819 F.3d 642, 664 (2d Cir. 2016) (affirming exclusion of expert's testimony that "was not a sufficiently reliable application of his stated methodology").

Dahlberg also "ignores evidence that is highly relevant to his conclusion, but contrary to his own stated methodology," requiring exclusion. *See In re Mirena IUS Levonrgestrel-Related Prods. Liab.*, 341 F. Supp. 3d 23, 242 (S.D.N.Y. 2018). The Chapter identifies 10 key alter ego indicia, Ch. at 7, but Dahlberg ignores at least half of them because they would show the *absence* of an alter ego relationship between Razon and BRHI/SPI. *See* Reports (indicia nos. 1, 3, 6, 9-10 nowhere mentioned). Even within the "corporate formalities" indicia, Dahlberg focuses on minutiae (like whether SPI held annual meetings on the particular day provided for in its bylaws, Report ¶ 244) while admittedly ignoring corporate formalities that the Chapter identifies as material and relevant, Ch. at 10-11. *See* Tr. 285:9-15. In fact, Dahlberg admitted that he was retained to determine whether the Chapter indicia were "**satisfied**," *id*. 197:8-14, and that he directed his staff to look only for evidence *supporting* (as opposed to *refuting*) the existence of an alter ego relationship, Tr. 45:5-13.

## III.    DAHLBERG IMPROPERLY USURPS THE ROLE OF FACTFINDER

Dahlberg's report also breaks additional familiar ground rules for expert testimony:

*First*, Dahlberg's Reports are presented for the improper purpose of "constructing a factual narrative based on record evidence." *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) (collecting cases). Factual narration "fails to fulfill *Daubert*'s most basic

requirements" because it "does not convey opinions based on an expert's knowledge and expertise" and "may easily invade the province of the jury, providing a separate basis for exclusion." *Tourre*, 950 F. Supp. 2d at 675 (excluding expert from "'finding facts' that are in contention in this case" because an expert cannot "simply assemble the record evidence and opine on what it means"); *accord In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (expert not "permitted to merely read, selectively quote from, or 'regurgitate' the evidence."). Almost all of the Reports are factual narrative. *See, e.g.*, Report ¶¶ 7-32, 39-44, 46-65, 67-70-75, 77-90, 92-94, 96-99, 102-32, 136-43, 145-58, 160-72, 174-94, 199, 201-206, 208-25, 227-28, 230-38, 241-45, 247-52, 254-57, 259-72; Reb. Report ¶¶ 19, 23-24, 26-66, 72, 76-77, 80, 97-117. Dahlberg does not seriously dispute that factual narrative is his MO in this case. *See* Tr. 56:2-11 (describing his Report as offering an opinion whether there is evidence of a particular fact), 121:24-123:11 (same), 139:16-25 (same).

On top of narration, Dahlberg layers mischaracterization and advocacy. *Davis v. Carroll*, 937 F. Supp. 2d 390, 418 (S.D.N.Y. 2013) ("Where . . . expert testimony rests on . . . a misleadingly partial selection of relevant facts, it must be excluded."). For example, despite admitting that he did not "study . . . the actions of the BRC board," Tr. 182:19-183:9, and was not opining on BRC board independence, *id.* 172:4-9, the Report (¶ 170) opined that there was a "lack of independent directors on the BRC board." The Report also dwells on the notion that Razon caused BRHI/SPI to undertake a series of actions that somehow benefited Razon at the expense of the entities. *Id.* ¶¶ 6, 36, 104, 116-121, 123-132. But in his deposition, Dahlberg struggled to articulate how BRHI/SPI's interests were not aligned with Razon's. Tr. 85:22-87:5, 88:18-89:7, 317:10-318:4. Yet another example: Dahlberg opined that "the business of the Collingwood and Real Estate entities appears to be almost fully conducted by employees of BRC, BRHI, SPI, and

ICTSI," Reb. Report ¶ 107, but he was unaware that the Collingwood and Real Estate entities each employed their own personnel, Tr. 264:6-11 – facts that Dahlberg conceded might alter his opinion, *id*. at 265:17-266:7. And as one final outlandish illustration, in his deposition, Dahlberg offered a new, extended (and inaccurate) interpretation of a witness' testimony he cited (Report ¶ 266) while confessing that he had no idea what one of the key terms – *specific to a Philippine banking rule* – used by the witness meant. Tr. 250:3-252:2. In the end, the Reports are improper advocacy pieces. *In re Rezulin Prod. Liab. Litig.,* 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (excluding expert testimony that "does no more than counsel for plaintiff will do in argument, i.e. propound a particular interpretation of defendant's conduct") (cleaned up).

