Perry Decl. Ex. 23

## SUPPORT SERVICES AGREEMENT

This SUPPORT SERVICES AGREEMENT (this "Agreement") is made and entered into as of August 28, 2012, by and among Cantor Fitzgerald Securities, a New York general partnership ("CFS"), Global Gaming Asset Management Holdings, LLC, a Delaware limited liability company ("GGAMH"), and Global Gaming Asset Management, L.P., a Delaware limited partnership (the "Company," and together with the GGAMH, the "Receiving Parties").

### WITNESSETH:

WHEREAS, CFS, an affiliate of the Receiving Parties, is willing to provide or arrange for the provision of certain services to the Receiving Parties and their affiliates, all upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the premises contained herein, it is agreed as follows:

1. Term. The term of this Agreement shall commence as of January 27, 2011 and shall remain in effect until the earliest to occur of (a) such time as no services are being provided by CFS to the Receiving Parties hereunder, (b) the termination of this Agreement in accordance with Section 10 and (c) the third anniversary of the date hereof; provided, however, that this Agreement shall not terminate pursuant to this clause (c) and shall automatically be renewed for additional one (1) year periods at the end of each prior period unless either CFS or the Receiving Parties shall have notified the other in writing at least ninety (90) days prior to the end of such period that this Agreement shall not be renewed. This Agreement may be terminated by a party as provided herein or, as provided in Section 10, with respect to a particular service or group of services only, in which case it shall remain in full force and effect with respect to the other services described herein.

2. Services. During the term hereof and upon the terms and conditions set forth herein, each of the Receiving Parties may from time to time request, and upon such a request, CFS may provide, or may cause to be provided through an affiliate of CFS or otherwise, at the Company's expense as provided herein, the following services:

(a) *Payroll Services*. CFS may provide certain payroll services, which may include preparation of payroll checks for the Receiving Parties' employees and maintenance of employee payroll records, and making provision for the associated payroll for payments and similar charges.

(b) *Financial, Risk Management and Operations Services*. CFS may assist the Receiving Parties in establishing and maintaining bank accounts, risk management, obtaining lines of credit, purchasing capital improvements (including supplies and equipment), and providing technical advice as requested on commercial contracts (it being understood that CFS shall have no obligation to guarantee or provide other credit support for the obligations of the Receiving Parties).

GGAM-SDNY-0279150

(c)     *Accounting and Treasury Services.* CFS may provide accounting and treasury services, which shall include maintaining proper financial books and records for the Receiving Parties, assisting in the preparation of the Receiving Party's financial statements and such other accounting and treasury services as may be requested from time to time.

(d)     *Legal Services.* Members of CFS' internal legal department may provide the Receiving Parties with such legal counsel as may be requested from time to time. All amounts received by CFS under Section 4 for legal services shall be used solely to reimburse a portion of the salaries for the members of CFS' internal legal department. The Receiving Parties hereby acknowledge and agree that the legal services provided to the Receiving Parties will be provided by the same legal counsel as are providing legal services to CFS, and that conflicts of interest with respect to such representation may arise. By executing this Agreement, each Receiving Party explicitly acknowledges the possibility of such conflicts. In the event that a conflict arises between the Receiving Parties and CFS, as reasonably determined by CFS, the legal department of CFS will cease its representation of the Receiving Parties, but may continue its representation of CFS, and the Receiving Parties agree not to seek to disqualify such legal department from representing CFS based on such legal department's prior representations of the Receiving Parties pursuant to this Agreement.

(e)     *Human Resources.* CFS may provide the Receiving Parties with human resources services, which shall include assistance in hiring and terminating employees and administering employee benefits, as may be requested in relation to the operation of the Receiving Parties.

(f)     *Space.* CFS may make certain office space available to the Receiving Parties at CFS' costs associated with such space, as reflected in CFS' books and records, to the extent such space is available in CFS' offices. The Receiving Parties hereby agree not to take any action or fail to take any action in connection with their use of a portion of CFS offices a result of which would be CFS' violation of any of the terms and conditions of any lease or other restriction on CFS' use of such offices.

(g)     *IT Services and Communication Facilities.* CFS may provide secure internet connectivity for the Receiving Parties and business continuity and disaster recovery facilities, to mitigate single point of failure risks due to the communication network(s); and support services, which may include a 24 hour help desk (including appropriate contacts for notification escalation). Furthermore, CFS shall make available to the Receiving Parties any information that the Receiving Parties may request regarding the specific details of that portion of CFS' communication network that is used by the Receiving Parties. CFS may also provide additional information technology support services and other information technology services as may be requested from time to time.

GGAM-SDNY-0279151

(h) *Promotional Sales and Marketing.* CFS shall provide promotional sales and marketing services to the Receiving Parties as agreed by CFS and the Receiving Parties from time to time.

(i) *Investor Relations.* CFS may provide investor relations services to the Receiving Parties as may be requested from time to time, including, but not limited to, the preparations of reports for the partners of the Receiving Parties.

(j) *Miscellaneous.* CFS shall provide such other miscellaneous services to the Receiving Parties as the parties may reasonably agree.

For purposes of this Section 2, the Receiving Parties shall include each of the subsidiaries of the Receiving Parties.

3. Authority. Notwithstanding anything to the contrary contained in Section 2 hereof, the parties hereto acknowledge and agree that CFS shall provide, or arrange for third parties to provide, the services set forth in Section 2 of this Agreement subject to the ultimate authority of each Receiving Party to control its own business and affairs. Each party acknowledges that the services provided hereunder by CFS, or arranged by CFS to be provided by third parties, are intended to be administrative, technical and ministerial and are not intended to set policy for either Receiving Party.

4. Charges for Services. In consideration for providing the services to the Receiving Parties as provided for in Section 2 hereof, and except as otherwise expressly set forth therein, the Company shall pay to CFS (a) its Fully Allocated Cost of such services plus (b) an amount equal to ten percent (10%) of such Fully Allocated Cost (excluding Taxes). For purposes of this Section 4, "Fully Allocated Cost" shall mean the direct and indirect economic costs incurred by CFS as a result of the provision of such services allocated to the provision of such services in a manner that is both (i) reasonable and (ii) consistent with the methodology then employed by CFS and its affiliates in connection with the provision of similar services to related parties. Fully Allocated Cost shall include, but not be limited to, labor costs (including, without limitation, salary and benefits), information technology and telecommunications infrastructure costs, real estate costs, regulatory costs, reasonable administrative overhead, depreciation and amortization, and Taxes (but only to the extent invoiced in a manner consistent with the final sentence of this paragraph). CFS shall not charge the Company any portion of any Tax for which CFS receives a rebate or credit, or for which CFS is entitled to a rebate or credit. Any Taxes required to be charged in respect of services provided by CFS hereunder shall be charged in addition to any charges otherwise due hereunder, and shall be separately stated and included in the relevant invoice.

For the purpose of this Agreement, an administrative overhead cost shall be deemed reasonable if its charge is consistent with the then current methodology used by CFS or any of its affiliates when calculating administrative overhead costs under similar support services agreements.

GGAM-SDNY-0279152