Perry Decl.
Ex. 29

**IN WITNESS WHEREOF** this Agreement has been executed on the day and year first before written.

**GLOBAL GAMING PHILIPPINES LLC**

By: _____

    Name: William P. Weidner

    Title: CEO

Acknowledged by Founding Members:

**CANTOR GGAM, L.P.**

By: _____

    Name:

    Title:

**GAMING ASSET MANAGEMENT, LLC**

By: _____

    Name: William P. Weidner

    Title: Manager

*Signature Page to Placing Agreement re: Bloomberry Shares dated January 15 2014*

**IN WITNESS WHEREOF** this Agreement has been executed on the day and year first before written.

**GLOBAL GAMING PHILIPPINES LLC**

By: _____
     Name:
     Title:

Acknowledged by Founding Members:

**CANTOR GGAM, L.P.**

By: _____
     Name: Howard W. Lutnick
     Title: Chairman, President & CEO

**GAMING ASSET MANAGEMENT, LLC**

By: _____
     Name:
     Title:

*Signature Page to Placing Agreement re: Bloomberry Shares dated January 15, 2014*

GGAM-SDNY-0463310

## SCHEDULE I

### Representations, Warranties and Undertakings of the Vendor

In consideration of the Placing Agents entering into this Agreement and agreeing to perform its obligations hereunder, the Vendor hereby undertakes, warrants, and represents, to and for the benefit of the Placing Agents as follows:

(i)    the Placing Shares are fully paid, the Vendor is the beneficial owner of the Placing Shares and the Vendor has the necessary power and authority to enable it to sell the Placing Shares hereunder free from any lien, charge, encumbrance or third-party right whatsoever as of the date hereof and together with all rights attaching thereto at the Completion Date;

(ii)    Subject to the execution of this Agreement by Cantor GGAM, L.P. and Gaming Asset Management, LLC, the Vendor has power under its constitutional documents to enter into this Agreement, and this Agreement has been duly authorized and when duly executed shall constitute valid, legally binding and enforceable obligations of the Vendor, subject to bankruptcy, insolvency, fraudulent transfer, moratorium, reorganization and similar laws of general applicability relating to or affecting creditors' rights and to general equity principles;

(iii)    except for (i) the block sale approval from the PSE in relation to the crossing of the Placing Shares on the PSE and (ii) the notice of exemption under Philippine Securities and Exchange Commission Form 10-1 required to be filed in connection with the sale of the Placing Shares within the Philippines to qualified buyers and to no more than nineteen (19) persons who are not qualified buyers, all necessary consents and authorizations have been obtained to enable the Vendor to sell the Placing Shares;

(iv)    the Vendor's sale of the Placing Shares pursuant to this Agreement will not constitute insider trading by the Vendor under Section 27 of the Code;

(v)    neither the Vendor nor any person acting on its behalf or under its control has taken or shall take, directly or indirectly, any action designed or which was designed, or which constitutes or has constituted or might reasonably be or have been expected to cause or result in, stabilization or manipulation of the price of the Shares or other securities of the Company;

(vi)    the compliance by the Vendor with all of the provisions of this Agreement, as well as the consummation of the transactions herein contemplated, will not conflict with or result in a breach or violation of, or result in any third party consent being required under, any of the terms or provisions of any indenture, mortgage, deed of trust, loan agreement or other agreement or instrument to which the Vendor or by which the Vendor is a party or to which any of the property or assets of the Vendor is subject, or any statute or any rule or regulation or any order of any court or governmental agency or body having jurisdiction over the Vendor or the property or assets of the Vendor, except in each case as will not materially prejudice the success of the Placing;

SCH I-1

GGAM-SDNY-0463314