```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - - - - - -x
 3                                       :
     GLOBAL GAMING PHILIPPINES, LLC,     :
 4                                       :
              Plaintiff,                 :
 5                                       :
          v.                             : Case No.
 6                                       : 21 Cv. 2655
     ENRIQUE K. RAZON, JR.;              : (LGS)(SN)
 7   BLOOMBERRY RESORTS AND HOTELS INC.; :
     SURESTE PROPERTIES INC.;            :
 8                                       :
              Defendants.                :
 9                                       :
     - - - - - - - - - - - - - - - - - -x
10
              REMOTE VIDEOTAPED DEPOSITION OF
11                  BENNY TAN, VOLUME I
                      June 2, 2022
12
         REMOTE VIDEOTAPED DEPOSITION OF BENNY TAN,
13   produced as a witness at the instance of the
     Plaintiff, and duly sworn remotely, was taken in the
14   above-styled and numbered cause on June 2, 2022,
     from 8:58 a.m., (KST) to 3:18 p.m., (KST), remotely
15   before Dawn K. Larson, RDR, CRR, reported by machine
     shorthand, pursuant to the Federal Rules of Civil
16   Procedure and the provisions stated on the record.
```

Perry Decl. Ex. 68

---

compliance officer.

So in the context of being a corporate secretary, I have not been in a situation where my being corporate secretary in one of the companies where Mr. Razon has shareholdings or is a director or an officer of conflicts with another corporation that I am a corporate secretary of.

Q. I'm going to change the topic.

In 2011, you were involved in communicating with GAM regarding negotiation of a Management Services Agreement for BRHI and Sureste; correct?

A. 2011? Yes. As a lawyer, I rendered the service of part of the team which negotiated the terms of the Management Service Agreement with GGAM.

Q. And with whom did you communicate on GGAM's side?

A. I communicated with their lawyers. I cannot recall the name, but it should be in the email link.

Q. Did you communicate with anyone at Cantor Fitzgerald in 2011 regarding the negotiation of the MSA?

A. Cantor Fitzgerald, I challenged their participation in the negotiation because we are

---

dealing with GGAM, not with Cantor Fitzgerald, and they came back to explain that they were acting as service provider for GGAM.

Yeah, so some people in Cantor communicated with me; I communicated with them in their capacity as service provider for GGAM.

Q. Do you recall who at Cantor you spoke with, communicated with?

A. I cannot recall, but, again, it should be in the email links, trails.

Q. Did you have telephonic communications with anybody at GGAM in 2011?

A. That's possible, but I cannot recall any particular telephone communication with them.

Q. Did you meet in person with anyone at GGAM in 2011 before executing the MSA?

A. Yes. There were a couple of person-to-person meetings with GGAM.

Q. And where was that?

A. I think in some hotel function rooms, or some offices. I cannot recall the location.

Q. In which country?

A. Here in the Philippines.

Q. Did you come to the United States at all in connection with negotiating the MSA?

---

A. No, I did not.

Q. Did you come to the United States in 2011?

A. No, I did not.

Q. Did you have any telephonic communications with anyone at Cantor leading up to the execution of the MSA?

A. I don't recall any.

Q. Did you meet in person with anyone at Cantor leading up to the execution of the MSA?

A. If they were part of the GGAM delegation, that's a possibility, but I cannot recall.

Q. You were involved in negotiating the Equity Option Agreement; correct?

A. That's correct. I am one of the lawyers involved there.

Q. And you communicated with a Mr. Ben Kaplan at Cantor regarding the negotiation of that?

A. I cannot recall.

Q. Did you communicate with anyone at Cantor regarding negotiating the Equity Option Agreement?

A. I was negotiating with GGAM, so if Cantor was involved, it was in their capacity as service provider for GGAM.

Q. Did you communicate with anyone at Cantor in regarding the negotiating the Equity Option

1  A.  I am not aware that Prime received
2  compensation from BRC in connection with the -- its
3  transfer of shares to GGAM.
4  Q.  Do you know whether BRHI is subject to
5  personal jurisdiction anywhere in the United States?
6  A.  Do I know if BRHI is subject to
7  jurisdiction in the U.S.?
8  MR. PERRY: I'm going to object to -- hold
9  on, Benny.
10  I'm going to object to the question. And I
11  think, given that it's -- that it's a legal question,
12  I'm going to object. I'll allow the witness to answer
13  this question to the extent he knows, but we're not
14  going to have lawyer testimony on things like
15  jurisdiction and claims and the like.
16  I'll allow him to answer this, although I
17  don't know what the basis is for the answer, but we're
18  not going to go into extensive questioning that calls
19  for him to render legal opinions, Kevin.
20  A.  BRHI has no business in the United States,
21  so it is my opinion that U.S. courts do not have
22  jurisdiction over BRHI.
23  BY MR. AINSWORTH:
24  Q.  Is your answer the same with regard to
25  Sureste?

Deposition of Benny Tan V.1    Global Gaming Philippines, LLC v. Enrique K. Razon, Jr., et al

1  A.  The same thing: Sureste does not have
2  business in the U.S., so U.S. courts should have no
3  jurisdiction over Sureste.
4  Q.  Did you participate in any of the
5  roadshows regarding BRC's shares?
6  A.  I did not.
7  Q.  Do you know Mr. Hans Sicat?
8  A.  I have heard of him, but I do not know him
9  personally.
10  Q.  Have you ever met him?
11  A.  No, I have never met Hans Sicat.
12  Q.  Have you spoken with him?
13  A.  No, I have never spoken to him.
14  Q.  Did you have email correspondence with
15  him?
16  A.  I've seen emails where I am -- addressed
17  to me where his name appears. But at the moment
18  those emails were created, I was not conscious of
19  it. I was reviewing documents. I replied to emails
20  and saw -- I replied to emails sent to me, and it
21  happens that he is part of that email.
22  Q.  You're aware now that Mr. Sicat was the
23  President of the Philippine Stock Exchange in 2014;
24  correct?
25  A.  Yes, that is correct.

Deposition of Benny Tan V.1    Global Gaming Philippines, LLC v. Enrique K. Razon, Jr., et al

1
2  REPORTER'S CERTIFICATE
3  I, Dawn K. Larson, Registered Diplomate
4  Reporter, Certified Realtime Reporter, Certified
5  Realtime Captioner, and Notary Public, do hereby
6  certify that, previous to the commencement of the
7  examination, the deponent was remotely duly sworn by
8  me to testify to the truth.
9  I further certify this deposition was
10  taken remotely in shorthand by me and thereafter
11  reduced to typewritten form, that the foregoing
12  constitutes a true and correct transcript.
13  I further certify that I am not related
14  to, employed by, nor of counsel for any of the
15  parties or attorneys herein, nor otherwise
16  interested in the result of the within action.
17  In witness whereof, I have hereunto
18  affixed my hand and seal. My commission expires:
19  January 31, 2023.
20
21
22
23  Dawn K. Larson, MBA, RDR, CRR, CRC
      Notary Public
24
25