**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GLOBAL GAMING PHILIPPINES, LLC,

*Plaintiff,*

v.

ENRIQUE K. RAZON, JR., et al.,

*Defendants.*

No. 21 Cv. 2655 (LGS)(SN)

**DECLARATION OF**
**JUSTICE REYNATO S. PUNO**

I, Reynato S. Puno, hereby declare as follows:

1.     Plaintiff Global Gaming Philippines, LLC ("GGAM") has requested my opinions regarding the laws of the Republic of the Philippines on the topics discussed below. I am being compensated for my time at the rate of US$400 per hour.

2.     I served as Chief Justice of the Supreme Court of the Republic of the Philippines from December 2006 to May 2010, and as an Associate Justice of the Supreme Court from June 1993 until I became the Chief Justice. I am now retired from the Supreme Court. Most recently, in October 2022, I was appointed by the Supreme Court to head the ad hoc committee to draft the rules on the handling of terror cases in relation to the Anti-Terrorism Act of 2020.

## I.     PHILIPPINE LAWS CONCERNING PIERCING THE CORPORATE VEIL

3.     The principle of piercing the veil of corporate fiction is an equitable doctrine applied to determine established liability. *Heirs of Pajarillo v. Court of Appeals*, G.R. Nos. 155056-57, 19 October 2007. Since Philippine corporate laws were largely patterned after those in the United States, case decisions in the U.S. are highly instructive. *Total Office Products and Services (TOPROS), Inc. v. Chang, Jr.,* G.R. Nos. 200070-71, 7 Dec. 2021 (Concurring opinion of Justice Estela M. Perlas-Bernabe at 5).

4.     Philippine courts recognize an exception to the fiction of a separate corporate personality to achieve equity when the corporation has been used to defeat public convenience,

justify wrong, protect fraud or defend crime. Philippine jurisprudence has identified three applications of the principle of piercing the veil of corporate fiction, as follows:

> 1) defeat of public convenience, as when the corporate fiction is used as vehicle for the evasion of an existing obligation; 2) fraud cases or when the corporate entity is used to justify a wrong, protect fraud, or defend a crime; or 3) alter ego cases, where a corporation is merely a farce since it is a mere alter ego or business conduit of a person, or where the corporation is so organized and controlled and its affairs are so conducted as to make it merely an instrumentality, agency, conduit or adjunct of another corporation.

*General Credit Corp. v. Alsons Dev. and Inv. Corp.*, G.R. No. 154975, 29 Jan. 2007.

5.    There is no hard and fast rule on when corporate fiction may be disregarded; instead, each case must be evaluated according to its peculiar circumstances. *Guillermo v. Uson*, G.R. No. 198967, 7 Mar. 2016; *Concept Builders, Inc. v. National Lab. Rel. Comm'n,* G.R. No. 108734, 29 May 1996. Further, despite the courts' recognition of these three instances, the Supreme Court's decisions often apply overlapping legal principles, with some cases recognizing two or more of the above-mentioned instances.

### A.    Defeat Public Convenience

6.    The corporate veil will be pierced when the corporate fiction is being used to defeat public convenience, such as using corporate vehicle for the evasion of an existing obligation. Such piercing may be applied in cases where there is no fraud or alter ego circumstances to warrant piercing but there is a need to render justice or to brush aside merely technical defenses.

7.    Examples of cases piercing the veil under this approach include: *Philippine Veterans Inv. Dev. Corp. v. Court of Appeals*, G.R. No. 85266, 30 January 1990; *Enriquez Sec. Servs., Inc. v. Cabotaje*, G.R. No. 147993, 21 July 2006; *Genuino Agro-Indus. Dev. Corp. v. Romano*, G.R. No. 204782, 18 Sep. 2019; *R.F. Sugay & Co., Inc. v. Reyes*, G.R. No. L-20451, 28 Dec. 1964; *A.D. Santos v. Vasquez*, G.R. No. L-23586, 20 Mar. 1968; and *Esico v.*

*Alphaland Corp.,* G.R. No. 216716, 17 Nov. 2021. While some of those cases involve labor-related obligations, the principles regarding piercing of the corporate fiction for equity considerations are not limited to labor law. The Supreme Court consistently reviewed the totality of circumstances of each case and determined the existence of instances that warrant the application of the doctrine on the basis of the facts peculiar to the claim.

**B.      Fraud, or Use of Corporate Entity to Justify a Wrong, Protect Fraud, or Defend a Crime**

8.      Piercing the veil of corporate fiction is also proper in cases where the separate juridical personality of a corporation is used for fraudulent or wrongful ends. In the context of piercing the corporate veil, the "fraud" test includes not only commission of a fraud or a wrong but also the violation of a statutory or other positive legal duty, or a dishonest and an unjust act in contravention of plaintiff's legal right. Case discussing this basis for piercing the veil include: *Arco Pulp and Paper Co., Inc. v. Lim,* G.R. No. 206806, 25 June 2014; *Republic v. Mega Pac. eSolutions, Inc (MPEI),* G.R. No. 184666, 27 July 2016.

