*Execution Copy*

Dated January 15, 2014

# GLOBAL GAMING PHILIPPINES LLC

and

# CREDIT SUISSE (SINGAPORE) LIMITED

and

# DEUTSCHE BANK AG, HONG KONG BRANCH

and

# CANTOR FITZGERALD & CO.

---

## PLACING AGREEMENT
relating to the placing of common shares of
## BLOOMBERRY RESORTS CORPORATION

---

5.  **PAYMENT OF FEES, COMMISSIONS AND EXPENSES**

(A) In consideration of the services of Credit Suisse, Deutsche Bank and Cantor in relation to the Placing, the Vendor shall pay to each of Credit Suisse, Deutsche Bank and Cantor a placing fee of $800,000, $800,000 and $600,000, respectively, less any other fees and commissions that may be payable to Credit Suisse, Deutsche Bank or Cantor, as applicable, in connection with the Placing, including any broker's commission and related Value Added Tax ("**VAT**"), in each case payable by the Vendor (each a "**Placing Fee**" and collectively the "**Placing Fees**"). The Placing Agents are hereby authorized to deduct the Placing Fees from the payment to be made by it to the Vendor pursuant to Clause 3.

(B) The Vendor shall be liable for the costs and expenses of its own legal and other professional advisers and out-of-pocket expenses incurred in connection with the Placing.

(C) The Vendor hereby acknowledges that, in addition to the fees referred to in Clause 5(A)(i), the Placing Agents shall be entitled to keep for their own account any brokerage that it may receive from the Placees.

(D) The Vendor shall be liable for any stock transaction tax, the Vendor's broker's commission, VAT levied on the Vendor's broker's commission, applicable seller's Philippine Securities Exchange Commission fees levied on the Vendor, applicable seller's fees levied on the Vendor by the Securities Clearing Corporation of the Philippines, applicable seller's Philippine Special Investors Protection Fund fees levied on the Vendor and the seller's special block sale fee levied on the Vendor, all of which the Vendor shall settle directly with the crossing broker upon presentation of invoice.

6.  **TERMINATION**

(A) Notwithstanding anything contained in this Agreement to the contrary, the Placing Agents shall be entitled by notice to the Vendor given prior to the Completion to terminate this Agreement if:

   (i) there develops, occurs or comes into effect:

   (a) any suspension or limitation of trading (a) in the Shares by the PSE, or (b) generally on the PSE, the New York Stock Exchange, the NASDAQ Stock Market or The Stock Exchange of Hong Kong Limited;

   (b) any outbreak or escalation of hostilities, act of terrorism, the declaration by the Philippines, the United States or Hong Kong of a national emergency or war or other calamity or crisis;

   (c) any material disruption in commercial banking or securities settlement or clearance services in the Philippines, the United States or Hong Kong and/or a general moratorium on commercial banking activities having been declared by the relevant authorities in the Philippines, the United States or Hong Kong;

GGAM-SDNY-0463304

(d) any material adverse change or development involving a prospective material adverse change in or affecting the financial markets in the Philippines, the United States or Hong Kong or in international financial, political or economic conditions, currency exchange rates, exchange controls or taxation;

and which, in the sole opinion of the Placing Agents, would materially prejudice the success of the Placing; or

(ii) there is a material breach of any of the representations, warranties and undertakings by the Vendor as set forth in this Agreement which has come to the attention of the Placing Agents.

(B) In the event that the Placing Agents terminate this Agreement pursuant to Clause 6(A), all obligations of each of the Parties under this Agreement, except for Clauses 4(E), 8, 10, 12, 13 and 14, shall cease and terminate, and no Party shall have any claim against any other Party in respect of any matter arising out of or in connection with this Agreement except for any antecedent breach.

(C) Notwithstanding anything contained in this Agreement to the contrary, the Vendor shall be entitled to terminate this Agreement if the Completion does not occur on or prior to the Completion Date.

7. **TIME OF THE ESSENCE**

Any time, date or period mentioned in this Agreement may be extended by mutual agreement in writing between the Vendor and the Placing Agents but, as regards any time, date or period originally fixed or any date or period so extended as aforesaid, time shall be of the essence.

8. **NOTICES**

(A) All notices delivered hereunder shall be in writing in the English language and shall be communicated to the following addresses:

**If to the Vendor to**:
Address : c/o Global Gaming Asset Management, L.P.
3575 West Post Road
Las Vegas, Nevada
United States of America
Facsimile : +1 702-635-0202
Email : weidnerb@ggamllc.com
Attention : William Weidner

with a copy to:

Address : c/o Global Gaming Asset Management, L.P.
499 Park Avenue
New York, NY 10022
United States of America
Facsimile : +1 212-829-4708

GGAM-SDNY-0463305