| From: | eoccena@ictsi.com [eoccena@ictsi.com] | Perry Decl. |
|---|---|---|
| Sent: | Friday, June 10, 2011 2:56:10 AM | Ex. 14 |
| To: | Garry W. Saunders; Chito Alarilla; dalmehda@aol.com | |
| CC: | Brad Stone; Jon Rein; weidnerb@gmail.com; Benny Tan | |
| Subject: | Re: MSA Draft | |

Garry,

As per the email of our Atty. Tan, we think there is no point in renegotiating the MSA all over again with you. The MSA draft we currently have is a product of compromise and about 3 months of negotiations. This is the instruction from our Principal.

I have known you, Brad and Jon the past few months and felt that we have a good working rapport. I really looked forward to working with all of you.

I was shocked when I saw your draft because I relied on your assurances that you will just tweak certain provisions for sake of clarity. Instead, we saw a new draft as if our negotiations and face-to-face meetings in Manila never took place. It is very sad and disappointing.

Regards,
Estela

"Sent via BlackBerry from Smart"

---

**From:** "Garry W. Saunders" <gwsvegas@cox.net>
**Date:** Thu, 9 Jun 2011 17:34:41 -0700
**To:** <eoccena@ictsi.com>; <jejalarilla@hotmail.com>; <dalmehda@aol.com>
**Cc:** Brad Stone<brad.h.stone@gmail.com>; Jon Rein<JRein@cantor.com>; <weidnerb@gmail.com>; <sjtan@picazolaw.com>
**Subject:** MSA Draft

Estela, Don and Chito,

We received Benny's email, and thank you for the detailed response. We can appreciate the sensitivity that you have to the revised MSA. We agree that there have been many changes within the document that was sent yesterday. Most of these have been driven by our consideration of the usual and customary provisions of Management Agreements that are part of established practice for such agreements within the gaming industry, as well as unique issues created by our contemplated equity investment. A number of changes, explanations, elaborations and definitions were necessary, from our point of view, to conform the document to the gaming industry standards of an MSA. It is in our mutual best interests to thoroughly work through these items since this is an important agreement between the two parties with significant responsibilities and financial consequences.

We agree that there is language modification that is not completely consistent with the previous discussions, such as on owner's control, reciprocal rights, etc., which can be addressed and resolved. It was not our intent to change the fundamental business deal from our prior discussions (although we acknowledge that as the document has matured, there are some new points neither side previously contemplated). We will work together to ensure the MSA conforms to our previous understanding of major business terms. Overall, as significant as the language changes appear, there are discussion points and issues within each area that we need to cover with you to finalize language to our mutual satisfaction. A "business discussion" between us on the various clauses should substantially resolve our differences. As always, it is difficult to convey the thoughts and purpose via exchanging mark-ups, and our direct discussions should get us through the completion of a final document.

GGAM-SDNY-0096130