Perry Decl. Ex. 34

1

IN THE MATTER OF AN ARBITRATION UNDER THE ARBITRATION
RULES OF THE UNITED NATIONS COMMISSION ON
INTERNATIONAL TRADE LAW (2010)

- - - - - - - - - - - - - - - - - - - - - - - x
                                              :
In the Matter of an Arbitration        :
Between:                                       :

GLOBAL GAMING PHILIPPINES LLC and     :
GGAM NETHERLANDS B.V.,                 :

      Claimants,                         :

v.                                             :

BLOOMBERRY RESORTS AND HOTELS INC. and  :
SURESTE PROPERTIES INC.,               :

      Respondents.                      :
- - - - - - - - - - - - - - - - - - - - - - - x  Volume 1

HEARING ON INTERIM MEASURES

                Monday, October 20, 2014
                1850 K Street N.W.
                Suite 1100
                Washington, D.C.

    The hearing in the above-entitled matter came on, pursuant to notice, at 9:30 a.m. before:

        DR. ANDRÉS RIGO SUREDA, President

        MR. R. DOAK BISHOP, Co-Arbitrator

        MR. MICHAEL HWANG, Co-Arbitrator

## Page 22

09:51:20
1  there, and he now wishes to recapture ground that he
2  did not obtain in the original order. And that simply
3  is not appropriate to ask this Panel to proceed. We
4  relied on the text. The text is quite plain, and he
5  should not be excluded.
6       ARBITRATOR BISHOP: Just one other question.
7  How is it that Cantor Fitzgerald is a competitor of
8  the Respondent in this case? Is there some specific
9  competition between them, or is it just generic?
10      MR. NOLAN: Well, I can say that there is a
11 noncompete provision in one of the applicable
12 agreements, and it was the request of our side that
13 Cantor Fitzgerald be subject to that noncompete
14 provision, as GGAM was. That was a subject of
15 negotiation. That was rejected. Ultimately, Cantor
16 Fitzgerald was not subject to that noncompete
17 provision, so they did not choose to disable
18 themselves with respect to that noncompete provision.
19      Cantor Fitzgerald has substantial gaming
20 operations. We're not in a position to know
21 everything that Cantor Fitzgerald is doing or is
22 contemplating doing in the Philippines, which is a
23 very hotly developing gaming market. We also don't
24 know what Cantor Fitzgerald is doing elsewhere.
25 Bloomberry is developing--in the process of developing

## Page 23

09:52:56
1  potential gaming properties elsewhere outside the
2  Philippines, so the competition is not restricted to
3  the Philippines by any means.
4       So the best answer I can give you is we don't
5  know everything that Cantor Fitzgerald is doing or
6  contemplating doing. We do know that they were not
7  willing to be subject to that noncompete clause, and
8  we do know that they are active in gaming in general.
9  And I would have to take some help from my colleagues
10 to remember specifically what we think about the
11 Philippine marketplace with respect to Cantor
12 Fitzgerald.
13      PRESIDENT RIGO: Okay. The Tribunal will
14 adjourn briefly and come back to you with a decision
15 on that.
16      (Tribunal conferring outside the room.)
17      PRESIDENT RIGO: The decision of the Tribunal
18 is that Mr. Lampert should not attend the proceedings.
19 We feel that the proviso in Clause 6 is very clear,
20 that he is not one of the named persons in that
21 proviso, and in terms of this period of what was
22 discussed in this Procedural Order, we feel that this
23 is overriding any other consideration of the Order.
24      So Mr. Lampert should leave the room before
25 we go ahead with the proceedings.

## Page 24

10:01:58
1       MR. PATRIZIA: I understand the Panel's
2  order. Obviously, I disagree, but I understand the
3  Tribunal's Order.
4       (Pause.)
5       MR. PROFAIZER: By my count, we have four
6  other logistical issues. I leave it to the discretion
7  of the Tribunal. The first was--let me outline them.
8  Just two are for substance, if you will--three of them
9  are substance, and one is a process issue, if you
10 will.
11      The first is, as we indicated to opposing
12 counsel on Thursday after we received their additional
13 documents, one of their additional documents, which is
14 RA-54, RA-54 is an--we don't know how opposing counsel
15 intends to use this document, but it's an expressly
16 marked "draft, confidential, without prejudice"
17 communication between counsel. As it's expressly
18 marked "draft, confidential, and without prejudice,"
19 albeit 54, with the cover e-mail, the underlying
20 contents of which are without prejudice, draft, and
21 confidential, and frankly only part--a small part of
22 the Parties' entire negotiations, we would move for
23 its exclusion.
24      ARBITRATOR BISHOP: Is the point that--is the
25 point that this is a privileged document that you're

## Page 25

10:03:39
1  seeking to get back?
2       MR. PROFAIZER: No. It's simply a
3  communication between Mr. Nolan and myself and
4  Ms. Culbertson regarding the negotiations as to the
5  Tribunal's forthcoming Procedural Order. But it's
6  marked "draft" and "without prejudice."
7       I have no idea why Mr. Nolan intends to offer
8  it, but I would note that it's inappropriate to be
9  submitting to the Tribunal "without prejudice"
10 documents that were solely offered for purposes of
11 negotiations between the Parties and expressly
12 anticipated as such.
13      MR. NOLAN: May I just ask, are we just
14 tallying the issues now, or are we going to have
15 substantive exchange? Because Mr. Profaizer mentioned
16 that there were four issues. I thought that we were
17 just going to list the issues and then have
18 discussion, but this seems to be submission or
19 argument. I don't know if it would be useful for me
20 to respond, or if we just want to make a list--
21      PRESIDENT RIGO: Yeah. Why don't you list
22 them first.
23      MR. PROFAIZER: Sure.
24      So the first is 54. The second is
25 reservation of other objections with respect to the