Perry Decl.
Ex. 51

UNITED STATES OF AMERICA
Before the
SECURITIES AND EXCHANGE COMMISSION

SECURITIES EXCHANGE ACT OF 1934
Release No. 77555 / April 7, 2016

ADMINISTRATIVE PROCEEDING
File No. 3-17204

| | |
|---|---|
| In the Matter of<br><br>LAS VEGAS SANDS CORP.,<br><br>Respondent. | ORDER INSTITUTING CEASE-AND-DESIST PROCEEDINGS PURSUANT TO SECTION 21C OF THE SECURITIES EXCHANGE ACT OF 1934, MAKING FINDINGS, AND IMPOSING A CEASE-AND-DESIST ORDER |

**I.**

The Securities and Exchange Commission ("Commission") deems it appropriate that cease-and-desist proceedings be, and hereby are, instituted pursuant to Section 21C of the Securities Exchange Act of 1934 ("Exchange Act"), against Las Vegas Sands Corp. ("LVSC," "the company," or "Respondent").

**II.**

In anticipation of the institution of these proceedings, Respondent has submitted an Offer of Settlement (the "Offer") which the Commission has determined to accept. Solely for the purpose of these proceedings and any other proceedings brought by or on behalf of the Commission, or to which the Commission is a party, and without admitting or denying the findings herein, except as to the Commission's jurisdiction over it and the subject matter of these proceedings, which are admitted, Respondent consents to the entry of this Order Instituting Cease-and-Desist Proceedings Pursuant to Section 21C of the Securities Exchange Act of 1934, Making Findings, and Imposing a Cease-and-Desist Order ("Order"), as set forth below.

**III.**

On the basis of this Order and Respondent's Offer, the Commission finds that:

## Respondent

1. **Las Vegas Sands Corp.**, based in Las Vegas, Nevada, was incorporated as a Nevada corporation in August 2004. LVSC owns and operates integrated resorts and casinos in Asia and the United States through a network of subsidiaries. The company's common stock is registered under Section 12(g) of the Exchange Act, and it is traded on the New York Stock Exchange (the "NYSE") under the symbol "LVS."

## OTHER RELEVANT ENTITIES

2. Sands China Ltd. ("SCL") is an LVSC subsidiary that was incorporated in the Cayman Islands in July 2009. Since November 2009, shares of SCL have been traded on the Hong Kong Stock Exchange (Stock Code: 1928). LVSC owns 70.1% of the shares.

3. Venetian Macao Ltd. (VML) is an SCL subsidiary through which SCL operates in Macao. Prior to the incorporation of SCL, VML was a wholly-owned subsidiary of LVSC.

4. Venetian (Zhuhai Hengqin) Hotel Co. Ltd. ("VHQ"), is an LVSC subsidiary that is a wholly foreign-owned entity ("WFOE") established under Chinese law in February 2007. The business scope of VHQ was the construction and development of hotel and ancillary facilities, hotel management, and related consulting services.

5. Venetian (Zhuhai) Hotel Marketing Co. Ltd. ("VHM"), is an LVSC subsidiary that is a WFOE established under Chinese law in October 2007. When formed, the business scope of VHM was hotel management, marketing, and consulting services for convention and exhibition. In March 2008, among other services, ferry services were added to the business scope of VHM.

6. Beijing Asia Travel Alliance Business Consulting Co., Ltd. ("BATA"), is an LVSC subsidiary that is a WFOE established under Chinese law in July 2008. When formed, the business scope of BATA was hotel management, corporate image planning, and information consulting. In November 2008, its business scope was expanded to include advertising, sports agency business, investment management and consulting, financial planning, and property management.

