Development and Pre-Opening Fees: (a) one invoice constituting 15% of GGAM's total monthly fixed Fees of US$ 175,000 for the services GGAM performed inside the Philippines (which would be subject to Philippines withholding tax), and (b) one invoice constituting 85% of GGAM's total monthly fixed Fees of US$ 175,000 for the services GGAM performed outside the Philippines.[256]

132. As of Solaire's opening in March 2013, GGAM had received payment for all of its Pre-Opening and Development Fees, with the exception of the invoice for services performed outside the Philippines for the month of February 2013, totaling US$ 148,750.[257] GGAM inadvertently failed to include this invoice in its earlier submission of invoices to Respondents.[258] After realizing the omission, on June 5, 2013, GGAM submitted the outstanding February 2013 invoice to Respondents with a note explaining the oversight.[259] Respondents never paid this outstanding invoice.[260]

### 3. GGAM Is Entitled to Its Outstanding Reimbursable Expenses

133. Respondents have not paid GGAM US$ 288,031 in reimbursable travel expenses, for Mr. Stone's and Mr. Saunders' travel on behalf of Solaire and Bloomberry. With interest owed, the amount owed totals US$ 373,360.[261]

134. The MSA required Respondents to reimburse GGAM for its out-of-pocket expenses, including travel expenses.[262] Most of the expenses incurred related to

---

[256] Saunders Decl. ¶¶ 98, 99; *see also* Claimants' Ex. 1, MSA Clause 4.6.

[257] *See* Saunders Decl. ¶ 101.

[258] *See id.*

[259] *See id.*

[260] *See id.*

[261] Second Kalt Report, fig. 5; Claimants' Ex. 1, MSA Clause 4.8; *see also* Saunders Decl. ¶ 105.

travel to and from Solaire, but some of the travel related to the GGAM principals' efforts with respect to the BRC roadshow, representing BRC at investor conferences, and investigating and evaluating a potential business opportunity for BRC in Argentina.[263]

135. Despite receiving all of GGAM's invoices, expense reports and backup documentation, Respondents have not reimbursed GGAM for any submitted expenses incurred after June 2012.[264]

136. After June 2012, GGAM incurred US$ 242,474 in travel expenses to and from the Solaire.[265]

137. Additionally, GGAM incurred US$ 45,557 in expenses related to work on behalf of Respondents and BRC, including the roadshow, investor conferences, and the Argentine investment opportunity.[266] While GGAM incurred these expenses outside the scope of the MSA, GGAM is entitled to reimbursement of these expenses as well.[267] Even before July 2012, Respondents established a practice of reimbursing GGAM for expenses related to GGAM's efforts on behalf of them and BRC that were not directly related to Solaire, which GGAM relied on in incurring these expenses.[268] Even if there were no oral contract, it would

---

262 Claimants' Ex. 1, MSA Clause 4.7.

263 Third Stone Decl. ¶¶ 39, 42; Saunders Decl. ¶ 106; see also Statement of Defense at ¶ 43 (Respondents noting that GGAM's participation in the roadshow as "fundamental, active participants" was "axiomatic").

264 See Saunders Decl. ¶ 104.

265 See id. ¶ 106; Second Kalt Report, fig. 5; Claimants' Ex. 1, MSA Clause 4.7.

266 See Saunders Decl. ¶ 106; Second Kalt Report, fig. 5.

267 Dauden-Hernaez v. De los Angeles, G.R. No. L-27010(S.C., Apr. 30, 1969) (Phil.) (oral contracts are enforceable, including oral contracts where the amount involved exceeds five hundred pesos).

268 Saunders Decl. ¶ 103; Ainza v. Padua, G.R. No. 165420 (June 30, 2005) (Phil.) (relying on evidence of partial performance to enforce an obligation).

unjustly enrich Respondents to allow them to avoid compensating GGAM for its travel expenses.[269] Accordingly, the Tribunal should order Respondents to reimburse GGAM for these expenses.

### H. The Management Fee Damages Amount Must be Adjusted to Account for Withholding Tax Under Philippine Law from Which GGAM Should Be Exempt

138. In addition to awarding to GGAM the present value of the Management Fee, the Tribunal must also accord GGAM the tax treatment the parties contemplated in the MSA, and require that Respondents gross up the Management Fee payment to include withholding tax under Philippine law,[270] unless Respondents also timely provide the certifications required by law to support GGAM's exemption from the withholding tax under the Philippines-Netherlands Tax Treaty.[271] Respondents should pay GGAM an additional amount so that, when GGAM is required to pay Philippine taxes, GGAM is left with the same amount as it would have if no taxes had been applied.[272]

---

[269] CIVIL CODE, Rep. Act. 386, as amended (Phil.), Art. 22, ("Every person who through an act of performance by another, or any other means, acquires or comes into possession of something at the expense of the latter without just or legal ground, shall return the same to him."); see also Advanced Found. Constr. Sys. Corp. v. New World Prop. and Ventures, Inc., G.R. No. 143154 (June 21, 2006) (Phil.) ("[T]o deny [claimant] relief for the expenses it incurred in [performing work] would result in allowing [respondent] to unjustly enrich itself at the expense of [claimant]. Equity necessarily dictates that [respondent] be held liable for the expenses incurred for the extra work conducted for its sole benefit.").

[270] See TAX CODE, Rep. Act. 9337, as amended (Phil.) § 28(B)(1).

[271] See Philippines, Bureau of Internal Revenue, Revenue Memorandum Order No. 72-2010 (Aug. 25, 2010) ("RMO 72-2010") (requiring Certificate of No Pending Case and notarized certification by the Respondents as to the duration of the service performed in the Philippines by the concerned employee(s) of Claimants' for the entire duration of the subject contract); see also Convention for the Avoidance of Double Taxation, Neth.-Philippines, Art. 5(2)(h), March 9, 1989 ("Netherlands-Philippines Tax Treaty").

[272] Under the MSA, GGAM would have been paid the entire Management Fee amount, with no withholding. To keep GGAM whole, Respondents must provide the certifications to ensure GGAM is free of withholding, or the amount Respondents will pay in damages must be increased by the amount of the withholding tax (which under Philippine law is 30% of the amount paid). The total payment must therefore be equal to the fees due divided by .70 (i.e., Management Fee + gross up =