Case 1:21-cv-02655-LGS-SN   Document 387-54   Filed 03/10/23   Page 1 of 2

Perry Decl. Ex. 54

44. Bloomberry's managerial ineptitude and inexperience, particularly as it relates to managing credit strategy, manifested in the extraordinary bad-debt expense in 2015 that significantly cut into Solaire's margins, particularly in foreign VIP gaming. The consequences of Bloomberry's bad-debt performance extend far beyond the actual amount of write-off expenses the property incurred. Bloomberry's collection management issues likely destroyed valuable relationships with important VIP customers and junket operators. Bloomberry likely over-compensated for the 2015 loss by becoming hyper-conservative in extending credit to Solaire's customers, likely hurting Solaire's ability to attract VIP customers going forward. There are other hard costs associated with credit customers that are not recouped if the credit amount is written off, such as marketing commissions, food and beverage, travel expense, gifts, entertainment and sporting events, executive marketing and collection time and other wasted expenses.

45. In short, Solaire's loss of goodwill with key customers, its overreaction to overly limit credit, and these other associated expenses further suppress Solaire's VIP EBITDA in significant ways not apparent in the bad-debt numbers themselves. Given GGAM's extensive experience in the gaming industry, I am certain we would have avoided such amateurish pitfalls, avoiding not only the initial bad-debt loss in 2015 but also the subsequent harm done to VIP gaming revenues.

V. "Avoided Costs"

46. There are no expenses that GGAM would have incurred in managing Solaire that GGAM avoided due to Bloomberry's wrongful termination of the MSA. Under the

24

Subject to Arbitration Confidentiality Orders

BLOOM_0110435

MSA, Bloomberry was required to reimburse GGAM for all out-of-pocket expenses for matters related to the services provided under that Agreement. *See* MSA, Clause 4.7 ("The Owners shall reimburse GGAM for all reasonable and documented out-of-pocket expenses including travel expenses to and from the Facilities for GGAM's employees and consultants (and with prior written consent of the Owners, GGAM's Affiliates employees and consultants) for matters related to the Services provided under this Agreement that are not otherwise paid for by the Owners.").

47.     Mr. Weidner, Mr. Saunders and I did not receive salaries for managing Solaire's operations, and Bloomberry was responsible for the compensation of all other individuals involved with managing and operating the property. Rather than avoiding costs as a result of Bloomberry's termination of the MSA, GGAM instead incurred additional costs: after Bloomberry wrongfully terminated GGAM and its then-COO, Mr. French, GGAM placed Mr. French on its payroll.

Executed in San Diego, California on May 15, 2017.

BRADLEY H. STONE