REPUBLIC OF THE PHILIPPINES)
MAKATI CITY                              ) S.S.

## DECLARATION

I, **JORGE V. SARMIENTO**, Filipino, of legal age, and with address at 14 Brighton Street, Hillsborough Village, Barangay Cupang, Muntinlupa City, Metro Manila, Philippines, after having been duly sworn in accordance with law, hereby depose and state:

1. I submit this declaration in the Arbitration between Claimants Global Gaming Philippines LLC ("GGAM") and GGAM Netherlands B.V., and Respondents Bloomberry Resorts and Hotels Inc. and Sureste Properties, Inc. (Respondents together, "Bloomberry") to attest to the truth of the statements made below.

2. I was the President and Chief Operating Officer ("COO") and a Member of the Board of Directors from July 14, 2010 to January 31, 2016 of the Philippine Amusement and Gaming Corporation ("PAGCOR"). I was concurrently the Officer-in-Charge of the Corporate and Legal Services Department of PAGCOR from 2014 to 2016.

3. PAGCOR is a government-owned and controlled corporation under the Office of the President of the Republic of the Philippines, existing under its charter, Presidential Decree No. 1869, as amended. Under its charter, PAGCOR is mandated to "authorize, license and regulate games of chance, games of cards and games of numbers" in the Philippines.

4. By virtue of my former position as a COO and a Member of the Board of Directors, and OIC of the Corporate and Legal Services Department of PAGCOR, I am well aware of the regulatory measures imposed on licensed casinos pursuant to PAGCOR's regulatory powers.

5. Among others, PAGCOR regulates the employment of persons within the Philippine gaming industry. It enforces several regulatory measures to ensure that persons who work in any gaming establishment have the requisite capacity, competence, and integrity. One of such measures is the need for employees or contractors of licensed casinos to procure a Gaming Employment License ("GEL") as a requirement for employment in said establishments. A GEL issued by PAGCOR grants the person the privilege to be employed as a gaming employee within the Philippines.

6. Under the GEL Guidelines, an application for a GEL may be denied on the following grounds:

    (a) The documents or information provided are fictitious, false or misleading;



(b) The employee has been dismissed by PAGCOR or a licensee under just causes under the law;

(c) The employee is convicted of a crime involving moral turpitude or any crime which is inimical to PAGCOR policy concerning gaming;

(d) The employee tested positive for any dangerous drugs;

(e) The employee is identified as a member or associate of organized crime; or

(f) Analogous instances.

7. The foregoing are also the grounds upon which a GEL may be revoked.

8. As gleaned from the foregoing, the requirement for persons involved in the gaming industry are strict. Professional competence alone is not sufficient. A person seeking to work in the Philippine gaming industry must have integrity. Even the lowest ranked employee of Philippine gaming industry must satisfy these standards.

9. I know that Bloomberry is one of the licensees issued a provisional license by PAGCOR, and Bloomberry established Solaire Resort & Casino under that license. I also remember that Bloomberry had signed up with GGAM to provide management services to Solaire under a Management Services Agreement (MSA). Bloomberry had duly reported to us in PAGCOR the execution of such MSA in 2011. We did not have any adverse information concerning GGAM and its officers at that time. But now Bloomberry has informed me that at the time the MSA was in place from September 2011 up to September 2013, the senior officer of GGAM, Mr. William P. Weidner, and his close associate Eric Chiu (said to head the GGAM marketing effort in China) were being investigated for violations of the Foreign Corrupt Practices Act of 1977 ("FCPA") of the United State of America. I was also made aware that the U.S. Department of Justice (U.S. DOJ) on January 17, 2017 and the U.S. Securities and Exchange Commission (U.S. SEC) on April 7, 2016 have found Mr. William P. Weidner and Mr. Eric Chiu, have willfully violated the FCPA, and as a consequence of their unlawful conduct, their former employer Las Vegas Sands had to pay US$ 16 million in penalties to the U.S. Government. I have read the U.S. DOJ's Non-Prosecution Agreement with Las Vegas Sands and the U.S. SEC's Order Instituting Cease-and-Desist Proceedings against LVS on the basis of being informed by Bloomberry that "President and Chief Operating Officer" and Executive 1" is Mr. Weidner and "President of Asian Development" and "VML Executive" is Mr. Chiu. Those are remarkable documents.

10. I have also been informed by Bloomberry now that Mr. Michael French who was the President and Chief Operating Officer of Solaire Resort & Casino designated by GGAM under the terms of the MSA, has previously been fired from Las Vegas Sands



2

GGAM-SDNY-0129722

(by Mr. Stone another GGAM senior officer) for his role in rigging a drawing, for which Las Vegas Sands had to pay US$ 1 Million penalty (which was agreed to in writing by Mr. Weidner). This material information was not disclosed by Mr. French in his GEL application.

11. The violation of FCPA of the nature set forth by the U.S. authorities by William Weidner and Eric Chiu who are senior officers of GGAM, and GGAM's hiring Michael French as President and Chief Operating Officer of Solaire, a person whom they have previously fired for rigging a drawing, and Mr. French' failure to disclose this in his GEL application are, to my mind, reasons enough for PAGCOR to disqualify GGAM from being involved in gaming in the Philippines. Had PAGCOR been aware of these facts, it would have required that Bloomberry disassociate itself from Mr. Weidner, Mr. Chiu and Mr. French. In fact, PAGCOR would have required the immediate termination of the MSA if its continuation would not be possible without the involvement of Mr. Weidner, Mr. Chiu and Mr. French or if it would allow a circumvention of the requirement that only persons of the highest integrity are allowed to participate in the operations of the Philippine gaming industry. I find it almost impossible to believe that, as I have been informed by Bloomberry, Mr. Weidner did not inform them of the fact of the investigation and, going beyond that, he concealed the facts that he and Mr. Chiu were at the center of the investigation, and denied being involved in the transactions subject of the investigation when Bloomberry asked him about it. This, to my mind, is further dishonest conduct of a kind that is not tolerable for people in the gaming industry.

IN WITNESS WHEREOF, I have hereunto set my hand this 28th day of August 2017 in Makati City.

JORGE V. SARMIENTO

SUBSCRIBED AND SWORN to before me, this 28th day of August 2017, by Jorge V. Sarmiento, who exhibited to me his Passport with No. EC4912055 issued on 5 August 2015 in DFA Manila.

Doc. No. 286;
Page No. 59;
Book No. I;
Series of 2017.

ARIANE MAY VALLADA
Appointment No. M-176
Notary Public for Makati City
Until December 31, 2017
Penthouse, Liberty Center
104 H.V. dela Costa Street, Makati City
Roll of Attorneys No. 54605
PTR No. 5913730 / Makati City / 01-07-2017
IBP No. 1053791 / Quezon City / 01-04-2017

3

GGAM-SDNY-0129723