Perry Decl.
Ex. 58

ANNEX C

**ENTITIES INVOLVED IN BOTH THE TRANSACTIONS IN WHICH MESSRS. WEIDNER AND CHIU WERE INVOLVED WHILE AT LAS VEGAS SANDS AND WERE INVESTIGATED BY THE U.S. DOJ AND U.S. SEC AND FOUND TO HAVE VIOLATED THE U.S. FCPA AND MR. WEIDNER'S "STRATEGIES" FOR SOLAIRE**

I. **Connecting Known Entities to the Anonymous Entities in the U.S. SEC Order and the U.S. DOJ NPA**[1]

- **China International Travel Service (or CITS) = SOE / Chinese SOE**

    o   The U.S. SEC Order and the U.S. DOJ NPA both reference a Chinese SOE or just SOE as the owner of the building that LVSC purchased (by using the Consultant as an intermediary or "beard") for approximately U.S. $42 million.

    - *Compare* **U.S. SEC Order at ¶¶ 27-29:** "As part of pursuing this strategy, only one Chinese company was considered as a partner – an SOE whose Chairman was believed to have particular influence in connection with Hengqin, and who was introduced to the company by the same Consultant used for the basketball team. The partnership was initially designed as a joint venture between the SOE and LVSC. In December 2006, LVSC signed a letter of intent with the SOE to establish a joint venture and to buy portions of a building in Beijing ('real estate' or 'property') from the SOE for approximately $42 million. . . . Instead of a joint venture, the LVSC President authorized using the Consultant as a "beard" to purchase the Beijing building from the SOE."

    - *With* **U.S. DOJ NPA at ¶¶ 23-24:** "Sands promotional strategy in the PRC also included pursuing a joint venture to develop a resort facility with a Chinese state-owned travel agency ('Chinese SOE'). As part of its collaboration, Sands agreed in December 2006 to acquire from the Chinese SOE several floors of a large building in Beijing. Between in or around July 2007 and February 2008, Sands, through its WFOEs[2], acquired a controlling interest in a company that Consultant had set up to purchase the Beijing building floors. The transactions, amounting to approximately $42 million, were between Sands' WFOEs and the Consultant entities, and none of the payments was approved by a Sands employee with sufficient authorization to approve the amounts paid."

    o   Public sources identify China International Travel Service (or CITS) as the Chinese SOE that owned the building that LVSC purchased (by using the Consultant as an intermediary or "beard") for approximately U.S. $42 million.[3]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in Respondents' Request for Reconsideration of the Partial Award on Liability in Light of U.S. DOJ and U.S. SEC Findings of Violations of the Foreign Corrupt Practices Act by William Weidner and GGAM's President for Asia, and False Statements and Fraudulent Concealment by GGAM in this Arbitration, August 31, 2017.

[2] "WFOEs" is defined in the U.S. DOJ NPA as "Sands' Wholly Foreign-Owned Enterprises. *See* U.S. DOJ NPA at ¶ 4 (RE-371).

[3] *See, e.g.,* Michael Luo, Neil Gough and Edward Wong, "Scrutiny for Casino Mogul's Frontman in China, The New York Times, August 13, 2012 (RE-304) ("**It was an introduction to the chairman of the state-owned China International Travel Service that led the Sands to find space for the ['business center'] in the travel service's**

1

GGAM-SDNY-0139321

- During the Liability Hearing, Mr. Weidner testified that he brought China International Travel Service (or CITS) to Solaire's grand opening as part of his "cross-border trading platform" strategy for driving VIPs to Solaire.[4]

- **Chu Kong Shipping (or CKS) = New Ferry (only referenced in the U.S. SEC Order)**

  - The U.S. SEC Order discusses how Mr. Weidner pressured subordinates to partner with a politically advantageous ferry company referred to as "New Ferry"—which was owned by the Consultant and the Chairman of China International Travel Service (or CITS)—that was making cash payments to Chinese government officials.

    - *See* **U.S. SEC Order at 37-39:** "In 2007, LVSC set up a high-speed ferry business to transport customers from China and Hong Kong to Macao. LVSC sought to contract with a ferry services provider to operate the ferries. Under pressure from the LVSC President, LVSC employees selected a recently-formed ferry company ('New Ferry') that was partially-owned by an older, Chinese state-owned ferry company ('Old Ferry'). The LVSC President stated in an email to an LVSC executive that the selection of New Ferry would be politically advantageous to LVSC.

      "The shareholders of New Ferry included Old Ferry and a shipping company ('Shipping') that was indirectly owned by the Consultant and the SOE Chairman. Given the contract values, due diligence was required on the respective entities and principals under LVSC's policies. While it was known that Old Ferry and Shipping owned New Ferry, due diligence was only done on Old Ferry, and in July 2007, two Hong Kong subsidiaries of LVSC signed a contract with New Ferry as Operator and Guarantor, respectively.

