Perry Decl. Ex. 59

and production of documents related to Mr. Chiu are premised on speculation, are misleading, and reach false conclusions, for the reasons discussed in more detail below.

27. Paul Hastings never made any determination to restrict collection of documents from Mr. Chiu as part of an effort to avoid production. Rather, we engaged in a thoughtful, well-reasoned decision to identify and locate documents involving Mr. Chiu or otherwise reflecting his activities, and not to conduct unreasonable and disproportional searches unlikely to identify any relevant documents not already identified and collected. Part of that determination was to collect documents related to Mr. Chiu's activities on devices and servers that were accessible and searchable on an efficient and reasonable basis, as described below.

   (a) Paul Hastings understood that, because Mr. Chiu's work for GGAM relating to Solaire was performed exclusively at the behest of the GGAM Principals, or with their involvement and knowledge, it was unlikely that Mr. Chiu had any communications relevant to Solaire or Bloomberry that had not been part of direct communications with or that otherwise had not been relayed to the GGAM Principals. All relevant communications of persons at GGAM to, from, or copied to Mr. Chiu would have already been encompassed within the data sets we collected and would have been reviewed in the ordinary course.

   (b) We understood that Mr. Chiu communicated through a personal email account, but (again) Paul Hastings recognized that any such communications that were relevant to this dispute were already a part of our e-discovery searches and collection of all communications to, from, or copying the GGAM Principals.

   (c) Mr. Chiu is a Chinese national who lives in Asia and speaks almost exclusively in Chinese with other Chinese speakers. His communications with other Chinese speakers, even assuming those communications would relate to Solaire (and that any such communications or their substance had not been relayed to the GGAM Principals), would have been in Chinese, and could not be searched using English search terms. Even if collected, those Chinese language communications could not be reviewed without substantial time and expense to find fluent Chinese speakers to collect, review, and then translate them.

GGAM-SDNY-0417248

(d) We also understood that the vast majority of Mr. Chiu's communications with others in China or other parts of Asia had been in face-to-face meetings, because of the Chinese/Asian cultural preference for such meetings. Thus, we reasonably determined that there was a low likelihood that there were significant additional emails to locate beyond what had been collected from the devices and servers that were already part of our search and collection efforts.

28. Given these factors, and because Mr. Chiu resided in China, we recognized it would have been extremely time-consuming and expensive to coordinate required travel to obtain his personal files. Comparing that time, effort, and substantial expense to the low likelihood that any additional relevant emails would be uniquely in Mr. Chiu's possession and not already collected, we determined to focus collection on the documents that we already had or would collect from other sources, and that we knew included Mr. Chiu's communications. Our conclusion in this regard was reinforced by the fact that the document set already collected included hundreds of emails between Mr. Chiu and the GGAM Principals, and many of those emails included descriptions of Mr. Chiu's activities and contacts.

29. Although Paul Hastings understood that Mr. Chiu performed work for GGAM and for Mr. Weidner that was unrelated to Solaire, that was ***not*** a factor in the process we designed and implemented, as discussed above. Indeed, at the time, document disclosure in the merits phase had not begun, and our collection and review strategy focused on comprehensively collecting and reviewing as many documents that might be potentially relevant, as part of building our own case and defending against Bloomberry's assertions. Nor was our document collection strategy constrained by any standard for the production of documents (as opposed to the collection of them), as set forth in the IBA Rules on the Taking of Evidence in International Arbitration (the "IBA Rules") or generally-accepted international arbitration practice. Rather, our paramount consideration in collecting documents was acquiring, reviewing, and analyzing as many potentially informative documents (whether they be helpful or harmful) to aid in our Arbitration preparation. Being artificially under-inclusive in our approach would have only disadvantaged our clients.

GGAM-SDNY-0417249

72. In accordance with the Parties' agreement to arbitrate, the IBA Rules, and the established procedures in this Arbitration, Respondents had ample opportunity to propound document requests, respond to all of Claimants' objections to those requests, review the documents that Claimants produced, and brief any concerns they may have had in light of the Tribunal's orders and Claimants' document productions, which Claimants completed in February 2015. In addition, Respondents had years of opportunity to collect and produce their own documentary evidence, present their own witnesses, cross-examine Claimants' witnesses, and brief the Tribunal long before the issuance of the Liability Award.

73. Yet, in the months preceding their Rejoinder Submission and the Liability Hearing, Respondents never questioned the adequacy of Claimants' document collection or production, nor did they seek to question either Messrs. Chiu or Lutnick. By Respondents' own admission, they did not even begin reviewing Mr. Chiu's documents until long after the close of the Liability Hearing.

74. Based on the established record, it cannot be said that "the[se] ... proceedings have been greatly distorted" by Claimants' document collection and document productions.[21] Incapable of coming to terms with their breaches of the MSA and other continuing wrongful conduct, Respondents make another last-ditch attempt to blame Claimants and their counsel for the conclusions the Tribunal properly reached based on the entire record, as set forth in the Liability Award. Respondents' Request is part and parcel of their pattern of making submissions to this Tribunal that are both untethered from the truth and procedurally irregular.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 29, 2017.

_____
Charles A. Patrizia

---

[21] See Respondents' Request at ¶ 102.

GGAM-SDNY-0417262