**Page 1**

Perry Decl. Ex. 66

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x
                                   :
GLOBAL GAMING PHILIPPINES, LLC,    :
                                   :
         Plaintiff,                :
                                   :
     v.                            : Case No.
                                   : 21 Cv. 2655
ENRIQUE K. RAZON, JR.;             : (LGS)(SN)
BLOOMBERRY RESORTS AND HOTELS INC.;:
SURESTE PROPERTIES INC.;           :
                                   :
         Defendants.               :
                                   :
- - - - - - - - - - - - - - - - - x

**HIGHLY CONFIDENTIAL - ATTORNEYS' EYES ONLY**

VIDEOTAPED DEPOSITION OF
BINYOMIN AVROHOM KAPLAN
MAY 19, 2022

VIDEOTAPED DEPOSITION OF BINYOMIN AVROHOM KAPLAN, produced as a witness at the instance of the Plaintiff, and duly sworn remotely, was taken in the above-styled and numbered cause on MAY 19, 2022, at the offices of Milbank LLP, 55 Hudson Yards, New York, New York, from 9:44 a.m. to 4:46 p.m., before Bridget Lombardozzi, CSR, RMR, CRR, and Notary Public of the State of New York, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record.

**Page 134**

Q. Do you have any basis to believe that representatives from BRHI and SPI traveled to New York for the purpose of meeting in person with representatives from GGAM to negotiate the MSA?

  MR. AINSWORTH: Again, objection.
  To the extent you can answer without disclosing attorney-client communications, you may.

A. Just the negotiations themselves.

Q. I don't think I understand your answer. My question was, do you have any basis to believe that representatives from BRHI and SPI traveled to New York for the purpose of meeting in person with representatives from GGAM to negotiate the MSA?

  MR. AINSWORTH: Same objection. Same instruction. Asked and answered.

A. I understand that there were negotiations to the MSA that were done in New York and through New York.

Q. Do you have any basis to believe that BRHI and SPI traveled to New York for the purpose of meeting in person with representatives from

**Page 135**

GGAM to negotiate the MSA?

  MR. AINSWORTH: Objection. Asked and answered. Same instructions.

A. I don't really understand. Maybe I'm just confused as to how you're asking the question because I feel like I've answered it. I'm not really sure what you're trying to ask.

Q. Let me ask you this: Do you have any basis to believe that representatives from BRHI and SPI actually ever met in person with representatives from GGAM in New York to negotiate the MSA?

A. I don't know if they met in person.

Q. You don't know one -- one way or the other? They may have, but you don't know?

A. Correct.

Q. Do you have any basis to believe that representatives from BRHI and SPI met in person with representatives from GGAM anywhere else in the United States to negotiate the MSA?

A. There was the meeting in Las Vegas that started all of this and I'm just not sure if there were other meetings.

Q. Are you referring to the -- the meeting

**Page 136**

between Mr. Razon and Mr. Weidner and Mr. Saunders in Las Vegas in -- in March of 2011?

A. Yes.

Q. Okay. Other than that, were there any meetings that you're aware of?

A. I'm not aware of any other in-person meetings.

Q. You're not aware of any other in-person --

A. No, but there --

Q. -- meetings in the United States?

A. -- were -- no, no. There were. I just don't know -- I don't have a -- a list of every meeting and where it was and --

Q. So you're saying there were other in-person meetings in the United States for purposes of negotiating --

A. No. I said I don't know.

Q. You don't know. Okay.
With respect to this Exhibit 2049, which is -- is the document that you brought with you, who prepared this document?

A. I did in part.

Q. And when you say "in part," did other people assist in preparing this document?

1  communications is my basis.
2       Q.   Other than attorney-client
3  communications, there's no basis for this
4  allegation in paragraph 54 that you're aware of?
5            MR. AINSWORTH:  Objection.
6       A.   I don't know.
7       Q.   Okay.  I'd like to understand this
8  allegation just a little better.
9            When is it alleged here that Mr. Razon
10 was -- when is it alleged here that Mr. Razon
11 traveled to New York?  Actually, strike that.
12           So it's -- so it's being alleged here
13 that on information and belief during this time
14 period, Razon traveled to New York.
15           Do you know which dates approximately
16 Razon traveled to New York?
17      A.   I don't know.
18      Q.   Did -- did Mr. Razon meet in person with
19 anyone from GGAM or Cantor in New York?
20           MR. AINSWORTH:  Objection.
21                To the extent you can answer
22           without disclosing attorney-client
23           communications, you may.
24      A.   I don't know.
25      Q.   Okay.  It says that "Razon conducted

---

1       Q.   And Cantor is not a signatory to the
2  confidentiality agreement, correct?
3       A.   That is correct.
4       Q.   And Cantor's not a -- a signatory to --
5  to any agreement with BRHI and SPI, correct?
6       A.   Correct.
7       Q.   If you can go to --
8       A.   You know, I apologize.  I want to
9  clarify because I -- I think maybe you're
10 misunderstanding.  Whether or not someone can get
11 sued on a contract has to do with more than just
12 whether they signed it.  So that's a factor in
13 this.
14           So I would not be able to answer your
15 question yes or no.  We're here for that reason.
16      Q.   Maybe I can rephrase it.
17           Could -- could BRHI and SPI have sued
18 Cantor for breach of the MSA?
19           MR. AINSWORTH:  Object as
20           calling for a legal conclusion; beyond
21           the scope of the deposition notice.
22           He's not here to give expert witness
23           testimony or legal advice.
24      Q.   Do you know if Howard Lutnick is
25 personally liable under the MSA?

---

1  STATE OF NEW YORK       )
2                          ) ss:
3  COUNTY OF NEW YORK      )
4            I hereby certify that the witness in the
5  foregoing deposition, BINYOMIN KAPLAN, by me was duly
6  sworn (affirmed) to testify to the truth, the whole
7  truth and nothing but the truth, in the within-entitled
8  cause; that said deposition was taken at the time and
9  place herein named; and that the deposition is a true
10 record of the witness's testimony as reported by me, a
11 duly certified shorthand reporter and a disinterested
12 person, and was thereafter transcribed into typewriting
13 by computer.
14           I further certify that I am not interested in
15 the outcome of the said action, nor connected with nor
16 related to any of the parties in said action, nor to
17 their respective counsel.
18           IN WITNESS WHEREOF, I have hereunto set my
19 hand this 2nd day of May 2022.
20           Reading and Signing was:
21  _X__ requested    ___ waived    __ not requested.
22
23        _____
24
25           BRIDGET LOMBARDOZZI, CSR, RMR, CRR