Perry Decl. Ex. E

# MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP

**1850 K STREET, NW, SUITE 1100**
**WASHINGTON, DC 20006**
——————
202-835-7500
FAX: 202-263-7586

Michael D. Nolan
Partner
DIRECT DIAL NUMBER
202-835-7524
Fax: 202-263-7524
E-MAIL: mnolan@milbank.com

| | |
|---|---|
| **NEW YORK** 212-530-5000 FAX: 212-530-5219 | **BEIJING** 8610-5969-2700 FAX: 8610-5969-2707 |
| **LOS ANGELES** 213-892-4000 FAX: 213-629-5063 | **HONG KONG** 852-2971-4888 FAX: 852-2840-0792 |
| **LONDON** 44-20-7615-3000 FAX: 44-20-7615-3100 | **SINGAPORE** 65-6428-2400 FAX: 65-6428-2500 |
| **FRANKFURT** 49-(0)69-71914-3400 FAX: 49-(0)69-71914-3500 | **TOKYO** 813-5410-2801 FAX: 813-5410-2891 |
| **MUNICH** 49-89-25559-3600 FAX: 49-89-25559-3700 | **SÃO PAULO** 55-11-3927-7700 FAX: 55-11-3927-7777 |

November 20, 2015

**BY ELECTRONIC MAIL**

Dr. Andrés Rigo Sureda
7002 Beechwood Drive
Chevy Chase, Maryland
20815
arigo@rigo.net

R. Doak Bishop, Esq.
King & Spalding, LLP
1100 Louisiana Street,
Suite 4000
Houston, Texas
77002-5213
dbishop@kslaw.com

Michael Hwang, S.C.
150 Beach Road
#06-01 Gateway West
Singapore 189720
michael@mhwang.com

Re:   *Global Gaming Philippines LLC, et al. v. Bloomberry Resorts and Hotels Inc., et al.*: Respondents' Concerns Regarding Procedural Fairness and Equality of this Arbitration

Dear Tribunal Members:

    We write pursuant to Dr. Rigo's invitation of November 6, 2015 to advise the Tribunal of Bloomberry's concerns regarding the procedural fairness and equality of this Arbitration.[1]

    Bloomberry has been working for the past 2 years to maintain the integrity of this Arbitration and ensure the enforceability of an award. This is why Bloomberry has requested repeatedly procedural measures to restore the balance between the Parties. The problem, however, is that Claimants are intent on winning this Arbitration in any way possible, including

---

[1] *See* Merits Hr'g Tr., Oct. 24, 2015 at 202:2-203:23.

by deliberately distorting and refusing to comply with the Parties' agreement to arbitrate, the UNCITRAL Rules, the IBA Rules, and this Tribunal's orders.

As set forth in detail below, Claimants' conduct in the Arbitration has impaired the fundamental fairness of this proceeding. By way of example:

- Claimants' manipulation of the document disclosure process deprived Bloomberry of its due process right to present its defense in the liability phase of the Arbitration.

- Claimants' continued leveraging of the procedural schedule resulted in a proceeding that disregarded Bloomberry's basic due process rights to be heard and to present its defense.

- Claimants' improper interim measures request expedited the Tribunal's consideration of the merits of the case on an incomplete and distorted record, and resulted in preconceived notions of Bloomberry's positions and counterclaims before Bloomberry had the opportunity to put forward its case. Consequently, the Tribunal issued an Interim Measures Order in disregard and violation of the procedures it had established and to which the Parties agreed.

This Tribunal's measures in response to Claimants' tactics, regrettably, have not been adequate to address the violation of Bloomberry's rights in this Arbitration, which have prevented Bloomberry from having a full and fair opportunity to present its case, contrary to the Parties' agreement to arbitrate.

### *Claimants' Manipulation of the Document Disclosure Process Deprived Bloomberry of Its Due Process Right to Present Its Defense in the Liability Phase of the Arbitration.*

Claimants disregarded the procedural schedule for disclosure that the Tribunal established.[2] Instead, Claimants engaged in a massive fishing expedition, propounding more than 170 document requests that were neither material nor relevant to the case.[3] The Tribunal ultimately rejected (or Claimants withdrew) more than half of their improper requests.[4]

On February 16, 2015, the Tribunal ordered Claimants to produce documents, which it deemed relevant and material, to Bloomberry's document requests. Claimants informed Bloomberry that they had "completed" their document production on February 27, 2015. When Bloomberry questioned Claimants about apparent gaps in this production, however, Claimants

---

[2] Bloomberry agreed to a document exchange schedule and process with the expectation that Claimants would adhere to the IBA Rules, the Parties' agreement to arbitrate, and accepted international arbitration practice. *See, e.g.*, Bloomberry February 5, 2015 Letter.

