# PAUL HASTINGS

Perry Decl.
Ex. F

+1 (202) 551-1860
joeprofaizer@paulhastings.com

December 1, 2015

**_VIA ELECTRONIC MAIL_**

Dr. Andrés Rigo Sureda
Presiding Arbitrator
7002 Beechwood Drive
Chevy Chase, Maryland 20815
United States of America
arigo@rigo.net

R. Doak Bishop, Esq.
Arbitrator
King & Spalding, LLP
1100 Louisiana Street, Suite 4000
Houston, Texas 77002-5213
United Sates of America
dbishop@kslaw.com

Michael Hwang, S.C.
Arbitrator
8 Marina Boulevard
#06-02 Marina Bay Financial Centre Tower 1
Singapore 01898
michael@mhwang.com

Re:    *Global Gaming Philippines LLC and GGAM Netherlands B.V. v. Bloomberry Resorts and Hotels Inc. and Sureste Properties, Inc.:* Claimants' Response to Respondents' November 20, 2015 Letter

Dear Tribunal Members:

By letter dated November 20, 2015, in response to the Tribunal's invitation, Respondents repeat their assertion at the liability hearing that this arbitration lacks "procedural balance and equality"[1] (the "November 20 Letter"). The November 20 Letter fails to demonstrate any imbalance or inequality, and instead regurgitates a litany of manufactured concerns that rest on conjecture, revisionist history, and the unfounded posture that Respondents are entitled to *preferential*, not equal, treatment.[2]

---

[1] October 24, 2015 Liability Hearing Tr. ("Liability Hr'g Tr.") at 203:16.

[2] The November 20 Letter exceeds the scope of the Tribunal's request, which limited Respondents' submission to "the issues raised by the Tribunal" (November 10, 2015 Email from A. Rigo to the Parties), namely, Mr. Nolan's "remarks at the conclusion of the evidentiary hearing (Transcript, October 24, pages 202-203)." November 6, 2015 Email from A. Rigo to M. Nolan. At the final liability hearing, Respondents expressly referenced only Claimants' supplemental submission (a submission expressly contemplated by

GGAM-SDNY-0271034

PAUL
HASTINGS

Messrs. Rigo, Bishop and Hwang
December 1, 2015
Page 2

Respondents argue that they have been "prejudiced" whenever the Tribunal resolved any matter in a way not exactly to Respondents' liking. Absent from the November 20 Letter is any evidence of unfair prejudice that Respondents actually suffered as a result of these supposed injustices. Respondents' failure to marshal evidence in their favor does not make them victims of procedural inequality. Their subjective disappointment is no basis on which to claim deprivation of due process.

The November 20 Letter argues that four circumstances have deprived Respondents of "a full and fair opportunity to present its [sic] case, contrary to the Parties' agreement to arbitrate"[3]: (i) Claimants' alleged manipulation of document disclosure, (ii) Claimants' alleged "leveraging of the procedural schedule," (iii) Claimants' Interim Measures Request, and (iv) the Tribunal's Interim Measures Order. The November 20 Letter recapitulates Respondents' exaggeration of minor grievances, in pursuit of their strategy to undermine the integrity of the Tribunal's liability award. The Tribunal should recognize Respondents' accusation of "irreparable harm" for what it is – the litany of a litigant who has neither facts nor law to pound, and therefore must pound the table.

Respondents claim that these purported wrongs constitute irreparable harm that cannot be corrected. Nonetheless, Respondents also again repeat their unfounded request for *in camera* review or a special master, a request the Tribunal has properly rejected several times. Respondents further request document discovery on damages issues, with a suggestion that they may seek an additional extension for the filing of their Damages Rejoinder. Respondents request this relief even though they do not assert that a special master, an *in camera* review, or further document exchanges would cure the alleged prejudice – they are instead a transparent attempt at further delay.

