## Page 31

JONATHAN REIN - HIGHLY CONFIDENTIAL

-- that the MSA obligations had been assigned.

There may have been discussion of EOA as well, but I don't specifically recall that.

Q. You recall that the EOA had a provision in it that forbade assignment to Cantor, among others?

A. I -- it's been a long time, I don't recall what's in the EOA. If you'd like to show me some language, I can tell you what it says.

Q. Do you recall any instance where GGAM personnel met with BRHI or SPI personnel in the United States for purposes of negotiating the MSA?

A. I can only testify to what I know, and I did not meet with BRHI -- or at least I do not recall meeting with BRHI or SPI personnel in person in the United States for the purpose of negotiating the MSA.

Q. Did you meet with Ms. Occena or Mr. Almeda in Las Vegas in October 2011?

A. I can't be certain of the date, but I did meet with Ms. Occena and possibly

[Perry Supp. Decl. Ex. 8]

## Page 32

JONATHAN REIN - HIGHLY CONFIDENTIAL

Mr. Almeda in that approximate timeframe. I did meet with them once in Las Vegas.

Q. And was that during the Global Gaming Expo, otherwise known as the G2E Conference?

A. I believe that is correct.

Q. Did you negotiate the EOA to the best of your recollection during that meeting?

A. A purpose of that meeting was to discuss and negotiate the EOA, that is my recollection.

Q. Did that actually occur though?

A. I believe we discussed the EOA.

Q. Is there any review of terms or documents or negotiation of specific terms, or was it just a general meeting about the EOA?

MR. AINSWORTH: Objection.

THE WITNESS: Well, the terms of the -- many of the terms -- and the most important financial terms of the equity option had been discussed earlier in 2011, and, in fact, those salient terms were enshrined in Section 18.3 of the MSA.

So those terms had already been

## Page 33

JONATHAN REIN - HIGHLY CONFIDENTIAL

negotiated and enshrined in a condition subsequent that was in the MSA.

In terms of what specifically was discussed at that meeting in Los Angeles, I simply don't remember; it was, you know, 11 years ago.

Q. You said "Los Angeles," you meant Las Vegas?

A. Correct, I was mistaken. Las Vegas.

Q. Were lawyers present at the meeting?

A. At that meeting, not that I recall.

Q. Do you recall anybody actually getting out documents and marking things up or putting pen to paper on a term sheet, anything like that?

A. I don't recall.

Q. Was there a dinner that occurred that you recall in Las Vegas in October of 2011, with Ms. Occena and Mr. Almeda?

A. I'm certain they ate dinner, are you asking if I attended?

Q. Yes, I'm asking if you attended.

A. I don't recall.

Q. Do you recall attending a dinner

## Page 34

JONATHAN REIN - HIGHLY CONFIDENTIAL

with counsel for GGAM, Ms. Occena, and Mr. Almeda in Las Vegas in or around October of 2011?

A. Just to clarify the question, you are asking if I recall -- so I think I said I don't specifically recall having dinner with Estella and Don.

You are now asking me if I had dinner with Estella and Don and counsel to GGAM?

Q. Yeah.

A. I don't recall.

(Whereupon, Defendant Exhibit 2009, Second Amended Complaint, ECF Document 218, 98-Pages was previously marked for identification.)

BY MR. PERRY:

Q. Before you is a copy of the Second Amended Complaint filed in this action. It's been previously marked as Defendant's Exhibit 2009.

Have you ever reviewed the Second Amended Complaint in this action, Mr. Rein?

A. At some point I read it.