*Second,* Dahlberg offers highly improper state of mind or motivation testimony – "lay matters which a jury is capable of understanding and deciding without an expert's help." *Highland Cap.*, 379 F. Supp. 2d at 469; *In re Fosamax Prods.*, 645 F. Supp. 2d at 192 (excluding expert's testimony on "knowledge, motivations, intent, state of mind, or purposes of [defendant], its employees, the FDA, or FDA officials"); *Lippe v. Bairnco Corp.*, 288 B.R. 678, 688 (S.D.N.Y. 2003) (precluding an expert from testifying that the purpose of a transaction was "improper" or about defendants' "real purpose" for engaging in a particular transaction). The Reports repeatedly and improperly offer testimony regarding individuals' state of mind or motivations,[6] as well as the supposed real purpose or motivation behind BRHI/SPI board decisions.[7] To take one absurdity, Dahlberg offered (conflicting) explanations for a fact witness' thought process during the witness' own deposition: "*he's probably thinking* about the regulatory version of [independence], but I also think *he's not really thinking* about other versions of independence." Tr. 174:22-176:2.

---

[6] *See, e.g.,* Report ¶ 79 ("It appears that **Razon determined** that ...."), ¶ 237 ("Razon's testimony indicates that **in his mind**, . . . His statement makes clear that, **in Razon's view**, . . ."); ¶ 239 ("This statement . . . is completely consistent with **Razon's view** that . . .") (emphases added); *see also* ¶¶ 143, 209, 215, 247; Tr. 60:4-13, 92:5-9, 158:22-159:8.
[7] *See, e.g.,* Report ¶¶ 104, 116-20, 124, 131.

*Third*, Dahlberg not only ignores relevant indicia from the Chapter, *see supra* at 6-7, he also ignores highly relevant evidence related to his own chosen indicia. When confronted at deposition with evidence refuting or clarifying the evidence that he had cited, Dahlberg countered that he was merely weighing evidence,[8] and making credibility determinations.[9] For example, Dahlberg claimed that certain statements Razon made in a declaration were "black and white" and "very clear" about Razon's thoughts. Tr. 60:14-24. When confronted with contrary testimony from Razon, Dahlberg admitted that he accepted the declaration because it "is more straightforward" and that he was "weighing" the other testimony. *Id*. 63:3-66:24. Such "weighing," which is pervasive throughout the Reports, provides yet another basis for exclusion. *Nimely*, 414 F.3d at 397 (cleaned up; citation omitted) (an expert cannot invade the jury's province by "determining the weight and credibility of [] witness's testimony."); *In re MV MSC Flaminia*, 2018 WL 3208598, at *4 (S.D.N.Y. July 28, 2017) (Experts are not permitted to "weigh[] the evidence to reach factual determinations").

\*    \*    \*

The Reports' combined 175 pages are so problem-ridden that Dahlberg must be precluded from testifying here. He is not remotely qualified. He has no methodology other than identifying evidence (that requires no specialized or technical knowledge or expertise to understand) that supposedly supports several alter ego factors contained in an accountant's guide to alter ego law. His Reports are almost entirely one-sided factual narration that includes improper state of mind testimony, draws inferences from facts, and "weighs" competing evidence. The Court can get all of this from Plaintiff's summary judgment or pretrial briefing; it is not proper expert testimony.

---

[8] *See, e.g.,* Tr. 66:8-24 ("So as I said, it's not ignoring [certain evidence]; ***it's weighing***."); 164:22-165:19 (similar); 284:5-23 (similar); 67:24-68:8 ("I mean, there's lots of evidence here, right? ***So I have to go through and pick out the things*** that I think are, you know, ***the most clear evidence***"); 195:23-196:9 (similar).
[9] Tr. 255:4-15 (referring to "the credibility of someone's memory" as "not a particularly great source of evidence"); 259:6-25 ("people's recollections" are "very questionable").

Dated:   February 22, 2023                    WALFISH & FISSELL PLLC
         New York, New York

                                   By:   */s/ Rachel Penski Fissell*
                                         Rachel Penski Fissell
                                         Daniel R. Walfish
                                         405 Lexington Ave 8th floor
                                         New York, NY 10174
                                         Telephone: 212-672-0523
                                         rfissell@walfishfissell.com

                                         *Attorneys for Defendant Enrique K. Razon, Jr.*