**C.      Alter Ego Piercing**

9.      The corporate veil may also be pierced if the corporation is so organized and controlled and its affairs are so conducted as to make it merely an instrumentality, agency, conduit, or adjunct of another person or corporation. The Supreme Court has held that the "corporate mask may be lifted and the corporate veil may be pierced when a corporation is just but the alter ego of a person or of another corporation." *International Acad. of Mgmt. and Econ. v. Litton and Co., Inc.,* G.R. No. 191525, 13 Dec. 2017. Additional cases are discussed below.

10.      In *Heirs of Tan Uy v. International Exch. Bank,* G.R. No. 166282, 13 Feb. 2013, for example, the Supreme Court affirmed a finding of an alter ego relationship, stating:

> Under a variation of the doctrine of piercing the veil of corporate fiction, **when two business enterprises are owned, conducted and controlled by the same parties, both law and equity will, when necessary to protect the rights of third parties,**

**disregard the legal fiction that two corporations are distinct entities and treat them as identical or one and the same.**

While the conditions for the disregard of the juridical entity may vary, **the following are some probative factors of identity that will justify the application of the doctrine of piercing the corporate veil, as laid down in Concept Builders, Inc. v. NLRC:**

(1) Stock ownership by one or common ownership of both

Corporations;

(2) Identity of directors and officers;

(3) The manner of keeping of books and records; and

(4) Methods of conducting business. (Emphasis added.)

11.     The Supreme Court also affirmed a finding of alter ego liability in *General Credit Corp.*, G.R. No. 154975. The factors favoring piercing the corporate veil in that case included: common directors and/or officers as well as stockholders; the subsidiary EQUITY was wholly owned by General Credit Corporation ("GCC");  "the funds invested by EQUITY in the CCC franchise companies actually came from CCC Phils. or GCC"; GCC caused the incorporation of EQUITY, which had "grossly inadequate capital for the pursuit of its line of business to the extent that its business affairs were considered as GCC's own business endeavors"; "the bonuses of the officers and directors of …. EQUITY was based on its total financial performance together with all its affiliates"; both firms shared the same office when operational; "the directors and executives of . . . EQUITY never acted independently . . . but took their orders from . . . GCC"; "EQUITY was organized by . . . GCC for the purpose of circumventing [CB] rules and regulations and the Anti-Usury Law"; and EQUITY was "incorporated to serve, as it did serve, as an instrumentality or adjunct of GCC."

12.     In 2020, in an *en banc* decision of the Supreme Court in *Torreta v. Commission on Audit*, G.R. No. 242925, 10 Nov. 2020, the Court affirmed the piercing of the corporate fiction done by the Commission on Audit ("COA"), stating:

Piercing the corporate veil is warranted when "[the separate personality of a corporation] is used as a means to perpetrate fraud or an illegal act, or as a vehicle for the evasion of an existing obligation, the circumvention of statutes, or to confuse legitimate issues." *It is also warranted in alter ego cases "where a corporation is merely a farce since it is a mere alter ego or business conduit of a person, or where the corporation is so organized and controlled and its affairs are so conducted as to make it merely an instrumentality, agency, conduit or adjunct of another corporation."* Based on the factual findings of respondent COA, *Hapicows is a mere alter ego* of Molina. As such, all liabilities being imputed to Hapicows is in fact attributed to Molina as they are considered one and the same. (Emphasis added.)

13.     In a 2021 decision in *Roquel v. Philippine National Bank*, G.R. No. 246270, 30 June 2021, the Supreme Court reversed a decision of the Court of Appeals and reinstated a decision piercing a corporate veil based on the alter ego relationship. The Supreme Court expressly stated that, when piercing the veil of an alter ego, the "existence or non-existence of fraud is immaterial":

> Following the nomenclature of the alter ego theory, a corporation's separate juridical personality is selectively disregarded because the "corporation is merely a farce since it is a mere alter ego or business conduit of a person, or where the corporation is so organized and controlled and its affairs are so conducted as to make it merely an instrumentality, agency, conduit or adjunct of another corporation." **The existence or non-existence of fraud is immaterial under this theory because "the doctrine of alter ego is based upon the misuse of a corporation by an individual [or another corporation] for wrongful or inequitable purposes." Unlike in cases of fraud, there is no need to determine whether the defendants intended to deceive the plaintiff**. What is analyzed is "how the corporation operated and the individual defendant's relationship to that operation" that **led to injustice or resulted in the disregard of a third party's (i.e., plaintiff's) rights**. Rather than focusing on the intent of the defendants, it is the result of their actions that is subject to careful scrutiny.