## Summary

7. This matter concerns the failure of LVSC to devise and maintain a reasonable system of internal accounting controls over its operations in the People's Republic of China ("PRC" or "China") and the Macao Special Administrative Region of the People's Republic of China ("Macao") from 2006 through at least 2011. As a result, funds totaling more than $62 million were transferred to a consultant[1] in China over a series of transactions under

---

[1] The Consultant, LVSC President and Chief Operating Officer, LVSC President of Asian Development (formerly Vice-President of Asian Development), LVSC Senior Director of Finance, LVSC CFO, and members of the SCL Audit Services Group referred to herein are no longer employed or engaged by the company.

2

GGAM-SDNY-0122377

circumstances that frequently lacked supporting documentation or appropriate authorization. Moreover, most of the transfers occurred despite knowledge by senior LVSC management that they could not account for significant funds previously transferred to the consultant in an environment where significant bribery risks were present. This lack of controls impacted other transactions, such as gifts and entertainment for foreign officials, employee and vendor expense reimbursements, and customer comps. The company also kept inaccurate books and records.

8. As a result of this conduct, LVSC violated the internal controls and books and records provisions of the Foreign Corrupt Practices Act ("FCPA").

## Background

9. Macao was a Portuguese colony until December 20, 1999, when Portugal transferred control of Macao to China. While casino gambling is not legal in China, it is legal in Macao. In 2002, the Macao government granted gaming concessions to casino and hotel developers.

10. LVSC conducted business in Macao through VML until November 2009, when it issued an initial public offering ("IPO") for SCL, a public company that is listed on the Hong Kong Stock Exchange. Through SCL, LVSC owns and operates casinos, hotels, convention facilities, retail space, and a 15,000-seat sports arena in Macao. Until March of 2009, LVSC's operations in Macao and China were overseen by its President and Chief Operating Officer ("President"), who worked in close concert with LVSC's President of Asian Development.

## LVSC's China Operations

11. In addition to operating in Macao, LVSC also sought to establish operations in China. Certain LVSC executives, including its President, were particularly interested in development opportunities on Hengqin Island, which is part of Zhuhai in southern China and close to Macao.

12. To facilitate business development activities in China, LVSC established VHQ, VHM and BATA. As WFOEs, these entities are permitted to conduct only business in China that fell within their prescribed business scope. LVSC used intercompany transfers to fund the WFOE operations but failed to implement a system of internal financial controls over their operations.

13. While the WFOEs were governed according to general articles of association as required by Chinese law, the articles of association do not specify accounting policies and procedures and none were adopted by the WFOEs when established. In the absence of their own policies and procedures, accounting staff at the WFOEs inconsistently applied certain of VML's accounting policies with regard to their operations.

14. As a gaming company, LVSC was subject to significant restrictions on its ability to advertise its casinos or to own assets in China.

15. In 2006, the LVSC President of Asian Development (who was then Vice-President of Asian Development) identified a Chinese consultant ("Consultant") to assist the company with

3

its activities in China. The Consultant claimed to be a former Chinese government official and touted his political connections with Chinese government officials as his principle qualification to provide assistance to LVSC. With the approval of the LVSC President, the Consultant was hired to liaise with governmental bodies, provide advice and assistance with approval processes and to serve as an intermediary or "beard" to obscure LVSC's role in certain transactions.

16. The Consultant established numerous business entities in China, which he frequently used interchangeably for his interactions with LVSC. In 2007, after the Consultant had been engaged and several payments had been made to him, the company conducted due diligence on him and three of his business entities. The company did not, however, conduct due diligence on at least seven other businesses associated with the Consultant and to which LVSC transferred funds.

### A. The Basketball Team

17. In early 2007, the LVSC President sought to purchase a professional basketball team in China, with the purported purpose being to improve LVSC's image in China and to bring customers to the casinos because the team could play in the Venetian Macao's sports arena. The team would wear jerseys with an image of a gold lion, which was the symbol of the Venetian Macao Casino. As the team could not put the name of a gaming company on the jerseys, the team was named "Wei Li Xin," which translates to "good fortune" and sounds like "Venetian" when pronounced in Chinese. No research or marketing analysis was ever done in connection with the basketball team.