      "As part of its contract, each year New Ferry submitted a detailed budget which included a 'Business Entertainment' line item that was divided into separate amounts for business partners and for government officials. In 2010, SCL's internal audit department, Audit Services Group ('ASG'), concluded that New Ferry was spending the majority of the entertainment expense on government officials. In addition to providing meals to government officials, New Ferry gave them "red envelopes" containing cash around the Chinese New Year. New Ferry personnel told an SCL auditor that it was necessary to provide meals and entertainment to government

---

**building in central Beijing.**") (emphasis added); Alexander Berzon and Kate O'Keefe, "Sands China Deals Scrutinized," The Wall Street Journal, August 9, 2012 (RE-305) ("Among other things, investigators are looking at Sands's $50 million in payments made through Mr. Yang for office space for the Adelson Center in Beijing, according to board documents. **The deals also involved the China International Travel Service, a large government-owned Chinese travel agency.**") (emphasis added).

[4] October 19, 2015 Hr'g Tr. at 268:10-270:3 (Weidner) ("Tell the tribunal who these 20 some odd people were and what was your purpose in bringing them to the Solaire's opening? A. Multiple purposes. **First was the concept of the trading platform . . . I brought with me the largest – oldest travel agency in China, China International Travel Services, CITS.**"); *see also id.* at 210:23-211:3 (Weidner) ("So it was my Macau contracts, my CLO contacts, **my Beijing contacts, that all came into play for what I would say a unique and sophisticated way of reaching directly into individual Chinese high-end business people who were most of the very high-end gamblers there.**") (emphasis added); Email from B. Weidner to E. Razon, March 12, 2013 (attaching letter dated March 3, 2013) (JCB-150/RE-176) ("**Representatives from other Chinese SOE's will also attend** (China Duty Free, **China International Travel Services (CITS)** and CKS & CKS Travel).") (emphasis added).

2

GGAM-SDNY-0139322

officials to secure routes for the ferries. ASG failed to elevate this issue within the company."

- o Public sources identify Chu Kong Shipping (or CKS) as the ferry company owned by the Consultant and the Chairman of Chinese International Travel Service (or CITS) that LVSC partnered with to run its high speed-ferry service.[5]

- o Public sources also identify Chu Kong Shipping as the company with which Mr. Weidner, through his company Weidner Resorts, signed a contract for ferry services in connection with his pursuit of developing a casino resort off the coast of Thailand on Matsu Island.[6]

- o During the Liability Hearing, Mr. Weidner testified that he brought Chu Kong Shipping to Solaire's grand opening as part of his "cross-border trading platform" strategy for driving VIPs to Solaire.[7]

- **China Liaison Office in Macau = China Liaison Office in Macau (only referenced in the U.S. DOJ NPA)**

  - o The U.S. DOJ NPA discusses how LVSC hired the Consultant at the recommendation of a high level official at the China Liaison Office in Macau.

    - *See* **U.S. DOJ NPA at ¶ 13:** "Consultant was first retained by Sands in the fall of 2006, having been introduced to Sands through a high-level person with the PRC's China Liaison Office in Macao. VML Executive strongly advocated that Sands

---

[5] *See, e.g.*, "Sands China stresses probes just involve parent," Macau Business, August 13, 2012 (RE-308) ("**Also under scrutiny is . . . the company's partnership with Chu Kong Shipping Enterprises (Group) Company Ltd (CKS) to operate Sands China's CotaiJet ferry service**.") (emphasis added); "Las Vegas Sands Launches New High-Speed Ferry Service Between Hong Kong and Macau," Las Vegas Sands Corp., November 30, 2007 (RE-309) ("With today's launch of the new CotaiJet service, which is being managed by **Cotai Chu Kong Shipping Management Services Co., Ltd. . . .**") (emphasis added).

[6] *See, e.g.*, Martin John Williams, Weidner Resorts Signs Mainland Ferry MOU, Gambling Compliance, December 10, 2012 (RE-354) ("Marking Friday's opening of Weidner Resorts' Taipei office, company president and CEO **William Weidner signed memoranda of understanding (MOUs) with Hong Kong-based high-speed ferry operator Chu Kong Passenger Transport (CKS)** and China Duty Free Group at a ceremony in Taipei."); Steven Stradbrooke, "Weidner significantly upgrades Matsu casino plan, but tone of campaign irks some," Calvinayre, January 23, 2013 (RE-332). Chu Kong Passenger Transport is a subsidiary of Chu Kong Shipping Enterprises (Group) Company Ltd. *See* Corporate Profile – Chu Kong Passenger Transport Company Limited (RE-333).

[7] *See* October 19, 2015 Hr'g Tr. at 268:10-270:2 ("Q. Tell the tribunal who these 20 some odd people were and what was your purpose in bringing them to the Solaire's opening? A. Multiple purposes. **First was the concept of trading platform.** . . . I brought **Cheung [sic] Kong Shipping** which is the largest fast ferry operation, but they have a travel agency because they book hotel rooms, ferry tickets and other things. They were friends of mine from Guangdong province and they were also very much involved in Taiwan, so I brought them along for travel agency support and so forth in China.") (emphasis added); *see also id.* at 210:23-211:3 (Weidner) ("So it was my Macau contracts, my CLO contacts, **my Beijing contacts, that all came into play for what I would say a unique and sophisticated way of reaching directly into individual Chinese high-end business people who were most of the very high-end gamblers there**.") (emphasis added); Email from B. Weidner to E. Razon, March 12, 2013 (attaching letter dated March 3, 2013) (JCB-150/RE-176) ("**Representatives from other Chinese SOE's will also attend (China Duty Free, China International Travel Services (CITS) and CKS & CKS Travel)**.") (emphasis added).

3

GGAM-SDNY-0139323