[3] Refusing to engage in good faith negotiations to narrow their requests, Claimants then tried to revise their requests at the last moment, depriving Bloomberry of a meaningful opportunity to respond. *See* Bloomberry January 30, 2015 Letter; *see also* Bloomberry February 5, 2015 Letter.

[4] *See* Tribunal February 16, 2015 Decision on Claimants' Document Requests.

2

Subject to Arbitration Confidentiality Orders

BLOOM_0088161

informed Bloomberry that all documents responsive to certain critical requests were being withheld as privileged.[5]

Notwithstanding the Tribunal's order to provide a log of responsive documents that were being withheld from production,[6] Claimants, without explanation, withheld their privilege log for 6 weeks,[7] frustrating the timetable for resolution of issues that the Tribunal's procedural order allowed.[8] When asked about the delay in our receipt of a privilege log and when we could expect to receive it, Claimants responded that "the Tribunal did not impose a deadline on the Parties' production of their respective privilege logs."[9] Claimants finally produced their long-withheld privilege log—which was rife with deficiencies—at the last possible moment at which Claimants could obtain maximum advantage in the briefing schedule to Bloomberry's distinct detriment.[10]

When Bloomberry brought to light what appeared, on the face of the privilege log, to be fundamental problems in Claimants' privilege designations and indications that substantial amounts of material had been withheld improperly from production, the Tribunal acknowledged the problems in several procedural orders.[11] Claimants' delay in providing their privilege log, however, made the situation for the Tribunal untenable and foreclosed the opportunity for the Tribunal to address effectively Bloomberry's concerns and maintain the hearing dates. The Tribunal determined that the procedural schedule did not allow for appointment of a special master because, at that late date in the proceeding, to do so would have disrupted the hearing schedule.[12] Thus, Claimants' tactic to deprive Bloomberry, unfairly, of its right to evidence ordered by the Tribunal was successful.

Bloomberry's expert, Hon. Stanley Birch, Jr., verified that Claimants' privilege designations appear to be improper under U.S. law on several grounds:[13]

- ***First***, Claimants withheld ***several hundred*** responsive documents on the basis of attorney-client privilege with more than 38 attorneys at 5 law firms. Yet when asked to

---

[5] *See* Claimants' Apr. 14, 2015 Letter at 2.

[6] *See* Tribunal February 16, 2015 Decision on Respondents' Document Requests.

[7] *See, e.g.*, Bloomberry July 9, 2015 Letter; Bloomberry April 29, 2015 Letter; Bloomberry June 22, 2015 Letter.

[8] If Claimants had provided their privilege log roughly commensurate with their document production, as expected, there would have been sufficient time in the schedule to appoint a special master or to conduct an *in camera* review of the disputed documents.

[9] *See* Bloomberry April 17, 2015 Letter at 2.

[10] *See, e.g.*, Bloomberry April 17, 2015 Letter; *see also* Bloomberry July 17, 2015 Letter.

[11] *See* Procedural Order Nos. 8, 9, 10.

[12] *See* Procedural Order 7.

[13] *See* Expert Report of Hon. Stanley F. Birch, Jr. at ¶ 2(a) ("Based on the facts and my application of principles of attorney-client privilege, it is my opinion that it is highly likely that Claimants have not complied with this Tribunal's orders and are withholding relevant documents under improper claims of attorney-client privilege.")

Subject to Arbitration Confidentiality Orders                                                                                               BLOOM_0088162

prove the existence of the very attorney-client relationships that give rise to this privilege, Claimants proffered carefully-worded, *ipse dixit* statements regarding the attorneys' representation of the "GGAM family of companies," unsupported by any documentation.[14]

- ***Second***, Claimants failed to meaningfully distinguish between business and legal advice and instead withheld documents, in their entirety, that merely touched upon a legal matter or to which a lawyer was only copied.[15]

- ***Third***, Claimants confirmed that they withheld ***entire families of documents***, but only logged the "parent" document. The very purpose of a privilege log is to inform the opposing party of responsive documents that exist but have been withheld from production, and the bases for the withholding.[16] Bloomberry now knows that responsive documents were improperly withheld, perhaps as undisclosed attachments. For example, we know that materials from other casinos were copied for Solaire's policies and procedures and for the Business Plan.[17] Yet, the only materials produced to Bloomberry were sections of the City of Dreams business plan.[18]

Even though the Tribunal granted Claimants many opportunities to comply with its orders and produce documents that are relevant and material to Bloomberry's defense and counterclaims, suppression of critical evidence has prejudiced Bloomberry's right to a fair hearing in the liability phase of the Arbitration. For example, Claimants suppressed, and continue to suppress, documents regarding Cantor Fitzgerald on the basis of conflicting statements:

- Claimants have maintained repeatedly that Cantor's role in GGAM was fully disclosed to Bloomberry.[19] As "proof" of this disclosure, Claimants point to a corporate structure

---

[14] *See, e.g.*, Bloomberry July 17, 2015 Letter; *see also* Merits Hr'g Tr., Oct. 23, 2015, 144:16-146:2 (Birch) (explaining that engagement letters are the "best evidence" of an attorney-client relationship and finding it "astound[ing]" that engagement letters allegedly did not exist with large U.S. law firms).