Claimants respectfully request that the Tribunal: (1) again reject Respondents' renewed request for a special master or *in camera* review of Claimants' privileged documents, and (2) deny Respondents' vague request for an "opportunity to propound document requests related to Claimants' damages claims."[4] *See* Section V. *infra*. Having shown neither actual wrongs nor

---

the IBA Rules), and did not mention Claimants' privilege log, Claimants' document requests or the Interim Measures hearing. October 24, 2015 Liability Hr'g Tr. at 202:9-203:23. Respondents' arguments on these subjects thus lay outside the permissible scope of the November 20 Letter.

[3] November 20 Letter at 2.

[4] *Id.* at 18.

GGAM-SDNY-0271035

PAUL
HASTINGS

Messrs. Rigo, Bishop and Hwang
December 1, 2015
Page 3

injury arising from alleged wrongs, Respondents have no basis to assert a deprivation of
fairness or equality.

I.      RESPONDENTS' ASSERTION THAT CLAIMANTS "MANIPULAT[ED] THE DOCUMENT
        DISCLOSURE PROCESS" IS BASELESS.

        A.      Claimants' Document Production and Privilege Log Were Timely and Proper

        In compliance with their disclosure obligations, Claimants produced 6,374 documents
(constituting 22,337 pages) in response to Respondents' document requests.  The only
responsive documents that Claimants withheld from production are privileged
communications reflecting attorney work product or attorney-client communication.[5]  The
privileged communications at issue primarily concern negotiation of the MSA or the Equity
Option Agreement, or involve communications regarding this Arbitration.  Legal opinions
regarding the drafting of those agreements cannot shed light on this case:  however they arose,
they are the contracts to which Respondents and their affiliates agreed and they are fully
integrated.  Cantor's purported influence in those negotiations has no bearing on whether
Respondents or Claimants violated the MSA.

        Respondents do not dispute the legal protection of such privilege, having themselves
withheld communications on those same grounds.  Instead, Respondents fantasize about
documents they wish existed, and on that basis hypothesize that Claimants improperly
withheld the imagined documents that, if produced, would provide Respondents the "smoking
gun" they seek to conjure into existence.  Respondents' imagination is no substitute for reality.

        Claimants moreover provided detailed privilege explanations on a document-by-
document basis.  Lacking evidence that any document withheld is not privileged, Respondents
proffer their own and their expert's conjectures about the contents and nature of documents
they have not seen.  Respondents' repeated speculation cannot be a proper basis to overcome

_____

[5] Respondents repeat the canard that Claimants withheld engagement letters.  November 20 Letter at 3-4.
The letters do not exist and thus cannot have been "withheld."  October 23, 2015 Liability Hr'g Tr. at
156:18-24.  Moreover, Claimants have shown that engagement letters are not legally required for
formation of an attorney-client relationship.  *See* Claimants' June 4, 2015 Letter to Tribunal at 6, n.20.
Respondents' expert, Mr. Birch, also conceded that point.  October 23, 2015 Liability Hr'g Tr. at 122:13.  To
the extent engagement letters exist for other matters, they are unrelated to the topics of this Arbitration,
do not underlie Claimants' privilege claims here, and are therefore not probative in evaluating Claimants'
privilege designations.

GGAM-SDNY-0271036

PAUL
HASTINGS

Messrs. Rigo, Bishop and Hwang
December 1, 2015
Page 4


Claimants' fundamental right to privilege – especially when Respondents zealously protect their own documents, and contumaciously withhold documents the Tribunal ordered them to produce.

Respondents contend that Claimants' privileged documents will advance their Cantor conspiracy theory. That theory has been briefed repeatedly and the record is clear that: (i) Mr. Razon and Ms. Occeña were aware of Cantor's involvement from the outset of the MSA negotiations;[6] (ii) Document No. 721 is only a *draft* agreement between GGAM and Cantor regarding disposition of the Shares, which was never finalized and no similar document was executed, and is therefore immaterial;[7] (iii) Respondents demanded that Cantor play no role in this arbitration;[8] and (iv) Cantor's relationship with GGAM has no bearing on the Tribunal's decision on issues of fraud, rescission or termination.