14.     I have reviewed two reports of Teresita J. Herbosa," dated 16 Sep. 2022, and 4 Nov. 2022, in which she discusses the veil piercing law in the Philippines. Ms. Herbosa's Reports do not mention the Supreme Court's *en banc* decision in *Torreta* or its decision in

*Roquel.* Instead, she cites and relies on an earlier (2018) decision in *Maricalum Mining Corp. v. Florentino.* G.R. No. 221813, 23 July 2018. It is improper to urge reliance on the narrow test applied in *Maricalum Mining* after the Supreme Court decided *Torreta* and *Roquel.* (Although the dissent in *Roquel* cited the *Maricalum Mining* decision, the majority's decision in *Roquel* applied a less strict test, as described in the paragraphs above.) It is my opinion that a Philippine Court would rely on the alter ego test as stated in *Torreta* and *Roquel.*

15.     The question of whether to disregard a corporation's separate juridical personality is answered based on an assessment of the facts of each case. Courts do not apply a hard and fast rule. Instead, each case is evaluated according to its peculiar circumstances. *Guillermo v. Uson*, G.R. No. 198967, 7 Mar. 2016.

## II.     THE RTC'S WRITS ARE VACATED AND HAVE NO LEGAL EFFECT

16.     I understand that Defendant Enrique K. Razon, Jr. ("Razon") argues that the RTC's Writs remain in full force and effect. I disagree because (a) as held by the Court of Appeals in its Resolution of 29 May 2015 ("Resolution") "the Arbitral Tribunal's Order dated December 9, 2014 not only superseded the assailed February 25, 2014 Order but also vacated and lifted the Writs of Attachment and Preliminary Injunction" leaving nothing for the Court to annul or act upon; and (b) even if the Writs had not been vacated and lifted by the arbitral Tribunal's IM Order, they were rendered *functus officio* by the termination of the arbitration.

### A.     The Tribunal's IM Order, By Operation of Law, Vacated the Writs

17.     The Order granting the RTC's Writs expressly provides that they were issued pursuant to the Special Rules of Court on Alternative Dispute Resolution ("Special ADR Rules").[1] The Supreme Court approved those rules in 2009 under my leadership as the Chief Justice.

---

[1] The Special ADR Rules are available online at https://lawphil.net/courts/supreme/am/am_07-11-08-sc_2009.html.

18.     The Special ADR Rules allow a court to issue an interim measure of protection in aid of an arbitration when the arbitral tribunal has not yet been constituted. The RTC's Writs were issued before the arbitral Tribunal had been constituted and, by their express terms, the Writs were intended to preserve the *status quo* "during the pendency of the arbitration proceedings in Singapore." By the terms of the RTC's Preliminary Injunction Order (and as required by Special ADR Rules 5.9 and 5.13) the Writs stated: "These interim measures of protection are issued without prejudice to subsequent grant, modification, amendment, revision or **revocation by the arbitral tribunal in Singapore**, once the same is duly constituted . . . ." (Emphasis added.)

19.     Rules 5.13 of the Special ADR Rules provides that an interim measure of protection issued by a court is subject to revocation, amendment, or modification—*ipso jure*—by an interim measure of protection issued by a subsequently constituted arbitral tribunal:

> **Rule 5.13.** . . . An interim measure of protection issued by the arbitral tribunal shall, upon its issuance be deemed to have ipso jure modified, amended, revised or revoked an interim measure of protection previously issued by the court to the extent that it is inconsistent with the subsequent interim measure of protection issued by the arbitral tribunal.

20.     After the Tribunal was constituted, it issued an Interim Measures Order on or about 9 December 2014 ("IM Order"), in which the Tribunal confirmed GGAM's right to sell the Shares, superseded the RTC's order of February 25, 2014, and expressly vacated and lifted the Writs. As provided by Special ADR Rule 5.13, the Tribunal's IM Order took effect by operation of law when it was issued, and it vacated and lifted the Writs.

21.     This outcome was acknowledged by the Court of Appeals, which stated in its Resolution that the Tribunal's IM Order "not only superseded the assailed February 25, 2014 [RTC] Order but also vacated and lifted the Writs of Attachment and Preliminary Injunction, then nothing is left for this Court to annul or act upon." That Resolution is final and binding.