18. The Chinese Basketball Association ("CBA"), which falls under the PRC State General Administration of Sports (which in turn is organized directly under the State Council of the PRC), would not permit a gaming company to own a league team, and thus neither LVSC nor its relevant subsidiaries could purchase a team. Instead, the Consultant was used as a "beard" to buy the team, and the company entered into what was ostensibly a sponsorship agreement for the team.

19. The Consultant established an entity called Shenzhen Wei Li Xin to purchase and own the team. In March 2007, an LVSC subsidiary entered into a promissory note agreement with a separate entity associated with the Consultant. Subsequently, approximately $6,072,400 was transferred from the VHQ WFOE to Shenzhen Wei Li Xin, though neither entity was a party to the promissory note agreement.

20. In September 2007, an LVSC Senior Director of Finance (who also served as a VML Director of Finance) raised concerns about the basketball transaction to the CFO of LVSC. Of particular concern was the repeated transfer of funds to the Consultant without any supporting documentation for the team's need for or use of the funds. The LVSC Senior Director of Finance had also learned from a former employee of the Consultant that the Consultant had used LVSC funds to make a payment to a senior CBA official in connection with the Wei Li Xin team.

21. While the CFO instructed the Senior Director of Finance to conduct financial due diligence on the team, including a review of the team's books and its players' contracts, the

4

GGAM-SDNY-0122379

Consultant would not permit an on-site review. Instead, the Consultant had another of his employees pretend that he worked for the team and present a handwritten list of the team's expenses, which the LVSC Senior Director of Finance found to be facially unreliable. Within months, the President of LVSC arranged to have the LVSC Senior Director of Finance placed on administrative leave and eventually terminated. Meanwhile, the LVSC President approved the ongoing payments to the Consultant, which were made through the VHQ and VHM WFOEs.

22. Referencing his concerns about the fact that the promissory agreement was with an entity that was different than the entity that received LVSC funds, the inability of LVSC to track the funds that it had transferred to the Consultant, and the lack of recourse should the Consultant fail to purchase the team, the CFO wrote in October 2007, "My . . . concern is how to deal with this from a Sarbanes-Oxley perspective. The manner in which this has transpired is not indicative of a sound control environment. This will be exacerbated by any write-off we would have to take as that will call into question our ability to safeguard assets."

23. Due to lack of accountability of funds provided to the Consultant, in late 2007 the company engaged an international accounting firm ("the firm") to review the basketball transaction. When the firm was instructed to cease its investigation in February 2008, it had already identified over $700,000 in unaccounted for funds that had been transferred to the Consultant. Nonetheless, more than $5 million in additional payments were subsequently made to the Consultant ostensibly in connection with the basketball team.

24. Within this lax control environment, payments to the Consultant were also falsely recorded in the company's books and records. For example, in September 2008, approximately $1.5 million was transferred to one of the Consultant's entities upon the request of an employee who initially stated that the payment was for "bank charges and loan." The employee subsequently said that the Consultant was actually using the funds to set up a network of state-owned enterprise ("SOE") travel agencies that would promote the Venetian Macao. No invoice or supporting documentation was received in connection with this payment, and it was booked as a consultancy fee.

25. In total, between March 2007 and January 2009, pursuant to a series of sponsorship and advertising contracts, approximately $14.8 million was paid to the Consultant in connection with the basketball team. Over one-third of these funds were paid after the firm had identified significant unaccounted for funds, and approximately $6.9 million was transferred without appropriate authorization or supporting documentation.

B.  **The Adelson Center**

26. Beginning in 2006, the LVSC President looked to develop a non-gaming resort on Hengqin Island, a new resort district in China. Any such development would need the approval of various governmental entities, and the President believed that partnering with a Chinese company would improve LVSC's chances of receiving the needed approvals.

27. As part of pursuing this strategy, only one Chinese company was considered as a partner – an SOE whose Chairman was believed to have particular influence in connection with

5

GGAM-SDNY-0122380