[15] *See, e.g.*, Bloomberry August 10, 2015 Letter; *see also* Merits Hr'g Tr., Oct. 23, 2015, 132:23-133:4 (Birch) ("Simply because a lawyer is a copyee or a – one of the principals in the exchange of the document doesn't, per se, make it privileged. There has to be a legal opinion asked for or given and between a client and an attorney, and in a client-attorney relationship before it becomes properly placed on a privilege log.").

[16] *See* Bloomberry July 17, 2015 Letter; *see also* Merits Hr'g Tr., Oct. 23, 2015, 140:22-141:3 (Birch) ("The attachments to an email are supposed to be delineated separately. You don't claim a privilege on a whole email chain without including the attachments and other documents that are involved. Otherwise, the other side that receives this has no idea that there was an attachment or another document involved.")

[17] Merits Hr'g Tr., Oct. 18, 2015, 168:8;13.

[18] See Bloomberry Opening Presentation, Merits Hearing, Oct. 15, 2015 at 199-235 (comparing City of Dreams Macau 2008 Business Plan for Gaming Machines (JCB-101) to Solaire Business & Marketing Plan, Jan. 29, 2013 (JCB-141)).

[19] *See, e.g.*, Claimants' Reply ¶ 41; Declaration of William P. Weidner dated June 13, 2015 ¶ 16; Supplemental Declaration of Jonathan D. Rein dated Oct. 5, 2015 ¶¶ 6-10.

Subject to Arbitration Confidentiality Orders                                                                                                      BLOOM_0088163

    chart of GGAM, including its 50-50 joint venture partner, Cantor GGAM.[20] Yet, at the merits hearing, Mr. Weidner said that he had never heard of Cantor GGAM.[21]

- Claimants have withheld critical communications between Cantor and GGAM on the basis of attorney-client privilege. For example, Claimants' counsel repeatedly stated their conclusion that in Entry No. 721 on Claimants' privilege log, "Mr. Weidner was conveying to Mr. Lutnick, his co-director, legal advice he received from an attorney regarding an agreement to which their joint venturer, GGAM, is a party."[22] According to Claimants' counsel, "the sharing of information between directors of a single party remains privileged."[23] These statements by counsel were negated at the merits hearing. According to Mr. Weidner, his discussions with Mr. Lutnick regarding the draft letter agreement, which was between GGAM and Cantor (not with a third party as implied by counsel) regarding ownership of and benefits from the Shares,[24] were not discussions about legal advice at all. Rather, their discussions were between "experienced businessmen" about "economic benefits" and mechanisms of funding and repaying funds for the equity option's strike price.[25] Such discussions are plainly not privileged.[26] Also, GGAM and Cantor were not operating as a "single party." Instead, they were adverse to each other,[27] and thus the agreement (including all drafts) and communications regarding the agreement are not privileged. As Claimants' counsel testified at the hearing, "If they [Cantor] had had the right to instruct, they would not have asked for it, and when they asked for it, Mr. Weidner said no."[28] This testimony—contradictory to Claimants' explanations for their withholding of this critical document and many other documents like it—calls into question Claimants' broad designations of privilege to suppress hundreds of responsive documents the Tribunal ordered to be produced.

    Similarly, Claimants' approach to damages and the resulting impact on document disclosure, if left unremedied, will prejudice Bloomberry's right to a fair hearing in the damages phase of the Arbitration. In fundamental disregard of the UNCITRAL Rules, this Tribunal's

---

[20] Email from B. Weidner to E. Razon, Sept. 8, 2011 (attaching corporate structure chart as Exhibit A) (JCB-44).

[21] *See* Merits Hr'g Tr., Oct. 19, 2015 248:4-6; 249:1-6.

[22] *See, e.g.*, Claimants' June 4, 2015 Letter at 8-9.

[23] *See, e.g.*, Claimants' Letter to Tribunal, April 22, 2015 at 8-9.

[24] The Shares are the 921,184,056 shares in Bloomberry Resorts Corporation purchased by Claimants for US$37 million pursuant to the equity option granted to Claimants by Bloomberry.

[25] *See* Weidner Fourth Decl. ¶ 25.

[26] October 23, 2015 Hr'g Tr. at 152:8-17 (Birch) ("If they are talking about how we are going to split up the profits that we make from this third party over here, that's one negotiation, one transaction and maybe one memorialising document that comes out of it for which privilege could not be claimed.").