The opinions proffered by Respondents' expert, Stanley F. Birch, provide no indication to the contrary. At the hearing, Mr. Birch conceded that he had not reviewed the GGAM

---

[6] *See* October 20, 2015 Liability Hr'g Tr. at 65:2-11 (Mr. Razon testified that he was "aware" of Cantor's role); JCB-124, November 16, 2012 Tr. of Investor Conference at 43:19-24 (Ms. Occeña informed investors: "Cantor owns 50 per cent. So the money will come from Cantor.").

[7] Document No. 721 is privileged by virtue of the attorney advice relayed therein between GGAM executives. Respondents cite paragraph 25 of Mr. Weidner's October 5, 2015 Supplemental Declaration as purported evidence that Document No. 721 is not privileged. *See* November 20, 2015 Letter at p. 5. However, that portion of Mr. Weidner's declaration is in no way inconsistent with Claimants' consistent demonstration that Document No. 721 reflects legal advice "about [the upstream owners of GGAM Philippines] cooperative understanding as to the manner in which potential economic benefits arising from the Shares would be addressed." Claimants' July 14, 2015 Letter to Tribunal at 4. Out of consideration for the Tribunal's time and in the interest of efficiency, Claimants incorporate herein the prior discussion concerning Document No. 721 in their letters to the Tribunal, including those dated April 22, June 4, July 6, July 14, July 21 and August 12, 2015. Yet even if Claimants had improperly withheld Document No. 721, no prejudice accrues to Respondents, because the Tribunal required Claimants to produce it. Respondents had it before they submitted their Liability Rejoinder, where they relied on it by misrepresenting its content and effect.

[8] *See* Respondents' November 17, 2014 Letter at 7-9, Part D, entitled "This Dispute is Between Claimants and Bloomberry and Bloomberry Did Not Consent to Arbitration with Cantor Fitzgerald" ("A parent company is not entitled to participate in an arbitration to which it is not a party."); Respondents' December 12, 2014 Letter to Tribunal at 6 ("Bloomberry entered into a contract and consented to Arbitration with Claimants, not with Cantor Fitzgerald.").

PAUL
HASTINGS

Messrs. Rigo, Bishop and Hwang
December 1, 2015
Page 5


Holdings LLC Agreement,[9] conceded that he did not have knowledge of the negotiations between Cantor and GGAM,[10] and affirmed that communications between non-lawyers are subject to the attorney-client privilege where the communication concerns legal advice.[11] Instead, Mr. Birch postulated an imagined likelihood that some documents must be about business issues, not legal issues, and therefore *ipse dixit* concluded that further review was required. That he never addressed Respondents' unclean hands in relation to their own document production reinforces the bias inherent in Mr. Birch's opinion.

Contrary to Respondents' erroneous assertion that the Tribunal "acknowledged the problems [with Claimants' privilege log] in several procedural orders[,]"[12] the Tribunal has never found that Claimants violated their disclosure obligations. Claimants' privilege log complies with the applicable IBA Rules and standard arbitral practice,[13] and to the extent the Tribunal required Claimants (at Respondents' behest) to provide more information, Claimants complied with every such order.

The Tribunal, in response to Respondents' expressed concerns, instructed Claimants to re-review withheld documents, affirmatively demonstrating the Tribunal's careful attention to

---

[9] October 23, 2015 Liability Hr'g Tr. at 116:24-117:2.

[10] *Id.* at 156:10-17.

[11] *Id.* at 122:13.

[12] November 20 Letter at 3.

[13] As an example of Respondents' wild supposition, Respondents now allege that Claimants intentionally logged only parent emails in their privilege log to hide otherwise substantive, non-privileged documents – documents, for example, purportedly evidencing GGAM's putative 'rampant copying' of other business plans. November 20 Letter at 4. Setting aside that it is standard practice to log email families in a single privilege log entry (*see* legal authorities discussed and cited in Claimants' July 14, 2015 Letter at 9-10), Respondents' position is untenable. There is no basis on which any communications relating to business plans would even appear on a privilege log, and Claimants did not claim privilege relating to them – indeed, Respondents have the one document on which they rely in alleging copying precisely because Claimants produced it with no prompting and with no reference to privilege. If there were evidence of 'rampant copying,' presumably such evidence would be memorialized in the emails of Solaire employees, and in the testimony of Solaire employees who remain, and therefore would be within Respondents' own custody and control. In reality, Respondents do not lack evidence to support their arguments against the Business Plan because Claimants are hiding documents; Respondents lack evidence to support their arguments against the Business Plan because no such evidence exists, and no such 'rampant copying' occurred.