**B. The Writs, Even If Not Vacated by the IM Order, Are *Functus Officio***

22.     Even if the IM Order had not been issued, the Writs would have become *functus officio* when (a) the Tribunal issued its Partial Award on Liability dismissing the counterclaim of Bloomberry Resorts & Hotel, Inc. ("BRHI") and Surreste Properties Inc. ("SPI", and together the "Debtor Defendants"), or (b) at the latest when the Tribunal issued the Final Award.

23.     *Functus officio* is the Latin phrase for "having fulfilled the function, discharged the office, or accomplished the purpose, and therefore of no further force or authority." It applies to "an instrument, power, agency, etc. which has fulfilled the purpose of its creation, and is therefore of no further virtue or effect."[2] The Supreme Court, in *Felicitacion B. Borbajo v. Hidden View Homeowners, Inc.,* G.R. No. 152440, 6 Dec. 2006, applied the concept of *functus officio* to hold that a previously issued a writ of injunction "subject to the final outcome of Civil Case No. 21239 pending before the Regional Trial Court of Cebu City" "had since become *functus officio,* the legal basis thereof having been expired by reason of the 2003 RTC Cebu City Decision".

24.     In *Philippine Charity Sweepstakes Off. v. DFNN, Inc.*, G.R. No. 206611, 20 Feb. 2017, the Supreme Court ruled that interim measures merely serve to protect the *status quo* during the pendency an arbitration. In *Federal Express Corp. v. Airfreight 2100, Inc.,* G.R. No. 225050, 14 Sep. 2021, the Supreme Court held that the rendition of a final award by the arbitral tribunal marks the termination of the arbitration.

25.     The RTC's Order granting the Writs against GGAM provided that they were an "interim measure of protection" and stated that "[t]he objective of a writ of preliminary injunction is to preserve the status quo until the merits of the case can be fully heard …" The Writs issued were ancillary to the arbitration proceeding with Debtor Defendants and, more

---

[2] https://thelawdictionary.org/functus-officio/ (last accessed February 9, 2023) cited in Dissenting Opinion of Justice Caguioa in *Lagman v. Medialdea,* G.R. Nos. 243522, 243677, 243745 & 243797, February 19, 2019.

specifically, to their counterclaim in arbitration for rescission of the Equity Option Agreement. Thus, the Writs were rendered *functus officio* upon the issuance of the Partial Award on Liability, which disposed of the Debtor Defendants' counterclaim, or at the latest, upon issuance of the Final Award and the termination of the arbitration proceedings. The RTC's interim measures, namely the Writs, have been rendered moot and academic by the foregoing supervening events.

## III.   RESPONSE TO DECLARATIONS OF MARJORIE UYENGCO-NOLASCO

26.   I have reviewed Declarations of Marjorie Uyengco-Nolasco dated 18 Apr. 2022 (ECF No. 233), and 28 July 2022 (ECF No. 278), which Razon cites to support his argument that "No Philippine court would award tort damages for wrongful attachment based on Writs that have been repeatedly sustained by its own judicial system." (ECF No. 346 at 20 n.11.)

27.   I previously submitted a Declaration dated 17 June 2022, in response to the first declaration of Ms. Nolasco. (ECF No. 270.) I submit this declaration to respond to the language quoted in the preceding paragraph.

28.   As I explained above, it is incorrect to say that the Writs have been repeatedly sustained by Philippine Courts. To the contrary, the writs were vacated, by operation of law, when the Tribunal issued its IM Order. This was stated by the Court of Appeals in its Resolution, which held: "the Arbitral Tribunal's Order dated December 9, 2014 not only superseded the assailed February 25, 2014 Order **but also vacated and lifted the Writs of Attachment and Preliminary Injunction, then nothing is left for this Court to annul or act upon**." (Emphasis added.)

29.   Following the Arbitral Tribunal's issuance of the IM Order, Debtor Defendants could have assured the implementation of the IM Order by moving to withdraw their petition for the Writs in the RTC. Given the IM Order as well as Special ADR Rules 5.9, 5.11, 5.13, and 5.16, and the Order granting the Writs, the RTC would have had no basis to deny a motion

to withdraw the Petition. It is the absolute right of a party which commences an action in the Philippine courts to seek to withdraw that action.

30.     Debtor Defendants have no basis under Philippine law to refuse to abide by the IM Order and assure its implementation. I understand that Razon has argued that the IM Order has no effect until it has been recognized and enforced by the RTC. This position is incorrect both as a matter of Philippine law and the parties' arbitration agreement. Under the Special ADR Rules, the RTC only had interim subject matter jurisdiction when it issued the Philippine Preliminary Injunction Order, and the Order granting the Writs acknowledged the RTC's limited jurisdiction.

**I declare, under penalty of perjury of the laws of the United States of America, that the foregoing is true and correct.**

Executed on  21  February 2023

**REYNATO S. PUNO**
Chief Justice (Ret.)