[27] The draft agreement demonstrates that Cantor was negotiating for the right to cause a sale of Shares ***for the benefit of Cantor*** in the circumstances permitted during the 6-month lockup period. *See* Draft Letter Agreement between S. Merkel, on behalf of Cantor GGAM, and B. Weidner, on behalf of GGAM, Dec. 19, 2012 (JCB-128).

[28] Merits Hr'g Tr., Oct. 24, 2015 at 155:12-14.

Subject to Arbitration Confidentiality Orders     BLOOM_0088164

procedural orders, and ordinary arbitration practice, Claimants withheld their damages case in its entirety until their *last* written submission. Claimants' damages case spanned nearly 80 pages (more than half of their "Reply" brief) and was accompanied by 3 expert reports (totaling more than 200 pages), 77 exhibits (totaling nearly 4,000 pages), and 54 legal authorities (totaling more than 1,000 pages), an extraordinary amount of material to which Bloomberry was to respond (in addition to the thousands of pages Claimants submitted with respect to their liability claims).[29] Bloomberry had no choice but to request bifurcation of liability and quantum.[30]

The Tribunal's bifurcation order at this late stage[31] did not fully rectify the procedural unfairness introduced by Claimants' withholding of their damages case. For example, the bifurcation order did not permit Bloomberry to file document requests regarding Claimants' damages case. The document exchange period was carefully scheduled between the Parties' initial submissions and their responsive submissions in order to enable each Party to request relevant and material documents to evaluate the other Party's claims. By improperly withholding their damages case until after the conclusion of the document exchange period, Claimants have deprived Bloomberry of an opportunity to request documents relevant and material to Claimants' damages claims.[32]

### *Claimants' Continued Leveraging of the Procedural Schedule Resulted in a Proceeding that Disregarded Bloomberry's Basic Due Process Rights To Be Heard and To Present Its Defense.*

Under the UNCITRAL Rules, which the Parties agreed governed this proceeding, "the tribunal may conduct the arbitration in such manner as it considers appropriate, provided that the parties are treated with equality and that at an appropriate stage of the proceedings each party is given a reasonable opportunity of presenting its case."[33] The Tribunal denied Bloomberry's repeated requests for comparable time to prepare its Rejoinder, in light of the fact that Claimants withheld their case in its entirety until their "Reply" submission. As a result of Claimants' tactics, which have thus far remained unchecked, the arbitral procedure has not been in accordance with the Parties' agreement to arbitrate, and Bloomberry has not been provided a reasonable and equal opportunity to present its case. These tactics include:

- On September 8, 2014, nearly 1 year after initiating this Arbitration, Claimants' tactic was to submit only a skeletal Statement of Claim, unaccompanied by any witness statements or expert reports.[34] As a result, Bloomberry was precluded from the opportunity to fully develop its defense to Claimants' case during the document exchange

---

[29] *See* Bloomberry July 22, 2015 Letter at 2.

[30] *See, e.g.*, Bloomberry Letter to Tribunal, August 5, 2015.

[31] Procedural Order No. 11.

[32] *See, e.g.*, Bloomberry Letter to Tribunal, August 5, 2015 at n. 32.

[33] *See* UNCITRAL Rules, art. 17(1).

[34] In contrast, Bloomberry's Statement of Defense and Amended Counterclaim was accompanied by 9 witness statements and 3 expert reports.

Subject to Arbitration Confidentiality Orders                                                                                           BLOOM_0088165

forthcoming to Bloomberry may necessitate an adjustment of the deadline for Bloomberry's Rejoinder on Remedies.

- Claimants' continued leveraging of the procedural schedule resulted in a liability proceeding that disregarded Bloomberry's basic due process rights to be heard and to present its defense. The liability hearing has concluded, and this harm to Bloomberry cannot be adequately rectified at this stage.

- Claimants' improper interim measures request and approach to the interim measures hearing expedited the Tribunal's consideration of the merits and resulted in preconceived notions of Bloomberry's positions and counterclaims. This colored the Tribunal's perspective on the case, resulting in irreparable prejudice to Bloomberry.

- Claimants' overheated and tactical interim measures application resulted in a fundamental misconception as to the basic elements of interim measures, and the Tribunal ultimately issued an interim measures order in violation of the procedures it had established and to which the Parties agreed. This deprivation of Bloomberry's right to be heard has exposed Bloomberry to substantial damages, as Claimants have taken advantage of the confusion resulting from the Tribunal's order to put forward a new "conversion theory" of damages exceeding US$ 300 million.

The above list of concerns is not exhaustive and Bloomberry continues to reserve its rights as to these matters.

Very truly yours,

*[signature]*

Michael D. Nolan

Copy to Claimants' Counsel

Subject to Arbitration Confidentiality Orders                                                        BLOOM_0088178