GGAM-SDNY-0271038

PAUL
HASTINGS

Messrs. Rigo, Bishop and Hwang
December 1, 2015
Page 6

due process and the procedural fairness repeatedly afforded to Respondents in this arbitration. Those orders are not evidence of deficiencies in Claimants' privilege log, but rather demonstrate the emptiness of Respondents' expressed disbelief. Claimants complied with each Tribunal order, reviewing and re-reviewing the contested privileged documents multiple times, and producing them in redacted form where ordered to do so.[14] As Claimants have explained, there is nothing left to produce.

Respondents also assert that Claimants belatedly submitted their privilege log and speculate that, if Claimants had instead acted on Respondents' unilateral timetable, "there would have been sufficient time in the schedule to appoint a special master or to conduct an *in camera* review of the disputed documents."[15] Of course, the Tribunal did not appoint a special master because there was neither need nor basis to do so – the Tribunal's decisions in that regard did not rest on fear of delay.

In any event, Respondents never conferred with Claimants on the deadline for a privilege log and neither the Tribunal nor the parties set a deadline for their exchange. Without a deadline and with the document exchange period still open at the time Claimants submitted their privilege log, Claimants could not have submitted that log "late." Yet even if it were "late," Respondents suffered no prejudice: Respondents received Claimants' privilege log on April 10, 2015, found the time thereafter to repeatedly request a special master, and still had almost five months before they submitted their Liability Rejoinder. Respondents cannot show that having the privilege log three weeks earlier would have made any material difference in these proceedings.

For these reasons, and as discussed in Section V. below, the Tribunal should deny Respondents' renewed requests for "appointment of a special master and/or *in camera* review of the disputed documents."[16]

---

[14] *See* May 22, 2015 Email from L. Berger to E. Culbertson in compliance with Procedural Order No. 7; Claimants' July 6, 2015 Letter to Respondents in compliance with Procedural Order No. 8; July 29, 2015 Email from A. Weiss to E. Culbertson in compliance with Procedural Order No. 9; August 7, 2015 Email from A. Weiss to E. Culbertson in compliance with Procedural Order No. 10.

[15] November 20 letter at 3 n.8.

[16] *Id.* at 18.

GGAM-SDNY-0271039

PAUL
HASTINGS

Messrs. Rigo, Bishop and Hwang
December 1, 2015
Page 35

Having asserted their claims of imbalance, Respondents argue that the "harm to
Bloomberry cannot be adequately rectified at this stage,"[124] but then make two requests for
relief, even though neither is argued to be sufficient to cure the "irreparable prejudice" they
claim.[125] First, Respondents again renew the request for a special master or *in camera* review of
privilege documents – a request the Tribunal has considered and properly rejected multiple
times over the last six months. Second, with neither support nor specificity, Respondents
request a reopening of the document exchange period to seek additional damages documents.
Respondents suggest that both the special master or *in camera* review and a further document
exchange occur before they submit their Damages Rejoinder. For all the reasons the Tribunal
has already heard and considered, there is no basis for imposition of special master or *in camera*
process, and as explained below, Respondents' renewed request still lacks any merit. Nor is it
ripe for the Tribunal to address any re-opening of document exchange at this time.

    A.    <u>The Tribunal Should Again Reject Respondents' Unjustified Request for a Special
Master or *In Camera* Review of Claimants' Privileged Documents</u>

Respondents request relief for the alleged deficiencies in the document disclosure
process. For the tenth time, Respondents resurrect their meritless request for an *in camera*
document review or appointment of a special master.[126] But Respondents proffer no new
explanation or basis as to why the Tribunal should reverse its repeated prior rejections of this
request. Claimants have already produced all responsive non-privileged documents, and have
properly logged the remaining privileged documents pursuant to the same privilege principles
applied by Respondents. Respondents fail to point to any legitimate evidence to the contrary,
and fail to provide any legal basis for the Tribunal to reconsider its previous rulings.

---

[124] November 20 Letter at 19.

[125] *Id.* at 18-19.

[126] *See* Respondents' April 17, 2015 Letter to Tribunal at 5; Respondents' April 18, 2015 Letter to Tribunal
at 3; Respondents' April 29, 2015 Letter to Tribunal at 8; Respondents' May 5, 2015 Letter to Tribunal at 1;
Respondents' May 27, 2015 Letter to Tribunal at 12; Respondents' June 24, 2015 Letter to Tribunal at 8;
Respondents' July 9, 2015 Letter to Tribunal at 7; Respondents' July 17, 2015 Letter to Tribunal at 2;
Respondents' August 10, 2015 Letter to Tribunal at 6.

GGAM-SDNY-0271068

PAUL
HASTINGS

Messrs. Rigo, Bishop and Hwang
December 1, 2015
Page 38

hearing, purportedly to remedy the "prejudice" occasioned by Claimants' Reply filing.[135] At no
point did Respondents request supplementary document requests. As such, Respondents'
amorphous demand—now made five months after filing of Claimants' Reply—should be
deemed waived.[136]

*    *    *

Respondents pile fantasy upon *ipse dixit* in service of their argument that, because
Respondents' case lacks factual and legal bases, they have been deprived of fundamental
fairness. In fact, the Tribunal has provided them with extra time, given them ample
opportunity to present relevant evidence, and carefully considered all their arguments.
Although Respondents now argue that the instant proceeding (expressly contemplated by the
UNCITRAL Rules, the IBA Rules of Evidence, and Philippine law), are somehow in derogation
of their rights, the opposite is true. Having sought at every opportunity to undermine and deny
Claimants' rights, Respondents cannot argue that Claimants' efforts to protect themselves are a
violation of Respondents' rights.

---

[135] *See* Respondents' June 22, 2015 Letter to Tribunal; Respondents' July 22, 2015 Request for Bifurcation;
Respondents' August 5, 2015 Reply in Support of Its Request for Bifurcation; Respondents' October 7,
2015 Letter to Tribunal.

[136] The Tribunal retains the discretion to grant a period of additional discovery upon a showing of specific
need. To demonstrate any need, Respondents must first make specific requests, demonstrate a need for
those documents, and demonstrate that they are not already in Respondents' possession. *See* IBA Rules
on the Taking of Evidence Art. 3 ("A Request to Produce shall contain: . . . a description in sufficient
detail (including subject matter) of a narrow and specific requested category of Documents that are
reasonably believed to exist; . . . a statement as to how the Documents requested are relevant to the case
and material to its outcome; and a statement that the Documents requested are not in the possession,
custody or control of the requesting Party . . . ."). Most critically, before the Tribunal orders any further
document exchange, the Tribunal must assure that the document exchange would be equal and
reciprocally available to Claimants. The best time, therefore, to determine whether any further document
requests or production are appropriate is after Respondents file their Damages Rejoinder on December
15, 2015, when the Tribunal can properly consider the pending document exchanges for both parties on
an equal basis.

Claimants continue to reserve all of their rights with respect to Respondents' November 20 Letter and
otherwise.

GGAM-SDNY-0271071

PAUL
HASTINGS

Messrs. Rigo, Bishop and Hwang
December 1, 2015
Page 39


Respectfully submitted,

Joseph R. Profaizer
of PAUL HASTINGS LLP

Daniel H. Weiner
HUGHES HUBBARD & REED LLP

cc:    Ervin Tan (ervin.tan@mhwang.com)
       Michael D. Nolan (mnolan@milbank.com)
       Elitza K. Popova-Talty (etalty@milbank.com)
       Erin M. Culbertson (eculbertson@milbank.com)
       Purisimo S. Buyco (psbuyco@picazolaw.com)
       Robel C. Lomibao (rclomibao@picazolaw.com)

GGAM-SDNY-0271072